UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY S. VAUGHN, individually and on behalf of those Class Members similarly situated,<br><br>               Plaintiff,<br><br>               v.<br><br>LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI & BROWN, L.L.P., LEEDS & MORELLI, LEEDS, MORELLI & BROWN, PRUDENTIAL SECURITIES, INC., PRUDENTIAL FINANCIAL, INC., LENARD LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN, and JOHN DOES, JAMES VAGNINI, FREDERIC DAVID OSTROVE, ROBERT JOHN VALLI, JR., DISCRIMINATION ON WALL STREET, INC. DISCRIMINATION ON WALL STREET MANHATTAN, INC., JOHN DOES, 1-10 AND JANE DOES, 1-10 a fictitious designation for presently unknown licensed attorneys, professionals and/or unknown persons or entities,<br><br>               Defendants. | 04 Civ. 08391 (DC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
PRUDENTIAL SECURITIES INCORPORATED AND PRUDENTIAL
FINANCIAL INC.'S MOTION TO COMPEL
<u>ARBITRATION AND TO DISMISS THE AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF THE CASE ....................................................................................... 3

ARGUMENT................................................................................................................... 9

I.    THIS COURT SHOULD DISMISS THE ACTION  AND COMPEL
      ARBITRATION OF PLAINTIFF'S CLAIMS  BASED ON THE
      SETTLEMENT AGREEMENT'S PLAIN LANGUAGE ...................................... 9

II.   THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED
      COMPLAINT BECAUSE PLAINTIFF'S RICO CLAIMS – THE SOLE
      BASIS FOR FEDERAL JURISDICTION--FAIL TO STATE CLAIMS
      FOR RELIEF ...................................................................................................... 14

A.    Plaintiff's RICO Claims Are Time-Barred.............................................................14

B.    Plaintiff Otherwise Fails to State RICO Claims.....................................................15

CONCLUSION.............................................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Acquaire* v. *Canada Dry Bottling*, 906 F.Supp. 819 (E.D.N.Y. 1995)............................12

*Allen* v. *New World Coffee, Inc.*, No. 00 Civ. 2610, 2001 WL 293683 (S.D.N.Y.
    Mar. 27, 2001)........................................................................................................17, 20

*Americorp Sec., Inc.* v. *Sager*, 239 A.D.2d 115 (1st Dep't 1997) .....................................10

*Anatian* v. *Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999) ...........................16

*Atlantic Gypsum Co.,* v. *Lloyds International Corp.*, 753 F.Supp. 505 (S.D.N.Y.
    1990) ...........................................................................................................................16

*Bankers Trust Co.* v. *Rhoades*, 859 F.2d 1096 (2d Cir. 1988)...........................................14

*Casio Computer Co.,* v. *Sayo*, No. 98CV3772, 2000 WL 1877516 (S.D.N.Y. Oct.
    13, 2000) .....................................................................................................................19

*Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999) .............18

*Continental Realty Corp.* v. *J.C. Penney Co.*, 729 F.Supp. 1452 (S.D.N.Y. 1990) ..........18

*Cougar Audio, Inc.* v. *Reich*, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y. Apr.
    18, 2000) .....................................................................................................................17

*Danann Realty Corp.* v. *Harris*, 5 N.Y.2d 317 (1959) ......................................................19

*Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213 (1985)....................................................9

*FD Prop. Holding, Inc.* v. *US Traffic Corp.*, 206 F.Supp.2d 362 (E.D.N.Y. 2002)..........20

*Flanagan* v. *Prudential-Bache Sec., Inc.*, 67 N.Y.2d 500 (1986) .......................................9

*First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938 (1995).......................................11

*GICC Capital Corp.* v. *Tech. Finance Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) ..............18

*Gary Plastic Packaging Corp.* v. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176  (2d Cir. 1996).....................................................................................15

*Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) ..............................10, 11

*Green Tree Finance Corp.* v. *Bazzle*, 539 U.S. 444 (2003)...............................................12

*Hackett* v. *Milbank, Tweed, Hadley & McCloy*, 86 N.Y.2d 146 (1995)...........................13

*Hetchkop* v. *Woodlawn at Grassmere, Inc.*, 116 F.3d 28 (2d Cir. 1997) ........................11

*Howard* v. *Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654 (S.D.N.Y. 1997),
    *aff'd,* 173 F.3d 844 (2d Cir. 1999) ..............................................................12

*International Association of Machinists and Aerospace Workers* v. *General
    Electric Co.*, 406 F.2d 1046 (2d Cir. 1969) ...............................................10

*Jaghory* v. *New York State Department of Education*, 131 F.3d 326 (2d Cir. 1997) ........14

*Lesavoy* v. *Lane*, 304 F.Supp.2d 520 (S.D.N.Y. 2004) .....................................16

*Levitin* v. *PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998), *cert. denied*, 525 U.S.
    1144 (1999)...........................................................................................3

*Mead* v. *Schaub*, 757 F.Supp. 319 (S.D.N.Y. 1991)..........................................18

*Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ...........................17

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)..............9

*Moore* v. *Painewebber, Inc.*, 189 F.3d 165 (2d Cir. 1999)..........................................18, 19

*Moses H. Cone Mem'l Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1
    (1983)....................................................................................................10

*Oboler* v. *Insurance Co. of North America*, No. 91 Civ. 2808, 1994 WL 414438
    (S.D.N.Y. Aug. 15, 1994)......................................................................15

*Oldroyd* v. *Elmira Savings Bank*, 134 F.3d 72 (2d Cir. 1998) ......................................9-11

*Prima Paint Corp.* v. *Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967)...........13

*Progressive Casualty Insurance* v. *C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993).....................................................................11

*Promovision Video Display Corp.* v. *Intech Leasing Corp.*, 129 A.D.2d 785 (2nd
    Dep't 1987).............................................................................................13

*Reynolds* v. *East Dyer Development Co.*, 882 F.2d 1249 (7th Cir. 1989).........................16

*Reynolds & Reynolds Co.* v. *Goldsmith Motor Corp.*, 251 A.D.2d 312 (2nd Dep't
    1998) ......................................................................................................11

*Rio Algom Inc.* v. *Sammi Steel Co.*, 168 A.D.2d 250 (1st Dep't 1990)..............................10

iii

*S.A. Mineracao Da Trindade-Samitri* v. *Utah International, Inc.*, 745 F.2d 190
(2d Cir. 1984)......................................................................................................10

*Sedima S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479 (1985)..........................................................17

*Shearson/American Express, Inc.* v. *McMahon*, 482 U.S. 220 (1987)..............................12

*Truck Drivers Local Union No. 807, I.B.T.* v. *Reg'l Importation and Exp.*
*Trucking Co.*, 944 F.2d 1037 (2d Cir. 1991) ................................................................12

*United States* v. *Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994)................................................17

*Vapor Tech. Partners, L.P.* v. *Vapor Tech of Delaware, Inc.*, No. 91 Civ. 3800,
1992 WL 14986 (S.D.N.Y. Jan 22, 1992) ....................................................................20

*Wire Service Guild* v. *United Press International, Inc.*, 623 F.2d 257 (2d Cir.
1980) ..............................................................................................................................10

## STATUTES

9 U.S.C. § 4 ...................................................................................................................9

18 U.S.C. §1961................................................................................................................16

18 U.S.C. § 1962...............................................................................................................15

N.Y. C.P.L.R. § 7501 *et seq*...........................................................................................10

iv

## PRELIMINARY STATEMENT

This is a putative class action by a former Prudential Securities Incorporated ("PSI") employee against PSI and the lawyers whom Plaintiff retained to pursue employment claims against PSI. Almost six years after executing a settlement agreement and general release in exchange for $200,000, Plaintiff now contends that he – along with hundreds of other former PSI employees – was a victim of a far-flung conspiracy between Plaintiff's former counsel and his former employer to limit the recovery which he otherwise would have been entitled. According to the Amended Complaint, PSI bought off Plaintiff's then counsel, causing them to breach their fiduciary obligations to him.

Simply stated, Plaintiff has no claims actionable in this Court because the settlement agreement that he executed contained a clear arbitration provision precluding this Court from considering Plaintiff's contentions. In accordance with the plain language of the Settlement Agreement and General Release with PSI dated October 27, 1998 (the "Settlement Agreement"), Plaintiff agreed, in exchange for $200,000 and other valuable consideration from PSI, that "[a]ny claim or controversy arising out of or related to this [Settlement] Agreement or the interpretation thereof will be settled by arbitration" in one of two alternate dispute resolution fora. This language is unambiguous, unconditional, and without exception. No doubt can exist that Plaintiff's allegations – that PSI conspired with Plaintiff's hand-picked lawyers to deprive Plaintiff of a greater monetary recovery on his employment claims – are a "claim or controversy arising out of or related to" the Settlement Agreement. Accordingly, the arbitration clause applies and

1

requires dismissal of the Amended Complaint in favor the parties' agreed-upon means for addressing Plaintiff's claims.

No more should be necessary to dismiss this action, but here there is more. In fact, the Amended Complaint is bereft of well-pleaded factual allegations of wrongdoing by PSI. The gravamen of Plaintiff's allegations is that lawyers he personally chose allegedly did not tell him of the contents of purportedly "secret" agreements between PSI and his counsel. The issue, simply put, is disclosure. Yet nowhere does the Amended Complaint allege *facts* – as opposed to colorful but conclusory claims of "commercial bribery" – that PSI had any *right* let alone duty to communicate with Plaintiff about these supposed agreements while Plaintiff was represented by his own counsel. No allegation of well-pleaded fact appears that PSI had anything to do with the substance of communications between Plaintiff and his chosen lawyers. In such circumstances, the Settlement Agreement Plaintiff signed discharged Prudential from any further liability to him. These issues, however, are for an arbitrator to address not this Court.

Apart from the Settlement Agreement's clear arbitration language and the Amended Complaint's pleading defects, it is noteworthy that the sole basis for subject matter jurisdiction in this Court are two claims under the Racketeering Influenced and Corrupt Organizations Act, or "RICO," 18 U.S.C. §§ 1601 *et seq.* Although this Court need not – and, we respectfully submit, should not – reach the issue, Plaintiff's RICO allegations fail to state claims for relief, for the following reasons: (1) the claims are time-barred as to this Plaintiff; (2) the Amended Complaint fails to plead the requisite

predicate acts on which a RICO claim depends; (3) the pleading, already once amended, lacks the particularity required of its fraud averments – among many other things, no statement or actionable omission is attributed to PSI; and (4) there is a complete failure to allege the essential "pattern" of racketeering by PSI, as well as the causation without which no RICO claim may survive.

For all of these reasons, this putative class action does not belong in this Court and should be dismissed with prejudice.

## STATEMENT OF THE CASE

Although Prudential vigorously disputes the allegations of the Amended Complaint, we assume for now the truth solely of the well-pleaded facts in the pleading, supplemented by the attached Aff.irmation of counsel (Aff.irmation of Gerard Harper, "Aff..") attaching the Settlement Agreement to which the Amended Complaint specifically refers (Am. Cplt. ¶ 68(b)(7)).[1]

### The Parties

According to his pleading, Plaintiff Jeffrey Vaughn is a resident of the State of New York and a former employee of PSI. At some unstated time "in or about 1998," "[Plaintiff] retained the law firm of Leeds-Morelli" to assert claims of racial discrimination against PSI. (Am. Cplt. ¶ 18) The Amended Complaint guesses, on undisclosed information and belief, that over 500 other PSI employees joined in retaining

---

[1]  This Court may consider Settlement Agreement on this motion to dismiss because the Amended Complaint includes a specific reference to the Settlement Agreement. *Levitin* v. *PaineWebber, Inc.*, 159 F.3d 698, 702 n.4 (2d Cir. 1998), *cert. denied*, 525 U.S. 1144 (1999).

the same law firm for the same purpose. (Am. Cplt. ¶ 24)    Plaintiff alleges that, supposedly unbeknown to him, this law firm entered into one or more "secret" agreements with PSI Aff.ecting the disposition of his discrimination claim. (Am. Cplt. ¶¶ 12-13)

Defendant PSI was, Plaintiff says, a corporation with offices in New York State, for which, Plaintiff alleges, the New Jersey-based Prudential Financial Inc. (together with PSI, "Prudential") is a successor in interest. (Am. Cplt. ¶ 2)

The remaining defendants are the New York law firm of Leeds, Morelli & Brown, P.C., various of its alleged predecessors or successors, two supposed Aff.iliates of the firm, and assorted lawyers who are said to have practiced with the firm and participated in the representation of Plaintiff and others during some unidentified time period (collectively or individually as the case may be, the "Leeds Firm"). (Am. Cplt. ¶¶ 3-11) Plaintiff alleges that the Leeds Firm has a "system" for processing employment discrimination claims against "corporate America," including, it is pleaded, such companies as Nextel, Bank of New York, Chase Manhattan, Aetna, J.P. Morgan, CitiGroup, Bear Stearns and others. (Am. Cplt. ¶¶ 33-34) Prudential is alleged to be one of the entities that have been the target of this "system." (Am. Cplt. ¶ 34)

**The Amended Complaint**

Relying on undisclosed information and belief, the Amended Complaint says that the Leeds Firm's "system" consists of several steps, the first two of which consist of (1) the Leeds Firm's solicitation of clients using "runners" to "induce" employees to retain the Leeds Firm to pursue claims against their corporate employer;

4

and (2) the Leeds Firm's meetings with prospective clients in which the Leeds Firm is said to obtain written retainer agreements providing for a one-third contingency fee for asserting such claims. No allegation is made that the corporate employer has anything to do with these matters. There is no claim that PSI was even aware of such activities at the time they allegedly occurred. (Am. Cplt. ¶ 33)

Later in this "system," says the pleading, the Leeds Firm approaches the corporate employer with a proposal that the employer advance money to the Leeds Firm in exchange for the Leeds Firm's clients' agreement to participate in a "secret and confidential settlement process." This "secret and confidential" process is made up of a "three-step alternate dispute resolution process" in which the Leeds Firm represents its clients, apparently individually, first in informal discussions, then in non-binding mediation, and finally in binding mediation. No mention is made in the Amended Complaint of who mediates these disputes or pays for them, nor whether any particular claimant fared poorly in them. Plaintiff, though, says that this "system" "typically" results in an "aggregate settlement" with the corporate employer. Common to these allegations is an assertion that the clients, including, here, Plaintiff, are unaware of the processes, including the Leeds Firm's agreements and settlements with the employer. (Am. Cplt. ¶ 33)

Although Plaintiff never expressly says as much, his unstated information and belief presumes that, in its representation of Plaintiff, the Leeds Firm engaged in this "system" with PSI. He alleges that "[t]here is at least one such agreement dated February 13, 1998" between PSI and the Leeds Firm and claims to have information and belief that

others exist dated May 1999 and November 2001. (Am. Cplt. ¶ 12)  In Plaintiff's view, again on unknown information and belief, these agreements give rise to five claims against Prudential, two of them supposedly arising out of federal law:  (1) aiding and abetting a fraud by the Leeds Firm on the Leeds Firm's clients; (2) civil RICO; (3) civil RICO conspiracy; (4) tortious interference with the contract between the Leeds Firm and its clients; and (5) civil fraud conspiracy.  (Am. Cplt. ¶¶  53-58, 59-69, 70-74, 88-92, 93-96)

Plaintiff's (as well as the putative class's) sole damages claim is to seek return of the amount that PSI and/or the putative class members paid to the Leeds Firm. There is no claim for damages that the settlement process itself produced awards for Plaintiff or anyone else lower than Plaintiff otherwise would have received.

**The Settlement Agreement**

On or about October 27, 1998, expressly upon advice of his counsel of choice, and in consideration of (among other things) a payment from PSI of $200,000, Plaintiff executed the Settlement Agreement.  Paragraph 4 of the Settlement Agreement provides in pertinent part (emphasis added) (Aff., Ex. A, ¶ 4):

> In consideration for [Prudential's] commitment to the various arrangements described in the preceding paragraphs, and in lieu of any other benefits, as a full and final settlement, *Vaughn hereby releases and discharges [Prudential], its parent, divisions, subsidiaries and affiliates and their current and former directors, officers, shareholders, agents and employees, and each of their predecessors, successors, and assigns (hereinafter "the Company"), from any and all claims and causes of action* ... arising out of or related to Vaughn's employment or separation from employment

6

> ... that Vaughn, his heirs ... now have, ever had or may hereafter have, whether known or unknown, suspected or unsuspected, up to and including the date of this Agreement.

The Settlement Agreement contains a number of other provisions common to resolutions of its type, including a statement that PSI admits no liability; that Plaintiff must preserve the confidentiality of PSI's proprietary information; that he will not disparage PSI nor seek reinstatement of his employment; and a merger clause indicating that the Settlement Agreement supersedes "all prior written and oral agreements" between the parties. (Aff., Ex. A, ¶¶ 5, 6, 7, 8, 9, 13). In the Settlement Agreement Plaintiff promised, too, "not to disclose or caused to be disclosed, directly or indirectly," except as required by law, "any information regarding the amount of, terms of, or facts or circumstances underlying" the Settlement Agreement. (Aff., Ex. A, ¶ 11) Plaintiff expressly agreed that, if he breaches the Settlement Agreement, he would forfeit the amount of his settlement payment. (Aff., Ex. A, ¶ 15)

Paragraph 14 of the Settlement Agreement clearly and unambiguously sets forth the means by which Plaintiff and PSI would resolve any future dispute between them about the foregoing (Aff., Ex. A, ¶ 14):

> Any claim or controversy arising out of or related to this Agreement or the interpretation thereof will be settled by arbitration under the then constitution and rules of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. Judgment based upon the decision of the arbitrates may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

In addition to committing to arbitrate "any" claim "arising out of or related to" the Settlement Agreement, Plaintiff also made representations to PSI at odds with his

7

current allegations, in particular that the execution of the Settlement Agreement was knowing and voluntary (Aff.., Ex. A, ¶ 15):

> Vaughn acknowledges that he has carefully read this Agreement and understands all of its terms including the full and final release of claims set forth above. Vaughn further acknowledges that he has voluntarily entered into this Agreement; that he has not relied upon any representation or statement, written or oral, not set forth in this Agreement; that the only consideration for signing this Agreement is as set forth herein; that the consideration received for executing this Agreement is greater than that to which he might otherwise be entitled; and that this document gives him the opportunity and encourages him to have this Agreement reviewed by his attorney and tax advisor.

The Settlement Agreement indicates that Plaintiff signed the document on October 27, 1998. (Aff.., Ex. A)

**Prior Proceedings**

Plaintiff commenced this action by the filing of a complaint on October 25, 2004 – within forty-eight hours of the sixth anniversary of signing the Settlement Agreement. At a preliminary conference on March 4, 2005, Plaintiff having indicated his intention to do so, the Court directed Plaintiff to file an Amended Complaint by March 15, which Plaintiff did. By this motion, Prudential seeks dismissal of the Amended Complaint with prejudice and an order compelling Plaintiff to arbitrate the claims contained in the Amended Complaint.

**ARGUMENT**

**I.**

**THIS COURT SHOULD DISMISS THE ACTION
AND COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS
BASED ON THE SETTLEMENT AGREEMENT'S PLAIN LANGUAGE**

The Federal Arbitration Act, applicable here, provides that a party aggrieved by the "failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" may petition for "an order directing that such arbitration proceed in the manner provided for in such agreement. . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 218 (1985) (emphasis added).

This statute reflects a powerful public policy favoring arbitration and requiring courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (citation omitted); *Flanagan* v. *Prudential-Bache Sec., Inc.*, 67 N.Y.2d 500, 506-07 (1986). "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd* v. *Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir. 1998). Courts should therefore "construe arbitration clauses as broadly as possible," *id.,* and "any doubts concerning the

9

scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

These are no aimless directions. The meticulous application and generous construction of arbitration contracts dictate that, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). Thus, "a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it may be said with positive assurance that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute." *Oldroyd*, 134 F.3d at 76; *see also S.A. Mineracao Da Trindade-Samitri* v. *Utah Int'l., Inc.*, 745 F.2d 190, 194 (2d Cir. 1984); *Wire Service Guild* v. *United Press Int'l., Inc.*, 623 F.2d 257, 260 (2d Cir. 1980); *Int'l. Ass'n of Machinists and Aerospace Workers* v. *Gen. Elec. Co.*, 406 F.2d 1046, 1048 (2d Cir. 1969).

The statutory and case law of New York are to the same effect. N.Y. C.P.L.R. § 7501 *et seq.* (McKinney 2005). Section 7503 of the New York Civil Practice Law and Rules says that "[w]here there is no substantial question whether a valid agreement was made . . . the court shall direct the parties to arbitrate." "The policy of this State is to favor and encourage arbitration as a means of expediting the resolution of disputes and conserving judicial resources." *Rio Algom Inc.* v. *Sammi Steel Co.,* 168 A.D.2d 250, 251, 253 (1st Dep't 1990); *Americorp Sec., Inc.* v. *Sager*, 239 A.D.2d 115,

118 (1st Dep't 1997) (to the same effect); *Reynolds & Reynolds Co.* v. *Goldsmith Motor Corp.*, 251 A.D.2d 312, 313 (2d Dep't 1998) (same).

        In determining motions to compel arbitration, courts in this Circuit consider:  (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if any federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if only some of the claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 943 (1995); *Oldroyd*, 134 F.3d at 75-76; *Genesco,* 815 F.2d at 844.

        The application of these four considerations strongly favors dismissal of this action in favor of arbitration.

        With regard to the first factor it is beyond dispute that Plaintiff unambiguously agreed to arbitrate the claims contained in the Amended Complaint. Plaintiff executed a contract in which he promised to arbitrate "[a]ny claim or controversy arising out of or related to this Agreement."  It is settled that "a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." *Progressive Cas. Ins.* v. *C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (citations omitted); *Hetchkop* v. *Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 34 (2d Cir. 1997); *Genesco,* 815 F.2d at 845.

        As to the second factor, Plaintiff cannot seriously contest that his claims fall within the scope of the arbitration clause, particularly in light of the teachings that

such clauses must be broadly construed to reach any claim touching upon the subject matter of the clause.    Here, each of Plaintiffs' claims stems from the alleged circumstances leading to his signing of the Settlement Agreement.    But for those supposed circumstances – the ostensibly secret processes by which his discrimination claim was resolved – no Settlement Agreement and hence no arbitration clause would exist.  Consequently, it is evident that every one of Plaintiff's claims arises out of or is related to the Settlement Agreement. *See Truck Drivers Local Union No. 807, I.B.T.* v. *Reg'l Imp. and Exp. Trucking Co.*, 944 F.2d 1037, 1043 (2d Cir. 1991) (observing, in relation to identical language contained in a contract, that "we are hard-pressed to think of a more sweeping arbitration clause"); *Acquaire* v. *Canada Dry Bottling*, 906 F. Supp. 819, 835 (E.D.N.Y. 1995) (characterizing a similar arbitration clause as "the most sweeping language imaginable").

The third factor – whether public policy renders certain claims non-arbitrable – has already been definitively determined.  That RICO claims are arbitrable is firmly established. *Shearson/American Express, Inc.* v. *McMahon*, 482 U.S. 220 (1987). So, too, is the proposition that a Plaintiff cannot avoid arbitration by attempting to bring an action as a class action under Federal Rule of Civil Procedure 23.  A Plaintiff "who has agreed to arbitrate all claims arising out of her employment may not avoid arbitration by pursuing class claims." *Howard* v. *Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 665 n. 7 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *see Green Tree Fin. Corp.* v. *Bazzle*, 539 U.S. 444, 461 (2003) ("the question of whether these claims may be submitted to arbitration as a class action is for the arbitrator to decide.").  That a party

claims to raise issues of public import, including the professional ethics of lawyers, provides no escape from an agreement to arbitrate. *Hackett* v. *Milbank, Tweed, Hadley & McCloy*, 86 N.Y.2d 146 (1995) (policy favoring arbitration clauses overrides judicial interest in regulating lawyer conduct).

Finally, because each of Plaintiff's claims is subject to arbitration, this Court should dismiss the Amended Complaint and not merely stay the action. Certainly Plaintiff's fraud claims supply no basis for ruling otherwise. As the United States Supreme Court held in *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967), "[u]nless the arbitration provision itself was a product of fraud, the election [to arbitrate] should be enforced." If there is a claim of fraud in the inducement of the arbitration clause itself, the court may proceed to adjudicate that specific claim, but the court may not "consider claims of fraud in the inducement of the contract generally." *Id.* at 403-04; *see Promovision Video Display Corp.* v. *Intech Leasing Corp.*, 129 A.D.2d 785 (2d Dep't 1987). The rationale underlying this rule is that the arbitration clause is severable from the other provisions of the contract. Jay M. Zitter, Annotation, *Claim of Fraudulent Inducement of Contract as Subject to Compulsory Arbitration Clause Contained in Contract*, 11 A.L.R. 4th § 39(a) (1982).

Here, the Amended Complaint does not allege that the Settlement Agreement was fraudulently induced, let alone its arbitration clause. Accordingly, because Plaintiff signed the Settlement Agreement containing an arbitration provision, because that arbitration provision encompasses each of his claims, because no public

13

policy obstructs its enforcement, and because all of Plaintiff's claims are arbitrable, this Court should dismiss the Amended Complaint with prejudice.

## II.

### THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT BECAUSE PLAINTIFF'S RICO CLAIMS – THE SOLE BASIS FOR FEDERAL JURISDICTION--FAIL TO STATE CLAIMS FOR RELIEF

A motion to dismiss should be granted when, as here, a complaint, construed in the light most favorable to Plaintiff, offers no factual allegations upon which relief may be granted. *Jaghory* v. *New York State Dep't of Educ.*, 131 F.3d 326, 330 (2d Cir. 1997).

### A.    Plaintiff's RICO Claims Are Time-Barred

A four-year statue of limitations governs Plaintiff's RICO claims. This means that Plaintiff had four years from the date that he discovered or should have discovered the injury to his business or property to commence this action. *Bankers Trust Co.* v. *Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988). Here, the only conceivable injury this Plaintiff suffered – even if he does not claim it as such – is that defendants' alleged misdeeds produced a settlement for alleged discrimination lower than the settlement Plaintiff could have received had Prudential not "bribed" his then counsel. Thus, Plaintiff sustained his injury, if any, no later than when he signed the Settlement Agreement providing for a payment to him of $200,000. That Settlement Agreement was signed on October 27, 1998, and hence Plaintiff's RICO claims expired no later than October 27, 2002. Since Plaintiff did not bring his claims until almost two years later, the claims are now time-barred.

14

This sinks Plaintiff's Amended Complaint. It is no answer that Plaintiff seeks to represent persons who may have resolved their claims within the four-year limitations period. Plaintiff cannot purport to represent a class of which he is not a member; he cannot avoid the four-year statute of limitation for RICO claims by asserting injuries that may have Aff.ected other purported class members but not him. Thus, while the Amended Complaint refers to several alleged incidents occurring months or years after Plaintiff signed the Settlement Agreement (*e.g.,* Am. Cplt. ¶ 68(b)(1)-(4)), these events could not possibly have Aff.ected Plaintiff, who had long before released Prudential. Therefore, Plaintiff's claims are not "typical" of the claims of the purported class members he claims to represent because his claims do not arise from the same conduct that Aff.ected purported class members and his claims thus cannot be based upon the same legal theories as other purported class members. *Oboler* v. *Ins. Co. of North America*, No. 91 Civ. 2808, 1994 WL 414438, at *5-6 (S.D.N.Y. Aug. 15, 1994); *Gary Plastic Packaging Corp.* v. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1996) (Plaintiff's claims are not typical when they give rise to "unique defenses").

**B.    Plaintiff Otherwise Fails to State RICO Claims**

Even if Plaintiff's RICO claims were not time-barred, Plaintiff has failed for several independent reasons to plead sufficiently the essential elements of a RICO claim, any one of which would warrant dismissal.

**First:** Plaintiff neglects to allege the provision of section 1962 that Prudential is claimed to have violated. 18 U.S.C. § 1962. "Failure to plead a specific

15

subsection of § 1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendants of the unlawful conduct in which they allegedly engaged." *Atlantic Gypsum Co.,* v. *Lloyds Int'l Corp.*, 753 F. Supp. 505, 511 n. 4 (S.D.N.Y. 1990); *see Reynolds* v. *East Dyer Dev. Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989). "RICO is a specialized statute requiring a particular configuration of elements.  These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Lesavoy* v. *Lane*, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004).  Plaintiff's generic reference to section 1962 does not adequately alert Prudential to his putative RICO claim.

**Second:**  Plaintiff does not adequately plead two predicate acts, essential elements of any RICO action.  *Anatian* v. *Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999).  Plaintiff tries.  He refers to "those acts described above" – presumably the ill-pleaded state law claims of fraud – as racketeering predicate acts. (Am. Cplt. ¶ 68(a))  State law fraud claims do not qualify as predicate acts for RICO purposes, *see* 18 U.S.C. §1961(1), and thus Plaintiff is necessarily limited to his allegations of commercial bribery and mail or wire fraud, neither of which works.

Plaintiff's commercial bribery allegations do him no good.  For an allegation of commercial bribery to serve as a civil RICO predicate it must have caused an injury to Plaintiff's "business or property."  This means concrete harm to an existing asset, not the loss of a potentially contingent one.  "The abstract form of harm suffered by one who loses the chance to bargain with all the facts may be sufficient to sustain a bare allegation of commercial bribery under New York law, but it is not sufficient to sustain a

16

RICO allegation with commercial bribery predicates." *Cougar Audio, Inc.* v. *Reich*, No. 99 Civ. 4498, 2000 WL 420546 at *8 (S.D.N.Y. Apr. 18, 2000); *see also United States* v. *Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994).

Equally inadequate are Plaintiff's allegations – the boilerplate of misplaced civil RICO claims – charging mail and wire fraud.  Such allegations are subject to "the particularity requirement of Rule 9(b) because they sound in fraud." *Allen* v. *New World Coffee, Inc.*, No. 00 Civ. 2610, 2001 WL 293683, at *4 (S.D.N.Y. Mar. 27, 2001).  The Amended Complaint does not meet these stringent requirements, because its allegations fail to specify the content of the communications, an explanation of why the communications were fraudulent, and the role of each defendant in the purported fraud. Here, Plaintiff cannot identify a *single* false statement or actionable omission by Prudential, let alone allege facts giving rise to an inference that the same were fraudulent. This is no claim for relief. *Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).

**Third:**  The Amended Complaint does not adequately allege a legally cognizable pattern of racketeering activity.  RICO's "pattern" requirement is intended to assure that RICO reaches only racketeering conduct posing a threat of ongoing or future activity, not conduct alleged to be isolated or sporadic.  *Sedima S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479, 496 n. 14 (1985).  Here, Plaintiff has alleged a "closed-ended" pattern of racketeering activity, specifically that defendants supposedly sought to achieve the limited objective of depriving "the Class Members of effective counsel, including Plaintiff, to recover on their claims against Prudential." (Am. Cplt. ¶ 12) "[T]o infer a

17

threat of repeated fraud from a single alleged scheme would in effect render the pattern

requirement meaningless." *Cont'l Realty Corp.* v. *J.C. Penney Co.*, 729 F. Supp. 1452,

1455 (S.D.N.Y. 1990). "Although the alleged scheme to defraud [Plaintiff] may have

required a number of steps over a determinate period of time, nevertheless because of its

terminable nature and single goal it does not meet the requirement of

continuity." *Mead* v. *Schaub*, 757 F. Supp. 319, 323 (S.D.N.Y. 1991).

      In considering whether Plaintiff's allegations are sufficient to establish

closed-ended continuity, this Court must examine such factors as "length of time over

which the alleged predicate acts took place, the number and variety of acts, the number of

participants, the number of victims, and the presence of separate schemes." *GICC

Capital Corp.* v. *Tech. Fin. Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995). Here, Plaintiff

fails to establish closed-ended continuity because the allegedly criminal activity was

purportedly committed in connection with an isolated settlement process – a process that

for this Plaintiff lasted no more than the period from February through October 1998.

This does not establish "closed-ended continuity" to allege a pattern of racketeering

activity.[2]

      **Fourth:** Plaintiff does not adequately allege causation. *Moore* v.

*Painewebber, Inc.*, 189 F.3d 165, 169-70 (2d Cir. 1999), explains:

---

[2]  Nor can Plaintiff allege a pattern of open-ended continuity, which requires him to allege "that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Nowhere in the Amended Complaint does Plaintiff identify *any* "racketeering activity" after Prudential settled the employment claims brought against it by the Leeds Firm.

> The causation requirement, which is jurisdictionally mandated, has two different components. There must be "transaction causation," meaning that the misrepresentation must have led the Plaintiffs to enter into the transactions at issue, and there must be "loss causation," meaning that the misrepresentation must be both an actual and a proximate source of the loss that the Plaintiffs suffered.

Plaintiff alleges neither "transaction" nor "loss" causation. Plaintiff does not allege "transaction causation" because he never pleads that "but for the defendant's wrongful acts, the Plaintiffs would not have entered into the transactions that resulted in their losses." *Id.* at 172.   Moreover, Plaintiff does not allege that, "but for" PSI's agreement to pay the Leeds Firm's attorneys fees, he would not have retained the Leeds Firm, or litigated his employment dispute against PSI, or turned down Prudential's $200,000 settlement, or even received more money. Further, Plaintiff fails to plead "loss causation" because he does not and cannot allege that any alleged misrepresentation *by PSI* actually caused Plaintiff to suffer any injury.   The contrary statements in the Settlement Agreement – that Plaintiff knew exactly what he was doing – belie any reasonable reliance on statements now alleged to be fraudulent. *Danann Realty Corp.* v. *Harris*, 5 N.Y.2d 317, 323 (1959).   Because there can be no reasonable reliance on PSI, and hence no fraud, there is no claim of loss causation.

**Fifth:** Finally, "[w]here no cause of action for substantive violations of RICO is stated, the RICO conspiracy claim cannot stand." *Casio Computer Co.,* v. *Sayo*, No. 98CV3772, 2000 WL 1877516, at *15 (S.D.N.Y. Oct. 13, 2000).   Once again, because Plaintiff fails to plead facts to show a violation of section 1962(c), Plaintiff cannot assert a claim for RICO conspiracy violation under section 1962(d).   Here, apart from the defects defeating Plaintiff's entire RICO claim, there is a separate flaw in his

19

allegations under § 1962(d). "[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance." *FD Prop. Holding, Inc.* v. *US Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (internal quotations omitted). Accordingly, Plaintiff's allegation of a conspiracy consists of nothing more than summary assertions that Prudential and the other defendants "conspired with one another to violate the provisions of 18 U.S.C. § 1962, as set forth above" and that each defendant "knowingly agreed to commit the aforementioned acts in violation of 18 U.S.C. § 1962." (Am. Cplt ¶¶ 71-72) Plaintiff's allegations are "devoid of factual assertions concerning the nature of the agreement" and "insufficient to state a claim under Section 1962(d)." *Allen*, 2001 WL 293683, at *9; *Vapor Tech. Partners, L.P.* v. *Vapor Tech of Delaware, Inc.*, No. 91 Civ. 3800, 1992 WL 14986, (S.D.N.Y. Jan 22, 1992).

## CONCLUSION

For the reasons set forth above and in the accompanying Aff.irmation, Prudential respectfully requests that the Court grant this motion to dismiss the Amended Complaint with prejudice and to grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP

By: *Beth Frank*

Gerard E. Harper (GH0279)
Theodore V. Wells, Jr. (TW2830)
Beth S. Frank (BF0293)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

-and-

LOWENSTEIN SANDLER, P.C.
1330 Avenue of the Americas
New York, New York 10019

Of Counsel:
Gregory B. Reilly
Julie L. Werner

*Attorneys for Prudential Securities*
*Incorporated and Prudential Financial, Inc.*