UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

JEFFREY S. VAUGHN, individually and on behalf
of those Class Members similarly situated,

                                          Plaintiffs,

       -against-

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, LLP., LEEDS & MORELLI,               Civil Case No.: 04 CV 08391
LEEDS, MORELLI & BROWN, PRUDENTIAL
SECURITIES, INC., Successor PRUDENTIAL
FINANCIAL, INC., WACHOVIA CORPORATION,
WACHOVIA SECURITIES, LLC, LENARD LEEDS,
STEVEN A. MORELLI, JEFFREY K. BROWN, and
JOHN DOES, JAMES VAGNINI, FREDERIC DAVID
OSTROVE, ROBERT JOHN VALLI, FR., DISCRIMINATION
ON WALL STREET, INC. and DISCRIMINATION ON WALL
STREET MANHATTAN, INC., AND JOHN DOES, ESQS,
1-10 a fictitious designation for presently unknown licensed
Attorneys, professionals and/or unknown persons or entities,

                                Defendants.

_____x

## MEMORANDUM OF LAW IN SUPPORT OF THE LEEDS DEFENDANTS MOTION TO COMPEL ARBITRATION AND TO DISMISS THE AMENDED COMPLAINT

**Litchfield Cavo LLP**
420 Lexington Avenue, Suite 1750
New York, N.Y. 10170

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ………………………………………………………… 1

A. Background …….……………………………………………………………... 1

B. The Amended Complaint …………………………………………………………... 1

STATEMENT OF THE CASE …………………………………………………………… 3

ARGUMENT ………………………………………………………………………….... 4

POINT I: THIS COURT SHOULD DISMISS OR STAY THIS ACTION PENDING
ARBITRATION OF PLAINTIFF'S CLAIMS AGAINST THE LEEDS DEFENDANTS ……. 4

A. Plaintiff Is Equitably Estopped From Bringing This Claim Against The Leeds Defendants
And Thus The Claim Should Proceed, If At All, Against All Defendants In Arbitration …. 5

B. Plaintiff's Claims Are All Arbitrable …………………………………………………. 8

C. This Court Should Thus Dismiss This Action In Favor Of Arbitration pending the
completion of arbitration proceedings is warranted …………………………………………… 9

POINT II: AS PLAINTIFF FAILS TO PLEAD A RICO CLAIM, THE SOLE BASIS FOR
FEDERAL JURISDICITON, HIS AMENDED COMPLAINT MUST BE DISMISSED ……. 10

A. Plaintiff's RICO Claims Are Time-Barred …………………………………………… 10

B. Plaintiff Otherwise Fails To Sufficiently Plead A Predicate Act Under RICO ……………. 12

POINT III:  SHOULD THIS ACTION REMAIN, PLAINTIFF'S OTHER STATE CLAIMS
SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF …………..20

A. Plaintiff's Claim For Fraud And Conspiracy To Defraud Must Fail ………………………. 21

B. Plaintiff's Claim For Breach Of Fiduciary Duty And Breach Of Contract Must Fail …….. 22

C. Plaintiff's Claim For Breach Of An Implied Covenant Of Good Faith And Fair Dealing
Must Fail …………................................................................................................................. 23

D. Plaintiff's Claims For Attorney's Fees Should Be Dismissed ……………………………. 23

POINT IV: PLAINTIFFS' ACTION SHOULD BE DISMISSED FOR INSUFFICIENCY OF

PROCESS AND INSUFFICIENCY OF SERVICE OF PROCESS ………………………….. 24

A. Certain Of The Individual Leeds Defendants Were Not Properly Served With The
Summons And Complaint Or Amended Complaint ……………………………………. 24

CONCLUSION ……………………………………………………………………………… 25

PRELIMINARY STATEMENT

This brief, together with the accompanying declaration, is submitted in support of the defendants' Leeds, Morelli & Brown, P.C. (the "Leeds Defendants") (also incorrectly sued herein as Leeds, Morelli & Brown, L.L.P., Leeds, Morelli, Leeds, Morelli & Brown), Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, and Robert John Valli, Jr. (herein collectively referred to as the "Leeds Defendants") motion for an order dismissing or staying this action and to compel arbitration.

A.    Background

Plaintiff, a former employee of Prudential Securities, Inc. ("Prudential") seeks to recover against his former attorneys for wholly speculative losses purportedly incurred as the result of voluntarily participating in an alternative dispute resolution process in 1998, whereby his claim for alleged employment discrimination against Prudential was amicably resolved and settled on October 27th 1998. Plaintiff seven years later, now weaves a fantastic tale of conspiracy, bribery and intrigue in an effort to obfuscate what actually transpired in 1998. The amended complaint reads like a chapter of the *Da Vinci Code* rather than a portrayal of events as they occurred in reality. Plaintiff does not recount history – he invents it.

B.    The Amended Complaint

Plaintiff's entire amended complaint (Exhibit "A" annexed to the Morelli Declaration ) is grounded "upon information and belief". Every effort is made to focus on the Leeds Firm's representation of plaintiffs in other cases and then somehow analogize those vastly different matters with Vaughn's allegations. The amended complaint repeats with monotonous regularity the phrase "secret agreements" when the only documents at issue are in the possession of Vaughn: the Retainer Agreement signed by Vaughn, dated January 5, 1998; the February 13,

1

1998 agreement signed by Vaughn on March 5, 1998 (which the plaintiff specially refers to at paragraph 36 of the amended complaint); and the Settlement and Release Document signed by Mr. Vaughn on October 27, 1998, all incorporated by reference into the amended complaint.

Indeed, almost buried in the amended pleading is the fact that Vaughn voluntarily settled his claim against Prudential, on October 27, 1998, for $200,000. The plaintiff is in possession not only of these documents, but also the seven (7) more letters and correspondence identified in paragraph 68 of the amended complaint. There is nothing "secret" about any of the documents already in plaintiff's possession. Since these documents do not fit into Vaughn's version of events, they are ignored. According to Mr. Vaughn, there must be "secret agreements", there must be bribery, there must be pay offs. The amended complaint engages in nothing more than innuendo and imagination.

The amended complaint alleges RICO conspiracy against Prudential and the Leeds Defendants, in addition to fraud and civil conspiracy. Plaintiff's claims against these defendants are thus inextricably linked together, as set forth in his own amended complaint. Accordingly, despite the grandiosity of plaintiff's claims of conspiracy against Prudential and the Leeds Defendants, the amended complaint is subject to dismissal.

Due to equitable principles set forth below, the entire controversy, as espoused in the pleadings, is subject to arbitration. Further, the plaintiff fails to plead fraud with the requisite particularity required by the Federal Rules of Civil Procedure, thus exposing his claims of fraud as wholly speculative and unsatisfactory, and certainly inadequate as predicates under RICO. The amended complaint additionally fails to adequately aver damages or a sufficient pattern of racketeering, and several other essential elements of a civil RICO claim. Moreover, plaintiff's

RICO claim is barred by the applicable statute of limitations, as are most, if not all, of his claims under state law – his state law claims being subject to dismissal on other grounds as well.

## STATEMENT OF THE CASE

Mr. Vaughn, a Prudential employee retained the Leeds Firm to negotiate a settlement with his employer. An Operations Clerk, Mr. Vaughn alleged race discrimination and unequal treatment in the work place. The retainer agreement provided that Mr. Vaughn was not responsible for costs associated with the case and provided for payment of one third of the final recovery to the Leeds Firm in the event there was a settlement. Annexed as Exhibit "B" to the Morelli Declaration is a copy of the January 5, 1998 retainer agreement executed by Mr. Vaughn which specifically provides that: "[t]his retainer will only include the contacting of the employer to seek a negotiated settlement. If legal action is required, then the parties will discuss a different financial situation." Thus, at the outset of the attorney/client relationship, negotiation was the contemplated vehicle for resolution of Mr. Vaughn's claim.

As part of the work-up of Mr. Vaughn's case, he authored a document, annexed as Exhibit "C" to the Morelli Declaration, which sets forth the circumstances of his alleged employment discrimination. Mr. Vaughn himself, at page 3, calculates his "back pay damages estimated [at] **$200,000.**" This is the precise amount obtained by The Leeds Firm on behalf of Mr. Vaughn from Prudential when the claim settled.

Mr. Vaughn also filled out a "Prudential Questionnaire" in which he was asked to respond to certain questions about his education and career background as well as evidence of alleged discriminatory acts by Prudential. This document, annexed as Exhibit "D" to the Morelli Declaration also asks Mr. Vaughn to identify witnesses to the alleged discrimination, and whether he knew other Prudential employees who had similar complaints.

3

As part of the negotiation process contemplated by the retainer, Mr. Vaughn signed a February 13, 1998 Agreement on March 5, 1998. Annexed as Exhibit "E," to the Morelli Declaration, is a copy of the signature page executed by Mr. Vaughn on March 5, 1998. The execution and acknowledgment language states: "I, Jeffrey Vaughn, have read the foregoing Agreement and I accept and agree to the provisions it contains and hereby execute it voluntarily with full understanding of its consequences. I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct."[1]

Mr. Vaughn's claim proceeded through the mediation process and was settled on October 27, 1998. As noted above, Mr. Vaughn settled with Prudential for the exact amount of back pay that he estimated he lost as a result of the alleged employment discrimination of Prudential -- $200,000. The settlement Agreement and General Release are annexed as Exhibit "F" to the Morelli Declaration.[2]

## ARGUMENT

### POINT I

THIS COURT SHOULD DISMISS OR STAY THIS ACTION PENDING ARBITRATION OF PLAINTIFF'S CLAIMS AGAINST THE LEEDS DEFENDANTS

This Court should dismiss or stay this action against the Leeds Defendants pending arbitration, assuming the Court exercises jurisdiction at all. The Federal Arbitration Act ("FAA") requires a federal court, upon finding that an arbitration agreement exists between the parties concerning the subject of an action, to compel plaintiff to honor his agreement to

---

[1] The agreement of February 13, 1998, has not been produced as an Exhibit due to a confidentiality clause contained in the agreement which imposes penalties for its disclosure.
[2] The Settlement Agreement and General Release is not annexed as an Exhibit since Litchfield Cavo was advised by Prudential's attorneys that they intend to divulge it and rely upon it.

4

arbitrate. 9 U.S.C. §3; *Nat. Union Fire Ins. Co. v Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996).[3]

A. Plaintiff Is Equitably Estopped From Bringing This Claim Against The Leeds Defendants And Thus The Claim Should Proceed, If At All, Against All Defendants In Arbitration

The settlement agreement and General Release (Exhibit "F" of the Morelli Declaration) executed by Vaughn and Prudential on October 27, 1998 contains an arbitration clause requiring that "any claim or controversy arising out of or related to this agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc". Such a clause has been characterized as a broad arbitration provision. *See Oldroyd vs. Elmira Savings Bank, FSB,* 134 F3d 72, 76 (2d Cir. 1998).

Thus, plaintiff should be compelled to arbitrate his current claims against all defendants pursuant to that arbitration clause. Indeed, his current complaint alleges no more, in essence, than a claim that his settlement with Prudential was inadequate. While the Leeds Defendants are not signatories thereto, it is beyond dispute that the amended complaint asserts claims against both Prudential and the Leeds Defendants, which are inextricably intertwined with each other and require that all interested parties be compelled to arbitrate in lieu of this action, should the court decide not to dismiss the matter entirely. In fact, the claims against Prudential and the

---

[3] Here, the contract surely encompasses interstate commerce as, among other things, plaintiff avers that he is a New York resident and that he entered into the relevant release and settlement agreement with Prudential Financial, a national corporation (alleged to be the predecessor to Prudential Securities), and that its principal place of business is in New Jersey. *See Maye v. Smith Barney Inc.*, 897 F. Supp. 100 (S.D.N.Y. 1995); *Cooper v. Computer Credit Systems, Inc.*, 40 A.D.2d 692, 336 N.Y.S.2d 380 (2d Dep't 1972). Indeed, here the release between plaintiff and Prudential barred any claim by plaintiff in any jurisdiction. *See, e.g., Utica Mut. Ins. Co. v. Gulf Ins. Co.*, 306 A.D.2d 877, 878-79, 762 N.Y.S.2d 730 (4th Dep't 2003) (FAA applied to insurance agreement that involved claims that could arise anywhere in the world.) Thus, the release and settlement agreement at issue certainly involved interstate commerce and the Federal Arbitration Act applies. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 55-58, 123 S.Ct. 2037 (2003).

Leeds Defendants are inseparable, as demonstrated by the plaintiff's own allegations in the amended pleadings:

(1)     Am. Cplt. ¶39 alleges that "PSI [Prudential], the Does, Leeds & Morelli and the Lawyer Defendants (a) devised a scheme and/or artifice to defraud plaintiff and the plaintiff's class, and (b) engaged in deceit and collusion, and consented to deceit and collusion with the intent to deceive plaintiff and the plaintiff's class;"

(2)     Am. Cplt. ¶12 alleges that: "This action involves Leeds & Morelli and the Lawyer Defendants, the former lawyers for plaintiff, conspiring and entering into a written secret agreement or agreements with PSI [Prudential] (the "secret agreements")…;"

(3)     Am. Cplt. ¶37 alleges that, "Upon information and belief, PSI [Prudential] and the does conferred, offered and agreed to confer upon Leeds & Morelli benefits, payments and promises of future benefits as consideration for Leeds & Morelli and the Lawyer Defendants knowingly violating and agreeing to violate their obligation to plaintiff.

Further, the Third Cause of Action pleads federal RICO against all defendants, the Fourth Cause of Action pleads RICO conspiracy against all defendants and the Ninth Cause of Action pleads fraud and conspiracy against all defendants.

The Second Circuit has consistently held that a signatory to an arbitration agreement may be estopped from avoiding arbitration with a non-signatory. *Thompson–CSF, S.A. v. American Arbitration Association*, 64 F3d 773, 776 (2d Cir. 1995) (setting forth five theories for binding non-signatories to arbitration agreements: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; and (e) estoppel). *Thompson–CSF* also recognized an alternative estoppel theory adopted by the courts of appeal in other jurisdictions. *Id.* at 779; *see, e.g., McBro Planning and Development Co. v. Triangle Electrical Construction Co., Inc.*, 741 F.2d 342 (11th Cir. 1984) (compelling signatory to arbitration agreement to arbitrate with non-signatory).

6

In *Camferdam, Jr. v. Ernst & Young International Inc.*, 2004 WL 307292 (S.D.N.Y. 2004), the plaintiffs commenced suit against their tax advisors as well as their law firms, alleging claims under RICO, fraud, breach of fiduciary duty, negligence, breach of contract, tortuous interference with contract, and conspiracy. These claims parallel precisely Vaughn's causes of action in the amended pleadings.

The attorney defendants in *Camferdam*, although non-signatories to an arbitration clause in the agreement between plaintiffs and *Ernst & Young*, sought to estop the plaintiffs from avoiding arbitration. The court granted a stay of the proceedings pending arbitration, reasoning as follows:

> A signatory to an arbitration agreement may be estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement containing an arbitration clause that the signatory has signed.

*Id.* at *6.

The *Camferdam* court examined the plaintiff's complaint utilizing theories set forth in *Thompson – CSF*, including agency and estoppel. Indeed, as plaintiffs therein had asserted a conspiracy claim against both signatory and non-signatory, the court found an inherent agency among these parties, explaining that: "[a] civil conspiracy is a kind of partnership, in which each member becomes the agent of the other." (*citing Roberson v. Money Tree*, 954 F. Supp. 1519, 1529 (M.D. Ala. 1997)).

The *Camferdam* court then went on to reason that it was plaintiff's burden to prove his RICO and conspiracy theories. The court further explained that plaintiffs' theories could only succeed if they proved that *Ernst & Young*, as signatory, and the law firm defendants, as non-

7

signatory, acted and conspired together to establish and devise a scheme as alleged in the complaint. *See id.*     .

Thus, plaintiff's claims against both signatory and non-signatory, as here, were substantially interdependent. Most assuredly, the Vaughn amended complaint alleges conspiracy racketeering, fraud and "secret agreements" by and between Prudential and the Leeds Defendants. Thus, plaintiff is bound to arbitrate his current claims and is estopped to avoid arbitration with the Leeds Defendants. *See id.* The *Camferdam* court held that "the application of equitable estoppel is warranted here because the plaintiffs [as signatories] have raised allegations of 'substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories.'" *Id* at *7; *cf. Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524 (5th Cir. 2000) (similarly estopping plaintiffs from avoiding arbitration with non-signatory defendants); *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir. 1976) (non-signatory defendants could stay judicial proceedings where charges against signatory and non-signatory defendants were based on the same operative facts and were inherently inseparable).

Further, the court explained that "to force the law firm to engage in litigation on the very same issues that will be arbitrated by the plaintiffs and [the signatory defendants]" would render the arbitration meaningless and thwart the federal policy in favor of arbitration. *See id.*

Similarly, in the case at bar, based upon the amended complaint's language and allegations against all defendants herein, which include conspiracy and fraud under RICO, plaintiff should be equitably estopped from avoiding arbitration with the Leeds Defendants.

B. Plaintiff's Claims Are All Arbitrable

Plaintiff may not avoid arbitration by claiming that he was fraudulently induced to enter

the Settlement Agreement, as the issue of fraudulent inducement is itself a matter for the arbitrator to determine as well. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed.2d 1270 (1967). It is also no answer that plaintiff purports to bring a RICO claim, for such claims are clearly subject to arbitration. *Shearson/Am. Express, Inc. v McMahon,* 482 U.S. 220, 242 (1987). Nor may a party circumvent an arbitration clause "by bringing [a] suit as a class action," *Coleman v Nat. Movie-Dine, Inc.,* 449 F. Supp. 945, 948 (E.D. Pa. 1978). Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Threlkeld & Co. v Matallgesellschaft Ltd.,* 923 F.2d 245, 248 (2d Cir. 1991) (quoting *Moses H. Cone Mem. Hosp. v Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983)).

Indeed, torts as those alleged herein have also specifically been held to be arbitrable. *See Seltzer v. Klein*, 1989 U.S. Dist. LEXIS 4270 (E.D. Pa. Apr. 20, 1989). In *Seltzer*, plaintiffs alleged a scheme of fraud by a manager of a partnership. The court held that "the success of the plaintiffs' claims depend on whether. . . Klein's expenditures of partnership funds were authorized and legitimate or bogus and part of preconceived. . . fraudulent scheme." Id. Because "at least arguably the alleged misconduct underlying this dispute is governed by contractual rights arising under the partnership agreements. . .", the court compelled arbitration even though the theories of liability were not for breach of contract. See also *Goodwin v. Elkins & Co.*, 730 F.2d 99 (3d Cir. 1984) (claim of fraud and breach fiduciary duty arbitrable under arbitration clause in partnership agreement requiring arbitration of controversies under the agreement).

C. This Court Should Thus Dismiss This Action In Favor Of Arbitration

To the extent plaintiffs claims are arbitrable, Section 3 of the FAA specifically requires a court to enter a stay of proceedings where the court is presiding over a lawsuit involving issues

9

which are referable to arbitration under a written arbitration agreement. *See* 9 U.S.C. §3. Where, as here, all of the claims involved in the action are arbitrable, the Court may dismiss the action instead of staying it. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998). Accordingly, the Leeds Defendants respectfully submit that an order dismissing or staying this litigation pending the completion of arbitration proceedings is warranted.

## POINT II

### AS PLAINTIFF FAILS TO PLEAD A RICO CLAIM, THE SOLE BASIS FOR FEDERAL JURISDICITON, HIS AMENDED COMPLAINT MUST BE DISMISSED

A motion to dismiss should be granted when, as here, a complaint, construed in the light most favorable to plaintiff, offers no factual allegations upon which relief may be granted. *Jaghory* v. *New York State Dep't of Educ.,* 131 F.3d 326, 330 (2d Cir. 1997). Indeed, in order to avoid dismissal, plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions...." *Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000).

### A. Plaintiff's RICO Claims Are Time-Barred

A four-year statue of limitations governs plaintiffs RICO claims. This means that plaintiff had four years from the date that he discovered or should have discovered the injury to his business or property to commence this action. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988); *Lares Group, II v. Tobin*, 221 F.3d 41, 44-45 (1st Cir. 2000); *see also Price v. Gast*, 2000 WL 369381 (S.D.N.Y. 2000) (holding that civil RICO claim was time-barred by the applicable four-year statue of limitations where plaintiffs had constructively discovered the alleged injury over years prior to commencement of their action). Plaintiff failed to do so. Thus, the only conceivable injury that this plaintiff suffered - even if he does not claim it as such - is

that defendants' alleged misdeeds produced an award for alleged discrimination lower than the award for which plaintiff settled. Yet, according to Exhibit C, plaintiff had himself estimated the amount he was allegedly due from Prudential in or about 1998, prior to settlement, and received that amount in recovery. Hence, plaintiff sustained his injury, if any, when he signed the Settlement Agreement providing for a payment to him of $200,000, and discovered or should have discovered his alleged injury at that time. That Settlement Agreement was signed on October 27, 1998, and hence plaintiff's RICO claims expired on October 27, 2002. Since he did not bring his claims until almost two years later, the claims are now time-barred; nor does plaintiff meet his burden to demonstrate otherwise (*see* Am. Cplt. ¶ 12). *See O'Brien v. Nat'l Property Analysts Partners,* 719 F. Supp. 222, 231 (S.D.N.Y. 1989) ("plaintiffs must make distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made") (internal quotations omitted).

    This invalidates the plaintiff's amended complaint. It is no defense that plaintiff seeks to represent persons who may have resolved their claims within the four-year limitations period. Plaintiff Vaughn cannot purport to represent a class of which he is not a member; he cannot avoid the four-year statute of limitation for RICO claims by asserting injuries that may have affected other purported class members but not him. Thus, while the amended complaint refers to several alleged incidents occurring months or years after plaintiff signed the Settlement Agreement *(e.g.,* Am. Cplt. ¶ 68(b)(l)-(4)), these events could not possibly have affected plaintiff, who had long before settled his claims. Plaintiffs' claims, therefore, are not "typical" of the claims of the purported class members he seeks to represent because his claims do not arise

11

from the same conduct that affected purported class members and his claims thus cannot be based upon the same legal theories as other purported class members. *Oboler* v. *Ins. Co. of North America,* 1994 WL 414438, at \*5-6 (S.D.N.Y. Aug. 15, 1994); *Gary Plastic Packaging Corp.* v. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1996) (plaintiffs claims are not typical when they give rise to "unique defenses")

### B. Plaintiff Otherwise Fails To Sufficiently Plead A Predicate Act Under RICO

Even if plaintiff's RICO claims were not time-barred, plaintiff has failed for several independent reasons sufficiently to plead the essential elements of a RICO claim, any one of which would warrant dismissal.

**First:** Plaintiff neglects to allege the provision of section 1962 that the Leeds Defendants are claimed to have violated. 18 U.S.C. § 1962. "Failure to plead a specific subsection of § 1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendants of the unlawful conduct in which they allegedly engaged." *Atlantic Gypsum Co.,* v. *Lloyds Int'L Corp.,* 753 F. Supp. 505, 511 n. 4(S.D.N.Y. 1990); *see Reynolds* v. *East Dyer Dev. Co.,* 882 F.2d 1249, 1251 (7th Cir. 1989). "RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Lesavoy* v. *Lane,* 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004). Plaintiff's generic reference to section 1962 does not adequately alert the Leeds Defendants to his putative RICO claim, and thus fails to specify the unlawful conduct in which they allegedly engaged.

**Second:** Plaintiff does not adequately plead two predicate acts, essential elements of any RICO action. *Anatian* v. *Coutts Bank (Switzerland) Ltd.,* 193 F.3d 85, 88 (2d Cir. 1999). Plaintiff tries. He refers to "those acts described above" - presumably the ill-pleaded state law claims of

12

fraud - as racketeering predicate acts. (Am. Cplt. ¶ 68(a)). State law fraud claims do not qualify as predicate acts for RICO purposes, *see* 18 U.S.C. § 1961(1), and thus plaintiff is necessarily limited to his allegations of commercial bribery and mail or wire fraud, neither of which works.

Plaintiff's commercial bribery allegations do him no good. For an allegation of commercial bribery to serve as a civil RICO predicate it must have caused an injury to plaintiff's "business or property." This means concrete harm to an existing asset, not the loss of a potentially contingent one. "The abstract form of harm suffered by one who loses the chance to bargain with all the facts may be sufficient to sustain a bare allegation of commercial bribery under New York law, but it is not sufficient to sustain a RICO allegation with commercial bribery predicates." *Cougar Audio, Inc.* v. *Reich,* No. 99 Civ. 4498, 2000 WL 420546 at *8 (S.D.N.Y. Apr. 18, 2000); *see also United States* v. *Mittelstaedt,* 31 F.3d 1208 (2d Cir. 1994).

Equally inadequate are plaintiff's allegations - the boilerplate of misplaced civil RICO claims - charging mail and wire fraud. Such allegations are subject to "the particularity requirement of Rule 9(b) because they sound in fraud." *Allen* v. *New World Coffee, Inc.,* No. 00 Civ. 2610, 2001 WL 293683, at *4 (S.D.N.Y. Mar. 27, 2001); *see, e.g., Nakahara v. Bal,* 1998 WL 35123 (S.D.N.Y. 1998) (allegations that were wholly conclusory and unsupported fail to satisfy pleading requirements for a RICO fraud claim). The amended complaint does not meet these stringent requirements, because its allegations fail to specify the content of the communications, an explanation of why the communications were fraudulent, and the role of each defendant in the purported fraud.[4] *See, e.g., Grant v. Union Bank*, 629 F. Supp. 570, 576

---

[4] In fact, plaintiff fails to allege any violation of the federal wire fraud act, as such would require that he allege telephone or facsimile communications between parties in different states. Instead, plaintiff alleges that all parties but Prudential Financial, the successor to Prudential Securities, are residents of New York. Accordingly, the alleged wire communications could not be violations of the federal wire fraud act. *See, e.g., McCoy v. Goldberg* ,748 F. Supp. 146, 154 (S.D.N.Y. 1990); *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.,* 187 F.3d 229, 243 (2d Cir.

(D. Utah 1986) ("plaintiff's conclusory allegations of a scheme to defraud are not supported by sufficient allegations to evidence specific intent").

In fact, plaintiff's allegations of mail and wire fraud refer to innocuous communications, including the 1998 release and settlement agreement. Yet, plaintiff improperly attempts to color these communications to suggest some wrongdoing. For instance, in paragraph 68(b)(5) of the amended complaint, plaintiff describes a letter from Prudential, but, incredibly, ascribes purported statements, referring to "cap" cases, to the Leeds Defendants. This is beyond hearsay and demonstrates the patent lack of merit in plaintiff's allegations.

Thus, plaintiff cannot identify a *single* false statement or actionable omission by the Leeds Defendants, let alone allege facts giving rise to an inference that the same were fraudulent. This is no claim for relief. *Mills* v. *Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993).

To the extent that plaintiff relies on statements made upon information and belief, such is inadequate. *See O'Brien v. Nat'l Property Analysts Partners,* 719 F. Supp. 222, 226 (S.D.N.Y. 1989). As set forth in plaintiff's own amended complaint, the Leeds Firm represented plaintiff in a claim against his former employer, Prudential Securities, Inc. After receiving a favorable settlement of his claim, and entering into a binding agreement as to same, plaintiff brought suit, making dubious allegations of wrongdoing as to defendants herein. Yet, without these allegations made on mere "information and belief," plaintiff can make no claim for damages and certainly not one under the RICO statute. Thus, in his amended complaint, plaintiff, purporting to represent a class, bases his entire allegation of a claim under RICO upon the following (untrue) allegations, all made upon "information and belief:"

    (1)    that the Leeds defendants entered into a purported "secret" agreement with Prudential Securities Incorporated ("Prudential"), wherein the Leeds Defendants agreed to cap

1999).

plaintiff's claims against Prudential for a fee, without disclosure to plaintiff (Am. Cplt. ¶¶ 12);[5]

(2)    that Prudential paid monies to Leeds so that they would cap plaintiff's claim and prevent him from suing in court (Am. Cplt. ¶¶ 13); and

(3)    other less relevant allegations, which appear to be nothing more than an attempt to muddy the waters and sling mud at the Leeds Defendants.[6]

As set forth below, none of these claims, made on mere "information and belief," suffice to meet plaintiff's burden to plead fraud herein, nor do these claims satisfy plaintiff's burden to adequately assert predicate acts under the RICO statute.[7]  *See, e.g., O'Brien v. Nat'l Property Analysts Partners,* 719 F. Supp. 222, 230-32 (S.D.N.Y. 1989).  Thus, and as the above purported "narrative" is the entire gist of plaintiff's claims herein, as well as the entire basis for federal jurisdiction under RICO, plaintiff's claims must be dismissed.

**Third:** The amended complaint does not adequately allege a legally cognizable pattern of racketeering activity. RICO's "pattern" requirement is intended to assure that RICO reaches only racketeering conduct posing a threat of ongoing or future activity, not conduct alleged to be isolated or sporadic. *Sedima S.P.R.L.* v. *Imrex Co.,* 473 U.S. 479, 496 n. 14 (1985). Here, plaintiff has alleged a "closed-ended" pattern of racketeering activity, specifically that defendants purportedly sought to achieve the limited objective of capping claims against Prudential and preventing claimants from suing Prudential in court, by entering into the so-called "secret agreement." (Am. Cplt. ¶¶ 12-13) "[T]o infer a threat of repeated fraud from a single alleged scheme would in effect render the pattern requirement meaningless." *Cont'l Realty Corp.*

---

[5] Plaintiff's pleading is deceptive in that once an allegation is made upon information and belief it is subsequently stated, often several times, as fact.

[6] Plaintiff's conclusory statements that he was compelled to donate a percentage of his recovery from Prudential is unsupported by plaintiff's factual allegations and, thus, simply makes no sense.  Accordingly, it does not provide plaintiff with any cause of action, and certainly does not satisfy as a RICO predicate (*see, e.g.,* Am. Cplt. ¶ 41, stating that "Leeds-Morelli encouraged plaintiff to pay sums to D.O.W.S.")

[7] Plaintiff's failure to adequately plead facts inferring fraudulent intent also vitiates his claims of bribery as a

v. *J.C. Penney Co.,* 729 F. Supp. 1452, 1455 (S.D.N.Y. 1990). "Although the alleged scheme to defraud [plaintiff] may have required a number of steps over a determinate period of time, nevertheless because of its terminable nature and single goal it does not meet the requirement of continuity." *Mead v. Schaub,* 757 F. Supp. 319, 323 (S.D.N.Y. 1991).

In considering whether plaintiff's allegations are sufficient to establish closed-ended continuity, this Court must examine such factors as "length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp.* v. *Tech. Fin. Group, Inc.,* 67 F.3d 463, 467 (2d Cir. 1995). Here, plaintiff fails to establish closed-ended continuity because the allegedly criminal activity was purportedly committed in connection with an isolated settlement process - a voluntary process that for this plaintiff lasted no more than the period from January 5, 1998 through October 27, 1998. This does not establish "closed-ended continuity" to allege a pattern of racketeering activity. *See, e.g., Grant, supra,* 629 F. Supp. At 578-79 ("multiple mail and wire communications in furtherance of [a] single allegedly fraudulent loan are insufficient to show a pattern under RICO").

Moreover, as plaintiff alleges that, at the latest, he was injured upon settlement with Prudential in October 1998, any predicate acts occurring thereafter could not possibly be in furtherance of any scheme under RICO. *See Price v. Gast,* 2000 WL 369381, *7 (S.D.N.Y. 2000). In fact, almost all of plaintiff's allegations of RICO predicates allegedly occurred after October 1998, except for a May 7, 1998 letter of thanks and the Settlement Agreement itself (*see* Am. Cplt. ¶ 68). As the latter items simply do not adequately plead fraud, and fail to even allege purported misrepresentations, *see, e.g., Nakahara v. Bal,* 1998 WL 35123, plaintiff fails allege

---

predicate act. *See Jaggie v. Northstar Tubular Corp.,* 195 A.D.2d 336, 600 N.Y.S.2d 18 (1st Dep't 1993).

any scheme to defraud to support his RICO claim, which must be dismissed.

Indeed, as plaintiff alleges, at best, only a short period of time within which the alleged racketeering activity occurred, no closed-ended pattern of racketeering can be found. *See Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.,* 187 F.3d 229, 244 (2d Cir. 1999). Certainly, any activity that plaintiff alleges injured him occurred only during the period of his retention of the Leeds Firm to his settlement with Prudential, from January 1998 to October 1998. As in *Cofacredit*, alleged racketeering activity, occurring within a period of less than a year, is insufficient to sustain plaintiff's claim of a RICO scheme. *Id.; see Price v. Gast*, 2000 WL 369381, *7-9 (also holding that an allegation of a short period of alleged racketeering activity (in that case lasting 5 months), as is alleged at bar (lasting approximately 10 months) is insufficient to allege closed-ended continuity); *see also D'Orange v. Feely*, 877 F.Supp. 152, 158 (S.D.N.Y. 1995) (finding no closed-ended continuity where there was a single victim and a single criminal scheme resulting in a single injury).

Nor can plaintiff allege a pattern of open-ended continuity, which requires him to allege "that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir. 1999). Nowhere in the amended complaint does plaintiff identify *any* "racketeering activity" after Vaughn, and the class member he purports to represent, settled their employment claims against Prudential.

To the extent plaintiff does attempt to characterize his allegations as setting forth a pattern of open-ended-continuity, the complaint must contain "some evidence from which it may be inferred that the predicate acts were the regular way of operating [the] business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity."

17

*Cofacredit,* 187 F.3d at 243. To "infer a threat of repeated fraud from a single alleged scheme would...render the pattern requirement meaningless." *Bernstein v Misk,* 948 F. Supp. 228, 237 (E.D.N.Y. 1997).

As stated above, plaintiffs fail to plead an open-ended pattern of racketeering activity. Plaintiffs summarily plead that the Leeds Firm "has created a system for the processing of employment discrimination claims against corporate America." (Am. Cplt, ¶ 33). Yet, except for conclusory statements, plaintiffs allege only that the Leeds Firm continues to seek and attract clients with employment discrimination claims. "[T]he most that can be said for this aspect of the pleading is that it alleges that defendants...are continuing to do business." *Ochs v Shearson Lehman Hutton Inc.,* 768 F. Supp. 418, 426 (S.D.N.Y. 1991). At best, plaintiff alleges a narrow purpose to the alleged racketeering activity, focused on plaintiff, and the purported class members, and thus, plaintiff fails to allege a threat of continuing criminal activity. *See Price v. Gast,* 2000 WL 369381, *9 (finding that the defendants' narrow purpose of extinguishing an entity's contractual rights was inadequate to allege a threat of continuing criminal activity). Accordingly, plaintiff does not, and cannot, adequately allege a pattern of racketeering activity.

**Fourth:** Plaintiff does not adequately allege causation. *Moore* v. *Painewebber, Inc.,* 189 F.3d 165, 169-70 (2d Cir. 1999), explains:

> The causation requirement, which is jurisdictionally mandated, has two different components. There must be "transaction causation," meaning that the misrepresentation must have led the plaintiffs to enter into the transactions at issue, and there must be "loss causation," meaning that the misrepresentation must be both an actual and a proximate source of the loss that the plaintiffs suffered.

Plaintiff alleges neither form of causation. Plaintiff does not allege "transaction causation" because he never pleads that "but for the defendant's wrongful acts, the plaintiffs

would not have entered into the transactions that resulted in their losses." *Id.* at 172. Plaintiff does not allege that, "but for" the purported "secret agreement" between Prudential and the Leeds Firm, he would not have retained the Leeds Firm, or litigated his employment dispute against Prudential, or turned down Prudential's $200,000 settlement, or even received more money. He also does not plead "loss causation" because no alleged misrepresentation by the Leeds Defendants caused plaintiff to suffer any injury. Vaughn estimated his damages and the Leeds Defendants achieved that goal. In fact, the contrary statements in plaintiff's March 5, 1998 execution and acknowledgement documents and the October 1998 Settlement Agreement with Prudential - that plaintiff knew exactly what he was doing - belie any reasonable reliance on statements now alleged to be fraudulent. *Danann Realty Corp.* v. *Harris,* 5 N.Y.2d 317, 323 (1959). Thus, there is no claim of loss causation.

**Fifth:** In addition, "a civil RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *See Price v. Gast*, 2000 WL 369381, *9. Yet, plaintiff's claim of injury does not provide him with standing. As set forth above, plaintiff can allege no injury as he estimated the damages he was entitled to from Prudential and received that amount.[8] Furthermore, to the extent plaintiff has any claim for monetary redress (which he does not), his remedy lies in a claim under state law. *See id.* (holding that, to the extent the plaintiff had a claim as to his extinguished contractual rights, his remedy lied in breach of contract).

**Sixth:** Finally, "[w]here no cause of action for substantive violations of RICO is stated, the RICO conspiracy claim cannot stand." *Casio Computer Co.,* v. *Sayo,* No. 98CV3772, 2000

---

[8] Moreover, plaintiff's allegation of bribery under New York law, as a RICO predicate, is likewise insufficient because of plaintiff's inability to properly allege that he was "actually harmed" by any alleged acts of the defendants. *See Jaggie v. Northstar Tubular Corp.,* 195 A.D.2d 336, 600 N.Y.S.2d 18 (1st Dep't 1993).

WL 1877516, at *15 (S.D.N.Y. Oct. 13, 2000). Because plaintiff fails to plead facts to show a violation of section 1962(c), plaintiff cannot assert a claim for RICO conspiracy violation under section 1962(d). Here, apart from the defects defeating plaintiffs entire RICO claim, there is a separate flaw in his allegations under § 1962(d). "[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance." *FD Prop. Holding, Inc.* v. *US Traffic Corp.,* 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (internal quotations omitted); *see Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) (upholding dismissal of complaint where complaint failed to specifically allege factual basis for the finding of a conscious agreement among defendants to commit the alleged predicate acts). Plaintiff s allegation of a conspiracy consists of nothing more than summary assertions that the defendants "conspired with one another to violate the provisions of 18 U.S.C. § 1962, as set forth above" and that each defendants "knowingly agreed to commit the aforementioned acts in violation of 18 U.S.C. § 1962." (Am. Cplt. ¶¶ 71-72) Plaintiff's allegations are "devoid of factual assertions concerning the nature of the agreement" and "insufficient to state a claim under Section 1962(d)." *Allen,* 2001 WL 293683 at *9; *Vapor Tech. Partners, L.P.* v. *Vapor Tech of Delaware, Inc.,* No. 91 Civ. 3800, 1992 WL 14986, (S.D.N.Y. Jan 22, 1992).

## POINT III

### SHOULD THIS ACTION REMAIN, PLAINTIFF'S OTHER STATE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF

Many of plaintiff's state law claims are time-barred by the various applicable statutes of limitations as any alleged injury or breach occurred at the time of plaintiff's settlement with

Prudential in 1998, and plaintiff should have discovered any such injury at that time as well. Moreover, plaintiff's state law claims fail for other reasons, as set forth below.

### A. Plaintiff's Claim For Fraud And Conspiracy To Defraud Must Fail

Under New York law, to sustain plaintiff's claim of civil fraud, he must plead, with particularity (as was required as to his allegation of mail and wire fraud), a material omission, or misrepresentation of a material fact, that was made to the plaintiff, scienter, justifiable reliance and damages. *See Lama Holding company v. Smith Barney, Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996); N.Y. C.P.L.R. 3016(a). Yet, as set forth above in Point II, Section B, plaintiff has failed to adequately plead such a claim.

In addition, plaintiff's cause of action for fraud is also time-barred. As plaintiff alleges in the amended complaint, the alleged wrong, including any purported misrepresentations, occurred on February 13, 1998 (*see* Am. Cplt. ¶ 45). Accordingly, the alleged "wrongdoing" occurred on that date, and thus, the claim of fraud began to accrue and expired over a year ago. *Hoffenberg v. Hoffman & Pollok*, 288 F. Supp.2d 527, 536 (S.D.N.Y. 2003). Further, the purported misrepresentations were discovered by plaintiff, as evidenced by Exhibit "E" to the Morelli Declaration, on March 5, 1998, and any tolling for such discovery would expire two years thereafter. *See id.* Additionally, the "burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action rests on the plaintiff, who seeks the benefit of the exception." *See Lefkowitz v. Appelbaum*, 258 A.D.2d 563, 685 N.Y.S.2d 460 (2d Dep't 1999). Plaintiff's conclusory allegations, in Am. Cplt. ¶ 12, does not suffice.

Moreover, plaintiffs' "conspiracy to defraud" count is a theory in search of a claim for relief. New York law does not recognize any independent tort of civil conspiracy. *Resnick v*

21

*Resnick,* 722 F. Supp. 27, 37 (S.D.N.Y. 1989); *Sterling Nat'l Bank v. Federated Dept. Stores*, 612 F. Supp. 144 (S.D.N.Y. 1985). In this State, conspiracy allegations do not state a separate claim for relief; they merely connect the actions of individual defendants to the damages caused by separate tortuous conduct. *Grove Pres, Inc. v Angleton,* 649 F.2d 121, 123 (2d Cir. 1981). Hence the complaint's separately pleaded "conspiracy" claim is no claim at all.

    B. Plaintiff's Claim For Breach Of Fiduciary Duty And Breach Of Contract Must Fail

    Plaintiffs' fiduciary duty claim fails because it merely mimics an inadequate malpractice claim. A cause of action alleging breach of fiduciary duty is merely duplicative of a claim of malpractice, absent allegation of an independent intentional tort. *CVC Capital Corp. v Weil, Gotshal, Manges,* 192 A.D.2d 324 (1st Dept. 1993). Thus, as no independent intentional tort is alleged (Am Cplt. ¶¶ 76-80), plaintiff's breach of fiduciary duty claim should be dismissed.

    Indeed, plaintiff's breach of contract claim is also part and parcel of an inadequate malpractice claim. *See, e.g., Wechsler v. Squadron, Ellenoff, Plesent & Scheinfeld, L.L.P.*, 212 B.R. 34, 39 (S.D.N.Y. 1997); *Rastelli v. Sutter, Moffatt, Yannelli & Zerin, P.C.*, 87 A.D.2d 865, 449 N.Y.S.2d 305 (2d Dep't 1982) (recognizing claim of legal malpractice and breach of contract were one and the same). Thus, and as a malpractice claim would not survive, as set forth below, plaintiff's breach of contract claim must also be dismissed.

    Thus, a legal malpractice claim by plaintiff could not survive because the amended complaint fails to adequately allege damages (apparently plaintiff realized this and chose not to pursue such a claim). New York law requires a malpractice plaintiff to plead actual damages proximately caused by the defendant's negligence. *See Littman Krooks Roth & Ball P.C. v N.J. Sports Prods., Inc.,* 2001 WL 963949, at *3 (S.D.N.Y. Aug. 22, 2001); *Phillips-Smith Specialty Retail Group v. Parker Chapin Flattau & Kimpl L.L.P.,* 265 A.D.2d 208, 210 (1st Dept. 1999).

The complaint is silent on plaintiff's own underlying discrimination claim, bereft of any claim that he would have recovered more under different circumstances. Thus, there is no actionable claim of injury in malpractice or breach of fiduciary duty. *See, e.g., Icahn v Todtman, Nachamie, Spizz & Jones, P.C.,* No. 9 Civ. 11783, 2001 WL 1160582, at *8 (S.D.N.Y. Oct. 1, 2001) (noting that "[t]he speculative nature of what [plaintiffs] might have recovered at trial is precisely the risk that [their] pre-trial settlement avoided") (internal quotations omitted). At worst, thus, plaintiff's claim for a breach of fiduciary duty must fail.

Moreover, any breach of fiduciary duty began to accrue three years from the alleged breach. *Kaszirer v. Kaszirer*, 286 A.D.2d 598, 730 N.Y.S.2d 87 (1st Dep't 2001); NY CPLR 214[4]; *compare Alicanti v. Bianco,* 767 N.Y.S.2d 815, 816 (2d Dep't 2003) (legal malpractice action "runs from the time of the alleged malpractice, not when it is discovered").

## C. Plaintiff's Claim For Breach Of An Implied Covenant Of Good Faith And Fair Dealing Must Fail

Plaintiff's claim for breach of an implied covenant of good faith and fair dealing fares no better for the reasons noted *supra.* Thus, "although plaintiff may ascribe a bad motive to defendant's conduct ... a claim for breach of the implied covenant of good faith and fair dealing cannot substitute for an unsustainable breach of contract claim." *Lawrence v. CB Richard Ellis, Inc.,* 2005 WL 540535 (N.Y. Sup. App. Term 2005); *SkilledGames LLC v. Brody*, 1 A.D.3d 247, 767 N.Y.S.2d 418 (1st Dep't 2003).

## D. Plaintiff's Claims For Attorney's Fees Should Be Dismissed

Plaintiff also seeks attorneys' fees despite the fact that New York follows the "American Rule," which holds that each party is responsible for his own legal fees "in the absence of any pertinent contractual or statutory provision" providing otherwise. *Chapel v. Mitchell,* 84 N.Y.2d

23

345, 349, 618 N.Y.S.2d 626, 628 (1994). Here, plaintiff has not and cannot cite to any contractual or statutory provisions supporting his demand for attorneys' fees. Accordingly, as a matter of law, plaintiff is not entitled to attorney's fees. *Cf. New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 315-16, 639 N.Y.S.2d 283, 287 (1995) (dismissing claim for attorney's fees).

POINT IV

PLAINTIFFS' ACTION SHOULD BE DISMISSED FOR INSUFFICIENCY<br>OF PROCESS AND INSUFFICIENCY OF SERVICE OF PROCESS

A. Certain Of The Individual Leeds Defendants Were Not Properly Served With The Summons And Complaint Or Amended Complaint.

While plaintiff has failed to file proof of service of his pleadings "within a reasonable time after service," pursuant to Fed. Civ. Pro. R. 5(d), and thus the Leeds Defendants are unable to properly challenge service, upon information and belief, the individual defendants, Lenard Leeds, Steven A. Morelli, James Vagnini, Frederic David Ostrove, and Robert John Valli, Jr., were never served pursuant to Fed R. Civ. Pro. 4(e)(2), which does not allow for service on a individual's "managing agent" (which we suspect plaintiff may claim to have done). See Hardy v. O'Daniel, 16 F.R.D. 355 (D.D.C. 1954); Fleming v. Malouf, 7 F.R.D. 56 (W.D.N.Y. 1947). Nor do believe that plaintiff relied on any other provision in the Federal Rules of Civil Procedure, allowing for service of process on an individual. Thus, service of process was never effected on certain of the individual Leeds Defendants, and certainly not within 120 days from filing of the Complaint on October 25, 2004. *See* Fed. R. Civ. Pro. R. 4(m), which requires that plaintiffs serve the summons within 120 days from filing of the complaint. Thus, the complaint should be dismissed as to these individual Leeds Defendants. See McWherter v. CBI Services, Inc., 153 F.R.D. 161 (D. Hawai'i 1994) (it was plaintiff's burden to show "good cause" for not

24

serving defendant within 120 days of filing complaint, and upon failure to meet that burden, plaintiff's suit was dismissed), aff'd, 105 F.3d 665 (9th Cir. 1997).

## CONCLUSION

For the reasons set forth above and in the documents accompanying this motion, we respectfully request that this court dismiss or stay this action and grant such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          April 22, 2005

LITCHFIELD CAVO L.L.P.

By:    _____
       Daniel T. Hughes (DTH-4622)
       Kevin L. Spagnoli (KLS-1717)
       Attorneys for Defendants Leeds, Morelli &
       Brown, P.C. (incorrectly sued herein as
       Leeds, Morelli & Brown, LLP, Leeds &
       Morelli, and Leeds, Morelli & Brown),
       Lenard Leeds, Steven A. Morelli, Jeffrey K.
       Brown, James Vagnini, Frederic David
       Ostrove, and Robert John Valli, Jr.

25

### *AFFIDAVIT OF SERVICE*

STATE OF NEW YORK    )
                          )ss.:
COUNTY OF NEW YORK  )

      **AIDA JIMENEZ,** being sworn, deposes and says:  I am not a party to the action, am over 18 years of age, reside in Bronx, New York, and am employed in the office of Litchfield Cavo.

      On the **22nd** day of **April, 2005**, I served a true copy of the annexed **NOTICE OF MOTION, DECLARATION OF STEVEN MORELLI AND MEMORANDUM OF LAW,** by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known addressee(s) as indicated below:

TO:    Blaine H. Bortnick
         Liddle Robinson, LLP
         685 Third Avenue
         New York, New York
         (212) 687-8500

         Gerard Harper
         Paul, Weiss, Rifkind, Wharton & Garrison, LLP
         1285 Avenue of the Americas
         New York, NY 10019
         (212) 373-3000
               -and-
         Lowenstein Sandler, P.
         1330 Avenue of the Americas
         New York, NY 10019
         *Attorneys for Prudential Securities, Inc. and*
         *Prudential Financial, Inc.*

                                           **AIDA JIMENEZ**

Sworn to before me this
**22nd** day of **April, 2005**

    **Notary Public**

JOSEPHINE CASORIA
Notary Public, State of New York
No. 01CA5022698
Qualified in Nassau County
Commission Expires Jan. 18, 20__06