UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

JEFFREY S. VAUGHN, individually and on behalf
of those Class Members similarly situated,

                              Plaintiffs,

      -against-

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, LLP., LEEDS & MORELLI,
LEEDS, MORELLI & BROWN, PRUDENTIAL
SECURITIES, INC., Successor PRUDENTIAL
FINANCIAL, INC., WACHOVIA CORPORATION,
WACHOVIA SECURITIES, LLC, LENARD LEEDS,
STEVEN A. MORELLI, JEFFREY K. BROWN, and
JOHN DOES, JAMES VAGNINI, FREDERIC DAVID
OSTROVE, ROBERT JOHN VALLI, FR., DISCRIMINATION
ON WALL STREET, INC. and DISCRIMINATION ON WALL
STREET MANHATTAN, INC., AND JOHN DOES, ESQS,
1-10 a fictitious designation for presently unknown licensed
Attorneys, professionals and/or unknown persons or entities,

                         Defendants.

--------------------------------------------------------------- x

Civil Case No.: 04 CV 08391

Declaration of Steven Morelli
in Support of Defendants'
Motion to Dismiss or Stay
The Action

STEVEN MORELLI, an attorney admitted to practice before this court, declares under

penalties of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1.     I am a founder of the law firm of Leeds, Morelli & Brown, P.C. a defendant in

this action. I submit this declaration in support of the within motion filed on behalf of the Leeds

Defendants to dismiss or stay this action.

2.     Leeds, Morelli & Brown has maintained at its Carle Place office certain

documents either referenced in the amended complaint or related to the allegation therein.

3.    These documents were kept in the normal cause of business and the following are annexed herein:

|          |                                                                                                                          |
|----------|--------------------------------------------------------------------------------------------------------------------------|
| Exhibit "A": | Vaughn Amended Complaint                                                                                              |
| Exhibit "B": | January 5th, 1998 Retainer Agreement                                                                                 |
| Exhibit "C": | Type written statement of Jeffrey Vaughn                                                                             |
| Exhibit "D": | Questionnaire filled out by Mr. Vaughn                                                                               |
| Exhibit "E": | Signature page executed by Jeffrey Vaughn on March 5th, 1998 attesting to his review of the February 12, 1998 Agreement |
| Exhibit "F": | Settlement Agreement and General Release Executed by Prudential and Vaughn on October 27, 1998                       |

4.    For the reasons set forth in the accompanying Memorandum of Law, I respectfully request that this Court dismiss the action its entirety or dismiss or stay the action pending arbitration.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Carle Place, New York
       April 22, 2005

                                                    STEVEN A. MORELLI

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
                                :

JEFFREY S. VAUGHN, individually and on behalf of  :    Case No. 04 Civ. 8391 (DLC)
those Class Members similarly situated,               :

                                :    **AMENDED COMPLAINT**

          Plaintiff,                 :

                                :

      -against-                     :

                                :

LEEDS, MORELLI & BROWN, P.C., LEEDS,   :
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,  :
LEEDS, MORELLI & BROWN, PRUDENTIAL   :
SECURITIES, INC., PRUDENTIAL FINANCIAL, INC.,  :
LENARD LEEDS, STEVEN A. MORELLI, JEFFREY  :
K. BROWN, JAMES VAGNINI, FREDERIC DAVID  :
OSTROVE, ROBERT JOHN VALLI, JR.,  :
DISCRIMINATION ON WALL STREET, INC.  :
DISCRIMINATION ON WALL STREET,  :
MANHATTAN, INC., JOHN DOES, 1-10 AND JANE  :
DOES, 1-10 a fictitious designation for presently  :
unknown licensed attorneys, professionals and/or  :
unknown persons or entities,,             :

                                :

          Defendants.              :
-------------------------------------------------------------------- x

        Plaintiff, Jeffrey S. Vaughn, individually and on behalf of those Class Members similarly

situated, as and for their Amended Complaint against the Defendants, allege and state as follows:

## PARTIES

        1.     Plaintiff, Jeffrey S. Vaughn, (hereinafter "Vaughn"), is an individual residing

at 475 Carlton Avenue, Apartment 5H, Brooklyn, New York 11328. Mr. Vaughn brings these claims

individually and on behalf of all Class Members (collectively, "Plaintiff").

1

2.     At all relevant times, Defendant, Prudential Securities Incorporated (hereinafter "Prudential Securities"), was a corporation with offices at One Seaport Plaza, New York, New York 10292. Prudential Financial Inc. (hereinafter "Prudential Financial") is the successor in interest to Prudential Securities. Prudential Financial has an executive office address of 751 Broad Street, Newark, New Jersey. (Prudential Securities and Prudential Financial are collectively referred to as "PSI").

3.     At all relevant times, Defendant, Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, and Leeds, Morelli & Brown, (hereinafter collectively "Leeds-Morelli"), was either a professional corporation, a partnership, L.L.C. or other entity practicing law in the State of New York with its principal place of business at One Old Country Road, Suite 282, Carle Place, New York.

4.     At all relevant times, Defendant, Lenard Leeds (hereinafter "Leeds"), was a lawyer licensed to practice law in the State of New York and a partner of Leeds-Morelli.

5.     At all relevant times, Defendant, Steven A. Morelli (hereinafter "Morelli"), was a lawyer licensed to practice law in the State of New York and a partner of Leeds-Morelli.

6.     At all relevant times, Defendant, Jeffrey K. Brown (hereinafter "Brown"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli.

7.     At all relevant times, Defendant, James Vagnini (hereinafter "Vagnini"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli.

8.     At all relevant times, Defendant, Frederic David Ostrove (hereinafter "Ostrove"), was a lawyer licensed to practice law in the State of New York and a partner or

2

employee of Leeds-Morelli.

9. At all relevant times, Defendant, Robert John Valli, Jr. (hereinafter "Valli"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli. Leeds, Morelli, Valli, Ostrove, Vagnini and Brown are hereafter collectively referred to as the "Lawyer Defendants".

10. At all relevant times, Defendants Discrimination on Wall Street, Inc. and Discrimination on Wall Street, Manhattan, Inc., held themselves out as charitable, non-profit institutions dedicated to eradicating racial bias in employment in the financial industry. Instead, these institutions were business corporations which were the alter ego of Leeds-Morelli and functioned primarily to solicit business for Leeds-Morelli. These two Defendants are hereinafter collectively referred to as D.O.W.S.. D.O.W.S has an address of One Old Country Road, Carle Place, New York.

11. At all times hereinafter mentioned John Does 1-10 and Jane Does 1-10 (hereinafter collectively referred to as "Does"), are attorneys, professionals, corporations, and/or unknown persons or entities who are associated with Defendants or conspired with Defendants and/or whose identity and/or tortious acts have not been identified or revealed.

## OVERVIEW

12. This action involves Leeds-Morelli and the Lawyer Defendants, the former lawyers for Plaintiff, conspiring and entering into a written secret agreement or agreements with PSI (the "Secret Agreements"). The content of the Secret Agreements is not generally known. There is at least one such agreement dated February 13, 1998. Upon information and belief, several other

subsequent agreements exist, including one in May 1999 and November 2001. Upon information and belief, the Secret Agreements provided, among other things, for a cap on the claims of certain of Leeds-Morelli's clients and provided for the payment of fees by PSI directly to Leeds-Morelli without disclosure to Plaintiff. The existence of the Secret Agreements was not known to Plaintiff until in or about October 2004.

13.     While, upon information and belief, PSI paid monies to Leeds-Morelli pursuant to the Secret Agreements in exchange for consideration such as the capping of claims and preventing Plaintiff from suing in court, PSI entered into the Secret Agreements in such a manner that it knew it would be substantially shielded from Plaintiff's claims and would cause Leeds-Morelli to engage in undisclosed and unethical conflicts of interest which would benefit PSI and be to the detriment of Leeds-Morelli's clients.

14.     Upon information and belief, Leeds-Morelli and the Lawyer Defendants, without Plaintiff's knowledge, agreed to cap various claims under their agreement with PSI and refused to press Plaintiff's claims until they received payment from PSI, which payments were concealed from Plaintiff and Plaintiffs' Class.

15.     In addition to failing to disclose that it was compensated by a third party for representing Plaintiff, Leeds-Morelli charged Vaughn a full one-third contingency fee. In addition to charging this contingency fee, Leeds-Morelli deducted one percent of Vaughn's and the other Subclass Members' net recovery for payment to D.O.W.S., which was categorized as a "donation".

## JURISDICTION

16.     This Court has federal question jurisdiction over the Third and Fourth causes

4

of action of this Amended Complaint pursuant to 28 U.S.C. §1331 and pendant and supplemental

jurisdiction over the remaining causes of action pursuant to 28 U.S.C. §1367 and applicable law.

## VENUE

17:    Venue is also proper in this district under 28 U.S.C. §1391(b) because: (a) a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and/or (b)

one or more of the Defendants may be found within this district.

## INTRODUCTION

18.    Vaughn and the other Class Members retained the law firm of Leeds-Morelli

in or about 1998 to assert their claims for racial discrimination against PSI.

19.    Vaughn and the other Class Members resolved their claims against PSI in

accordance with the advice rendered to them by Leeds-Morelli.

20.    One-third of Vaughn's and the other Class Members' recovery was deducted

as attorney's fees in accordance with their contingency fee agreements with Leeds-Morelli.

21.    At no time did Leeds-Morelli advise Plaintiff or Plaintiffs' Class in writing or

otherwise either that they had any conflict of interest or that they entered into a contract with PSI

which Plaintiff or the Class had not been shown, nor seen. The nature and existence of such

contract(s) was concealed from Plaintiff by Leeds-Morelli. Leeds-Morelli was required to disclose

the nature and existence of this contract to Plaintiff and Class Members and obtain Plaintiff's and the

Class Member's consent to the conflict of interest in writing in accordance with N.Y. Code of

Professional Responsibility.

5

22.     This contract and other dealings between Leeds-Morelli and PSI constituted an irreconcilable conflict of interest, constituted an illegal aggregate settlement, provided compensation to Leeds-Morelli for representing Plaintiff which was not disclosed to Plaintiff, allowed PSI to interfere with the independent professional judgment of Leeds-Morelli in exchange for compensation, and was the result of Leeds-Morelli engaging in deceit and collusion with the intent to deceive Plaintiff and Plaintiffs' Class. PSI, for its part received general releases from Plaintiff and the Plaintiff's Class.

## CLASS ALLEGATIONS

23.     Vaughn brings this case on his own behalf and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a plaintiff class consisting of all persons who were represented by Leeds-Morelli with claims against PSI and whose rights were affected by the Secret Agreements between Leeds-Morelli and PSI, including the agreement dated February 13, 1998. The Class is further divided into a subclass of those individuals who donated money to D.O.W.S. (the "Subclass"). There exists no conflict of interest between Vaughn and the other Class Members. Vaughn and his counsel will fairly and adequately represent the interests of the Class.

24.     Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class exceeds 500 persons. The exact number of members in the Class and in the Subclass is not known to Vaughn but can be easily ascertained from the records of the Defendants.

25.     Vaughn's claims are typical of the claims of the Class and the Subclass. Vaughn and all Class Members and Subclass Members sustained damages as a result of Defendants'

wrongful conduct complained of herein. Vaughn and all Class Members are entitled to the return of the improper and illegal payments made to Leeds-Morelli and the Lawyer Defendants by PSI. All Class Members have been damaged in precisely the same fashion, by precisely the same conduct.

26.     Vaughn will fairly and adequately protect the interest of the Class Members and has retained counsel competent to prosecute this class litigation. Vaughn has no interests that are adverse or antagonistic to those of the Class.

27.     A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy. At the center of this action are agreements between Leeds-Morelli and PSI, which were not disclosed to Plaintiff and which, upon information and belief, provide for payment to Leeds-Morelli and/or the Lawyer Defendants without their clients' knowledge and were designed to interfere with Leeds-Morelli and the Lawyer Defendants' fiduciary duties to the Class Members to secretly arrange an aggregate settlement of the claims.

28.     The aforementioned agreement(s) and the conspiracy it furthered were in violation of law and the ethical rules governing attorneys. In addition to entering into the Secret Agreements with the company their clients had retained them to sue and compromising their loyalty in such agreements, Leeds-Morelli also charged their clients attorneys' fees for representation in which they were also, upon information and belief, compensated directly by PSI. The Subclass' claims, regarding donations to a supposed charitable organization called D.O.W.S., are also best brought as a class action for the same reasons.

29.     Common questions of law and fact exist as to all Class Members, and they predominate over any questions affecting solely individual Members of the Class. Among the questions of law and fact common to the Class are:

7

A) Whether Leeds-Morelli and Lawyer Defendants entered into the Secret Agreements.

B) Whether the Secret Agreements provided for, among other things, payments by PSI to Leeds-Morelli and caps on PSI's exposure.

C) Whether the Secret Agreements constituted an illegal aggregate settlement.

D) Whether the Secret Agreements were designed to shield PSI from potentially substantial legal and reputational harm in return for payments to Leeds-Morelli.

E) Whether Plaintiff was aware of the Secret Agreements.

F) Whether the Secret Agreements are in violation of the New York Code of Professional Responsibility, are illegal, void ab initio and unenforceable;

G) Whether the conflicts of interest created by the terms of the Secret Agreements caused Leeds-Morelli and the Lawyer Defendants to be placed in an irreconcilable conflict of interest which prevented them from ethically representing Plaintiff in accordance with their professional duties;

H) Whether Leeds-Morelli and the Lawyer Defendants have been unjustly enriched by their receipt of payments/fees in exchange for unethical and illegal conduct;

I) Whether the Plaintiff is entitled to the disgorgement of the payments to Leeds-Morelli and the Lawyer Defendants of their fees, and upon information and belief, the payment from PSI for the same services;

J) Whether Leeds-Morelli and the Lawyer Defendants acted unethically when they had clients donate a percentage of their recovery to D.O.W.S., which they represented was a charitable organization, but was, in fact, simply an entity primarily devoted to soliciting clients for Leeds-Morelli;

K) Whether Vaughn and the other Subclass Members are entitled to an accounting of all funds paid to D.O.W.S. as well as the return of and information regarding the use to which those funds were put.

      30.    Plaintiff envisions no difficulty in the management of the litigation as a Class

Action.

## FACTS COMMON TO ALL COUNTS

31.    Leeds-Morelli holds itself out to be a champion of those who have

experienced discrimination in employment. Leeds-Morelli describes itself in its website as follows:

> Our Firm is considered to be one of the *foremost authorities in the area of*
> *Employment Law, particularly in the area of Civil Rights and Discrimination*
> *Law*. We take pride in servicing our clients by vigorously representing their
> interests, and striving to maintain the highest standards of integrity and
> professionalism.
>
> While offering general services, Leeds, Morelli & Brown focuses on the areas
> of Employment and Civil Rights Law. We represent our clients in litigation
> and before administrative and/or regulatory agencies in matters involving
> employment discrimination, wrongful discharge, or violations of other
> federal, state or local laws. *The Firm has enjoyed precedent setting verdicts,*
> *with national implications, in the area of employment discrimination and has*
> *earned us a reputation as a leader in the field*.

(Emphasis added).

32.    Leeds-Morelli claims that not only does it seek recovery on behalf of its

clients, but also it claims to have an objective to change the way minorities are treated in the

workforce. Leeds-Morelli repeatedly refers to its relationship with and support of former President

Clinton and Senator Hilary Clinton as evidence of Leeds-Morelli's supposed commitment to civil

rights. In reality, Leeds-Morelli's commitment is to sell its fiduciary duty of loyalty owed to its

clients to the corporations it is retained to sue.

33.    Leeds-Morelli has created a system for the processing of employment

discrimination claims against corporate America as follows:

a. Solicitation - Leeds-Morelli pays "runners" to recruit African-American and other

minority employees of large, public corporations who have suffered workplace discrimination or

9

retaliation and to induce the employees to employ Leeds-Morelli to pursue their employment discrimination claims. Leeds-Morelli has used D.O.W.S. as a front to employ such runners.

b. Retainer - Leeds-Morelli then holds meetings with prospective clients all over the country where the lawyers and the recruiters tout the credentials of the firm in obtaining large recoveries for employment discrimination claims like those of the prospective clients. Prospective clients are then signed up with retainer agreements whereby the clients engage Leeds-Morelli to represent them with respect to the employment claims and typically promise to pay one-third (1/3) of the recoveries to the firm for legal fees.

c.    Agreement between Leeds-Morelli and Defendant Corporation - After acquiring a sufficiently large enough client inventory, Leeds-Morelli approaches the corporation with a proposition for the corporation to pay Leeds-Morelli a large sum of money up front to represent the clients in a secret and confidential settlement process, in order to buy secrecy for the corporate employer and limit the corporate employers' financial exposure for its alleged illegal discrimination. The clients are unaware of the proposition to pay Leeds-Morelli.

d. Settlement Process – Typically, a three-step alternate dispute resolution process is set up and involves an informal meeting between the client and a representative of the corporate employer to seek to settle the claim early in the process; followed by a mediation also seeking to settle the claim; and then, failing settlement, a binding mediation. The clients waive their rights to trial by jury. Typically, if not always, claims are settled and never reach the "binding mediation" stage.

e. Aggregate Settlement - During or at the outset of the settlement process, Leeds-Morelli and the corporation typically enter into an illegal aggregate settlement to resolve all of the remaining claims for a lump sum, without disclosure to the clients. The clients are then deceived that their

10

claims are being pursued when in fact the claims have already been resolved or the recovery is capped by agreement between Leeds-Morelli and the clients' employer. In fact, upon information and belief, Leeds-Morelli never intended to prosecute their clients' claims. Rather, upon information and belief, the intent was to enter into the Secret Agreements and obtain millions of dollars in direct payments to Leeds-Morelli from the corporations.

34.    Leeds-Morelli and the corporations conceal from the clients the prepayment of fees, their unethical conflicts of interest, the aggregate nature of the settlements, and other important elements of the secret agreements between them. The clients enter into the three-step alternative dispute resolution process unaware that their employers have bought off their lawyers, and unaware that their lawyers had entered into secret agreements whereby the lawyers' duties to the corporations and their own financial self-interest surmounted the duties the lawyers owed to the clients. By design, no claimant ever gets his or her day in court, or even in "binding mediation". The clients are instead browbeaten into accepting inadequate settlements because through the process Leeds-Morelli and the defendants have taken away any viable alternatives to accepting what the companies offer. Aside from PSI, Leeds-Morelli has, upon information and belief, entered into this pattern of abuse of clients in settlements with Prudential Insurance, Nextel Corporation, Bank of New York, Chase Manhattan Bank, Aetna Insurance Company, J.P. Morgan, Citigroup, Bear Stearns, Penguin Putnam and others over a period ranging from 1998 until at least April 2003, if not to the present.

35.    At no time did Leeds-Morelli advise Plaintiff they had any conflict of interest or that they had entered into Secret Agreements with PSI which Plaintiff had never seen and the nature and existence of which were concealed from them.

36.    Upon information and belief, the February 13, 1998 agreement and other

11

dealings between and among the Defendants constituted an irreconcilable conflict of interest, constituted an illegal aggregate settlement, provided compensation to Leeds-Morelli for representing Plaintiff and which was not disclosed to them, and was the result of the Defendants engaging in deceit and collusion in concert with the intent to deceive Plaintiff.

37.    Upon information and belief, PSI and the Does conferred, offered and agreed to confer upon Leeds-Morelli benefits, payments, and promises of future benefits as consideration for Leeds-Morelli and the Lawyer Defendants knowingly violating and agreeing to violate their obligations to Plaintiff.

38.    The benefits provided to Leeds-Morelli and/or the Lawyer Defendants by PSI and the Does were accompanied with an intent by PSI and the Does to influence the actions of Leeds-Morelli and the Lawyer Defendants who were Plaintiff's agent and fiduciary. These acts invaded Plaintiff's rights to undivided loyalty from Leeds-Morelli and the Lawyer Defendants.

39.    PSI, the Does, Leeds-Morelli and the Lawyer Defendants (a) devised a scheme and/or artifice to defraud Plaintiff and the Plaintiff's Class, and (b) engaged in deceit and collusion, and consented to deceit and collusion, with the intent to deceive Plaintiff and the Plaintiff's Class.

40.    The aforesaid conduct constituted commercial bribery and commercial bribe receiving in violation of New York Penal Law §180.03 and §180.08.

41.    Leeds-Morelli encouraged Plaintiff to pay sums to D.O.W.S. and often took a percentage of any recovery Plaintiff received as a "donation" to D.O.W.S. Vaughn "donated" one percent of his recovery.

42.    Leeds-Morelli and/or the Lawyer Defendants represented that D.O.W.S. was a charitable organization. In fact, D.O.W.S. was simply the method by which Leeds-Morelli and the

Lawyer Defendants employed runners to solicit business on their behalf. Upon information and belief, Leeds-Morelli and/or the Lawyer Defendants promised these runners a percentage of the recovery in any lawsuit by clients they solicited and employed them under the D.O.W.S. framework.

43.    Upon information and belief, Leeds-Morelli and D.O.W.S. are one and the same. Upon information and belief, Leeds-Morelli failed to comply with the regulations concerning charitable institutions and failed to keep separate bank accounts and records for D.O.W.S.

## FIRST CAUSE OF ACTION
(Fraud, as Against Leeds-Morelli, the Lawyer Defendants and D.O.W.S.)

44.    Plaintiff repeats, reiterates and realleges Paragraphs 1 through 43 of the Amended Complaint as if fully set forth herein.

45.    On various dates, both prior to February 13, 1998 and subsequently, including at least through October 25, 2001, Leeds-Morelli and the Lawyer Defendants made misrepresentations of material facts, both express and implied, to Plaintiff, such as that they were an advocate for Plaintiff's interests, that they had an adversarial relationship with PSI, and that their loyalty was to Plaintiff and not to themselves or their adversary, PSI.

46.    During the period referenced above, Leeds-Morelli and the Lawyer Defendants, on behalf of D.O.W.S., made misrepresentations of material fact to the Subclass including, among other things that D.O.W.S. was a charitable not-for profit organization dedicated to changing discriminatory practices in the financial industry.

47.    Leeds-Morelli and the Lawyer Defendants failed to disclose factual information that they were required to disclose to Plaintiff, including, among other things in addition

13

to the allegations set forth above, (a) that they had entered into Secret Agreements with PSI; (b) that the Secret Agreements provided for payments to Leeds-Morelli directly by PSI that were not to be disclosed to Plaintiff; (c) that the Secret Agreements provided for a cap on Plaintiff's claims; (d) that they had an irreconcilable conflict of interest that was required under law to be disclosed to Plaintiff in writing, (e) that they had engaged in an aggregate settlement, which created conflicts of interest between Plaintiff and Leeds-Morelli and; (f) that D.O.W.S. was not a genuine charity but rather a business solicitation entity for Leeds-Morelli.

48.    Leeds-Morelli and the Lawyer Defendants never had any intention to faithfully represent Plaintiff with respect to claims they may have had against PSI. Rather, their intent was to obtain payments for themselves from PSI as set forth above.

49.    Leeds-Morelli and the Lawyer Defendants concealed from Plaintiff the nature, extent and existence of the Secret Agreements between Leeds-Morelli and PSI.

50.    At the time these misrepresentations, deceit and concealment occurred, Leeds-Morelli and the Lawyer Defendants knew the misrepresentations were false and that the failure to disclose the information required to be disclosed was done for the purposes of deceiving Plaintiff.

51.    When the misrepresentations and the concealment occurred, Plaintiff did not know the true facts, and reasonably believed and relied upon the representations to be true.

52.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendants fraud and participation in the conspiracy to defraud Plaintiff. The conduct of Leeds-Morelli and the Lawyer Defendants was malicious and/or in wanton and willful disregard of Plaintiff's rights. Leeds-Morelli and the Lawyer Defendants knew or should have known that their actions would harm Plaintiff and were recklessly indifferent to the consequences of their actions

14

against Plaintiff.

## SECOND CAUSE OF ACTION
(Aiding and Abetting Fraud Against PSI, D.O.W.S. and the Does)

53.    Plaintiff repeats, reiterates and realleges Paragraphs 1-52 of the Amended Complaint as if fully set forth herein.

54.    As set forth above, Leeds-Morelli, the Lawyer Defendants and D.O.W.S. committed a fraud against Plaintiff.

55.    PSI and the Does either knew or deliberately and/or recklessly disregarded the fact that Leeds-Morelli, the Lawyer Defendants and D.O.W.S. were perpetrating a fraud.

56.    As set forth above, PSI and the Does rendered substantial assistance to Leeds-Morelli, the Lawyer Defendants and D.O.W.S. in their commission of the fraud. Upon information and belief, PSI and the Does conspired with and caused Leeds-Morelli to commit fraud, to make false representations to Plaintiff and to conceal from Plaintiff information which Leeds-Morelli was required to disclose to Plaintiff. Upon information and belief, some of the Does were attorneys employed by PSI and thus knew that the Secret Agreements were improper, as set forth above.

57.    As set forth above, PSI and the Does derived a substantial benefit from their assistance to Leeds-Morelli, the Lawyer Defendants and D.O.W.S. in their commission of the fraud.

58.    As a result, Plaintiff has incurred damages for which PSI and the Does are liable as a result of their aiding and abetting Leeds-Morelli, the Lawyer Defendants and D.O.W.S.

## THIRD CAUSE OF ACTION
(Federal RICO Against All Defendants)

59.     Plaintiff repeats, reiterates and realleges Paragraphs 1-58 of the Amended Complaint as if fully set forth herein.

60.     Plaintiff are persons, within the meaning of 18 U.S.C. §1961(3), and each has a claim as set forth in this Count pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq.

61.     Defendants are also persons, within the meaning of 18 U.S.C. §1961.

62.     PSI, Leeds-Morelli, as well as the other defendants each constitute an enterprise comprised of an association in fact, which is engaged in activities which affect interstate or foreign commerce, within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

63.     Alternatively, PSI is an enterprise which is engaged in activities which affect interstate or foreign commerce within the meaning of 18 U.S.C. §1961(4).

64.     Alternatively, the Defendants collectively constitute an enterprise comprised of an association in fact, which is engaged in activities which affect interstate or foreign commerce, within the meaning of 18 U.S.C. §1961(4).

65.     During the relevant times, Defendants conducted the affairs of said enterprises through a pattern of racketeering activity as described herein, all within the meaning of 18 U.S.C. §1962.

66.     Said racketeering activity was in furtherance of and related to Defendants' schemes and/or artifice to defraud Plaintiff and the clients of Leeds-Morelli as set forth herein.

67.     These racketeering activities were committed beginning no later than February

16

13, 1998 and continued through at least October 25, 2001 and the present, as Defendants continue to conceal.

        68.    These racketeering activities constitute the following criminal acts:

(a) those acts described above;

(b) multiple instances of mail fraud in violation of 18 U.S.C. §1341, including the devising of the aforesaid schemes and/or artifice by use of the Postal Service, by the mailing of letters between and among the Defendants (including their attorneys), the Plaintiff, the Plaintiffs' Class, and third parties in furtherance of the schemes and/or artifice to defraud, such mailings including:

        1) A letter dated November 20, 2003 from Leeds-Morelli to Plaintiff's Class attempting to continue Leeds-Morelli's cover-up of the events as set forth herein.

        2) A letter dated October 25, 2001 from Morelli on behalf of Leeds-Morelli to Plaintiff and the Plaintiffs' Class which, among other things, stated that the "mediation process" with Prudential Securities was nearly completed and claimed that Leeds-Morelli had expended millions of dollars for which it had not been reimbursed in connection with pursuing the claims of Plaintiff and the other Class Members;

        3) A letter dated January 11, 2001 from Deirdre J. Kamber on behalf of Leeds-Morelli to Henry M. Bell confirming a meeting with mediators from JAMS Endispute in connection with the "mediation process" as described above;

        4) A letter dated April 4, 2000 from Morelli on behalf of Leeds-Morelli to "Prudential Employees" which, among other things, purports to report on the status of the resolution of their claims, including the assertion that "well over two hundred cases"

17

had already settled and that the remaining claims were in the process of being
resolved;

5) A letter dated September 22, 1999 from counsel for Prudential Securities to Leeds
stating, among other things, that the "mediation process ... came to a grinding halt on
August 1, 1999 because of your firm's [Leeds-Morelli] fees claim", that Leeds-
Morelli had refused to proceed with the mediations until its claim for fees was
resolved, and that the claims of Plaintiff and the other Class Members had been
capped as a result of an agreement by Leeds-Morelli and Prudential Securities, with
Leeds-Morelli attorneys referring to the claims of Plaintiff and the other Class
Members as "'cap cases'";

6) A letter dated November 9, 1998 from Morelli on behalf of Leeds-Morelli to Vaughn
enclosing a Leeds-Morelli check to him in the amount of $126,333.34 represented to
be Vaughn's net settlement proceeds from Prudential Securities after the deduction
of a one-third contingency fee for Leeds-Morelli, a 1% "donation to D.O.W.S. and
another $5,000 expense;

7) Vaughn's Settlement Agreement and General Release dated October 27, 1998; and

8) A letter dated May 7, 1998 from Vagnini on behalf of Leeds-Morelli to Connie
Hernandez thanking her for her assistance in helping Leeds-Morelli retain over 200
employees of Prudential Securities and requesting her additional assistance.

(c) multiple instances of wire fraud in violation of 18 U.S.C. §1343, including the devising of
the aforesaid schemes and/or artifice by use of wire (interstate telephone lines) to communicate in
furtherance of the schemes and/or artifice to defraud, including:

1) The aforementioned September 22, 1999 letter from counsel for Prudential Securities to Leeds which was sent via facsimile in addition to mail;

2) Vaughn's Settlement Agreement and General Release dated October 27, 1998 which was sent from the Prudential Securities Law Department via facsimile to Leeds-Morelli; and

3) Upon information and belief, numerous telephone conversations regarding the Secret Agreements and other allegations set forth herein by and between the Defendants in furtherance of the racketeering activities

(d) Upon information and belief, a pattern of racketeering activity involving commercial bribing and commercial bribe receiving in violation of New York Penal Law §180.03 and §180.08 as set forth above. Upon information and belief, the Secret Agreements provided for payments to Leeds-Morelli in excess of $1,000.00 and caused economic harm exceeding $250.00.

69.    The predicate acts referred to above were related, in that they shared the common purpose, result and victims with regard to the scheme to deprive the Plaintiff and the Plaintiffs' Class of their civil rights.

## FOURTH CAUSE OF ACTION
(Federal RICO Violation – RICO Conspiracy Against All Defendants)

70.    Plaintiff repeats, reiterates and realleges Paragraphs 1-69 of the Amended Complaint as if fully set forth herein.

71.    Beginning in at least February 13, 1998 and continuing through at least October 25, 2001 and the present, as Defendants continue to conceal, Defendants conspired with one

19

another to violate the provisions of 18 U.S.C. §1962, as set forth above.

72.     During the relevant times, each Defendant, by words and conduct, knowingly agreed to commit the aforementioned acts in violation of 18 U.S.C. §1962 and in furtherance of a common purpose as set forth above.

73.     Each Defendant agreed to facilitate the predicate acts set forth above with knowledge that their acts were in furtherance of their pattern of racketeering activity.

74.     As a result of the Defendants conspiracy to violate 18 U.S.C. §1962, Plaintiff and the Plaintiffs' Class was harmed in their business and property by the acts taken in furtherance of the conspiracy, as they have been deprived of the funds due them, and have incurred legal fees and costs as aforesaid.

## FIFTH CAUSE OF ACTION
(Breach of Fiduciary Duty Against
Leeds-Morelli and the Lawyer Defendants)

75.     Plaintiff repeats, reiterates and realleges Paragraphs 1-74 of the Amended Complaint as if fully set forth herein.

76.     Leeds-Morelli and the Lawyer Defendants maintained a fiduciary relationship with Plaintiff.   As such, Leeds-Morelli and the Lawyer Defendants owed a duty to Plaintiff characterized by the utmost good faith, candor and honesty.

77.     Leeds-Morelli and the Lawyer Defendants had a duty to disclose to Plaintiff the Secret Agreements between PSI and Leeds-Morelli.   Instead, Leeds-Morelli and the Lawyer Defendants concealed these Secret Agreements from Plaintiff.

20

78.    Leeds-Morelli and the Lawyer Defendants engaged in dealings unknown to Plaintiff with PSI by which they received compensation from PSI, and, in fact, engaged in dealings which constituted conflicts of interest with Leeds-Morelli and Plaintiff.

79.    As set forth above, Leeds-Morelli and the Lawyer Defendants breached their fiduciary duties to Plaintiff by acting primarily for their own benefit and that of PSI.

80.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendant's breaches of fiduciary duties.

## SIXTH CAUSE OF ACTION
(Breach of Contract Against
Leeds-Morelli and the Lawyer Defendants)

81.    Plaintiff repeats, reiterates and realleges Paragraphs 1-80 of the Amended Complaint as if fully set forth herein.

82.    Plaintiff had written contracts by which they retained Leeds-Morelli.

83.    Leeds-Morelli breached their contract with Plaintiff by, among other things, agreeing with PSI to accept compensation from PSI, without proper consultation and consent of Plaintiff, and to place their own interest above that of Plaintiff, as more fully set forth above.

84.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendants breach of contract.

21

## SEVENTH CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and
Fair Dealing Against Leeds-Morelli and the Lawyer Defendants)

85.     Plaintiff repeats, reiterates and realleges Paragraphs 1-84 of the Amended
Complaint as if fully set forth herein.

86.     As set forth above, Leeds-Morelli and the Lawyer Defendants breached the
implied covenant of good faith and fair dealing which is implied and inherent in the contract and/or
agreement to which they entered with Plaintiff.

87.     Plaintiff suffered harm and damages as a result of Leeds-Morelli and the
Lawyer Defendant's breach of the implied covenant of good faith and fair dealing.

## EIGHTH CAUSE OF ACTION
(Tortious Interference Against PSI and Does)

88.     Plaintiff repeats, reiterates and realleges Paragraphs 1-87 of the Amended
Complaint as of fully set forth herein.

89.     PSI and the Does knew that Plaintiff had a contract with Leeds-Morelli and
the Lawyer Defendants which, among other things, provided that Leeds-Morelli would represent
Plaintiff with respect to their alleged legal claims against PSI.

90.     Upon information and belief, as set forth above PSI and the Does maliciously,
illegally and intentionally interfered with Plaintiff's contractual relationship causing its breach,
wrongfully and without justification or excuse.

91.     Plaintiff suffered harm and damages as a result of the tortious interference.

22

92.     The conduct of PSI and the Does was malicious and/or in wanton and willful disregard of the Plaintiff's rights, and PSI and the Does knew or should have known that their actions would harm Plaintiff and were recklessly indifferent to the consequences of their action to Plaintiff.

## NINTH CAUSE OF ACTION
(Fraud and Conspiracy to Defraud Against All Defendants)

93.     Plaintiff repeats, reiterates and realleges Paragraphs 1-92 of the Amended Complaint as if fully set forth herein.

94.     As set forth above, all Defendants have been participants in the civil conspiracy described above against Plaintiff. The ultimate intent and result of the civil conspiracy was to deprive Plaintiff of their civil rights in return for either financial gain or the substantial reduction of financial and/or repututional harm thought to be possible as a result of Plaintiff's alleged claims of discrimination. The Lawyer Defendants, D.O.W.S., PSI and the Does are all co-conspirators to the actions of Leeds-Morelli as set forth herein and the first and fifth causes of action.

95.     All Defendants shared a common and unlawful purpose of fraud and compromising the fidelity of Plaintiff's attorneys for the benefits of PSI, Leeds-Morelli the Lawyer Defendants and D.O.W.S.

96.     Plaintiff suffered harm and damages as a result of the civil conspiracy.

WHEREFORE, Plaintiff and other Class Members demand judgment against Defendants as follows:

23

A.   On the First Cause of Action:

    (1)   Compensatory damages;
    (2)   Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
    (3)   Reasonable attorney's fees and costs;
    (4)   Interest;
    (5)   An accounting of all funds paid to D.O.W.S. and all funds expended by D.O.W.S. at Defendants' expense; and
    (6)   Punitive damages.

B.   On the Second Cause of Action:

    (1)   Compensatory damages;
    (2)   Reasonable attorney's fees and costs;
    (3)   Interest; and
    (4)   Punitive damages

C.   On the Third Cause of Action:

    (1)   Compensatory damages;
    (2)   Treble damages;
    (3)   Reasonable attorney's fees and costs of investigation and litigation; and
    (4)   Interest.

D.   On the Fourth Cause of Action:

    (1)   Compensatory damages;
    (2)   Treble damages;
    (3)   Reasonable attorney's fees and costs of investigation and litigation; and
    (4)   Interest.

E.   On the Fifth Cause of Action

    (1)   Compensatory damages;
    (2)   Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
    (3)   Reasonable attorney's fees and costs; and
    (4)   Interest.

F.   On the Sixth Cause of Action:

24

       (1)    Compensatory damages;

       (2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;

       (3)    Reasonable attorney's fees, filing fees and costs of suit; and

       (4)    Interest.

G.    On the Seventh Cause of Action:

       (1)    Compensatory damages;

       (2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;

       (3)    Reasonable attorney's fees and costs; and

       (4)    Interest.

H.    On the Eighth Cause of Action:

       (1)    Compensatory damages;

       (2)    Reasonable attorney's fees and costs;

       (3)    Interest; and

       (4)    Punitive damages.

I.    On the Ninth Cause of Action:

       (1)    Compensatory damages;

       (2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;

       (3)    Reasonable attorney's fees and costs;

       (4)    Interest; and

       (5)    Punitive damages.

J.    Such further relief as the Court deems equitable, appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Liddle & Robinson, L.L.P.

Jeffrey L. Liddle (JL 8256)

Blaine H. Bortnick (BB 3686)
Attorney for Plaintiffs
800 Third Avenue
New York, New York 10022
(212) 687-8500


Of Counsel:

Kenneth S. Thyne, Esq.
Angela M. Roper, Esq.
Roper & Twardowsky, LLC
77 Jefferson Place
Totowa, New Jersey 07512
(973) 790-4441

# EXHIBIT "B"

# LEEDS & MORELLI

*Attorneys at Law*

**ONE OLD COUNTRY ROAD • SUITE 282 • CARLE PLACE, N.Y. 11514**
**TELEPHONE: (516) 873-9550**

## RETAINER

JEFFREY VAUGHN hereby retains the law firm of LEEDS & MORELLI, ESQS., to represent him with respect to his labor action against Prudential Securities.

1.    This retainer will only include the contacting of the employer to seek a negotiated settlement. If legal action is required then the parties will discuss a different financial situation.

2.    In the event of a settlement, JOSEPH DI STEFANO, hereby agrees that the proceeds thereof will be split one-third (1/3) to Leeds & Morelli, Esq., as attorneys, and two-thirds (2/3) to JEFFREY VAUGHN. No disbursements relating to the settlement of the matter will be deducted from the proceeds of the settlement. JEFFREY VAUGHN will receive two-thirds (2/3) of the total settlement figure, and Leeds & Morelli, Esqs. will receive the remaining one-third (1/3).

3.    In the event this matter is not settled, JEFFREY VAUGHN is not responsible for any costs or disbursements incurred as a result of settlement efforts.

4.    The client understands that he is retaining a law firm and that although the named partners will review and supervise all of the work product, associate attorneys and paralegal staff will also be involved in work, labor and services performed in the representation of client.

5.    The parties hereto understand and acknowledge that no results can or will be guaranteed. The firm of LEEDS & MORELLI warrant that they will perform services in a professional manner and use their best efforts in that regard.

6.    There are no other agreements between the parties  other
than those contained herein.  This agreement represents the
entire understanding of the parties.


7.   All parties have read and understood each and every term
herein and the signature below constitutes an acknowledgment of
such understanding

Dated: January 5, 1998

LEEDS & MORELLI, ESQS.

JEFFREY VAUGHN

# EXHIBIT "C"

Jeffrey S. Vaughn
355 Clinton ave.  Apt 6D
Brooklyn N.Y.  11238

Jeffrey K. Brown
Leeds & Morelli
One Old Country road
Carle place N.Y. 11514
Suite 282

Mr. Brown I have worked at Prudential Securities for 13 years from February 1985 to present. My story is as follows:

* 1985 I started at Pru-Securities as a operations clerk trainee and full time employee.  I worked under Anthony Carannante my salary 12,000 annually (starting receptionist made 15,000 ) I worked under a highly racist envioment, Mr. Carannante often made racial statements referring to blacks as bros or brothers, he also made racial statements about other ethnic groups calling them gooks, wetbacks, etc.  He also said if your name does not end in a vowel you will not be promoted. At the time I was attending college for business mgt. In the evenings at interborough institute. Mr carannante made statements from time to time when he needed me stay and work late that "which is more important school or your job" eventually I was indirectly forced to dropout.

* 1986-1989 While working for tony I also worked partime for and with Rolf Roland the president of international arbitrage trading desk from the hours of 5:00 am till 9:30 am at which time I resume with my normal duties in equity operations I learned a lot from Mr. Roland as he was considered to be one of wall streets finest in currency trading. I receive twenty hours overtime and a car into work in the morning. I also began to train a number of new employees who began in operations and in no time they went on to become apart of the equity trading group. When I ask about going to the trading desk his response was " you can make a decent living in operations " Prudential has had in the thirteen years that I have worked for them one black male on the trading desk his name is Calvin Chambers. Calvin got on the  trading desk through the mother company Prudential Insurance.  Pru-Ins has a program that takes students from different universities and shows them the different arms of the pru and they pick a area to work.Calvin chose the equity trading desk.  Within six months to a year Calvin file a report with human resources about one the head VP'S making racial slurs and statements to him, shortly Calvin left the firm and the VP went on to be the head trader at our Chicago office.

* 1990 to 1994 I began to apply for different positions on the trading desk, I spoke to Ronald Riddle the head of equity sales traders and ask for an interview for a spot on the retail trading his response was when the time comes I will call you I did not get an interviewI also spoke with Marty Brophy the head trader of the equity desk and told him of my  background and my experience he said I was very valuable to the firm but still I did not get an interview.

- 1994 we move to 1 N.Y. plaza the day before the whole dept.move I was ask to carry a computer hardrive to the new building because they needed it setup that night. While lifting the hardrive into a van I hurt my back , I immediately went to a specialist who diagnose me with a severe lumbosacral strain, I was told by my doctor that I needed immediate bed rest. This was Nov. 22 1994. When I told mgt.of my problem they totally disregarded it and said to me just live with it . Feb 2, 1995 my condition had got worst my doctor insisted that I stay in bed and therapy for at least three weeks. Again my request were ignored. Finally I went to employee relations and spoke to Ken Rotondo and he suggest that I take a medical leave of absence , so I did so. When I returned to work eight weeks later I not allowed to go to therapy for one and a half hours a day.

- 1995 to present I ask for an interview with Peter Kahn of pru's NYSE floor services I was recommended highly by sales traders and some mgt. Mike liotti started at pru and trained under me he was hired in 1995 with no prior experience and less than a year at the firm he was promoted to the same job that I interviewed for. Prudential has stonewall me from moving up in the company because of my color.

## KEYS

- NO BLACK TRADERS ON THE EQUITY DESK THE OTC (OVER THE COUNTER) THE COVERTIBLE BOND DESK OR THE INTERNATIONAL DESK

- NO PROMOTIONS

- RACIST ENVIORMENT

- ONLY HIRE FROM OUTSIDE/ FRIENDS AND FAMILY FROM ACCTS. WE DO BUSINESS WITH.

- THEY HAVE PEOPLE INCLUDING VP'S ON THE TRADING DESK WITH NO COLLEGE EXPERIENCE.

- THEY HAD PEOPLE WORKING ON THE DESK BEFORE OR WITHOUT THEIR LICENCES

| 1990 | salary | 25,000 | | | |
| | bonus | 500 | | | |
| | | | | | |
| 1991 | salary | 27,500 | | | |
| | bonus | 750 | | | |
| | | | | | |
| 1992 | salary | 30,275 | | | |
| | bonus | 2500 | | | |
| | | | | | |
| 1993 | salary | 29,700 | | | |
| | bonus | 1125 | | | |
| | | | | | |
| 1994 | salary | 33200 | | | |
| | bonus | 1400 | | | |
| | | | | | |
| 1995 | salary | 29,100 | | | |
| | bonus | 2500 | | | |
| | | | | | |
| 1996 | salary | 31,266 | | | |
| | bonus | 4000 | | | |
| | | | | | |
| 1997 | salary | 35,700 | | | |
| | bonus | | | | |
| | | | back pay damages | estimated 200,000 | |
| | | | | | |

I started at Prudential Securities in Feb. 1985 as a operations clerk trainee. My starting salary was 12,000 annually, I also were attending college at Interboro Institute for my A.S. in business mgt.  From 1985 to 1997 I worked in capital markets operations and trade support for block trading desk. I also worked for the president of the International Arbitrage trading desk.  I worked closely with Rolf Roland as his liaison and other duties such as monitoring foreign currency price fluctuations, enter orders /London trading desk and prepare daily reports from the hours of 5:00 am to 10:00am. With operation and trader asst. Experience I then began to inquire about positions on the equity trading desk. I was passed over by those who came in the firm after me and they were also given larger starting salaries and move to the equity trading desk with less qualifications than myself also within one to two years time.

## FACTS:

- Their are no male black traders on the block desk, otc or convertible bond or international desk
- Their are people without college degrees on the desk.

- Their people hire on the desk without a Series 7 license

- Their are black employees with a license and are not trading

## VIEWS

I truly have been a victim of racist incedents that are in violation of my civil rights I want to sue prudential on these grounds.

I want to go public with my story

If I settle with pru it is under these condition only:

- that I be compensated for damages mental, physical and emotional.
- I don't want to work for the pru any longer
- I want a letter of recommendation stating the position I am suppose to have
- policy changes / outside evaluation periodically

# EXHIBIT "D"

## PRUDENTIAL QUESTIONNAIRE

Name: JEFFREY S. VAUGHN

Address: 355 CLINTON AVE APT 6D
BROOKLYN NY 11238

Telephone Nos.
Home: 718 - 857 - 8716
Work: 212 - 778 - 2489

Date of Birth: 7/20/62

Soc. Sec. #: 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

## I. Present Work Status:

A. Prudential Employee:     Yes ✗     No _____

   If no, where are you employed? _____

B. Present Title: OPERATIONS ~~CLERK~~ SPECIALIST

C. Present Salary: ~~40,800~~     35,800

## II. Educational Background:

A. High School Graduate:     Yes ✗     No _____

B. College Graduate:     Yes _____     No ✗

   If yes, what college and degree? _____

   If no, any college credits? YES _____

C. Advanced Degrees:        Yes _____    No _X_

If yes, what degree and school? _____

III. Work Experience:

A. List places and years of employment prior to Prudential:

_____
_____
_____
_____

B. If applicable, list places and years of employment since leaving Prudential:

_____
_____
_____
_____

IV. Prudential work experience:

A. Starting Position: _OPERATIONS_____
   Starting Salary: ___12000_____
   Year Started: ___1985_____

B. Subsequent changes in title and year it occurred:

_____NONE_____
_____
_____
_____

C. Subsequent raises and years it occurred:

_____
_____
_____
_____

V. Promotional Opportunities Denied:

   A. List all promotions which you feel you were unjustly denied, when that occurred,
      increase in salary missed, and person who wrongly got the position.

| Position | Date | Salary | Person |
|----------|------|--------|--------|
| RETAIL TRADING | | 40,000 | BOB CURRY |
| '' | | '' | TED CLARKE |
| '' | | '' | MIKE CHIELKO |
| LISTED TRADING | | 60,000 | BOB CURRY |
| '' | | 80000 | TED CLARKE |
| '' | | | '' |
| NYSE FLOOR SVS | | ? | MIKE LIOTTI |

   B. If you know, how were you <u>more</u> qualified than each of these persons who wrongly
      got the position which should have been offered to you?

   MORE EXPERIENCE, MORE TIME AT FIRM

VI. Incidents of discriminatory conduct or harassment:

   A. Please list and briefly describe any incidents which you considered to be
      discriminatory or harassing in nature:

   TONY CARANNATE HAS KEPT ME FROM MOVING
   UP IN THE FIRM BY TELLING OTHER MANAGEMENT
   THAT I HAVE "HISTORY"

B. Do you have any physical evidence of discriminatory attitudes at Prudential (such as joke sheets, memos, etc.)

_____

_____

_____

_____

_____

_____

VII. Witnesses:

Please list the names, addresses, phone numbers, and the role of any witnesses to your experience at Prudential, including any supervisors, co-workers, trainees, management, or individual who was a participant, witness or bystander of the disparate and discriminatory treatment you allege:

PETER KAHN

JIM PRICE

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

VIII. Emotional Damages:

Have you seen any health care provider with respect to any physical or emotional problems you have experienced as a result of your work at Prudential?

Yes __✓__    No _____

If yes, please provide the name, address, telephone number, and dates of consultation:

_____

_____

_____

_____

_____

IV. Complaints:

   A. Management: Have you ever complained about your treatment at Prudential to any supervisor?

   Yes _____✓_____          No _____

   B. If yes, to whom did you complain, and was anything done about it?

   KEN POTONDA, HE SUGGESTED THAT I TAKE A
   MEDICAL LEAVE OF ABSENCE

   _____

   _____

   _____

   C. Do you know any past or present Prudential employee who has had complaints with respect to discrimination, harassment, and/or a hostile work environment at Prudential? If so, please provide the names, addresses and phone numbers of these individuals.

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

V.    If you wish to make any further statement regarding your employment at Prudential Securities, do so in the following space: (if you require more space please attach additional sheets)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

# EXHIBIT "E"

## EXECUTION AND ACKNOWLEDGEMENT

I, JEFFREY S. VAUGHN , have read the foregoing Agreement and I accept and agree to the provisions it contains and hereby execute it voluntarily with full understanding of its consequences.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

EXECUTED this  5  day of MARCH 1998, at _____.

_____

6

# EXHIBIT "F"

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Made and entered into this ___ day of October 1998, by and between Jeffrey Vaughn and Prudential Securities Incorporated ("PSI").

WHEREAS, Vaughn has alleged certain claims arising out of Vaughn's employment with PSI and separation therefrom; and

WHEREAS, PSI denies all such claims; and

WHEREAS, PSI and Vaughn have agreed to amicably resolve any and all such claims;

NOW, THEREFORE, in full and complete settlement of such claims and in consideration of the mutual promises and covenants set forth herein, Vaughn and PSI agree as follows:

1.      Separation From Employment. Vaughn's last day of employment at PSI shall be October 23, 1998.

2.      Payment by PSI. Upon the expiration of seven (7) days following Vaughn's execution of this Settlement Agreement and General Release (the "Agreement"), PSI shall pay to Vaughn, in a single lump-sum payment, the total agreed-upon amount of Two Hundred Thousand Dollars and No Cents ($200,000.00), as payment in full for all alleged personal injury or other non-wage claims, including , but not limited to, any claims for emotional distress and general, special and consequential damages. The parties acknowledge and agree that PSI shall file a form 1099-misc reflecting the above payment.

3.      Medical Benefits. PSI agrees to continue Vaughn's health plan coverage through October 31, 1998. Thereafter, Vaughn will be eligible to continue the plan coverage pursuant to the terms of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). If Vaughn elects to continue health plan coverage pursuant to COBRA, PSI will pay Vaughn's COBRA premiums through and including April 30, 1999, or until Vaughn obtains other employment or is eligible for other group health plan coverage, whichever comes first. Thereafter, Vaughn will be responsible for the payment of any COBRA premiums through the remainder of Vaughn's eligibility.

4.      Release by Vaughn. In consideration for PSI's commitment to the various arrangements described in the preceding paragraphs, and in lieu of any other benefits, as a full and final settlement, Vaughn hereby releases and discharges PSI, its parent, divisions, subsidiaries and affiliates and their current and former directors, officers, shareholders, agents and employees, and each of their predecessors, successors, and assigns (hereinafter "the Company"), from any and all claims and causes of action (except for the benefits specifically set forth in this Agreement) arising out of or related to Vaughn's employment or separation from employment, including, but not limited to, any claims for salary, bonuses, severance pay, vacation pay or any benefits under the Employee Retirement Income Security Act (except for vested benefits which are not affected by this Agreement), sexual harassment, or discrimination based on race, color, national origin, ancestry, religion, marital status, sex, sexual orientation, citizenship status, pregnancy, medical condition or disability (as defined by the Americans with Disabilities Act, or any other state or local law), age, or any other unlawful discrimination (under the Age Discrimination in Employment Act, as amended by the Older Workers Benefit Protection Act of 1990, Title VII of the Civil Rights Act, as amended, or any other federal, state, or local laws), breach of implied or express contract, breach of promise, misrepresentation, negligence, fraud, estoppel, defamation, infliction of emotional distress, retaliation, whistleblower rights, violation of public policy or wrongful or constructive discharge, and for attorneys' fees, that Vaughn, his heirs, executors, administrators, successors, and assigns now have, ever had or may hereafter have, whether known or unknown, suspected

Vaughn Settlement Agreement
October 1998
Page 2

or unsuspected, up to and including the date of this Agreement. Vaughn further agrees,
promises and covenants that, to the maximum extent permitted by law, neither he, nor any
person, organization, or other entity acting on his behalf has or will file, charge, claim, sue,
or cause or permit to be filed, charged or claimed, any action for damages or other relief
(including injunctive, declaratory, monetary relief or other) against the Company involving
any matter occurring in the past up to the date of this Agreement, or involving or based
upon any claims, demands, causes of action, obligations, damages or liabilities which are
the subject of this Agreement (other than an action to enforce the terms herein).

        5.      No Admission of Liability.  Neither this Agreement, nor anything contained
herein shall be construed as an admission by the Company that it has in any respect
violated or abridged any Federal, State, or local law or any right or obligation that it may
owe or may have owed to Vaughn. No final findings or final judgments have been made
and Vaughn does not purport and will not claim to be a prevailing party, to any degree or
extent, nor will this Agreement or its terms be admissible in any proceeding other than in a
proceeding for breach of the terms contained herein.

        6.      Cooperation by Vaughn.  Vaughn agrees to cooperate with and make himself
readily available to PSI or its General Counsel, as PSI may reasonably request, to assist it in
any matter, including giving truthful testimony in any litigation or potential litigation, over
which Vaughn may have knowledge, information or expertise.

        7.      Confidential and Proprietary Information of PSI.  Vaughn understands and
agrees that all books, records, documents and information, whether written or not,
pertaining to PSI's business activities, are the confidential and proprietary property of PSI
(hereinafter referred to as "trade secrets and confidential and proprietary information").
Vaughn warrants, covenants, and agrees that he will not disclose any of PSI's trade
secrets and confidential and proprietary information to any person or entity not employed,
owned by, or otherwise affiliated with PSI. Vaughn further agrees that he shall not be
entitled to copies, in any form, of such trade secrets and confidential and proprietary
information and that he shall immediately return to PSI any copies of such information
currently in his possession.

        8.      Reemployment or Reinstatement.  Vaughn agrees not to apply for
employment or reemployment with PSI, and that PSI has no obligation, contractual or
otherwise, to rehire, reemploy or recall him in the future.

        9.      Nondisparagement.  Vaughn represents that he has not and agrees that he
will not in any way disparage PSI, its current and former officers, directors and employees,
or the Company, or make or solicit any comments, statements, or the like to the media or
to others that may be considered to be derogatory or detrimental to the good name or
business reputation of any of the aforementioned parties or entities.

        10.     Testimony Required by Law or Regulatory Authority.  Vaughn further agrees
that he will not at any time discuss any matter concerning PSI with anyone adverse or
potentially adverse to PSI on any matter including employment claims or customer claims,
without the prior written consent of Counsel for PSI. Nothing contained herein, however,
shall preclude Vaughn from discussing any matter concerning PSI with any governmental
regulatory or self-regulatory agency. Further, if required by a governmental regulatory
agency or self-regulatory agency to provide testimony or information regarding the PSI,
Vaughn will cooperate with said regulatory agency. If compelled to testify by a validly
served subpoena in any legal proceeding or by regulatory authority, Vaughn will testify
truthfully as to all matters concerning his employment at PSI.

        11.     Confidentiality of Agreement.  Vaughn agrees not to disclose or cause to be
disclosed, either directly or indirectly, to any person or organization, except to his legal and

Vaughn Settlement Agreement
October 1998
Page 3

financial advisor(s), or as required by law, or governmental regulatory or self-regulatory
authority, any information regarding the amount of, terms of, or facts or circumstances
underlying this Agreement.

    12.    Indemnification.  Vaughn expressly warrants and represents to PSI that he
will indemnify PSI against, and hold PSI harmless from, the tax consequences, if any, of
PSI's not withholding taxes from, or reporting to the Internal Revenue Service as income,
the aforementioned payment, including, but in no way limited to, any and all taxes,
interest, and/or penalties incurred in connection therewith.

    13.    Entire Agreement and Severability.  The parties hereto agree that this
Agreement may not be modified, altered or changed except by a written agreement signed
by the parties hereto.  The parties acknowledge that this constitutes the entire agreement
between them superseding all prior written and oral agreements. If any provision of this
Agreement is held to be invalid, the remaining provisions shall remain in full force and
effect.

    14.    Arbitration.  Any claim or controversy arising out of or related to this
Agreement or the interpretation thereof will be settled by arbitration under the then
prevailing constitution and rules of the New York Stock Exchange, Inc., or the National
Association of Securities Dealers, Inc.  Judgment based upon the decision of the arbitrators
may be entered in any court having jurisdiction thereof.  The governing law of this
Agreement shall be the substantive and procedural law of the State of New York.

    15.    Breach of Agreement.  Should Vaughn violate any provision of this
Agreement, the Company may apply for appropriate relief.  In any proceeding to enforce
the terms of this Agreement, the Agreement may be introduced under seal in order to
maintain its confidentiality.  Vaughn understands and agrees that the damage to the
Company due to any such breach will be extremely difficult to determine.  Because of this
difficulty, Vaughn agrees that in the event of a finding of such breach, he will forfeit to PSI
all amounts received pursuant to this Agreement, and he shall indemnify PSI for any and all
costs incurred in connection with any such recovery, including reasonable attorneys' fees.
Notwithstanding any such relief, all of the other terms of this Agreement, including,
without limitation, Vaughn's release of claims, shall remain in full force and effect.  The
remedies provided for in this provision shall not be construed to be exclusive and do not
bar any other claims for relief.

    16.    Voluntary Execution.  Vaughn acknowledges that he has carefully read this
Agreement and understands all of its terms including the full and final release of claims set
forth above. Vaughn further acknowledges that he has voluntarily entered into this
Agreement; that he has not relied upon any representation or statement, written or oral,
not set forth in this Agreement; that the only consideration for signing this Agreement is as
set forth herein; that the consideration received for executing this Agreement is greater
than that to which he may otherwise be entitled; and that this document gives him the
opportunity and encourages him to have this Agreement reviewed by his attorney and tax
advisor. Vaughn also acknowledges that he has been afforded at least twenty-one days to
consider the release provision contained herein and that he has seven days after signing
this Agreement to revoke it in writing.  Accordingly, no payments required under this
Agreement shall be made until the expiration of seven days following Vaughn's execution
of the Agreement.

**Vaughn Settlement Agreement**
**October 1998**
**Page 4**

    *IN WITNESS WHEREOF,* the parties hereto evidence their agreement by their signatures.

PRUDENTIAL SECURITIES INCORPORATED

Date:

BY:

Date:   10/27/98

JEFFREY VAUGHN

*AFFIDAVIT OF SERVICE*

STATE OF NEW YORK     )
                                          )ss.:
COUNTY OF NEW YORK  )

AIDA JIMENEZ, being sworn, deposes and says:  I am not a party to the action, am over 18 years of age, reside in Bronx, New York, and am employed in the office of Litchfield Cavo.

On the 22nd day of April, 2005, I served a true copy of the annexed NOTICE OF MOTION, DECLARATION OF STEVEN MORELLI AND MEMORANDUM OF LAW, by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known addressee(s) as indicated below:

TO:    Blaine H. Bortnick
          Liddle Robinson, LLP
          685 Third Avenue
          New York, New York
          (212) 687-8500

          Gerard Harper
          Paul, Weiss, Rifkind, Wharton & Garrison, LLP
          1285 Avenue of the Americas
          New York, NY 10019
          (212) 373-3000
                    -and-
          Lowenstein Sandler, P.
          1330 Avenue of the Americas
          New York, NY 10019
          *Attorneys for Prudential Securities, Inc. and*
          *Prudential Financial, Inc.*

                                                                    AIDA JIMENEZ

Sworn to before me this
22nd day of April, 2005

          Notary Public

JOSEPHINE CASORIA
Notary Public, State of New York
No. 01CA5022698
Qualified in Nassau County
Commission Expires Jan. 18, 20__