UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

JEFFREY S. VAUGHN, individually and on behalf of
those Class Members similarly situated,

                        Plaintiff,

         -against-

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,
LEEDS, MORELLI & BROWN, PRUDENTIAL
SECURITIES, INC., PRUDENTIAL FINANCIAL,
INC., LENARD LEEDS, STEVEN A. MORELLI,
JEFFREY K. BROWN, JAMES VAGNINI,
FREDERIC DAVID OSTROVE, ROBERT JOHN
VALLI, JR., DISCRIMINATION ON WALL
STREET, INC. DISCRIMINATION ON WALL
STREET, MANHATTAN, INC., JOHN DOES, 1-10
AND JANE DOES, 1-10 a fictitious designation for
presently unknown licensed attorneys, professionals
and/or unknown persons or entities,

                     Defendants.

---------------------------------------------------------------- X

Case No. 04 Civ. 8391 (DLC)

**Oral Argument Requested**

# MEMORANDUM OF LAW IN OPPOSITION TO
## LEEDS-MORELLI DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ iii-v

ARGUMENT

I. PLAINTIFF'S CLASS ACTION CLAIMS
   ARE NOT ELIGIBLE FOR ARBITRATION...........................................1

   A.    Introduction...............................................................................1

   B.    The Motion to Compel Arbitration Must Be Denied
         Because There Is No Close Relationship Between The
         Signatory And The Non-Signatory In This Case .............................2

         1. The Alternative Estoppel Doctrine.......................................2

         2. Second Circuit Law Requires A Close Relationship
            Independent of The Alleged Conspiracy...............................4

         3. The Requisite Close Relationship Is Absent In This Case.................7

II. PLAINTIFF HAS PROPERLY PLEADED AND
    TIMELY BROUGHT RICO CLAIMS................................................8

   A.    The Standard On A Motion To Dismiss..........................................8

   B.    Plaintiff's RICO Claims Are Timely...........................................9

   C.    Plaintiff Has Properly Pleaded RICO Claims....................................9

         1. Plaintiff Specifically Alleges a Provision of Section 1962.................10

2. Plaintiff Has Pleaded At Least Two Predicate Acts......................10

3. Plaintiff Had Pleaded a Pattern of Racketeering Activity Under RICO...................................................................................................15

4. Plaintiff Has Pleaded Causation..........................................…..15

5. Plaintiff Has Pleaded a Conspiracy Claim Under Section 1962(d)....16

III.    PLAINTIFF HAS PROPERLY PLEADED STATE CLAIMS........................... 16

A.    Plaintiff Has Properly Pleaded Fraud and Conspiracy to Defraud............ 16

1. Plaintiff Has Pleaded Fraud With Sufficient Particularity...............16

2. Plaintiff's Fraud Claim Is Timely…………………………………16

3. Plaintiff Has Pleaded a Claim for Conspiracy…………………………18

B.    Plaintiff Has Properly Pleaded Breach of Fiduciary Duty and Breach of Contract ..................................................... 19

C.    Plaintiff Has a Valid Claim for Breach of Implied Covenant of Good Faith and Fair Dealing ................................................ 21

IV.    VAUGHN SHOULD BE PERMITTED TO AMEND HIS PLEADING IF THE COURT DEEMS HIS ALLEGATIONS TO BE INSUFFICIENT ........ 22

V.    PLAINTIFF'S CROSS-MOTION TO PERMIT SERVICE ON CERTAIN INDIVIDUAL DEFENDANTS SHOULD BE GRANTED ............. 22

CONCLUSION .................................................................................................... 23

## TABLE OF AUTHORITIES

Page(s)

**CASES**

ABF Capital Management v. Askin Capital Management, 957 F.Supp. 1308 (S.D.N.Y. 1997)..........12

A. Terzi Production v. Theatrical Protect. Union, 2 F.Supp. 2d 485 (S.D.N.Y. 1998):..........13

Ades v. Deloitte & Touche, 799 F.Supp. 1493 (S.D.N.Y. 1992)..........9

American Med. Assn. v. United Healthcare Corp., WL 22004877 at *2, (S.D.N.Y. 2003)..........3, 7

Arlinghaus v. Ritenour, 662 F.2d 629 (2d Cir. 1980)..........18

Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F.Supp. 505 (S.D.N.Y. 1990)..........9-10

Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commence, 697 N.Y.S.2d 128
    (2d Dep't 1999)...........22

Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir.1994)..........10

Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)..........8

Blessinger v. U.S., 174 F.R.D. 29 (E.D.N.Y. 1997)...........23

Briarpatch Ltd. L.P. v. Pate, 81 F.Supp. 2d 509 (S.D.N.Y. 2000)..........18

Camferdam v. Ernst & Young, Int'l Inc., 2004 WL 307292 *6 (S.D.N.Y. 2004)..........3, 5, 6

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)..........9

Chase Mortgage Co.- West v. Bankers Trust Co., 2001 WL 542224 at *2, (S.D.N.Y. 2001)..........3

Choctaw Generation Ltd. v. American Home Assur. Co., 271 F.3d. 403 (2d Cir. 2001)..........3

Chrysler Capital Corp. v. Century Power Corp., 778 F.Supp 1260 (S.D.N.Y. 1991)..........18

City of New York v. Liberman, 660 N.Y.S.2d 872 (1st Dep't 1998)..........20

Cougar Audio, Inc. v. Reich, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y. 2000)..........14

Currency Conversion Fee Antitrust Litigation, MDL No. 1409, M 21-95, 2005
    WL 546434 (S.D.N.Y. 2005),..........4, 5, 7

CVC Capital Corp. v. Weil, Gotshal & Manges, 595 N.Y.S.2d 458 (1st Dep't 1993)......................20

Dalton v. Educational Testing Service, 87 N.Y.2d 384 (Ct. App. 1995)............................................21

Flour Daniel Intercont'l, Inc. v. General Elec. Co., 1999 WL 637236 at *5 (S.D.N.Y. 1999) ..........4

Gagliardi v. Village of Pawling, 18 F.3d 188 (2d Cir. 1994)............................................................8

Goodman v. New York City Off-Track Betting Corp., 1999 WL 269959, *11 (S.D.N.Y.),
    aff'd, 201 F.3d 431 (2d Cir. 1999) ................................................................................................22

Hartzog v. Reebok Intern. Ltd., 77 F.Supp.2d 478 (S.D.N.Y. 1999)...........................…..……8

Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697 (2d Cir. 1994)..................8

JLM Industrial Inc. v. Stolt-Nielsen SA, 387 F.3d. 163 (2d Cir. 2004)......................................3, 5, 7

Kashi v. Gratsos, 790 F.2d 1050 (2d Cir. 1986) .............................................................................18

Kaszirer v. Kaszirer, 730 N.Y.S.2d 87 (1st Dep't 2001). ................................................................20

Kaufman v. Cohen, 760 N.Y.S.2d 157 (1st Dep't 2003) ..................................................................21

Krouner v. Koplovitz, 572 N.Y.S.2d 959 (3d Dep't 1991).............................................................19

Managed Care Litig., 132 F. Supp. 2d 989 (S.D. Fla. 2000) ...........................................................5, 7

Massen v. Cliff, 2003 WL 2012404 at *4 (S.D.N.Y. 2003) .............................................................3, 4

McBro Planning and Development Co. v. Triangle Electrical Construction Co.,
    741 F.2d 342 (11th Cir. 1984).......................................................................................................6

McNulty v. New York Dept. of Finance, 941 F. Supp. 452 (S.D.N.Y. 1996)....................................8

O'Brien v. Nat'l Property Analyst Partners, 719 F.Supp. 222 (S.D.N.Y. 1989) .............................15

Orange Chicken, LLC v. Nambe Mills, Inc., 2000 WL 1858556 (S.D.N.Y. 2000) ...........................6

Phillips v. Levie, 593 F.2d 459, n.12 (2d Cir. 1979)........................................................................17

Rastelli v. Sutter, Moffatt, Yannelli & Zevin, P.C., 449 N.Y.S.2d 305 (2d Dep't 1982) ..................20

Reuben H. Donnelley Corp. v. Mark I Marketing Corp, 893 F.Supp 285 (S.D.N.Y. 1995..............19

Reynolds v. East Dyer Dev. Co., 882 F.2d 1249 (7th Cir.1989) .....................................................10

Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119 (2d Cir. 1991)......................................8

Romandette v. Weetabix Co., 807 F.2d 309 (2d Cir. 1991)................................................23

Rutkin v. Reinfeld, 229 F.2d 248 (2d Cir.), cert denied, 352 U.S. 844 (1956)..................18

Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679 (5th Cir. 1976) ......................6

Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir. 1974)............................12

Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed2d 734 (1989) ...............13

Sedima, S.P.R.L. v. Imrex, Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ...............................................................................................................................9

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir.1994) ................................12, 13

Simcuski v. Saeli, 44 N.Y.2d 442 N.Y.S.2d 259  (Ct. App. 1978)......................................21

Spira v. Nick, 876 F.Supp. 553 (S.D.N.Y. 1995) ..............................................................13

Stull v. Bayard, 561 F.2d 429 (2d Cir. 1977).....................................................................17

Sumitomo Copper Litig., 995 F.Supp. 451  (S.D.N.Y. 1998)..............................................13

Thompson–CSF, S.A. v. American Arbitration Association, 64 F.3d 773 (2d Cir. 1995) .............2, 5

United States v. Altman, 48 F.3d 96 (2d Cir.1995)............................................................12

United States v. Mittelstaedt, 31 F.3d 1208 (2d Cir. 1994)...............................................15

United States v. Trapilo, 130 F.3d 547 (2d Cir.1997)........................................................12

Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P., 212 B.R. 34  (S.D.N.Y. 1997) .........19

## Rules

Fed. R. Civ. P. 9(b)..........................................................................................................15
New York C.P.L.R. § 213(8), § 203(g)...........................................................................16-17
18 U.S.C. § 1961(1)(A)....................................................................................................14

Plaintiff, Jeffrey S. Vaughn, (hereinafter "Vaughn") individually and on behalf of those Class Members similarly situated, (collectively, "Plaintiff"), respectfully submits this memorandum of law in opposition to the motion of Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrowe, and Robert John Valli, Jr., (collectively, "Leeds-Morelli") to dismiss Plaintiff's Amended Complaint.

The Court is respectfully referred to Plaintiff's brief in opposition to the motion of Prudential Securities, Inc., and Prudential Financial, Inc. (collectively, "PSI") to dismiss for the facts and procedural history. That portion of Plaintiff's brief in opposition to PSI's motion is hereby incorporated by reference.

## ARGUMENT

## I.

## PLAINTIFF'S CLASS ACTION CLAIMS
## ARE NOT ELIGIBLE FOR ARBITRATION

### A.    Introduction

Leeds-Morelli's argument to compel arbitration is two-fold. First, it argues that as a non-signatory to the arbitration agreement between Vaughn and PSI, Plaintiff is nevertheless estopped from proceeding in court and bound by the terms of the arbitration clause.

Second, Leeds-Morelli argues that as a result of benefiting from the arbitration clause, all Plaintiff's claims must be arbitrated. In this regard, PSI makes the same argument. As set forth in Plaintiff's opposition to PSI's motion to dismiss, this case cannot be compelled to arbitration because it is a class action. Plaintiff's arguments there are incorporated herein by

reference.  See Section I of Plaintiff's Memorandum in Opposition to PSI's motion to dismiss.

Thus, in this brief Plaintiff only responds to Leeds-Morelli's first argument, that of estoppel.

**B.      The Motion To Compel Arbitration Must Be Denied
          Because There Is No Close Relationship Between The
          Signatory And The Non-Signatory In This Case**

Even if this Court ordered class arbitration with respect to PSI before the NYSE or

NASD, Leeds-Morelli cannot obtain the benefit as a non-signatory to the arbitration clause between

Vaughn and PSI.  Leeds-Morelli erroneously relies on equitable estoppel (generally known as the

"alternative estoppel" doctrine) in support of its claim.

**1.      The Alternative Estoppel Doctrine**

The Second Circuit has made clear that "arbitration is contractual by nature—'a

party cannot be required to submit to arbitration any dispute which he has not agreed to

submit...[and] such agreements must not be so broadly construed as to encompass claims and

parties that were not intended by the original contract.'"  Thompson–CSF, S.A. v. American

Arbitration Association, 64 F.3d 773, 776 (2d Cir. 1995) (citations omitted).

The Second Circuit has, however, recognized several circumstances under which a

non-signatory to an arbitration agreement may compel a signatory to arbitrate a dispute.  See

Thomson–CSF, 64 F.3d at 776-779 (listing exceptions).  One such exception – the only one urged

by Leeds-Morelli on the instant motion – is the doctrine of "alternative equitable estoppel."[1]  See

---

[1] Leeds-Morelli's brief could potentially be read to imply that the  "agency exception" spelled out in Thompson may
also apply.  There is no legal basis for holding that co-conspirators are somehow necessarily "agents" of one another for
purposes of enforcing each others' arbitration agreements.  Such a rule would be totally irreconcilable with JLM and its
refusal to apply estoppel based merely on a co-conspirator relationship.  It is also significant that the Leeds-Morelli –
perhaps recognizing that they absolutely are not PSI's "agent" -- do not make this argument.  Nor did the Plaintiff ever

2

Chase Mortgage Co.- West v. Bankers Trust Co., 2001 WL 542224 at *2, (S.D.N.Y. 2001)

(explaining alternative estoppel). As the Second Circuit has observed:

> Our cases have recognized that under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of "the relationship among the parties, the contracts they signed..., and the issues that had arisen" among them discloses that "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

JLM Industrial Inc. v. Stolt-Nielsen SA, 387 F.3d. 163, 177 (2d Cir. 2004).

As the courts within this Circuit have uniformly recognized, there is a two-part test

for determining whether a non-signatory may invoke this estoppel doctrine:

> (1) whether the signatory's claims arise under the 'subject matter' of the underlying agreement; and (2) <u>whether there is a close relationship between the signatory and non-signatory</u>.

American Med. Assn. v. United Healthcare Corp., WL 22004877 at *2, (S.D.N.Y. 2003) (emphasis

added). Accord, Chase Mortgage, supra, 2001 WL 547224 at *2-3; Massen v. Cliff, 2003 WL

2012404 at *4 (S.D.N.Y. 2003) (there is "a two part test to determine whether claims are

intertwined for the purpose of applying this alternative estoppel theory," and "the second factor...is

whether there was a close relationship between the defendant signatory and defendant non-

signatory"); see also Choctaw Generation Ltd. v. American Home Assur. Co., 271 F.3d. 403 (2d

Cir. 2001) (test requires "tight relatedness of the parties.")

It is clear that both elements must be met in order for the estoppel doctrine to apply.

In American Medical Association, for example, the court refused to apply estoppel where the

plaintiff's claims against the non-signatory implicated the contract containing the arbitration clause,

---

allege that Leeds-Morelli are agents of PSI. c.f. Camferdam v. Ernst & Young, Int'l Inc., 2004 WL 307292 *6 (S.D.N.Y. 2004), erroneously cited by Leeds-Morelli (plaintiff's complaint proclaimed that an agency relationship existed between the signatory and non-signatory defendants—not the case here).

3

but there was simply "no relationship between the [signatory intervenors] and [non-signatory] Defendants, let alone a 'close' one." 2003 WL 22004877 * 3.   Similarly, in In re Currency Conversion Fee Antitrust Litigation, MDL No. 1409, M 21-95, 2005 WL 546434 (S.D.N.Y. 2005), the court recently observed that, for estoppel to apply under JLM and related case law, "the court must find that the plaintiff's claims are intertwined with the underlying contract and that there is a close relationship between the non-signatory and the plaintiff's actual counter-signatory." 2005 WL 546434 at *18 (emphasis added); see also Flour Daniel Intercont'l, Inc. v. General Elec. Co., 1999 WL 637236 at *5 (S.D.N.Y. 1999) ("a signatory can be required to arbitrate with a nonsignatory at the nonsignatory's insistence because of the close relationship between the entities involved, and the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract") (internal quotations and brackets omitted; emphasis added).

At the outset, Plaintiff concedes that the first element is satisfied here.  The claims against the Leeds-Morelli depend, at least in part, upon their representation of Plaintiff in his claims against PSI, one of the products of which was the Settlement Agreement containing the arbitration clause. See Massen v. Cliff, 2003 WL 2012404 at *5 (discussing test for first element).  However, as shown below, the second element – the close relationship between Leeds-Morelli and PSI – is notably absent in this case.

### 2. Second Circuit Law Requires A Close Relationship Independent of The Alleged Conspiracy

As the court held in Currency Conversion, the "closeness" element of the estoppel test "requires a close relationship between the signatory and non-signatory independent of their alleged conspiracy." 2005 WL 546434 at *22.  The decision went to great lengths to explain how the Visa and MasterCard bankcard associations had the requisite close relationship with member

4

banks independent of their cooperation in processing currency conversion fees – i.e., separate and apart from the joint efforts which formed the basis of the plaintiffs' claims. <u>Currency Conversion</u>, 2005 WL 546434 at *22.

Accordingly, while the banks may have competed with each other on a daily basis, they nonetheless maintained a corporate relationship – as co-owners, constituents and governors of the associations—independent of the conspiracy at issue in that case.

The Second Circuit in <u>JLM Industrial</u> likewise stressed that the signatory and non-signatory must have a close relationship separate and apart from their participation in the alleged conspiracy itself:

> We do not, in so holding, mean to suggest that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will always be intertwined to a degree sufficient to work an estoppel. The inquiry remains a fact-specific one. See, e.g., <u>In re Managed Care Litig.</u>, 132 F. Supp. 2d 989, 995 (S.D. Fla. 2000) (finding that nonsignatory defendants, alleged to be aiders and abettors and co-conspirators of signatories, did not have the requisite "close relationship" on the facts there present), *modified on other grounds*, 143 F. Supp. 2d 1371 (S.D. Fla. 2001).

<u>JLM Industrial</u>, 387 F.3d at 178, n.7.

In <u>JLM Industrial</u>, the requisite close relationship was present because the nonsignatories were the owners and parent corporations of the signatory companies. Indeed, while the <u>JLM</u> court stated that a strict parent-subsidiary relationship is not necessarily required to satisfy the "close relationship" element, the fact is that the sole estoppel case within the Second Circuit cited by the Leeds-Morelli (<u>Thompson-CSF</u>) involved a parent/subsidiary. The other case concerned an agency relationship. That case is <u>Camferdam</u>, <u>supra</u>, n. 1, in which the court found that because the complaint specifically alleged an agency relationship between the signatory and non-signatory defendants, the plaintiff could not allege no agency. That is not the case here.

5

Camferdam at *6.  The case from the Eleventh Circuit, <u>McBro Planning and Development Co. v. Triangle Electrical Construction Co.</u>, 741 F.2d 342 (11th Cir. 1984) also involved a close relationship in that the defendants were construction manager/contractor.  The Fifth Circuit, also cited by Leeds-Morelli, uses a test not recognized in the Second Circuit.  Still, the Fifth Circuit case cited by Leeds-Morelli, <u>Sam Reisfeld & Son Import Co. v. S.A. Eteco</u>, 530 F.2d 679 (5th Cir. 1976), for example, found the requisite closeness was satisfied in a parent/successor corporation relationship.

In the Second Circuit, where there are no close corporate affiliations the estoppel doctrine has no application.  A case in point is <u>Orange Chicken, LLC v. Nambe Mills, Inc.</u>, 2000 WL 1858556 (S.D.N.Y. 2000), where the plaintiff "Orange" was the licensee of a furniture designer, "Zeisel," and it brought suit against a second licensee of the designer, "Nambe," and the retailer Target Stores, asserting Lanham Act and common law tort claims.  Nambe and Target then moved to compel arbitration on the strength of Orange's arbitration agreement with Zeisel, who was added to the litigation as a third party defendant.

Although Orange's claims against Nambe and Target were related to the Orange-Zeisel agreement, which contained an arbitration clause, the court held the estoppel doctrine inapplicable, citing the lack of a close relationship.  Surveying the case law in this Circuit, the court observed:

> Where courts of this Circuit have compelled a signatory to arbitrate claims brought against a nonsignatory, the parties have been linked by "ordinary principles of contract and agency." *Thomson-CSF*, *supra*, 64 F.3d at 780. <u>Specifically, the nonsignatory was either linked contractually to the signatory it wished to compel to arbitrate and/or was engaged in a corporate relationship with the other signatory</u>.

<u>Id.</u> at *5. (emphasis added).  The court then held that the requisite close relationship was lacking:

> Nambe and Zeisel are engaged only in an <u>arms-length business relationship</u>. Target is not contractually linked to either Orange or Nambe. In sum, absent from this case is the type of close relationship from which an agreement to arbitrate could be implied, or imposed on Orange with respect to Nambe and/or Target.

<u>Id.</u> (emphasis added).

Another case in point is <u>In re Managed Care Litig.</u>, 132 F. Supp. 2d 989, 995 (S.D. Fl. 2000) which was expressly cited and distinguished by both the <u>JLM Industrial</u> and <u>Currency Conversion</u> courts as a case "finding 'the requisite close relationship' to be lacking between competitors who were not alleged to be linked other than as co-conspirators." <u>Currency Conversion</u> at *22. Such is the case here, where there is no other link between Leeds-Morelli and PSI other than as co-conspirators.

### 3.    <u>The Requisite Close Relationship Is Absent In This Case</u>

In the instant case, it is an understatement to say that Leeds-Morelli and PSI have an "arms' length" relationship. Leeds-Morelli and PSI have come together for one limited purpose: to defraud Plaintiff.

Clearly, then, independent of the alleged conspiracy, there is "no relationship between the [Leeds-Morelli] and [PSI], let alone a 'close' one." <u>American Med. Assn.</u>, 2003 WL 22004877 at * 3. Independent of the conspiracy, the <u>only</u> relationship between Leeds-Morelli and PSI is one of plaintiff's counsel vs. defendant. It is nothing like the close corporate relationships detailed above. Ultimately, Leeds-Morelli is asking this Court to announce a new rule, under which any co-conspirator of a signatory to an arbitration agreement may enforce the terms of that agreement. The Second Circuit, however, has declined to adopt this view; there is no "co-conspirator exception" to the general rule that only signatories may enforce an arbitration agreement.

7

## II.

## PLAINTIFF HAS PROPERLY PLEADED AND
## TIMELY BROUGHT RICO CLAIMS

### A.    The Standard On A Motion To Dismiss

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in favor of the plaintiff. See Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 699-700 (2d Cir. 1994). The plaintiff "need provide only a short and plain statement of the claim showing that the pleader is entitled to relief." Hartzog v. Reebok Intern. Ltd., 77 F. Supp.2d 478, 479 (S.D.N.Y. 1999) (citing FRCP 8(a)). "Indeed, the pleading of evidence should be avoided." Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir. 1991); see also Hartzog, supra ("An evidentiary standard is not a proper measure of whether a complaint fails to state a claim").

The issue for the Court to determine is not whether a plaintiff will ultimately prevail on his claims. See Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996. A complaint may thus be properly dismissed "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McNulty v. New York Dept. of Finance, 941 F. Supp. 452, 454 (S.D.N.Y. 1996 (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2d Cir. 1994.

Moreover, Federal Rule 9(b) provides, in relevant part, that "[i]n all averments of fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of the mind of a person may be averred generally." FRCP 9(b). "Rule 9(b) must be read, however, in conjunctions with Federal Rule of Civil Procedure 8(a), which requires a 'short and plain

8

statement of the claims showing that the pleader is entitled to relief.'" <u>Ades v. Deloitte & Touche</u>, 799 F.Supp. 1493, 1498 (S.D.N.Y. 1992). "On a motion to dismiss on Rule 9(b) grounds, a court must assume the truth of the plaintiff's allegations and draw <u>all</u> inferences in favor of the pleader." <u>Id.</u> emphasis added.)

### B.    Plaintiff's RICO Claims Are Timely

Since Leeds-Morelli's argument here is virtually the same as that of PSI, the Court is respectfully referred to Plaintiff's brief in opposition to PSI's motion to dismiss, Section II(B), incorporated herein by reference.

The only difference is that Leeds-Morelli points to a document not referenced in the Amended Complaint and which Leeds-Morelli states is Vaughn's estimate of his damages incurred by PSI's wrongdoing. This Court should not consider this extraneous evidence. <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 154 (2d Cir. 2002) ( "[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)....").[2] Nevertheless, the amount Vaughn may or may not have suffered in damages is irrelevant to an inquiry into the timeliness of his claims.

### C.    Plaintiff Has Properly Pleaded RICO Claims

To establish a RICO claim, plaintiffs must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. See <u>Sedima, S.P.R.L. v. Imrex, Co., Inc.</u>, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d

---

[2] Moreover, should this Court determine to consider this document, Vaughn can counter, if necessary, that his damages resulting from Leeds-Morelli's wrongful conduct also include the fact that he lost his job at PSI and hence has other damages as well. Yet the amount lost by Vaughn or the other Class Members with respect to their individual claims against PSI is not the theory of damages in this action. Rather, the theory of damages is based upon the measure of damages for bribery. <u>See</u> Section III(B) herein, <u>infra</u>.

512, 520 (2d Cir.1994) (internal quotation marks omitted); <u>Reynolds v. East Dyer Dev. Co.</u>, 882 F.2d 1249, 1251 (7th Cir.1989); <u>Atlantic Gypsum Co. v. Lloyds Int'l Corp.</u>, 753 F.Supp. 505, 511 (S.D.N.Y. 1990).

Leeds-Morelli alleges that Plaintiff has failed to state a RICO violation since he has not adequately pleaded (1) the specific provision of 18 U.S.C. § 1962 that Leeds-Morelli violated, (2) "two predicate acts, elements of any RICO action," (3) "a legally cognizable pattern of racketeering activity," (4) causation, and (5) a claim for RICO conspiracy.

### 1.    <u>Plaintiff Specifically alleges a provision of Section 1962</u>

Since Leeds-Morelli's argument here is word for word a copy of PSI's argument, the Court is respectfully referred to Plaintiff's brief in opposition to PSI's motion to dismiss, Section II(C)(1), incorporated herein by reference.

### 2.    <u>Plaintiff Has Pleaded At Least Two Predicate Acts</u>

Contrary to Leeds-Morelli's allegations, the amended complaint adequately pleads at least at least two predicate acts based on Leeds-Morelli's participation in racketeering activities. Plaintiff specifically pleaded that PSI committed mail fraud:

(1)    A letter dated May 7, 1998 from Vagnini on behalf of Leeds-Morelli to Connie Hernandez thanking her for her assistance in helping Leeds-Morelli retain over 200 employees of Prudential Securities and requesting her additional assistance;

(2)    Vaughn's Settlement Agreement and General Release dated October 27, 1998;

(3)    A letter dated November 9, 1998 from Morelli on behalf of Leeds-Morelli to Vaughn enclosing a Leeds-Morelli check to him in the amount of $126,333.34 represented to be Vaughn's net settlement proceeds from Prudential Securities after the deduction of a one-third contingency fee for Leeds-Morelli, a 1% "donation to D.O.W.S. and another $5,000 expense";

10

(4)   A letter dated September 22, 1999 from counsel for Prudential Securities to Leeds stating, among other things, that the "mediation process ... came to a grinding halt on August 1, 1999 because of your firm's [Leeds-Morelli] fees claim", that Leeds-Morelli had refused to proceed with the mediations until its claim for fees was resolved, and that the claims of Plaintiff and the other Class Members had been capped as a result of an agreement by Leeds-Morelli and Prudential Securities, with Leeds-Morelli attorneys referring to the claims of Prudential and the other Class Members as "'cap cases";[3]

(5)   A letter dated April 4, 2000 from Morelli on behalf of Leeds-Morelli to "Prudential Employees" which, among other things purports to report on the status of the resolution of their claims, including the assertion that "well over two hundred cases" had already settled and that the remaining claims were in the process of being resolved;

(6)   A letter dated January 11, 2001 form Deirdre J. Kamber on behalf of Leeds-Morelli to Henry M. Bell confirming a meeting with mediators from JAMS Endispute in connection with the "mediation process";

(7)   A letter dated October 25, 2001 from Morelli on behalf of Leeds-Morelli to Plaintiff and the Plaintiff's Class which, among other things, stated that the "mediation process" with Prudential Securities was nearly completed and claimed that Leeds-Morelli had expended millions of dollars for which it had not been reimbursed in connection with pursuing the claims of Plaintiff and the other Class Members; and

(8)   A "letter dated November 20, 2003 from Leeds-Morelli to Plaintiff's Class attempting to continue Leeds-Morelli's cover-up of the events as set forth herein".

See Am. Cplt. at ¶ 68. Plaintiff specifically pleaded multiple instances of wire fraud:

(1)   Vaughn's Settlement Agreement and General Release dated October 27, 1998 which was sent from the Prudential Securities Law Department via facsimile to Leeds-Morelli;

(2)   The aforementioned September 22, 1999 letter from counsel for Prudential Securities to Leeds which was sent via facsimile in addition to mail; and

---

[3] Leeds-Morelli angrily takes issue that Plaintiff describes the contents of this letter as attributing the term "cap cases" to language used by Leeds-Morelli. But that is what the letter says, as Leeds-Morelli should well know, assuming it retained a copy of the letter.

(3)    "[U]pon information and belief, numerous telephone conversations regarding the Secret Agreements by and between the Defendants in furtherance of the racketeering activities."

See Am Cplt. at ¶ 68.

The elements of mail or wire fraud are (1) a scheme or artifice to defraud, (2) for the purpose of obtaining money or property, or of depriving another of the intangible right of honest services, and (3) the use of the mails or wires in furtherance of the scheme. United States v. Altman, 48 F.3d 96, 101 (2d Cir.1995); United States v. Trapilo, 130 F.3d 547, 551 (2d Cir.1997).  As the Trapilo Court stated:

> "The thing which is condemned is (1) the forming of the scheme to defraud, however and in whatever form it may take, and (2) a use of mail and wire communications in its furtherance.  If that is satisfied, nothing more is required."

Id.    Leeds-Morelli's complaint, however, is not that the predicate acts of mail or wire fraud are not pleaded, but rather that they do not meet the particularity requirement of FRCP 9(b). (Leeds-Morelli Br. at 13)  However, here Plaintiff has met the time and content requirements of Rule 9(b) in that the Amended Complaint "(1) specif[ied] the statements that the plaintiff contends were fraudulent, (2) identif[ied] the speaker, (3) state[d] where and when the statements were made, and (4) explain[ed] why the statements were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994) (internal citations omitted).[4]

PSI complains that Plaintiff has not identified "a single false statement or actionable omission by the Leeds Defendants, let alone allege facts giving rise to an inference that the same were fraudulent." (Leeds-Morelli Br. at 14).  Leeds-Morelli's reliance that something it did must be

---

[4] In any event, since most of the facts are to this day solely in the possession of the defendants, this is a case where "it is particularly appropriate to ease the pleading burden under Rule 9(b) when information is within the exclusive control of the defendant." ABF Capital Management v. Askin Capital Management, 957 F.Supp. 1308, 1327 (S.D.N.Y. 1997), citing Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir. 1974).

false is wrong.  As the court stated in <u>A. Terzi Production v. Theatrical Protect. Union</u>, 2 F.Supp. 2d

485 (S.D.N.Y. 1998):

> The Supreme Court held in <u>Schmuck v. United States</u>, 489 U.S. 705, 714-15, 109 S.Ct. 1443, 103 L.Ed2d 734 (1989) that to establish a "scheme to defraud," a defendant's mailings or wires need not themselves contain false or misleading statements, so long as they further an underlying scheme which itself has a fraudulent, deceptive purpose.  The Court based its holding on the recognition that mailings could be perfectly innocuous, yet still perform a necessary component of a master plan to defraud. <u>Id.</u> at 714-15, 109 S.Ct. 1443 (upholding mail fraud violation where defendant's routine business mailings of title documents furthered fraudulent scheme to purchase used cars, roll back their odometers, and resell them to unwitting purchasers at artificially inflated prices based on low mileage reading); <u>Spira v. Nick</u>, 876 F.Supp. 553, 557-58 (S.D.N.Y. 1995) (allegations of embezzlement through deceptive tactics satisfied "scheme to defraud" element although complaint did not allege particular fraudulent statements); <u>In re Sumitomo Copper Litig.</u>, 995 F.Supp. 451, 453 (S.D.N.Y. 1998) (plaintiffs not required to allege that mailings or wire communications contained false or misleading information where Complaint set forth detailed allegations of how they furthered defendants' underlying scheme to manipulate copper prices in the market by making false statements to the market place and regulators).

<u>Id.</u> at 501, n.12.

Here, the September 22, 1999 letter from PSI's counsel, the sending of Vaughn's

Settlement Agreement, and the numerous letters from Leeds-Morelli clearly further the underlying

scheme at issue in this action – the secret pay-off of Plaintiff's attorneys in exchange for a cap on

liability and the assurance that the claims would never see the light of day in court through the

"mediation" process.  The complaint plainly apprises Leeds-Morelli of this, comporting with the

intention of Rule 9(b) to provide "defendant with fair notice of plaintiff's claim." <u>Shields</u> at 1124.

> As another predicate act, Plaintiff pleads bribery:

> [a] pattern of racketeering activity involving commercial bribing and commercial bribe receiving in violation of New York Penal Law §180.03 and §180.08 as set forth above.  The Secret Agreements provided for payments to Leeds-Morelli in excess of $1,000.00 and caused economic harm exceeding $250.00." (Am. Cplt. ¶ 68(d)).

13

Racketeering activity includes acts or threats involving bribery which are chargeable under State law,[5] 18 U.S.C. § 1961(1)(A).  Leeds-Morelli concedes that in New York, commercial bribery and commercial bribe receiving qualify as predicate acts under RICO.  Instead, Leeds-Morelli argues that the bribery did not cause an injury to Plaintiff.  Plaintiff's allegation is that Leeds-Morelli bribed his attorneys, resulting in a sham settlement process with capped claims.  How is that not an injury to Plaintiff?

Leeds-Morelli cites Cougar Audio, Inc. v. Reich, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y. 2000) in support of this "no injury" proposition, yet Cougar is not at all supportive.  In Cougar Audio, the complaint alleged, in relevant part, that the defendant entered into a contract to purchase audio equipment from the plaintiff manufactured by a particular third party.  The third party allegedly paid defendants an undisclosed sum for directing the manufacture of the audio equipment to it.  The plaintiff alleged, without any factual basis, that these payments must have been passed on to it in the form of inflated prices, yet never alleged that it had any bearing on the ultimate value of the transaction. This assumption by plaintiff, without more was deemed speculative by the court.  In other words, bribery was merely inferred.

Here, the allegation that PSI paid Leeds-Morelli what amounts to protection money is very different than a speculative inference of bribery based upon conjecture about a possibly inflated price in a contract.  The Complaint, at minimum, alleges that the Secret Agreement(s) provided bribe payment(s) in exchange for, among other things, a cap on PSI's liability.  The

---

[5] Violations of commercial bribery and bribe receiving statutes. New York Penal Law §§ 180.03, 180.80.

September 22, 1999 letter even references that cap. This is not speculative.  It is in writing between the Defendants.[6]

Finally, Leeds-Morelli relies on <u>O'Brien v. Nat'l Property Analyst Partners</u>, 719 F.Supp. 222 (S.D.N.Y. 1989) to suggest that this Court ignore any allegation made upon information and belief.  (Leeds-Morelli Br. at 14)  In <u>O'Brien</u>, however, the court found that the allegations based upon information and belief did not meet the requirements of FRCP 9(b) because there was no inference that such facts "constitute matters 'peculiarly within the opposing party's knowledge.'"  <u>Id.</u> at 230.  Such a situation plainly does not exist here, since the entire nature of the scheme is to this day largely secret.  Even the Secret Agreement(s) are still secret, known only to Leeds-Morelli and PSI.


### 3.    <u>Plaintiff Has Pleaded a Pattern of Racketeering Activity Under RICO</u>

Since Leeds-Morelli here makes the same argument as does PSI, the Court is respectfully referred to Plaintiff's brief in opposition to PSI's motion to dismiss, Section II(C)(3), incorporated herein by reference.


### 4.    <u>Plaintiff Has Pleaded Causation</u>

Since Leeds-Morelli here makes the same argument as does PSI, the Court is respectfully referred to Plaintiff's brief in opposition to PSI's motion to dismiss, Section II(C)(4), incorporated herein by reference.

---

[6] Neither does <u>United States v. Mittelstaedt</u>, 31 F.3d 1208 (2d Cir. 1994), also cited by PSI, lend it support. There, in a criminal case, the Second Circuit refused to affirm a mail fraud conviction where the theory underlying it -- that the alleged bribe inflated the cost of property to a town -- was not argued to the jury. <u>Id.</u> at 1220.

5.     **Plaintiff Has Pleaded a Conspiracy Claim under section 1962(d)**

Since Leeds-Morelli here makes the same argument as does PSI, the Court is respectfully referred to Plaintiff's brief in opposition to PSI's motion to dismiss, Section II(C)(5), incorporated herein by reference.

## III.

## PLAINITFF HAS PROPERLY PLEADED STATE CLAIMS

A.     **Plaintiff Has Properly Pleaded Fraud and Conspiracy to Defraud**

Leeds-Morelli makes three arguments – that Plaintiff's fraud claim has not been pleaded with sufficient particularity, that the fraud claim is time-barred and that there is no cause of action under recognized law for conspiracy. Leeds-Morelli is incorrect on all arguments.

1.     **Plaintiff Has Pleaded Fraud With Sufficient Particularity**

Leeds-Morelli's argument that the fraud claim has not been pleaded with the requisite particularity is based upon an incorporation by reference of its argument in "Point II, Section B" of its brief. (Leeds-Morelli Br. at 21) The relevant part of Leeds-Morelli's brief is a virtual copy of PSI's brief. (PSI Br. at 17) Those portions of Leeds-Morelli's and PSI's briefs argue that the predicate acts of mail and wire fraud are not pleaded with the requisite particularity. For the reasons set forth in Plaintiff's Opposition to PSI's motion to dismiss (at pp. 16-17) and herein (at pp. 14-15), Leeds-Morelli's argument fails.

2.     **Plaintiff's Fraud Claim is Timely**

Under New York Law, the statute of limitations for a claim of fraud is six years from the commission of the fraud or two years from the time of discovery, whichever is later. CPLR §

16

213(8) and 203(g); <u>Phillips v. Levie</u>, 593 F.2d 459, 462 n.12 (2d Cir. 1979).[7]  Plaintiff plainly timely filed this action (commenced on October 25, 2004), regardless of whether a pure six year limitation is used or the two year discovery rule.

First, contrary to Leeds-Morelli's argument, the six year limitation period runs not from the date of the first Secret Agreement, but "from when the plaintiff suffers a loss" as a result of the fraud.  <u>Stull v. Bayard</u>, 561 F.2d 429, 432 (2d Cir. 1977).  Vaughn executed his settlement agreement on October 27, 1998.  That is the date upon which he suffered his loss.  Thus Vaughn meets the six year deadline.

Second, even if Vaughn had missed the six year deadline, he is nevertheless saved by the two year discovery rule.  The Amended Complaint alleges that Vaughn did not discover the existence of the Secret Agreement(s) until October 2004.  (Am. Cplt. ¶ 12)  Leeds-Morelli improperly attempts to end-run the allegation in the Amended Complaint by submitting an alleged signature page purporting to show that Vaughn was both aware of and consented to the first Secret Agreement.  As set forth above, the submission of extraneous evidence is improper on a motion to dismiss where the allegations of the complaint must be taken as true.  Yet even if the Court were to consider this improper evidence, the signature page is just a single signature page.  It does not refer to the Secret Agreement, which to this day has never been produced.  It refers to nothing at all but an "Agreement" which is not attached.  This "evidence" is evidence of nothing at all.[8]

---

[7] In August 2004 CPLR § 213(8) was amended to include the two year discovery rule found in § 203(g), such that § 203(g) no longer needs to be read in conjunction with § 213(8).

[8] In the event the Court decides to consider this signature page, it is respectfully submitted that Vaughn be given an opportunity to submit testimony via affidavit.  Such an affidavit will say that Vaughn never saw the Secret Agreement, that his signature does not acknowledge the Secret Agreement, and that the signature page does not refer to the Secret Agreement.

### 3.    Plaintiff has Pleaded a Claim for Conspiracy

Leeds-Morelli is simply wrong that no cause of action can exist for a civil conspiracy claim. While civil conspiracy is not an independent tort under New York law, it "'connect[s] a defendant with the transaction and … charge[s] him with the acts and declarations of his co-conspirators.'" Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986). A plaintiff "may plead the existence of a conspiracy in order to connect the actions of the [] defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." Briarpatch Ltd. L.P. v. Pate, 81 F.Supp. 2d 509, 516 (S.D.N.Y. 2000); see also, Rutkin v. Reinfeld, 229 F.2d 248, 252 (2d Cir.), cert denied, 352 U.S. 844 (1956) (civil conspiracy is the "string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts."); Arlinghaus v. Ritenour, 662 F.2d 629, 639 (2d Cir. 1980) (Under New York law, a defendant may be held liable in tort for conspiracy "'to do an unlawful thing, or to do a lawful thing in an unlawful manner.'").

To plead a valid claim for conspiracy under New York law, a plaintiff must allege the primary tort (here, fraud) and four elements: "(1) a corrupt agreement between two or more persons, (2) an overt act in furtherance of the agreement; (3) the parties intentional participation in the furtherance of the plan or purpose, and (4) the resulting damage." Chrysler Capital Corp. v. Century Power Corp., 778 F.Supp 1260, 1267 (S.D.N.Y. 1991), citing Kashi at 1055 (plaintiffs sufficiently alleged a conspiracy to defraud claim and thus motion to dismiss denied). As set forth above, plaintiff meets all the elements for civil conspiracy to defraud. Plaintiff has pleaded the underlying tort (fraud), a corrupt agreement (the Secret Agreements), intentional participation (the actual carrying out of the scheme), and resulting damage.

18

**B.    Plaintiff has Properly Pleaded Breach of
Fiduciary Duty and Breach of Contract**

Leeds-Morelli erroneously attempts to merge Plaintiff's breach of fiduciary duty and breach of contract claims into a legal malpractice claim, which plaintiff has not brought.  Leeds-Morelli argues (1) "plaintiff's fiduciary duty claim fails because it merely mimics an inadequate malpractice claim," and (2) "plaintiff's breach of contract claim is also part and parcel of an inadequate malpractice claim."  (Leeds-Morelli Br. at 22)

As the cases cited by Leeds-Morelli amply demonstrate, however, it is perfectly appropriate for a plaintiff to assert causes of action for both breach of fiduciary duty and contract alongside a malpractice claim.  The "attorney/client relationship ... are sufficiently rooted in trust and confidence to trigger super-contractual fiduciary duties."  Reuben H. Donnelley Corp. v. Mark I Marketing Corp, 893 F.Supp 285, 289 (S.D.N.Y. 1995), citing Krouner v. Koplovitz, 572 N.Y.S.2d 959 (3d Dep't 1991).  A plaintiff may plead both breach of fiduciary duty and breach of contract, since the "attorney-client relationship may give rise to both contract and tort liability."  Krouner at 962.

All of the cases cited by Leeds-Morelli merely stand for the axiomatic proposition that where all the causes of action arise out of the same operative facts, then if the malpractice claim is inadequate, then so too are the related causes of action for breach of fiduciary duty and breach of contract.  The cases do not hold that only malpractice can be alleged.  To the contrary, they permit it.  See Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P., 212 B.R. 34, 34-36, 39 (S.D.N.Y. 1997) (plaintiff's causes of action for legal malpractice, breach of contract and breach of fiduciary duty, based upon the same operative facts, were dismissed due to the failure to plead facts permitting standing, yet plaintiff was given leave to amend the complaint and re-assert all three

19

causes of action); <u>Rastelli v. Sutter, Moffatt, Yannelli & Zevin, P.C.</u>, 449 N.Y.S.2d 305 (2d Dep't 1982) (since plaintiff's malpractice claim was dismissed on summary judgment as barred by the doctrine of collateral estoppel, so too was the breach of contract claim); <u>CVC Capital Corp. v. Weil, Gotshal & Manges</u>, 595 N.Y.S.2d 458 (1st Dep't 1993) (since plaintiff's malpractice claim was dismissed on summary judgment because no duty existed by defendants' to plaintiff, so too was the breach of fiduciary duty claim).

Leeds-Morelli next argues that because any legal malpractice claim would be dismissed for failure to adequately allege damages, then so too must Plaintiff's breach of fiduciary and breach of contract claims. (Leeds-Morelli Br. at 22)  This argument relies upon the faulty assumption that Plaintiff's measure of damages is based upon the idea that Vaughn and the other Class Members "would have recovered more [from PSI] under different circumstances." (Leeds-Morelli Br. at 23)  Plaintiff's theory of damages, however, is based upon the alleged bribery of Leeds-Morelli by PSI.  In such a situation, a recognized measure of damages is the amount of the bribe.  <u>City of New York v. Liberman</u>, 660 N.Y.S.2d 872, 873 and 875 (1st Dep't 1998).

Finally, with respect to the breach of fiduciary duty claim, Leeds-Morelli argues that it is untimely because the cause of action accrues three years from the breach.  This argument fails for two reasons.  First, as Leeds-Morelli's own case holds, the statute of limitations for breach of fiduciary duty is six years (not three years) if equitable relief is sought.  <u>Kaszirer v. Kaszirer</u>, 730 N.Y.S.2d 87, 88 (1st Dep't 2001).  The Amended Complaint seeks disgorgement of all fees received by Leeds-Morelli with respect to its representation of Vaughn and the Class Members.

Second, even if a three year statue of limitation were to apply, the cause of action is nevertheless timely under the doctrine of equitable estoppel.  It has long been the rule that "a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud,

misrepresentations <u>or deception</u> to refrain from filing a timely action." <u>Simcuski v. Saeli</u>, 44

N.Y.2d 442, 406 N.Y.S.2d 259, 262 (Ct. App. 1978) (emphasis added).  <u>See also Kaufman v.</u>

<u>Cohen</u>, 760 N.Y.S.2d 157, 167 (1st Dep't 2003) (a fiduciary's concealment of facts he was required

to disclose invokes estoppel as a defense to the statute of limitations); <u>In re Fischer</u>, 308 B.R. 631,

656 (E.D.N.Y. 2004) (under New York law, there is no distinction between fraudulent concealment

(equitable tolling) and equitable estoppel).  Plaintiff amply pleads Leeds-Morelli's deception in

deliberately not disclosing it bribery scheme.  Vaughn did not know about it until October 2004,

when he promptly filed this action.


      **C.**     **Plaintiff Has a Valid Claim for Breach of Implied**
                  **<u>Covenant of Good Faith and Fair Dealing</u>**

        Under New York law:

> Implicit in all contracts is a covenant of good faith and fair dealing
> in the course of contract performance.  This embraces a pledge
> that "neither party should do anything which will have the effect
> of destroying or injuring the right of the other party to receive the
> fruits of the contract."

<u>Dalton v. Educational Testing Service</u>, 87 N.Y.2d 384, 389 (Ct. App. 1995) (internal citations

omitted).  Leeds-Morelli does not appear to argue with this premise.  Rather, it argues that because

no contract claim exists, then neither can a claim for breach of the implied covenant of good faith

and fair dealing implicit in it.  (Leeds-Morelli Br. at 23)  Leeds-Morelli relies on its earlier

argument that no breach of contract claim can exist alongside a malpractice claim.  That argument

is shown to be wrong, <u>supra</u>.  In any event, Leeds-Morelli admits that there is a signed contract

between Vaughn and the Leeds-Morelli law firm, the retainer agreement.  The cases cited by

Leeds-Morelli only hold that if the contract is <u>not</u> breached, then no implied covenant cannot

likewise be breached.  Accordingly, "the plaintiff [has alleged] facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commence, 697 N.Y.S.2d 128, 130 (2d Dep't 1999).

## IV.

### VAUGHN SHOULD BE PERMITTED TO AMEND HIS PLEADING IF THE COURT DEEMS HIS ALLEGATIONS TO BE INSUFFICIENT

If the Court finds that the allegations in Plaintiff's Amended Complaint are insufficient to set forth the claims sought to be dismissed by Defendants, Mr. Vaughn requests that he be granted leave to amend his pleading to include any further allegations deemed necessary. "As a matter of procedure, when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted." Ricciuti, 941 F.2d at 123; see also Goodman v. New York City Off-Track Betting Corp., 1999 WL 269959, *11 (S.D.N.Y.), aff'd, 201 F.3d 431 (2d Cir. 1999 ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead.")(citations omitted).

## V.

### PLAINTIFF'S CROSS-MOTION TO PERMIT SERVICE ON CERTAIN INDIVIDUAL DEFENDANTS SHOULD BE GRANTED

Plaintiff admits that other than Jeffrey K. Brown ("Brown") none of the individuals defendants were served within 120 days of the filing of the complaint. This Court, however, should deny the other individual defendants' motion to dismiss and instead either (1) direct that service

22

upon them should be effected within a specified time or, alternatively (2) for good cause shown,

extend the period for service.

> FCRP 4(m) states:

>> If service of the summons and complaint is not made upon the
>> defendant within 120 days after the filing of the complaint, the
>> court, upon motion … shall dismiss the action without prejudice as
>> to that defendant or direct that service be effected within a
>> specified time; provided that if the plaintiff shows good cause for
>> the failure, the court shall extend the time for service for an
>> appropriate period.

Id.  As set forth in the accompanying affidavit of Angela Roper, Esq., she reasonably relied upon

the assurance of predecessor counsel to Liddle & Robinson, L.L.P., that all defendants had been

served.[9]  There was obviously an unintentional miscommunication, and "the interests of justice,

informed by a liberal interpretation of Rule 4, are best served" by either directing that service be

made within a specified time or extending the 120 day period.  Romandette v. Weetabix Co., 807

F.2d 309, 311, (2d Cir. 1986).  Moreover, there is no basis for the unserved defendants to claim

prejudice, another touchstone for this Court to consider.  Blessinger v. U.S., 174 F.R.D. 29, 31

(E.D.N.Y. 1997).


## CONCLUSION


For the foregoing reasons, plaintiff respectfully requests that Leeds-Morelli's

Motion to Dismiss the Amended Complaint be denied in its entirety, and (2) Plaintiff's cross-

motion to permit service on the individual defendants (other than Brown) be granted.

---

[9] Discrimination on Wall Street, Inc. and Discrimination on Wall Street Manhattan, Inc., likewise were not served and
thus are included in this cross-motion.

Dated: New York, New York
    May 24, 2005

                         LIDDLE & ROBINSON, L.L.P.


                         By: _____
                             Blaine H. Bortnick (3686)
                             Jeffrey Liddle (JL 8256)
                             Attorneys for Plaintiff
                             800 Third Avenue
                             New York, New York 10022
                             (212) 687-8500

24