UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JEFFREY S. VAUGHN, individually and on behalf
of those Class Members similarly situated,

                                Plaintiffs,

      -against-

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, LLP., LEEDS & MORELLI,           Civil Case No.: 04 CV 08391
LEEDS, MORELLI & BROWN, PRUDENTIAL
SECURITIES, INC., Successor PRUDENTIAL
FINANCIAL, INC., WACHOVIA CORPORATION,
WACHOVIA SECURITIES, LLC, LENARD LEEDS,
STEVEN A. MORELLI, JEFFREY K. BROWN, and
JOHN DOES, JAMES VAGNINI, FREDERIC DAVID
OSTROVE, ROBERT JOHN VALLI, FR., DISCRIMINATION
ON WALL STREET, INC. and DISCRIMINATION ON WALL
STREET MANHATTAN, INC., AND JOHN DOES, ESQS,
1-10 a fictitious designation for presently unknown licensed
Attorneys, professionals and/or unknown persons or entities,

                          Defendants.

---------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF THE LEEDS DEFENDANTS MOTION TO COMPEL ARBITRATION AND TO DISMISS THE AMENDED COMPLAINT


**Litchfield Cavo LLP**
420 Lexington Avenue, Suite 1750
New York, N.Y. 10170

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ………………………………………………………… 1

ARGUMENT ………………………………………………………………………... 1

REPLY POINT I: PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE ALL HIS
CLAIMS ……………………………………………………………………………… 1

REPLY POINT II: PLAINTIFF SHOULD BE ESTOPPED FROM AVOIDING
ARBITRATION WITH THE LEEDS DEFENDANTS ……...………………………………… 2

REPLY POINT III: AS PLAINTIFF FAILS TO PLEAD A RICO CLAIM, THE
SOLE BASIS FOR FEDERAL JURISDICITON, HIS AMENDED COMPLAINT
MUST BE DISMISSED ……………………………………………………………… 8

A. Plaintiff's RICO Claims Are Time-Barred …………………………………………… 9

B. Plaintiff Otherwise Fails To Sufficiently Plead A Predicate Act Under RICO …………… 9

REPLY POINT IV:  PLAINTIFF'S STATE LAW CLAIMS SHOULD
BE DISMISSED ……………………………………………………………………….. 14

A. Plaintiff's Claim For Fraud And Conspiracy To Defraud Must Fail ………………………. 14

B. Plaintiff's Claim For Breach Of Fiduciary Duty And Breach Of Contract Must Fail …….. 15

C. Plaintiff's Claim For Breach Of An Implied Covenant Of Good
Faith & Fair Dealing Fails ............................................................................................ 17

D. Plaintiff's Claims For Attorney's Fees Should Be Dismissed ……………………………. 17

REPLY POINT V: PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HIS
COMPLAINT …………………..………………………………………………………… 17

POINT VI & OPPOSITION POINT I: PLAINTIFF'S COMPLAINT SHOULD BE
DISMISSED FOR FAILURE TO SERVE INDIVIDUAL DEFENDANTS ………………..... 18

CONCLUSION …………………………………………………………………………… 20

<u>PRELIMINARY STATEMENT</u>

This brief is submitted in support of the Leeds, Morelli & Brown, P.C. and the individual defendants associated therewith (the "Leeds Defendants"). Plaintiff is required to arbitrate his current claims against the Leeds Defendants as these claims are inextricably intertwined with plaintiff's agreement to arbitrate with Prudential. In addition, as plaintiff's assertion of RICO is inadequate, this Court should dismiss for lack of subject matter jurisdiction. Moreover, plaintiff's state law claims also fail, for various reasons, and should be dismissed. Finally, as plaintiff has failed to serve certain individual defendants, pursuant to Rule 4(m), and proffers no excuse for its failure, the amended complaint should be dismissed as to those defendants.

<u>ARGUMENT</u>

REPLY POINT I

<u>PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE ALL HIS CLAIMS</u>

The Leeds Defendants refer the Court to Prudential's argument as to why plaintiff must be compelled to arbitrate his claims against Prudential under the FAA, and, in turn, arbitrate his claims against the Leeds Defendants. *See* Reply Point II. Among other things, plaintiff, while he has initiated a class action, is not "a customer, other member or person associated with a member" against whom the NASD or NYSE prohibits enforcement of the arbitration clause at issue. *See* NASD Code Of Arb., Rule 10301; NYSE Rule 600. Plaintiff's citation to *Blythe v. Deutsche Bank AG*, 2005 WL 53281 (S.D.N.Y. 2005), is easily distinguishable, as the plaintiffs therein were customers or NASD members, or associated therewith, and the agreement at issue expressly restricted the signatories from compelling arbitration in such circumstances.

Moreover, the context of the arbitration clause suggests that the parties simply did not agree to restrict their right to arbitration as plaintiff suggests they did. Accordingly, this Court

should "enforce the type of arbitration to which these parties agreed." *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 277 (1995) (holding that class certification in arbitration could not be ordered as the agreement did not provide for it). As instructed by *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 454, 123 S.Ct. 2402, 2408 (2003), this Court should enforce the agreement to arbitration by allowing the arbitrator to determine what kind of arbitration proceedings the parties agreed to. Indeed, several court courts have held generally that the right to arbitrate outweighs the right to class-wide relief. *See e.g., Lewis Tree Service, Inc. v. Lucent Technologies*, 239 F.Supp.2d 332, 337-38 (S.D.N.Y. 2002); *Hale v. First USA Bank, N.A.*, 2001 WL 687371, *6 (S.D.N.Y. 2001).

REPLY POINT II

PLAINTIFF SHOULD BE ESTOPPED FROM<br>AVOIDING ARBITRATION WITH THE LEEDS DEFENDANTS

Plaintiff should be estopped from avoiding arbitration with the Leeds Defendants as plaintiff's claims against the Leeds Defendants are inextricably intertwined with the arbitration agreement, and with plaintiff's claims against Prudential, which, pursuant to the agreement, must also arbitrated. Plaintiff mistakenly cites *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177-79 (2d Cir. 2004) (compelling arbitration between signatory plaintiffs and non-signatory defendants whom the plaintiffs alleged conspired against them), in support of his arguments. *JLM* holds merely that the court should conduct a fact-specific inquiry to determine whether a non-signatory can compel a signatory to arbitrate his claims against that non-signatory. Thus, the Second Circuit articulated the standard as follows: "under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed ..., and the issues that had arisen' among them discloses that 'the issues the nonsignatory is

2

seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.' *See id., citing Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406-07 (2d Cir.2001) (compelling arbitration between signatory and non-signatory where the controversy between them was closely bound to dispute in arbitration between the two signatories to the contract); *see also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947-48 (11th Cir.1999) (holding that a signatory may be estopped "[w]hen each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement").[1]

While such an analysis may include consideration of the relationship between the parties, the standard, as articulated by the Second Circuit is not that of a two-pronged test, requiring a corporate or other similar relationship, as plaintiff contends.  In fact, plaintiff expressly concedes that the *JLM* analysis calls for estoppel here, as he concedes what he calls the first prong of the two-pronged test -- that the claims are intertwined with the agreement (at opp. brief to the Leeds Defendants, at 4).  Accordingly, plaintiff should be estopped from avoiding arbitration of its claims against the Leeds Defendants pursuant to its agreement to arbitrate with Prudential.

Indeed, the Second Circuit held in *Denney v. BDO Seidman, L.L.P.*, 2005 U.S. App. LEXIS 11149, *30-34 (2d Cir. 2005), that, where a plaintiff in a putative class action, who is also a signatory to an arbitration agreement, alleges a RICO conspiracy against a signatory and non-signatory, as here, plaintiff is held to his allegations of conspiracy, which, thus, strongly indicate that his claims against the non-signatory should be arbitrated along side the arbitrable claims asserted against the signatory defendant.

---

[1] Further, the JLM Court acknowledged that, contrary to plaintiff's contention (at opp. brief to Leeds Defendants, at 6), corporate affiliation is not a necessary element for the application of estoppel.  In fact, the court explicitly rejected the notion that the principles of estoppel are limited to relationships among corporate parents and their signatory subsidiaries. 387 F.3d at 178, n.7.

Thus, even assuming the existence of the two-prong test, requiring a "close relationship" between signatory and non-signatory, which some district courts have adopted, *Camferdam v. Ernst & Young International, Inc.*, 2004 WL 307292, at *6-7 (S.D.N.Y. 2004), is squarely on point, despite plaintiff's contention to the contrary.   In that case, plaintiffs sued both their accountants and their lawyers, alleging RICO and conspiracy claims.   In a prior agreement with their accountants, the plaintiffs had agreed to arbitrate any disputes arising between the contracting parties.  The Court reasoned that there was "a close relationship between the law firm defendants [as non-signatories] and the [signatory accountant] defendants," and that "the plaintiffs' claims [were] intimately founded in and intertwined with the [agreement to arbitrate]," citing *Fluor Daniel Intercontinental v. General Electric Co.*, 1999 WL 637236 at *6-7 (S.D.N.Y. 1999).   Thus, the Court held that plaintiffs were estopped from avoiding arbitration with the law firm defendants.   This Court should reason and hold likewise.   Indeed, *Denney*, 2004 WL 307292, at *6-7, is in accord.

Plaintiff's argument that the *Camferdam* Court relied on a theory of agency is wholly disingenuous.  *See* Plaintiff's Opp. at 2-3 n.1, 5-6.  The *Camferdam* Court, citing the plaintiff's complaint as alleging "conspiracy" between both signatory and non-signatory, reasoned that the plaintiff had thus alleged an agency relationship between and among these defendants.  As such, it found that a "close relationship" existed between the signatory and non-signatory defendants. 2004 WL 307292, at *6-7.  The Court, however, made it abundantly clear that it was applying the estoppel theory, set forth in *Thompson-CSF, S.A., v. American Arbitration Assoc.*, 64 F.3d 773, 776 (2d Cir. 1995), and not, as plaintiff suggests, the agency theory.  Accordingly, this Court should adopt the *Camferdam* analysis to facts at bar.

4

As in *Camferdam*, plaintiff alleges an agency relationship between Prudential and the Leeds Defendants, in the form of a civil conspiracy. *See Denney*, 2004 WL 307292, at *6-7. Moreover, plaintiff alleges an attorney-client relationship between himself and the Leeds Defendants, which he claims was breached. He therefore alleges a close relationship between the Leeds Defendants and himself, as signatory. Thus, and as conceded by plaintiff, his claims are intertwined with the agreement. Plaintiff should be estopped from avoiding arbitration.

The *Camferdam* Court further reasoned that, as plaintiffs' theory of liability could only succeed if the alleged conspiracy were proven true, as is the case at bar, plaintiffs' claims were "intimately founded in and intertwined with" the agreement to arbitrate. Thus, plaintiffs were estopped from avoiding arbitration of their claims against the law firm defendants. 2004 WL 307292, at *6-7. This Court should also so hold, especially where piecemeal resolution of his claims against Prudential and the Leeds Defendants would be inefficient and the arbitration between the signatories otherwise rendered meaningless. This would be contrary to the clear policies of the FAA, favoring arbitration. *See Camferdam*, 2004 WL 307292, at *6-7; *MS Dealer*, 177 F.3d at 947.

Plaintiff's attempts to discredit *McBro Planning and Development Co. v. Triangle Electrical Construction Co.*, 741 F.2d 342 (11th Cir. 1984), *Sam Reisfeld & Son Import Co. v. Eteco*, 530 F.2d 679 (5th Cir. 1976), also fail. Contrary to plaintiff's contention (opp. brief to the Leeds Defendants, at 6), *McBro* is analogous to this case because it involves a situation where none of the interested parties were related entities and the Court determined that arbitration was appropriate between signatory and non-signatory, as the claims to be resolved were founded in, and interrelated with, the agreement to arbitrate. *Sam Reisfeld* is also useful, as the Court reasoned there, that estoppel was appropriate because "[t]he charges against these two

defendants were based on the same operative facts and were inherently inseparable from the claims against [the non-signatory defendant]."

The cases cited by plaintiff in his opposition are distinguishable. In *American Medical Assoc. v. United Healthcare Corp.*, 2003 WL 22004877, *3 (S.D.N.Y. 2003), the Court determined that, unlike here and contrary to plaintiff's interpretation of that case (plaintiff's opp. brief to the Leeds Defendants, at 3-4), the collective bargaining agreement at issue, containing an arbitration clause, touched only minimally on claims brought by a non-signatory health insurance company. Indeed, the insurance company's claims arose under and would require interpretation of the Certificate of Insurance and not the collective bargaining agreement. *See id.* at *3.

Similarly, in *Massen v. Cliff*, 2003 WL 2012404 (S.D.N.Y. 2003), the Court reasoned that a non-signatory could not compel arbitration with a signatory to a commissions agreement, where, unlike here, the non-signatory's claims against that signatory was not intertwined with the relevant agreement. In fact, the non-signatory sought commissions under an entirely different, unrelated agreement. Also, in *Orange Chicken, LLC v. Nambe Mills, Inc.*, 2000 WL 1858556 (S.D.N.Y. 2000), the Court refused to compel arbitration because, unlike here, there was only a loose nexus between the signatory's claims against the non-signatories and the agreement at issue. Accordingly, none of these case cited by plaintiff apply to the facts at bar.

*Chase Mortgage Company-West v. Bankers Trust Co.*, 2001 WL 547224 (S.D.N.Y. 2001), also cited by plaintiff, supports the Leeds Defendants' arguments. In that case, the Court did compel arbitration between the signatory and non-signatory, reasoning that, as in the case at bar, the signatory's claims against the non-signatory arose under the subject matter of that agreement. In so holding, the Court cited *McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342 (11th Cir. 1984) (permitting a non-signatory to compel arbitration with

a signatory, where the claims brought by the signatory against the non-signatory were "intertwined with the underlying contract obligations"). Here, it is beyond dispute that plaintiff's claims, by his own admission, arise under the subject matter of the agreement at issue.

*Fluor Daniel Intercontinental v. General Electric Co.*, 1999 WL 637236 at *6-7 (S.D.N.Y. 1999), is similarly helpful to the Leeds Defendants. The Court in that case compelled arbitration between signatory and non-signatory because it found a nexus between the plaintiff signatory's claims and the obligations and duties of the defendant non-signatories under the agreements at issue. Indeed, the Court in *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993), similarly noted that the Court in *McBro, supra,* held that estoppel applied there largely because of the "close relationship of the alleged wrongs to the non-signatory's obligations ... in the contract ...." Such is the case here where the non-signatory Leeds Defendants were indisputably bound by obligations surrounding and flowing from the agreement between Prudential and their client (as, pursuant to the pleadings, the Leeds firm counseled plaintiff in entering into the 1998 settlement agreement). Indeed, many, if not all, of plaintiff's claims against the Leeds Defendants allege breach of these obligations. Thus, it is clear that plaintiff's claims are intertwined with the agreement to arbitrate, and thus, plaintiff should be estopped from avoiding arbitration with the Leeds Defendants.

*In re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d 237 (S.D.N.Y. 2005), is also unhelpful to plaintiff. The Court cites *JLM* for the proposition that a court must make a fact-specific inquiry as to whether the issues sought to be resolved are intertwined with the relevant agreement (*see id.* at 260-61). It then held that arbitration should be compelled between a signatory and certain non-signatory banks, even though the non-signatories did not have a corporate relationship with the signatory banks, and were instead competitors. Plaintiff

disingenuously argues that the non-signatories "maintained a corporate relationship" with certain signatories. This is simply not true. The Court noted only that the non-signatory entities shared membership, with certain signatories, in a business association alleged by plaintiff to be the vehicle for a conspiracy. Reasoning that "[i]n a nutshell, plaintiffs allege that all bank defendants conspired to fix the currency conversion fees through their common membership in the network associations," the Court found plaintiff's claims against the non-signatory banks to be intertwined with the agreement to arbitrate. The Court should similarly find here that plaintiff's claims of conspiracy against signatory and non-signatory are intertwined with his agreement to arbitrate, and compel arbitration among all parties. *See Camferdam*, 2004 WL 307292, at \*6-7

Finally, *In re Managed Care Litigation*, 132 F.Supp.2d 989 (S.D. Florida 2000), is a Florida District Court decision, wherein the Court refused to apply estoppel where the non-signatory entity defendants had "no relation to the [signatory entity defendants] except that all three defendants are *separate* operators of *separate* managed care companies." *Id.* at 994 (emphasis added). While these facts provided the Court with a simple enough analysis, this is not the case here, where plaintiff alleges a complex arrangement of agreements, even conspiracy, between its former counsel and Prudential, a signatory to the arbitration agreement. Plaintiff should be compelled to arbitrate all of his claims.

## REPLY POINT III

### AS PLAINTIFF FAILS TO PLEAD A RICO CLAIM, THE SOLE BASIS FOR FEDERAL JURISDICTION, HIS AMENDED COMPLAINT MUST BE DISMISSED

In order to avoid dismissal, plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions...." *Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000).

A.  Plaintiff's RICO Claims Are Time-Barred

Plaintiff's conclusory claim that he learned of the settlement agreement in October 2004, without any explanation, is entirely belied by the fact that he settled his case against Prudential in October 1998 and signed the purported "secret agreement" in March 1998. As plaintiff had four years from the date that he discovered or should have discovered the injury to his business or property to commence this action, his current action is time-barred.  Nor does plaintiff meet his burden to demonstrate otherwise (*see* Am. Cplt. ¶ 12).

B.  Plaintiff Otherwise Fails To Sufficiently Plead A Predicate Act Under RICO

Even if plaintiff's RICO claims were not time-barred, plaintiff has failed for several independent reasons to plead the essential elements of a RICO claim.

**First:** Plaintiff does not and cannot deny that he failed to allege the provision of section 1962 that the Leeds Defendants are claimed to have violated. 18 U.S.C. § 1962.  Plaintiff does not (and cannot) distinguish *Atlantic Gypsum*, which is squarely on point. Nor does he successfully distinguish *Reynolds*, which holds that "it is essential to plead precisely[,] in a RICO section case[,] the enterprise alleged *and* the RICO section allegedly violated." 882 F.2d 1249, 1251 (emphasis added).  Further, *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004), despite plaintiff's contentions, holds that a parroting of the RICO statutory language, while generally referring the reader to numerous previous paragraphs, is inadequate.  Thus, plaintiff's failure to specify the sections upon which he relies is grounds for dismissal.

**Second:** Plaintiff does not adequately plead two predicate acts, as required under RICO, and in his opposition, woefully attempts to remedy this by quoting the complaint at length. Indeed, as set forth in the Leeds Defendant's moving papers, plaintiff's allegations of mail and

wire fraud, in addition to his other attempts to allege predicate acts, are inadequate.[2] *See, e.g.,*
*Nakahara v. Bal,* 1998 WL 35123 (S.D.N.Y. 1998) (allegations that were wholly conclusory and
unsupported fail to satisfy pleading requirements for a RICO fraud claim).[3] *See O'Brien v. Nat'l*
*Property Analysts Partners,* 719 F. Supp. 222, 226 (S.D.N.Y. 1989).[4]

     Plaintiff, in his opposition, mistakenly cites *A. Terzi Productions, Inc. v. Theatrical*
*Protective Union,* 2 F.Supp.2d 485, 499-500 (S.D.N.Y. 1998). The court in that case dismissed
plaintiff's wire fraud RICO predicate allegations. The plaintiff cites dicta therein to assert that
wire fraud acts need not include false statements. However, as in *Terzi,* beyond mere conclusory
statements, the plaintiff here also fails to allege an underlying scheme to defraud.

     Accordingly, plaintiff is necessarily limited to his allegations of commercial bribery,
which similarly fail because, for among other reasons, he cannot allege a concrete harm to an
existing asset, nor the loss of a potentially contingent one. In his attempt to distinguish *Cougar*
*Audio,* 2000 WL 420546 at *8, plaintiff misstates the court's simple holding that, as the
complaint therein "fail[ed] to allege any damage as a result of fraud, [the court] conclude[d] that
[plaintiff] fail[ed] to allege injury by reason of alleged commercial bribery." As in *Cougar*
*Audio,* plaintiff here alleges that, at best, as a result of purported bribery, he suffered an abstract
harm -- perhaps a loss of bargaining power in prosecuting or settling his claims against
Prudential.[5] Yet, as set forth, in our prior papers, plaintiff willingly accepted his settlement

---

[2] In fact, plaintiff concedes that the alleged wire communications could not be violations of the federal wire fraud act, as he does not (and cannot) plead any interstate usage. See, e.g., McCoy v. Goldberg ,748 F. Supp. 146, 154 (S.D.N.Y. 1990); Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 243 (2d Cir. 1999).

[3] Surprisingly, accusing the Leeds Defendants of "angrily tak[ing] issue," plaintiff continues to defend his illogical allegations, in paragraph 68(b)(5) of the amended complaint, wherein plaintiff describes statements in a letter from Prudential, but, ascribes these statements to the Leeds Defendants.

[4] Plaintiff's failure to adequately plead facts inferring fraudulent intent also vitiates his claims of bribery as a predicate act. See Jaggie v. Northstar Tubular Corp., 195 A.D.2d 336, 600 N.Y.S.2d 18 (1ˢᵗ Dep't 1993).

[5] Indeed, at opp. brief to the Leeds Defendants, at 17, plaintiff concedes that his "loss' occurred at the time of the 1998 settlement with Prudential.

award and acknowledged his willingness to enter into that agreement. Plaintiff's claim of bribery is thus insufficient as a RICO predicate.

Similarly, *Mittelstaedt*, which plaintiff also unsuccessfully attempts to distinguish (and misconstrues in so doing), holds that a charge of bribery was not sustainable without an allegation of economic injury. 31 F.3d at 1220.

**Third:** Plaintiff fails to adequately allege a pattern of racketeering activity.

      1.    Closed-ended Continuity:

Plaintiff fails to establish closed-ended continuity because the allegedly criminal activity was purportedly committed in connection with an isolated settlement process, which, for this plaintiff, lasted no more than the period from January 5, 1998 through October 27, 1998.

Moreover, as plaintiff alleges that, at the latest, he was injured upon settlement with Prudential in October 1998, and admits so in his opposition brief to the Leeds Defendants, at 17, any predicate acts occurring thereafter could not possibly be in furtherance of any scheme under RICO, despite his contention to the contrary, at page 20, note 11. *See Price v. Gast*, 2000 WL 369381, *7 (S.D.N.Y. 2000).

Plaintiff's attempts to distinguish *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463 (2d Cir. 1995); *Cont'l Realty Corp.* v. *J.C. Penney Co.*; and *Mead v. Schaub* all fail. Plaintiff attempts to distinguish these cases by misconstruing the allegations of his complaint. For instance, plaintiff's references to mediations in 2001 is irrelevant as such has nothing to do with his current claim and the 1998 settlement of his claim against Prudential. Indeed, any attempt by plaintiff to assert RICO claims on behalf of others must fail. Certainly, plaintiff cannot meet the strict pleading requirements of Rule 9(b), as to allegations of fraud (which he primarily relies on to assert RICO), by making hearsay allegations regarding

11

mediations in 2001, occurring three years after his settlement and having nothing to do with him.

Thus, as in *Cont'l Realty Corp.*, taken on its face, plaintiff's complaint alleges that the defendants' "actions were narrowly directed toward a single allegedly fraudulent goal," 729 F. Supp. at 1455, and as these alleged events all occurred within a 9-month period (at best), plaintiff cannot successfully assert closed-ended continuity under RICO.

2.    Open-ended Continuity:

Nor can plaintiff allege a pattern of open-ended continuity, which requires him to allege "that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Nowhere in the amended complaint does plaintiff identify *any* "racketeering activity" occurring after Vaughn settled his employment claims against Prudential.

Except for conclusory statements of matters upon which plaintiff has no knowledge, *e.g.*, para. 34, plaintiff alleges only that the Leeds Firm continues to seek and attract clients with employment discrimination claims. "[T]he most that can be said for this aspect of the pleading is that it alleges that defendants...are continuing to do business." *Ochs v Shearson Lehman Hutton Inc.*, 768 F. Supp. 418, 426 (S.D.N.Y. 1991). Plaintiff mistakenly cites *GICC*, which found that no open-ended continuity could exist where, as here, the alleged scheme was "inherently terminable."

Accordingly, plaintiff does not, and cannot, adequately allege a pattern of racketeering activity, and his allegations after 1998, as to other alleged "victims" is irrelevant.

**Fourth:** Plaintiff does not adequately allege causation, *see Moore* v. *Painewebber, Inc.*, 189 F.3d 165, 169-70 (2d Cir. 1999), neither "transaction causation" (that, "but for" the purported "secret agreement" between Prudential and the Leeds Firm, he would not have

retained the Leeds Firm, or litigated his employment dispute against Prudential, or turned down Prudential's $200,000 settlement, or even received more money), or "loss causation" (as no alleged misrepresentation by the Leeds Defendants caused plaintiff to suffer any injury).

Vaughn estimated his damages and the Leeds Defendants achieved that goal, as set forth in our moving papers.

**Fifth:** In addition, "a civil RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *See Price v. Gast*, 2000 WL 369381, *9. Yet, plaintiff's claim of injury does not provide him with standing. As set forth above, plaintiff can allege no injury as he estimated the damages he was entitled to from Prudential and received that amount.[6] *See id.* (holding that, if plaintiff had a claim as to extinguished contractual rights, his remedy lied in breach of contract).

**Sixth:** Because plaintiff fails to plead facts to show a violation of section 1962(c), plaintiff cannot assert a claim for RICO conspiracy violation under section 1962(d). Here, apart from the defects defeating plaintiff's entire RICO claim, plaintiff's allegations are also "devoid of factual assertions concerning the nature of the agreement" and "insufficient to state a claim under Section 1962(d)." *Allen* v. *New World Coffee, Inc.*, No. 00 Civ. 2610, 2001 WL 293683, at *9 (S.D.N.Y. Mar. 27, 2001).

Further, despite plaintiff's suggestions to the contrary, *Casio Computer Co.*, stands for more than the proposition that plaintiff's conspiracy claims fail if the underlying claims fail. Plaintiff here, like the plaintiffs in *Casio Computer Co.*, "fail[s] to allege adequate facts to bolster its conspiracy claim, and does not plead the facts necessary to indicate that defendants, by their words or actions, had a conscious agreement to commit predicate acts in furtherance of the

---

[6] Moreover, plaintiff's allegation of bribery under New York law, as a RICO predicate, is likewise insufficient because of plaintiff's inability to properly allege that he was "actually harmed" by any alleged acts of the

common goal of the enterprise." 2000 WL 1877516, at *23

## REPLY POINT IV

### PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

A. <u>Plaintiff's Claim For Fraud And Conspiracy To Defraud Must Fail</u>

Plaintiff has failed to plead a claim of civil fraud, as set forth above in Reply Point III.  In addition, plaintiff's cause of action for fraud is time-barred.  As plaintiff alleges in the amended complaint, the alleged wrong, including any purported misrepresentations, occurred on February 13, 1998 (*see* Am. Cplt. ¶ 45).  Accordingly, the alleged "wrongdoing" occurred on that date, and thus, the claim of fraud began to accrue and expired over a year ago.[7]  *Hoffenberg v. Hoffman & Pollok*, 288 F. Supp.2d 527, 536 (S.D.N.Y. 2003).

Plaintiff cites *Stull v. Bayard*, 561 F.2d 429 (2d Cir. 1977), which is inapplicable, as the court found there that the six-year limitations began to run "promptly following defendants' [alleged] fraudulent conduct." This Court should find the same here, that the statute began to run against plaintiff from February 1998. Further, the purported misrepresentations were discovered by plaintiff, as evidenced by Ex. "E" to the Morelli Declaration, on March 5, 1998, and any tolling for such discovery would expire two years thereafter. *Hoffenberg*, 288 F. Supp.2d at 536.

Also, plaintiff concedes that his "conspiracy to defraud" count is a theory in search of a claim for relief.  New York law does not recognize any independent tort of civil conspiracy. *Resnick v Resnick,* 722 F. Supp. 27, 37 (S.D.N.Y. 1989).

Plaintiff then cites to cases that do not support his arguments. For instance, in *Arlinghaus v. Ritenour*, 622 F.2d 629, 640 (2d Cir. 1980), the court found, as this Court should find here,

---

defendants.  See Jaggie v. Northstar Tubular Corp., 195 A.D.2d 336, 600 N.Y.S.2d 18 (1st Dep't 1993).

[7] Interestingly, at page 17 of his opposition brief to the Leeds Defendants, in arguing that the statute of limitations on his civil fraud claim runs from his date of his "loss," plaintiff admits that his RICO claim should have expired in 2002, as his claim accrued when he signed the 1998 settlement agreement with Prudential.

that a charge of civil conspiracy could not succeed where there was no "intentional participation with a view to furtherance of the common design." Indeed, as set forth above, conclusory statements do not suffice. And, in *Rutkin v. Reinfeld*, 229 F.2d 248 (2d Cir. 1956), also cited by plaintiff, the court explained that the statute of limitations on a conspiracy charge begins to run from the alleged time of injury. Thus, as plaintiff's injury occurred at the time of the alleged fraud, in February 1998, the statute has run on any such charge.

Finally, despite his bare assertions, nor can plaintiff plead the requisite elements of a civil conspiracy, also set forth above in Reply Point III, Section 6, and in our moving papers.

B. Plaintiff's Claim For Breach Of Fiduciary Duty And Breach Of Contract Must Fail

Plaintiffs' fiduciary duty claim fails because it merely mimics an inadequate malpractice claim and alleges no independent tort. *CVC Capital Corp. v Weil, Gotshal, Manges*, 192 A.D.2d 324, 595 N.Y.S.2d 458 (1st Dept. 1993). Plaintiff's citation to *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F.Supp. 285, 289-290 (S.D.N.Y. 1995), is inapposite as it does not involve an attorney-client relationship and, instead, a non-fiduciary relationship surrounding a licensee agreement. His citation to *Krouner v. Koplovitz*, 572 N.Y.S.2d 959, 961 (3d Dep't 1991), similarly fails. In *Krouner*, the breach of contract claim failed, and, presumably, as suggested by that court, a malpractice claim would have also failed; thus, Krouner's claim for breach of fiduciary duty was separately analyzed, outside of the malpractice context, as an alleged independent tort.

Plaintiff also unsuccessfully attempts to distinguish cases cited by the Leeds Defendants, but merely muddies the water. For instance, in *Wechsler v. Squadron, Ellenoff, Plesent & Scheinfeld, L.L.P.*, 212 B.R. 34, 39-40 (S.D.N.Y. 1997), the court found that the plaintiff's "three cause of action – legal malpractice, breach of contract and breach of fiduciary duty – essentially

amount[ed] to a single claim for the provision of deficient legal services. *See Rastelli v. Sutter, Moffatt, Yannelli & Zerin, P.C.*, 87 A.D.2d 865, 866, 449 N.Y.S.2d 305, 306 (2d Dep't 1982) (reasoning that a breach of contract and malpractice claim were "one and the same"); *CVC Capital Corp. v Weil, Gotshal, Manges*, 192 A.D.2d 324, 325, 595 N.Y.S.2d 458, 459 (reasoning that a cause of action alleging breach of fiduciary duty, merely tracking a malpractice claim and alleging no independent intentional tort, was properly dismissed).

Plaintiff implausibly contends that he does not pursue a malpractice claim by suggesting that he is seeking damages for bribery. However, at page 17 of his opposition brief to the Leeds Defendants, plaintiff admits that his "loss" occurred as early as October 27, 1998, when he settled with Prudential. Thus, he presumably claims that his settlement award was inadequate, which clearly appears to be an insufficient malpractice claim (insufficient because, for among other reasons, the statute of limitations has expired on this claim, and plaintiff cannot allege actual damages to sustain a malpractice claim). Moreover, the case plaintiff cites in this portion of his argument, *City of New York v. Liberman*, 660 N.Y.S.2d 872, 873 and 875 (1st Dep't 1998), is wholly inapposite as it involves bribery of a city government official and public policy considerations arising there from.

Plaintiff also cites *Kaszirer v. Kaszirer*, 730 N.Y.S.2d 87, 88 (1st Dep't 2001), for the proposition, inapplicable here, that the statute of limitations for breach of fiduciary duty is six years where equitable relief is sought, but plaintiff does not (and cannot) cite to authority that provides plaintiff with any right to such equitable relief.

Finally, plaintiff argues that the Leeds Defendants should be equitably estopped from pleading the statute of limitations, which has expired on plaintiff's claims. However, plaintiff does not plead facts that would give him any such right (especially where all his allegations of

fraud or misrepresentation are merely conclusory statements), nor does plaintiff have any right to equitable estoppel where the alleged misrepresentation or act of concealment, underlying his estoppel claim, is the same as that which is the basis of plaintiff's underlying substantive claim. *See Rizk v. Cohen*, 73 N.Y.2d 98, 105-106 (1989). Nor can plaintiff allege due diligence on his part or that any misrepresentation by defendants induced him to refrain from filing a timely action, as required by *Simcuski v.* Saeli, 44 N.Y.2d 442 (1978). Notably, *Simcuski* is easily distinguishable as the plaintiff therein, unlike plaintiff here, alleged a medical malpractice claim and a subsequent fraud aimed specifically at concealing that negligence. As stated above, plaintiff settled his claim against Prudential in 1998, and was apparently satisfied with same.

C. Plaintiff's Claim For Breach Of Implied Covenant Of Good Faith & Fair Dealing Fails

Plaintiff's claim for breach of an implied covenant of good faith and fair dealing fares no better as such a claim cannot substitute for an unsustainable breach of contract claim. As in the authority plaintiff cites himself, *Aventine Investment Management, Inc. v. Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 697 N.Y.S.2d 128 (2d Dep't 1999), plaintiff cannot distinguish his breach of contract claim from his breach of an implied covenant claim. Thus, the latter is non-existent, and the first fails for reasons set forth above.

D. Plaintiff's Claims For Attorney's Fees Should Be Dismissed

Plaintiff concedes that he is not entitled to attorneys fees as a matter of law.

REPLY POINT V

PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HIS COMPLAINT

As in the case cited by plaintiff himself, *Goodman v. New York City Off-Track Betting Corp*, 1999 WL 269959 (S.D.N.Y. 1999), where an amendment would be futile, amendment should not be allowed. Thus, in *Goodman*, amendment was futile where plaintiff's state law

17

claims and certain federal claims were time-barred. The Court should find similarly here and deny plaintiff the opportunity to amend his complaint for the third time. Further, should the court determine that plaintiff's RICO claim is inadequate, as it should, amendment should not be allowed as this would likewise be a futile effort. *See id.*

REPLY POINT VI & OPPOSITION POINT I

PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED<br>FOR FAILURE TO SERVE INDIVIDUAL DEFENDANTS

"Among federal courts, there is virtual unanimity that dismissal is mandatory if a defendant is not served within 120 days [pursuant to Rule 4(m)], unless the plaintiff can show good cause for delay.' " *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Sun*, No. 93 Civ. 7170, 1994 WL 463009, at *2 (S.D.N.Y. Aug.25, 1994) (quoting *Geiger v. Allen*, 850 F.2d 330, 332 (7th Cir.1988)). In general, "good cause" only exists in exceptional circumstances where the failure to serve in a timely manner results from circumstances beyond the plaintiff's control. *Id.* An attorney's inadvertence, neglect or misplaced reliance does not constitute good cause for the purposes of Rule 4(m). *See McGregor v. United States*, 933 F.2d 156, 160 (2d Cir.1991). Indeed, in the case at bar, plaintiff concedes his failure to serve and opposes our motion to dismiss based solely on the affidavit of his former counsel. *See* Affidavit of Angela Roper. Yet, plaintiff's former counsel claims no more than neglect and inadvertence, and misplaced reliance upon the services of another attorney (whose relationship to this matter is unclear). Surely, this does not suffice as good cause to excuse plaintiff's failure to serve certain of the individual Leeds Defendants and the amended complaint should be dismissed as to those individuals.

Thus, where plaintiff's made no attempt to serve the individual defendants, and the time to do so has long expired, the complaint should be dismissed. *See Khorozian v. McCullough*, 186 F.R.D. 325, 326-329 (1999) (*citing Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298 (3d Cir.

18

1995). *Khorozian* is similar to the case at bar. Plaintiffs therein had filed a legal malpractice action against a former attorney individually and against his firm. Plaintiffs forwarded a request for waiver of service shortly after their complaint was filed. Thereafter, no attempts to effect service were made until after the 120-day period had expired. Ultimately, the Court concluded that because plaintiffs made no attempts to affect personal service in a timely manner, good cause could not be demonstrated, and the complaint was to be dismissed.

The cases cited by plaintiff are wholly distinguishable. In *Blessinger v. U.S.*, 174 F.R.D. 29 (E.D.N.Y. 1997), the Court found good cause to excuse plaintiff's failure to serve certain individual defendants only because it expressly held that the Coast Guard had obstructed plaintiff's service of these defendants by refusing to cooperate with plaintiff to assist him in locating the individual defendants, who were all members of the Coast Guard. Likewise, in *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 312 (2d Cir. 1986), the Court found that dismissal was not proper where an imprisoned plaintiff had done "everything in his power to comply with Rule 4." Here, plaintiff *never* even attempted to serve the individual Leeds Defendants.

The Leeds Defendants properly contested service on their Rule 12(b) response to the complaint, currently before this Court. *See Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972) (taking basic procedural steps, such as appearing, do not constitute a waiver of jurisdictional objections); *Elbex Video Kabushiki Kaisha v. Taiwan Regular Elecs. Co.*, No. 93 Civ. 6160, 1994 WL 185896, at *2-*3 (S.D.N.Y. May 10, 1994) (no waiver of improper service defense where defense participated in teleconferences with court regarding time extensions); *Securities Training Corp. v. Securities Seminar, Inc.*, 633 F.Supp. 938, 939 (S.D.N.Y.1986) (no

waiver of jurisdictional defense where parties participated in settlement negotiations for ten months before defense asserted motion).

To the extent that the statutes of limitations will expire on plaintiff's claims, this is not a sufficient reason to grant a discretionary extension of the time to serve, which has long passed. *See Astarita v. Urgo Butts & Co.*, No. 96 Civ. 6991, 1997 WL 317028, at *4-5 (S.D.N.Y. June 10, 1997). In *Astarita*, where plaintiff offered no explanation for its failure to serve defendants, as here, the court dismissed the action even though the applicable statutes of limitations barred refiling of plaintiff's claims. Thus, the Court should dismiss plaintiff's action as the Individual Leeds Defendants, as sought in our moving papers.

CONCLUSION

For the reasons set forth above and in the documents accompanying this motion, we respectfully request that this Court dismiss and/or stay this action, and deny plaintiff's cross-motion, and grant such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          June 17, 2005

                                    LITCHFIELD CAVO L.L.P.


                              By:    _____
                                     Daniel T. Hughes (DTH-4622)
                                     Kevin L. Spagnoli (KLS-1717)
                                     Attorneys for Defendants Leeds, Morelli &
                                     Brown, P.C. (incorrectly sued herein as
                                     Leeds, Morelli & Brown, LLP, Leeds &
                                     Morelli, and Leeds, Morelli & Brown),
                                     Lenard Leeds, Steven A. Morelli, Jeffrey K.
                                     Brown, James Vagnini, Frederic David
                                     Ostrove, and Robert John Valli, Jr.