```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
JEFFREY S. VAUGHN, individually and on  :
behalf of those class members similarly :
situated,                               :
                                        :
                    Plaintiff,          :    04 Civ. 8391 (DLC)
                                        :
          -v-                           :    OPINION AND ORDER
                                        :
LEEDS, MORELLI & BROWN, P.C., LEEDS,    :
MORELLI & BROWN, L.L.P., LEEDS &        :
MORELLI, LEEDS, MORELLI & BROWN,        :
PRUDENTIAL SECURITIES, INC., PRUDENTIAL :
FINANCIAL, INC., LENARD LEEDS, STEVEN   :
A. MORELLI, JEFFREY K. BROWN, and JOHN  :
DOES, JAMES VAGNINI, FREDERIC DAVID     :
OSTROVE, ROBERT JOHN VALLI, JR.,        :
DISCRIMINATION ON WALL STREET, INC. and :
DISCRIMINATION ON WALL STREET           :
MANHATTAN, INC., and JOHN DOES, ESQS.   :
1-10 and JANE DOES, ESQS., 1-10 a       :
fictitious designation for presently    :
and unknown licensed attorneys,         :
professionals and/or unknown persons or :
entities,                               :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X
```

Appearances:

For the Plaintiff:

Blaine H. Bortnick
Jeffrey Liddle
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York  10022


For Defendants Leeds, Morelli & Brown,
P.C., Leeds, Morelli & Brown, L.L.P.,
Leeds & Morelli, Leeds, Morelli &
Brown, Lenard Leeds, Steven A. Morelli,
Jeffrey K. Brown, James Vagnini,
Frederic David Ostrove, and Robert John
Valli, Jr.:

Daniel T. Hughes
Kevin L. Spagnoli
Litchfield Cavo LLP
420 Lexington Avenue, Suite 1750
New York, New York  10170


For Defendant Prudential Securities,
Inc. and Prudential Financial, Inc.:

Gerard E. Harper
Theodore V. Wells, Jr.
Beth S. Frank
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
1285 Avenue of the Americas
New York, New York  10019



DENISE COTE, District Judge:

  The plaintiff, Jeffrey S. Vaughn ("Vaughn"), has brought this putative class action against his employer and the lawyers he retained to represent him in an employment discrimination dispute against his employer, alleging that the settlement agreement that resolved the dispute (the "Agreement") was a product of secret collusion between his employer and his lawyers. The defendants have moved to dismiss this action and to compel arbitration, relying on an arbitration provision in the Agreement.  Vaughn contends that the arbitration provision does not control, because the arbitration rules provided for in the Agreement do not permit class actions, and his lawyers are not parties to the Agreement.  For the following reasons, the motion to compel arbitration is granted and the case is stayed until the resolution of the arbitration proceedings.

**BACKGROUND**

The following facts are taken from Vaughn's amended complaint unless otherwise noted. In 1998, Vaughn retained lawyers from Leeds, Morelli & Brown, P.C. (collectively "Leeds Defendants"), to assert employment discrimination claims against his employer, Prudential Securities Incorporated, for which Prudential Financial Inc. is a successor in interest (collectively "Prudential Defendants"). Vaughn pursued these claims through alternative dispute resolution procedures including mediation. The dispute between Vaughn and the Prudential Defendants produced the Agreement dated October 27, 1998. The Agreement, which is incorporated by reference in the Complaint and on which Vaughn has relied in part in bringing this action, granted the Prudential Defendants a general release of claims in exchange for $200,000.00. The Agreement also contains the following arbitration provision:

> <u>Any claim or controversy arising out of or related to this Agreement or the interpretation thereof</u> will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

(Emphasis supplied.)

Vaughn alleges that the Leeds Defendants and Prudential Defendants had a "secret agreement" dated February 13, 1998 that was part of an employment discrimination dispute resolution system that the Leeds Defendants had established, and that would

enable the Prudential Defendants to cap damages paid to various plaintiffs and settle numerous claims with plaintiffs represented by the Leeds Defendants at one time with a lump sum payment while providing direct payment of attorney's fees to the Leeds Defendants.  Vaughn claims that he only learned of the existence of the secret agreement in or about October 2004.  He initiated this action on October 25, 2004, and filed an amended complaint ("Complaint") on March 15, 2005.

Vaughn has styled this action as a class action based on his allegation that hundreds of other Prudential employees with discrimination claims against the company were adversely affected by collusion between the Leeds Defendants and the Prudential Defendants based on this or other secret agreements.  Vaughn asserts claims for common law fraud, conspiracy to defraud, aiding and abetting fraud, tortious interference with a contract, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Racketeer Influenced Corrupt Organization Act ("RICO").

The Prudential Defendants and the Leeds Defendants both have filed motions to dismiss or to compel arbitration.  The Prudential Defendants contend that because the Agreement contains an arbitration provision, this matter should be referred to arbitration, and that this Court does not have subject matter jurisdiction because the only mechanism conferring federal question jurisdiction is the RICO claim, which the Prudential Defendants argue is time-barred and insufficiently pleaded.  The Leeds Defendants advance similar arguments, and add, among other

4

things, that the arbitration clause equitably estops Vaughn from pursuing his claims in federal court notwithstanding the fact that the Leeds Defendants are not parties to the Agreement. Vaughn argues among other things that because the arbitration rules provided for in the Agreement do not permit class actions, and he has styled his claim as a class action, this matter should not be referred to arbitration.

## DISCUSSION

1. The Prudential Defendants

The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219 (1985). The FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted). Therefore, "under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). The FAA requires that a contract provision to arbitrate disputes arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Under the FAA, unless parties have unambiguously provided

for an arbitrator to decide questions of arbitrability, it is for courts to decide whether the parties agreed to arbitrate. <u>Contec Corp. v. Remote Solution Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005). A court deciding a motion to compel arbitration must resolve four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. <u>JLM Indus.</u>, 387 F.3d at 169. In this case, the Prudential Defendants and Vaughn agree that all of Vaughn's claims are arbitrable and that Vaughn agreed to the arbitration provision. They merely dispute whether the scope of the arbitration provision includes claims styled as class actions.

In the absence of "clear and unmistakable evidence to the contrary" in an arbitration clause, only in limited circumstances will a court "assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter." <u>Green Tree Fin. Corp. v. Bazzle</u>, 539 U.S. 444, 452 (2003) (citation omitted). "These limited instances typically involve matters of a kind that contracting parties would likely have expected a court to decide." <u>Id.</u> (citation omitted). "They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." <u>Id.</u> The question of whether arbitration clauses "forbid class arbitration . . . does not fall into this narrow

exception" because it involves "neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." Id. Thus, in a case where an arbitration clause provided that the parties "agreed to submit to the arbitrator '[a]ll disputes, claims, or controversies arising from or relating to this contract,'" the Supreme Court held that a dispute about whether the arbitration clause "forbids the use of class arbitration procedures . . . is a dispute 'relating to this contract.'" Id. at 451 (emphasis in original).[1] In such a case, it was apparent that the parties "agreed that an arbitrator, not a judge, would answer the relevant question." Id. at 452.

The arbitration clause in the Agreement contains "sweeping language concerning the scope of the questions committed to arbitration," id. at 453, as it commits to arbitration "[a]ny claim or controversy arising out of or related to this Agreement or the interpretation thereof." (Emphasis supplied.) Vaughn claims that because the arbitration clause states that the contemplated arbitration will use the "rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.," and those rules do not permit class action arbitrations, the parties could not have intended that the class action he now brings would be arbitrated. This interpretation,

---

[1] In Bazzle, an issue was whether arbitration clause language providing that disputes "shall be resolved . . . by one arbitrator selected by us [Green Tree] with consent of you [Green Tree's customer]" forbade class action arbitrations because the "consent of you" language was arguably inconsistent with multiple claimants. Bazzle, 539 U.S. at 450.

however, contradicts the clear statement that the arbitration clause applies to "any" claim or controversy related to the Agreement. Even assuming that Vaughn is right, and the applicable arbitration rules do, indeed, forbid class action arbitrations under all circumstances, it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats. Here, as in <u>Bazzle</u>, the question is "not whether the parties wanted a judge or an arbitrator to decide <u>whether they agreed to arbitrate a matter</u>," but rather "what <u>kind of arbitration proceeding</u> the parties agreed to." <u>Bazzle</u>, 539 U.S. at 452 (emphasis in original). This question "concerns contract interpretation and arbitration procedures," and is therefore "for the arbitrator, not the courts, to decide." <u>Id.</u> at 453. The Prudential Defendants' motion to compel arbitration is accordingly granted.[2]

2. <u>The Leeds Defendants</u>

The common law doctrine of estoppel may bind a nonsignatory to an arbitration agreement. <u>JLM Indus.</u>, 387 F.3d at 177. <u>See also</u> <u>Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.</u>,

---

[2] The defendants argue that the Complaint fails to state a claim for a RICO violation, and therefore, there is no basis for federal subject matter jurisdiction. Because the Complaint has a RICO claim that on its face is "neither clearly immaterial and made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous," <u>Lyndonville Sav. Bank & Trust Co. v. Lussier</u>, 211 F.3d 697, 701 (2d Cir. 2000), there is subject matter jurisdiction over this action as of now.

271 F.3d 403, 404, 406 (2d Cir. 2001); Thomson-CSF, S.A. v. Am. Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995); Camferdam v. Ernst & Young Int'l, Inc., No. 02 Civ. 10100 (BSJ), 2004 WL 307292, at *6 (S.D.N.Y. Feb. 13, 2004).

> [U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

JLM Indus., 387 F.3d at 177 (citation omitted) (emphasis supplied). See also Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005); Contec, 398 F.3d at 209; Choctaw, 271 F.3d at 406.

The Leeds Defendants argue that under this standard, they may compel Vaughn to arbitrate his claims against them, because he alleges a close relationship, in the form of a conspiracy, between both sets of defendants, and because the claims Vaughn raises against the Leeds Defendants are intertwined with the Agreement. Vaughn concedes that his claims against the Leeds Defendants are related to the Agreement, but argues that the relationship between the Leeds Defendants and the Prudential Defendants was not close enough to warrant estoppel in this case, because they did not have a relationship with each other independent of Vaughn's alleged conspiracy.

Vaughn's argument misconstrues the governing legal standard. The Second Circuit has held that a claim against an alleged co-conspirator may not "always be intertwined to a degree sufficient

9

to work an estoppel," and that "[t]he inquiry remains a fact-specific one." JLM Indus., 387 F.3d at 178 n.7 (emphasis supplied). Nonetheless, "[a]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Denney, 412 F.3d at 70 (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). In a putative class action where the plaintiff taxpayers accused an accounting firm and a bank, among others, of conspiring to lure them into participating in unlawful tax shelter schemes, and the plaintiffs had an arbitration agreement with the accounting firm but not the bank, the Second Circuit held:

> Having alleged in this RICO action that the [nonsignatory bank] and [signatory accounting firm] defendants acted in concert to defraud plaintiffs, and that defendants' fraud arose in connection with [the accounting firm's] tax-strategy advice, plaintiffs cannot now escape the consequences of those allegations by arguing that the [bank] and [accounting firm] defendants lack the requisite close relationship, or that plaintiffs' claims against the [bank] defendants are not connected to [the bank's] relationship with the accounting firm].

Denney, 412 F.3d at 70 (citation omitted). Vaughn's basic premise that Second Circuit precedent requires that the defendants have a close relationship independent of the alleged conspiracy is consequently incorrect.[3]

---

[3] To the extent that Vaughn cites district court opinions that predate Denney for the proposition that a close relationship independent of the alleged conspiracy is required for a "close relationship," this Court respectfully declines to follow them.

Vaughn contends that the Leeds Defendants had a complex scheme to settle employment discrimination claims en masse, and that this scheme involved capping liability for employers such as the Prudential Defendants in exchange for direct payment of attorney's fees by the employers. He alleges that his employment discrimination claim was swept up by this scheme because the Leeds Defendants had a comprehensive, secret agreement with the Prudential Defendants to process his claim, among others, and that this agreement adversely affected the settlement of his claim. These allegations of civil RICO conspiracy involve close cooperation and collusion between Vaughn's employer and his lawyers. This theory of liability has been described elsewhere as one that "can only succeed" if the plaintiff proves his "allegation that all Defendants conspired and acted together." Camferdam, 2004 WL 307292, at *7.[4] Vaughn therefore alleges precisely the type of "substantially interdependent and concerted misconduct" that estops him from avoiding arbitration of his claims with the Leeds Defendants. Denney, 412 F.3d at 70

---

See In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 264 (S.D.N.Y. 2005); Orange Chicken, LLC v. Nambe Mills, Inc., No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *5 (S.D.N.Y. Dec. 19, 2000).

[4] In Camferdam, where the district court required taxpayers who had arbitration agreements with an accounting firm, and who were suing the accounting firm and a nonsignatory law firm for conspiring to create unlawful tax shelters on the taxpayers' behalf, to arbitrate claims against the law firm, the court also noted that the complaint alleged a "close relationship" between the entities involved, because "[a] civil conspiracy is a kind of partnership, in which each member becomes the agent of the other." Camferdam, 2004 WL 307292, at *6 (citation omitted).

(citation omitted). The Leeds Defendants' motion to compel arbitration is therefore granted.

## CONCLUSION

The defendants' motions to compel arbitration are granted. The case is stayed until the resolution of the arbitration proceedings and is transferred to the Court's suspense docket.

SO ORDERED:

Dated:   New York, New York
         August 12, 2005

                                    _____
                                           DENISE COTE
                                    United States District Judge