UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY S. VAUGHN, individually and on
behalf of those Class Members similarly
situated,

Plaintiff,

v.

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, L.L.P., LEEDS &
MORELLI, LEEDS, MORELLI & BROWN,
PRUDENTIAL SECURITIES, INC.,
PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K.
BROWN, and JOHN DOES, JAMES VAGNINI,
FREDERIC DAVID OSTROVE, ROBERT
JOHN VALLI, JR., DISCRIMINATION ON
WALL STREET, INC. DISCRIMINATION ON
WALL STREET MANHATTAN, INC., JOHN
DOES, 1-10 AND JANE DOES, 1-10 a fictitious
designation for presently unknown licensed
attorneys, professionals and/or unknown persons
or entities,

Defendants.

---

04 Civ. 08391 (DLC)

---

# MEMORANDUM OF LAW IN SUPPORT OF PRUDENTIAL'S MOTION TO ENFORCE THIS COURT'S PRIOR ORDERS COMPELLING ARBITRATION

PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

LOWENSTEIN SANDLER, P.C.
1330 Avenue of the Americas
New York, New York 10019
(212) 262-6700

Attorneys for Defendants Prudential
Securities, Inc. and Prudential
Financial, Inc.

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ......................................................................................... ii

Preliminary Statement ............................................................................................... 2

Statement Of Facts ..................................................................................................... 4

Argument .................................................................................................................. 10

PRUDENTIAL IS ENTITLED TO ENFORCEMENT OF THIS COURT'S
PRIOR ORDERS COMPELLING ARBITRATION ................................................ 10

    A.    Principles of *Res Judicata* and Law of the Case Bar Re-Litigation Of
        Issues Already Decided By This Court ......................................................... 11

    B.    Vaughn's NASD Proceeding is a Violation of the FAA ............................. 13

    C.    The NASD Lacks Jurisdiction to Consider Issues Of Arbitrability ............ 15

    D.    Vaughn's NASD Proceeding Severely Prejudices Prudential ..................... 16

Conclusion ................................................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arizona v. California*, 460 U.S. 605 (1983) ....................................................................12

*In re Burmah Oil Tankers, Ltd.*, 687 F. Supp. 897 (S.D.N.Y. 1988) ....................11, 12, 14

*Clarkson Co. Ltd. v. Shaheen*, 544 F. Supp. 117 (S.D.N.Y.1982),
    *aff'd*, 716 F.2d 126 (2d Cir.1983) .............................................................................11

*Coady v. Ashcraft & Gerel*, 223 F.3d 1 (1st Cir. 2000)....................................................16

*Continental Group, Inc. v. NPS Communications, Inc.*, 873 F.2d 613
    (2d Cir. 1989)...............................................................................................................16

*Dalow Indus., Inc. v. Jordache Enterprises, Inc.*, 631 F. Supp. 774
    (S.D.N.Y. 1985)...........................................................................................................12

*DiLaura v. Power Authority of State of New York*, 982 F.2d 73
    (2d Cir. 1992)...............................................................................................................12

*Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman
    Foundation*, 1995 WL 8958 (S.D.N.Y. Nov. 21, 1995)...................................11, 12, 14

*Filanto, S.p.A v. Chilewich Intern, Corp.*, 984 F.2d 58 (2d Cir. 1993) ............................14

*Green Tree Finance Corp. v. Bazzle*, 539 U.S. 444 (2003)........................................5, 6, 7

*Holloway v. Cha Cha Laundry, Inc.*, 467 N.Y.S.2d 834
    (N.Y.A.D. 1st Dep't 1983).........................................................................................12

*Kashi v. Gratsos*, 712 F. Supp. 23 (S.D.N.Y. 1989).......................................................11

*Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*,
    107 F.3d 979 (2d Cir. 1997) .......................................................................................17

*Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494
    (5th Cir. 1986) .....................................................................................................12, 14

*In re PCH Associates*, 949 F.2d 585 (2d Cir. 1991)........................................................12

*Peacock v. Thomas*, 516 U.S. 349 (1996)........................................................................11

*People v. Evans*, 727 N.E.2d 1232 (N.Y. 2000)...............................................................11

ii

*Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc.*,
    1993 WL 42786 (S.D.N.Y. Feb. 17, 1993)..................................................................12

*Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698 (2d Cir. 1985) ....................................15

*Spasiano v. Provident Mutual Life Insurance Co.*, 770 N.Y.S.2d 534
    (N.Y.A.D. 4th Dep't 2003)..........................................................................................12

*Steele v. L.F. Rothschild & Co., Inc.*, 864 F.2d 1 (2d Cir. 1988) ......................................14

*U.S. v. Mason Tenders District Council of Greater New York*,
    205 F. Supp. 2d 183 (S.D.N.Y. 2002) .........................................................................11

*Zdanok v. Glidden Co., Durkee Famous Foods Division*,
    327 F.2d 944 (2d Cir. 1964) .......................................................................................12

## STATUTES

9 U.S.C.A. § 10......................................................................................................................16

9 U.S.C.A. § 16......................................................................................................................14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY S. VAUGHN, individually and on
behalf of those Class Members similarly
situated,

          Plaintiff,

          v.

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, L.L.P., LEEDS &
MORELLI, LEEDS, MORELLI & BROWN,
PRUDENTIAL SECURITIES, INC.,
PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K.
BROWN, and JOHN DOES, JAMES VAGNINI,
FREDERIC DAVID OSTROVE, ROBERT
JOHN VALLI, JR., DISCRIMINATION ON
WALL STREET, INC. DISCRIMINATION ON
WALL STREET MANHATTAN, INC., JOHN
DOES, 1-10 AND JANE DOES, 1-10 a fictitious
designation for presently unknown licensed
attorneys, professionals and/or unknown persons
or entities,

          Defendants.

**04 Civ. 08391 (DLC)**

## MEMORANDUM OF LAW IN SUPPORT OF PRUDENTIAL'S MOTION TO ENFORCE THIS COURT'S PRIOR ORDERS COMPELLING ARBITRATION

Defendants Prudential Securities, Inc. and Prudential Financial, Inc. (collectively, "Prudential") submit this memorandum of law in support of their motion to enforce this Court's prior Orders compelling arbitration. Plaintiff Jeffrey S. Vaughn ("Vaughn") has recently commenced a proceeding before the National Association of Securities Dealers ("NASD") seeking to overturn those Orders by re-litigating before the NASD issues that have already been decided by this Court.

1

## Preliminary Statement

In an action that threatens to undermine the authority of this Court and violates the Federal Arbitration Act ("FAA"), Vaughn, a former Prudential employee, has instituted an NASD arbitration which invites the arbitral panel to exercise unprecedented appellate power over – and to reverse the decision of – this Court. Specifically, Vaughn's Statement of Claim asks the NASD to overrule this Court's Orders compelling him to arbitrate his claims against Prudential and to declare that, notwithstanding those Orders, Vaughn may litigate those claims in court. As set forth below, the NASD proceeding that Vaughn has commenced is barred by law, grossly improper and outside the limits of the NASD's jurisdiction. Moreover, unless this Court acts to enforce its prior Orders, Prudential will be severely prejudiced.

This Court has twice ordered Vaughn to arbitrate his claims against Prudential as set forth in his Amended Complaint. In its first ruling, memorialized in an August 12, 2005 Opinion and Order (the "August 12, 2005 Order"), this Court considered – and expressly rejected – Vaughn's arguments (which he is rehashing now before the NASD) that his decision to style his claims against Prudential as a class action somehow relieves him of his contractual obligation to arbitrate those claims. In its second ruling, issued on December 27, 2005, this Court rebuffed Vaughn's attempts to re-open the issues decided in the August 12, 2005 Order following his failed attempt to have a New York Stock Exchange ("NYSE") arbitral panel overrule this Court. Under well-settled principles of *res judicata* and law of the case, Vaughn is bound by this Court's prior Orders compelling arbitration and cannot relitigate (here or anywhere else) issues which have already been decided by this Court. This court must not permit Vaughn to ignore this Court's Orders on arbitrability while repeatedly attempting to obtain a decision from

another forum (first, from the NYSE and, now, from the NASD) which is more to his liking.

Furthermore, by asking the NASD to overturn this Court's prior Orders, Vaughn is attempting to circumvent the FAA's clear prohibition against interlocutory appeals of orders compelling arbitration. To the extent Vaughn seeks appellate review of this Court's Orders compelling him to arbitrate, the FAA requires that he must, <u>first</u>, arbitrate his claims against Prudential and, after an award has been entered, <u>then</u>, raise his arguments concerning arbitrability in connection with motions to confirm and/or vacate and on appeal. This procedure is applicable to all litigants who oppose arbitration and Vaughn should not be permitted to operate outside the law.

Moreover, the central relief that Vaughn seeks from the NASD in his Statement of Claim – an order permitting him to avoid arbitration of his claims against Prudential – is far beyond the limits of the NASD's jurisdiction. This Court's prior Orders compelled Vaughn to arbitrate his claims against Prudential and to submit to the arbitrators questions concerning the format of that arbitration. The NASD has no authority to consider issues or to grant relief outside the parameters set forth in this Court's August 12, 2005 Order.

Finally, Prudential will be greatly prejudiced by Vaughn's recalcitrant conduct. In accordance with the FAA, Prudential has moved to compel arbitration of Vaughn's claims against it and this Court has granted that motion. Following Vaughn's attempt to ask the NYSE to overrule this Court's Order compelling arbitration, this Court issued a second Order reaffirming its prior ruling. Now, in the absence of an Order from this Court enforcing its prior Orders compelling arbitration, Prudential must either

3

expend additional time and resources re-litigating (this time, before the NASD) issues which have already been decided by this Court and which are not within the NASD's jurisdiction, or risk the NASD's imposition of default penalties.

Accordingly, Prudential respectfully requests that this Court enforce its prior Orders compelling Vaughn to arbitrate his claims against Prudential and find that those prior Orders represent the law of the case that Vaughn may not relitigate here or in any other forum.

### Statement Of Facts

On October 25, 2004, Vaughn filed a putative class action complaint alleging that Prudential secretly agreed in February 1998 to pay attorney's fees to Vaughn's former attorneys, Leeds, Morelli & Brown ("the Leeds Firm"), in exchange for the Leeds Firm's agreement to cap any damages awarded to Vaughn and other former Prudential employees, as part of the dispute resolution process to which those former Prudential employees (including Vaughn) subsequently submitted their employment discrimination claims. Vaughn amended his complaint on March 15, 2005. (*See* Amended Complaint, attached to the Affidavit of Liza Velazquez, sworn to August 30, 2006 ("Velazquez Aff."), as Exhibit ("Ex.") A.)[1]

*The Court Grants Prudential's Motion to Compel Arbitration*

On April 22, 2005, Prudential moved to compel arbitration and dismiss Vaughn's amended complaint because the language of the arbitration provision in Vaughn's October 27, 1998 settlement agreement with Prudential (which included a

---

[1]    The claims asserted by Vaughn against Prudential in his Amended Complaint include:   common law fraud, conspiracy to defraud, aiding and abetting fraud, tortious interference with contract, and violations of RICO.

4

general release of Vaughn's claims against Prudential) (the "Settlement Agreement") plainly evinced the parties' intent that Vaughn's claims be subject to arbitration. (*See* Prudential's Motion to Compel Arbitration and Dismiss Amended Complaint, attached to the Velazquez Aff. as Ex. B.)    Although Vaughn conceded that his claims against Prudential were arbitrable pursuant to the Settlement Agreement, Vaughn opposed the motion, arguing, in part, that because the rules of the NASD and NYSE, which the Settlement Agreement contemplated would be applicable to the parties' arbitration proceedings, do not permit class actions, the parties could not have intended for Vaughn's putative class action claims to be arbitrable.  (*See* Plaintiff's Memorandum of Law in Opposition to Motion to Compel Arbitration and Dismiss Amended Complaint, attached to the Velazquez Aff. as Ex. C.)

On August 12, 2005, this Court issued an Opinion and Order granting Prudential's motion to compel arbitration and staying any future litigation until the resolution of the arbitration proceedings.  (*See* August 12, 2005 Opinion and Order, attached to the Velazquez Aff. as Ex. D.)  Citing the Supreme Court's decision in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), this Court ruled that, "[i]n the absence of 'clear and unmistakable evidence to the contrary' in an arbitration clause, only in limited circumstances will a court 'assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter.'"  (*Id.* at 6 (internal citation omitted).)  The Court held that "[t]he question of whether arbitration clauses 'forbid class arbitration . . . does not fall into this narrow exception' because it involves 'neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties.'"  (*Id.* at 6-7 (internal citation omitted).)

5

Noting that the arbitration clause in the Settlement Agreement "contains 'sweeping language concerning the scope of the questions committed to arbitration,'" the Court expressly rejected Vaughn's arguments that the parties could not have intended the arbitration of his class claim because the NYSE and NASD "rules do not permit class action arbitrations." (*Id.* at 7 (internal citation omitted).) The Court pointed out that Vaughn's argument "contradicts the clear statement that the arbitration clause applies to 'any' claim or controversy related to the Agreement." (*Id.* at 8.) The Court further noted that, "[e]ven assuming that Vaughn is right, and the applicable arbitration rules do, indeed, forbid class action arbitrations under all circumstances, it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats." (*Id.* at 8.) The Court's ruling thus made clear that Vaughn must arbitrate his claims against Prudential, but that the question of how those claims should be arbitrated (as a class or individual action) was a question "for the arbitrator, not the courts, to decide." (*Id.* at 8.) The Court also granted the Leeds Firm and related defendants (the "Leeds Defendants")'s motion to compel arbitration. (*Id.* at 8-12.)

*Vaughn Asks the NYSE to Overturn this Court's Order Compelling Him to Arbitrate*

Instead of complying with this Court's Order that he submit his claims to arbitration, on October 28, 2005, plaintiff sent a letter to the NYSE requesting "an order and decision declaring that Vaughn may pursue his class action claims against respondents in court." (*See* October 28, 2005 Letter from Jeffrey L. Liddle to Karen Kupersmith, NYSE Director of Arbitration, attached to the Velazquez Aff., as Ex. E, at 4.) Vaughn did not provide a copy of this request to Prudential or to the Court. On

November 3, 2005, the NYSE sent Vaughn a letter denying his application on the grounds that the NYSE cannot exercise jurisdiction over the Leeds Defendants, who are not members of the NYSE. (*See* November 3, 2005 Letter from Harry Albirt, NYSE, to Blaine Bortnick, attached to the Velazquez Aff. as Ex. F.)

On December 7, 2005, Vaughn advised this Court and Prudential for the first time that he had filed an "arbitration claim" with the NYSE, which the NYSE had "rejected," and asked the Court to revisit its prior ruling and lift the litigation stay as against all defendants. (*See* December 7, 2005 Letter from Blaine Bortnick to the Hon. Denise Cote, attached to the Velazquez Aff. as Ex. G.) In response, Prudential urged the Court to reject Vaughn's efforts to re-litigate the issues decided by the Court in its August 12, 2005 Opinion and Order, pointing out that the NASD was available to hear Vaughn's claims against all defendants. (*See* December 13, 2005 Letter from Gerard E. Harper to the Hon. Denise Cote, attached to the Velazquez Aff. as Ex. H.) On the same day, counsel for the Leeds Defendants independently confirmed that the NASD would be willing to arbitrate Vaughn's claims against Prudential and the Leeds Defendants in a single proceeding. (*See* December 14, 2005 Letter from Daniel T. Hughes to the Hon. Denise Cote and accompanying Declaration of Shari Claire Lewis, dated December 13, 2005, attached to the Velazquez Aff. as Ex. I.)

On December 15, 2005, Prudential informed the Court that, in fact, Vaughn "did not file a demand to arbitrate the claims alleged in this action" with the NYSE, but had instead, "filed a letter requesting that the NYSE exercise unprecedented appellate powers over this Court, in an attempt to override this Court's determination that plaintiff's claims are arbitrable." (*See* December 15, 2005 Letter from Gerard E. Harper

7

to the Hon. Denise Cote, attached to the Velazquez Aff. as Ex. J.) Prudential also pointed out that Vaughn, "[i]nvoking exactly the arguments that this Court deemed unpersuasive," had "asked the NYSE to rule that plaintiff could evade the arbitration clause simply by making class allegations" and "unabashedly asks that arbitral forum to overrule this Court's determination that plaintiff's claims are arbitrable." (*Id.*)

On December 16, 2005, Vaughn's counsel submitted a letter to this Court which, ignoring that the Court had already rejected his arguments in opposition to Prudential's motion to compel arbitration and had ordered him to submit his claims to arbitration, nevertheless requested that the Court "hold a conference" "to discuss how this matter may proceed." (*See* December 16, 2005 Letter from Blaine H. Bortnick to the Hon. Denise Cote, attached to the Velazquez Aff. as Ex. K.)

*The Court Issues a Second Order Compelling Vaughn to Arbitrate*

On December 27, 2005, this Court issued an Order rejecting Vaughn's request to re-litigate these issues, affirming its August 12 Order and stating, "the case remains stayed and on the Court's suspense docket." (*See* December 27, 2005 Order, attached to the Velazquez Aff. as Ex. L.)

*Vaughn Asks the NASD to Overturn this Court's Orders Compelling Him to Arbitrate*

Against this backdrop, Vaughn has now filed a "Statement of Claim" with the NASD which amounts to nothing more than yet another attempt to override this Court's Orders compelling him to arbitrate. In his NASD "Statement of Claim," rather than asserting his claims against Prudential, Vaughn recounts the errors he perceives in this Court's August 12, 2005 Opinion and Order, rehashes his efforts to obtain appellate relief from the NYSE, and states that he is "submit[ting] this matter to the NASD in order

to decide . . . whether Vaughn is entitled to pursue his class action claims in court, or whether . . . Vaughn may be compelled to pursue his claims individually in arbitration." (*See* Statement of Claim filed in the NASD proceeding captioned *Vaughn v. Leeds, Morelli & Brown, P.C., et al.,* attached to the Velazquez Aff. as Ex. M, at 6.) Specifically, in his Statement of Claim, Vaughn asks the NASD panel to "issue an order and decision declaring that Vaughn may pursue his class action claims against defendants in court and directing defendants to withdraw their objections and stipulate that the agreement to arbitrate does not preclude Claimants' right to proceed with a class action in court and, therefore, is not enforceable." (*Id.* at 12.) Outrageously, Vaughn also seeks costs and that Prudential be referred for disciplinary action for bringing its motion to compel arbitration before this Court, a motion which, though authorized by the FAA, plaintiff asserts is a "violation" of NASD rules. (*Id.*)[2]

*Prudential Faces an Imminent Deadline In Vaughn's Improper Proceeding*

The NASD served Prudential with Vaughn's "Statement of Claim" on July 31, 2006. (*See* July 27, 2006 Letter from NASD Dispute Resolution Northeast Processing Center to Theodore V. Wells, Jr., attached to the Velazquez Aff. as Ex. O.) Under NASD rules, Prudential must serve an Answer to this Statement of Claim by September 15, 2006. (*Id.* at 1.) The possible penalties for failing to timely file an

---

[2]    By letter dated August 15, 2006, Vaughn's counsel informed the NASD that "Vaughn's Statement of Claim presents the very narrow issue of whether he has waived his right to a class action by signing the Settlement Agreement with Prudential Securities, Inc." and requested that, rather than appointing panelists with knowledge of any substantive areas of law, the NASD appoint "arbitrators possessing knowledge of the law of arbitration" who can re-determine whether his putative class action claims are arbitrable and, Vaughn hopes, declare this Court's prior Orders null and void. (*See* August 15, 2006 Letter from Rebecca A. Saenger to NASD Northeast Processing Center, attached to the Velazquez Aff. as Ex. N.)

Answer include being "barred from presenting any matter, arguments, or defenses at the hearing." NASD Rule 10314(b)(2)(C). In addition, failure to file a timely Answer may subject a respondent to the following "default" procedures: "The Director shall appoint a single arbitrator pursuant to Rule 10308 to consider the Statement of Claim and other documents presented by the Claimant(s). The arbitrator may request additional information from the Claimant(s) before rendering an award. No hearing shall be held . . ." NASD Rule 10314(e)(4).

On August 9, 2006, counsel for Prudential contacted Vaughn's counsel to request a 30-day extension of Prudential's time to respond to the Statement of Claim. (*See* Velazquez Aff., ¶ 3.) On August 10, 2006, Vaughn's counsel advised Prudential's counsel that Vaughn is unwilling to grant Prudential any additional time to respond. (*See* Velazquez Aff., ¶ 4.) Accordingly, in light of the September 15, 2006 deadline to respond to Vaughn's Statement of Claim, Prudential is forced to seek relief from this Court.

## Argument

### PRUDENTIAL IS ENTITLED TO ENFORCEMENT OF THIS COURT'S PRIOR ORDERS COMPELLING ARBITRATION

"A federal district court's jurisdiction to enforce its judgments by conducting supplemental proceedings and issuing orders is an inherent and 'long recognized' authority." *Kashi* v. *Gratsos*, 712 F. Supp. 23, 25 (S.D.N.Y. 1989); *see also Peacock* v. *Thomas*, 516 U.S. 349, 356 (1996) (district court has "inherent power to enforce its judgments"); *Clarkson Co. Ltd.* v. *Shaheen*, 544 F. Supp. 117, 120 n. 1 (S.D.N.Y.1982), *aff'd*, 716 F.2d 126 (2d Cir.1983) (noting that "The Supreme Court has confirmed the jurisdiction of the federal courts to issue orders in support of prior

proceedings repeatedly"). Moreover, the district court's enforcement authority includes the ability to issue injunctions to preserve the integrity of prior orders. *U.S.* v. *Mason Tenders Dist. Council of Greater New York*, 205 F. Supp.2d 183, 188 (S.D.N.Y. 2002).

**A.    Principles of *Res Judicata* and Law of the Case**
**Bar Re-Litigation Of Issues Already Decided By This Court**

It is beyond dispute that this Court has the power to enforce its prior Orders compelling Vaughn to arbitrate his claims against Prudential and find that the issues decided in its prior Orders cannot be relitigated in another forum. *See, e.g., Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan* v. *Lockman Foundation*, 1995 WL 688958 (S.D.N.Y. Nov. 21, 1995); *In re Burmah Oil Tankers, Ltd.*, 687 F. Supp. 897 (S.D.N.Y. 1988).

"*Res judicata* bars all claims that were or could have been raised by a party to prior litigation on the same cause of action." *Burmah Oil Tankers*, 687 F. Supp. at 899. The doctrine of "law of the case has been aptly characterized as 'a kind of intra-action *res judicata*.'" *People* v. *Evans*, 727 N.E.2d 1232, 1235 (N.Y. 2000) (quoting David D. Siegel, New York Practice § 448 (3rd ed. 1999)). The law of the case doctrine provides that when a court decides an issue of law, that decision should continue to govern in subsequent stages of the same case. *See Arizona* v. *California*, 460 U.S. 605, 618 (1983); *DiLaura* v. *Power Authority of State of New York*, 982 F.2d 73, 76 (2d Cir. 1992); *In re PCH Associates*, 949 F.2d 585, 592 (2d Cir. 1991). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok* v. *Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 953 (2d Cir. 1964). Law of the case also applies to prevent re-litigation of an issue within the same case by another judge or court of coordinate

11

jurisdiction. *See Holloway* v. *Cha Cha Laundry, Inc.*, 467 N.Y.S.2d 834, 835 (N.Y.A.D. 1st Dep't 1983).

Moreover, "*res judicata* principles are applicable in the arbitration context." *Evangelical Alliance*, 1995 WL 688958, at *2; *see also Burmah Oil Tankers*, 687 F. Supp. at 899; *Dalow Indus., Inc.* v. *Jordache Enter., Inc.*, 631 F. Supp 774, 778 (S.D.N.Y. 1985); *Spasiano* v. *Provident Mut. Life Ins. Co.*, 770 N.Y.S.2d 534, 536 (N.Y.A.D. 4th Dep't 2003). "[P]arties should be barred from seeking relief from arbitration panels when, under the doctrine of *res judicata*, they would be barred from seeking relief in the courts." *Miller Brewing Co.* v. *Fort Worth Distrib. Co.*, 781 F.2d 494, 499 (5th Cir. 1986). The same holds true with respect to the law of the case doctrine. *See Pompano-Windy City Partners, Ltd.* v. *Bear, Stearns & Co., Inc.*, 1993 WL 42786, at *9-10 (S.D.N.Y. Feb. 17, 1993) (applying law of the case doctrine in arbitration context).

There can be no question that Vaughn's "arbitration" is barred by the doctrines of *res judicata* and law of the case. Vaughn has had a full and fair opportunity to litigate before this Court the exact issues he is now asking the NASD to decide – namely, whether he must arbitrate his claims against Prudential notwithstanding his decision to style those claims as a class action. Indeed, this Court has already denied Vaughn the same relief he is now seeking from the NASD – that he be permitted to pursue his claims against Prudential in court. Vaughn does not (and cannot) assert otherwise. After considering Vaughn's arguments in opposition to Prudential's motion to compel arbitration, this Court rejected them. Specifically, in its August 12, 2005 Order, this Court granted Prudential's motion to compel and ruled:  (1) that Vaughn must

12

arbitrate his claims against Prudential, even though those claims are styled as a putative class action; and (2) that questions concerning "what kind of arbitration proceeding" should be held must be submitted to the arbitrator. (*See* Velazquez Aff., Ex. D, at 8.)

Vaughn is now asking the NASD to re-decide the same issues decided by this Court, and grant the relief this Court has already expressly denied, in its August 12, 2005 Order. Specifically, Vaughn is asking the NASD to issue an order "declaring that Vaughn may pursue his class action claims against defendants in court and directing defendants to withdraw their objections and stipulate that the agreement to arbitrate does not preclude Claimants' right to proceed with class action in court, and, therefore, is not enforceable." (*See* Velazquez Aff., Ex. M, at 12.)

Because the issues presented in Vaughn's NASD Statement of Claim have been fully presented by these parties to, and have been decided by, this Court, principles of *res judicata* prohibit Vaughn from re-litigating these issues and from seeking relief from the NASD which this Court has already denied. *See Evangelical Alliance*, 1995 WL 688958 at *2; *Burmah Oil Tankers*, 687 F. Supp. at 901; *see also Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 499 (5th Cir. 1986) ("parties should be barred from seeking relief from arbitration panels when, under the doctrine of res judicata, they would be barred from seeking relief in the courts"). This Court's ruling – that Vaughn must arbitrate his claims against Prudential – is the law of this case that Vaughn may not relitigate here or in any other forum.

**B.    Vaughn's NASD Proceeding is a Violation of the FAA**

FAA Section 16(b) provides that "an appeal may not be taken from an interlocutory order ... directing arbitration to proceed under section 4 of this title." 9 U.S.C.A. § 16 (2006). Accordingly, parties seeking to appeal an order compelling

13

arbitration must wait until the arbitration has been completed and then challenge the award on a motion to vacate or confirm pursuant to the grounds set forth in the FAA. *See Filanto, S.p.A* v. *Chilewich Intern, Corp.*, 984 F.2d 58, 60-61 (2d Cir. 1993) ("the party opposing arbitration cannot challenge the arbitration requirement until the arbitration has occurred and its result is available for challenge on a motion to confirm or vacate the award. In effect, the pro-arbitration tilt of the statute requires that ... the party opposing arbitration must bear the initial consequence of an erroneous district court decision requiring arbitration"); *Steele* v. *L.F. Rothschild & Co., Inc.*, 864 F.2d 1, 3 (2d Cir. 1988) ("The disappointed party who has been compelled to arbitrate will have her chance to argue that the arbitral forum was the incorrect one when the arbitral award is before the district court in an action for enforcement"); *see also* 9 U.S.C.A. § 16 cmt. (2006) ("the party aggrieved by the decision to let the arbitration go forward is not altogether barred from appellate review of the issue. He must merely await the outcome of the arbitration on the merits....").

Notwithstanding the FAA's unambiguous prohibition against interlocutory appeal of orders compelling arbitration, Vaughn's "Statement of Claim" is his *second* attempt to do just that. By asking the NASD to issue "an order and decision declaring that Vaughn may pursue his class action claims against defendants in court," Vaughn is unabashedly seeking interlocutory appellate review of this Court's prior Orders from an NASD arbitral panel. (*See* Velazquez Aff., Ex. M, at 12.)    Adding insult to injury, Vaughn has the temerity to ask the NASD panel to sanction Prudential for complying with the FAA by moving to compel arbitration in the first place. Vaughn should not be permitted to circumvent the FAA requirements applicable to every other litigant who

14

opposes arbitration. Vaughn must, in accordance with this Court's prior Orders, submit his claims against Prudential to arbitration and, in accordance with the FAA, raise his arguments concerning threshold issues of arbitrability on motions to confirm/vacate and on appeal after the arbitral panel has issued its ruling on the merits of Vaughn's claims.

**C.    The NASD Lacks Jurisdiction to Consider Issues Of Arbitrability**

In addition, the proceeding Vaughn has instituted before the NASD is improper because the NASD has no authority to decide the issues raised, or grant the relief sought, in Vaughn's Statement of Claim.

"An arbitration panel derives its jurisdiction from an agreement of the parties, or from an order of a court compelling arbitration." *Smiga* v. *Dean Witter Reynolds, Inc.*, 766 F.2d 698, 704 (2d Cir. 1985) (citations omitted); *see also Continental Group, Inc.* v. *NPS Communications, Inc.*, 873 F.2d 613, 619-20 (2d Cir. 1989) ("Arbitrators...cannot inflate their authority beyond the boundaries of the...court's order of reference....[because they] derive...their powers from the...court's order."); *Coady* v. *Ashcraft & Gerel*, 223 F.3d 1, 9 (1st Cir. 2000) ("[T]he district court's initial order of reference determined that the employment agreement authorized arbitration only of questions of ambiguity or interpretation of the contract and that questions of breach of contract were not within the scope of the clause. The arbitrators were without power to enlarge upon that ruling." (internal citation omitted)).

Indeed, where arbitrators act beyond the scope of their authority, their acts are void and without effect. *See* 9 U.S.C.A. § 10(a)(4) (2006) (providing that a district court may vacate an award where "the arbitrators exceeded their powers").

Here, the scope of the NASD's jurisdiction is limited by this Court's August 12, 2005 Order compelling Vaughn to arbitrate his claims against Prudential and

15

to submit to the arbitrators the question of how that arbitration should proceed (*i.e.*, whether his claims can proceed in arbitration as class claims). The August 12, 2005 Order does <u>not</u> authorize the NASD to decide whether Vaughn's "may pursue his class action claims against defendants in federal," even if, as Vaughn contends, NASD rules do not permit class action claims. (*See* Velazquez Aff., Ex. M, at 12.) Nor does it authorize the NASD to "direct[] defendants to ... stipulate that the agreement to arbitrate ... is not enforceable." (*Id.*) Those gateway issues of arbitrability have already been determined by this Court and the NASD has no jurisdiction to consider them.

**D.    Vaughn's NASD Proceeding Severely Prejudices Prudential**

There can be no dispute that Prudential will be severely harmed if it is deprived of the benefit of this Court's prior Orders compelling arbitration and is instead forced to re-litigate these issues before the NASD – issues which the NASD has no jurisdiction to hear. *See, e.g., Maryland Casualty Co.* v. *Realty Advisory Board on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) (the party resisting arbitration would suffer serious injury "by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable").

Moreover, if this Court does not enter an Order enforcing its prior Orders compelling arbitration, Prudential faces an intolerable choice. Prudential must either: (i) expend substantial resources re-litigating the very same issues before the NASD that have already been decided by this Court in order to respond to Vaughn's Statement of Claim by September 15, 2006 and, in the process, be deprived the benefit of this Court's prior Orders; <u>or</u> (ii) risk forfeiting its arbitral defenses and being held in default by the NASD.

## Conclusion

For all the foregoing reasons, Prudential respectfully requests that the Court grant its application for an Order enforcing its prior Orders compelling Vaughn to arbitrate his claims against Prudential, finding that its prior Orders represent the law of the case that Vaughn may not relitigate here or elsewhere, and granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
          August 30, 2006

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

By: _____
    Theodore V. Wells, Jr. (TW 2830)
    Gerard E. Harper (GH 0279)
    Liza M. Velazquez (LV 7221)

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants Prudential Securities, Inc. and Prudential Financial, Inc.*

-and-

LOWENSTEIN SANDLER, P.C.
1330 Avenue of the Americas
New York, New York 10019

Of Counsel:
Gregory B. Reilly
Julie L. Werner

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY S. VAUGHN, individually and on behalf of those Class Members similarly situated,<br><br>                      Plaintiff,<br><br>                      v.<br><br>LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI & BROWN, L.L.P., LEEDS & MORELLI, LEEDS, MORELLI & BROWN, PRUDENTIAL SECURITIES, INC., PRUDENTIAL FINANCIAL, INC., LENARD LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN, and JOHN DOES, JAMES VAGNINI, FREDERIC DAVID OSTROVE, ROBERT JOHN VALLI, JR., DISCRIMINATION ON WALL STREET, INC. DISCRIMINATION ON WALL STREET MANHATTAN, INC., JOHN DOES, 1-10 AND JANE DOES, 1-10 a fictitious designation for presently unknown licensed attorneys, professionals and/or unknown persons or entities,<br><br>                      Defendants. | 04 Civ. 08391 (DLC)<br><br><br>**AFFIDAVIT OF<br>LIZA VELAZQUEZ** |

STATE OF NEW YORK    )
                         : ss.
COUNTY OF NEW YORK  )

           LIZA VELAZQUEZ, being sworn, states:

           1.     I am an associate at Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys for Defendants Prudential Securities, Inc. and Prudential Financial, Inc. (collectively, "Prudential") in the above-captioned action. I submit this Affidavit in support of Prudential's Motion to Enforce this Court's Prior Orders Compelling Arbitration.

2.      Attached hereto are true and correct copies of the following:

Exhibit A      Plaintiff's Amended Complaint, dated March 15, 2005

Exhibit B      Prudential's Motion to Compel Arbitration and Dismiss Amended
               Complaint, dated April 22, 2005

Exhibit C      Plaintiff's Memorandum of Law in Opposition to Motion to
               Compel Arbitration and Dismiss Amended Complaint, dated
               May 24, 2005

Exhibit D      Opinion and Order, dated August 12, 2005

Exhibit E      Letter from Jeffrey L. Liddle to Karen Kupersmith, NYSE Director
               of Arbitration, dated October 28, 2005

Exhibit F      Letter from Harry Albirt, NYSE, to Blaine Bortnick, dated
               November 3, 2005

Exhibit G      Letter from Blaine Bortnick to the Hon. Denise Cote, dated
               December 7, 2005

Exhibit H      Letter from Gerard E. Harper to the Hon. Denise Cote, dated
               December 13, 2005

Exhibit I      Letter from Daniel T. Hughes to the Hon. Denise Cote, dated
               December 14, 2005, and accompanying Declaration of Shari Claire
               Lewis, dated December 13, 2005

Exhibit J      Letter from Gerard E. Harper to the Hon. Denise Cote, dated
               December 15, 2005

Exhibit K      Letter from Blaine H. Bortnick to the Hon. Denise Cote, dated
               December 16, 2005

Exhibit L      Order dated December 27, 2005

Exhibit M      Plaintiff's Statement of Claim, dated May 25, 2006, submitted to
               the NASD in the matter, *Vaughn* v. *Leeds, Morrelli & Brown,
               P.C., et al.*

Exhibit N      Letter from Rebecca A. Saenger to NASD Northeast Processing
               Center, dated August 15, 2006

Exhibit O      Letter from NASD Dispute Resolution Northeast Processing
               Center to Theodore V. Wells, Jr., dated July 27, 2006

3.     On August 9, 2006, I contacted Blaine Bortnick, counsel for Plaintiff, to request a 30-day extension of Prudential's time to file a response to the Statement of Claim, which is due September 15, 2006.

4.     On August 10, 2006, Mr. Bortnick advised me that Plaintiff is unwilling to grant Prudential any additional time to respond.

5.     In accordance with Local Civil Rule 6.1(d), I submit that the relief sought in this motion is being sought by order to show cause to prevent the imminent harm that will result if Prudential is forced to respond to Plaintiff's NASD "Statement of Claim" by September 15, 2006 and, therefore, re-litigate the same issues that have already been litigated by these parties and decided by this Court in its prior Orders compelling arbitration, or risk forfeiting its arbitral defenses and being deemed in default by the NASD.

6.     No prior application has been made for the relief sought herein.

_____
Liza Velazquez

Sworn before me on this
30th day of August, 2006

_____
Notary Public

NANCY CASTRO
Notary Public, State of New York
No. 03-4668826
Qualified in Bronx County
Commission Expires July 31, 2010

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x
                                              :

JEFFREY S. VAUGHN, individually and on behalf of   :     Case No. 04 Civ. 8391 (DLC)
those Class Members similarly situated,            :

                                 :     **AMENDED COMPLAINT**
               Plaintiff,                 :

          -against-                     :

LEEDS, MORELLI & BROWN, P.C., LEEDS,   :
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,   :
LEEDS, MORELLI & BROWN, PRUDENTIAL   :
SECURITIES, INC., PRUDENTIAL FINANCIAL, INC.,   :
LENARD LEEDS, STEVEN A. MORELLI, JEFFREY   :
K. BROWN, JAMES VAGNINI, FREDERIC DAVID   :
OSTROVE,   ROBERT   JOHN   VALLI,   JR.,   :
DISCRIMINATION ON WALL STREET, INC.   :
DISCRIMINATION   ON   WALL     STREET,   :
MANHATTAN, INC., JOHN DOES, 1-10 AND JANE   :
DOES, 1-10 a fictitious designation for presently   :
unknown licensed attorneys, professionals and/or   :
unknown persons or entities,,                 :

              Defendants.              :
----------------------------------------------------------------- x

        Plaintiff, Jeffrey S. Vaughn, individually and on behalf of those Class Members similarly

situated, as and for their Amended Complaint against the Defendants, allege and state as follows:

## PARTIES

        1.      Plaintiff, Jeffrey S. Vaughn, (hereinafter "Vaughn"), is an individual residing

at 475 Carlton Avenue, Apartment 5H, Brooklyn, New York 11328. Mr. Vaughn brings these claims

individually and on behalf of all Class Members (collectively, "Plaintiff").

1

2.    At all relevant times, Defendant, Prudential Securities Incorporated (hereinafter "Prudential Securities"), was a corporation with offices at One Seaport Plaza, New York, New York 10292. Prudential Financial Inc. (hereinafter "Prudential Financial") is the successor in interest to Prudential Securities.  Prudential Financial has an executive office address of 751 Broad Street, Newark, New Jersey. (Prudential Securities and Prudential Financial are collectively referred to as "PSI").

3.    At all relevant times, Defendant, Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, and Leeds, Morelli & Brown, (hereinafter collectively "Leeds-Morelli"), was either a professional corporation, a partnership, L.L.C. or other entity practicing law in the State of New York with its principal place of business at One Old Country Road, Suite 282, Carle Place, New York.

4.    At all relevant times, Defendant, Lenard Leeds (hereinafter "Leeds"), was a lawyer licensed to practice law in the State of New York and a partner of Leeds-Morelli.

5.    At all relevant times, Defendant, Steven A. Morelli (hereinafter "Morelli"), was a lawyer licensed to practice law in the State of New York and a partner of Leeds-Morelli.

6.    At all relevant times, Defendant, Jeffrey K. Brown (hereinafter "Brown"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli.

7.    At all relevant times, Defendant, James Vagnini (hereinafter "Vagnini"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli.

8.    At all relevant times, Defendant, Frederic David Ostrove (hereinafter "Ostrove"), was a lawyer licensed to practice law in the State of New York and a partner or

2

employee of Leeds-Morelli.

9.    At all relevant times, Defendant, Robert John Valli, Jr. (hereinafter "Valli"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli. Leeds, Morelli, Valli, Ostrove, Vagnini and Brown are hereafter collectively referred to as the "Lawyer Defendants".

10.    At all relevant times, Defendants Discrimination on Wall Street, Inc. and Discrimination on Wall Street, Manhattan, Inc., held themselves out as charitable, non-profit institutions dedicated to eradicating racial bias in employment in the financial industry. Instead, these institutions were business corporations which were the alter ego of Leeds-Morelli and functioned primarily to solicit business for Leeds-Morelli. These two Defendants are hereinafter collectively referred to as D.O.W.S.. D.O.W.S has an address of One Old Country Road, Carle Place, New York.

11.    At all times hereinafter mentioned John Does 1-10 and Jane Does 1-10 (hereinafter collectively referred to as "Does"), are attorneys, professionals, corporations, and/or unknown persons or entities who are associated with Defendants or conspired with Defendants and/or whose identity and/or tortious acts have not been identified or revealed.


## OVERVIEW

12.    This action involves Leeds-Morelli and the Lawyer Defendants, the former lawyers for Plaintiff, conspiring and entering into a written secret agreement or agreements with PSI (the "Secret Agreements"). The content of the Secret Agreements is not generally known. There is at least one such agreement dated February 13, 1998. Upon information and belief, several other

3

subsequent agreements exist, including one in May 1999 and November 2001. Upon information and belief, the Secret Agreements provided, among other things, for a cap on the claims of certain of Leeds-Morelli's clients and provided for the payment of fees by PSI directly to Leeds-Morelli without disclosure to Plaintiff. The existence of the Secret Agreements was not known to Plaintiff until in or about October 2004.

13.    While, upon information and belief, PSI paid monies to Leeds-Morelli pursuant to the Secret Agreements in exchange for consideration such as the capping of claims and preventing Plaintiff from suing in court, PSI entered into the Secret Agreements in such a manner that it knew it would be substantially shielded from Plaintiff's claims and would cause Leeds-Morelli to engage in undisclosed and unethical conflicts of interest which would benefit PSI and be to the detriment of Leeds-Morelli's clients.

14.    Upon information and belief, Leeds-Morelli and the Lawyer Defendants, without Plaintiff's knowledge, agreed to cap various claims under their agreement with PSI and refused to press Plaintiff's claims until they received payment from PSI, which payments were concealed from Plaintiff and Plaintiffs' Class.

15.    In addition to failing to disclose that it was compensated by a third party for representing Plaintiff, Leeds-Morelli charged Vaughn a full one-third contingency fee. In addition to charging this contingency fee, Leeds-Morelli deducted one percent of Vaughn's and the other Subclass Members' net recovery for payment to D.O.W.S., which was categorized as a "donation".

## JURISDICTION

16.    This Court has federal question jurisdiction over the Third and Fourth causes

4

of action of this Amended Complaint pursuant to 28 U.S.C. §1331 and pendant and supplemental jurisdiction over the remaining causes of action pursuant to 28 U.S.C. §1367 and applicable law.

## VENUE

17.    Venue is also proper in this district under 28 U.S.C. §1391(b) because: (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and/or (b) one or more of the Defendants may be found within this district.

## INTRODUCTION

18.    Vaughn and the other Class Members retained the law firm of Leeds-Morelli in or about 1998 to assert their claims for racial discrimination against PSI.

19.    Vaughn and the other Class Members resolved their claims against PSI in accordance with the advice rendered to them by Leeds-Morelli.

20.    One-third of Vaughn's and the other Class Members' recovery was deducted as attorney's fees in accordance with their contingency fee agreements with Leeds-Morelli.

21.    At no time did Leeds-Morelli advise Plaintiff or Plaintiffs' Class in writing or otherwise either that they had any conflict of interest or that they entered into a contract with PSI which Plaintiff or the Class had not been shown, nor seen.  The nature and existence of such contract(s) was concealed from Plaintiff by Leeds-Morelli.  Leeds-Morelli was required to disclose the nature and existence of this contract to Plaintiff and Class Members and obtain Plaintiff's and the Class Member's consent to the conflict of interest in writing in accordance with N.Y. Code of Professional Responsibility.

5

22.    This contract and other dealings between Leeds-Morelli and PSI constituted an irreconcilable conflict of interest, constituted an illegal aggregate settlement, provided compensation to Leeds-Morelli for representing Plaintiff which was not disclosed to Plaintiff, allowed PSI to interfere with the independent professional judgment of Leeds-Morelli in exchange for compensation, and was the result of Leeds-Morelli engaging in deceit and collusion with the intent to deceive Plaintiff and Plaintiffs' Class. PSI, for its part received general releases from Plaintiff and the Plaintiff's Class.

## CLASS ALLEGATIONS

23.    Vaughn brings this case on his own behalf and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a plaintiff class consisting of all persons who were represented by Leeds-Morelli with claims against PSI and whose rights were affected by the Secret Agreements between Leeds-Morelli and PSI, including the agreement dated February 13, 1998. The Class is further divided into a subclass of those individuals who donated money to D.O.W.S. (the "Subclass"). There exists no conflict of interest between Vaughn and the other Class Members. Vaughn and his counsel will fairly and adequately represent the interests of the Class.

24.    Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class exceeds 500 persons. The exact number of members in the Class and in the Subclass is not known to Vaughn but can be easily ascertained from the records of the Defendants.

25.    Vaughn's claims are typical of the claims of the Class and the Subclass. Vaughn and all Class Members and Subclass Members sustained damages as a result of Defendants'

6

wrongful conduct complained of herein. Vaughn and all Class Members are entitled to the return of the improper and illegal payments made to Leeds-Morelli and the Lawyer Defendants by PSI. All Class Members have been damaged in precisely the same fashion, by precisely the same conduct.

26.    Vaughn will fairly and adequately protect the interest of the Class Members and has retained counsel competent to prosecute this class litigation. Vaughn has no interests that are adverse or antagonistic to those of the Class.

27.    A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy. At the center of this action are agreements between Leeds-Morelli and PSI, which were not disclosed to Plaintiff and which, upon information and belief, provide for payment to Leeds-Morelli and/or the Lawyer Defendants without their clients' knowledge and were designed to interfere with Leeds-Morelli and the Lawyer Defendants' fiduciary duties to the Class Members to secretly arrange an aggregate settlement of the claims.

28.    The aforementioned agreement(s) and the conspiracy it furthered were in violation of law and the ethical rules governing attorneys. In addition to entering into the Secret Agreements with the company their clients had retained them to sue and compromising their loyalty in such agreements, Leeds-Morelli also charged their clients attorneys' fees for representation in which they were also, upon information and belief, compensated directly by PSI. The Subclass' claims, regarding donations to a supposed charitable organization called D.O.W.S., are also best brought as a class action for the same reasons.

29.    Common questions of law and fact exist as to all Class Members, and they predominate over any questions affecting solely individual Members of the Class. Among the questions of law and fact common to the Class are:

7

A) Whether Leeds-Morelli and Lawyer Defendants entered into the Secret Agreements.

B) Whether the Secret Agreements provided for, among other things, payments by PSI to Leeds-Morelli and caps on PSI's exposure.

C) Whether the Secret Agreements constituted an illegal aggregate settlement.

D) Whether the Secret Agreements were designed to shield PSI from potentially substantial legal and reputational harm in return for payments to Leeds-Morelli.

E) Whether Plaintiff was aware of the Secret Agreements.

F) Whether the Secret Agreements are in violation of the New York Code of Professional Responsibility, are illegal, void ab initio and unenforceable;

G) Whether the conflicts of interest created by the terms of the Secret Agreements caused Leeds-Morelli and the Lawyer Defendants to be placed in an irreconcilable conflict of interest which prevented them from ethically representing Plaintiff in accordance with their professional duties;

H) Whether Leeds-Morelli and the Lawyer Defendants have been unjustly enriched by their receipt of payments/fees in exchange for unethical and illegal conduct;

I) Whether the Plaintiff is entitled to the disgorgement of the payments to Leeds-Morelli and the Lawyer Defendants of their fees, and upon information and belief, the payment from PSI for the same services;

J) Whether Leeds-Morelli and the Lawyer Defendants acted unethically when they had clients donate a percentage of their recovery to D.O.W.S., which they represented was a charitable organization, but was, in fact, simply an entity primarily devoted to soliciting clients for Leeds-Morelli;

K) Whether Vaughn and the other Subclass Members are entitled to an accounting of all funds paid to D.O.W.S. as well as the return of and information regarding the use to which those funds were put.

30.    Plaintiff envisions no difficulty in the management of the litigation as a Class Action.

8

## FACTS COMMON TO ALL COUNTS

31.     Leeds-Morelli holds itself out to be a champion of those who have experienced discrimination in employment. Leeds-Morelli describes itself in its website as follows:

> Our Firm is considered to be one of the *foremost authorities in the area of Employment Law, particularly in the area of Civil Rights and Discrimination Law.* We take pride in servicing our clients by vigorously representing their interests, and striving to maintain the highest standards of integrity and professionalism.
>
> While offering general services, Leeds, Morelli & Brown focuses on the areas of Employment and Civil Rights Law. We represent our clients in litigation and before administrative and/or regulatory agencies in matters involving employment discrimination, wrongful discharge, or violations of other federal, state or local laws. *The Firm has enjoyed precedent setting verdicts, with national implications, in the area of employment discrimination and has earned us a reputation as a leader in the field.*

(Emphasis added).

32.     Leeds-Morelli claims that not only does it seek recovery on behalf of its clients, but also it claims to have an objective to change the way minorities are treated in the workforce. Leeds-Morelli repeatedly refers to its relationship with and support of former President Clinton and Senator Hilary Clinton as evidence of Leeds-Morelli's supposed commitment to civil rights. In reality, Leeds-Morelli's commitment is to sell its fiduciary duty of loyalty owed to its clients to the corporations it is retained to sue.

33.     Leeds-Morelli has created a system for the processing of employment discrimination claims against corporate America as follows:

a. Solicitation - Leeds-Morelli pays "runners" to recruit African-American and other minority employees of large, public corporations who have suffered workplace discrimination or

retaliation and to induce the employees to employ Leeds-Morelli to pursue their employment discrimination claims. Leeds-Morelli has used D.O.W.S. as a front to employ such runners.

b. Retainer – Leeds-Morelli then holds meetings with prospective clients all over the country where the lawyers and the recruiters tout the credentials of the firm in obtaining large recoveries for employment discrimination claims like those of the prospective clients. Prospective clients are then signed up with retainer agreements whereby the clients engage Leeds-Morelli to represent them with respect to the employment claims and typically promise to pay one-third (1/3) of the recoveries to the firm for legal fees.

c.    Agreement between Leeds-Morelli and Defendant Corporation – After acquiring a sufficiently large enough client inventory, Leeds-Morelli approaches the corporation with a proposition for the corporation to pay Leeds-Morelli a large sum of money up front to represent the clients in a secret and confidential settlement process, in order to buy secrecy for the corporate employer and limit the corporate employers' financial exposure for its alleged illegal discrimination. The clients are unaware of the proposition to pay Leeds-Morelli.

d. Settlement Process – Typically, a three-step alternate dispute resolution process is set up and involves an informal meeting between the client and a representative of the corporate employer to seek to settle the claim early in the process; followed by a mediation also seeking to settle the claim; and then, failing settlement, a binding mediation. The clients waive their rights to trial by jury. Typically, if not always, claims are settled and never reach the "binding mediation" stage.

e. Aggregate Settlement – During or at the outset of the settlement process, Leeds-Morelli and the corporation typically enter into an illegal aggregate settlement to resolve all of the remaining claims for a lump sum, without disclosure to the clients. The clients are then deceived that their

10

claims are being pursued when in fact the claims have already been resolved or the recovery is capped by agreement between Leeds-Morelli and the clients' employer. In fact, upon information and belief, Leeds-Morelli never intended to prosecute their clients' claims. Rather, upon information and belief, the intent was to enter into the Secret Agreements and obtain millions of dollars in direct payments to Leeds-Morelli from the corporations.

34.    Leeds-Morelli and the corporations conceal from the clients the prepayment of fees, their unethical conflicts of interest, the aggregate nature of the settlements, and other important elements of the secret agreements between them. The clients enter into the three-step alternative dispute resolution process unaware that their employers have bought off their lawyers, and unaware that their lawyers had entered into secret agreements whereby the lawyers' duties to the corporations and their own financial self-interest surmounted the duties the lawyers owed to the clients. By design, no claimant ever gets his or her day in court, or even in "binding mediation". The clients are instead browbeaten into accepting inadequate settlements because through the process Leeds-Morelli and the defendants have taken away any viable alternatives to accepting what the companies offer. Aside from PSI, Leeds-Morelli has, upon information and belief, entered into this pattern of abuse of clients in settlements with Prudential Insurance, Nextel Corporation, Bank of New York, Chase Manhattan Bank, Aetna Insurance Company, J.P. Morgan, Citigroup, Bear Stearns, Penguin Putnam and others over a period ranging from 1998 until at least April 2003, if not to the present.

35.    At no time did Leeds-Morelli advise Plaintiff they had any conflict of interest or that they had entered into Secret Agreements with PSI which Plaintiff had never seen and the nature and existence of which were concealed from them.

36.    Upon information and belief, the February 13, 1998 agreement and other

11

dealings between and among the Defendants constituted an irreconcilable conflict of interest, constituted an illegal aggregate settlement, provided compensation to Leeds-Morelli for representing Plaintiff and which was not disclosed to them, and was the result of the Defendants engaging in deceit and collusion in concert with the intent to deceive Plaintiff.

37.    Upon information and belief, PSI and the Does conferred, offered and agreed to confer upon Leeds-Morelli benefits, payments, and promises of future benefits as consideration for Leeds-Morelli and the Lawyer Defendants knowingly violating and agreeing to violate their obligations to Plaintiff.

38.    The benefits provided to Leeds-Morelli and/or the Lawyer Defendants by PSI and the Does were accompanied with an intent by PSI and the Does to influence the actions of Leeds-Morelli and the Lawyer Defendants who were Plaintiff's agent and fiduciary. These acts invaded Plaintiff's rights to undivided loyalty from Leeds-Morelli and the Lawyer Defendants.

39.    PSI, the Does, Leeds-Morelli and the Lawyer Defendants (a) devised a scheme and/or artifice to defraud Plaintiff and the Plaintiff's Class, and (b) engaged in deceit and collusion, and consented to deceit and collusion, with the intent to deceive Plaintiff and the Plaintiff's Class.

40.    The aforesaid conduct constituted commercial bribery and commercial bribe receiving in violation of New York Penal Law §180.03 and §180.08.

41.    Leeds-Morelli encouraged Plaintiff to pay sums to D.O.W.S. and often took a percentage of any recovery Plaintiff received as a "donation" to D.O.W.S. Vaughn "donated" one percent of his recovery.

42.    Leeds-Morelli and/or the Lawyer Defendants represented that D.O.W.S. was a charitable organization. In fact, D.O.W.S. was simply the method by which Leeds-Morelli and the

Lawyer Defendants employed runners to solicit business on their behalf. Upon information and belief, Leeds-Morelli and/or the Lawyer Defendants promised these runners a percentage of the recovery in any lawsuit by clients they solicited and employed them under the D.O.W.S. framework.

43.    Upon information and belief, Leeds-Morelli and D.O.W.S. are one and the same. Upon information and belief, Leeds-Morelli failed to comply with the regulations concerning charitable institutions and failed to keep separate bank accounts and records for D.O.W.S.

## FIRST CAUSE OF ACTION
(Fraud, as Against Leeds-Morelli, the Lawyer Defendants and D.O.W.S.)

44.    Plaintiff repeats, reiterates and realleges Paragraphs 1 through 43 of the Amended Complaint as if fully set forth herein.

45.    On various dates, both prior to February 13, 1998 and subsequently, including at least through October 25, 2001, Leeds-Morelli and the Lawyer Defendants made misrepresentations of material facts, both express and implied, to Plaintiff, such as that they were an advocate for Plaintiff's interests, that they had an adversarial relationship with PSI, and that their loyalty was to Plaintiff and not to themselves or their adversary, PSI.

46.    During the period referenced above, Leeds-Morelli and the Lawyer Defendants, on behalf of D.O.W.S., made misrepresentations of material fact to the Subclass including, among other things that D.O.W.S. was a charitable not-for profit organization dedicated to changing discriminatory practices in the financial industry.

47.    Leeds-Morelli and the Lawyer Defendants failed to disclose factual information that they were required to disclose to Plaintiff, including, among other things in addition

13

to the allegations set forth above, (a) that they had entered into Secret Agreements with PSI; (b) that the Secret Agreements provided for payments to Leeds-Morelli directly by PSI that were not to be disclosed to Plaintiff; (c) that the Secret Agreements provided for a cap on Plaintiff's claims; (d) that they had an irreconcilable conflict of interest that was required under law to be disclosed to Plaintiff in writing, (e) that they had engaged in an aggregate settlement, which created conflicts of interest between Plaintiff and Leeds-Morelli and; (f) that D.O.W.S. was not a genuine charity but rather a business solicitation entity for Leeds-Morelli.

48.     Leeds-Morelli and the Lawyer Defendants never had any intention to faithfully represent Plaintiff with respect to claims they may have had against PSI. Rather, their intent was to obtain payments for themselves from PSI as set forth above.

49.     Leeds-Morelli and the Lawyer Defendants concealed from Plaintiff the nature, extent and existence of the Secret Agreements between Leeds-Morelli and PSI.

50.     At the time these misrepresentations, deceit and concealment occurred, Leeds-Morelli and the Lawyer Defendants knew the misrepresentations were false and that the failure to disclose the information required to be disclosed was done for the purposes of deceiving Plaintiff.

51.     When the misrepresentations and the concealment occurred, Plaintiff did not know the true facts, and reasonably believed and relied upon the representations to be true.

52.     Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendants fraud and participation in the conspiracy to defraud Plaintiff. The conduct of Leeds-Morelli and the Lawyer Defendants was malicious and/or in wanton and willful disregard of Plaintiff's rights. Leeds-Morelli and the Lawyer Defendants knew or should have known that their actions would harm Plaintiff and were recklessly indifferent to the consequences of their actions

14

against Plaintiff.

## SECOND CAUSE OF ACTION
(Aiding and Abetting Fraud Against PSI, D.O.W.S. and the Does)

53.    Plaintiff repeats, reiterates and realleges Paragraphs 1-52 of the Amended Complaint as if fully set forth herein.

54.    As set forth above, Leeds-Morelli, the Lawyer Defendants and D.O.W.S. committed a fraud against Plaintiff.

55.    PSI and the Does either knew or deliberately and/or recklessly disregarded the fact that Leeds-Morelli, the Lawyer Defendants and D.O.W.S. were perpetrating a fraud.

56.    As set forth above, PSI and the Does rendered substantial assistance to Leeds-Morelli, the Lawyer Defendants and D.O.W.S. in their commission of the fraud.  Upon information and belief, PSI and the Does conspired with and caused Leeds-Morelli to commit fraud, to make false representations to Plaintiff and to conceal from Plaintiff information which Leeds-Morelli was required to disclose to Plaintiff.  Upon information and belief, some of the Does were attorneys employed by PSI and thus knew that the Secret Agreements were improper, as set forth above.

57.    As set forth above, PSI and the Does derived a substantial benefit from their assistance to Leeds-Morelli, the Lawyer Defendants and D.O.W.S. in their commission of the fraud.

58.    As a result, Plaintiff has incurred damages for which PSI and the Does are liable as a result of their aiding and abetting Leeds-Morelli, the Lawyer Defendants and D.O.W.S.

15

## THIRD CAUSE OF ACTION
(Federal RICO Against All Defendants)

59.     Plaintiff repeats, reiterates and realleges Paragraphs 1-58 of the Amended Complaint as if fully set forth herein.

60.     Plaintiff are persons, within the meaning of 18 U.S.C. §1961(3), and each has a claim as set forth in this Count pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq.

61.     Defendants are also persons, within the meaning of 18 U.S.C. §1961.

62.     PSI, Leeds-Morelli, as well as the other defendants each constitute an enterprise comprised of an association in fact, which is engaged in activities which affect interstate or foreign commerce, within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

63.     Alternatively, PSI is an enterprise which is engaged in activities which affect interstate or foreign commerce within the meaning of 18 U.S.C. §1961(4).

64.     Alternatively, the Defendants collectively constitute an enterprise comprised of an association in fact, which is engaged in activities which affect interstate or foreign commerce, within the meaning of 18 U.S.C. §1961(4).

65.     During the relevant times, Defendants conducted the affairs of said enterprises through a pattern of racketeering activity as described herein, all within the meaning of 18 U.S.C. §1962.

66.     Said racketeering activity was in furtherance of and related to Defendants' schemes and/or artifice to defraud Plaintiff and the clients of Leeds-Morelli as set forth herein.

67.     These racketeering activities were committed beginning no later than February

16

13, 1998 and continued through at least October 25, 2001 and the present, as Defendants continue to conceal.

   68. These racketeering activities constitute the following criminal acts:

(a) those acts described above;

(b) multiple instances of mail fraud in violation of 18 U.S.C. §1341, including the devising of the aforesaid schemes and/or artifice by use of the Postal Service, by the mailing of letters between and among the Defendants (including their attorneys), the Plaintiff, the Plaintiffs' Class, and third parties in furtherance of the schemes and/or artifice to defraud, such mailings including:

   1) A letter dated November 20, 2003 from Leeds-Morelli to Plaintiff's Class attempting to continue Leeds-Morelli's cover-up of the events as set forth herein.

   2) A letter dated October 25, 2001 from Morelli on behalf of Leeds-Morelli to Plaintiff and the Plaintiffs' Class which, among other things, stated that the "mediation process" with Prudential Securities was nearly completed and claimed that Leeds-Morelli had expended millions of dollars for which it had not been reimbursed in connection with pursuing the claims of Plaintiff and the other Class Members;

   3) A letter dated January 11, 2001 from Deirdre J. Kamber on behalf of Leeds-Morelli to Henry M. Bell confirming a meeting with mediators from JAMS Endispute in connection with the "mediation process" as described above;

   4) A letter dated April 4, 2000 from Morelli on behalf of Leeds-Morelli to "Prudential Employees" which, among other things, purports to report on the status of the resolution of their claims, including the assertion that "well over two hundred cases"

17

had already settled and that the remaining claims were in the process of being resolved;

5) A letter dated September 22, 1999 from counsel for Prudential Securities to Leeds stating, among other things, that the "mediation process ... came to a grinding halt on August 1, 1999 because of your firm's [Leeds-Morelli] fees claim", that Leeds-Morelli had refused to proceed with the mediations until its claim for fees was resolved, and that the claims of Plaintiff and the other Class Members had been capped as a result of an agreement by Leeds-Morelli and Prudential Securities, with Leeds-Morelli attorneys referring to the claims of Plaintiff and the other Class Members as "'cap cases'";

6) A letter dated November 9, 1998 from Morelli on behalf of Leeds-Morelli to Vaughn enclosing a Leeds-Morelli check to him in the amount of $126,333.34 represented to be Vaughn's net settlement proceeds from Prudential Securities after the deduction of a one-third contingency fee for Leeds-Morelli, a 1% "donation to D.O.W.S. and another $5,000 expense;

7) Vaughn's Settlement Agreement and General Release dated October 27, 1998; and

8) A letter dated May 7, 1998 from Vagnini on behalf of Leeds-Morelli to Connie Hernandez thanking her for her assistance in helping Leeds-Morelli retain over 200 employees of Prudential Securities and requesting her additional assistance.

(c) multiple instances of wire fraud in violation of 18 U.S.C. §1343, including the devising of the aforesaid schemes and/or artifice by use of wire (interstate telephone lines) to communicate in furtherance of the schemes and/or artifice to defraud, including:

18

1) The aforementioned September 22, 1999 letter from counsel for Prudential Securities to Leeds which was sent via facsimile in addition to mail;

2) Vaughn's Settlement Agreement and General Release dated October 27, 1998 which was sent from the Prudential Securities Law Department via facsimile to Leeds-Morelli; and

3) Upon information and belief, numerous telephone conversations regarding the Secret Agreements and other allegations set forth herein by and between the Defendants in furtherance of the racketeering activities

(d) Upon information and belief, a pattern of racketeering activity involving commercial bribing and commercial bribe receiving in violation of New York Penal Law §180.03 and §180.08 as set forth above. Upon information and belief, the Secret Agreements provided for payments to Leeds-Morelli in excess of $1,000.00 and caused economic harm exceeding $250.00.

69.     The predicate acts referred to above were related, in that they shared the common purpose, result and victims with regard to the scheme to deprive the Plaintiff and the Plaintiffs' Class of their civil rights.

### FOURTH CAUSE OF ACTION
(Federal RICO Violation – RICO Conspiracy Against All Defendants)

70.     Plaintiff repeats, reiterates and realleges Paragraphs 1-69 of the Amended Complaint as if fully set forth herein.

71.     Beginning in at least February 13, 1998 and continuing through at least October 25, 2001 and the present, as Defendants continue to conceal, Defendants conspired with one

19

another to violate the provisions of 18 U.S.C. §1962, as set forth above.

72.    During the relevant times, each Defendant, by words and conduct, knowingly agreed to commit the aforementioned acts in violation of 18 U.S.C. §1962 and in furtherance of a common purpose as set forth above.

73.    Each Defendant agreed to facilitate the predicate acts set forth above with knowledge that their acts were in furtherance of their pattern of racketeering activity.

74.    As a result of the Defendants conspiracy to violate 18 U.S.C. §1962, Plaintiff and the Plaintiffs' Class was harmed in their business and property by the acts taken in furtherance of the conspiracy, as they have been deprived of the funds due them, and have incurred legal fees and costs as aforesaid.

## FIFTH CAUSE OF ACTION
(Breach of Fiduciary Duty Against
Leeds-Morelli and the Lawyer Defendants)

75.    Plaintiff repeats, reiterates and realleges Paragraphs 1-74 of the Amended Complaint as if fully set forth herein.

76.    Leeds-Morelli and the Lawyer Defendants maintained a fiduciary relationship with Plaintiff. As such, Leeds-Morelli and the Lawyer Defendants owed a duty to Plaintiff characterized by the utmost good faith, candor and honesty.

77.    Leeds-Morelli and the Lawyer Defendants had a duty to disclose to Plaintiff the Secret Agreements between PSI and Leeds-Morelli. Instead, Leeds-Morelli and the Lawyer Defendants concealed these Secret Agreements from Plaintiff.

20

78.    Leeds-Morelli and the Lawyer Defendants engaged in dealings unknown to Plaintiff with PSI by which they received compensation from PSI, and, in fact, engaged in dealings which constituted conflicts of interest with Leeds-Morelli and Plaintiff.

79.    As set forth above, Leeds-Morelli and the Lawyer Defendants breached their fiduciary duties to Plaintiff by acting primarily for their own benefit and that of PSI.

80.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendant's breaches of fiduciary duties.

## SIXTH CAUSE OF ACTION
### (Breach of Contract Against
Leeds-Morelli and the Lawyer Defendants)

81.    Plaintiff repeats, reiterates and realleges Paragraphs 1-80 of the Amended Complaint as if fully set forth herein.

82.    Plaintiff had written contracts by which they retained Leeds-Morelli.

83.    Leeds-Morelli breached their contract with Plaintiff by, among other things, agreeing with PSI to accept compensation from PSI, without proper consultation and consent of Plaintiff, and to place their own interest above that of Plaintiff, as more fully set forth above.

84.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendants breach of contract.

21

## SEVENTH CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and
Fair Dealing Against Leeds-Morelli and the Lawyer Defendants)

85.    Plaintiff repeats, reiterates and realleges Paragraphs 1-84 of the Amended Complaint as if fully set forth herein.

86.    As set forth above, Leeds-Morelli and the Lawyer Defendants breached the implied covenant of good faith and fair dealing which is implied and inherent in the contract and/or agreement to which they entered with Plaintiff.

87.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendant's breach of the implied covenant of good faith and fair dealing.

## EIGHTH CAUSE OF ACTION
(Tortious Interference Against PSI and Does)

88.    Plaintiff repeats, reiterates and realleges Paragraphs 1-87 of the Amended Complaint as of fully set forth herein.

89.    PSI and the Does knew that Plaintiff had a contract with Leeds-Morelli and the Lawyer Defendants which, among other things, provided that Leeds-Morelli would represent Plaintiff with respect to their alleged legal claims against PSI.

90.    Upon information and belief, as set forth above PSI and the Does maliciously, illegally and intentionally interfered with Plaintiff's contractual relationship causing its breach, wrongfully and without justification or excuse.

91.    Plaintiff suffered harm and damages as a result of the tortious interference.

22

92.    The conduct of PSI and the Does was malicious and/or in wanton and willful disregard of the Plaintiff's rights, and PSI and the Does knew or should have known that their actions would harm Plaintiff and were recklessly indifferent to the consequences of their action to Plaintiff.

## NINTH CAUSE OF ACTION
(Fraud and Conspiracy to Defraud Against All Defendants)

93.    Plaintiff repeats, reiterates and realleges Paragraphs 1-92 of the Amended Complaint as if fully set forth herein.

94.    As set forth above, all Defendants have been participants in the civil conspiracy described above against Plaintiff. The ultimate intent and result of the civil conspiracy was to deprive Plaintiff of their civil rights in return for either financial gain or the substantial reduction of financial and/or reputational harm thought to be possible as a result of Plaintiff's alleged claims of discrimination. The Lawyer Defendants, D.O.W.S., PSI and the Does are all co-conspirators to the actions of Leeds-Morelli as set forth herein and the first and fifth causes of action.

95.    All Defendants shared a common and unlawful purpose of fraud and compromising the fidelity of Plaintiff's attorneys for the benefits of PSI, Leeds-Morelli the Lawyer Defendants and D.O.W.S.

96.    Plaintiff suffered harm and damages as a result of the civil conspiracy.


WHEREFORE, Plaintiff and other Class Members demand judgment against Defendants as follows:

23

A.     On the First Cause of Action:

      (1)    Compensatory damages;
      (2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
      (3)    Reasonable attorney's fees and costs;
      (4)    Interest;
      (5)    An accounting of all funds paid to D.O.W.S. and all funds expended by D.O.W.S. at Defendants' expense; and
      (6)    Punitive damages.

B.     On the Second Cause of Action:

      (1)    Compensatory damages;
      (2)    Reasonable attorney's fees and costs;
      (3)    Interest; and
      (4)    Punitive damages

C.     On the Third Cause of Action:

      (1)    Compensatory damages;
      (2)    Treble damages;
      (3)    Reasonable attorney's fees and costs of investigation and litigation; and
      (4)    Interest.

D.     On the Fourth Cause of Action:

      (1)    Compensatory damages;
      (2)    Treble damages;
      (3)    Reasonable attorney's fees and costs of investigation and litigation; and
      (4)    Interest.

E.     On the Fifth Cause of Action

      (1)    Compensatory damages;
      (2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
      (3)    Reasonable attorney's fees and costs; and
      (4)    Interest.

F.     On the Sixth Cause of Action:

24

        (1)      Compensatory damages;
        (2)      Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
        (3)      Reasonable attorney's fees, filing fees and costs of suit; and
        (4)      Interest.

G.     On the Seventh Cause of Action:

        (1)      Compensatory damages;
        (2)      Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
        (3)      Reasonable attorney's fees and costs; and
        (4)      Interest.

H.     On the Eighth Cause of Action:

        (1)      Compensatory damages;
        (2)      Reasonable attorney's fees and costs;
        (3)      Interest; and
        (4)      Punitive damages.

I.     On the Ninth Cause of Action:

        (1)      Compensatory damages;
        (2)      Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
        (3)      Reasonable attorney's fees and costs;
        (4)      Interest; and
        (5)      Punitive damages.

J.     Such further relief as the Court deems equitable, appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Liddle & Robinson, L.L.P.

Jeffrey L. Liddle (JL 8256)

Blaine H. Bortnick (BB 3686)
Attorney for Plaintiffs
800 Third Avenue
New York, New York 10022
(212) 687-8500

Of Counsel:

Kenneth S. Thyne, Esq.
Angela M. Roper, Esq.
Roper & Twardowsky, LLC
77 Jefferson Place
Totowa, New Jersey 07512
(973) 790-4441

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
JEFFREY S. VAUGHN, individually and on behalf of  :
those Class Members similarly situated,                    :            Case No. 04 Civ. 8391 (DLC)
                                                                               :
                           Plaintiff,                               :            Affidavit of Service
                                                                               :            By Mail
                    -against-                                       :
                                                                               :
LEEDS, MORELLI & BROWN, P.C., LEEDS,  :
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,  :
LEEDS, MORELLI & BROWN, PRUDENTIAL  :
SECURITIES, INC., PRUDENTIAL FINANCIAL,  X
INC., LENARD LEEDS, STEVEN A. MORELLI,
JEFFREY K. BROWN, JAMES VAGNINI,
FREDERIC DAVID OSTROVE, ROBERT JOHN
VALLI, JR., DISCRIMINATION ON WALL
STREET, INC. DISCRIMINATION ON WALL
STREET, MANHATTAN, INC., JOHN DOES, 1-10
AND JANE DOES, 1-10 a fictitious designation for
presently unknown licensed attorneys, professionals
and/or unknown persons or entities,,

                           Defendants.

---------------------------------------------------------------------

            The undersigned being duly sworn deposes and says:
     I am not a party to the action, am over 18 years of age and have a business address of 800 Third
Avenue, New York, NY 10022. On March 15, 2005, I served the Amended Complaint on the
following:

     LITCHFIELD CAVO                              PAUL, WEISS, RIFKIND, WHARTON &
     Daniel T. Hughes, Esq.                          GARRISON, L.L.P.
     420 Lexington Avenue                           Gerard E. Harper, Esq.
     Suite 400                                            1285 Avenue of the Americas
     New York, NY 10170                            New York, New York 10019-6064




The address designated by said attorney(s) for that purpose by depositing a true copy of same
enclosed in a postpaid properly addressed wrapper, in a post office official depository under the

exclusive care and custody of the United States Postal Service within the state of New York.

Sworn to before me
this 15th day of March, 2005.

_Rose M. Reverendo_
Notary Public

Blaine Bortnick

ROSE M. REVERENDO
NOTARY PUBLIC, State of New York
No. 31-4908329
Qualified in New York County
Commission Expires _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY S. VAUGHN, individually and on
behalf of those Class Members similarly
situated,

                Plaintiff,

                v.

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, L.L.P., LEEDS &
MORELLI, LEEDS, MORELLI & BROWN,
PRUDENTIAL SECURITIES, INC.,
PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K.
BROWN, and JOHN DOES, JAMES VAGNINI,
FREDERIC DAVID OSTROVE, ROBERT
JOHN VALLI, JR., DISCRIMINATION ON
WALL STREET, INC. DISCRIMINATION ON
WALL STREET MANHATTAN, INC., JOHN
DOES, 1-10 AND JANE DOES, 1-10 a fictitious
designation for presently unknown licensed
attorneys, professionals and/or unknown persons
or entities,

                Defendants.

94 Civ. 08391 (DC)

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
PRUDENTIAL SECURITIES INCORPORATED AND PRUDENTIAL
FINANCIAL INC.'S MOTION TO COMPEL
ARBITRATION AND TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF THE CASE ................................................................................... 3

ARGUMENT ............................................................................................................. 9

I.    THIS COURT SHOULD DISMISS THE ACTION AND COMPEL
      ARBITRATION OF PLAINTIFF'S CLAIMS BASED ON THE
      SETTLEMENT AGREEMENT'S PLAIN LANGUAGE .................................... 9

II.   THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED
      COMPLAINT BECAUSE PLAINTIFF'S RICO CLAIMS -- THE SOLE
      BASIS FOR FEDERAL JURISDICTION--FAIL TO STATE CLAIMS
      FOR RELIEF .............................................................................................. 14

   A.   Plaintiff's RICO Claims Are Time-Barred .......................................................... 14

   B.   Plaintiff Otherwise Fails to State RICO Claims ................................................. 15

CONCLUSION ........................................................................................................... 21

i

## TABLE OF AUTHORITIES

### CASES

*Acquaire v. Canada Dry Bottling*, 906 F.Supp. 819 (E.D.N.Y. 1995)..............................12

*Allen v. New World Coffee, Inc.*, No. 00 Civ. 2610, 2001 WL 293683 (S.D.N.Y.
    Mar. 27, 2001)..........................................................................................................17, 20

*Americorp Sec., Inc. v. Sager*, 239 A.D.2d 115 (1st Dep't 1997) ....................................16

*Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999) ..........................16

*Atlantic Gypsum Co., v. Lloyds International Corp.*, 753 F.Supp. 505 (S.D.N.Y.
    1990) ............................................................................................................................16

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988)..........................................14

*Casio Computer Co., v. Sayo*, No. 98CV3772, 2000 WL 1877516 (S.D.N.Y. Oct.
    13, 2000) ......................................................................................................................19

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999) .............18

*Continental Realty Corp. v. J.C. Penney Co.*, 729 F.Supp. 1452 (S.D.N.Y. 1990) ..........18

*Cougar Audio, Inc. v. Reich*, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y. Apr.
    18, 2000) ......................................................................................................................17

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) ....................................................19

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).................................................9

*FD Prop. Holding, Inc. v. US Traffic Corp.*, 206 F.Supp.2d 362 (E.D.N.Y. 2002)..........20

*Flanagan v. Prudential-Bache Sec., Inc.*, 67 N.Y.2d 500 (1986) .......................................9

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)........................................11

*GICC Capital Corp. v. Tech. Finance Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) ..............18

*Gary Plastic Packaging Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1996)........................................................................................15

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) ..............................10, 11

*Green Tree Finance Corp. v. Bazzle*, 539 U.S. 444 (2003)..............................................12

*Hackett v. Milbank, Tweed, Hadley & McCloy*, 86 N.Y.2d 146 (1995)..............................13

*Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28 (2d Cir. 1997) ........................11

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654 (S.D.N.Y. 1997),
    *aff'd*, 173 F.3d 844 (2d Cir. 1999) ....................................................................12

*International Association of Machinists and Aerospace Workers v. General
    Electric Co.*, 406 F.2d 1046 (2d Cir. 1969) ................................................10

*Jaghory v. New York State Department of Education*, 131 F.3d 326 (2d Cir. 1997)........14

*Lesavoy v. Lane*, 304 F.Supp.2d 520 (S.D.N.Y. 2004) ........................................................16

*Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998), *cert. denied*, 525 U.S.
    1144 (1999)...........................................................................................................3

*Mead v. Schaub*, 757 F.Supp. 319 (S.D.N.Y. 1991).............................................................18

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ..........................................17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)..............9

*Moore v. Painewebber, Inc.*, 189 F.3d 165 (2d Cir. 1999)..........................................18, 19

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.*, 460 U.S. 1
    (1983)....................................................................................................................10

*Oboler v. Insurance Co. of North America*, No. 91 Civ. 2808, 1994 WL 414438
    (S.D.N.Y. Aug. 15, 1994) ..................................................................................15

*Oldroyd v. Elmira Savings Bank*, 134 F.3d 72 (2d Cir. 1998) ....................................9-11

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967)...........13

*Progressive Casualty Insurance v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993)................................................................................11

*Promovision Video Display Corp. v. Intech Leasing Corp.*, 129 A.D.2d 785 (2nd
    Dep't 1987) ..........................................................................................................13

*Reynolds v. East Dyer Development Co.*, 882 F.2d 1249 (7th Cir. 1989).........................16

*Reynolds & Reynolds Co. v. Goldsmith Motor Corp.*, 251 A.D.2d 312 (2nd Dep't
    1998) ....................................................................................................................11

*Rio Algom Inc. v. Sammi Steel Co.*, 168 A.D.2d 250 (1st Dep't 1990) ............................10

iii

*S.A. Mineracao Da Trindade-Samitri v. Utah International, Inc.*, 745 F.2d 190
(2d Cir. 1984).................................................................................................................10

*Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)...........................................................17

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987)...............................12

*Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Importation and Exp.*
*Trucking Co.*, 944 F.2d 1037 (2d Cir. 1991) ................................................................12

*United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) ...............................................17

*Vapor Tech. Partners, L.P. v. Vapor Tech of Delaware, Inc.*, No. 91 Civ. 3800,
1992 WL 14986 (S.D.N.Y. Jan 22, 1992) ....................................................................20

*Wire Service Guild v. United Press International, Inc.*, 623 F.2d 257 (2d Cir.
1980) ..............................................................................................................................10

## STATUTES

9 U.S.C. § 4 ..........................................................................................................................9

18 U.S.C. §1961.....................................................................................................................16

18 U.S.C. § 1962.....................................................................................................................15

N.Y. C.P.L.R. § 7501 *et seq*.....................................................................................................10

## PRELIMINARY STATEMENT

This is a putative class action by a former Prudential Securities Incorporated ("PSI") employee against PSI and the lawyers whom Plaintiff retained to pursue employment claims against PSI. Almost six years after executing a settlement agreement and general release in exchange for $200,000, Plaintiff now contends that he – along with hundreds of other former PSI employees – was a victim of a far-flung conspiracy between Plaintiff's former counsel and his former employer to limit the recovery which he otherwise would have been entitled. According to the Amended Complaint, PSI bought off Plaintiff's then counsel, causing them to breach their fiduciary obligations to him.

Simply stated, Plaintiff has no claims actionable in this Court because the settlement agreement that he executed contained a clear arbitration provision precluding this Court from considering Plaintiff's contentions. In accordance with the plain language of the Settlement Agreement and General Release with PSI dated October 27, 1998 (the "Settlement Agreement"), Plaintiff agreed, in exchange for $200,000 and other valuable consideration from PSI, that "[a]ny claim or controversy arising out of or related to this [Settlement] Agreement or the interpretation thereof will be settled by arbitration" in one of two alternate dispute resolution fora. This language is unambiguous, unconditional, and without exception. No doubt can exist that Plaintiff's allegations – that PSI conspired with Plaintiff's hand-picked lawyers to deprive Plaintiff of a greater monetary recovery on his employment claims – are a "claim or controversy arising out of or related to" the Settlement Agreement. Accordingly, the arbitration clause applies and

1

requires dismissal of the Amended Complaint in favor the parties' agreed-upon means for addressing Plaintiff's claims.

No more should be necessary to dismiss this action, but here there is more. In fact, the Amended Complaint is bereft of well-pleaded factual allegations of wrongdoing by PSI. The gravamen of Plaintiff's allegations is that lawyers he personally chose allegedly did not tell him of the contents of purportedly "secret" agreements between PSI and his counsel. The issue, simply put, is disclosure. Yet nowhere does the Amended Complaint allege *facts* – as opposed to colorful but conclusory claims of "commercial bribery" – that PSI had any *right* let alone duty to communicate with Plaintiff about these supposed agreements while Plaintiff was represented by his own counsel. No allegation of well-pleaded fact appears that PSI had anything to do with the substance of communications between Plaintiff and his chosen lawyers. In such circumstances, the Settlement Agreement Plaintiff signed discharged Prudential from any further liability to him. These issues, however, are for an arbitrator to address not this Court.

Apart from the Settlement Agreement's clear arbitration language and the Amended Complaint's pleading defects, it is noteworthy that the sole basis for subject matter jurisdiction in this Court are two claims under the Racketeering Influenced and Corrupt Organizations Act, or "RICO," 18 U.S.C. §§ 1601 *et seq.* Although this Court need not – and, we respectfully submit, should not – reach the issue, Plaintiff's RICO allegations fail to state claims for relief, for the following reasons: (1) the claims are time-barred as to this Plaintiff; (2) the Amended Complaint fails to plead the requisite

2

predicate acts on which a RICO claim depends; (3) the pleading, already once amended, lacks the particularity required of its fraud averments – among many other things, no statement or actionable omission is attributed to PSI; and (4) there is a complete failure to allege the essential "pattern" of racketeering by PSI, as well as the causation without which no RICO claim may survive.

For all of these reasons, this putative class action does not belong in this Court and should be dismissed with prejudice.

## STATEMENT OF THE CASE

Although Prudential vigorously disputes the allegations of the Amended Complaint, we assume for now the truth solely of the well-pleaded facts in the pleading, supplemented by the attached Affirmation of counsel (Affirmation of Gerard Harper, "Aff..") attaching the Settlement Agreement to which the Amended Complaint specifically refers (Am. Cplt. ¶ 68(b)(7)).[1]

**The Parties**

According to his pleading, Plaintiff Jeffrey Vaughn is a resident of the State of New York and a former employee of PSI. At some unstated time "in or about 1998," "[Plaintiff] retained the law firm of Leeds-Morelli" to assert claims of racial discrimination against PSI. (Am. Cplt. ¶ 18) The Amended Complaint guesses, on undisclosed information and belief, that over 500 other PSI employees joined in retaining

---

[1]    This Court may consider Settlement Agreement on this motion to dismiss because the Amended Complaint includes a specific reference to the Settlement Agreement. *Levitin* v. *PaineWebber, Inc.*, 159 F.3d 698, 702 n.4 (2d Cir. 1998), *cert. denied*, 525 U.S. 1144 (1999).

the same law firm for the same purpose. (Am. Cplt. ¶ 24)    Plaintiff alleges that, supposedly unbeknown to him, this law firm entered into one or more "secret" agreements with PSI Aff.ecting the disposition of his discrimination claim. (Am. Cplt. ¶¶ 12-13)

Defendant PSI was, Plaintiff says, a corporation with offices in New York State, for which, Plaintiff alleges, the New Jersey-based Prudential Financial Inc. (together with PSI, "Prudential") is a successor in interest. (Am. Cplt. ¶ 2)

The remaining defendants are the New York law firm of Leeds, Morelli & Brown, P.C., various of its alleged predecessors or successors, two supposed Aff.iliates of the firm, and assorted lawyers who are said to have practiced with the firm and participated in the representation of Plaintiff and others during some unidentified time period (collectively or individually as the case may be, the "Leeds Firm"). (Am. Cplt. ¶¶ 3-11) Plaintiff alleges that the Leeds Firm has a "system" for processing employment discrimination claims against "corporate America," including, it is pleaded, such companies as Nextel, Bank of New York, Chase Manhattan, Aetna, J.P. Morgan, CitiGroup, Bear Stearns and others. (Am. Cplt. ¶¶ 33-34) Prudential is alleged to be one of the entities that have been the target of this "system." (Am. Cplt. ¶ 34)

**The Amended Complaint**

Relying on undisclosed information and belief, the Amended Complaint says that the Leeds Firm's "system" consists of several steps, the first two of which consist of (1) the Leeds Firm's solicitation of clients using "runners" to "induce" employees to retain the Leeds Firm to pursue claims against their corporate employer;

4

and (2) the Leeds Firm's meetings with prospective clients in which the Leeds Firm is said to obtain written retainer agreements providing for a one-third contingency fee for asserting such claims. No allegation is made that the corporate employer has anything to do with these matters. There is no claim that PSI was even aware of such activities at the time they allegedly occurred. (Am. Cplt. ¶ 33)

Later in this "system," says the pleading, the Leeds Firm approaches the corporate employer with a proposal that the employer advance money to the Leeds Firm in exchange for the Leeds Firm's clients' agreement to participate in a "secret and confidential settlement process." This "secret and confidential" process is made up of a "three-step alternate dispute resolution process" in which the Leeds Firm represents its clients, apparently individually, first in informal discussions, then in non-binding mediation, and finally in binding mediation. No mention is made in the Amended Complaint of who mediates these disputes or pays for them, nor whether any particular claimant fared poorly in them. Plaintiff, though, says that this "system" "typically" results in an "aggregate settlement" with the corporate employer. Common to these allegations is an assertion that the clients, including, here, Plaintiff, are unaware of the processes, including the Leeds Firm's agreements and settlements with the employer. (Am. Cplt. ¶ 33)

Although Plaintiff never expressly says as much, his unstated information and belief presumes that, in its representation of Plaintiff, the Leeds Firm engaged in this "system" with PSI. He alleges that "[t]here is at least one such agreement dated February 13, 1998" between PSI and the Leeds Firm and claims to have information and belief that

5

others exist dated May 1999 and November 2001. (Am. Cplt. ¶ 12) In Plaintiff's view, again on unknown information and belief, these agreements give rise to five claims against Prudential, two of them supposedly arising out of federal law: (1) aiding and abetting a fraud by the Leeds Firm on the Leeds Firm's clients; (2) civil RICO; (3) civil RICO conspiracy; (4) tortious interference with the contract between the Leeds Firm and its clients; and (5) civil fraud conspiracy. (Am. Cplt. ¶¶ 53-58, 59-69, 70-74, 88-92, 93-96)

Plaintiff's (as well as the putative class's) sole damages claim is to seek return of the amount that PSI and/or the putative class members paid to the Leeds Firm. There is no claim for damages that the settlement process itself produced awards for Plaintiff or anyone else lower than Plaintiff otherwise would have received.

The Settlement Agreement

On or about October 27, 1998, expressly upon advice of his counsel of choice, and in consideration of (among other things) a payment from PSI of $200,000, Plaintiff executed the Settlement Agreement. Paragraph 4 of the Settlement Agreement provides in pertinent part (emphasis added) (Aff., Ex. A, ¶ 4):

> In consideration for [Prudential's] commitment to the various arrangements described in the preceding paragraphs, and in lieu of any other benefits, as a full and final settlement, *Vaughn hereby releases and discharges [Prudential], its parent, divisions, subsidiaries and affiliates and their current and former directors, officers, shareholders, agents and employees, and each of their predecessors, successors, and assigns (hereinafter "the Company"), from any and all claims and causes of action* ... arising out of or related to Vaughn's employment or separation from employment

6

> ... that Vaughn, his heirs ... now have, ever had or may
> hereafter have, whether known or unknown, suspected or
> unsuspected, up to and including the date of this
> Agreement.

The Settlement Agreement contains a number of other provisions common to resolutions of its type, including a statement that PSI admits no liability; that Plaintiff must preserve the confidentiality of PSI's proprietary information; that he will not disparage PSI nor seek reinstatement of his employment; and a merger clause indicating that the Settlement Agreement supersedes "all prior written and oral agreements" between the parties. (Aff., Ex. A, ¶¶ 5, 6, 7, 8, 9, 13). In the Settlement Agreement Plaintiff promised, too, "not to disclose or caused to be disclosed, directly or indirectly," except as required by law, "any information regarding the amount of, terms of, or facts or circumstances underlying" the Settlement Agreement. (Aff., Ex. A, ¶ 11) Plaintiff expressly agreed that, if he breaches the Settlement Agreement, he would forfeit the amount of his settlement payment. (Aff., Ex. A, ¶ 15)

Paragraph 14 of the Settlement Agreement clearly and unambiguously sets forth the means by which Plaintiff and PSI would resolve any future dispute between them about the foregoing (Aff., Ex. A, ¶ 14):

> Any claim or controversy arising out of or related to this
> Agreement or the interpretation thereof will be settled by
> arbitration under the then constitution and rules of the New York
> Stock Exchange, Inc. or the National Association of Securities
> Dealers, Inc. Judgment based upon the decision of the arbitrates
> may be entered in any court having jurisdiction thereof. The
> governing law of this Agreement shall be the substantive and
> procedural law of the State of New York.

In addition to committing to arbitrate "any" claim "arising out of or related to" the Settlement Agreement, Plaintiff also made representations to PSI at odds with his

7

current allegations, in particular that the execution of the Settlement Agreement was knowing and voluntary (Aff., Ex. A, ¶ 15):

> Vaughn acknowledges that he has carefully read this Agreement and understands all of its terms including the full and final release of claims set forth above. Vaughn further acknowledges that he has voluntarily entered into this Agreement; that he has not relied upon any representation or statement, written or oral, not set forth in this Agreement; that the only consideration for signing this Agreement is as set forth herein; that the consideration received for executing this Agreement is greater than that to which he might otherwise be entitled; and that this document gives him the opportunity and encourages him to have this Agreement reviewed by his attorney and tax advisor.

The Settlement Agreement indicates that Plaintiff signed the document on October 27, 1998. (Aff., Ex. A)

**Prior Proceedings**

Plaintiff commenced this action by the filing of a complaint on October 25, 2004 – within forty-eight hours of the sixth anniversary of signing the Settlement Agreement. At a preliminary conference on March 4, 2005, Plaintiff having indicated his intention to do so, the Court directed Plaintiff to file an Amended Complaint by March 15, which Plaintiff did. By this motion, Prudential seeks dismissal of the Amended Complaint with prejudice and an order compelling Plaintiff to arbitrate the claims contained in the Amended Complaint.

8

ARGUMENT

I.

## THIS COURT SHOULD DISMISS THE ACTION AND COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS BASED ON THE SETTLEMENT AGREEMENT'S PLAIN LANGUAGE

The Federal Arbitration Act, applicable here, provides that a party aggrieved by the "failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" may petition for "an order directing that such arbitration proceed in the manner provided for in such agreement. . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 218 (1985) (emphasis added).

This statute reflects a powerful public policy favoring arbitration and requiring courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (citation omitted); *Flanagan* v. *Prudential-Bache Sec., Inc.*, 67 N.Y.2d 500, 506-07 (1986). "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd* v. *Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir. 1998). Courts should therefore "construe arbitration clauses as broadly as possible," *Id.*, and "any doubts concerning the

9

scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

These are no aimless directions. The meticulous application and generous construction of arbitration contracts dictate that, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). Thus, "a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it may be said with positive assurance that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute." *Oldroyd*, 134 F.3d at 76; *see also S.A. Mineracao Da Trindade-Samitri* v. *Utah Int'l., Inc.*, 745 F.2d 190, 194 (2d Cir. 1984); *Wire Service Guild* v. *United Press Int'l., Inc.*, 623 F.2d 257, 260 (2d Cir. 1980); *Int'l. Ass'n of Machinists and Aerospace Workers* v. *Gen. Elec. Co.*, 406 F.2d 1046, 1048 (2d Cir. 1969).

The statutory and case law of New York are to the same effect. N.Y. C.P.L.R. § 7501 *et seq.* (McKinney 2005). Section 7503 of the New York Civil Practice Law and Rules says that "[w]here there is no substantial question whether a valid agreement was made . . . the court shall direct the parties to arbitrate." "The policy of this State is to favor and encourage arbitration as a means of expediting the resolution of disputes and conserving judicial resources." *Rio Algom Inc.* v. *Sammi Steel Co.*, 168 A.D.2d 250, 251, 253 (1st Dep't 1990); *Americorp Sec., Inc.* v. *Sager*, 239 A.D.2d 115,

10

118 (1st Dep't 1997) (to the same effect); *Reynolds & Reynolds Co. v. Goldsmith Motor Corp.*, 251 A.D.2d 312, 313 (2d Dep't 1998) (same).

In determining motions to compel arbitration, courts in this Circuit consider: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if any federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if only some of the claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Oldroyd*, 134 F.3d at 75-76; *Genesco*, 815 F.2d at 844.

The application of these four considerations strongly favors dismissal of this action in favor of arbitration.

With regard to the first factor it is beyond dispute that Plaintiff unambiguously agreed to arbitrate the claims contained in the Amended Complaint. Plaintiff executed a contract in which he promised to arbitrate "[a]ny claim or controversy arising out of or related to this Agreement." It is settled that "a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." *Progressive Cas. Ins. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (citations omitted); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 34 (2d Cir. 1997); *Genesco*, 815 F.2d at 845.

As to the second factor, Plaintiff cannot seriously contest that his claims fall within the scope of the arbitration clause, particularly in light of the teachings that

11

such clauses must be broadly construed to reach any claim touching upon the subject matter of the clause.    Here, each of Plaintiffs' claims stems from the alleged circumstances leading to his signing of the Settlement Agreement.    But for those supposed circumstances – the ostensibly secret processes by which his discrimination claim was resolved – no Settlement Agreement and hence no arbitration clause would exist.  Consequently, it is evident that every one of Plaintiff's claims arises out of or is related to the Settlement Agreement. *See Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. and Exp. Trucking Co.*, 944 F.2d 1037, 1043 (2d Cir. 1991) (observing, in relation to identical language contained in a contract, that "we are hard-pressed to think of a more sweeping arbitration clause"); *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 835 (E.D.N.Y. 1995) (characterizing a similar arbitration clause as "the most sweeping language imaginable").

The third factor – whether public policy renders certain claims non-arbitrable – has already been definitively determined. That RICO claims are arbitrable is firmly established. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987). So, too, is the proposition that a Plaintiff cannot avoid arbitration by attempting to bring an action as a class action under Federal Rule of Civil Procedure 23. A Plaintiff "who has agreed to arbitrate all claims arising out of her employment may not avoid arbitration by pursuing class claims." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 665 n. 7 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *see Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 461 (2003) ("the question of whether these claims may be submitted to arbitration as a class action is for the arbitrator to decide."). That a party

12

claims to raise issues of public import, including the professional ethics of lawyers, provides no escape from an agreement to arbitrate. *Hackett v. Milbank, Tweed, Hadley & McCloy*, 86 N.Y.2d 146 (1995) (policy favoring arbitration clauses overrides judicial interest in regulating lawyer conduct).

Finally, because each of Plaintiff's claims is subject to arbitration, this Court should dismiss the Amended Complaint and not merely stay the action. Certainly Plaintiff's fraud claims supply no basis for ruling otherwise. As the United States Supreme Court held in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967), "[u]nless the arbitration provision itself was a product of fraud, the election [to arbitrate] should be enforced." If there is a claim of fraud in the inducement of the arbitration clause itself, the court may proceed to adjudicate that specific claim, but the court may not "consider claims of fraud in the inducement of the contract generally." *Id.* at 403-04; *see Promovision Video Display Corp. v. Intech Leasing Corp.*, 129 A.D.2d 785 (2d Dep't 1987). The rationale underlying this rule is that the arbitration clause is severable from the other provisions of the contract. Jay M. Zitter, Annotation, *Claim of Fraudulent Inducement of Contract as Subject to Compulsory Arbitration Clause Contained in Contract*, 11 A.L.R. 4th § 39(a) (1982).

Here, the Amended Complaint does not allege that the Settlement Agreement was fraudulently induced, let alone its arbitration clause. Accordingly, because Plaintiff signed the Settlement Agreement containing an arbitration provision, because that arbitration provision encompasses each of his claims, because no public

13

policy obstructs its enforcement, and because all of Plaintiff's claims are arbitrable, this Court should dismiss the Amended Complaint with prejudice.

## II.

## THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT BECAUSE PLAINTIFF'S RICO CLAIMS – THE SOLE BASIS FOR FEDERAL JURISDICTION–FAIL TO STATE CLAIMS FOR RELIEF

A motion to dismiss should be granted when, as here, a complaint, construed in the light most favorable to Plaintiff, offers no factual allegations upon which relief may be granted. *Jaghory* v. *New York State Dep't of Educ.*, 131 F.3d 326, 330 (2d Cir. 1997).

### A.    Plaintiff's RICO Claims Are Time-Barred

A four-year statue of limitations governs Plaintiff's RICO claims. This means that Plaintiff had four years from the date that he discovered or should have discovered the injury to his business or property to commence this action. *Bankers Trust Co.* v. *Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988). Here, the only conceivable injury this Plaintiff suffered – even if he does not claim it as such – is that defendants' alleged misdeeds produced a settlement for alleged discrimination lower than the settlement Plaintiff could have received had Prudential not "bribed" his then counsel. Thus, Plaintiff sustained his injury, if any, no later than when he signed the Settlement Agreement providing for a payment to him of $200,000. That Settlement Agreement was signed on October 27, 1998, and hence Plaintiff's RICO claims expired no later than October 27, 2002. Since Plaintiff did not bring his claims until almost two years later, the claims are now time-barred.

14

This sinks Plaintiff's Amended Complaint. It is no answer that Plaintiff seeks to represent persons who may have resolved their claims within the four-year limitations period. Plaintiff cannot purport to represent a class of which he is not a member; he cannot avoid the four-year statute of limitation for RICO claims by asserting injuries that may have Aff.ected other purported class members but not him. Thus, while the Amended Complaint refers to several alleged incidents occurring months or years after Plaintiff signed the Settlement Agreement (e.g., Am. Cplt. ¶ 68(b)(1)-(4)), these events could not possibly have Aff.ected Plaintiff, who had long before released Prudential. Therefore, Plaintiff's claims are not "typical" of the claims of the purported class members he claims to represent because his claims do not arise from the same conduct that Aff.ected purported class members and his claims thus cannot be based upon the same legal theories as other purported class members. *Oboler v. Ins. Co. of North America*, No. 91 Civ. 2808, 1994 WL 414438, at *5-6 (S.D.N.Y. Aug. 15, 1994); *Gary Plastic Packaging Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1996) (Plaintiff's claims are not typical when they give rise to "unique defenses").

## B.    Plaintiff Otherwise Fails to State RICO Claims

Even if Plaintiff's RICO claims were not time-barred, Plaintiff has failed for several independent reasons to plead sufficiently the essential elements of a RICO claim, any one of which would warrant dismissal.

First:  Plaintiff neglects to allege the provision of section 1962 that Prudential is claimed to have violated. 18 U.S.C. § 1962. "Failure to plead a specific

15

subsection of § 1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendants of the unlawful conduct in which they allegedly engaged." *Atlantic Gypsum Co.,* v. *Lloyds Int'l Corp.,* 753 F. Supp. 505, 511 n. 4 (S.D.N.Y. 1990); *see Reynolds* v. *East Dyer Dev. Co.,* 882 F.2d 1249, 1251 (7th Cir. 1989). "RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Lesavoy* v. *Lane,* 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004). Plaintiff's generic reference to section 1962 does not adequately alert Prudential to his putative RICO claim.

Second: Plaintiff does not adequately plead two predicate acts, essential elements of any RICO action. *Anatian* v. *Coutts Bank (Switzerland) Ltd.,* 193 F.3d 85, 88 (2d Cir. 1999). Plaintiff tries. He refers to "those acts described above" -- presumably the ill-pleaded state law claims of fraud -- as racketeering predicate acts. (Am. Cplt. ¶ 68(a)) State law fraud claims do not qualify as predicate acts for RICO purposes, *see* 18 U.S.C. §1961(1), and thus Plaintiff is necessarily limited to his allegations of commercial bribery and mail or wire fraud, neither of which works.

Plaintiff's commercial bribery allegations do him no good. For an allegation of commercial bribery to serve as a civil RICO predicate it must have caused an injury to Plaintiff's "business or property." This means concrete harm to an existing asset, not the loss of a potentially contingent one. "The abstract form of harm suffered by one who loses the chance to bargain with all the facts may be sufficient to sustain a bare allegation of commercial bribery under New York law, but it is not sufficient to sustain a

16

RICO allegation with commercial bribery predicates." *Cougar Audio, Inc.* v. *Reich*, No. 99 Civ. 4498, 2000 WL 420546 at *8 (S.D.N.Y. Apr. 18, 2000); *see also United States* v. *Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994).

Equally inadequate are Plaintiff's allegations -- the boilerplate of misplaced civil RICO claims -- charging mail and wire fraud. Such allegations are subject to "the particularity requirement of Rule 9(b) because they sound in fraud." *Allen* v. *New World Coffee, Inc.*, No. 00 Civ. 2610, 2001 WL 293683, at *4 (S.D.N.Y. Mar. 27, 2001). The Amended Complaint does not meet these stringent requirements, because its allegations fail to specify the content of the communications, an explanation of why the communications were fraudulent, and the role of each defendant in the purported fraud. Here, Plaintiff cannot identify a *single* false statement or actionable omission by Prudential, let alone allege facts giving rise to an inference that the same were fraudulent. This is no claim for relief. *Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).

**Third:** The Amended Complaint does not adequately allege a legally cognizable pattern of racketeering activity. RICO's "pattern" requirement is intended to assure that RICO reaches only racketeering conduct posing a threat of ongoing or future activity, not conduct alleged to be isolated or sporadic. *Sedima S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479, 496 n. 14 (1985). Here, Plaintiff has alleged a "closed-ended" pattern of racketeering activity, specifically that defendants supposedly sought to achieve the limited objective of depriving "the Class Members of effective counsel, including Plaintiff, to recover on their claims against Prudential." (Am. Cplt. ¶ 12) "[T]o infer a

17

threat of repeated fraud from a single alleged scheme would in effect render the pattern requirement meaningless." *Cont'l Realty Corp. v. J.C. Penney Co.*, 729 F. Supp. 1452, 1455 (S.D.N.Y. 1990). "Although the alleged scheme to defraud [Plaintiff] may have required a number of steps over a determinate period of time, nevertheless because of its terminable nature and single goal it does not meet the requirement of continuity." *Mead v. Schaub*, 757 F. Supp. 319, 323 (S.D.N.Y. 1991).

In considering whether Plaintiff's allegations are sufficient to establish closed-ended continuity, this Court must examine such factors as "length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995). Here, Plaintiff fails to establish closed-ended continuity because the allegedly criminal activity was purportedly committed in connection with an isolated settlement process – a process that for this Plaintiff lasted no more than the period from February through October 1998. This does not establish "closed-ended continuity" to allege a pattern of racketeering activity.[2]

Fourth:   Plaintiff does not adequately allege causation.   *Moore v. Painewebber, Inc.*, 189 F.3d 165, 169-70 (2d Cir. 1999), explains:

---

[2]   Nor can Plaintiff allege a pattern of open-ended continuity, which requires him to allege "that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Nowhere in the Amended Complaint does Plaintiff identify *any* "racketeering activity" after Prudential settled the employment claims brought against it by the Leeds Firm.

The causation requirement, which is jurisdictionally mandated, has two different components. There must be "transaction causation," meaning that the misrepresentation must have led the Plaintiffs to enter into the transactions at issue, and there must be "loss causation," meaning that the misrepresentation must be both an actual and a proximate source of the loss that the Plaintiffs suffered.

Plaintiff alleges neither "transaction" nor "loss" causation. Plaintiff does not allege "transaction causation" because he never pleads that "but for the defendant's wrongful acts, the Plaintiffs would not have entered into the transactions that resulted in their losses." *Id.* at 172. Moreover, Plaintiff does not allege that, "but for" PSI's agreement to pay the Leeds Firm's attorneys fees, he would not have retained the Leeds Firm, or litigated his employment dispute against PSI, or turned down Prudential's $200,000 settlement, or even received more money. Further, Plaintiff fails to plead "loss causation" because he does not and cannot allege that any alleged misrepresentation *by PSI* actually caused Plaintiff to suffer any injury. The contrary statements in the Settlement Agreement -- that Plaintiff knew exactly what he was doing -- belie any reasonable reliance on statements now alleged to be fraudulent. *Danann Realty Corp.* v. *Harris*, 5 N.Y.2d 317, 323 (1959). Because there can be no reasonable reliance on PSI, and hence no fraud, there is no claim of loss causation.

**Fifth:** Finally, "[w]here no cause of action for substantive violations of RICO is stated, the RICO conspiracy claim cannot stand." *Casio Computer Co.,* v. *Sayo,* No. 98CV3772, 2000 WL 1877516, at *15 (S.D.N.Y. Oct. 13, 2000). Once again, because Plaintiff fails to plead facts to show a violation of section 1962(c), Plaintiff cannot assert a claim for RICO conspiracy violation under section 1962(d). Here, apart from the defects defeating Plaintiff's entire RICO claim, there is a separate flaw in his

19

allegations under § 1962(d). "[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance." *FD Prop. Holding, Inc.* v. *US Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (internal quotations omitted). Accordingly, Plaintiff's allegation of a conspiracy consists of nothing more than summary assertions that Prudential and the other defendants "conspired with one another to violate the provisions of 18 U.S.C. § 1962, as set forth above" and that each defendant "knowingly agreed to commit the aforementioned acts in violation of 18 U.S.C. § 1962." (Am. Cplt ¶¶ 71-72) Plaintiff's allegations are "devoid of factual assertions concerning the nature of the agreement" and "insufficient to state a claim under Section 1962(d)." *Allen*, 2001 WL 293683, at *9; *Vapor Tech. Partners, L.P.* v. *Vapor Tech of Delaware, Inc.*, No. 91 Civ. 3800, 1992 WL 14986, (S.D.N.Y. Jan 22, 1992).

20

<u>CONCLUSION</u>

For the reasons set forth above and in the accompanying Affirmation, Prudential respectfully requests that the Court grant this motion to dismiss the Amended Complaint with prejudice and to grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP

By: *Beth Frank*
Gerard E. Harper (GH0279)
Theodore V. Wells, Jr. (TW2830)
Beth S. Frank (BF0293)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

-and-

LOWENSTEIN SANDLER, P.C.
1330 Avenue of the Americas
New York, New York 10019

Of Counsel:
Gregory B. Reilly
Julie L. Werner

*Attorneys for Prudential Securities
Incorporated and Prudential Financial, Inc.*

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
JEFFREY S. VAUGHN, individually and on behalf of : 
those Class Members similarly situated,                       :        Case No. 04 Civ. 8391 (DLC)
                                                              :
                    Plaintiff,                                :
                                                              :        **Oral Argument Requested**
              -against-                                       :
                                                              :
LEEDS, MORELLI & BROWN, P.C., LEEDS,                          :
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,                     :
LEEDS, MORELLI & BROWN, PRUDENTIAL                            :
SECURITIES, INC., PRUDENTIAL FINANCIAL,                       :
INC., LENARD LEEDS, STEVEN A. MORELLI,                        :
JEFFREY   K.   BROWN,   JAMES   VAGNINI,                      :
FREDERIC DAVID OSTROVE, ROBERT JOHN                           :
VALLI,  JR.,  DISCRIMINATION  ON  WALL                        :
STREET, INC. DISCRIMINATION ON WALL                           :
STREET, MANHATTAN, INC., JOHN DOES, 1-10                      :
AND JANE DOES, 1-10 a fictitious designation for              :
presently unknown licensed attorneys, professionals          :
and/or unknown persons or entities,                           :
                                                              :
                    Defendants.                               :
-------------------------------------------------------------- X


## MEMORANDUM OF LAW IN OPPOSITION TO
## PRUDENTIAL DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ...........................................................................................iii-v

PRELIMINARY STATEMENT..........................................................................................1

STATEMENT OF FACTS....................................................................................................3

    A.    Background .........................................................................................................3

    B.    Procedural History.............................................................................................5

ARGUMENT

I.    PLAINTIFF'S CLASS ACTION CLAIMS
    ARE NO ELIGIBLE FOR ARBITRATION .........................................................7

    A.    Both the NYSE and NASD Prohibit Class Arbitration ...............................7

    B.    An NYSE or NASD Arbitration Panel Will Exceed
        The Scope of Its Authority By Considering This Claim ...........................10

II.    PLAINTIFF HAS PROPERLY PLEADED
    AND TIMELY BROUGHT RICO CLAIMS ........................................................11

    A.    The Standard On A Motion to Dismiss ....................................................11

    B.    Plaintiff's RICO Claims Are Timely ..........................................................12

    C.    Plaintiff Has Properly Plead RICO Claims ................................................13

        1.    Plaintiff Specifically Alleges a Provision of Section 1962 ................13

        2.    Plaintiff Has Pleaded At Least Two Predicate Acts............................15

        3.    Plaintiff Has Pleaded a Pattern of Racketeering Activity
            Under RICO ...................................................................................18

            a.    Plaintiff Has Sufficiently Alleged "Closed-Ended"
                Continuity...................................................................................19

i

            b.  Plaintiff Has Sufficiently Alleged "Open-Ended
               Continuity"................................................................21

        4.   Plaintiff Has Pleaded Causation.............................................22

        5.   Plaintiff Has Pleaded a Conspiracy Claim Under Section 1962(d).......22

III.   VAUGHN SHOULD BE PERMITTED TO AMEND HIS
       PLEADING IF THE COURT DEEMS HIS ALLEGATIONS
       TO BE INSUFFICIENT.............................................................22

CONCLUSION...................................................................................24

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

A. Terzi Production v. Theatrical Protect. Union, 2 F.Supp. 2d 485 (S.D.N.Y. 1998) ....................16

ABF Capital Management v. Askin Capital Management, 957 F.Supp. 1308 (S.D.N.Y. 1997).......16

Ades v. Deloitte & Touche, 799 F.Supp. 1493  (S.D.N.Y. 1992)................................................12, 13

Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 107 S.Ct. 2759
       L.Ed.2d 121 (1987). ................................................................................................................12

Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F.Supp. 505 (S.D.N.Y. 1990). ........................13, 14

Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir.1994) ............................................................13

Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996) ................................................................................11

Blythe v. Deutsche Bank, 2005 WL 53281 (S.D.N.Y. 2005) ..........................................................9

Casio Computer Co. v. Sayo 2000 WL 1877516 at *15 ................................................................22

Champ. V. Siegel Trading Co., 55 F.3d 269 (7th Cir. 1995) ...........................................................9

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999).............................18

Continental Realty Corporation v. J.C. Penney Company, 729 F.Supp 1452 (S.D.N.Y. 1990)........19

Cougar Audio, Inc. v. Reich, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y. 2000) .......................18

Gagliardi v. Village of Pawling, 18 F.3d 188  (2d Cir. 1994)...........................................................11

Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, 903 F.2d 176
       (2d Cir. 1996) ........................................................................................................................13

GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463 (2d Cir. 1995)................19, 21

Goodman v. New York City Off-Track Betting Corp., 1999 WL 269959, *11 (S.D.N.Y.),
       aff'd, 201 F.3d 431 (2d Cir. 1999)..........................................................................................24

Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003) ...........................................................10

H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). .......................................................18

Hartzog v. Reebok Intern. Ltd., 77 F. Supp.2d 478 (S.D.N.Y. 1999)................................................11

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532
    (1992) ...................................................................................................................................22

Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654 n.7 (S.D.N.Y. 1997),
    aff'd. 173 F.3d 844 (2nd Cir. 1999). ....................................................................................9

Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697 (2d Cir. 1994. .......................11

Katz v. Feinberg, 167 F. Supp. 2d 556 (S.D.N.Y. 2001), aff'd, 290 F.3d 95 (2d Cir. 2002) ............10

Lesavoy v. Lane, 304 F.Supp.2d 520 (S.D.N.Y. 2004) ...................................................................14

Martens v. Smith Barney, Inc., 181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................9

McNulty v. New York Dept. of Finance, 941 F. Supp. 452 (S.D.N.Y. 1996).....................................11

Mead v. Schaub, 757 F.Supp. 319 (S.D.N.Y. 1991).........................................................................20

Nielsen v. Piper, Jaffray & Hopwood, Inc., 66 F.3d 145 (7th Cir. 1995) ...........................................8

Oboler v. Ins. Co. of North America, 194 WL 414438 (S.D.N.Y. 1994) ...........................................13

Reynolds v. East Dyer Development Co., 852 F.2d 1249 (7th Cir. 1989).........................................14

Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119 (2d Cir. 1991) .................................................11, 23

Salomon Inc. Shareholders' Derivative Litigation, No. 91 Civ. 5500, 1994 WL 533595
    (S.D.N.Y. 1994) ....................................................................................................................9

Scher v. Equitable Life Assurance Society of the United States, 866 F.Supp. 776
    (S.D.N.Y. 1994) ....................................................................................................................8

Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374 (2d Cir. 1974). ...............................................16

Schmuck v. United States, 489 U.S. 705,  109 S.Ct. 1443, 103 L.Ed2d 734 (1989).........................16

Sedima, S.P.R.L. v. Imrex, Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346
    (1985) ....................................................................................................................................13

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir.1994) .................................................16, 17

Spira v. Nick, 876 F.Supp. 553 (S.D.N.Y. 1995)..............................................................................16

iv

<u>Sumitomo Copper Litigation</u>, 104 F.Supp.2d 314 (S.D.N.Y. 2000)............................................13, 17

<u>United States v. Altman</u>, 48 F.3d 96 (2d Cir.1995) ...........................................................................15

<u>United States v. Mittelstaedt</u>, 31 F.3d 1208 (2d Cir. 1994) ............................................................18

<u>United States v. Trapilo</u>, 130 F.3d 547 (2d Cir.1997)......................................................................15

## Rules

Fed. R. Civ. P. 12(b)(6)..............................................................................................................11
NYSE Arbitration Rule 600(d) ...............................................................................................9, 10
NASD Code of Arbitration Procedure Rule 10301(d)(1-3) ...........................................................8
NASD Code of Arbitration Procedure Rule 10301(d)(2) .........................................................8, 10
18 U.S.C. § 1962 ...................................................................................................................13, 14
18 U.S.C. § 1962(1)(A).................................................................................................................17

v

Plaintiff, Jeffrey S. Vaughn, (hereinafter "Vaughn") individually and on behalf of those Class Members similarly situated, (collectively, "Plaintiff"), respectfully submits this memorandum of law in opposition to the motion of defendants, Prudential Securities Incorporated and Prudential Financial Inc. (collectively, "PSI"), to dismiss Plaintiff's Amended Complaint in its entirety.

## PRELIMINARY STATEMENT

As a result of the Defendants' wrongful and illegal actions, Plaintiff asserts claims for common law fraud, conspiracy to defraud, aiding and abetting fraud, tortious interference with a contract, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Racketeer Influenced Corrupt Organization Act ("RICO").

PSI now seeks to avoid litigating Vaughn's claims in the federal court system. PSI incorrectly asserts that this Court should dismiss the action and compel arbitration of Vaughn's claims on the ground that the settlement agreement Vaughn executed with PSI contained an arbitration provision precluding this Court from considering Vaughn's contentions. The Settlement Agreement and General Release with PSI dated October 27, 1998 (the "Settlement Agreement"), contains an arbitration clause which states "[a]ny claim or controversy arising out of or related to this [Settlement] Agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc."

The arbitration rules of both the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers ("NASD"), however, expressly state that class action

claims are not eligible for arbitration. Since the claims here constitute a class action ineligible for arbitration, it is appropriate and proper for this Court to hear them.

Alternatively, Defendants attempt to dismiss the Amended Complaint for lack of subject matter jurisdiction on the grounds that Plaintiff's RICO claims are time barred and improperly pleaded. The allegations in Plaintiff's Amended Complaint must stand, however, because Plaintiff has properly pleaded and timely brought his RICO claims.

Accordingly, PSI's motion to dismiss Vaughn's Amended Complaint must be denied.

2

# STATEMENT OF FACTS

### A.    Background

Plaintiff Jeffrey Vaughn is a resident of the State of New York and a former employee of PSI. (Am. Cplt. ¶ 1.) Mr. Vaughn brings claims individually and on behalf of all Class Members.

Defendant Prudential Securities Incorporated is a corporation with offices in New York State and for which the New Jersey-based Prudential Financial Inc. is a successor in interest. (Am. Cplt. ¶ 2.) Defendant Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, and Leeds, Morelli & Brown, (hereinafter collectively "Leeds-Morelli"), was either a professional corporation, a partnership, L.L.C. or other entity practicing law in the State of New York. (Am. Cplt. ¶ 3.) It conducted its practice of law through the individual defendants.

In or about 1998, Vaughn and the other Class Members retained Leeds-Morelli to assert claims of racial discrimination against PSI. (Am. Cplt. ¶ 18.) Over 500 other PSI employees joined in retaining the same law firm for the same purpose. (Am. Cplt. ¶ 24.) Leeds-Morelli, the former lawyers for Plaintiff, conspired and entered into a written secret agreement or agreements (the "Secret Agreements") with PSI. There is at least one Secret Agreement dated February 13, 1998 between Leeds-Morelli and PSI. (Am. Cplt. ¶ 12.) Upon information and belief, several other subsequent agreements exist, including one from May 1999 and November 2001. Id. The Secret Agreements provided, among other things, for a cap on Plaintiff's and the Class Members' claims, prevented them from suing in court, and provided for the payment of fees by PSI directly to Leeds-Morelli without disclosure to Plaintiff or the Class Members. The

3

existence of the Secret Agreements was not known to Plaintiff until in or about October 2004. (Am. Cplt. ¶ 12-13.) Vaughn and the other Class Members resolved their claims against PSI in accordance with the advice rendered to them by Leeds-Morelli. (Am. Cplt. ¶ 19.)

Leeds-Morelli had a system for processing employment discrimination claims against numerous large corporations, including PSI. (Am. Cplt. ¶ 34.) Leeds-Morelli's clients, however, including the Plaintiff here, were never told and did not know of this agreement to protocol. (Am. Cplt. ¶ 33.) This system involved Defendants Discrimination on Wall Street, Inc. and Discrimination on Wall Street, Manhattan, Inc., (collectively, "D.O.W.S."), who held themselves out as charitable, non-profit institutions dedicated to eradicating racial bias in employment in the financial industry. Instead, these institutions were business corporations which were the alter ego of Leeds-Morelli and functioned primarily to solicit business for Leeds-Morelli. (Am. Cplt. ¶ 10.)

Leeds-Morelli's system consisted of several steps, the first two of which consisted of: (1) Leeds-Morelli's solicitation of clients using runners to induce African-American and other minority employees to retain the Leeds-Morelli to pursue claims against their corporate employer; and (2) Leeds-Morelli's meetings with prospective clients in which Leeds-Morelli obtained written retainer agreements providing for a one-third contingency fee for asserting such claims. (Am. Cplt. ¶ 33.) Leeds-Morelli then approached the corporate employer and proposed that the employer advance money to Leeds-Morelli in exchange for Leeds-Morelli's clients' agreement to participate in a secret and confidential settlement scheme. (Am. Cplt. ¶ 33.) This settlement scheme consisted of a three-step alternate dispute resolution process which involved an informal meeting between the client and a representative of the corporate employer to seek to settle the claim at an early stage; followed by a mediation also seeking to

4

settle the claim; and then, failing settlement, a binding mediation.    The clients waived their rights to trial by jury.  Typically, if not always, claims were settled and never reached the "binding mediation" stage. Id.

    The scheme worked so that Leeds-Morelli and PSI would enter into an illegal aggregate settlement to resolve all of the claims for a lump sum, again without disclosure to the clients.  Leeds-Morelli deceived the clients by telling them that their claims were being pursued, when in fact the claims had already been resolved or the recovery was capped by agreement between Leeds-Morelli and PSI. (Id.)

### B.  Procedural History

    Plaintiff commenced this action by filing a Complaint on October 25, 2004.  In that Complaint, Vaughn sought damages on behalf of himself and a class of similarly situated persons under Rule 23 of the Federal Rules of Civil Procedure. The plaintiff class consists of all persons who were represented by Leeds-Morelli with claims against PSI and whose rights were affected by the Secret Agreements between Leeds-Morelli and PSI, including the agreement dated February 13, 1998.  The Class is further divided into a subclass of those individuals who donated money to D.O.W.S. (the "Subclass"). (Am. Cplt. ¶ 23).

    These agreements give rise to five claims against PSI; (1) aiding and abetting a fraud by Leeds-Morelli on their clients; (2) civil RICO; (3) civil RICO conspiracy; (4) tortious interference with the contact between the Leeds Firm and its clients; and (5) civil fraud conspiracy. (Am. Cplt. ¶¶ 53-58, 59-69, 70-74, 88-92, 93-96.)

    At a preliminary conference on March 4, 2005, prior to any defendant answering, the Court directed Plaintiff to file an Amended Complaint by March 15, which Plaintiff did.  On

5

April 22, 2005, Defendants PSI moved this Court to dismiss the Amended Complaint and to
compel Plaintiff to arbitrate the claims contained in the Amended Complaint.

6

## ARGUMENT

### I.

### PLAINTIFF'S CLASS ACTION CLAIMS
### ARE NOT ELIGIBLE FOR ARBITRATION

#### A.    Both the NYSE and NASD Prohibit Class Arbitration

PSI erroneously contends that Plaintiff's class claims must be compelled to arbitration at either the New York Stock Exchange, Inc., ("NYSE") or the National Association of Securities Dealers, Inc., ("NASD"). The rules of both the NYSE the NASD, however, expressly and unambiguously state that a claim submitted as a class action is not eligible for arbitration. Simply put, since Plaintiff's claims are ineligible for arbitration at either entity, this Court is the appropriate forum for the adjudication of Plaintiff's claims.

The NYSE and NASD arbitration rules are incorporated into the Settlement Agreement's arbitration clause. It is beyond doubt that those rules not only prohibit the submission of class arbitration claims, but further prohibit PSI from seeking to enforce the arbitration clause. The arbitration clause in the Settlement Agreement states:

> Any claim or controversy arising out of or related to this Agreement or the interpretation thereof will be settled by arbitration **under the then prevailing constitution and rules of the New York Stock Exchange Inc., or the National Association of Securities Dealers, Inc.** Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the substantive and procedural law of the State of New York. (emphasis added).

Both the NYSE and the NASD arbitration rules share identical language regarding the nonarbitrability of Class Action claims. Critically, the NYSE arbitration rules state:

7

(i)    A claim submitted as a class action shall not be eligible for arbitration under the Rules of the New York Stock Exchange, Inc.[1]

(ii)    Any claim filed by a member or members of a putative or certified class action is also **ineligible for arbitration at the New York Stock Exchange, Inc. [NASD] if the claim is encompassed by a putative or certified class action filed in federal or state court**, or is ordered by a court to a non SRO arbitration forum for class-wide arbitration. However, such claims shall be eligible for arbitration in accordance with Rule 600(a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrated that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.[2]

(iii)    **No member**, allied member, member organization and/or associated person **shall seek to enforce any agreement to arbitrate against a customer, member, allied member, member organization and/or associated person that has initiated in court a putative class action** or is a member of a putative or certified class with respect to any claims encompassed by the class action....

NYSE Rule 600(d)(i-iii) and NASD Code of Arbitration Procedure Rule 10301(d)(1-3)(emphasis added).

Under these rules, this Court cannot compel arbitration. See Nielsen v. Piper, Jaffray & Hopwood, Inc., 66 F.3d 145 (7th Cir. 1995) (finding class action claim outside the scope of arbitration agreement since NASD and NYSE rules bar arbitration of such claims and recognizing court adjudication of class actions); Scher v. Equitable Life Assurance Society of the United States, 866 F.Supp. 776 (S.D.N.Y. 1994) (although the Form U-4 contains an arbitration

---

[1] NASD Code of Arbitration Procedure Rule 10301(d)(1) differs only, providing "...under this Code at the Association."

[2] NASD Code of Arbitration Procedure Rule 10301(d)(2) differs only, providing, "...an arbitral forum not sponsored by a self-regulatory organization for classwide arbitration..."

8

clause, class action suits are not subject to NASD arbitration); Martens v. Smith Barney, Inc., 181 F.R.D. 243 (S.D.N.Y. 1998) (compelling arbitration of plaintiffs' class action would frustrate their reasonable expectation that the Form U-4 arbitration clause did not cover class actions); compare In re Salomon Inc. Shareholders' Derivative Litigation, No. 91 Civ. 5500, 1994 WL 533595 (S.D.N.Y. 1994) (NYSE Rule 600(d) prohibits the submission of class actions for arbitration but not shareholder derivative actions).

In an effort avoid their unambiguous obligation to defend in court, PSI cites a completely inapposite case, Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 655 n.7 (S.D.N.Y. 1997), aff'd. 173 F.3d 844 (2nd Cir. 1999). In Howard, the plaintiff entered into an employment agreement which required any dispute arising out of Howard's employment to be arbitrated under the rules of the American Arbitration Association ("AAA"). Although the issues before the court concerned service of process, jurisdiction, and dismissal of a duplicative action, in dicta the court stated that because plaintiff agreed to arbitrate her claims, she could not avoid arbitration by pursuing class claims in court. The AAA, unlike the NYSE or NASD, specifically has rules allowing and governing class arbitration. See Rules 1-12, American Arbitration Association, Supplementary Rules for Class Arbitrations.[3]

Howard has no application here, where the NYSE and the NASD rules explicitly prohibit PSI from even attempting to compel arbitration of class claims. Rather, this case is much more akin to Blythe v. Deutsche Bank, 2005 WL 53281 (S.D.N.Y. 2005), where Deutsche Bank conceded that because plaintiffs were members of a putative class, it was prohibited under

---

[3] The dicta is supported by Champ. V. Siegel Trading Co., 55 F.3d 269, 276-277 (7th Cir. 1995). Champ simply makes the unremarkable statement that FRCP 81(a)(3) does not provide a district court authority to reform the parties' arbitration agreement to order class arbitration where the arbitration agreement is silent with respect to class arbitration. Id.

9

the NASD arbitration rules from seeking to compel arbitration until after either a denial of class certification or upon exclusion of the plaintiffs from a certified class. Id. at *3.

Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003), also cited by PSI, appears to be a passing suggestion that this Court does not even have the power to decide this issue. In Green Tree, the arbitration clause was silent on the issue of class arbitrability, and the Supreme Court merely held that the interpretation of whether that silence permitted class arbitration, as opposed to one-on-one arbitration, is for an arbitrator to decide. The Supreme Court nevertheless noted that courts decide "certain gateway matters, such as whether the ...arbitration clause applies to a certain type of controversy." Id. at 452. The issue before this Court is not about whether a class arbitration can be had, since the NYSE and NASD rules prohibit it. The issue presented by PSI is a "gateway" issue – to be decided by this Court.

**B.  An NYSE or NASD Arbitration Panel Will Exceed The Scope of Its Authority By Considering This Claim**

"An arbitration board exceeds the scope of its authority when it modifies, rewrites, or holds contrary to clear and unambiguous contractual language." Katz v. Feinberg, 167 F. Supp. 2d 556, 572 (S.D.N.Y. 2001), aff'd, 290 F.3d 95 (2d Cir. 2002 "Because arbitration is a creature of contract, the arbitrability of an issue derives fundamentally from the parties agreement to arbitrate. Thus, the scope of the arbitrators' authority depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." Id. at 565-66. (citations omitted) Since the parties here executed arbitration agreements that did not allow for arbitral submission of claims included within putative or certified class actions, [4] "it

---

[4] NASD Code of Arbitration Procedure Rule 10301(d)(2) and NYSE Arbitration Rule 600(d)(ii).

10

follows inexorably" that an Arbitration Panel will exceed the scope of its authority by hearing and issuing an award on those claims. Id. at 572.

## II.

### PLAINTIFF HAS PROPERLY PLEADED AND TIMELY BROUGHT RICO CLAIMS

#### A.    The Standard On A Motion To Dismiss

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in favor of the plaintiff. See Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 699-700 (2d Cir. 1994. The plaintiff "need provide only a short and plain statement of the claim showing that the pleader is entitled to relief." Hartzog v. Reebok Intern. Ltd., 77 F. Supp.2d 478, 479 (S.D.N.Y. 1999 (citing FRCP 8(a)). "Indeed, the pleading of evidence should be avoided." Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir. 1991; see also Hartzog, supra ("An evidentiary standard is not a proper measure of whether a complaint fails to state a claim").

The issue for the Court to determine is not whether a plaintiff will ultimately prevail on his claims. See Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996. A complaint may thus be properly dismissed "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McNulty v. New York Dept. of Finance, 941 F. Supp. 452, 454 (S.D.N.Y. 1996 (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2d Cir. 1994).

11

Moreover, Federal Rule 9(b) provides, in relevant part, that "[i]n all averments of fraud or mistake shall be stated with particularity.  Malice, intent, knowledge and other conditions of the mind of a person may be averred generally."  FRCP 9(b).  "Rule 9(b) must be read, however, in conjunction with Federal Rule of Civil Procedure 8(a), which requires a 'short and plain statement of the claims showing that the pleader is entitled to relief.'"  Ades v. Deloitte & Touche, 799 F.Supp. 1493, 1498 (S.D.N.Y. 1992.  "On a motion to dismiss on Rule 9(b) grounds, a court must assume the truth of the plaintiff's allegations and draw all inferences in favor of the pleader."  Id,  emphasis added.)

### B.    Plaintiff's RICO Claims Are Timely

Contrary to PSI's allegation, Plaintiff's RICO claims were timely brought.  The existence of the Secret Agreements was not known to Plaintiff until in or about October 2004.  (Am. Cplt. ¶ 12)  As PSI concedes, "Plaintiff had four years from the date he discovered or should have discovered" his injury.  (PSI Br. at 14.)  Therefore, October 2004 is the effective date from which the four-year statute of limitation governing RICO claims runs.  Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

Defendant PSI argues that the date on which the Settlement Agreement was signed, October 27, 1998 started the statutory period.  (PSI Br. p. 14)  However, given that Plaintiff discovered the existence of the Secret Agreements only in October 2004, the four-year statutory period must be calculated from that date.  The limitations period begins to run when a plaintiff knew or should have known of his injury.  Rotella v. Wood, 528 U.S. 549, 120 S.Ct.

12

1075, 1080, (2000); see also, In re Sumitomo Copper Litigation, 104 F.Supp.2d 314, 322 (S.D.N.Y. 2000).[5]

### C.    Plaintiff Has Properly Plead RICO Claims

To establish a RICO claim, a plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  See Sedima, S.P.R.L. v. Imrex, Co., Inc., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir.1994); Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F.Supp. 505, 511 (S.D.N.Y. 1990).

PSI alleges that Plaintiff has failed to state a RICO violation since he has not adequately pleaded (1) the specific provision of 18 U.S.C. § 1962 that PSI violated, (2) "two predicate acts, essential elements of any RICO action," (3) "a legally cognizable pattern of racketeering activity," (4) causation, and (5) a claim for RICO conspiracy.

### 1.    Plaintiff Specifically Alleges a Provision of Section 1962

The gravamen of PSI's argument is that it somehow has not been "adequately alert[ed]" to Plaintiff's RICO claims because Plaintiff has not specifically identified one of the four subsections upon which the Complaint is based. (PSI Br. at 16.)  18 U.S.C. §1962 contains four short subsections, a-d, and none of these subsections is further divided.  Contrary to PSI's allegation, Plaintiff specifies that Defendants violated subsection (c) of 18 U.S.C. § 1962. (Am. Cplt. ¶ 62).

---

[5] PSI's citations to Oboler v. Ins. Co. of North America, 194 WL 414438 (S.D.N.Y. 1994) and Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, 903 F.2d 176 (2d Cir. 1996) are irrelevant. Both cases dealt with the denial of class certification because not all of the elements of FRCP 23 had been met. Class certification is not before this Court.

Even if Plaintiff had not identified a specific sub-section, PSI's argument still fails. PSI relies on <u>Atlantic Gypsum Co. v. Lloyds Int'l Corp.</u> for the proposition that because Plaintiff has not specifically identified which one of the four subsections of Section 1962 was violated, the Court should find Plaintiff's pleadings deficient. In <u>Atlantic Gypsum</u>, the Court wrote:

> "[F]ailure to plead a specific subsection of §1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendant of the unlawful conduct in which they allegedly engaged. <u>Reynolds v. East Dyer Development Co.</u>, 852 F.2d 1249, 1251 (7th Cir. 1989). Because all plaintiffs' claims are dismissed under Rule 9(b), it is unnecessary to decide if their failure to properly plead a specific subsection ... also warrant[s] dismissal of the RICO counts.

<u>Id.</u> at 511 n. 4. <u>Reynolds</u>, cited in both <u>Atlantic Gypsum</u> and by PSI, does not help PSI. In <u>Reynolds</u>, the amended complaint was "woefully unclear about what the enterprise was, and about the defendants' conduct relating to the enterprise. For another, the amended complaint neglected to mention exactly what section of RICO the defendants allegedly violated." <u>Reynolds</u> at 1251. The <u>Reynolds</u> Court nevertheless found that plaintiff's lawsuit was pursuant to § 1962(c), but upheld the district court's dismissal of it given that the amended complaint was so poorly written that it warranted sanctions. <u>Id.</u> Here, even if Plaintiff had failed to identify a specific subsection, PSI's position is nonetheless untenable since it cannot seriously argue, and does not argue, that it is unaware of what Plaintiff is claiming, which is the basis of the <u>Atlantic Gypsum</u> and <u>Reynolds</u> decisions.[6]

---

[6] <u>Lesavoy v. Lane</u>, 304 F.Supp.2d 520 (S.D.N.Y. 2004), also cited by PSI, adds nothing to its argument. In <u>Lesavoy</u>, plaintiffs failed to comport with the heightened particularity requirements of FRCP 9(b). PSI does not claim plaintiff has failed in that requirement. As a result of the failure to comport with FRCP 9(b), the court dismissed the RICO claims "for failure to plead with the requisite particularity." <u>Id.</u> The court further noted that the complaint alleged that all four subparts of 18 U.S.C. § 1962 were transgressed, and "rarely can a defendant simultaneously violate all four." <u>Id.</u>

14

**2.    Plaintiff Has Pleaded At Least Two Predicate Acts**

Contrary to PSI's allegations, the amended complaint adequately pleads at least

two predicate acts based on PSI's participation in racketeering activities.  Plaintiff specifically

pleaded that PSI committed mail fraud:

> The letter dated September 22, 1999 from counsel for Prudential
> Securities to Leeds stating, among other things, that the "mediation
> process ... came to a grinding halt on August 1, 1999 because of your
> firm's [Leeds-Morelli] fees claim", that Leeds-Morelli had refused to
> proceed with the mediations until its claim for fees was resolved, and
> that the claims of Plaintiff and the other Class Members had been
> capped as a result of an agreement by Leeds-Morelli and Prudential
> Securities, with Leeds-Morelli attorneys referring to the claims of
> Plaintiff and the other Class Members as "'cap cases.'"

(Am. Cplt. ¶ 68(b)(5))

Plaintiff specifically pleaded multiple instances of wire fraud:

> (1) The aforementioned September 22, 1999 letter from counsel for
> Prudential Securities to Leeds which was sent via facsimile in addition
> to mail (Am. Cplt. ¶ 68(c)(1));
>
> (2) Vaughn's Settlement Agreement and General Release dated October
> 27, 1998 which was sent from the Prudential Securities Law
> Department via facsimile to Leeds-Morelli (Am. Cplt. ¶ 68(c)(2)); and
>
> (3) Numerous telephone conversations regarding the Secret Agreements
> by and between the Defendants in furtherance of the racketeering
> activities. (Am. Cplt. ¶ 68(c)(3)).

The elements of mail or wire fraud are (1) a scheme or artifice to defraud, (2) for

the purpose of obtaining money or property, <u>or of depriving another of the intangible right of

honest</u> services, and (3) the use of the mails or wires in furtherance of the scheme. <u>United States

v. Altman</u>, 48 F.3d 96, 101 (2d Cir.1995); <u>United States v. Trapilo</u>, 130 F.3d 547, 551 (2d

Cir.1997). As the <u>Trapilo</u> Court stated:

15

> "The thing which is condemned is (1) the forming of the scheme to
> defraud, however and in whatever form it may take, and (2) a use of
> mail and wire communications in its furtherance. If that is satisfied,
> nothing more is required." Id.

PSI's complaint, however, is not that the predicate acts of mail or wire fraud are not pleaded, but

rather that they do not meet the particularity requirement of FRCP 9(b). (PSI Br. at 17)

However, here Plaintiff has met the time and content requirements of Rule 9(b) in that the

Amended Complaint "(1) specif[ied] the statements that the plaintiff contends were fraudulent,

(2) identif[ied] the speaker, (3) state[d] where and when the statements were made, and (4)

explain[ed] why the statements were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d

1124, 1128 (2d Cir.1994) (internal citations omitted).[7]  PSI complains that Plaintiff has not

identified "a single false statement or actionable omission by Prudential, let alone allege facts

giving rise to an inference that the same were fraudulent." (PSI Br. at 17).

PSI's reliance that something it did must be false is wrong. As the court stated in

A. Terzi Production v. Theatrical Protect. Union, 2 F.Supp. 2d 485 (S.D.N.Y. 1998):

> The Supreme Court held in Schmuck v. United States, 489 U.S. 705, 714-
> 15, 109 S.Ct. 1443, 103 L.Ed2d 734 (1989) that to establish a "scheme to
> defraud," a defendant's mailings or wires need not themselves contain
> false or misleading statements, so long as they further an underlying
> scheme which itself has a fraudulent, deceptive purpose. The Court based
> its holding on the recognition that mailings could be perfectly innocuous,
> yet still perform a necessary component of a master plan to defraud. Id. at
> 714-15, 109 S.Ct. 1443 (upholding mail fraud violation where defendant's
> routine business mailings of title documents furthered fraudulent scheme
> to purchase used cars, roll back their odometers, and resell them to
> unwitting purchasers at artificially inflated prices based on low mileage
> reading); Spira v. Nick, 876 F.Supp. 553, 557-58 (S.D.N.Y. 1995)
> (allegations of embezzlement through deceptive tactics satisfied "scheme
> to defraud" element although complaint did not allege particular

---

[7] In any event, since most of the facts are to this day solely in the possession of the defendants, this is a case where
"it is particularly appropriate to ease the pleading burden under Rule 9(b) when information is within the exclusive
control of the defendant." ABF Capital Management v. Askin Capital Management, 957 F.Supp. 1308, 1327
(S.D.N.Y. 1997), citing Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir. 1974).

> fraudulent statements); In re Sumitomo Copper Litig., 995 F.Supp. 451,
> 453 (S.D.N.Y. 1998) (plaintiffs not required to allege that mailings or
> wire communications contained false or misleading information where
> Complaint set forth detailed allegations of how they furthered defendants'
> underlying scheme to manipulate copper prices in the market by making
> false statements to the market place and regulators).

Id. at 501, n.12.

Here, the September 22, 1999 letter from PSI's counsel and the sending of

Vaughn's Settlement Agreement clearly further the underlying scheme at issue in this action –

the secret pay-off of Plaintiff's attorneys in exchange for a cap on liability and the assurance that

the claims would never see the light of day in court. The complaint plainly apprises PSI of this,

comporting with the intention of Rule 9(b) to provide "defendant with fair notice of plaintiff's

claim." Shields at 1124.

> As another predicate act, Plaintiff pleads bribery:
>
> A pattern of racketeering activity involving commercial bribing and
> commercial bribe receiving in violation of New York Penal Law
> §180.03 and §180.08 as set forth above. The Secret Agreements
> provided for payments to Leeds-Morelli in excess of $1,000.00 and
> caused economic harm exceeding $250.00." (Am. Cplt. ¶ 68(d)).

Racketeering activity includes acts or threats involving bribery which are

chargeable under State law,[5] 18 U.S.C. § 1961(1)(A). PSI concedes that in New York,

commercial bribery and commercial bribe receiving qualify as predicate acts under RICO.

Instead, PSI argues that the bribery did not cause an injury to Plaintiff. Plaintiff's allegation is

that PSI bribed his attorneys, resulting in a sham settlement process with capped claims. How is

that not an injury to Plaintiff?

---

[5] Violations of commercial bribery and bribe receiving statutes. New York Penal Law §§ 180.03, 180.80.

17

PSI cites <u>Cougar Audio, Inc. v. Reich</u>, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y. 2000) in support of this "no injury" proposition, yet <u>Cougar</u> is not at all supportive. In <u>Cougar Audio</u>, the complaint alleged, in relevant part, that the defendant entered into a contract to purchase audio equipment from the plaintiff manufactured by a particular third party. The third party allegedly paid defendants an undisclosed sum for directing the manufacture of the audio equipment to it. The plaintiff alleged, without any factual basis, that these payments must have been passed on to it in the form of inflated prices, yet never alleged that it had any bearing on the ultimate value of the transaction. This assumption by plaintiff, without more was deemed speculative by the court. In other words, bribery was merely inferred.

Here, the allegation that PSI paid Leeds-Morelli what amounts to protection money is very different than a speculative inference of bribery based upon conjecture about a possibly inflated price in a contract. The Complaint, at minimum, alleges that the Secret Agreement(s) provided bribe payment(s) in exchange for, among other things, a cap on PSI's liability. The September 22, 1999 letter even references that cap. This is not speculative. It is in writing between the Defendants.[9]

### 3.   Plaintiff Has Pleaded a Pattern of Racketeering Activity Under RICO

In order to sufficiently allege a pattern of racketeering activity, a plaintiff must allege that defendants' acts "'amount to or pose a threat of continued criminal activity.'" <u>Cofacredit, S.A. v. Windsor Plumbing Supply Co.</u>, 187 F.3d 229, 242 (2d Cir. 1999), <u>citing H.J., Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989). "The continuity necessary to

---

[9] Neither does <u>United States v. Mittelstaedt</u>, 31 F.3d 1208 (2d Cir. 1994), also cited by PSI, lend it support. There, in a criminal case, the Second Circuit refused to affirm a mail fraud conviction where the theory underlying it -- that the alleged bribe inflated the cost of property to a town -- was not argued to the jury. <u>Id.</u> at 1220.

18

prove a pattern can be either "'closed-ended continuity,'" or "'open-ended continuity.'" <u>Id.</u>
Plaintiff has sufficiently alleged both.

### a.    Plaintiff has Sufficiently Alleged "Closed-Ended" Continuity

The Second Circuit has held that in order to establish closed-ended continuity a
plaintiff must show:

> 'a series of related predicates extending over a substantial period of
> time. Predicate acts extending over a few weeks or months ... do not
> satisfy this requirement ....    Although closed ended continuity is
> primarily a temporal concept, other factors such as the number and
> variety of predicate acts, the number of both participants and victims,
> and the presence of separate schemes are also relevant in determining
> whether closed-ended continuity exists.

<u>Id.</u> (internal citations omitted).

The temporal requirement does not exclude from RICO multiple acts of
racketeering "simply because they achieve their objective quickly or because they further but a
single scheme." <u>GICC Capital Corp. v. Technology Finance Group, Inc.</u>, 67 F.3d 463, 467 (2d
Cir. 1995). "Rather, a plaintiff must provide some basis for a court to conclude that defendants'
activities were "'neither isolated or sporadic.'" <u>Id.</u> Acts committed over a period of two years
meet this requirement. <u>Id.</u>

Plaintiff alleges acts that span at least from February 1998, when the first Secret
Agreement was executed, through at least October 2001 when Leed-Morelli reported that the
"mediation process" with PSI was still ongoing, some three and a half years.[10]  This is far
different than the situation in <u>Continental Realty Corporation v. J.C. Penney Company</u>, 729
F.Supp 1452 (S.D.N.Y. 1990), cited by PSI.

---

[10] Discovery will undoubtedly turn up evidence of hundreds of telephone calls and letters (mail and wire fraud) over
an even longer time period, given that the Defendants were dealing with hundreds of victims.

19

In <u>Continental Realty</u>, the RICO claim was based upon a single transaction, in which the plaintiff alleged that J.C. Penney falsely represented that it had received a competing bid from Home Depot for the purchase of property, thus causing plaintiff to raise its bid. Plaintiff also alleged that the defendants concealed information concerning marketable title in order to steer the sale to Home Depot. The alleged scheme lasted just over eight months. The court found that the defendants' actions were "narrowly directed toward a single allegedly fraudulent goal," "involved one victim," "one group of perpetrators," and "a limited goal (fraud and breach of contract in one real estate transaction)." <u>Id.</u> at 1455.

Here, the facts could not be more different. Plaintiff alleges a scheme stretching over at least three and a half years, broadly directed at 500 or more victims. PSI improperly argues that the scheme lasted only from February-October, 1998. That is not what is alleged in the complaint.[11]

PSI also cites <u>Mead v. Schaub</u>, 757 F.Supp. 319 (S.D.N.Y. 1991), for the proposition that continuity cannot be met where the scheme is terminable in nature. This proposition is incorrect. <u>See Continental Realty</u> at 1454 (plaintiff is no longer required to allege an ongoing scheme having no demonstrable ending point). The plaintiff in <u>Mead</u> simply alleged that the defendants fraudulently induced him to accept employment in order to capture his client bases – one narrow plan, one victim, and the solitary goal of defrauding one person. That is a far cry from this action.

---

[11] If the court were to accept PSI's eight month temporal argument, however, then PSI effectively concedes "open-ended continuity." Because PSI's temporal argument relies only upon the time period between the signing of the first Secret Agreement in February 1998 and Vaughn's execution of the Settlement Agreement in March 1998, then PSI leaves the door open to the threat of future racketeering activity as against the victims who settled their claims against PSI <u>after</u> Vaughn. <u>See</u> Section 3(b), <u>infra</u>.

20

b. **Plaintiff Has Sufficiently Alleged "Open-Ended Continuity"**

With respect to open-ended continuity, a plaintiff must allege "'past conduct that by its nature projects into the future with a threat of repetition ....'" GICC Capital Corp. at 465-466, citing H.J. Inc., 492 U.S. at 241-242. Where the enterprise "primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Cofacredit at 243. Here, plaintiff meets this test.

First, the enterprise itself -- consisting of PSI and the other defendants -- regularly operated to defraud Plaintiff and the other Class Members. That was the whole point of the enterprise. Under the above test, this alone is enough.

Second assuming the validity of PSI's argument that the alleged activity involved only Vaughn, then it follows that the illegal conduct was repeated numerous times thereafter. Vaughn's Settlement Agreement was executed in October, 1998. Many settlements were thereafter reached with the other victims. The scheme was still ongoing in October 2001. See, e.g. GICC Capital Corp. at 466 (noting that a series of fraudulent sales of securities, coupled with the fact that defendants were trying to continue to sell them, permitted a jury finding of a RICO pattern concerning open-ended continuity).

Third, the threat of future repetition is alleged in paragraph 34 of the Amended Complaint. It alleges that this scheme has been repeated numerous times, including with Prudential Insurance, PSI's parent. See, e.g., GICC Capital Corp. at 466 (noting that a one time mailing of 8,000 copies of fraudulent documents in connection with a condominium concession

21

plan was sufficient for open-ended continuity, since there was a basis to infer that similar mailings would occur in the future).

### 4.    Plaintiff Has Pleaded Causation

The Supreme Court has interpreted RICO to require a "direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Contrary to PSI's argument, there can be no other interpretation of causation between PSI's conduct and Plaintiff's injury because Plaintiff was the direct target of the Defendants' Secret Agreement(s) and therefore, the entire scheme. Plaintiff's injury could not be anything but foreseeable and intended by Defendants. PSI complains that Plaintiff does not plead the equivalent of "if I knew that PSI bribed my attorneys, I would have not hired them and not entered into the phony mediation process which resulted in the Settlement Agreement." The undisclosed agreement to cap PSI's liability to plaintiff and keep his claim out of court constitutes a loss to Plaintiff. PSI must certainly understand that is exactly the point of this action.

### 5.    Plaintiff Has Pleaded a Conspiracy Claim under section 1962(d)

PSI, citing Casio Computer Co. v. Sayo 2000 WL 1877516 at *15, argues that "[w]here no cause of action for substantive violations of RICO is stated, the RICO conspiracy claim cannot stand." (PSI Br. at 19)[12]    PSI, however, departs from the wrong premise for their argument since Plaintiff has adequately alleged the requisite elements for a RICO claim. Moreover, Casio states that in order to adequately distinguish a cause of action under Section

---

[12] PSI citation is in error. The correct Westlaw page is 23.

22

1962(d) from (c), "the complaint must allege a conscious agreement among all Defendants to commit at least two predicate acts." Id. at *22. As detailed above, it is the conscious agreement among all the Defendants that forms the basis of this action.

PSI additionally argues that Plaintiff has not asserted the nature of the agreement which forms the basis of the conspiracy. It relies only on paragraphs 71-72 of the Complaint. Paragraph 70, however, incorporates all of the prior allegations, including all of the alleged deficiencies—what the agreement was, who entered into it, what actions were taken in furtherance of it, etc. The whole point of incorporation by reference is to not be overly repetitive. PSI well knows the agreement was the "Secret Agreement(s)," that the "Secret Agreement(s)" amounted to the bribing of Plaintiff's counsel, and the acts in furtherance of the "Secret Agreement(s)," including the Settlement Agreement, are well-documented in the Complaint. There is no "separate flaw" in Plaintiff's allegation under section 1962(d). The RICO conspiracy allegation is much more than a "conclusory add-on at the end of a complaint."

IV.

## VAUGHN SHOULD BE PERMITTED TO AMEND HIS PLEADING IF THE COURT DEEMS HIS ALLEGATIONS TO BE INSUFFICIENT

If the Court finds that the allegations in Plaintiff's Amended Complaint are insufficient to set forth the claims sought to be dismissed by PSI, Mr. Vaughn requests that he be granted leave to amend his pleading to include any further allegations deemed necessary. "As a matter of procedure, when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted." Ricciuti, 941 F.2d at 123; see also Goodman v. New York City Off-Track Betting Corp., 1999

23

WL 269959, *11 (S.D.N.Y.), aff'd, 201 F.3d 431 (2d Cir. 1999 ("[I]t is the usual practice upon

granting a motion to dismiss to allow leave to replead.")(citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that PSI's Motion to

Dismiss the Amended Complaint be denied in its entirety.

Dated: New York, New York
       May 24, 2005

                                        LIDDLE & ROBINSON, L.L.P.

                                        By: _____

                                            Blaine H. Bortnick (BB 3686)
                                            Jeffrey L. Liddle (JL 8256)
                                            Attorneys for Plaintiff
                                            800 Third Avenue
                                            New York, New York 10022
                                            (212) 687-8500

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
JEFFREY S. VAUGHN, individually and on    :
behalf of those class members similarly   :
situated,                                 :
                                          :
                    Plaintiff,            :           04 Civ. 8391 (DLC)
                                          :
        -v-                               :           OPINION AND ORDER
                                          :
LEEDS, MORELLI & BROWN, P.C., LEEDS,      :
MORELLI & BROWN, L.L.P., LEEDS &          :
MORELLI, LEEDS, MORELLI & BROWN,          :
PRUDENTIAL SECURITIES, INC., PRUDENTIAL   :
FINANCIAL, INC., LENARD LEEDS, STEVEN     :
A. MORELLI, JEFFREY K. BROWN, and JOHN    :
DOES, JAMES VAGNINI, FREDERIC DAVID       :
OSTROVE, ROBERT JOHN VALLI, JR.,          :
DISCRIMINATION ON WALL STREET, INC. and   :
DISCRIMINATION ON WALL STREET             :
MANHATTAN, INC., and JOHN DOES, ESQS.     :
1-10 and JANE DOES, ESQS., 1-10 a         :
fictitious designation for presently     :
and unknown licensed attorneys,           :
professionals and/or unknown persons or   :
entities,                                 :
                                          :
                    Defendants.           :
                                          :
------------------------------------------X

Appearances:

For the Plaintiff:

Blaine H. Bortnick
Jeffrey Liddle
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York  10022


For Defendants Leeds, Morelli & Brown,
P.C., Leeds, Morelli & Brown, L.L.P.,
Leeds & Morelli, Leeds, Morelli &
Brown, Lenard Leeds, Steven A. Morelli,
Jeffrey K. Brown, James Vagnini,
Frederic David Ostrove, and Robert John
Valli, Jr.:

Daniel T. Hughes
Kevin L. Spagnoli
Litchfield Cavo LLP
420 Lexington Avenue, Suite 1750
New York, New York  10170


For Defendant Prudential Securities,
Inc. and Prudential Financial, Inc.:

Gerard E. Harper
Theodore V. Wells, Jr.
Beth S. Frank
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
1285 Avenue of the Americas
New York, New York  10019


DENISE COTE, District Judge:

The plaintiff, Jeffrey S. Vaughn ("Vaughn"), has brought
this putative class action against his employer and the lawyers
he retained to represent him in an employment discrimination
dispute against his employer, alleging that the settlement
agreement that resolved the dispute (the "Agreement") was a
product of secret collusion between his employer and his lawyers.
The defendants have moved to dismiss this action and to compel
arbitration, relying on an arbitration provision in the
Agreement.  Vaughn contends that the arbitration provision does
not control, because the arbitration rules provided for in the
Agreement do not permit class actions, and his lawyers are not
parties to the Agreement.  For the following reasons, the motion
to compel arbitration is granted and the case is stayed until the
resolution of the arbitration proceedings.

2

**BACKGROUND**

The following facts are taken from Vaughn's amended
complaint unless otherwise noted.  In 1998, Vaughn retained
lawyers from Leeds, Morelli & Brown, P.C. (collectively "Leeds
Defendants"), to assert employment discrimination claims against
his employer, Prudential Securities Incorporated, for which
Prudential Financial Inc. is a successor in interest
(collectively "Prudential Defendants").  Vaughn pursued these
claims through alternative dispute resolution procedures
including mediation.  The dispute between Vaughn and the
Prudential Defendants produced the Agreement dated October 27,
1998.  The Agreement, which is incorporated by reference in the
Complaint and on which Vaughn has relied in part in bringing this
action, granted the Prudential Defendants a general release of
claims in exchange for $200,000.00.  The Agreement also contains
the following arbitration provision:

> <u>Any claim or controversy arising out of or related to
> this Agreement or the interpretation thereof</u> will be
> settled by arbitration under the then prevailing
> constitution and rules of the New York Stock Exchange,
> Inc., or the National Association of Securities
> Dealers, Inc.  Judgment based upon the decision of the
> arbitrators may be entered in any court having
> jurisdiction thereof.  The governing law of this
> Agreement shall be the substantive and procedural law
> of the State of New York.

(Emphasis supplied.)

Vaughn alleges that the Leeds Defendants and Prudential
Defendants had a "secret agreement" dated February 13, 1998 that
was part of an employment discrimination dispute resolution
system that the Leeds Defendants had established, and that would

3

enable the Prudential Defendants to cap damages paid to various plaintiffs and settle numerous claims with plaintiffs represented by the Leeds Defendants at one time with a lump sum payment while providing direct payment of attorney's fees to the Leeds Defendants.  Vaughn claims that he only learned of the existence of the secret agreement in or about October 2004.  He initiated this action on October 25, 2004, and filed an amended complaint ("Complaint") on March 15, 2005.

Vaughn has styled this action as a class action based on his allegation that hundreds of other Prudential employees with discrimination claims against the company were adversely affected by collusion between the Leeds Defendants and the Prudential Defendants based on this or other secret agreements.  Vaughn asserts claims for common law fraud, conspiracy to defraud, aiding and abetting fraud, tortious interference with a contract, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Racketeer Influenced Corrupt Organization Act ("RICO").

The Prudential Defendants and the Leeds Defendants both have filed motions to dismiss or to compel arbitration.  The Prudential Defendants contend that because the Agreement contains an arbitration provision, this matter should be referred to arbitration, and that this Court does not have subject matter jurisdiction because the only mechanism conferring federal question jurisdiction is the RICO claim, which the Prudential Defendants argue is time-barred and insufficiently pleaded.  The Leeds Defendants advance similar arguments, and add, among other

4

things, that the arbitration clause equitably estops Vaughn from pursuing his claims in federal court notwithstanding the fact that the Leeds Defendants are not parties to the Agreement. Vaughn argues among other things that because the arbitration rules provided for in the Agreement do not permit class actions, and he has styled his claim as a class action, this matter should not be referred to arbitration.

### DISCUSSION

#### 1. The Prudential Defendants

The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985). The FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted). Therefore, "under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The FAA requires that a contract provision to arbitrate disputes arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Under the FAA, unless parties have unambiguously provided

exception" because it involves "neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." Id. Thus, in a case where an arbitration clause provided that the parties "agreed to submit to the arbitrator '[a]ll disputes, claims, or controversies arising from or relating to this contract,'" the Supreme Court held that a dispute about whether the arbitration clause "forbids the use of class arbitration procedures . . . is a dispute 'relating to this contract.'" Id. at 451 (emphasis in original).[1] In such a case, it was apparent that the parties "agreed that an arbitrator, not a judge, would answer the relevant question." Id. at 452.

The arbitration clause in the Agreement contains "sweeping language concerning the scope of the questions committed to arbitration," id. at 453, as it commits to arbitration "[a]ny claim or controversy arising out of or related to this Agreement or the interpretation thereof." (Emphasis supplied.) Vaughn claims that because the arbitration clause states that the contemplated arbitration will use the "rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.," and those rules do not permit class action arbitrations, the parties could not have intended that the class action he now brings would be arbitrated. This interpretation,

---

[1] In Bazzle, an issue was whether arbitration clause language providing that disputes "shall be resolved . . . by one arbitrator selected by us [Green Tree] with consent of you [Green Tree's customer]" forbade class action arbitrations because the "consent of you" language was arguably inconsistent with multiple claimants. Bazzle, 539 U.S. at 450.

7

however, contradicts the clear statement that the arbitration
clause applies to "any" claim or controversy related to the
Agreement.  Even assuming that Vaughn is right, and the
applicable arbitration rules do, indeed, forbid class action
arbitrations under all circumstances, it would be plausible to
interpret the arbitration clause to require all claims to be
arbitrated and to disallow class actions with no further
qualifications or caveats.  Here, as in Bazzle, the question is
"not whether the parties wanted a judge or an arbitrator to
decide <u>whether they agreed to arbitrate a matter</u>," but rather
"what <u>kind of arbitration proceeding</u> the parties agreed to."
Bazzle, 539 U.S. at 452 (emphasis in original).  This question
"concerns contract interpretation and arbitration procedures,"
and is therefore "for the arbitrator, not the courts, to decide."
Id. at 453.  The Prudential Defendants' motion to compel
arbitration is accordingly granted.[2]


2.  The Leeds Defendants

The common law doctrine of estoppel may bind a nonsignatory
to an arbitration agreement.  JLM Indus., 387 F.3d at 177.  See
also Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,

---

[2]  The defendants argue that the Complaint fails to state a
claim for a RICO violation, and therefore, there is no basis for
federal subject matter jurisdiction.  Because the Complaint has a
RICO claim that on its face is "neither clearly immaterial and
made solely for the purpose of obtaining jurisdiction nor wholly
insubstantial and frivolous," Lyndonville Sav. Bank & Trust Co.
v. Lussier, 211 F.3d 697, 701 (2d Cir. 2000), there is subject
matter jurisdiction over this action as of now.

271 F.3d 403, 404, 406 (2d Cir. 2001); Thomson-CSF, S.A. v. Am.

Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995); Camferdam v.

Ernst & Young Int'l, Inc., No. 02 Civ. 10100 (BSJ), 2004 WL

307292, at *6 (S.D.N.Y. Feb. 13, 2004).

> [U]nder principles of estoppel, a non-signatory to an
> arbitration agreement may compel a signatory to that
> agreement to arbitrate a dispute where a careful review
> of the relationship among the parties, the contracts
> they signed, and the issues that had arisen among them
> discloses that the issues the nonsignatory is seeking
> to resolve in arbitration are intertwined with the
> agreement that the estopped party has signed.

JLM Indus., 387 F.3d at 177 (citation omitted) (emphasis

supplied). See also Denney v. BDO Seidman, L.L.P., 412 F.3d 58,

70 (2d Cir. 2005); Contec, 398 F.3d at 209; Choctaw, 271 F.3d at

406.

    The Leeds Defendants argue that under this standard, they

may compel Vaughn to arbitrate his claims against them, because

he alleges a close relationship, in the form of a conspiracy,

between both sets of defendants, and because the claims Vaughn

raises against the Leeds Defendants are intertwined with the

Agreement.  Vaughn concedes that his claims against the Leeds

Defendants are related to the Agreement, but argues that the

relationship between the Leeds Defendants and the Prudential

Defendants was not close enough to warrant estoppel in this case,

because they did not have a relationship with each other

independent of Vaughn's alleged conspiracy.

    Vaughn's argument misconstrues the governing legal standard.

The Second Circuit has held that a claim against an alleged co-

conspirator may not "always be intertwined to a degree sufficient

9

to work an estoppel," and that "[t]he inquiry remains a fact-specific one." JLM Indus., 387 F.3d at 178 n.7 (emphasis supplied). Nonetheless, "[a]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Denney, 412 F.3d at 70 (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). In a putative class action where the plaintiff taxpayers accused an accounting firm and a bank, among others, of conspiring to lure them into participating in unlawful tax shelter schemes, and the plaintiffs had an arbitration agreement with the accounting firm but not the bank, the Second Circuit held:

> Having alleged in this RICO action that the [nonsignatory bank] and [signatory accounting firm] defendants acted in concert to defraud plaintiffs, and that defendants' fraud arose in connection with [the accounting firm's] tax-strategy advice, plaintiffs cannot now escape the consequences of those allegations by arguing that the [bank] and [accounting firm] defendants lack the requisite close relationship, or that plaintiffs' claims against the [bank] defendants are not connected to [the bank's] relationship with the accounting firm].

Denney, 412 F.3d at 70 (citation omitted). Vaughn's basic premise that Second Circuit precedent requires that the defendants have a close relationship independent of the alleged conspiracy is consequently incorrect.[3]

---

[3] To the extent that Vaughn cites district court opinions that predate Denney for the proposition that a close relationship independent of the alleged conspiracy is required for a "close relationship," this Court respectfully declines to follow them.

10

Vaughn contends that the Leeds Defendants had a complex scheme to settle employment discrimination claims _en masse_, and that this scheme involved capping liability for employers such as the Prudential Defendants in exchange for direct payment of attorney's fees by the employers.  He alleges that his employment discrimination claim was swept up by this scheme because the Leeds Defendants had a comprehensive, secret agreement with the Prudential Defendants to process his claim, among others, and that this agreement adversely affected the settlement of his claim.  These allegations of civil RICO conspiracy involve close cooperation and collusion between Vaughn's employer and his lawyers.  This theory of liability has been described elsewhere as one that "can only succeed" if the plaintiff proves his "allegation that all Defendants conspired and acted together." _Camferdam_, 2004 WL 307292, at *7.[4]  Vaughn therefore alleges precisely the type of "substantially interdependent and concerted misconduct" that estops him from avoiding arbitration of his claims with the Leeds Defendants.  _Denney_, 412 F.3d at 70

---

See _In re Currency Conversion Fee Antitrust Litig._, 361 F. Supp. 2d 237, 264 (S.D.N.Y. 2005); _Orange Chicken, LLC v. Nambe Mills, Inc._, No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *5 (S.D.N.Y. Dec. 19, 2000).

[4]  In _Camferdam_, where the district court required taxpayers who had arbitration agreements with an accounting firm, and who were suing the accounting firm and a nonsignatory law firm for conspiring to create unlawful tax shelters on the taxpayers' behalf, to arbitrate claims against the law firm, the court also noted that the complaint alleged a "close relationship" between the entities involved, because "[a] civil conspiracy is a kind of partnership, in which each member becomes the agent of the other." _Camferdam_, 2004 WL 307292, at *6 (citation omitted).

11

(citation omitted). The Leeds Defendants' motion to compel
arbitration is therefore granted.

## CONCLUSION

The defendants' motions to compel arbitration are granted.
The case is stayed until the resolution of the arbitration
proceedings and is transferred to the Court's suspense docket.

SO ORDERED:

Dated:    New York, New York
          August 12, 2005

                                  _____
                                       DENISE COTE
                            United States District Judge

12

# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE

NEW YORK, N.Y. 10022

(212) 587-8500

FACSIMILE: (212) 587-1508

www.liddlerobinson.com

SAMUEL FINKELSTEIN (1908-1996)
MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

AFFILIATE OFFICES:
THE LAW OFFICES OF JAMES R. HUBBARD
11200 U.S. HIGHWAY ONE, SUITE 305
NORTH PALM BEACH, FL 33408
(561) 615-8100
E-MAIL : JJliddle@liddlerobinson.com

ROBERT B. CLEMENTE
OF COUNSEL

DAVID MAREK
CANDACE M. ABIUTORI
LEILA I. NOOR
JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ALYSON C. BRUNS
LISA D. SIDMAN*

*AWAITING ADMISSION

October 28, 2005

Karen Kupersmith, Esq.
Director of Arbitration
New York Stock Exchange, Inc.
20 Broad Street
New York, NY 10005

Re:  Jeffrey S. Vaughn, individually and on behalf of those class members
similarly situated v. Leeds, Morelli & Brown, P.C., Leeds, Morelli &
Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown, Prudential
Securities, Inc., Prudential Financial, Inc., Lenard Leeds, Steven A.
Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove,
Robert John Valli, Jr., DISCRIMINATION ON WALL STREET, INC.,
DISCRIMINATION ON WALL STREET MANHATTAN, INC., and
JOHN DOES, 1-10 and JANE DOES, 1-10 a fictitious designation for
presently and unknown licensed attorneys, professionals and/or unknown
persons or entities

Dear Ms. Kupersmith:

We represent the claimant, Jeffrey S. Vaughn ("Vaughn"), and submit this matter
pursuant to Rule 600(d)(ii) of the Arbitration Rules of the New York Stock Exchange, Inc. and
the Opinion and Order of the Hon. Denise Cote, U.S. District Judge (S.D.N.Y.) dated August 12,
2005 (Exhibit A) compelling submission to arbitration the issue of whether the underlying claims
may be pursued as a class action in court. Accordingly, Vaughn seeks an expedited hearing
before an arbitration panel for an order and decision granting Vaughn leave to return to court to
pursue his class action claims, notwithstanding the arbitration provision providing for arbitration
under the rules of the New York Stock Exchange.

LIDDLE & ROBINSON, L.L.P.

Karen Kupersmith, Esq.                    -2-                    October 28, 2005

        Vaughn brought a putative class action in the United States District Court for the Southern District of New York against his employer and the lawyers he retained to represent him in an employment discrimination dispute against his employer.  In his amended complaint Vaughn alleges that the settlement agreement ("Settlement Agreement") that resolved his dispute was a product of secret collusion between his employer and his lawyers.  (Exhibit B -- Amended Complaint)

        The Defendants moved to dismiss and compel arbitration pursuant to the provisions of the Settlement Agreement.  Vaughn objected, contending that the arbitration provision does not control, because the arbitration rules provided for in the Settlement Agreement (NYSE and NASD) do not permit class actions, and his lawyers are not parties to the Agreement.

        In her decision, Judge Cote reasoned that, under <u>Green Tree Fin. Corp. v. Bazzle</u>, 53 9 U.S. 444 (2003), the Court was limited to determining certain gateway matters, such as whether the parties have a valid arbitration agreement or whether the arbitration clause applies to the controversy.  The Court concluded that the question of whether the arbitration provision applies to an action brought as a class action is a matter for the arbitrators to decide.

        The Court further held that, under the principles of estoppel, the Leeds defendants, as non-signatories to the Settlement Agreement, could compel arbitration of Vaughn's claims.  The Court based its decision on the fact that the issues sought to be resolved are intertwined with the Settlement Agreement.

        Accordingly, Vaughn submits this matter to the arbitrators to decide, taking into account the purpose and intent of Rule 600(d), whether Vaughn may pursue his class action claims in court.  The arbitration provision of the Settlement Agreement, by virtue of the fact that it provided for arbitration only under the rules of the NYSE or NASD, demonstrates the intent of the parties that the arbitration provision <u>not</u> apply to claims "encompassed by a putative or certified class action."

        The NYSE, following an amendment to the Uniform Code of Arbitration ("UCA") adopted by the Securities Industry Conference of Arbitration ("SICA"), amended its arbitration rules in 1995 to include Rule 600(d), "Class Actions."  The Rule provides:

        (i)     A claim submitted as a class action shall <u>not</u> be eligible for arbitration under the Rules of the New York Stock Exchange, Inc.

        (ii)    Any claim filed by a member or members of a putative or certified class action is also <u>ineligible for arbitration at the New York Stock Exchange, Inc. if the claim is encompassed by a putative or certified class action filed in federal or state court</u>,

LIDDLE & ROBINSON, L.L.P.

Karen Kupersmith, Esq.                    -3-                    October 28, 2005

>    or is ordered by a court to a non SRO arbitration forum for class-
>    wide arbitration....

NYSE Rule 600(d)(i-ii) (emphasis added).[1]

Moreover, in direct violation of NYSE Rules, the respondents have sought to enforce the arbitration clause contained in Vaughn's Settlement Agreement. In that regard, the NYSE Rules provide:

>    (iii)    No member, allied member, member organization and/or
>             associated person shall seek to enforce any agreement to
>             arbitrate against a customer, member, allied member,
>             member organization and/or associated person that has
>             initiated in court a putative class action or is a member of a
>             putative or certified class with respect to any claims encompassed
>             by the class action....

NYSE Rule 600(d)(iii)(emphasis added).[2]

The clear intent of SICA and the NYSE was to preserve the right for parties, including members, associated persons and investors, to pursue class action claims in court. In fact, in approving the adoption of NYSE Rule 600(d), the SEC stated:

>    Over the years, the courts have developed procedures and expertise for
>    managing class action litigation and duplicating the often complex
>    procedural safeguards necessary for these lawsuits is unnecessary. In
>    addition, access to the courts for class action litigation should be
>    preserved for claims filed by members, allied members, member
>    organizations, and associated persons against other members, allied
>    members, member organization, and associated persons, as well as for
>    claims involving investors. Hence, this rule change should provide a
>    sound procedure for the management of class action disputes, should
>    promote the efficient resolution of these types of class action disputes and
>    should prevent wasteful litigation over the possible applicability of
>    agreements to arbitrate between members, allied members, member
>    organization, and associated persons, notwithstanding the exclusion of
>    class actions from NYSE arbitration.[3]

---

[1] NASD Code of Arbitration Procedure Rule 10501(d) is virtually identical.

[2] Again, NASD Code of Arbitration Procedure Rule 10301(d) is virtually identical.

[3] SEC Release No. 34-36222; File No. SE-NYSE-95-25 (September 13, 1995) 60 F.R. 181 at page 48576 (September 19, 1995) (Attached as Exhibit C).

LIDDLE & ROBINSON, L.L.P.

Karen Kupersmith, Esq.                    -4-                    October 28, 2005

It was the clear intent and purpose of the NYSE in adopting Rule 600(d) to preserve a party's right to proceed in court with class action claims and that such claims were not waived by virtue of a provision to arbitrate "any claim or controversy." It was not the intent of the NYSE or the SEC that a party would be precluded from bringing a class action claim in court by virtue of the dispute being within those which may be subject to an arbitration agreement. On the contrary, the rule was intended to prevent a party from using the agreement to arbitrate as a vehicle to preclude class actions.

Accordingly, Vaughn respectfully requests that the arbitrators issue an order and decision declaring that Vaughn may pursue his class action claims against respondents in court. Vaughn further seeks reimbursement of his filing fee, hearing deposit as well as costs and attorneys' fees incurred in bringing this action, especially given respondents violation of NYSE rules in attempting to compel arbitration.

Respectfully submitted,

Jeffrey L. Liddle

JLL/dlw

New York Stock Exchange, Inc.
20 Broad Street
New York, NY 10005

 **NYSE**

November 3, 2005

Blaine Bortnick, Esq.
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York 10022

Dear Mr. Bortnick:

This will confirm our conversation on October 31, 2005 wherein I advised you that the NYSE, Inc. does not have jurisdiction over Leeds, Morelli & Brown, P.C., Morelli & Brown, L.L. P., Leeds & Morelli, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, Robert John Valli, Jr., Discrimination on Wall Street, Inc., Discrimination on Wall Street Manhattan, Inc.

Pursuant to NYSE Rule 600(a), only claims between a customer or non-member and member, allied member, member organization and/or associated person shall be arbitrated under the Constituiton and Rules of the New York Stock Exchange, Inc., regardless of whether the entities or individuals have submitted to jurisdiction.

Accordingly, I am returning your submission and $30.00 check. You may re-submit your claim if only Prudential Securities, Inc. is named as a party.

Sincerely,

Harry Albirt

HA/jmh
Enclosure

# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE
NEW YORK, N.Y. 10022

(212) 687-8500
FACSIMILE: (212) 687-1505
www.liddlerobinson.com

E-mail: bbortnick@liddlerobinson.com

SAMUEL FINKELSTEIN (1906-1996)
MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

ROBERT S. CLEMENTE
OF COUNSEL

DAVID MAREK
LEILA I. NOOR
JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ALYSON C. BRUNS
LISA O. SIDMAN

December 7 2005

The Hon. Denise Cote
United States District Court
Southern District of New York
500 Pearl Street
Room 1040
New York, NY 10007

   Re: Vaughn v. Leeds, Morelli & Brown, et al.;
     04 Civ. 8391(DLC)

Dear Judge Cote:

   We represent the Plaintiff, Jeffrey Vaughn, in the above–referenced action. We write with respect to the stay in favor of arbitration which this Court ordered on August 12, 2005.

   Your Honor may recall that this case is a putative class action on behalf of certain former employees of Prudential Securities, Inc. who entered into settlement agreements with their employer concerning alleged violations of racial discrimination laws. The action alleges, at heart, that the settlement agreements were the product of secret collusion between Prudential Securities and Mr. Vaughn's attorneys.

   On August 12, 2005, the Court, in response to motions to dismiss filed by the defendants, stayed this matter in favor of arbitration over plaintiff's objection that this matter was ineligible for arbitration. A copy of this Court's Order is annexed hereto as Exhibit A. We subsequently filed an arbitration claim against all defendants with the New York Stock Exchange, Inc. ("NYSE"). On November 3, 2005, the NYSE rejected the arbitration claim, stating that under the NYSE rules the claim is not eligible for arbitration, regardless of whether the entities or individuals submit to its jurisdiction. A copy of the NYSE letter rejecting the arbitration is annexed

LIDDLE & ROBINSON, L.L.P.

The Hon. Denise Cote                    2                    December 7, 2005

hereto as Exhibit B. Accordingly, we respectfully submit that the stay previously issued by this Court should be lifted and that the court action continue.

We respectfully suggest that it would be appropriate for the Court to hold a conference to further discuss this issue.

Respectfully submitted,

By: _____
Blaine H. Bortnick (BB 3686)

BHB:cs
Enclosures

cc:    Gerald E. Harper, Esq. (via facsimile / 212-373-2225)
       Daniel T. Hughes, Esq. (via facsimile / 212-434-0105)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS          NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000                                    FACSIMILE (212) 757-3990

GERARD E. HARPER

TELEPHONE (212) 373-0263
FACSIMILE (212) 492-0263
E-MAIL:gharper@paulweiss.com


(212) 373-3263

(212) 373-2225

gharper@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650


December 13, 2005


**BY HAND**

Hon. Denise Cote
United States District Court
Southern District of New York
Room 1040
500 Pearl Street
New York, NY 10007

*Vaughn v. Leeds, Morelli & Brown, et al.*
04 Civ. 8391 (DLC)

Dear Judge Cote:

Together with Lowenstein Sandler LLP, this firm represents Prudential Securities Inc. ("PSI") in the matter to which I refer above. On August 12, 2005, this Court granted PSI's motion to compel arbitration, stayed the action pending the same, and transferred the action to the Court's suspense docket. By letter dated December 7, 2005, plaintiff asks this Court to revisit that ruling based on a letter from the New York Stock Exchange supposedly rejecting plaintiff's effort to commence an arbitration there.

Plaintiff's request "to further discuss this issue" with the Court should be rejected.

Plaintiff's December 7 letter says that, at some unidentified time subsequent to this Court's ruling, plaintiff filed an arbitration demand against PSI and the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Hon. Denise Cote                                                                                           2

other defendants with the NYSE. Plaintiff says that, over a month ago, following a telephone conversation between plaintiff's counsel and the NYSE, the NYSE advised plaintiff that it lacked jurisdiction over the arbitration because plaintiff had named as parties certain defendants – the so-called Leeds Defendants – who are not members of the NYSE. We were unaware of this arbitration demand until receipt of a copy of plaintiff's letter to the Court. In our experience, the NYSE ordinarily forwards a copy of any such demand to respondents before any rulings are made. This did not happen here. When upon receipt of the December 7 letter I asked plaintiff's counsel for a copy of the arbitration demand he initially promised only to take the request "under advisement." He has since told me I may have it. As of the writing of this letter, however, I have not yet seen the demand that the NYSE supposedly rejected, in consequence of which plaintiff now wants further "discussion."

        Nonetheless, under the present circumstances, no such further discussion is needed. The NYSE is only one of two fora mentioned in the arbitration clause enforced by this Court. The other is the National Association of Securities Dealers, or "NASD." The NASD has orally confirmed to us what we already knew: that the NASD regularly hears matters in which non-members are parties. Specifically, the NASD takes jurisdiction over a dispute involving both members and non-members, particularly when the non-member signs a Uniform Submission Agreement. *See, e.g. In the Matter of the Arbitration between Silverberg v. Asset Mgmt Sec. Corp.*, 2005 WL 449042 (N.A.S.D.). I am advised by their counsel that the Leeds Defendants are prepared to submit to the jurisdiction of the NASD. Hence, plaintiff is free to file his demand with the NASD and the matter may proceed consistent with this Court's ruling of August 12.

        Even if the NASD were not available, plaintiff cannot defeat PSI's contractual right to arbitration simply by adding parties over which the contractually-stipulated forum lacks jurisdiction. As the November 3, 2005 letter from the NYSE enclosed with plaintiff's December 7 letter makes clear, plaintiff is free, if plaintiff wishes, to file its arbitration demand with the NYSE against only PSI. Plaintiff chose not to do so. That is no reason to deprive PSI of its right to arbitrate.

        Furthermore, even if the NYSE and NASD no longer existed, plaintiff's sole remedy is reform of the arbitration clause, not escape from arbitration. As we noted in our reply memorandum in support of the motion to compel (at p. 5 n.4), both federal and New York law hold that, if an arbitration clause provides a procedure for arbitration that later proves unworkable, the court must nevertheless enforce the arbitration clause while remedying the flawed procedure. *Erving v. Virginia Squares Basketball Club*, 468 F.2d 1064 (2d Cir. 1972); *Morris v. New York Football Giants, Inc.*, 150 Misc.2d 271, 278, 575 N.Y.S.2d 1013, 1017 (Sup. Ct. NY Cty. 1991). Here, if (contrary to fact) the contractually-stipulated forum is unavailable, then the remedy is to send plaintiff to a reputable arbitral alternative, such as the American Arbitration Association, not to allow him to break his promise to arbitrate. *See Lubowiecki v. Ernst & Young U.S. LLP*, 2005 WL 339785 (N.J. Super. A.D. Dec. 8, 2005) (upholding order that proper remedy for

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Hon. Denise Cote                                                              3

objection to an arbitral forum is judicial designation of an alternate arbitral forum such as
AAA).

      In sum, I respectfully submit that there is no need for a conference with
the Court. Plaintiff has a forum available to it to which he is free to resort today.

      Respectfully yours,

      Gerard E. Harper

cc:    Blaine H. Bortnick, Esq. (by email and hard copy)
      Daniel T. Hughes, Esq. (by email and hard copy)

# LITCHFIELD
## CAVO LLP
Attorneys at Law

WRITER'S ADDRESS:
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 434-0102
(212) 434-0105 fax
email: hughes@litchfieldcavo.com

December 14, 2005

**BY HAND**

Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007-0112

     Re:    Vaughn v. Leeds, Morelli & Brown, P.C. et al.
            04 Civ. 8391 (DLC)

Dear Judge Cote:

As you know, this firm represents the defendant, Leeds, Morelli & Brown, LLP and individual lawyers associated with that firm (collectively "the Leeds defendants") in connection with the above-referenced matter. This letter is sent in response to the letter dated December 7, 2005 of Blaine H. Bortnick of the firm Liddle & Robinson, L.L.P. to your Honor.

You will recall that the defendant, Prudential Securities, Inc. ("PSI") previously moved to compel arbitration based upon the arbitration clause contained in the Settlement Agreement and General Release signed by plaintiff, Vaughn. The Leeds defendants moved, as well, to compel arbitration based upon an estoppel theory where, as here, the claim is intertwined with the agreement containing the arbitration clause and insofar as plaintiff alleged concerted misconduct. Your Honor granted the motion to compel arbitration as to both defendants by decision dated August 12, 2005.

The arbitration clause in the subject Settlement Agreement and General Release designated either the New York Stock Exchange (NYSE) or the National Association of Securities Dealers (NASD) as the arbitral bodies to resolve the dispute.

Four months elapsed and defendants had heard nothing from plaintiff's counsel and received no statement of claim in arbitration. However, last week, counsel for Vaughn corresponded to this Court to advise that the NYSE had sua sponte declined to exercise jurisdiction over claims against the Leeds defendants and that, therefore, the stay should be lifted and the matter be litigated as against all defendants.

Chicago • Hartford • Boston • New York • New Jersey • Tampa • Milwaukee

www.litchfieldcavo.com

**LITCHFIELD**
<u>CAVO</u> LLP
Attorneys at Law

Page 2

Not only has counsel failed to supply this Court or the defendants with a copy of the claim filed with the NYSE but his letter is notably silent as to why he never submitted the claim to the NASD, an alternate forum agreed to by the parties in the agreement.

Nevertheless, we have contacted the NASD, and as set forth on the attached Declaration of Shari Lewis, Esq., we were advised that there is no impediment to plaintiff's pursuit of his claims against <u>both</u> PSI and LM&B in an NASD arbitration.

Plaintiff's counsel, Liddle & Robinson, L.L.P., is a firm that has a substantial practice before the NASD and should, therefore, be familiar with the foregoing practice and policy. In fact, in October of this year, they secured a decision and the NASD exercised jurisdiction in arbitration against a non-member who neither executed a uniform submission agreement (agreeing to NASD jurisdiction), nor entered an agreement to arbitrate. <u>See In The Matter Of The Arbitration Between: Moshe Marc Cohen v. 1717 Capital Management Company and Nationwide Provident</u>, 2005 WL 3029051 (October 28, 2005) (copy enclosed).

In light of the NASD's willingness to arbitrate this dispute, there is no need for this Court's intervention or further expenditure of the resources of the Court and parties on this issue.

Very truly yours,

Daniel T. Hughes

DTH:bd
Enclosure
cc:    Blaine H. Bortnick, Esq.
       Gerard Harper, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

JEFFREY S. VAUGHN, individually and on behalf of
those class members similarly situated,

Index No. 04 Civ. 8391 (DLC)

Plaintiffs,

-against-

LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI
& BROWN, L.L.P., LEEDS & MORELLI, LEEDS,
MORELLI & BROWN, PRUDENTIAL SECURITIES,
INC., PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN,
and JOHN DOES, JAMES VAGNINI, FREDERIC
DAVID OSTROVE, ROBERT JOHN VALLI JR.,
DISCRIMINATION ON WALL STREET, INC. and
DISCRIMINATION ON WALL STREET
MANHATTAN, INC. and JOHN DOES, ESQS. 1-10 and
JANE DOES, ESQS. 1-10 a fictitious designation for
presently and unknown licensed attorneys, professionals
and/or unknown persons or entities,

**DECLARATION OF SHARI
CLAIRE LEWIS**

Defendants.

-------------------------------------------------------X

I, SHARI CLAIRE LEWIS, pursuant to 28 U.S.C. § 1746, hereby declare the following:

    1.    I am a partner in the law firm Rivkin Radler LLP. We are counsel for defendants,

Leeds Morelli & Brown P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli

& Brown, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David

Ostrove, and Robert John Valli, Jr. (collectively "Leeds Defendants") in other matters.

    2.    Litchfield Cavo LLP, counsel of record for the Leeds defendants herein, received

a letter from plaintiff's counsel to the Court stating that the New York Stock Exchange

("NYSE") declined to exercise jurisdiction over the plaintiff's claims against the Leeds

defendant. The Leeds defendants have not heretofore been provided with a copy of plaintiff's

submission to NYSE nor are they privy to the telephone conversation referred to in plaintiff's counsel's letter.

3.     In any event, the plaintiff's counsel's letter conspicuously made no mention of whether the National Association of Securities Dealers, Inc. ("NASD") would entertain jurisdiction, despite the fact that the NASD was also a forum selected by the parties in the arbitration clause at issue.

4.     Therefore, on December 12, 2005, I telephoned the office of NASD Chief Counsel, Jean Feeney, whose phone number is listed as the proper contact for "Arbitration Rule Questions" at the NASD website: http://www.nasd.com.

5.     Although Ms. Feeney was unavailable, I left a message explaining that we had a question regarding the ability of the NASD Dispute Resolution program to hear an arbitration brought by an ex-employee of a member against an NASD member and non-member who is alleged to have acted in concert.

6.     On December 12, 2005 and December 13, 2005 I spoke with John Nachmann, Esq. of the NASD.  I stated that we had a claim between an ex-employee of a member against an NASD member and a non-member law firm, who are alleged to have acted in concert (conspired) in connection with the settlement of an employment discrimination claim.  I advised him that there was a Federal Court Order directing that the claim be arbitrated pursuant to the agreement between the ex-employee and member and that the agreement designated the NASD as a proper forum for arbitration of the dispute.  I also advised Mr. Nachmann that the Court ordered the claims against the law firm to proceed to arbitration, despite the fact that the law firm was not a signatory to the agreement, under the estoppel/intertwining doctrine.

7.     Based upon these facts, I asked Mr. Nachmann whether there was any impediment to NASD Dispute Resolution's program hearing the arbitration.  At the outset, Mr.

2

Nachmann stated that any decision to deny use of the facility would only occur after the issue had been briefed by both sides and a hearing conducted. He also advised that the circumstance we were discussing was apparently not unusual and that under Rule 10101 of the NASD's Rules for Arbitration, as long as there is an associated person, a member, or a customer on both sides of the claim, the NASD can hear the entire controversy, including the non-member claim.

8.      There is no dispute that defendant Prudential Securities, Inc. is a NASD member and that its ex-employee, plaintiff Vaughn, is therefore an "associated person", as defined by the NASD.

9.      Accordingly, there appears to be no impediment to the use of the NASD Dispute Resolution facility for arbitration as compelled by this Court's Order of August 12, 2005.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: Uniondale, New York
        December 13, 2005

Sheri Claire Lewis (SCL-0527)

1506479 v2

3

Westlaw Attached Printing Summary Report for SPAGNOLI,KEVIN 5233453

| | |
|---|---|
| Date/Time of Request: | Wednesday, December 14, 2005 13:01:00 Central |
| Client Identifier: | 2635-2 |
| Database: | NASD-ARB |
| Citation Text: | 2005 WL 3029051 (N.A.S.D.) |
| Lines: | 195 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

2005 WL 3029051 (N.A.S.D.)

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))

National Association of Securities Dealers, Inc.

*1 IN THE MATTER OF THE ARBITRATION BETWEEN:
MOSHE MARC COHEN, ("CLAIMANT") v.
1717 CAPITAL MANAGEMENT COMPANY AND NATIONWIDE PROVIDENT, ("RESPONDENTS")
Docket Number 04-05841
Date of Service (for NASD Dispute Resolution use only): October 28, 2005

Signature Date: October 28, 2005

Award

Hearing Site: New York, New York

Nature of the Dispute: Associated Person vs. Member and Non-Member.

REPRESENTATION OF PARTIES: Claimant Moshe Marc Cohen hereinafter referred to as ("Claimant"): Mark A. Sussswein, Esq., Liddle & Robinson, L.L.P., NewYork, NY, previously represented by Alyson C. Bruns, Esq., Liddle & Robinson, L.L.P. New York, NY.

Respondents 1717 Capital Management Company ("1717 Capital") and Nationwide Provident ("Nationwide"), hereinafter collectively referred to as ("Respondents"): Christopher C. Coss, Esq., Coss & Momjian, LLP, Bala Cynwyd, PA.

CASE INFORMATION: Statement of Claim filed on or about: August 18, 2004.

Claimant signed the Uniform Submission Agreement: August 16, 2004.

Statement of Answer and Counterclaim filed by Respondent 1717 and Nationwide on or about: November 2, 2004.

Respondents did not sign a Uniform Submission Agreement.

CASE SUMMARY: Claimant asserted the following causes of action: defamation, tortious interference with prospective economic advantage, injurious falsehood, libel for earned commissions and renewal commissions, failure to pay earned commission compensation and violation of the New York Labor Law.

Unless specifically admitted in their Answer, Respondents 1717 Capital and Nationwide denied the allegations made in the Statement of Claim and asserted various affirmative defenses. In their Counterclaim, Respondents asserted the following cause of action: failure to repay monies owed.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3029051 (N.A.S.D.)

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))

RELIEF REQUESTED: Claimant requested that the Panel award him damages in an amount to be determined at hearing, interest at the statutory rate of 9% per annum on all claims from the date said amounts were due; attorneys' fees; costs; and such other and further relief as the Panel deems appropriate.

In their Statement of Answer, Respondents requested that the Statement of Claim be dismissed in its entirety, that Respondents be awarded their attorneys' fees and costs in defending this proceeding and also be awarded relief on the Counterclaim.

In their Counterclaim, Respondents requested damages in the amount of $1,395.84, together with their cost, attorneys' fees and any additional relief this panel deems proper. In his response to the Counterclaim, Claimant requested that the Panel dismiss the Counterclaim in its entirety.

OTHER ISSUES CONSIDERED AND DECIDED: Respondents 1717 Capital did not file with NASD Dispute Resolution a properly executed Uniform Submission Agreement but is required to submit to arbitration pursuant to the Code and, having answered the claim, and appeared and testified at the hearing, is bound by the determination of the Panel on all issues submitted.

*2 Respondent Nationwide is not a member of NASD and does not have an agreement to arbitrate. However, Nationwide answered the Statement of Claim, appeared and testified at the hearing and is, therefore, bound by the determination of the Panel on all issues submitted.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

AWARD: After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant's claims are denied in their entirety.

2. The Panel recommends the expungement of all reference to the above captioned arbitration from Moshe Marc Cohen registration records maintained by the Central Registration Depository ("CRD"), with the understanding that pursuant to NASD Notices to Members 99-09 and 99-54, Cohen must obtain confirmation from a court of competent jurisdiction before CRD will execute the expungement directive.

3. The Panel further recommends that the following record should be expunged:

a) The termination comment that currently appears in item 3 on the Form U-5 filed with CRD by Respondent 1717 Capital Management Company (CRD 4082) on behalf of Claimant Moshe M. Cohen should be expunged (i.e., "firm concluded that representative violated firm policies and procedures.") The following language shall replace the original termination comment: "Association between firm and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3

2005 WL 3029051 (N.A.S.D.)

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))

registered representative ended following a good faith disagreement regarding the application of a company policy concerning the use of money orders." The reason for termination shall remain as "discharge".

b) The description of the nature of the internal review located in item 3 of Part 1 of the Internal Review DRP which now reads "Asset Management Company brought activity in two customer accounts to attention of firm. Investigation led firm to conclude that representative violated various firm policies and procedures. Conclusion of investigation was termination of representative's registration" should also be expunged. The replacement language to item 3 of Part 1 of the Internal Review DRP is as follows: "Association between firm and registered representative ended following a good faith disagreement regarding the application of a company policy concerning the use of money orders." "The affirmative response to Form U-5 question 7B should be expunged and replaced with "no". In addition, the accompanying Form U-5 Internal Review DRP should also be expunged in its entirety as the Internal Review was concluded with Claimant's termination and therefore Claimant was not subject to Internal Review at the time of termination or when the Form U-5 was filed with CRD."

c) In addition, all Form U-4 references to and disclosure of Claimant's termination from 1717 Capital Management Company should be expunged (e.g., "yes" answer to Form U-4 question 14J(1) and accompanying U-4 Termination DRP).

*3 d) The expungement recommendations are made with the understanding that, pursuant to NASD Notices to Members 99-09 and 99-54, Claimant Moshe M. Cohen must obtain confirmation of the expungement recommendations contained in the Award from a court of competent jurisdiction before CRD will execute the expungement directives.

4. Any and all relief not specifically addressed herein is denied.

FEES: Pursuant to the Code, the following fees are assessed:

Filing Fees: NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

Initial claim filing fee = $ 250.00
Counter claim filing fee = $ 300.00

Member Fees: Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute. Accordingly, the Respondent 1717 Capital Management Company is a party.

Member surcharge = $ 1,500.00

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4

2005 WL 3029051 (N.A.S.D.)

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))

| | | |
|---|---|---|
| Pre-hearing process fee = | $ | 750.00 |
| Hearing process fee = | $ 2,200.00 | |
| Total Member fees = | $ 4,450.00 | |

Adjournment Fees: Adjournment granted during these proceedings for which fees were assessed:

| | | |
|---|---|---|
| October 10 and 12, 2005, adjournment by Claimant = | $ 500.00 | |
| October 10 and 12, 2005, adjournment by Respondents joint and several = | $ 500.00 | |

Forum Fees and Assessments: The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| One (1) Pre-hearing conference session with Panel @ $1,000.00 per session | | | = $ 1,000.00 |
| Pre-hearing conference: | January 18, 2005 | 1 session | |
| One (1) Hearing session with the Panel @ $1,000.00 per session | | | → $ 1,000.00 |
| Hearing Date: | October 11, 2005 | 1 session | |
| Total Forum Fees | | | = $ 2,000.00 |

1. The Panel has assessed $1,000.00 of the forum fees to Claimant.

2. The Panel has assessed $1,000.00 of the forum fees jointly and severally to Respondents.

Fee Summary: 1. Claimant is solely liable for:

| | | |
|---|---|---|
| Initial Filing Fee = | $ | 250.00 |
| Adjournment Fee = | $ | 500.00 |
| Forum Fees = | $ 1,000.00 | |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3029051 (N.A.S.D.)

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))

```
--------------------------------------------------
Total Fees =                         $ 1,750.00
Less payments =                      $ 1,500.00
--------------------------------------------------
Balance Due NASD Dispute Resolution = $   250.00
```

2. Respondent 1717 Capital is solely liable for:

```
Member Fees =                        $ 4,450.00
--------------------------------------------------
Total Fees =                         $ 4,450.00
Less payments =                      $ 4,450.00
--------------------------------------------------
Balance Due NASD Dispute Resolution = $    00.00
```

3. Respondents are jointly and severally liable for:

```
Counterclaim filing fee =$   300.00
Forum Fee =                          $ 1,000.00
Adjournment fee =                    $   500.00
--------------------------------------------------
Total Fees =                         $ 1,800.00
Less payment =                       $    00.00
--------------------------------------------------
Balance Due NASD Dispute Resolution = $ 1,800.00
```

*4 All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

ARBITRATION PANEL: Ernest Fanwick, Esq.- Public-Arbitrator, Presiding Chairperson

William E.S. Browning, Esq.-Non-Public Arbitrator

Bennett A. Hall-Public Arbitrator

Concurring Arbitrators' Signature(s): I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument, which is my award.

Ernest Fanwick, Esq.

Public Arbitrator, Presiding Chairperson

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 6

2005 WL 3029051 (N.A.S.D.)

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))


William E.S. Browning, Esq.

Non-Public Arbitrator

Bennett A. Hall

Public Arbitrator

  2005 WL 3029051 (N.A.S.D.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS          NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000          FACSIMILE (212) 757-3990

GERARD E. HARPER

TELEPHONE (212) 373-3263
FACSIMILE (212) 492-0263
E-MAIL:gharper@paulweiss.com

(212) 373-3263

(212) 373-2225

gharper@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (813) 3597-8101
FACSIMILE (813) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

December 15, 2005

USM5P
SDNY

PWRW & G LLP

DEC 1 5 2005

☑ DOCKETED
☑ IMAGED

**BY HAND**

Hon. Denise Cote
United States District Court
Southern District of New York
Room 1040
500 Pearl Street
New York, NY 10007

*Vaughn v. Leeds, Morelli & Brown, et al.*
04 Civ. 8391 (DLC)

Dear Judge Cote:

With Lowenstein Sandler LLP, my firm represents Prudential Securities Inc. ("PSI") in the matter to which I refer above. I ask the Court's indulgence to tolerate this addition to the correspondence that plaintiff initiated on December 7.

Plaintiff's December 7 letter to this Court unmistakably suggested that, in accord with this Court's August 12 Order, plaintiff had filed an arbitration demand with the New York Stock Exchange asking that forum to arbitrate the claims set forth in amended complaint in this action. Plaintiff's purported rationale for renewed consideration of this Court's August 12 Order was that, try as he might, plaintiff had no forum to pursue his claims, because the NYSE had rejected them on the jurisdictional ground that the Leeds Defendants, allegedly named as respondents in this ostensible demand, are not members of the NYSE. Now, we learn that plaintiff did nothing of the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Hon. Denise Cote                                                                    2

kind. Plaintiff did not file a demand to arbitrate the claims alleged in this action. Instead,
plaintiff filed a letter requesting that the NYSE exercise unprecedented appellate powers
over this Court, in an attempt to override this Court's determination that plaintiff's claims
are arbitrable. Invoking exactly the arguments that this Court deemed unpersuasive,
plaintiff asked the NYSE to rule that plaintiff could evade the arbitration clause simply
by making class allegations. This demand – the *only* one plaintiff made of the NYSE – is
unmentioned in his December 7 letter to this Court (see enclosures).

        I will not presume to characterize plaintiff's depiction of this Court's
ruling in his letter to the NYSE. No ambiguity infects this Court's August 12 Order. To
quote this Court's ruling at page 6, PSI and plaintiff "agree that all of [plaintiff's] claims
are arbitrable and that [plaintiff] agreed to the arbitration provision. They merely dispute
whether the scope of the arbitration provision includes claims styled as class actions" -- a
question this Court left to the arbitrators. Otherwise put, consistent with the Federal
Arbitration Act, this Court held that PSI was a signatory to a valid contractual provision
obligating plaintiff to arbitrate, with only the *form* of the action left to the arbitrators to
resolve. Plaintiff's NYSE demand unabashedly asks that arbitral forum to overrule this
Court's determination that plaintiff's claims are arbitrable.

        It appears that the foregoing reveals the circumstances underlying
plaintiff's initial puzzling reluctance to share its NYSE submission with us in the wake of
its December 7 letter. More importantly, these facts, together with the NASD's
indisputable willingness to entertain plaintiff's claims (of which plaintiff is demonstrably
aware), fortify our view that plaintiff's application warrants no further attention from this
Court.

        I appreciate Your Honor's consideration of these matters.

                                    Respectfully yours,

                                    *Gerard E. Harper*
                                    Gerard E. Harper

Enclosures

cc:    Blaine H. Bortnick, Esq. (by email and hard copy)
       Daniel T. Hughes, Esq. (by email and hard copy)

# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE

NEW YORK, N.Y. 10022

(212) 687-8500

FACSIMILE: (212) 687-1505

www.liddlerobinson.com

E-mail: bbortnick@liddlerobinson.com

SAMUEL FINKELSTEIN (1904-1998)
MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

ROBERT S. CLEMENTE
OF COUNSEL

DAVID MAREK
LEILA I. NOOR
JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ALYSON C. BRUNS
LISA D. SIOMAN

December 16, 2005

**BY HAND**
The Hon. Denise Cote
United States District Court
Southern District of New York
500 Pearl Street
Room 1040
New York, NY 10007

Re:    Vaughn v. Leeds, Morelli & Brown, et al.;
       04 Civ. 8391(DLC)

Dear Judge Cote:

We represent the plaintiff, Jeffrey Vaughn, in the above-referenced action. We write in response to Prudential counsel's letters of December 13 & 15, 2005, Leeds, Morelli counsel's letters of December 14 & 15, 2005 and in furtherance of plaintiff's request for a conference with the Court.

Both defendants' counsels misconstrue the actions of plaintiff to the Court by presenting assumptions and innuendo and suggesting a direction of the Court different from that stated in the Court's Order of August 12, 2005. Simply stated, as it appears on page 8 of the Court's Order, the Court granted Prudential's motion to compel arbitration on the basis that the issue and objection to arbitration raised by plaintiff, namely the ineligibility of class actions in arbitration under the rules of the NYSE and NASD, "concerns contract interpretation and arbitration procedure and therefore is for the arbitrator, not the courts, to decide." (internal quotes and citation omitted).

LIDDLE & ROBINSON, L.L.P.

The Hon. Denise Cote                    2                    December 16, 2005

As stated in our letter of December 7, 2005, plaintiff submitted a Statement of Claim, Uniform Submission Agreement, and filing fee and hearing deposit to the NYSE Director of Arbitration on October 28, 2005, in accordance with the Court's Order of August 12, 2005 and NYSE Rule 612. The Statement of Claim, which included a copy of the Court's Order and the Amended Complaint, sought "an expedited hearing before an arbitration panel for an order and decision granting Mr. Vaughn leave to return to court to pursue his class action claims, notwithstanding the arbitration provision providing for arbitration under the rules of the New York Stock Exchange." Plaintiff was not, as portrayed by defendants, "requesting the NYSE to exercise unprecedented appellate powers over this Court, in an attempt to override this Court's determination that plaintiff's claims are arbitrable."

In following the Court's direction, Plaintiff submitted his dispute to the NYSE and requested that a panel of arbitrators expeditiously decide the issue of whether Plaintiff could proceed with a class action. Pursuant to NYSE Rule 604 the arbitrators are empowered ". . . . either upon their own initiative or at the request of a party [to] dismiss the proceeding and refer the parties to their judicial remedies or to any other dispute resolution forum agreed to by the parties without prejudice to any claims or defenses available to any party." It was not through misconduct or scheme of plaintiff that the NYSE elected to reject the arbitration submission due to the inclusion of the Leeds Morelli defendants upon the grounds that they are not NYSE members. Plaintiff merely sought to expeditiously resolve the class action issue before the arbitrators. We never raised (or considered) the possibility that the NYSE would reject the arbitration statement of claim at the administrative level.

Furthermore, in accordance with the rules and procedures of the NYSE, plaintiff was not required to serve a copy of the Statement of Claim, or any form of notice, upon the defendants when he filed his claim with the NYSE. In accordance with NYSE Rule 612(a) "The Director of Arbitration shall endeavor to serve promptly by mail or otherwise on the Respondent(s) one (1) copy of the Submission Agreement and one (1) copy of the Statement of Claim." Accordingly, plaintiff bore no obligation to alert the defendants of his filing at the NYSE. We respectfully suggest that counsel's allusion that we were somehow nefarious or engaged in "sharp practices" is the result of their unfamiliarity with the NYSE procedures.

Defendants' counsel misconstrues the NYSE Arbitration Department's procedure and calls into question the fact that Plaintiff's submission was rejected by the NYSE, as evidenced by the letter of November 3, 2005 from Mr. Harry Albirt of the NYSE (attached to our December 7 letter). It is standard procedure for the NYSE Arbitration Department to review submissions filed with the NYSE arbitration department before serving the respondent(s).[1] The NYSE may reject an arbitration submission on the grounds that, as plaintiff interprets the NYSE rules, that the claim is encompassed in a putative or certified class action. The NYSE may also decline to arbitrate any dispute pursuant to NYSE Const. Act XI § 3. See In re Solomon Inc. Shareholders' Derivative Litigation, 68 F.3d 544 (2d Cir. 1995).

_____

[1] Robert S. Clemente, Esq., an attorney with this firm, was the Director of Arbitration at the NYSE from 1991 through December 2003.

The Hon. Denise Cote                    3                    December 16, 2005

Curiously, neither defendant has alerted the Court to the fact that pursuant to NASD Rule 10301 " . . . the Director of Arbitration, upon approval of the Executive Committee of the National Arbitration and Mediation Committee, or the National Arbitration and Mediation Committee, shall have the right to decline the use of its arbitration facilities in any dispute, claim, or controversy, where, having due regard for the purposes of the Association and the intent of this Code, such dispute, claim, or controversy is not a proper subject matter for arbitration." And that NASD rule 10301 has a similar provision as the NYSE, which provides that; "A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association."

The agreement of the parties herein provided for arbitration "under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers", both securities industry self regulatory organizations ("SRO"). Plaintiff elected to file at the NYSE, as was his right. The NYSE has declined to accept plaintiff's claims; plaintiff should not now be forced to submit his dispute to the NASD.

In Yates v. Gunnallen Financial, No. CO5-1510 BZ (USDC ND CA July 8, 2005) (copy attached), the court, relying in part on the Second Circuit's decision in In re Salomon, held that upon the NYSE rejecting plaintiff's claim for arbitration he should not be compelled to file at the NASD. In Yates, the plaintiff, who had a choice between the NYSE and the NASD, submitted his dispute to the NYSE. The NYSE refused Yates' submission because Gunnallen Financial was not a member of the NYSE.

The only difference between the agreement relied upon in Yates and the agreement between the parties herein is that the agreement in Yates specifically gave plaintiff the right to elect between the NYSE and NASD for arbitration. The agreement here is silent. In light of the fact that defendants drafted the agreement in question, which plaintiff contends was obtained in furtherance of the defendants' collusion, plaintiff should not bear any burden resulting from any deficiency or vagueness in the agreement. The agreement provided for arbitration under the rules of the NYSE or NASD. Plaintiff elected the NYSE, which rejected the submission. Defendants should not now be heard to complain that the plaintiff did not then file at the NASD. As set forth above, the NASD could very well also reject plaintiff's submission of a class action complaint.

In addition, Prudential's suggestion that plaintiff could proceed to arbitrate at the NYSE by resubmitting his claim against only Prudential is not worthy of consideration. As the defendants well know, plaintiff's claims are against both defendants for their alleged collusive actions. The claims against Prudential and the Leeds, Morelli defendants are so intertwined and interrelated that they must proceed together in the same forum.

Finally, defendants' suggestion that plaintiff's sole remedy is arbitration and therefore the Court may, in the absence of the NYSE or NASD as applicable fora, compel arbitration before an alternative forum, such as the American Arbitration Association ("AAA") is without merit. The cases cited by Prudential are inapplicable to the facts presented here. Two of the cases cited by Prudential, (Erving v. The Virginia Squires Basketball Club and Morris v. New York Football Giants, Inc. et al.) both relate to disputes between professional athletes and their

LIDDLE & ROBINSON, L.L.P.

The Hon. Denise Cote                     4                  December 16, 2005

respective teams. In both cases the parties' agreement to arbitrate disputes specifically named the individual to serve as arbitrator, and that individual was unable to carry out their arbitral duties. In those cases the Court was permitted by the FAA to appoint a replacement arbitrator. The third case (Lubowiecki v. Ernst & Young), is an unusual situation where the court substitutes one provider for another, due to an apparent conflict between one of the parties and the provider named in the agreement. However, it is not stated in Lubowiecki, as here, that the parties agreed to arbitrate pursuant to the rules of the providers named in the agreement. That is not the case here and the Lubowiecki case is not dispositive of the issues presented here. As stated above, according to the agreement between plaintiff and Prudential:

> Any claim or controversy arising out of or related to this agreement or interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc.

The parties' agreement at issue here specifically provided for arbitration before a particular forum (an SRO) and under the rules of that forum. It is the rules of the designated fora that the parties have agreed to proceed under. Thus the instant case presents a totally different situation from Lubowiecki.

This issue is not new to this Circuit. (see: PaineWebber, Inc. v. Rutherford, 903 F.2d 107 (2d Cir. 1990); see also: In re Salomon, 68 F3d 354 (2d Cir. 1995)). In those cases the arbitration agreement provided for arbitration under the rules of a self regulatory organization ("SRO") such as the NYSE. In In re Salomon, when the arbitration provision failed, due to the NYSE declining to accept the case for arbitration, the Court did not rewrite the agreement of the parties to provide for arbitration before any forum, such as the AAA, but rather allowed the matters to proceed in court.

We continue to believe that the most efficient manner in which to proceed is for the Court to hold a conference in order to permit the Court and the parties an opportunity to discuss how this matter may proceed.

Respectfully submitted,

Blaine H. Bortnick (BB 3686)

cc:    Gerald E. Harper, Esq. (via facsimile / 212-373-2225)
       Daniel T. Hughes, Esq. (via facsimile / 212-434-0105)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

JEFFREY S. VAUGHN, individually and on          :
behalf of those class members similarly         :
situated,                                        :
                                                 :
                    Plaintiff,                   :        04 Civ. 8391 (DLC)
                                                 :
           -v-                                   :        ORDER
                                                 :
LEEDS, MORELLI & BROWN, P.C., LEEDS,             :
MORELLI & BROWN, L.L.P., LEEDS &                 :
MORELLI, LEEDS, MORELLI & BROWN,                 :
PRUDENTIAL SECURITIES, INC., PRUDENTIAL          :
FINANCIAL, INC., LENARD LEEDS, STEVEN            :
A. MORELLI, JEFFREY K. BROWN, and JOHN           :
DOES, JAMES VAGNINI, FREDERIC DAVID              :
OSTROVE, ROBERT JOHN VALLI, JR.,                 :
DISCRIMINATION ON WALL STREET, INC. and          :
DISCRIMINATION ON WALL STREET                    :
MANHATTAN, INC., and JOHN DOES, ESQS.            :
1-10 and JANE DOES, ESQS., 1-10 a                :
fictitious designation for presently            :
and unknown licensed attorneys,                  :
professionals and/or unknown persons or          :
entities,                                        :
                                                 :
                    Defendants.                  :
                                                 :
------------------------------------------X

DENISE COTE, District Judge:

     Having reviewed letters from plaintiff, dated December 7 and

16, 2005 and from defendants, dated December 13, 14, 20, and two

dated December 15, 2005, it is hereby

     ORDERED that the case remains stayed and on the Court's

suspense docket pursuant to the Opinion and Order dated August

12, 2005.

SO ORDERED:

Dated:    New York, New York
          December 27, 2005

                                        DENISE COTE
                                United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/27/05

NASD DISPUTE RESOLUTION, INC.

-------------------------------------------------------------------- x

In the Matter of Arbitration between           :

JEFFREY S. VAUGHN, individually and on behalf of  :

those Class Members similarly situated,          :

                                        :

                    Claimants,           :

                                        :

          -against-            :     **STATEMENT OF CLAIM**

                                        :

LEEDS, MORELLI & BROWN, P.C., LEEDS,       :

MORELLI & BROWN, L.L.P., LEEDS & MORELLI,  :

LEEDS, MORELLI & BROWN, PRUDENTIAL      :

SECURITIES, INC., PRUDENTIAL FINANCIAL,    :

INC., WACHOVIA CORPORATION, WACHOVIA   :

SECURITIES, LLC, LENARD LEEDS, STEVEN A.  :

MORELLI, JEFFREY K. BROWN, JAMES        :

VAGNINI, FREDERIC DAVID OSTROVE,      :

ROBERT JOHN VALLI, JR., DISCRIMINATION ON :

WALL STREET, INC. DISCRIMINATION ON     :

WALL STREET, MANHATTAN, INC., JOHN     :

DOES, 1-10 AND JANE DOES, 1-10 a fictitious    :

designation for presently unknown licensed attorneys,  :

professionals and/or unknown persons or entities,   :

                                        :

                    Defendants.       :

-------------------------------------------------------------------- x

        Claimant, Jeffrey S. Vaughn, ("Vaughn") individually and on behalf of those Class

Members similarly situated, submit this matter pursuant to the Opinion and Orders of the Hon.

Denise Cote, U.S. District Judge (S.D.N.Y.) dated August 12, 2005 and December 27, 2005

(Exhibit A).

        Vaughn commenced a putative class action in the United States District Court for

the Southern District of New York, individually and on behalf of all Class Members, against his

employer and the lawyers he retained to represent him in an employment discrimination dispute

against his employer. In his amended complaint, filed on or about March 15, 2005, Vaughn alleges that the settlement agreement ("Settlement Agreement") that resolved his dispute was a product of secret collusion between his employer and his lawyers. (Exhibit B – Amended Complaint)

The defendants, Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown Leonard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, Robert John Valli, Jr., Discrimination on Wall Street, Inc., Discrimination on Wall Street Manhattan, Inc. (the "Leeds Defendants") and Prudential Securities Incorporated and Prudential Financial, Inc. ("Prudential") moved to dismiss or compel arbitration pursuant to the provisions of the Settlement Agreement. Vaughn opposed the motion, contending that the arbitration provision is not enforceable because the arbitration rules provided for in the Settlement Agreement (*i.e.:* NYSE and NASD) do not permit class actions, or the enforcement of an arbitration agreement against Vaughn's claims submitted as part of a putative class action. In addition, Vaughn objected to arbitration by reason of the fact that his lawyers (the Leeds Defendants) are not parties to the Agreement.

In her decision, Judge Cote reasoned that, under <u>Green Tree Fin. Corp. v. Bazzle</u>, 53 9 U.S. 444 (2003), the Court was limited to determining "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy" (internal quotations and citation omitted). The court went on to state that "in a case where an arbitration clause provided that the parties agreed to submit to the arbitrator [a]ll disputes, claims or controversies arising from or

2

relating to this contract, the Supreme Court held that a dispute about whether the arbitration clause forbids the use of class action procedures ... is a dispute relating to this contract. In such a case, it was apparent that the parties agreed that an arbitrator, not a judge, would answer the relevant question" (internal quotes and citation omitted). The Court concluded that the question of whether the arbitration provision applies to an action brought as a class action is a matter for the arbitrators to decide.

Vaughn respectfully submits that, although the District Court's interpretation of Bazzle is correct, on the facts of that case, however, the court in Bazzle was not interpreting an arbitration agreement subject to and controlled by the rules of the self-regulatory organizations ("SROs"), such as the NASD or NYSE.

Vaughn asserts that NASD Rule 10301(d)(3) precludes defendants from enforcing the arbitration agreement against him, as they have done, by compelling Vaughn's claims, encompassed in a class action filed in court, to arbitration.

In addition the Court held that, under the principles of estoppel, the Leeds defendants, as non-signatories to the Settlement Agreement, could compel arbitration of Vaughn's claims. The Court based its decision on the fact that the issues sought to be resolved are intertwined with the Settlement Agreement. However, since the Leeds defendants' right to compel arbitration stems solely from defendant, Prudential's being a signatory to the arbitration agreement, there is no independent basis upon which the Leeds defendants could compel arbitration that Prudential itself is barred from enforcing under NASD Rules.

3

Nevertheless, despite granting defendants' motion to compel arbitration, the court did not determine whether the arbitration agreement at issue precluded Vaughn from bringing a class action. The Court's decision left to the arbitrators to interpret the meaning of NASD Rule 10301(d) or NYSE Rule 600(d).

In reference to Vaughn's contention that the NASD and NYSE rules preclude class actions in arbitration, Judge Cote stated, "it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats." Vaughn respectfully submits that NASD Rule 10301(d)(3) clearly warrants a different conclusion, one in favor of Vaughn's right to proceed with his putative class action in court. Vaughn further asserts that defendants knowingly misrepresented the application of the NASD (and/or NYSE) arbitration rules with respect to class actions.

By letter dated October 28, 2005, Claimant, pursuant to the District Court's Order, submitted the dispute to New York Stock Exchange Arbitration and requested an order and decision granting Vaughn leave to return to court to pursue his class action claims, pursuant to NYSE Rule 600(d). By letter dated November 3, 2005, the NYSE declined to accept Vaughn's submission due to the inclusion of the Leeds Defendants, non-members of the NYSE (Exhibit C – letter of Harry Albirt – NYSE). The NYSE did not address the issue of whether a class action is eligible for arbitration or whether the arbitration agreement was enforceable against claimants' claims submitted as part of a putative class action filed in court, or, as stated by the Court, if claimant was required to submit his claim individually to arbitration.

4

By letter dated December 7, 2005, Vaughn informed the Court that the NYSE had rejected Vaughn's submission due to the inclusion of the Leeds defendants, notwithstanding their voluntary submission to jurisdiction. Vaughn sought a conference with the Court to discuss lifting the stay and permitting the case to proceed in court.

Before the Court could coordinate the scheduling of a conference the defendants submitted several letters to the Court opposing Vaughn's request. Prudential argued that Vaughn should be required to submit his claim to the NASD, as it was also named as one of the SRO forums named in the agreement. Alternatively, Prudential suggested, "the court must nevertheless enforce the arbitration clause while remedying the flawed procedure (presumably the unavailability of the NYSE). Here, if (contrary to fact) the contractually-stipulated forum is unavailable, then the remedy is to send plaintiff to a reputable arbitral alternative, such as the American Arbitration Association, not to allow him to break his promise to arbitrate". (citation omitted) (Exhibit D, December 13, 2005 letter of Gerard E. Harper, Esq.)

In a letter to the Court dated December 14, 2005, counsel for the Leeds defendants represented that they had spoken with John Nachmann, Esq. of the NASD and was advised that "any decision to deny use of the facility would only occur after the issue had been briefed by both sides and a hearing conducted", and further that "NASD can hear the entire controversy, including the non-member claim" (Hughes letter of December 14, 2005 w/Declaration of Shari Lewis - Exhibit E). It is obvious from Ms. Lewis' Declaration that counsel for the Leeds Defendants failed to advise Mr. Nachmann of all relevant facts regarding the issue of the application and interpretation of NASD Rule 10301 (d).

5

Subsequently, the District Court issued the Order dated December 27, 2005, wherein the Court "Ordered that the case remains stayed and on the Court's suspense docket pursuant to the Opinion and Order dated August 12, 2005."

Accordingly, Vaughn submits this matter to the NASD in order to decide, taking into account the purpose and intent of Rule 10301(d), whether Vaughn is entitled to pursue his class action claims in court, or whether, notwithstanding NASD Rule 10301(d)(3), Vaughn may be compelled to pursue his claims individually in arbitration.

As stated above, Vaughn maintains that the arbitration provision of the Settlement Agreement, by virtue of the fact that it provided for arbitration only under the rules of the NYSE or NASD, demonstrates the intent of the parties that the arbitration provision not apply to claims "encompassed by a putative or certified class action." It does not, as defendants argued before the Judge Cote, preclude Vaughn from bringing a class action in court.

The arbitration rules of the SROs, and the U.S. Securities and Exchange Commission's ("SEC") approval of those rules, make clear the intent that class action not be subject to SRO arbitration and that arbitration agreements shall not be enforced against a party seeking to bring a class action in court.

NASD Rule 10301(d), "Class Actions." Provides:

6

(1)    A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association.

(2)    Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court, or is ordered by a court to an arbitral forum not sponsored by a self-regulatory organization for a class wide arbitration.  However, such claims shall be eligible for arbitration in accordance with paragraph (a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Rule 10302 or Rule 10308, as applicable.  Either party may elect instead to petition the court with jurisdiction over the putative or certified class action or resolve such disputes.  Any such petition to the court must be filed within ten business days of receipt of notice that the

7

Director of Arbitration is referring to the dispute to a panel of arbitrators.

NASD Rule 10301(d)(1) and (2) (emphasis added).

Moreover, NASD Rule 10301(d)(3) provides:

(3)    No member or associated person shall seek to enforce any agreement to arbitrate against a customer, other member or person associated with a member who has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action unless and until: (A) the class certification is denied; (B) the class is decertified; (C) the customer, other member is excluded from the class by the court; or (D) the customer, other member or person associated with a member elects not to participate in the putative or certified class action, or if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

NASD Rule 10301(d)(3) (emphasis added).

8

Clearly, by filing its motion to compel arbitration, defendant Prudential violated the specific prohibition contained in Rule 10301(d)(3). Moreover, defendant Prudential continues to attempt enforcement of the arbitration agreement by misrepresenting to the Court that it is entitled to arbitrate this matter. In its letter of December 20, 2005 to Judge Cote, Prudential took the position, contrary to the NASD rules, that the only question for the arbitrators was "the discrete procedural question of the type of arbitration Plaintiff would be entitled to obtain (class-wide or individual)." (Exhibit F)

The NASD made clear its intent in its 1993 filing with the SEC for approval of Rule 10301(d)(3), wherein it stated:

> Section 12(d)(3) (prior iteration of section 10301(d)(3)) of the Code currently bars members or associated persons from seeking to enforce an agreement to arbitrate against a customer where the customer has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action. The section, however, omits specific reference to claims filed by associated persons against members and claims filed by members against other members. As a result, some respondents have argued that class actions encompassing such claimants can be submitted to arbitration under the Code. The NASD determined that

9

the original intent of the section was to exclude class action claims by associated persons, including employment-related claims, and other industry class actions from arbitration, as well as customer-related class actions. Accordingly, the NASD proposed to amend section 12(d)(3) of the Code to clarify that the prohibition in the provision is total and encompasses class actions in which a member or an associated person may be the subject of a class action.

The amendment to section 12(d)(3) of the Code adds references to "other member and person associated with a member" to clarify that the prohibition against seeking to enforce an agreement to arbitrate applied not only to class actions in which a claimants is a customer, but to class actions in which an associated person or a member is a party.[1] (Emphasis added.)

It is evident that the NASD wanted to preserve the right for parties, including members, associated persons and investors, to pursue class action claims in court. Moreover, in approving the adoption of NASD Rule 10301(d), the SEC stated:

---

[1] SEC Release No. 34-33939, File No. SR-NASD-93-65 (April 20, 1994) 59 F.F. (April 28, 1994) (Attached as Exhibit E.)

10

*i*

Over the years, the courts have developed procedures and expertise for managing class action litigation and duplicating the often complex procedural safeguards necessary for these lawsuits is unnecessary.  <u>In addition, access to the courts for class action litigation should be preserved for claims filed by members, allied members, member organizations, and associated persons against other members,</u> allied members, member organization, and associated persons, as well as for claims involving investors. Hence, this rule change should provide a sound procedure for the management of class action disputes, should promote the efficient resolution of these types of class action disputes <u>and should prevent wasteful litigation over the possible applicability of agreements to arbitrate between members, allied members, member organization, and associated persons, notwithstanding the exclusion of class actions from NASD arbitration.</u>[2] (Emphasis added.)

It is clearly the intent and purpose of the NASD, in adopting Rule 10301(d), to preserve a party's right to proceed in court with class action claims and that such claims were not waived by virtue of a provision to arbitrate "any claim or controversy." It was not the intent of the NASD or the SEC that a party be precluded from bringing a class action claim in court by virtue of the parties having entered into an arbitration agreement. On the contrary, the rule was intended to prevent a party, such as defendants attempt here, from using the agreement to arbitrate as a vehicle to preclude class actions.

---

[2] <u>Id.</u>

11

It is equally clear that, in direct violation of NASD Rules, Respondents have sought to enforce the arbitration agreement contained in Vaughn's Settlement Agreement. In this regard, Vaughn requests NASD Dispute Resolution refer this matter to the Enforcement Division for the purpose of considering disciplinary action against Prudential for its violation of NASD Rule 10301(d)(3).

Accordingly, Vaughn respectfully requests that the arbitrators issue an order and decision declaring that Vaughn may pursue his class action claims against defendants in court and directing defendants to withdraw their objections and stipulate that the agreement to arbitrate does not preclude Claimants' right to proceed with a class action in court and, therefore, is not enforceable. Vaughn further seeks reimbursement of his filing fee, hearing deposit as well as costs and attorneys' fees incurred in bringing this action, especially given defendant Prudential's repeated violations of NASD rules in attempting to compel arbitration. Additionally, Vaughn requests that defendant Prudential's flagrant violation of NASD rules be referred for disciplinary action.

Dated: New York, New York
       February 2, 2006

                                   Respectfully submitted,

                                   LIDDLE & ROBINSON, L.L.P.

                                   By: _Robert S. Clemente_
                                       Robert S. Clemente
                                   Attorneys for Claimants
                                   800 Third Avenue
                                   New York, New York 10022
                                   (212) 687-8500

12

08/15/2006 12:15 FAX 212 687 1505      LIDDLE & ROBINSON, LLP                                    ☒ 001/003

# LIDDLE & ROBINSON, L.L.P.

## 800 THIRD AVENUE
## NEW YORK, N.Y. 10022

(212) 687-8500
FACSIMILE: (212) 687-1505

www.liddlerobinson.com

SAMUEL FINKELSTEIN (1906-1996)
MIRIAM M. ROBINSON (retired)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES B. HUBBARD
JEFFREY L. LIDDLE
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

ROBERT S. CLEMENTE
OF COUNSEL

DAVID MAREK
LEILA I. NOOR
JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ALYSON C. BRUNS
LISA D. SIDMAN
DAVID H. FELDSTEIN*

*Awaiting Admission

## FACSIMILE

TO:                 See below

FROM:           Rebecca A. Saenger, Esq.

DATE:            August 15, 2006

FACSIMILE NUMBER:        See below

OUR FACSIMILE NUMBER:        (212) 687-1505

NUMBER OF PAGES TO FOLLOW:        2

To:     Gerald E. Harper, Esq.          Fax No. (212) 373-2225
        Daniel T. Hughes, Esq.          Fax No. (212) 434-0105

The information contained in this facsimile message, and any attachments, may be confidential and legally privileged, and is intended only for use by the individual(s) or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (212-687-8500), and destroy the original message. Thank you

(Rev. 11/05)

# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE

NEW YORK, N.Y. 10022

(212) 687-8500

FACSIMILE: (212) 687-1505

www.liddlerobinson.com

MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
DAVID M. MAREK
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

EMAIL: rsaenger@liddlerobinson.com

JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ANDREA M. PAPARELLA
REBECCA A. SAENGER
LISA D. SIDMAN
DINA N. WEINBERG
DAVID H. FELDSTEIN

August 15, 2006

**BY MAIL & FACSIMILE/ (301) 527-4873**
Northeast Processing Center
NASD Dispute Resolution, Inc.
One Liberty Plaza
165 Broadway, 27th Floor
New York, New York 10006

Re:    Jeffrey S. Vaughn, individually and on behalf of those class members
similarly situated v. Leeds, Morelli & Brown, P.C., Leeds, Morelli &
Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown, Prudential
Securities, Inc., Prudential Financial, Inc., Lenard Leeds, Steven A.
Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove,
Robert John Valli, Jr., DISCRIMINATION ON WALL STREET, INC.,
DISCRIMINATION ON WALL STREET MANHATTAN, INC., and
JOHN DOES, 1-10 and JANE DOES, 1-10 a fictitious designation for
presently and unknown licensed attorneys, professionals and/or unknown
persons or entities;
NASD Dispute Resolution Arbitration No. 06-00534

To Whom It May Concern:

We represent the Claimant, Jeffrey S. Vaughn, in the above-referenced
arbitration and write in response to the NASD's letter of July 27, 2006.

The skills/knowledge options listed in the materials regarding the
arbitrator selection process do not match the issues before the NASD in this case. Mr.

LIDDLE & ROBINSON, L.L.P.
Northeast Processing Center                    2                        August 15, 2006

Vaughn's Statement of Claim presents the very narrow issue of whether he waived his
right to a class action by signing the Settlement Agreement with Prudential Securities,
Inc. Therefore, we request arbitrators possessing knowledge of the law of arbitration.

Respectfully submitted,

By: *Rebecca A. Saenger*
Rebecca A. Saenger

cc:    Daniel T. Hughes (via mail and facsimile)

Gerald E. Harper (via mail and facsimile)

NASD Dispute Resolution
w.nasd.com
theast Region
One Liberty Plaza • 165 Broadway • 27th Floor
New York NY • 10006-1400 • 212-858-4200 • Fax 301-527-4873





July 27, 2006

Theordore V. Wells, Jr., Esq.
Paul, Weiss, rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064

Subject:    NASD Dispute Resolution Case Number 06-00534
            Jeffrey S. Vaughn v. Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P.,
            Prudential Securities, Inc., et al.

Dear Mr. Wells:

NASD Dispute Resolution provides a forum for the resolution of disputes involving public investors and broker-dealers, and members of the American Stock Exchange ("AMEX"), International Stock Exchange ("ISE"), Nasdaq Liffe Markets ("NqLX"), and Philadelphia Stock Exchange ("PHLX"), and Municipal Securities Rulemaking Board ("MSRB") registrants and/or their associated persons. This office administers that forum according to the procedures set forth in the NASD Code of Arbitration Procedure ("Code"). The most up to date version of the Code can be accessed or downloaded from our Web site at http://www.nasd.com. On the NASD Dispute Resolution Web site, you will also find important instructions concerning filing your answer or other claims (The NASD Dispute Resolution Party's Reference Guide). If you do not have access to the Internet, you may call our office to request a copy of these documents.

### Filing a Statement of Answer

Since you have been named as a party in this arbitration, enclosed is a copy of the Statement of Claim. You are required by the rules of NASD Dispute Resolution to arbitrate this dispute.

Your Statement of Answer must specify all relevant facts and available defenses to the Statement of Claims (See Rule 10314(b) of the Code). In addition, your Answer may include any related claim(s) that you may have against the Claimant or any other party subject to arbitration under the Code. If you assert any of these claims please refer to the Schedule of Fees in Rule 10332 of the Code for the related filing fee. If you assert a claim, it should be submitted with the fee in the attached envelope.

Pursuant to Rule 10314(b) of the Code, you are required on or before September 15, 2006, to send to the Claimant and all other parties, a signed Uniform Submission Agreement (form enclosed) and your Answer. Claimant or Claimant's counsel's address is provided at the end of this service letter.

The Code also requires that you send to the Director of Arbitration: (a) the original and three copies of the Uniform Submission Agreement, properly signed and dated by you; (b) the original and three copies of your Answer; and (c) four copies of any document(s) referred to in your Answer. When sending copies of your Answer to the Director of Arbitration, please indicate that you have properly served your Answer on all parties. If you need an extension of time to file your Statement of Answer, you must contact the

Claimant directly and request one. If Claimant agrees to extend your time to file your Answer, please notify NASD in writing of the new deadline for filing your Answer. You should also send a copy of that notice to the Claimant and all other parties.

If your Answer is not served upon all parties, a motion to preclude your Answer may be made pursuant to Rule 10314(b)(2) of the Code. In addition, failure to provide NASD Dispute Resolution with copies of your Answer as described above will preclude it from inclusion in the package of pleadings provided to the arbitrator(s).

## Hearing Location

If an arbitration involves a public customer, NASD Dispute Resolution will generally select a hearing location closest to the customer's residence at the time the dispute arose.

In disputes between AMEX, ISE, NASD, NqLX, or PHLX member firms, or MSRB Registrants and associated persons, NASD Dispute Resolution will select the hearing location that is closest to the location where the associated person was employed at the time the dispute arose.

In industry disputes involving only member firms and/or MSRB Registrants unless the firms are in the same locale or the parties agree to a specific hearing location, NASD Dispute Resolution will consider the following factors when deciding the hearing location:

1)    Which party initiated the transactional issue;
2)    The location of witnesses and documents; and
3)    The relative hardship for travel of a party to a specific location.

The **ANTICIPATED** hearing location of this case is: New York City, New York. This preliminary decision was made, pursuant to Rule 10315 of the Code, by me, acting on behalf of the Director of Arbitration, in accordance with Rule 10103 of the Code. A final decision regarding the initial hearing location will be rendered before the Panel is being appointed. In addition, Rule 10315 of the Code authorizes the presiding Panel to determine the time and place of all subsequent hearing(s).

If the anticipated initial hearing location listed above is **UNKNOWN**, NASD Dispute Resolution is requesting recommendations from all parties for the hearing location based on the above applicable guidelines.

## Other Information

If, after reading the Code and the "NASD Dispute Resolution Party's Reference Guide" booklet, you still have questions regarding NASD Dispute Resolution arbitration, please contact us. When contacting us, please refer to the number assigned to this case, which is 06-00534. NASD Dispute Resolution encourages the parties to communicate among themselves to resolve issues that do not require NASD Dispute Resolution intervention.

Pursuant to Article V, Section 2(c) of the NASD By-Laws, if you are a registered representative with the NASD, you are required to keep your registration application current. You are therefore, advised to review the Form U-4 to determine if disclosure of this matter is required. If so, your failure to update your registration application may result in the filing of a formal complaint based on any omission. Any questions regarding this disclosure requirement should be directed to the NASD Member Services Phone Center (301) 590-6500.

## Motions

If a party files a motion before the initial pre-hearing conference that requires a panel's consideration, NASD Dispute Resolution will not solicit a response to the motion. However, the opposing party may expedite the process by filing a response to the motion. If the opposing party files a response at least ten days before the initial pre-hearing conference, the staff will have sufficient time to transmit the motion to the panel before the conference. If NASD Dispute Resolution does not receive a response to the motion at least ten days before the conference, we may not be able to transmit the motion to the panel before the conference. In this case, the moving party may raise the issue with the panel at the conference and ask the panel to establish a schedule for responding to the motion, as appropriate. We will advise the parties of the date of the conference in a later communication.


Northeast Processing Center
neprocessingcenter@nasd.com
(212)858-4200    Fax:(301)527-4873


NPC:CLO:LC39E
rc:02/05
Enclosure
CC:
       Rebecca Saenger, Esq., Jeffrey S. Vaughn
       Liddle & Robinson, L.L.P., 800 Third Avenue, New York, NY  10022


RECIPIENTS:
       Theordore V. Wells, Jr., Esq., Prudential Equity Group, LLC
       Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York,
       NY  10019-6064

       Daniel T. Hughes, Leed Morelli & Brown, P.C.,
       Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

       Daniel T. Hughes, Leeds Morelli & Brown, L.L.P
       Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

       Daniel T. Hughes, Leeds & Morelli
       Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

       Daniel T. Hughes, Leeds Morelli & Brown
       Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

       Daniel T. Hughes, Lenard Leed
       Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

       Daniel T. Hughes, Steven A. Morelli
       Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

       Daniel T. Hughes, Jeffrey K. Brown
       Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

Theordore V. Wells, Jr., Esq., Prudential Financial Inc.
Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019-6064

James Vagnini
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Frederic David Ostrove
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

John Robert Valli, Jr.
Leed Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Company Office, Discrimination On Wall Street Inc.
Discrimination on Wall Street Inc., One Old Country Road, Carle Place, NY 11514

Company Officer, Discrimination on Wall St. Manhattan,
Discrimination on Wall St. Manhattan Inc, One Old Country Road, Carle Place, NY 11514