UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JEFFREY S. VAUGHN, individually and on behalf of
those class members similarly situated,                                     Index No. 04 Civ. 8391 (DLC)

Plaintiffs,

-against-

LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI
& BROWN, L.L.P., LEEDS & MORELLI, LEEDS,
MORELLI & BROWN, PRUDENTIAL SECURITIES,
INC., PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN,
and JOHN DOES, JAMES VAGNINI, FREDERIC
DAVID OSTROVE, ROBERT JOHN VALLI, JR.,
DISCRIMINATION ON WALL STREET, INC. and
DISCRIMINATION ON WALL STREET
MANHATTAN, INC. and JOHN DOES, ESQS. 1-10 and
JANE DOES, ESQS. 1-10 a fictitious designation for
presently and unknown licensed attorneys, professionals
and/or unknown persons or entities,

Defendants.

-------------------------------------------------------------------X

**ORDER TO SHOW CAUSE
TO ENFORCE THE
COURT'S PRIOR ORDERS
COMPELLING
ARBITRATION**

     Upon the annexed Declaration of Shari Claire Lewis and the exhibits attached thereto,

and the accompanying Memorandum of Law, as well as all other pleadings and prior

proceedings in this action, it is hereby:

     ORDERED that Plaintiff or his attorneys show cause at a hearing to be held in this Court

before the Honorable Denise L. Cote, United States District Judge, in Courtroom _____ of the

United States Courthouse, New York, New York, on _____, 2006, at

__:__ _M, or as soon thereafter as counsel may be heard, why an order should not be entered

enforcing this Court's August 12, 2005 and December 27, 2005 Orders (the "prior Orders"),

compelling Plaintiff Jeffrey S. Vaughn ("Plaintiff") to arbitrate the claims set forth in his

Amended Complaint, filed March 15, 2005, against Defendants Leeds, Morelli & Brown, P.C. (incorrectly sued herein as Leeds, Morelli & Brown, LLP, Leeds & Morelli, and Leeds, Morelli & Brown), Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, and Robert John Valli, Jr. in the abovementioned matter (collectively "LM&B"), and finding that this Court's prior Orders represent the law of the case that Plaintiff may not relitigate here or elsewhere; and

IT IS FURTHER ORDERED that LM&B shall serve by hand delivery upon Plaintiff's counsel a copy of this Order To Show Cause and the papers upon which it is based no later than __:__ _M on _____, 2006; that Plaintiff shall serve by hand delivery upon LM&B's counsel any opposition to the above motion no later than __:__ _M on _____, 2006, and that LM&B shall serve by hand delivery upon Plaintiff's counsel and reply in support of the above motion no later than __:__ _M on _____, 2006.

DATED: New York, New York

ISSUED: _____

_____
U.S.D.J.

1968995 v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JEFFREY S. VAUGHN, individually and on behalf of
those class members similarly situated,                              Index No. 04 Civ. 8391 (DLC)

                              Plaintiffs,

              -against-

                                                                    **DECLARATION OF**
LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI                         **SHARI CLAIRE LEWIS**
& BROWN, L.L.P., LEEDS & MORELLI, LEEDS,                             **PURSUANT TO**
MORELLI & BROWN, PRUDENTIAL SECURITIES,                             **LOCAL RULE 6.1(d)**
INC., PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN,
and JOHN DOES, JAMES VAGNINI, FREDERIC
DAVID OSTROVE, ROBERT JOHN VALLI, JR.,
DISCRIMINATION ON WALL STREET, INC. and
DISCRIMINATION     ON     WALL     STREET
MANHATTAN, INC. and JOHN DOES, ESQS. 1-10 and
JANE DOES, ESQS. 1-10 a fictitious designation for
presently and unknown licensed attorneys, professionals
and/or unknown persons or entities,

                              Defendants.
------------------------------------------------------------------------X


I, Shari Claire Lewis, pursuant to 28 U.S.C. § 1746, hereby declare the following:

       1.      I am a partner in the law firm of Rivkin Radler LLP, of counsel to the law firm

Litchfield Cavo, LLP, attorneys for defendants, Leeds, Morelli & Brown, P.C. (incorrectly sued

herein as Leeds, Morelli & Brown, LLP, Leeds & Morelli, and Leeds, Morelli & Brown), Lenard

Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, and Robert

John Valli, Jr., in the abovementioned matter (collectively "LM&B").

       2.      I submit this Declaration in support of LM&B's application asking that plaintiff,

Jeffrey Vaughn ("Vaughn") Show Cause why an Order should not be entered directing Vaughn

to comply with the prior Orders of this Court, dated August 12, 2005 and December 27, 2005,

which, pursuant to 9 U.S.C. § 1 *et seq.* directed Vaughn to arbitrate his claims against the defendants and otherwise stayed the case until resolution of the arbitration proceedings and finding that this Court's prior Orders are the law of the case that plaintiff may not relitigate here or elsewhere.

3.     The Order sought is necessary to protect the prior proceedings had heretofore and to effectuate the Court's prior rulings. Vaughn has repeatedly flaunted this Court's authority by his deliberate refusal to abide by the Court's determination that the dispute between the parties is arbitrable under the broad arbitration clause contained in the Settlement Agreement under which the claim arises. For more than a year Vaughn has refused to arbitrate this claim as directed by the Court in its Order of August 12, 2005. Instead, his latest foray seeks an opinion from the National Association of Securities Dealers ("NASD") that is inconsistent with the Court's unambiguous determination of arbitrability and outside the scope of the arbitration agreement itself. Under these circumstances, an Order directing Vaughn to comply with the Court's prior Orders is essential.

4.     Emergent hearing and determination of this application is necessary due to the irreparable harm that will result to LM&B if it is forced to participate in an arbitration before the NASD of a dispute that the parties have never agreed to arbitrate and, moreover, was previously determined by this Court. It is well-established law that a party will suffer irreparable harm per se if it is compelled to arbitrate a dispute outside of the scope of the arbitration agreement. Nevertheless, plaintiff has refused to consent to an extension of the due date for a response to his NASD claim, which would have permitted the application to be in the course of ordinary motion practice.

2

5.    Specifically, LM&B's Response to the Claim is due on or before September 15, 2006. However, your declarant has been advised that a request for an extension to respond to the NASD proceeding was made by Liza Velazquez, Esq., of the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for co-defendant, Prudential Securities, Inc. ("PSI") and *refused* by Blaine Bortnick, Esq., of Liddle & Robinson, L.L.C., counsel for Vaughn.

6.    A similar request was not made by this office to Mr. Bortnick because it was reasonable to assume that it would be a futile gesture. No greater cooperation could be expected to be extended to LM&B than that which Mr. Bortnick refused to extend to PSI.

7.    Additionally, as this Court has determined, Vaughn's claims against LM&B have their genesis in his accusations of conspiracy between PSI and LM&B in connection with the settlement of his employment discrimination claims against PSI while LM&B was his counsel. Accordingly, the Court determined that Vaughn's claims against LM&B were inextricably intertwined with Vaughn's Settlement Agreement with PSI. Accordingly, determination of the issues presented by this application impact arbitrability as to both parties and should be decided simultaneously.

8.    Thus, good and sufficient cause exists for expedited hearing on the dispute pursuant to Local Rule 6.1.

9.    Expedited relief is particularly warranted here because this is the second time that Vaughn has sought to evade this Court's Order by the ruse of submitting to an arbitral body a request that it overrule this Court's Orders. Such contemptuous conduct by Vaughn should again be summarily rejected by this Court and an Order issued compelling Vaughn's compliance with the Court's prior determinations.

10.    Annexed hereto as Exhibit "A" is the Court's Order of August 12, 2005, in the matter of *Vaughn v. Leeds, Morelli &Brown et. al.*, 2005 U.S. Dist. LEXIS 16792 (S.D.N.Y. Aug. 12, 2005, Hon. Denise Cote, presiding.) (*"Vaughn I"*).

11.    Annexed hereto as Exhibit "B" is this Court's Order dated December 27, 2005, in which this Court adhered to its prior ruling of August 12, 2006 and the case remained stayed (*"Vaughn II"*).

12.    Annexed hereto as Exhibit "C" is a copy of *"Statement of Claim of Jeffrey Vaughn."*

13.    Annexed hereto collectively as Exhibit "D" are two letters by Litchfield Cavo, LLP, on behalf of LM&B, dated December 14, 2005 and December 15, 2005, to the Court discussing Vaughn's request to the New York Stock Exchange ("NYSE") that it refuse to hear the arbitration between the parties.

14.    Annexed hereto collectively as Exhibit "E" are two letters by Liddle & Robinson, LLP, on behalf of Vaughn, dated December 7, 2005 and December 16, 2005, whereby Vaughn attempted to reargue this Court's decision on arbitrability based upon NYSE's refusal to hear the arbitration between the parties.

15.    Annexed hereto collectively as Exhibit "F" are two letters by Liddle & Robinson, LLP, dated August 15, 2006 to the NASD, addressed to the Northeast Processing Center and George Friedman, Esq., Director of Arbitration.

16.    Annexed hereto as Exhibit "G" is an exemplar cover letter from the NASD to an LM&B defendant which requires that LM&B and the individual defendants provide a "Statement of Answer" on or before September 15, 2006.

17.    No prior request for the same or similar relief has heretofore been made.

WHEREFORE, it is respectfully requested that plaintiff, Jeffrey Vaughn ("Vaughn") Show Cause why an Order should not be entered directing that Vaughn comply with the prior Orders of this Court, dated August 12, 2005 and December 27, 2005, which, pursuant to 9 U.S.C. § 1 *et seq,* directed Vaughn to arbitrate his claims against the defendants and otherwise stayed the case until resolution of the arbitration proceedings, finding that this Court's prior Orders are the law of the case that plaintiff may not relitigate here or elsewhere, and for whatever further and different relief that to the Court may seem just proper and equitable.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: Uniondale, New York
      August 29, 2006

 

_____
    Shari Claire Lewis (SCL-0527)

1968413 v1

5

## *AFFIDAVIT OF SERVICE*

STATE OF NEW YORK    )
                            )ss.:
COUNTY OF NEW YORK  )

      **KEVIN L. SPAGNOLI**, being sworn, deposes and says: I am not a party to the action, am over 18 years of age, reside in Bronx, New York, and am employed in the office of Litchfield Cavo.

      On the 30th day of August, 2006, I served a true copy of the annexed ORDER TO SHOW CAUSE TO ENFORCE THE COURT'S PRIOR ORDERS COMPELLING ARBITRATION and DECLARATION OF SHARI CLAIRE LEWIS PURSUANT TO LOCAL RULE 6.1 (d), by hand-delivering copies of same personally to all counsel herein, as set forth below:

TO:    Liddle Robinson, LLP
       800 Third Avenue
       New York, New York


       Paul, Weiss, Rifkind, Wharton & Garrison, LLP
       1285 Avenue of the Americas
       New York, NY 10019

                              **KEVIN L. SPAGNOLI**

Sworn to before me this
31st day of August, 2006.

Notary Public

ANNMARIE MAFFETONE
Notary Public, State of New York
No. 01MA6125992
Qualified in Queens County
Commission Expires April 25, 2009

Source: Legal > / . . . / > NY Federal District Courts 🔲
Terms: name(vaughn and prudential) (Edit Search | Suggest Terms for My Search)

🡒Select for FOCUS™ or Delivery

☐

### 2005 U.S. Dist. LEXIS 16792, *

JEFFREY S. **VAUGHN,** individually and on behalf of those class members similarly situated,
Plaintiff, -v- LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI & BROWN, L.L.P., LEEDS &
MORELLI, LEEDS, MORELLI & BROWN, **PRUDENTIAL** SECURITIES, INC., **PRUDENTIAL**
FINANCIAL, INC., LENARD LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN, and JOHN
DOES, JAMES VAGNINI, FREDERIC DAVID OSTROVE, ROBERT JOHN VALLI, JR.,
DISCRIMINATION ON WALL STREET, INC. and DISCRIMINATION ON WALL STREET
MANHATTAN, INC., and JOHN DOES, ESQS. 1-10 and JANE DOES, ESQS., 1-10 a fictitious
designation for presently and unknown licensed attorneys, professionals and/or unknown
persons or entities, Defendants.

04 Civ. 8391 (DLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 16792

August 12, 2005, Decided

**SUBSEQUENT HISTORY:** Complaint dismissed at, in part, Motion denied by, in part Vaughn
v. Leeds, Morelli & Brown, P.C., 2006 U.S. Dist. LEXIS 11615 (S.D.N.Y., Mar. 20, 2006)

**DISPOSITION: [*1]** Defendants' motions to compel arbitration granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff individual brought a putative class action against
defendant employer and attorneys, alleging that the settlement agreement that resolved
his employment discrimination dispute against the employer was a product of secret
collusion between the employer and his lawyers. Defendants moved to dismiss the action
and to compel arbitration, relying on an arbitration provision in the settlement agreement.

**OVERVIEW:** The arbitration clause in the settlement agreement contained sweeping
language concerning the scope of the questions committed to arbitration. The individual's
argument that the parties could not have intended to arbitrate class actions given the
reference to arbitration rules that did not allow class actions failed because it contradicted
the clear statement that the arbitration clause applied to "any" claim or controversy
related to the settlement agreement. Under the common law doctrine of equitable
estoppel, the attorneys were allowed to compel arbitration of the claims against them
because the individual's allegations of civil conspiracy under the Racketeer Influenced and
Corrupt Organization Act involved close cooperation and collusion between the employer
and attorneys. That theory could have succeeded only if the individual proved that all
defendants conspired and acted together. Thus, the individual alleged precisely the type of
substantially interdependent and concerted misconduct that estopped him from avoiding
arbitration of his claims with the attorneys.

**OUTCOME:** The motions to compel arbitration were granted.

**CORE TERMS:** arbitration, arbitration clause, arbitrator, accounting firm, arbitration provision, close relationship, class action, nonsignatory, conspiracy, arbitrate, employment discrimination, arbitration agreement, signatory, estoppel, motion to compel arbitration, supplied, parties agreed, intertwined, arbitrable, forbid, styled, subject matter jurisdiction, compel arbitration, dispute resolution, secret agreement, collusion, agreement to arbitrate, adversely affected, law firm, interdependent

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements

Civil Procedure > Alternative Dispute Resolution > Judicial Review

*HN1* The Federal Arbitration Act (FAA) is designed to ensure judicial enforcement of privately made agreements to arbitrate. The FAA represents a strong federal policy favoring arbitration as an alternative means of dispute resolution. Therefore, under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. The FAA requires that a contract provision to arbitrate disputes arising out of the contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C.S. § 2. More Like This Headnote | Shepardize: Restrict By Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN2* Under the Federal Arbitration Act, unless parties have unambiguously provided for an arbitrator to decide questions of arbitrability, it is for courts to decide whether the parties agreed to arbitrate. A court deciding a motion to compel arbitration must resolve four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN3* In the absence of clear and unmistakable evidence to the contrary in an arbitration clause, only in limited circumstances will a court assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter. These limited instances typically involve matters of a kind that contracting parties would likely have expected a court to decide. They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a

concededly binding arbitration clause applies to a certain type of controversy. The question of whether arbitration clauses forbid class arbitration does not fall into this narrow exception because it involves neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. Thus, in a case where an arbitration clause provided that the parties agreed to submit to the arbitrator 'all disputes, claims, or controversies arising from or relating to this contract, judicial precedent holds that a dispute about whether the arbitration clause forbids the use of class arbitration procedures is a dispute relating to this contract. In such a case, it is apparent that the parties agreed that an arbitrator, not a judge, would answer the relevant question. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Alternative Dispute Resolution > Mandatory ADR 🔍

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🔍

Contracts Law > Formation > Execution 🔍

*HN4* ⚓ The common law doctrine of estoppel may bind a nonsignatory to an arbitration agreement. Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > General Overview 🔍

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🔍

Contracts Law > Defenses > Equitable Estoppel > General Overview 🔍

*HN5* ⚓ The United States Court of Appeals for the Second Circuit holds that a claim against an alleged coconspirator may not always be intertwined to a degree sufficient to work an estoppel, and that the inquiry remains a fact-specific one. Nonetheless, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For the Plaintiff: Blaine H. Bortnick, Jeffrey Liddle, Liddle & Robinson, L.L.P., New York, New York.

For Defendants Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, and Robert John Valli, Jr.: Daniel T. Hughes, Kevin L. Spagnoli, Litchfield Cavo LLP, New York, New York.

For Defendant Prudential Securities, Inc. and Prudential Financial, Inc.: Gerard E. Harper, Theodore V. Wells, Jr., Beth S. Frank, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, New York, New York.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINIONBY:** DENISE COTE

**OPINION:** OPINION AND ORDER

DENISE COTE, District Judge:

The plaintiff, Jeffrey S. Vaughn ("Vaughn"), has brought this putative class action against his employer and the lawyers he retained to represent him in an employment discrimination dispute against his employer, alleging that the settlement **[*2]** agreement that resolved the dispute (the "Agreement") was a product of secret collusion between his employer and his lawyers. The defendants have moved to dismiss this action and to compel arbitration, relying on an arbitration provision in the Agreement. Vaughn contends that the arbitration provision does not control, because the arbitration rules provided for in the Agreement do not permit class actions, and his lawyers are not parties to the Agreement. For the following reasons, the motion to compel arbitration is granted and the case is stayed until the resolution of the arbitration proceedings.

**BACKGROUND**

The following facts are taken from Vaughn's amended complaint unless otherwise noted. In 1998, Vaughn retained lawyers from Leeds, Morelli & Brown, P.C. (collectively "Leeds Defendants"), to assert employment discrimination claims against his employer, Prudential Securities Incorporated, for which Prudential Financial Inc. is a successor in interest (collectively "Prudential Defendants"). Vaughn pursued these claims through alternative dispute resolution procedures including mediation. The dispute between Vaughn and the Prudential Defendants produced the Agreement dated **[*3]** October 27, 1998. The Agreement, which is incorporated by reference in the Complaint and on which Vaughn has relied in part in bringing this action, granted the Prudential Defendants a general release of claims in exchange for $ 200,000.00. The Agreement also contains the following arbitration provision:

> Any claim or controversy arising out of or related to this Agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

(Emphasis supplied.)

Vaughn alleges that the Leeds Defendants and Prudential Defendants had a "secret agreement" dated February 13, 1998 that was part of an employment discrimination dispute resolution system that the Leeds Defendants had established, and that would enable the Prudential Defendants to cap damages paid to various plaintiffs and settle numerous claims with plaintiffs **[*4]** represented by the Leeds Defendants at one time with a lump sum payment while providing direct payment of attorney's fees to the Leeds Defendants. Vaughn claims that he only learned of the existence of the secret agreement in or about October 2004. He initiated this action on October 25, 2004, and filed an amended complaint ("Complaint") on March 15, 2005.

Vaughn has styled this action as a class action based on his allegation that hundreds of other Prudential employees with discrimination claims against the company were adversely affected by collusion between the Leeds Defendants and the Prudential Defendants based on this or

other secret agreements. Vaughn asserts claims for common law fraud, conspiracy to defraud, aiding and abetting fraud, tortious interference with a contract, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Racketeer Influenced Corrupt Organization Act ("RICO").

The Prudential Defendants and the Leeds Defendants both have filed motions to dismiss or to compel arbitration. The Prudential Defendants contend that because the Agreement contains an arbitration provision, this matter **[*5]** should be referred to arbitration, and that this Court does not have subject matter jurisdiction because the only mechanism conferring federal question jurisdiction is the RICO claim, which the Prudential Defendants argue is time-barred and insufficiently pleaded. The Leeds Defendants advance similar arguments, and add, among other things, that the arbitration clause equitably estops Vaughn from pursuing his claims in federal court notwithstanding the fact that the Leeds Defendants are not parties to the Agreement. Vaughn argues among other things that because the arbitration rules provided for in the Agreement do not permit class actions, and he has styled his claim as a class action, this matter should not be referred to arbitration.

## DISCUSSION

1. The Prudential Defendants

*HN1*The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985). The FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted). Therefore, **[*6]** "under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)). The FAA requires that a contract provision to arbitrate disputes arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

*HN2*Under the FAA, unless parties have unambiguously provided for an arbitrator to decide questions of arbitrability, it is for courts to decide whether the parties agreed to arbitrate. Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005). A court deciding a motion to compel arbitration must resolve four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, **[*7]** but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. JLM Indus., 387 F.3d at 169. In this case, the Prudential Defendants and Vaughn agree that all of Vaughn's claims are arbitrable and that Vaughn agreed to the arbitration provision. They merely dispute whether the scope of the arbitration provision includes claims styled as class actions.

*HN3*In the absence of "clear and unmistakable evidence to the contrary" in an arbitration clause, only in limited circumstances will a court "assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452, 156 L. Ed. 2d 414, 123 S. Ct. 2402 (2003) (citation omitted). "These limited instances typically involve matters of a kind that contracting parties would likely have expected a court to decide." Id. (citation omitted). "They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Id. The question of whether arbitration clauses "forbid class arbitration **[*8]** . . . does not fall into



this narrow exception" because it involves "neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." Id. Thus, in a case where an arbitration clause provided that the parties "agreed to submit to the arbitrator 'all disputes, claims, or controversies arising from or relating to this contract,'" the Supreme Court held that a dispute about whether the arbitration clause "forbids the use of class arbitration procedures . . . is a dispute 'relating to this contract.'" Id. at 451 (emphasis in original). n1 In such a case, it was apparent that the parties "agreed that an arbitrator, not a judge, would answer the relevant question." Id. at 452.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In Bazzle, an issue was whether arbitration clause language providing that disputes "shall be resolved . . . by one arbitrator selected by us [Green Tree] with consent of you [Green Tree's customer]" forbade class action arbitrations because the "consent of you" language was arguably inconsistent with multiple claimants. Bazzle, 539 U.S. at 450.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*9]

The arbitration clause in the Agreement contains "sweeping language concerning the scope of the questions committed to arbitration," id. at 453, as it commits to arbitration "any claim or controversy arising out of or related to this Agreement or the interpretation thereof." (Emphasis supplied.) Vaughn claims that because the arbitration clause states that the contemplated arbitration will use the "rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.," and those rules do not permit class action arbitrations, the parties could not have intended that the class action he now brings would be arbitrated. This interpretation, however, contradicts the clear statement that the arbitration clause applies to "any" claim or controversy related to the Agreement. Even assuming that Vaughn is right, and the applicable arbitration rules do, indeed, forbid class action arbitrations under all circumstances, it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further new qualifications or caveats. Here, as in Bazzle, [*10] question is "not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter," rather "what kind of arbitration proceeding the parties agreed to." Bazzle, 539 U.S. at 452 (emphasis in original). This question "concerns contract interpretation and arbitration procedures," and is therefore "for the arbitrator, not the courts, to decide." Id. at 453. The Prudential Defendants' motion to compel arbitration is accordingly granted. n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The defendants argue that the Complaint fails to state a claim for a RICO violation, and therefore, there is no basis for federal subject matter jurisdiction. Because the Complaint has a RICO claim that on its face is "neither clearly immaterial and made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous," Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 701 (2d Cir. 2000), there is subject matter jurisdiction over this action as of now.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*11]

2. The Leeds Defendants

*HN4*The common law doctrine of estoppel may bind a nonsignatory to an arbitration agreement. JLM Indus., 387 F.3d at 177. See also Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 404, 406 (2d Cir. 2001); Thomson-CSF, S.A. v. Am. Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995); Camferdam v. Ernst & Young Int'l, Inc., 2004 U.S. Dist. LEXIS 2284, No. 02 Civ. 10100 (BSJ), 2004 WL 307292, at *6 (S.D.N.Y. Feb. 13, 2004).

> Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

JLM Indus., 387 F.3d at 177 (citation omitted) (emphasis supplied). See also Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005); Contec, 398 F.3d at 209; Choctaw, 271 F.3d at 406. [*12]

The Leeds Defendants argue that under this standard, they may compel Vaughn to arbitrate his claims against them, because he alleges a close relationship, in the form of a conspiracy, between both sets of defendants, and because the claims Vaughn raises against the Leeds Defendants are intertwined with the Agreement. Vaughn concedes that his claims against the Leeds Defendants are related to the Agreement, but argues that the relationship between the Leeds Defendants and the Prudential Defendants was not close enough to warrant estoppel in this case, because they did not have a relationship with each other independent of Vaughn's alleged conspiracy.

Vaughn's argument misconstrues the governing legal standard. *HN5*The Second Circuit has held that a claim against an alleged co-conspirator may not "always be intertwined to a degree sufficient to work an estoppel," and that "the inquiry remains a fact-specific one." JLM Indus., 387 F.3d at 178 n.7 (emphasis supplied). Nonetheless, "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct [*13] by both the nonsignatory and one or more of the signatories to the contract." Denney, 412 F.3d at 70 (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). In a putative class action where the plaintiff taxpayers accused an accounting firm and a bank, among others, of conspiring to lure them into participating in unlawful tax shelter schemes, and the plaintiffs had an arbitration agreement with the accounting firm but not the bank, the Second Circuit held:

> Having alleged in this RICO action that the [nonsignatory bank] and [signatory accounting firm] defendants acted in concert to defraud plaintiffs, and that defendants' fraud arose in connection with [the accounting firm's] tax-strategy advice, plaintiffs cannot now escape the consequences of those allegations by arguing that the [bank] and [accounting firm] defendants lack the requisite close relationship, or that plaintiffs' claims against the [bank] defendants are not connected to [the bank's] relationship with the accounting firm].



Denney, 412 F.3d at 70 (citation omitted). Vaughn's basic premise that Second Circuit **[*14]** precedent requires that the defendants have a close relationship independent of the alleged conspiracy is consequently incorrect. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 To the extent that Vaughn cites district court opinions that predate Denney for the proposition that a close relationship independent of the alleged conspiracy is required for a "close relationship," this Court respectfully declines to follow them. See In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 264 (S.D.N.Y. 2005); Orange Chicken, LLC v. Nambe Mills, Inc., 2000 U.S. Dist. LEXIS 18214, No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *5 (S.D.N.Y. Dec. 19, 2000).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Vaughn contends that the Leeds Defendants had a complex scheme to settle employment discrimination claims en masse, and that this scheme involved capping liability for employers such as the Prudential Defendants in exchange for direct payment of attorney's fees by the employers. He alleges that his employment discrimination claim was swept up by this scheme because the Leeds Defendants **[*15]** had a comprehensive, secret agreement with the Prudential Defendants to process his claim, among others, and that this agreement adversely affected the settlement of his claim. These allegations of civil RICO conspiracy involve close cooperation and collusion between Vaughn's employer and his lawyers. This theory of liability has been described elsewhere as one that "can only succeed" if the plaintiff proves his "allegation that all Defendants conspired and acted together." Camferdam, 2004 U.S. Dist. LEXIS 2284, 2004 WL 307292, at *7. n4 Vaughn therefore alleges precisely the type of "substantially interdependent and concerted misconduct" that estops him from avoiding arbitration of his claims with the Leeds Defendants. Denney, 412 F.3d at 70 (citation omitted). The Leeds Defendants' motion to compel arbitration is therefore granted.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 In Camferdam, where the district court required taxpayers who had arbitration agreements with an accounting firm, and who were suing the accounting firm and a nonsignatory law firm for conspiring to create unlawful tax shelters on the taxpayers' behalf, to arbitrate claims against the law firm, the court also noted that the complaint alleged a "close relationship" between the entities involved, because "[a] civil conspiracy is a kind of partnership, in which each member becomes the agent of the other." Camferdam, 2004 U.S. Dist. LEXIS 2284, 2004 WL 307292, at *6 (citation omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

**CONCLUSION**

The defendants' motions to compel arbitration are granted. The case is stayed until the resolution of the arbitration proceedings and is transferred to the Court's suspense docket.

SO ORDERED:

Dated: New York, New York

August 12, 2005

DENISE COTE

United States District Judge


Source: Legal > / . . . / > NY Federal District Courts 
Terms: name(vaughn and prudential) (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Friday, August 25, 2006 - 10:02 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▦ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

● LexisNexis®    About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

JEFFREY S. VAUGHN, individually and on    :
behalf of those class members similarly   :
situated,                                  :
                                           :
                    Plaintiff,             :          04 Civ. 8391 (DLC)
                                           :
        -v-                                :               ORDER
                                           :
LEEDS, MORELLI & BROWN, P.C., LEEDS,       :
MORELLI & BROWN, L.L.P., LEEDS &           :
MORELLI, LEEDS, MORELLI & BROWN,           :
PRUDENTIAL SECURITIES, INC., PRUDENTIAL    :
FINANCIAL, INC., LENARD LEEDS, STEVEN      :
A. MORELLI, JEFFREY K. BROWN, and JOHN     :
DOES, JAMES VAGNINI, FREDERIC DAVID        :
OSTROVE, ROBERT JOHN VALLI, JR.,           :
DISCRIMINATION ON WALL STREET, INC. and    :
DISCRIMINATION ON WALL STREET             :
MANHATTAN, INC., and JOHN DOES, ESQS.     :
1-10 and JANE DOES, ESQS., 1-10 a          :
fictitious designation for presently       :
and unknown licensed attorneys,            :
professionals and/or unknown persons or    :
entities,                                  :
                                           :
                    Defendants.     .      :
                                           :
------------------------------------------X

+-------------------------------+
| USDC SDNY                     |
| DOCUMENT                      |
| ELECTRONICALLY FILED          |
| DOC #:                        |
| DATE FILED: 12/27/05          |
+-------------------------------+

DENISE COTE, District Judge:

    Having reviewed letters from plaintiff, dated December 7 and

16, 2005 and from defendants, dated December 13, 14, 20, and two

dated December 15, 2005, it is hereby

    ORDERED that the case remains stayed and on the Court's

suspense docket pursuant to the Opinion and Order dated August

12, 2005.

SO ORDERED:

Dated:    New York, New York
          December 27, 2005

                                        _____
                                              DENISE COTE
                                    United States District Judge

NASD DISPUTE RESOLUTION, INC.

------------------------------------------------------------------ x
In the Matter of Arbitration between                            :
JEFFREY S. VAUGHN, individually and on behalf of   :
those Class Members similarly situated,                      :
                                                                      :
                                Claimants,                       :
                                                                      :
                -against-                                         :      **STATEMENT OF CLAIM**
                                                                      :
                                                                      :
LEEDS, MORELLI & BROWN, P.C., LEEDS,              :
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,     :
LEEDS, MORELLI & BROWN, PRUDENTIAL             :
SECURITIES, INC., PRUDENTIAL FINANCIAL,         :
INC., LENARD LEEDS, STEVEN A. MORELLI,          :
JEFFREY K. BROWN, JAMES VAGNINI,                  :
FREDERIC DAVID OSTROVE, ROBERT JOHN          :
VALLI, JR., DISCRIMINATION ON WALL                 :
STREET, INC. DISCRIMINATION ON WALL              :
STREET, MANHATTAN, INC., JOHN DOES, 1-10      :
AND JANE DOES, 1-10 a fictitious designation for     :
presently unknown licensed attorneys, professionals  :
and/or unknown persons or entities,                          :
                                                                      :
                                Defendants.                     :
------------------------------------------------------------------ x

        Claimant, Jeffrey S. Vaughn, ("Vaughn") individually and on behalf of those Class

Members similarly situated, submit this matter pursuant to the Opinion and Orders of the Hon.

Denise Cote, U.S. District Judge (S.D.N.Y.) dated August 12, 2005 and December 27, 2005

(Exhibit A).


        Vaughn commenced a putative class action in the United States District Court for

the Southern District of New York, individually and on behalf of all Class Members, against his

employer and the lawyers he retained to represent him in an employment discrimination dispute

against his employer. In his amended complaint, filed on or about March 15, 2005, Vaughn alleges that the settlement agreement ("Settlement Agreement") that resolved his dispute was a product of secret collusion between his employer and his lawyers. (Exhibit B – Amended Complaint)

The defendants, Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown Leonard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, Robert John Valli, Jr., Discrimination on Wall Street, Inc., Discrimination on Wall Street Manhattan, Inc. (the "Leeds Defendants") and Prudential Securities Incorporated and Prudential Financial, Inc. ("Prudential") moved to dismiss or compel arbitration pursuant to the provisions of the Settlement Agreement. Vaughn opposed the motion, contending that the arbitration provision is not enforceable because the arbitration rules provided for in the Settlement Agreement (*i.e.:* NYSE and NASD) do not permit class actions, or the enforcement of an arbitration agreement against Vaughn's claims submitted as part of a putative class action. In addition, Vaughn objected to arbitration by reason of the fact that his lawyers (the Leeds Defendants) are not parties to the Agreement.

In her decision, Judge Cote reasoned that, under Green Tree Fin. Corp. v. Bazzle, 53 9 U.S. 444 (2003), the Court was limited to determining "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy" (internal quotations and citation omitted). The court went on to state that "in a case where an arbitration clause provided that the parties agreed to submit to the arbitrator [a]ll disputes, claims or controversies arising from or

2

relating to this contract, the Supreme Court held that a dispute about whether the arbitration clause forbids the use of class action procedures ... is a dispute relating to this contract. In such a case, it was apparent that the parties agreed that an arbitrator, not a judge, would answer the relevant question" (internal quotes and citation omitted). The Court concluded that the question of whether the arbitration provision applies to an action brought as a class action is a matter for the arbitrators to decide.

Vaughn respectfully submits that, although the District Court's interpretation of Bazzle is correct, on the facts of that case, however, the court in Bazzle was not interpreting an arbitration agreement subject to and controlled by the rules of the self-regulatory organizations ("SROs"), such as the NASD or NYSE.

Vaughn asserts that NASD Rule 10301(d)(3) precludes defendants from enforcing the arbitration agreement against him, as they have done, by compelling Vaughn's claims, encompassed in a class action filed in court, to arbitration.

In addition the Court held that, under the principles of estoppel, the Leeds defendants, as non-signatories to the Settlement Agreement, could compel arbitration of Vaughn's claims. The Court based its decision on the fact that the issues sought to be resolved are intertwined with the Settlement Agreement. However, since the Leeds defendants' right to compel arbitration stems solely from defendant, Prudential's being a signatory to the arbitration agreement, there is no independent basis upon which the Leeds defendants could compel arbitration that Prudential itself is barred from enforcing under NASD Rules.

3

Nevertheless, despite granting defendants' motion to compel arbitration, the court did not determine whether the arbitration agreement at issue precluded Vaughn from bringing a class action. The Court's decision left to the arbitrators to interpret the meaning of NASD Rule 10301(d) or NYSE Rule 600(d).

In reference to Vaughn's contention that the NASD and NYSE rules preclude class actions in arbitration, Judge Cote stated, "it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats." Vaughn respectfully submits that NASD Rule 10301(d)(3) clearly warrants a different conclusion, one in favor of Vaughn's right to proceed with his putative class action in court. Vaughn further asserts that defendants knowingly misrepresented the application of the NASD (and/or NYSE) arbitration rules with respect to class actions.

By letter dated October 28, 2005, Claimant, pursuant to the District Court's Order, submitted the dispute to New York Stock Exchange Arbitration and requested an order and decision granting Vaughn leave to return to court to pursue his class action claims, pursuant to NYSE Rule 600(d). By letter dated November 3, 2005, the NYSE declined to accept Vaughn's submission due to the inclusion of the Leeds Defendants, non-members of the NYSE (Exhibit C – letter of Harry Albirt – NYSE). The NYSE did not address the issue of whether a class action is eligible for arbitration or whether the arbitration agreement was enforceable against claimants' claims submitted as part of a putative class action filed in court, or, as stated by the Court, if claimant was required to submit his claim individually to arbitration.

4

By letter dated December 7, 2005, Vaughn informed the Court that the NYSE had rejected Vaughn's submission due to the inclusion of the Leeds defendants, notwithstanding their voluntary submission to jurisdiction. Vaughn sought a conference with the Court to discuss lifting the stay and permitting the case to proceed in court.

Before the Court could coordinate the scheduling of a conference the defendants submitted several letters to the Court opposing Vaughn's request. Prudential argued that Vaughn should be required to submit his claim to the NASD, as it was also named as one of the SRO forums named in the agreement. Alternatively, Prudential suggested, "the court must nevertheless enforce the arbitration clause while remedying the flawed procedure (presumably the unavailability of the NYSE). Here, if (contrary to fact) the contractually-stipulated forum is unavailable, then the remedy is to send plaintiff to a reputable arbitral alternative, such as the American Arbitration Association, not to allow him to break his promise to arbitrate". (citation omitted) (Exhibit D, December 13, 2005 letter of Gerard E. Harper, Esq.)

In a letter to the Court dated December 14, 2005, counsel for the Leeds defendants represented that they had spoken with John Nachmann, Esq. of the NASD and was advised that "any decision to deny use of the facility would only occur after the issue had been briefed by both sides and a hearing conducted", and further that "NASD can hear the entire controversy, including the non-member claim" (Hughes letter of December 14, 2005 w/Declaration of Shari Lewis - Exhibit E). It is obvious from Ms. Lewis' Declaration that counsel for the Leeds Defendants failed to advise Mr. Nachmann of all relevant facts regarding the issue of the application and interpretation of NASD Rule 10301 (d).

5

Subsequently, the District Court issued the Order dated December 27, 2005, wherein the Court "Ordered that the case remains stayed and on the Court's suspense docket pursuant to the Opinion and Order dated August 12, 2005."

Accordingly, Vaughn submits this matter to the NASD in order to decide, taking into account the purpose and intent of Rule 10301(d), whether Vaughn is entitled to pursue his class action claims in court, or whether, notwithstanding NASD Rule 10301(d)(3), Vaughn may be compelled to pursue his claims individually in arbitration.

As stated above, Vaughn maintains that the arbitration provision of the Settlement Agreement, by virtue of the fact that it provided for arbitration only under the rules of the NYSE or NASD, demonstrates the intent of the parties that the arbitration provision not apply to claims "encompassed by a putative or certified class action." It does not, as defendants argued before the Judge Cote, preclude Vaughn from bringing a class action in court.

The arbitration rules of the SROs, and the U.S. Securities and Exchange Commission's ("SEC") approval of those rules, make clear the intent that class action not be subject to SRO arbitration and that arbitration agreements shall not be enforced against a party seeking to bring a class action in court.

NASD Rule 10301(d), "Class Actions." Provides:

6

(1)    A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association.

(2)    Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court, or is ordered by a court to an arbitral forum not sponsored by a self-regulatory organization for a class wide arbitration.  However, such claims shall be eligible for arbitration in accordance with paragraph (a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Rule 10302 or Rule 10308, as applicable. Either party may elect instead to petition the court with jurisdiction over the putative or certified class action or resolve such disputes. Any such petition to the court must be filed within ten business days of receipt of notice that the

7

Director of Arbitration is referring to the dispute to a panel of
arbitrators.

NASD Rule 10301(d)(1) and (2) (emphasis added).

Moreover, NASD Rule 10301(d)(3) provides:

(3)    No member or associated person <u>shall seek to enforce any
agreement to arbitrate against a</u> customer, other member or
<u>person associated with a member who has initiated in court</u>
<u>a putative class action</u> or is a member of a putative or
certified class with respect to any claims encompassed by
the class action unless and until:  (A) the class certification
is denied; (B) the class is decertified; (C) the customer,
other member is excluded from the class by the court; or
(D) the customer, other member or person associated with a
member elects not to participate in the putative or certified
class action, or if applicable, has complied with any
conditions for withdrawing from the class prescribed by the
court.

NASD Rule 10301(d)(3) (emphasis added).

8

Clearly, by filing its motion to compel arbitration, defendant Prudential violated the specific prohibition contained in Rule 10301(d)(3). Moreover, defendant Prudential continues to attempt enforcement of the arbitration agreement by misrepresenting to the Court that it is entitled to arbitrate this matter. In its letter of December 20, 2005 to Judge Cote, Prudential took the position, contrary to the NASD rules, that the only question for the arbitrators was "the discrete procedural question of the type of arbitration Plaintiff would be entitled to obtain (class-wide or individual)." (Exhibit F)

The NASD made clear its intent in its 1993 filing with the SEC for approval of Rule 10301(d)(3), wherein it stated:

> Section 12(d)(3) (prior iteration of section 10301(d)(3)) of the Code currently bars members or associated persons from seeking to enforce an agreement to arbitrate against a customer where the customer has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action. The section, however, omits specific reference to claims filed by associated persons against members and claims filed by members against other members. As a result, some respondents have argued that class actions encompassing such claimants can be submitted to arbitration under the Code. The NASD determined that

9

the original intent of the section was to exclude class action claims by associated persons, including employment-related claims, and other industry class actions from arbitration, as well as customer-related class actions. Accordingly, the NASD proposed to amend section 12(d)(3) of the Code to clarify that the prohibition in the provision is total and encompasses class actions in which a member or an associated person may be the subject of a class action.

The amendment to section 12(d)(3) of the Code adds references to "other member and person associated with a member" to clarify that the prohibition against seeking to enforce an agreement to arbitrate applied not only to class actions in which a claimants is a customer, but to class actions in which an associated person or a member is a party.[1] (Emphasis added.)

It is evident that the NASD wanted to preserve the right for parties, including members, associated persons and investors, to pursue class action claims in court. Moreover, in approving the adoption of NASD Rule 10301(d), the SEC stated:

---

[1] SEC Release No. 34-33939, File No. SR-NASD-93-65 (April 20, 1994) 59 F.F. (April 28, 1994) (Attached as Exhibit E.)

10

Over the years, the courts have developed procedures and expertise for managing class action litigation and duplicating the often complex procedural safeguards necessary for these lawsuits is unnecessary. **In addition, access to the courts for class action litigation should be preserved for claims filed by members, allied members, member organizations, and associated persons against other members,** allied members, member organization, and associated persons, as well as for claims involving investors. Hence, this rule change should provide a sound procedure for the management of class action disputes, should promote the efficient resolution of these types of class action disputes <u>and should prevent wasteful litigation over the possible applicability of agreements to arbitrate between members, allied members, member organization, and associated persons, notwithstanding the exclusion of class actions from NASD arbitration.</u>[2] (Emphasis added.)

It is clearly the intent and purpose of the NASD, in adopting Rule 10301(d), to preserve a party's right to proceed in court with class action claims and that such claims were not waived by virtue of a provision to arbitrate "any claim or controversy." It was not the intent of the NASD or the SEC that a party be precluded from bringing a class action claim in court by virtue of the parties having entered into an arbitration agreement. On the contrary, the rule was intended to prevent a party, such as defendants attempt here, from using the agreement to arbitrate as a vehicle to preclude class actions.

---

[2] <u>Id.</u>

It is equally clear that, in direct violation of NASD Rules, Respondents have sought to enforce the arbitration agreement contained in Vaughn's Settlement Agreement. In this regard, Vaughn requests NASD Dispute Resolution refer this matter to the Enforcement Division for the purpose of considering disciplinary action against Prudential for its violation of NASD Rule 10301(d)(3).

Accordingly, Vaughn respectfully requests that the arbitrators issue an order and decision declaring that Vaughn may pursue his class action claims against defendants in court and directing defendants to withdraw their objections and stipulate that the agreement to arbitrate does not preclude Claimants' right to proceed with a class action in court and, therefore, is not enforceable. Vaughn further seeks reimbursement of his filing fee, hearing deposit as well as costs and attorneys' fees incurred in bringing this action, especially given defendant Prudential's repeated violations of NASD rules in attempting to compel arbitration. Additionally, Vaughn requests that defendant Prudential's flagrant violation of NASD rules be referred for disciplinary action.

Dated: New York, New York
          May 25, 2006

                    Respectfully submitted,

                    LIDDLE & ROBINSON, L.L.P.

                    By: *Blaine H. Bortnick* /RL
                         Blaine H. Bortnick
                    Attorneys for Claimants
                    800 Third Avenue
                    New York, New York 10022
                    (212) 687-8500

12

📄Address/General(**1**)
📄Types of Business(**9**)
📄Legal Status(**1**)
📄Registrations (**62**)
📁 . . . . . . . Record **Maybe**
. . . . . . . . . . . . . Report . . . . . (at the top of the screen) any *disclosure information*
. . . . . . . . . . be provided to you within approximately 2 business days.

View Description of Brokerage Firm Category

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
JEFFREY S. VAUGHN, individually and on  :
behalf of those class members similarly :
situated,                               :
                                        :
                        Plaintiff,      :        04 Civ. 8391 (DLC)
                                        :
            -v-                         :        OPINION AND ORDER
                                        :
LEEDS, MORELLI & BROWN, P.C., LEEDS,    :
MORELLI & BROWN, L.L.P., LEEDS &        :
MORELLI, LEEDS, MORELLI & BROWN,        :
PRUDENTIAL SECURITIES, INC., PRUDENTIAL :
FINANCIAL, INC., LENARD LEEDS, STEVEN   :
A. MORELLI, JEFFREY K. BROWN, and JOHN  :
DOES, JAMES VAGNINI, FREDERIC DAVID     :
OSTROVE, ROBERT JOHN VALLI, JR.,        :
DISCRIMINATION ON WALL STREET, INC. and :
DISCRIMINATION ON WALL STREET           :
MANHATTAN, INC., and JOHN DOES, ESQS.   :
1-10 and JANE DOES, ESQS., 1-10 a       :
fictitious designation for presently   :
and unknown licensed attorneys,         :
professionals and/or unknown persons or :
entities,                               :
                                        :
                        Defendants.     :
                                        :
----------------------------------------X


Appearances:

For the Plaintiff:

Blaine H. Bortnick
Jeffrey Liddle
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York  10022


For Defendants Leeds, Morelli & Brown,
P.C., Leeds, Morelli & Brown, L.L.P.,
Leeds & Morelli, Leeds, Morelli &
Brown, Lenard Leeds, Steven A. Morelli,
Jeffrey K. Brown, James Vagnini,
Frederic David Ostrove, and Robert John
Valli, Jr.:

Daniel T. Hughes
Kevin L. Spagnoli
Litchfield Cavo LLP
420 Lexington Avenue, Suite 1750
New York, New York  10170


For Defendant Prudential Securities,
Inc. and Prudential Financial, Inc.:

Gerard E. Harper
Theodore V. Wells, Jr.
Beth S. Frank
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
1285 Avenue of the Americas
New York, New York  10019


DENISE COTE, District Judge:

The plaintiff, Jeffrey S. Vaughn ("Vaughn"), has brought
this putative class action against his employer and the lawyers
he retained to represent him in an employment discrimination
dispute against his employer, alleging that the settlement
agreement that resolved the dispute (the "Agreement") was a
product of secret collusion between his employer and his lawyers.
The defendants have moved to dismiss this action and to compel
arbitration, relying on an arbitration provision in the
Agreement.  Vaughn contends that the arbitration provision does
not control, because the arbitration rules provided for in the
Agreement do not permit class actions, and his lawyers are not
parties to the Agreement.  For the following reasons, the motion
to compel arbitration is granted and the case is stayed until the
resolution of the arbitration proceedings.


2

### BACKGROUND

The following facts are taken from Vaughn's amended complaint unless otherwise noted. In 1998, Vaughn retained lawyers from Leeds, Morelli & Brown, P.C. (collectively "Leeds Defendants"), to assert employment discrimination claims against his employer, Prudential Securities Incorporated, for which Prudential Financial Inc. is a successor in interest (collectively "Prudential Defendants"). Vaughn pursued these claims through alternative dispute resolution procedures including mediation. The dispute between Vaughn and the Prudential Defendants produced the Agreement dated October 27, 1998. The Agreement, which is incorporated by reference in the Complaint and on which Vaughn has relied in part in bringing this action, granted the Prudential Defendants a general release of claims in exchange for $200,000.00. The Agreement also contains the following arbitration provision:

> Any claim or controversy arising out of or related to this Agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

(Emphasis supplied.)

Vaughn alleges that the Leeds Defendants and Prudential Defendants had a "secret agreement" dated February 13, 1998 that was part of an employment discrimination dispute resolution system that the Leeds Defendants had established, and that would

enable the Prudential Defendants to cap damages paid to various
plaintiffs and settle numerous claims with plaintiffs represented
by the Leeds Defendants at one time with a lump sum payment while
providing direct payment of attorney's fees to the Leeds
Defendants.  Vaughn claims that he only learned of the existence
of the secret agreement in or about October 2004.  He initiated
this action on October 25, 2004, and filed an amended complaint
("Complaint") on March 15, 2005.

Vaughn has styled this action as a class action based on his
allegation that hundreds of other Prudential employees with
discrimination claims against the company were adversely affected
by collusion between the Leeds Defendants and the Prudential
Defendants based on this or other secret agreements.  Vaughn
asserts claims for common law fraud, conspiracy to defraud,
aiding and abetting fraud, tortious interference with a contract,
breach of fiduciary duty, breach of contract, breach of the
implied covenant of good faith and fair dealing, and violations
of the Racketeer Influenced Corrupt Organization Act ("RICO").

The Prudential Defendants and the Leeds Defendants both have
filed motions to dismiss or to compel arbitration.  The
Prudential Defendants contend that because the Agreement contains
an arbitration provision, this matter should be referred to
arbitration, and that this Court does not have subject matter
jurisdiction because the only mechanism conferring federal
question jurisdiction is the RICO claim, which the Prudential
Defendants argue is time-barred and insufficiently pleaded.  The
Leeds Defendants advance similar arguments, and add, among other

4

things, that the arbitration clause equitably estops Vaughn from
pursuing his claims in federal court notwithstanding the fact
that the Leeds Defendants are not parties to the Agreement.
Vaughn argues among other things that because the arbitration
rules provided for in the Agreement do not permit class actions,
and he has styled his claim as a class action, this matter should
not be referred to arbitration.

<div align="center">DISCUSSION</div>

1.  The Prudential Defendants

    The FAA was designed to "ensure judicial enforcement of
privately made agreements to arbitrate." Dean Witter Reynolds
Inc. v. Byrd, 470 U.S. 213, 219 (1985). The FAA represents "a
strong federal policy favoring arbitration as an alternative
means of dispute resolution." JLM Indus., Inc. v. Stolt-Nielsen
SA, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted).
Therefore, "under the FAA, 'any doubts concerning the scope of
arbitrable issues should be resolved in favor of arbitration,
whether the problem at hand is the construction of the contract
language itself or an allegation of waiver, delay, or a like
defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l
Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). The
FAA requires that a contract provision to arbitrate disputes
arising out of the contract "shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or in equity
for the revocation of any contract." 9 U.S.C. § 2.

    Under the FAA, unless parties have unambiguously provided

<div align="center">5</div>

for an arbitrator to decide questions of arbitrability, it is for courts to decide whether the parties agreed to arbitrate. <u>Contec Corp. v. Remote Solution Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005). A court deciding a motion to compel arbitration must resolve four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. <u>JLM Indus.</u>, 387 F.3d at 169. In this case, the Prudential Defendants and Vaughn agree that all of Vaughn's claims are arbitrable and that Vaughn agreed to the arbitration provision. They merely dispute whether the scope of the arbitration provision includes claims styled as class actions.

In the absence of "clear and unmistakable evidence to the contrary" in an arbitration clause, only in limited circumstances will a court "assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter." <u>Green Tree Fin. Corp. v. Bazzle</u>, 539 U.S. 444, 452 (2003) (citation omitted). "These limited instances typically involve matters of a kind that contracting parties would likely have expected a court to decide." <u>Id.</u> (citation omitted). "They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." <u>Id.</u> The question of whether arbitration clauses "forbid class arbitration . . . does not fall into this narrow

6

exception" because it involves "neither the validity of the
arbitration clause nor its applicability to the underlying
dispute between the parties." _Id._  Thus, in a case where an
arbitration clause provided that the parties "agreed to submit to
the arbitrator '[all] disputes, claims, or controversies arising
from or relating to this contract,'" the Supreme Court held that
a dispute about whether the arbitration clause "forbids the use
of class arbitration procedures . . . is a dispute 'relating to
this contract.'"  _Id._ at 451 (emphasis in original).[1]  In such a
case, it was apparent that the parties "agreed that an
arbitrator, not a judge, would answer the relevant question."
_Id._ at 452.

     The arbitration clause in the Agreement contains "sweeping
language concerning the scope of the questions committed to
arbitration," _id._ at 453, as it commits to arbitration "[a]ny
claim or controversy arising out of or related to this Agreement
or the interpretation thereof." (Emphasis supplied.)  Vaughn
claims that because the arbitration clause states that the
contemplated arbitration will use the "rules of the New York
Stock Exchange, Inc., or the National Association of Securities
Dealers, Inc.," and those rules do not permit class action
arbitrations, the parties could not have intended that the class
action he now brings would be arbitrated.  This interpretation,

---

[1]  In _Bazzle_, an issue was whether arbitration clause
language providing that disputes "shall be resolved . . . by one
arbitrator selected by us [Green Tree] with consent of you [Green
Tree's customer]" forbade class action arbitrations because the
"consent of you" language was arguably inconsistent with multiple
claimants.  _Bazzle_, 539 U.S. at 450.

however, contradicts the clear statement that the arbitration clause applies to "any" claim or controversy related to the Agreement. Even assuming that Vaughn is right, and the applicable arbitration rules do, indeed, forbid class action arbitrations under all circumstances, it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats. Here, as in Bazzle, the question is "not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter," but rather "what kind of arbitration proceeding the parties agreed to." Bazzle, 539 U.S. at 452 (emphasis in original). This question "concerns contract interpretation and arbitration procedures," and is therefore "for the arbitrator, not the courts, to decide." Id. at 453. The Prudential Defendants' motion to compel arbitration is accordingly granted.[2]

## 2.  The Leeds Defendants

The common law doctrine of estoppel may bind a nonsignatory to an arbitration agreement. JLM Indus., 387 F.3d at 177. See also Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,

---

[2]  The defendants argue that the Complaint fails to state a claim for a RICO violation, and therefore, there is no basis for federal subject matter jurisdiction. Because the Complaint has a RICO claim that on its face is "neither clearly immaterial and made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous," Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 701 (2d Cir. 2000), there is subject matter jurisdiction over this action as of now.

8

271 F.3d 403, 404, 406 (2d Cir. 2001); Thomson-CSF, S.A. v. Am.
Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995); Camferdam v.
Ernst & Young Int'l, Inc., No. 02 Civ. 10100 (BSJ), 2004 WL
307292, at *6 (S.D.N.Y. Feb. 13, 2004).

> [U]nder principles of estoppel, a non-signatory to an
> arbitration agreement may compel a signatory to that
> agreement to arbitrate a dispute where a careful review
> of the relationship among the parties, the contracts
> they signed, and the issues that had arisen among them
> discloses that the issues the nonsignatory is seeking
> to resolve in arbitration are intertwined with the
> agreement that the estopped party has signed.

JLM Indus., 387 F.3d at 177 (citation omitted) (emphasis
supplied). See also Denney v. BDO Seidman, L.L.P., 412 F.3d 58,
70 (2d Cir. 2005); Contec, 398 F.3d at 209; Choctaw, 271 F.3d at
406.

The Leeds Defendants argue that under this standard, they
may compel Vaughn to arbitrate his claims against them, because
he alleges a close relationship, in the form of a conspiracy,
between both sets of defendants, and because the claims Vaughn
raises against the Leeds Defendants are intertwined with the
Agreement. Vaughn concedes that his claims against the Leeds
Defendants are related to the Agreement, but argues that the
relationship between the Leeds Defendants and the Prudential
Defendants was not close enough to warrant estoppel in this case,
because they did not have a relationship with each other
independent of Vaughn's alleged conspiracy.

Vaughn's argument misconstrues the governing legal standard.
The Second Circuit has held that a claim against an alleged co-
conspirator may not "always be intertwined to a degree sufficient

9

to work an estoppel," and that "[t]he inquiry remains a fact-specific one." JLM Indus., 387 F.3d at 178 n.7 (emphasis supplied). Nonetheless, "[a]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Denney, 412 F.3d at 70 (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). In a putative class action where the plaintiff taxpayers accused an accounting firm and a bank, among others, of conspiring to lure them into participating in unlawful tax shelter schemes, and the plaintiffs had an arbitration agreement with the accounting firm but not the bank, the Second Circuit held:

> Having alleged in this RICO action that the [nonsignatory bank] and [signatory accounting firm] defendants acted in concert to defraud plaintiffs, and that defendants' fraud arose in connection with [the accounting firm's] tax-strategy advice, plaintiffs cannot now escape the consequences of those allegations by arguing that the [bank] and [accounting firm] defendants lack the requisite close relationship, or that plaintiffs' claims against the [bank] defendants are not connected to [the bank's] relationship with the accounting firm].

Denney, 412 F.3d at 70 (citation omitted). Vaughn's basic premise that Second Circuit precedent requires that the defendants have a close relationship independent of the alleged conspiracy is consequently incorrect.[3]

---

[3] To the extent that Vaughn cites district court opinions that predate Denney for the proposition that a close relationship independent of the alleged conspiracy is required for a "close relationship," this Court respectfully declines to follow them.

10

Vaughn contends that the Leeds Defendants had a complex scheme to settle employment discrimination claims en masse, and that this scheme involved capping liability for employers such as the Prudential Defendants in exchange for direct payment of attorney's fees by the employers. He alleges that his employment discrimination claim was swept up by this scheme because the Leeds Defendants had a comprehensive, secret agreement with the Prudential Defendants to process his claim, among others, and that this agreement adversely affected the settlement of his claim. These allegations of civil RICO conspiracy involve close cooperation and collusion between Vaughn's employer and his lawyers. This theory of liability has been described elsewhere as one that "can only succeed" if the plaintiff proves his "allegation that all Defendants conspired and acted together." Camferdam, 2004 WL 307292, at *7.[4] Vaughn therefore alleges precisely the type of "substantially interdependent and concerted misconduct" that estops him from avoiding arbitration of his claims with the Leeds Defendants. Denney, 412 F.3d at 70

---

See In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 264 (S.D.N.Y. 2005); Orange Chicken, LLC v. Nambe Mills, Inc., No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *5 (S.D.N.Y. Dec. 19, 2000).

[4] In Camferdam, where the district court required taxpayers who had arbitration agreements with an accounting firm, and who were suing the accounting firm and a nonsignatory law firm for conspiring to create unlawful tax shelters on the taxpayers' behalf, to arbitrate claims against the law firm, the court also noted that the complaint alleged a "close relationship" between the entities involved, because "[a] civil conspiracy is a kind of partnership, in which each member becomes the agent of the other." Camferdam, 2004 WL 307292, at *6 (citation omitted).

11

(citation omitted).  The Leeds Defendants' motion to compel arbitration is therefore granted.

## CONCLUSION

The defendants' motions to compel arbitration are granted. The case is stayed until the resolution of the arbitration proceedings and is transferred to the Court's suspense docket.

SO ORDERED:

Dated:    New York, New York
          August 12, 2005

_____
DENISE COTE
United States District Judge

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
JEFFREY S. VAUGHN, individually and on    :
behalf of those class members similarly   :
situated,                                 :
                                          :
                    Plaintiff,            :        04 Civ. 8391 (DLC)
                                          :
          -v-                             :            ORDER
                                          :
LEEDS, MORELLI & BROWN, P.C., LEEDS,      :
MORELLI & BROWN, L.L.P., LEEDS &          :
MORELLI, LEEDS, MORELLI & BROWN,          :
PRUDENTIAL SECURITIES, INC., PRUDENTIAL   :
FINANCIAL, INC., LENARD LEEDS, STEVEN     :
A. MORELLI, JEFFREY K. BROWN, and JOHN    :
DOES, JAMES VAGNINI, FREDERIC DAVID       :
OSTROVE, ROBERT JOHN VALLI, JR.,          :
DISCRIMINATION ON WALL STREET, INC. and   :
DISCRIMINATION ON WALL STREET             :
MANHATTAN, INC., and JOHN DOES, ESQS.     :
1-10 and JANE DOES, ESQS., 1-10 a         :
fictitious designation for presently      :
and unknown licensed attorneys,           :
professionals and/or unknown persons or   :
entities,                                 :
                                          :
                    Defendants.      .    :
                                          :
------------------------------------------X

DENISE COTE, District Judge:

     Having reviewed letters from plaintiff, dated December 7 and

16, 2005 and from defendants, dated December 13, 14, 20, and two

dated December 15, 2005, it is hereby

     ORDERED that the case remains stayed and on the Court's

suspense docket pursuant to the Opinion and Order dated August

12, 2005.

SO ORDERED:

Dated:    New York, New York
          December 27, 2005


                              _____
                                   DENISE COTE
                         United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/27/05

Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                          :

JEFFREY S. VAUGHN, individually and on behalf of  :     Case No. 04 Civ. 8391 (DLC)
those Class Members similarly situated,               :

                          :     **AMENDED COMPLAINT**

             Plaintiff,            :

                          :

        -against-            :

                          :

LEEDS, MORELLI & BROWN, P.C., LEEDS,     :
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,    :
LEEDS, MORELLI & BROWN, PRUDENTIAL     :
SECURITIES, INC., PRUDENTIAL FINANCIAL, INC.,   :
LENARD LEEDS, STEVEN A. MORELLI, JEFFREY   :
K. BROWN, JAMES VAGNINI, FREDERIC DAVID   :
OSTROVE,   ROBERT   JOHN   VALLI,   JR.,   :
DISCRIMINATION  ON  WALL  STREET,  INC.   :
DISCRIMINATION    ON    WALL    STREET,   :
MANHATTAN, INC., JOHN DOES, 1-10 AND JANE   :
DOES, 1-10 a fictitious designation for presently   :
unknown licensed attorneys, professionals and/or  :
unknown persons or entities,,               :

                          :

           Defendants.          :
------------------------------------------------------------------ x

       Plaintiff, Jeffrey S. Vaughn, individually and on behalf of those Class Members similarly

situated, as and for their Amended Complaint against the Defendants, allege and state as follows:


## PARTIES

       1.     Plaintiff, Jeffrey S. Vaughn, (hereinafter "Vaughn"), is an individual residing

at 475 Carlton Avenue, Apartment 5H, Brooklyn, New York 11328. Mr. Vaughn brings these claims

individually and on behalf of all Class Members (collectively, "Plaintiff").

1

2.    At all relevant times, Defendant, Prudential Securities Incorporated (hereinafter "Prudential Securities"), was a corporation with offices at One Seaport Plaza, New York, New York 10292. Prudential Financial Inc. (hereinafter "Prudential Financial") is the successor in interest to Prudential Securities. Prudential Financial has an executive office address of 751 Broad Street, Newark, New Jersey. (Prudential Securities and Prudential Financial are collectively referred to as "PSI").

3.    At all relevant times, Defendant, Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, and Leeds, Morelli & Brown, (hereinafter collectively "Leeds-Morelli"), was either a professional corporation, a partnership, L.L.C. or other entity practicing law in the State of New York with its principal place of business at One Old Country Road, Suite 282, Carle Place, New York.

4.    At all relevant times, Defendant, Lenard Leeds (hereinafter "Leeds"), was a lawyer licensed to practice law in the State of New York and a partner of Leeds-Morelli.

5.    At all relevant times, Defendant, Steven A. Morelli (hereinafter "Morelli"), was a lawyer licensed to practice law in the State of New York and a partner of Leeds-Morelli.

6.    At all relevant times, Defendant, Jeffrey K. Brown (hereinafter "Brown"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli.

7.    At all relevant times, Defendant, James Vagnini (hereinafter "Vagnini"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli.

8.    At all relevant times, Defendant, Frederic David Ostrove (hereinafter "Ostrove"), was a lawyer licensed to practice law in the State of New York and a partner or

2

employee of Leeds-Morelli.

9.    At all relevant times, Defendant, Robert John Valli, Jr. (hereinafter "Valli"), was a lawyer licensed to practice law in the State of New York and a partner or employee of Leeds-Morelli. Leeds, Morelli, Valli, Ostrove, Vagnini and Brown are hereafter collectively referred to as the "Lawyer Defendants".

10.    At all relevant times, Defendants Discrimination on Wall Street, Inc. and Discrimination on Wall Street, Manhattan, Inc., held themselves out as charitable, non-profit institutions dedicated to eradicating racial bias in employment in the financial industry. Instead, these institutions were business corporations which were the alter ego of Leeds-Morelli and functioned primarily to solicit business for Leeds-Morelli. These two Defendants are hereinafter collectively referred to as D.O.W.S.. D.O.W.S has an address of One Old Country Road, Carle Place, New York.

11.    At all times hereinafter mentioned John Does 1-10 and Jane Does 1-10 (hereinafter collectively referred to as "Does"), are attorneys, professionals, corporations, and/or unknown persons or entities who are associated with Defendants or conspired with Defendants and/or whose identity and/or tortious acts have not been identified or revealed.

## OVERVIEW

12.    This action involves Leeds-Morelli and the Lawyer Defendants, the former lawyers for Plaintiff, conspiring and entering into a written secret agreement or agreements with PSI (the "Secret Agreements"). The content of the Secret Agreements is not generally known. There is at least one such agreement dated February 13, 1998. Upon information and belief, several other

3

subsequent agreements exist, including one in May 1999 and November 2001. Upon information and belief, the Secret Agreements provided, among other things, for a cap on the claims of certain of Leeds-Morelli's clients and provided for the payment of fees by PSI directly to Leeds-Morelli without disclosure to Plaintiff. The existence of the Secret Agreements was not known to Plaintiff until in or about October 2004.

13.    While, upon information and belief, PSI paid monies to Leeds-Morelli pursuant to the Secret Agreements in exchange for consideration such as the capping of claims and preventing Plaintiff from suing in court, PSI entered into the Secret Agreements in such a manner that it knew it would be substantially shielded from Plaintiff's claims and would cause Leeds-Morelli to engage in undisclosed and unethical conflicts of interest which would benefit PSI and be to the detriment of Leeds-Morelli's clients.

14.    Upon information and belief, Leeds-Morelli and the Lawyer Defendants, without Plaintiff's knowledge, agreed to cap various claims under their agreement with PSI and refused to press Plaintiff's claims until they received payment from PSI, which payments were concealed from Plaintiff and Plaintiffs' Class.

15.    In addition to failing to disclose that it was compensated by a third party for representing Plaintiff, Leeds-Morelli charged Vaughn a full one-third contingency fee. In addition to charging this contingency fee, Leeds-Morelli deducted one percent of Vaughn's and the other Subclass Members' net recovery for payment to D.O.W.S., which was categorized as a "donation".

## JURISDICTION

16.    This Court has federal question jurisdiction over the Third and Fourth causes

4

of action of this Amended Complaint pursuant to 28 U.S.C. §1331 and pendant and supplemental

jurisdiction over the remaining causes of action pursuant to 28 U.S.C. §1367 and applicable law.

## VENUE

17.    Venue is also proper in this district under 28 U.S.C. §1391(b) because: (a) a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and/or (b)

one or more of the Defendants may be found within this district.

## INTRODUCTION

18.    Vaughn and the other Class Members retained the law firm of Leeds-Morelli

in or about 1998 to assert their claims for racial discrimination against PSI.

19.    Vaughn and the other Class Members resolved their claims against PSI in

accordance with the advice rendered to them by Leeds-Morelli.

20.    One-third of Vaughn's and the other Class Members' recovery was deducted

as attorney's fees in accordance with their contingency fee agreements with Leeds-Morelli.

21.    At no time did Leeds-Morelli advise Plaintiff or Plaintiffs' Class in writing or

otherwise either that they had any conflict of interest or that they entered into a contract with PSI

which Plaintiff or the Class had not been shown, nor seen.  The nature and existence of such

contract(s) was concealed from Plaintiff by Leeds-Morelli.  Leeds-Morelli was required to disclose

the nature and existence of this contract to Plaintiff and Class Members and obtain Plaintiff's and the

Class Member's consent to the conflict of interest in writing in accordance with N.Y. Code of

Professional Responsibility.

5

22.     This contract and other dealings between Leeds-Morelli and PSI constituted an irreconcilable conflict of interest, constituted an illegal aggregate settlement, provided compensation to Leeds-Morelli for representing Plaintiff which was not disclosed to Plaintiff, allowed PSI to interfere with the independent professional judgment of Leeds-Morelli in exchange for compensation, and was the result of Leeds-Morelli engaging in deceit and collusion with the intent to deceive Plaintiff and Plaintiffs' Class. PSI, for its part received general releases from Plaintiff and the Plaintiff's Class.

## CLASS ALLEGATIONS

23.     Vaughn brings this case on his own behalf and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a plaintiff class consisting of all persons who were represented by Leeds-Morelli with claims against PSI and whose rights were affected by the Secret Agreements between Leeds-Morelli and PSI, including the agreement dated February 13, 1998. The Class is further divided into a subclass of those individuals who donated money to D.O.W.S. (the "Subclass"). There exists no conflict of interest between Vaughn and the other Class Members. Vaughn and his counsel will fairly and adequately represent the interests of the Class.

24.     Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class exceeds 500 persons. The exact number of members in the Class and in the Subclass is not known to Vaughn but can be easily ascertained from the records of the Defendants.

25.     Vaughn's claims are typical of the claims of the Class and the Subclass. Vaughn and all Class Members and Subclass Members sustained damages as a result of Defendants'

6

wrongful conduct complained of herein. Vaughn and all Class Members are entitled to the return of the improper and illegal payments made to Leeds-Morelli and the Lawyer Defendants by PSI. All Class Members have been damaged in precisely the same fashion, by precisely the same conduct.

26.    Vaughn will fairly and adequately protect the interest of the Class Members and has retained counsel competent to prosecute this class litigation. Vaughn has no interests that are adverse or antagonistic to those of the Class.

27.    A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy. At the center of this action are agreements between Leeds-Morelli and PSI, which were not disclosed to Plaintiff and which, upon information and belief, provide for payment to Leeds-Morelli and/or the Lawyer Defendants without their clients' knowledge and were designed to interfere with Leeds-Morelli and the Lawyer Defendants' fiduciary duties to the Class Members to secretly arrange an aggregate settlement of the claims.

28.    The aforementioned agreement(s) and the conspiracy it furthered were in violation of law and the ethical rules governing attorneys. In addition to entering into the Secret Agreements with the company their clients had retained them to sue and compromising their loyalty in such agreements, Leeds-Morelli also charged their clients attorneys' fees for representation in which they were also, upon information and belief, compensated directly by PSI. The Subclass' claims, regarding donations to a supposed charitable organization called D.O.W.S., are also best brought as a class action for the same reasons.

29.    Common questions of law and fact exist as to all Class Members, and they predominate over any questions affecting solely individual Members of the Class. Among the questions of law and fact common to the Class are:

7

A) Whether Leeds-Morelli and Lawyer Defendants entered into the Secret Agreements.

B) Whether the Secret Agreements provided for, among other things, payments by PSI to Leeds-Morelli and caps on PSI's exposure.

C) Whether the Secret Agreements constituted an illegal aggregate settlement.

D) Whether the Secret Agreements were designed to shield PSI from potentially substantial legal and reputational harm in return for payments to Leeds-Morelli.

E) Whether Plaintiff was aware of the Secret Agreements.

F) Whether the Secret Agreements are in violation of the New York Code of Professional Responsibility, are illegal, void ab initio and unenforceable;

G) Whether the conflicts of interest created by the terms of the Secret Agreements caused Leeds-Morelli and the Lawyer Defendants to be placed in an irreconcilable conflict of interest which prevented them from ethically representing Plaintiff in accordance with their professional duties;

H) Whether Leeds-Morelli and the Lawyer Defendants have been unjustly enriched by their receipt of payments/fees in exchange for unethical and illegal conduct;

I) Whether the Plaintiff is entitled to the disgorgement of the payments to Leeds-Morelli and the Lawyer Defendants of their fees, and upon information and belief, the payment from PSI for the same services;

J) Whether Leeds-Morelli and the Lawyer Defendants acted unethically when they had clients donate a percentage of their recovery to D.O.W.S., which they represented was a charitable organization, but was, in fact, simply an entity primarily devoted to soliciting clients for Leeds-Morelli;

K) Whether Vaughn and the other Subclass Members are entitled to an accounting of all funds paid to D.O.W.S. as well as the return of and information regarding the use to which those funds were put.

30.    Plaintiff envisions no difficulty in the management of the litigation as a Class Action.

8

## FACTS COMMON TO ALL COUNTS

31.    Leeds-Morelli holds itself out to be a champion of those who have experienced discrimination in employment. Leeds-Morelli describes itself in its website as follows:

> Our Firm is considered to be one of the *foremost authorities in the area of Employment Law, particularly in the area of Civil Rights and Discrimination Law.* We take pride in servicing our clients by vigorously representing their interests, and striving to maintain the highest standards of integrity and professionalism.
>
> While offering general services, Leeds, Morelli & Brown focuses on the areas of Employment and Civil Rights Law. We represent our clients in litigation and before administrative and/or regulatory agencies in matters involving employment discrimination, wrongful discharge, or violations of other federal, state or local laws. *The Firm has enjoyed precedent setting verdicts, with national implications, in the area of employment discrimination and has earned us a reputation as a leader in the field.*

(Emphasis added).

32.    Leeds-Morelli claims that not only does it seek recovery on behalf of its clients, but also it claims to have an objective to change the way minorities are treated in the workforce. Leeds-Morelli repeatedly refers to its relationship with and support of former President Clinton and Senator Hilary Clinton as evidence of Leeds-Morelli's supposed commitment to civil rights. In reality, Leeds-Morelli's commitment is to sell its fiduciary duty of loyalty owed to its clients to the corporations it is retained to sue.

33.    Leeds-Morelli has created a system for the processing of employment discrimination claims against corporate America as follows:

a. Solicitation - Leeds-Morelli pays "runners" to recruit African-American and other minority employees of large, public corporations who have suffered workplace discrimination or

9

retaliation and to induce the employees to employ Leeds-Morelli to pursue their employment discrimination claims. Leeds-Morelli has used D.O.W.S. as a front to employ such runners.

b. Retainer - Leeds-Morelli then holds meetings with prospective clients all over the country where the lawyers and the recruiters tout the credentials of the firm in obtaining large recoveries for employment discrimination claims like those of the prospective clients. Prospective clients are then signed up with retainer agreements whereby the clients engage Leeds-Morelli to represent them with respect to the employment claims and typically promise to pay one-third (1/3) of the recoveries to the firm for legal fees.

c.    Agreement between Leeds-Morelli and Defendant Corporation - After acquiring a sufficiently large enough client inventory, Leeds-Morelli approaches the corporation with a proposition for the corporation to pay Leeds-Morelli a large sum of money up front to represent the clients in a secret and confidential settlement process, in order to buy secrecy for the corporate employer and limit the corporate employers' financial exposure for its alleged illegal discrimination. The clients are unaware of the proposition to pay Leeds-Morelli.

d. Settlement Process – Typically, a three-step alternate dispute resolution process is set up and involves an informal meeting between the client and a representative of the corporate employer to seek to settle the claim early in the process; followed by a mediation also seeking to settle the claim; and then, failing settlement, a binding mediation. The clients waive their rights to trial by jury. Typically, if not always, claims are settled and never reach the "binding mediation" stage.

e. Aggregate Settlement - During or at the outset of the settlement process, Leeds-Morelli and the corporation typically enter into an illegal aggregate settlement to resolve all of the remaining claims for a lump sum, without disclosure to the clients. The clients are then deceived that their

10

claims are being pursued when in fact the claims have already been resolved or the recovery is capped by agreement between Leeds-Morelli and the clients' employer. In fact, upon information and belief, Leeds-Morelli never intended to prosecute their clients' claims. Rather, upon information and belief, the intent was to enter into the Secret Agreements and obtain millions of dollars in direct payments to Leeds-Morelli from the corporations.

34.    Leeds-Morelli and the corporations conceal from the clients the prepayment of fees, their unethical conflicts of interest, the aggregate nature of the settlements, and other important elements of the secret agreements between them. The clients enter into the three-step alternative dispute resolution process unaware that their employers have bought off their lawyers, and unaware that their lawyers had entered into secret agreements whereby the lawyers' duties to the corporations and their own financial self-interest surmounted the duties the lawyers owed to the clients.  By design, no claimant ever gets his or her day in court, or even in "binding mediation". The clients are instead browbeaten into accepting inadequate settlements because through the process Leeds-Morelli and the defendants have taken away any viable alternatives to accepting what the companies offer. Aside from PSI, Leeds-Morelli has, upon information and belief, entered into this pattern of abuse of clients in settlements with Prudential Insurance, Nextel Corporation, Bank of New York, Chase Manhattan Bank, Aetna Insurance Company, J.P. Morgan, Citigroup, Bear Stearns, Penguin Putnam and others over a period ranging from 1998 until at least April 2003, if not to the present.

35.    At no time did Leeds-Morelli advise Plaintiff they had any conflict of interest or that they had entered into Secret Agreements with PSI which Plaintiff had never seen and the nature and existence of which were concealed from them.

36.    Upon information and belief, the February 13, 1998 agreement and other

11

dealings between and among the Defendants constituted an irreconcilable conflict of interest, constituted an illegal aggregate settlement, provided compensation to Leeds-Morelli for representing Plaintiff and which was not disclosed to them, and was the result of the Defendants engaging in deceit and collusion in concert with the intent to deceive Plaintiff.

   37.    Upon information and belief, PSI and the Does conferred, offered and agreed to confer upon Leeds-Morelli benefits, payments, and promises of future benefits as consideration for Leeds-Morelli and the Lawyer Defendants knowingly violating and agreeing to violate their obligations to Plaintiff.

38.    The benefits provided to Leeds-Morelli and/or the Lawyer Defendants by PSI and the Does were accompanied with an intent by PSI and the Does to influence the actions of Leeds-Morelli and the Lawyer Defendants who were Plaintiff's agent and fiduciary. These acts invaded Plaintiff's rights to undivided loyalty from Leeds-Morelli and the Lawyer Defendants.

39.    PSI, the Does, Leeds-Morelli and the Lawyer Defendants (a) devised a scheme and/or artifice to defraud Plaintiff and the Plaintiff's Class, and (b) engaged in deceit and collusion, and consented to deceit and collusion, with the intent to deceive Plaintiff and the Plaintiff's Class.

40.    The aforesaid conduct constituted commercial bribery and commercial bribe receiving in violation of New York Penal Law §180.03 and §180.08.

41.    Leeds-Morelli encouraged Plaintiff to pay sums to D.O.W.S. and often took a percentage of any recovery Plaintiff received as a "donation" to D.O.W.S. Vaughn "donated" one percent of his recovery.

42.    Leeds-Morelli and/or the Lawyer Defendants represented that D.O.W.S. was a charitable organization. In fact, D.O.W.S. was simply the method by which Leeds-Morelli and the

12

Lawyer Defendants employed runners to solicit business on their behalf. Upon information and belief, Leeds-Morelli and/or the Lawyer Defendants promised these runners a percentage of the recovery in any lawsuit by clients they solicited and employed them under the D.O.W.S. framework.

43.     Upon information and belief, Leeds-Morelli and D.O.W.S. are one and the same. Upon information and belief, Leeds-Morelli failed to comply with the regulations concerning charitable institutions and failed to keep separate bank accounts and records for D.O.W.S.

## FIRST CAUSE OF ACTION
(Fraud, as Against Leeds-Morelli, the Lawyer Defendants and D.O.W.S.)

44.     Plaintiff repeats, reiterates and realleges Paragraphs 1 through 43 of the Amended Complaint as if fully set forth herein.

45.     On various dates, both prior to February 13, 1998 and subsequently, including at least through October 25, 2001, Leeds-Morelli and the Lawyer Defendants made misrepresentations of material facts, both express and implied, to Plaintiff, such as that they were an advocate for Plaintiff's interests, that they had an adversarial relationship with PSI, and that their loyalty was to Plaintiff and not to themselves or their adversary, PSI.

46.     During the period referenced above, Leeds-Morelli and the Lawyer Defendants, on behalf of D.O.W.S., made misrepresentations of material fact to the Subclass including, among other things that D.O.W.S. was a charitable not-for profit organization dedicated to changing discriminatory practices in the financial industry.

47.     Leeds-Morelli and the Lawyer Defendants failed to disclose factual information that they were required to disclose to Plaintiff, including, among other things in addition

13

to the allegations set forth above, (a) that they had entered into Secret Agreements with PSI; (b) that

the Secret Agreements provided for payments to Leeds-Morelli directly by PSI that were not to be

disclosed to Plaintiff; (c) that the Secret Agreements provided for a cap on Plaintiff's claims; (d) that

they had an irreconcilable conflict of interest that was required under law to be disclosed to Plaintiff

in writing, (e) that they had engaged in an aggregate settlement, which created conflicts of interest

between Plaintiff and Leeds-Morelli and; (f) that D.O.W.S. was not a genuine charity but rather a

business solicitation entity for Leeds-Morelli.

      48.    Leeds-Morelli and the Lawyer Defendants never had any intention to faithfully

represent Plaintiff with respect to claims they may have had against PSI. Rather, their intent was to

obtain payments for themselves from PSI as set forth above.

      49.    Leeds-Morelli and the Lawyer Defendants concealed from Plaintiff the nature,

extent and existence of the Secret Agreements between Leeds-Morelli and PSI.

      50.    At the time these misrepresentations, deceit and concealment occurred, Leeds-

Morelli and the Lawyer Defendants knew the misrepresentations were false and that the failure to

disclose the information required to be disclosed was done for the purposes of deceiving Plaintiff.

      51.    When the misrepresentations and the concealment occurred, Plaintiff did not

know the true facts, and reasonably believed and relied upon the representations to be true.

      52.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the

Lawyer Defendants fraud and participation in the conspiracy to defraud Plaintiff. The conduct of

Leeds-Morelli and the Lawyer Defendants was malicious and/or in wanton and willful disregard of

Plaintiff's rights. Leeds-Morelli and the Lawyer Defendants knew or should have known that their

actions would harm Plaintiff and were recklessly indifferent to the consequences of their actions

<center>14</center>

against Plaintiff.

## SECOND CAUSE OF ACTION
(Aiding and Abetting Fraud Against PSI, D.O.W.S. and the Does)

53.    Plaintiff repeats, reiterates and realleges Paragraphs 1-52 of the Amended
Complaint as if fully set forth herein.

54.    As set forth above, Leeds-Morelli, the Lawyer Defendants and D.O.W.S.
committed a fraud against Plaintiff.

55.    PSI and the Does either knew or deliberately and/or recklessly disregarded the
fact that Leeds-Morelli, the Lawyer Defendants and D.O.W.S. were perpetrating a fraud.

56.    As set forth above, PSI and the Does rendered substantial assistance to Leeds-
Morelli, the Lawyer Defendants and D.O.W.S. in their commission of the fraud. Upon information
and belief, PSI and the Does conspired with and caused Leeds-Morelli to commit fraud, to make
false representations to Plaintiff and to conceal from Plaintiff information which Leeds-Morelli was
required to disclose to Plaintiff. Upon information and belief, some of the Does were attorneys
employed by PSI and thus knew that the Secret Agreements were improper, as set forth above.

57.    As set forth above, PSI and the Does derived a substantial benefit from their
assistance to Leeds-Morelli, the Lawyer Defendants and D.O.W.S. in their commission of the fraud.

58.    As a result, Plaintiff has incurred damages for which PSI and the Does are
liable as a result of their aiding and abetting Leeds-Morelli, the Lawyer Defendants and D.O.W.S.

## THIRD CAUSE OF ACTION
(Federal RICO Against All Defendants)

59.    Plaintiff repeats, reiterates and realleges Paragraphs 1-58 of the Amended Complaint as if fully set forth herein.

60.    Plaintiff are persons, within the meaning of 18 U.S.C. §1961(3), and each has a claim as set forth in this Count pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq.

61.    Defendants are also persons, within the meaning of 18 U.S.C. §1961.

62.    PSI, Leeds-Morelli, as well as the other defendants each constitute an enterprise comprised of an association in fact, which is engaged in activities which affect interstate or foreign commerce, within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

63.    Alternatively, PSI is an enterprise which is engaged in activities which affect interstate or foreign commerce within the meaning of 18 U.S.C. §1961(4).

64.    Alternatively, the Defendants collectively constitute an enterprise comprised of an association in fact, which is engaged in activities which affect interstate or foreign commerce, within the meaning of 18 U.S.C. §1961(4).

65.    During the relevant times, Defendants conducted the affairs of said enterprises through a pattern of racketeering activity as described herein, all within the meaning of 18 U.S.C. §1962.

66.    Said racketeering activity was in furtherance of and related to Defendants' schemes and/or artifice to defraud Plaintiff and the clients of Leeds-Morelli as set forth herein.

67.    These racketeering activities were committed beginning no later than February

16

13, 1998 and continued through at least October 25, 2001 and the present, as Defendants continue to conceal.

68.    These racketeering activities constitute the following criminal acts:

(a) those acts described above;

(b) multiple instances of mail fraud in violation of 18 U.S.C. §1341, including the devising of the aforesaid schemes and/or artifice by use of the Postal Service, by the mailing of letters between and among the Defendants (including their attorneys), the Plaintiff, the Plaintiffs' Class, and third parties in furtherance of the schemes and/or artifice to defraud, such mailings including:

1) A letter dated November 20, 2003 from Leeds-Morelli to Plaintiff's Class attempting to continue Leeds-Morelli's cover-up of the events as set forth herein.

2) A letter dated October 25, 2001 from Morelli on behalf of Leeds-Morelli to Plaintiff and the Plaintiffs' Class which, among other things, stated that the "mediation process" with Prudential Securities was nearly completed and claimed that Leeds-Morelli had expended millions of dollars for which it had not been reimbursed in connection with pursuing the claims of Plaintiff and the other Class Members;

3) A letter dated January 11, 2001 from Deirdre J. Kamber on behalf of Leeds-Morelli to Henry M. Bell confirming a meeting with mediators from JAMS Endispute in connection with the "mediation process" as described above;

4) A letter dated April 4, 2000 from Morelli on behalf of Leeds-Morelli to "Prudential Employees" which, among other things, purports to report on the status of the resolution of their claims, including the assertion that "well over two hundred cases"

17

had already settled and that the remaining claims were in the process of being resolved;

5) A letter dated September 22, 1999 from counsel for Prudential Securities to Leeds stating, among other things, that the "mediation process ... came to a grinding halt on August 1, 1999 because of your firm's [Leeds-Morelli] fees claim", that Leeds-Morelli had refused to proceed with the mediations until its claim for fees was resolved, and that the claims of Plaintiff and the other Class Members had been capped as a result of an agreement by Leeds-Morelli and Prudential Securities, with Leeds-Morelli attorneys referring to the claims of Plaintiff and the other Class Members as "'cap cases'";

6) A letter dated November 9, 1998 from Morelli on behalf of Leeds-Morelli to Vaughn enclosing a Leeds-Morelli check to him in the amount of $126,333.34 represented to be Vaughn's net settlement proceeds from Prudential Securities after the deduction of a one-third contingency fee for Leeds-Morelli, a 1% "donation to D.O.W.S. and another $5,000 expense;

7) Vaughn's Settlement Agreement and General Release dated October 27, 1998; and

8) A letter dated May 7, 1998 from Vagnini on behalf of Leeds-Morelli to Connie Hernandez thanking her for her assistance in helping Leeds-Morelli retain over 200 employees of Prudential Securities and requesting her additional assistance.

(c) multiple instances of wire fraud in violation of 18 U.S.C. §1343, including the devising of the aforesaid schemes and/or artifice by use of wire (interstate telephone lines) to communicate in furtherance of the schemes and/or artifice to defraud, including:

18

1) The aforementioned September 22, 1999 letter from counsel for Prudential Securities to Leeds which was sent via facsimile in addition to mail;

2) Vaughn's Settlement Agreement and General Release dated October 27, 1998 which was sent from the Prudential Securities Law Department via facsimile to Leeds-Morelli; and

3) Upon information and belief, numerous telephone conversations regarding the Secret Agreements and other allegations set forth herein by and between the Defendants in furtherance of the racketeering activities

(d) Upon information and belief, a pattern of racketeering activity involving commercial bribing and commercial bribe receiving in violation of New York Penal Law §180.03 and §180.08 as set forth above. Upon information and belief, the Secret Agreements provided for payments to Leeds-Morelli in excess of $1,000.00 and caused economic harm exceeding $250.00.

69.    The predicate acts referred to above were related, in that they shared the common purpose, result and victims with regard to the scheme to deprive the Plaintiff and the Plaintiffs' Class of their civil rights.

## FOURTH CAUSE OF ACTION
(Federal RICO Violation – RICO Conspiracy Against All Defendants)

70.    Plaintiff repeats, reiterates and realleges Paragraphs 1-69 of the Amended Complaint as if fully set forth herein.

71.    Beginning in at least February 13, 1998 and continuing through at least October 25, 2001 and the present, as Defendants continue to conceal, Defendants conspired with one

19

another to violate the provisions of 18 U.S.C. §1962, as set forth above.

72.    During the relevant times, each Defendant, by words and conduct, knowingly agreed to commit the aforementioned acts in violation of 18 U.S.C. §1962 and in furtherance of a common purpose as set forth above.

73.    Each Defendant agreed to facilitate the predicate acts set forth above with knowledge that their acts were in furtherance of their pattern of racketeering activity.

74.    As a result of the Defendants conspiracy to violate 18 U.S.C. §1962, Plaintiff and the Plaintiffs' Class was harmed in their business and property by the acts taken in furtherance of the conspiracy, as they have been deprived of the funds due them, and have incurred legal fees and costs as aforesaid.

### FIFTH CAUSE OF ACTION
(Breach of Fiduciary Duty Against
Leeds-Morelli and the Lawyer Defendants)

75.    Plaintiff repeats, reiterates and realleges Paragraphs 1-74 of the Amended Complaint as if fully set forth herein.

76.    Leeds-Morelli and the Lawyer Defendants maintained a fiduciary relationship with Plaintiff. As such, Leeds-Morelli and the Lawyer Defendants owed a duty to Plaintiff characterized by the utmost good faith, candor and honesty.

77.    Leeds-Morelli and the Lawyer Defendants had a duty to disclose to Plaintiff the Secret Agreements between PSI and Leeds-Morelli. Instead, Leeds-Morelli and the Lawyer Defendants concealed these Secret Agreements from Plaintiff.

20

78.    Leeds-Morelli and the Lawyer Defendants engaged in dealings unknown to Plaintiff with PSI by which they received compensation from PSI, and, in fact, engaged in dealings which constituted conflicts of interest with Leeds-Morelli and Plaintiff.

79.    As set forth above, Leeds-Morelli and the Lawyer Defendants breached their fiduciary duties to Plaintiff by acting primarily for their own benefit and that of PSI.

80.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendant's breaches of fiduciary duties.

## SIXTH CAUSE OF ACTION
(Breach of Contract Against
Leeds-Morelli and the Lawyer Defendants)

81.    Plaintiff repeats, reiterates and realleges Paragraphs 1-80 of the Amended Complaint as if fully set forth herein.

82.    Plaintiff had written contracts by which they retained Leeds-Morelli.

83.    Leeds-Morelli breached their contract with Plaintiff by, among other things, agreeing with PSI to accept compensation from PSI, without proper consultation and consent of Plaintiff, and to place their own interest above that of Plaintiff, as more fully set forth above.

84.    Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendants breach of contract.

## SEVENTH CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and
Fair Dealing Against Leeds-Morelli and the Lawyer Defendants)

85.     Plaintiff repeats, reiterates and realleges Paragraphs 1-84 of the Amended Complaint as if fully set forth herein.

86.     As set forth above, Leeds-Morelli and the Lawyer Defendants breached the implied covenant of good faith and fair dealing which is implied and inherent in the contract and/or agreement to which they entered with Plaintiff.

87.     Plaintiff suffered harm and damages as a result of Leeds-Morelli and the Lawyer Defendant's breach of the implied covenant of good faith and fair dealing.

## EIGHTH CAUSE OF ACTION
(Tortious Interference Against PSI and Does)

88.     Plaintiff repeats, reiterates and realleges Paragraphs 1-87 of the Amended Complaint as of fully set forth herein.

89.     PSI and the Does knew that Plaintiff had a contract with Leeds-Morelli and the Lawyer Defendants which, among other things, provided that Leeds-Morelli would represent Plaintiff with respect to their alleged legal claims against PSI.

90.     Upon information and belief, as set forth above PSI and the Does maliciously, illegally and intentionally interfered with Plaintiff's contractual relationship causing its breach, wrongfully and without justification or excuse.

91.     Plaintiff suffered harm and damages as a result of the tortious interference.

22

92.    The conduct of PSI and the Does was malicious and/or in wanton and willful disregard of the Plaintiff's rights, and PSI and the Does knew or should have known that their actions would harm Plaintiff and were recklessly indifferent to the consequences of their action to Plaintiff.

## NINTH CAUSE OF ACTION
(Fraud and Conspiracy to Defraud Against All Defendants)

93.    Plaintiff repeats, reiterates and realleges Paragraphs 1-92 of the Amended Complaint as if fully set forth herein.

94.    As set forth above, all Defendants have been participants in the civil conspiracy described above against Plaintiff. The ultimate intent and result of the civil conspiracy was to deprive Plaintiff of their civil rights in return for either financial gain or the substantial reduction of financial and/or repututional harm thought to be possible as a result of Plaintiff's alleged claims of discrimination. The Lawyer Defendants, D.O.W.S., PSI and the Does are all co-conspirators to the actions of Leeds-Morelli as set forth herein and the first and fifth causes of action.

95.    All Defendants shared a common and unlawful purpose of fraud and compromising the fidelity of Plaintiff's attorneys for the benefits of PSI, Leeds-Morelli the Lawyer Defendants and D.O.W.S.

96.    Plaintiff suffered harm and damages as a result of the civil conspiracy.


WHEREFORE, Plaintiff and other Class Members demand judgment against Defendants as follows:

23

A.    On the First Cause of Action:

    (1)    Compensatory damages;
    (2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
    (3)    Reasonable attorney's fees and costs;
    (4)    Interest;
    (5)    An accounting of all funds paid to D.O.W.S. and all funds expended by D.O.W.S. at Defendants' expense; and
    (6)    Punitive damages.

B.    On the Second Cause of Action:

    (1)    Compensatory damages;
    (2)    Reasonable attorney's fees and costs;
    (3)    Interest; and
    (4)    Punitive damages

C.    On the Third Cause of Action:

    (1)    Compensatory damages;
    (2)    Treble damages;
    (3)    Reasonable attorney's fees and costs of investigation and litigation; and
    (4)    Interest.

D.    On the Fourth Cause of Action:

    (1)    Compensatory damages;
    (2)    Treble damages;
    (3)    Reasonable attorney's fees and costs of investigation and litigation; and
    (4)    Interest.

E.    On the Fifth Cause of Action

    (1)    Compensatory damages;
    (2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;
    (3)    Reasonable attorney's fees and costs; and
    (4)    Interest.

F.    On the Sixth Cause of Action:

24

(1)    Compensatory damages;

(2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;

(3)    Reasonable attorney's fees, filing fees and costs of suit; and

(4)    Interest.

G.    On the Seventh Cause of Action:

(1)    Compensatory damages;

(2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;

(3)    Reasonable attorney's fees and costs; and

(4)    Interest.

H.    On the Eighth Cause of Action:

(1)    Compensatory damages;

(2)    Reasonable attorney's fees and costs;

(3)    Interest; and

(4)    Punitive damages.

I.    On the Ninth Cause of Action:

(1)    Compensatory damages;

(2)    Disgorgement of all fees received by Leeds-Morelli with respect to their representation of Plaintiff and the other Class Members;

(3)    Reasonable attorney's fees and costs;

(4)    Interest; and

(5)    Punitive damages.

J.    Such further relief as the Court deems equitable, appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Liddle & Robinson, L.L.P.

Jeffrey L. Liddle (JL 8256)

Blaine H. Bortnick (BB 3686)
Attorney for Plaintiffs
800 Third Avenue
New York, New York 10022
(212) 687-8500

Of Counsel:

Kenneth S. Thyne, Esq.
Angela M. Roper, Esq.
Roper & Twardowsky, LLC
77 Jefferson Place
Totowa, New Jersey 07512
(973) 790-4441

Exhibit C

New York Stock Exchange, Inc.
20 Broad Street
New York, NY 10005

 **NYSE**

November 3, 2005

Blaine Bortnick, Esq.
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York 10022

Dear Mr. Bortnick:

This will confirm our conversation on October 31, 2005 wherein I advised you that the
NYSE, Inc. does not have jurisdiction over Leeds, Morelli & Brown, P.C., Morelli &
Brown, L.L. P., Leeds & Morelli, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James
Vagnini, Frederic David Ostrove, Robert John Valli, Jr., Discrimination on Wall Street,
Inc., Discrimination on Wall Street Manhattan, Inc.

Pursuant to NYSE Rule 600(a), only claims between a customer or non-member and
member, allied member, member organization and/or associated person shall be
arbitrated under the Constituiton and Rules of the New York Stock Exchange, Inc.,
regardless of whether the entities or individuals have submitted to jurisdiction.

Accordingly, I am returning your submission and $30.00 check. You may re-submit
your claim if only Prudential Securities, Inc. is named as a party.

Sincerely,

Harry Albirt

HA/jmh
Enclosure

Exhibit D

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS          NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000                    FACSIMILE (212) 757-3990

GERARD E. HARPER

TELEPHONE (212) 373-3263
FACSIMILE (212) 492-0263
E-MAIL: gharper@paulweiss.com

    (212) 373-3263

    (212) 373-2225

    gharper@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5604
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601 FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 201 7367 1600
FACSIMILE (44 201 7367 1650

December 13, 2005

**BY HAND**

Hon. Denise Cote
United States District Court
Southern District of New York
Room 1040
500 Pearl Street
New York, NY 10007

                *Vaughn v. Leeds, Morelli & Brown, et al.*
                04 Civ. 8391 (DLC)

Dear Judge Cote:

        Together with Lowenstein Sandler LLP, this firm represents Prudential Securities Inc. ("PSI") in the matter to which I refer above.  On August 12, 2005, this Court granted PSI's motion to compel arbitration, stayed the action pending the same, and transferred the action to the Court's suspense docket.  By letter dated December 7, 2005, plaintiff asks this Court to revisit that ruling based on a letter from the New York Stock Exchange supposedly rejecting plaintiff's effort to commence an arbitration there.

        Plaintiff's request "to further discuss this issue" with the Court should be rejected.

        Plaintiff's December 7 letter says that, at some unidentified time subsequent to this Court's ruling, plaintiff filed an arbitration demand against PSI and the

other defendants with the NYSE. Plaintiff says that, over a month ago, following a telephone conversation between plaintiff's counsel and the NYSE, the NYSE advised plaintiff that it lacked jurisdiction over the arbitration because plaintiff had named as parties certain defendants – the so-called Leeds Defendants – who are not members of the NYSE. We were unaware of this arbitration demand until receipt of a copy of plaintiff's letter to the Court. In our experience, the NYSE ordinarily forwards a copy of any such demand to respondents before any rulings are made. This did not happen here. When upon receipt of the December 7 letter I asked plaintiff's counsel for a copy of the arbitration demand he initially promised only to take the request "under advisement." He has since told me I may have it. As of the writing of this letter, however, I have not yet seen the demand that the NYSE supposedly rejected, in consequence of which plaintiff now wants further "discussion."

Nonetheless, under the present circumstances, no such further discussion is needed. The NYSE is only one of two fora mentioned in the arbitration clause enforced by this Court. The other is the National Association of Securities Dealers, or "NASD." The NASD has orally confirmed to us what we already knew: that the NASD regularly hears matters in which non-members are parties. Specifically, the NASD takes jurisdiction over a dispute involving both members and non-members, particularly when the non-member signs a Uniform Submission Agreement. *See, e.g. In the Matter of the Arbitration between Silverberg v. Asset Mgmt Sec. Corp.*, 2005 WL 449042 (N.A.S.D.). I am advised by their counsel that the Leeds Defendants are prepared to submit to the jurisdiction of the NASD. Hence, plaintiff is free to file his demand with the NASD and the matter may proceed consistent with this Court's ruling of August 12.

Even if the NASD were not available, plaintiff cannot defeat PSI's contractual right to arbitration simply by adding parties over which the contractually-stipulated forum lacks jurisdiction. As the November 3, 2005 letter from the NYSE enclosed with plaintiff's December 7 letter makes clear, plaintiff is free, if plaintiff wishes, to file its arbitration demand with the NYSE against only PSI. Plaintiff chose not to do so. That is no reason to deprive PSI of its right to arbitrate.

Furthermore, even if the NYSE and NASD no longer existed, plaintiff's sole remedy is reform of the arbitration clause, not escape from arbitration. As we noted in our reply memorandum in support of the motion to compel (at p. 5 n.4), both federal and New York law hold that, if an arbitration clause provides a procedure for arbitration that later proves unworkable, the court must nevertheless enforce the arbitration clause while remedying the flawed procedure. *Erving v. Virginia Squares Basketball Club*, 468 F.2d 1064 (2d Cir. 1972); *Morris v. New York Football Giants, Inc.*, 150 Misc.2d 271, 278, 575 N.Y.S.2d 1013, 1017 (Sup. Ct. NY Cty. 1991). Here, if (contrary to fact) the contractually-stipulated forum is unavailable, then the remedy is to send plaintiff to a reputable arbitral alternative, such as the American Arbitration Association, not to allow him to break his promise to arbitrate. *See Lubowiecki v. Ernst & Young U.S. LLP*, 2005 WL 339785 (N.J. Super. A.D. Dec. 8, 2005) (upholding order that proper remedy for

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Hon. Denise Cote                                                                    3

objection to an arbitral forum is judicial designation of an alternate arbitral forum such as AAA).

In sum, I respectfully submit that there is no need for a conference with the Court. Plaintiff has a forum available to it to which he is free to resort today.

Respectfully yours,

Gerard E. Harper

cc:     Blaine H. Bortnick, Esq. (by email and hard copy)
        Daniel T. Hughes, Esq. (by email and hard copy)

Exhibit E



WRITER'S ADDRESS:
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 434-0102
(212) 434-0105 fax
email: hughes@litchfieldcavo.com

December 14, 2005

**BY HAND**

Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007-0112

      Re:    Vaughn v. Leeds, Morelli & Brown, P.C. et al.
             04 Civ. 8391 (DLC)

Dear Judge Cote:

    As you know, this firm represents the defendant, Leeds, Morelli & Brown, LLP and individual lawyers associated with that firm (collectively "the Leeds defendants") in connection with the above-referenced matter. This letter is sent in response to the letter dated December 7, 2005 of Blaine H. Bortnick of the firm Liddle & Robinson, L.L.P. to your Honor.

    You will recall that the defendant, Prudential Securities, Inc. ("PSI") previously moved to compel arbitration based upon the arbitration clause contained in the Settlement Agreement and General Release signed by plaintiff, Vaughn. The Leeds defendants moved, as well, to compel arbitration based upon an estoppel theory where, as here, the claim is intertwined with the agreement containing the arbitration clause and insofar as plaintiff alleged concerted misconduct. Your Honor granted the motion to compel arbitration as to both defendants by decision dated August 12, 2005.

    The arbitration clause in the subject Settlement Agreement and General Release designated either the New York Stock Exchange (NYSE) or the National Association of Securities Dealers (NASD) as the arbitral bodies to resolve the dispute.

    Four months elapsed and defendants had heard nothing from plaintiff's counsel and received no statement of claim in arbitration. However, last week, counsel for Vaughn corresponded to this Court to advise that the NYSE had sua sponte declined to exercise jurisdiction over claims against the Leeds defendants and that, therefore, the stay should be lifted and the matter be litigated as against all defendants.

---

**LITCHFIELD**

~~Attorneys at~~ CAVO LLP

Page 2

Not only has counsel failed to supply this Court or the defendants with a copy of the claim filed with the NYSE but his letter is notably silent as to why he never submitted the claim to the NASD, an alternate forum agreed to by the parties in the agreement.

Nevertheless, we have contacted the NASD, and as set forth on the attached Declaration of Shari Lewis, Esq., we were advised that there is no impediment to plaintiff's pursuit of his claims against both PSI and LM&B in an NASD arbitration.

Plaintiff's counsel, Liddle & Robinson, L.L.P., is a firm that has a substantial practice before the NASD and should, therefore, be familiar with the foregoing practice and policy. In fact, in October of this year, they secured a decision and the NASD exercised jurisdiction in arbitration against a non-member who neither executed a uniform submission agreement (agreeing to NASD jurisdiction), nor entered an agreement to arbitrate. See In The Matter Of The Arbitration Between: Moshe Marc Cohen v. 1717 Capital Management Company and Nationwide Provident, 2005 WL 3029051 (October 28, 2005) (copy enclosed).

In light of the NASD's willingness to arbitrate this dispute, there is no need for this Court's intervention or further expenditure of the resources of the Court and parties on this issue.

Very truly yours,

Daniel T. Hughes

DTH:bd
Enclosure
cc:     Blaine H. Bortnick, Esq.
        Gerard Harper, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JEFFREY S. VAUGHN, individually and on behalf of
those class members similarly situated,                              Index No. 04 Civ. 8391 (DLC)

                                    Plaintiffs,

                    -against-
                                                              DECLARATION OF SHARI
LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI        CLAIRE LEWIS
& BROWN, L.L.P., LEEDS & MORELLI, LEEDS,
MORELLI & BROWN, PRUDENTIAL SECURITIES,
INC., PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN,
and JOHN DOES, JAMES VAGNINI, FREDERIC
DAVID OSTROVE, ROBERT JOHN VALLI JR.,
DISCRIMINATION ON WALL STREET, INC. and
DISCRIMINATION ON WALL STREET
MANHATTAN, INC. and JOHN DOES, ESQS. 1-10 and
JANE DOES, ESQS. 1-10 a fictitious designation for
presently and unknown licensed attorneys, professionals
and/or unknown persons or entities,

                                    Defendants.
-----------------------------------------------------------X

I, SHARI CLAIRE LEWIS, pursuant to 28 U.S.C. § 1746, hereby declare the following:

    1.      I am a partner in the law firm Rivkin Radler LLP.  We are counsel for defendants,

Leeds Morelli & Brown P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli

& Brown, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David

Ostrove, and Robert John Valli, Jr. (collectively "Leeds Defendants") in other matters.

    2.      Litchfield Cavo LLP, counsel of record for the Leeds defendants herein, received

a letter from plaintiff's counsel to the Court stating that the New York Stock Exchange

("NYSE") declined to exercise jurisdiction over the plaintiff's claims against the Leeds

defendant. The Leeds defendants have not heretofore been provided with a copy of plaintiff's

submission to NYSE nor are they privy to the telephone conversation referred to in plaintiff's counsel's letter.

3.    In any event, the plaintiff's counsel's letter conspicuously made no mention of whether the National Association of Securities Dealers, Inc. ("NASD") would entertain jurisdiction, despite the fact that the NASD was also a forum selected by the parties in the arbitration clause at issue.

4.    Therefore, on December 12, 2005, I telephoned the office of NASD Chief Counsel, Jean Feeney, whose phone number is listed as the proper contact for "Arbitration Rule Questions" at the NASD website: http://www.nasd.com.

5.    Although Ms. Feeney was unavailable, I left a message explaining that we had a question regarding the ability of the NASD Dispute Resolution program to hear an arbitration brought by an ex-employee of a member against an NASD member and non-member who is alleged to have acted in concert.

6.    On December 12, 2005 and December 13, 2005 I spoke with John Nachmann, Esq. of the NASD. I stated that we had a claim between an ex-employee of a member against an NASD member and a non-member law firm, who are alleged to have acted in concert (conspired) in connection with the settlement of an employment discrimination claim. I advised him that there was a Federal Court Order directing that the claim be arbitrated pursuant to the agreement between the ex-employee and member and that the agreement designated the NASD as a proper forum for arbitration of the dispute. I also advised Mr. Nachmann that the Court ordered the claims against the law firm to proceed to arbitration, despite the fact that the law firm was not a signatory to the agreement, under the estoppel/intertwining doctrine.

7.    Based upon these facts, I asked Mr. Nachmann whether there was any impediment to NASD Dispute Resolution's program hearing the arbitration. At the outset, Mr.

2

Nachmann stated that any decision to deny use of the facility would only occur after the issue had been briefed by both sides and a hearing conducted. He also advised that the circumstance we were discussing was apparently not unusual and that under Rule 10101 of the NASD's Rules for Arbitration, as long as there is an associated person, a member, or a customer on both sides of the claim, the NASD can hear the entire controversy, including the non-member claim.

8.    There is no dispute that defendant Prudential Securities, Inc. is a NASD member and that its ex-employee, plaintiff Vaughn, is therefore an "associated person", as defined by the NASD.

9.    Accordingly, there appears to be no impediment to the use of the NASD Dispute Resolution facility for arbitration as compelled by this Court's Order of August 12, 2005.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: Uniondale, New York
       December 13, 2005

_____
Shari Claire Lewis (SCL-0527)

1906479 v2

3

Exhibit F

# LITCHFIELD
## CAVO LLP
Attorneys at Law

WRITER'S ADDRESS:
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 434-0102
(212) 434-0105 fax
email: hughes@litchfieldcavo.com

December 20, 2005

Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007-0112

      Re:    Vaughn v. Leeds, Morelli & Brown, P.C. et al.
              04 Civ. 8391 (DLC)

Dear Judge Cote:

As you know, this firm represents the defendants Leeds, Morelli & Brown, P.C. and certain attorneys and members of that firm (collectively referred to herein as "the Leeds defendants") in the above-referenced matter currently on this Court's suspense docket. We apologize for further burdening this Court with yet an additional letter, but the December 16, 2005 letter sent by Mr. Bortnick warrants this brief reply.

As a threshold matter, plaintiff distorts the essence of this Court's decision which compelled arbitration of this dispute both as against Prudential Securities, Inc. ("PSI") and the Leeds defendants. Contrary to Plaintiff's characterization, this Court's order did not cede resolution of the question of whether Plaintiff's claims should be arbitrated to either the NYSE or the NASD. Rather, this Court affirmatively concluded that the dispute was subject to a binding arbitration clause and merely left open for the arbitrators to decide the discrete procedural question of the type of arbitration Plaintiff would be entitled to obtain (class-wide or individual).

Whether or not the NYSE rejected Plaintiff's class action, as requested, was immaterial as this Court expressly contemplated that possibility in its decision and recognized it would not impair arbitrability of Plaintiff's individual claim. This conclusion was soundly based in federal precedent.[1]

---

[1] See, e.g., Gilmer v Interstate/Johnson Lane Corp., 500 U. S. 20 (1991) (holding that even assuming NYSE rules preclude class action arbitration of the ADEA claims alleged the arbitration agreement was still enforceable); see also Johnson v West Suburban Bank, 225 F. 3d 366 (3d Cir. 2000), (compelling arbitration of a putative class action of T.I.L.A. claims despite the assumption that the arbitral body selected precluded class treatment, noting that the right to proceed as a class was procedural under Rule 23 and was waivable by entry into an arbitration agreement).

---

**LITCHFIELD**

Attorneys at Law **CAVO** LLP

Page 2

Thus, Plaintiff's recent letter simply rehashes arguments relative to arbitrability of class actions before the NASD or the NYSE which were already raised by him and rejected by this Court in its decision on the motion to compel arbitration. This disguised effort at reconsideration is in abject violation of the local rules of this Court.[2]

By his counsel's silence, Plaintiff also concedes that not only would the NASD entertain Plaintiff's claims against both the Leeds defendants and PSI, but that Plaintiff has never interposed the claim with the NASD despite the very clear language in the arbitration clause at issue, which designated either the NYSE or the NASD as the proper forums to resolve this dispute.

Plaintiff seeks to excuse his responsibility to seek arbitration before the NASD by the after-the-fact contention that the arbitration clause in issue gives him the right to select either the NYSE or the NASD to the exclusion of the other forum, even though there is no such exclusionary language in the arbitration clause in issue. This stands in stark contrast to the unpublished non- controlling decision in Yates v. Gunnallen Financial, No. CO5-1510BZ (U.S.D.C. ND CA, July 8, 2005) relied upon by plaintiff. Yates has no application or precedential value to this case.

Nevertheless, solely on the basis of this decision, Plaintiff contends that NYSE's rejection of his claim relieves him of any obligation to arbitrate before the NASD. Plaintiff's rationalization in this regard is flawed. First, as noted above the arbitration clause here does not permit plaintiff to elect one forum to the exclusion of the other. Second, contrary to plaintiffs' claim, the clause in issue is not ambiguous but clearly provides that both forums are equally available without restriction or limitation.

In the final analysis, this Court need not take any further action relative hereto. The NASD was, and still is, an agreed upon arbitrable forum which will entertain the dispute between plaintiff, and both defendants. Plaintiff's obligation to arbitrate his claims remains unchanged regardless of whether either or both forums decline to entertain a class-wide proceeding.

Respectfully submitted,

Daniel T. Hughes

DTH:jdc
cc:    Gerald H. Harper, Esq.
       Blaine H. Bortnick

---

[2]  See Local Rules 6.3 requiring motions for reconsideration to be made within ten (10) days.

Aug-15-06    11:31am    From-litchfield cavo llp                    +2124340105              T-853  P.003/019  F-956



# LITCHFIELD
### CAVO LLP
Attorneys at Law

WRITER'S ADDRESS:
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 434-0102
(212) 434-0105 fax
email: hughes@litchfieldcavo.com

December 14, 2005

**BY HAND**

Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007-0112

   Re: Vaughn v. Leeds, Morelli & Brown, P.C. et al.
     04 Civ. 8391 (DLC)

Dear Judge Cote:

   As you know, this firm represents the defendant, Leeds, Morelli & Brown, LLP and individual lawyers associated with that firm (collectively "the Leeds defendants") in connection with the above-referenced matter. This letter is sent in response to the letter dated December 7, 2005 of Blaine H. Bortnick of the firm Liddle & Robinson, L.L.P. to your Honor.

   You will recall that the defendant, Prudential Securities, Inc. ("PSI") previously moved to compel arbitration based upon the arbitration clause contained in the Settlement Agreement and General Release signed by plaintiff, Vaughn. The Leeds defendants moved, as well, to compel arbitration based upon an estoppel theory where, as here, the claim is intertwined with the agreement containing the arbitration clause and insofar as plaintiff alleged concerted misconduct. Your Honor granted the motion to compel arbitration as to both defendants by decision dated August 12, 2005.

   The arbitration clause in the subject Settlement Agreement and General Release designated either the New York Stock Exchange (NYSE) or the National Association of Securities Dealers (NASD) as the arbitral bodies to resolve the dispute.

   Four months elapsed and defendants had heard nothing from plaintiff's counsel and received no statement of claim in arbitration. However, last week, counsel for Vaughn corresponded to this Court to advise that the NYSE had sua sponte declined to exercise jurisdiction over claims against the Leeds defendants and that, therefore, the stay should be lifted and the matter be litigated as against all defendants.

---

Aug-15-06   11:32am   From-litchfield cavo llp                    +2124340105              T-853   P.004/010   F-955

# LITCHFIELD
#### Attorneys at CAVO LLP

Page 2

Not only has counsel failed to supply this Court or the defendants with a copy of the claim filed with the NYSE but his letter is notably silent as to why he never submitted the claim to the NASD, an alternate forum agreed to by the parties in the agreement.

Nevertheless, we have contacted the NASD, and as set forth on the attached Declaration of Shari Lewis, Esq., we were advised that there is no impediment to plaintiff's pursuit of his claims against both PSI and LM&B in an NASD arbitration.

Plaintiff's counsel, Liddle & Robinson, L.L.P., is a firm that has a substantial practice before the NASD and should, therefore, be familiar with the foregoing practice and policy. In fact, in October of this year, they secured a decision and the NASD exercised jurisdiction in arbitration against a non-member who neither executed a uniform submission agreement (agreeing to NASD jurisdiction), nor entered an agreement to arbitrate. See In The Matter Of The Arbitration Between: Moshe Marc Cohen v. 1717 Capital Management Company and Nationwide Provident, 2005 WL 3029051 (October 28, 2005) (copy enclosed).

In light of the NASD's willingness to arbitrate this dispute, there is no need for this Court's intervention or further expenditure of the resources of the Court and parties on this issue.

Very truly yours,

Daniel T. Hughes

DTH:bd
Enclosure
cc:    Blaine H. Bortnick, Esq.
       Gerard Harper, Esq.

Aug-15-06   11:32am   From-litchfield cavo llp                    +2124340105        T-868  P.005/018  F-858

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JEFFREY S. VAUGHN, individually and on behalf of
those class members similarly situated,                                 Index No. 04 Civ. 8391 (DLC)

                                        Plaintiffs,

            -against-                                        DECLARATION OF SHARI
                                                             CLAIRE LEWIS
LEEDS, MORELLI & BROWN, P.C., LEEDS, MORELLI
& BROWN, L.L.P., LEEDS & MORELLI, LEEDS,
MORELLI & BROWN, PRUDENTIAL SECURITIES,
INC., PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN,
and JOHN DOES, JAMES VAGNINI, FREDERIC
DAVID OSTROVE, ROBERT JOHN VALLI, JR.,
DISCRIMINATION ON WALL STREET, INC. and
DISCRIMINATION ON WALL STREET
MANHATTAN, INC. and JOHN DOES, ESQS. 1-10 and
JANE DOES, ESQS. 1-10 a fictitious designation for
presently and unknown licensed attorneys, professionals
and/or unknown persons or entities,

                                        Defendants.
--------------------------------------------------------------X

I, SHARI CLAIRE LEWIS, pursuant to 28 U.S.C. § 1746, hereby declare the following:

        1.      I am a partner in the law firm Rivkin Radler LLP. We are counsel for defendants,

Leeds Morelli & Brown P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli

& Brown, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David

Ostrove, and Robert John Valli, Jr. (collectively "Leeds Defendants") in other matters.

        2.      Litchfield Cavo LLP, counsel of record for the Leeds defendants herein, received

a letter from plaintiff's counsel to the Court stating that the New York Stock Exchange

("NYSE") declined to exercise jurisdiction over the plaintiff's claims against the Leeds

defendant. The Leeds defendants have not heretofore been provided with a copy of plaintiff's

Aug-18-06   11:32am   From-litchfield cavo llp                    +2124340105              T-853   P.005/019   F-956

submission to NYSE nor are they privy to the telephone conversation referred to in plaintiff's counsel's letter.

3.      In any event, the plaintiff's counsel's letter conspicuously made no mention of whether the National Association of Securities Dealers, Inc. ("NASD") would entertain jurisdiction, despite the fact that the NASD was also a forum selected by the parties in the arbitration clause at issue.

4.      Therefore, on December 12, 2005, I telephoned the office of NASD Chief Counsel, Jean Feeney, whose phone number is listed as the proper contact for "Arbitration Rule Questions" at the NASD website: http://www.nasd.com.

5.      Although Ms. Feeney was unavailable, I left a message explaining that we had a question regarding the ability of the NASD Dispute Resolution program to hear an arbitration brought by an ex-employee of a member against an NASD member and non-member who is alleged to have acted in concert.

6.      On December 12, 2005 and December 13, 2005 I spoke with John Nachmann, Esq. of the NASD. I stated that we had a claim between an ex-employee of a member against an NASD member and a non-member law firm, who are alleged to have acted in concert (conspired) in connection with the settlement of an employment discrimination claim. I advised him that there was a Federal Court Order directing that the claim be arbitrated pursuant to the agreement between the ex-employee and member and that the agreement designated the NASD as a proper forum for arbitration of the dispute. I also advised Mr. Nachmann that the Court ordered the claims against the law firm to proceed to arbitration, despite the fact that the law firm was not a signatory to the agreement, under the estoppel/intertwining doctrine.

7.      Based upon these facts, I asked Mr. Nachmann whether there was any impediment to NASD Dispute Resolution's program hearing the arbitration. At the outset, Mr.

Nachmann stated that any decision to deny use of the facility would only occur after the issue had been briefed by both sides and a hearing conducted. He also advised that the circumstance we were discussing was apparently not unusual and that under Rule 10101 of the NASD's Rules for Arbitration, as long as there is an associated person, a member, or a customer on both sides of the claim, the NASD can hear the entire controversy, including the non-member claim.

8.       There is no dispute that defendant Prudential Securities, Inc. is a NASD member and that its ex-employee, plaintiff Vaughn, is therefore an "associated person", as defined by the NASD.

9.       Accordingly, there appears to be no impediment to the use of the NASD Dispute Resolution facility for arbitration as compelled by this Court's Order of August 12, 2005.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: Uniondale, New York
       December 13, 2005

                                        Shari Claire Lewis (SCL-0527)

1906479 v1

3

Aug-15-06   11:33am   From-littchfield cavo llp          +2124340105         T-853   P.008/019   F-956

Westlaw.

2005 WL 3029051 (N.A.S.D.)                                                                Page 1

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))


National Association of Securities Dealers, Inc.

*1 IN THE MATTER OF THE ARBITRATION BETWEEN:
MOSHE MARC COHEN, ("CLAIMANT") v.
1717 CAPITAL MANAGEMENT COMPANY AND NATIONWIDE PROVIDENT, ("RESPONDENTS")
Docket Number 04-05841
Date of Service (For NASD Dispute Resolution use only): October 28, 2005

Signature Date: October 28, 2005

Award

Hearing Site: New York, New York

Nature of the Dispute: Associated Person vs. Member and Non-Member.

REPRESENTATION OF PARTIES: Claimant Moshe Marc Cohen hereinafter referred to as
("Claimant"); Mark A. Susswein, Esq., Liddle & Robinson, L.L.P., NewYork, NY,
previously represented by Alyson C. Bruns, Esq., Liddle & Robinson, L.L.P. New
York, NY.

Respondents 1717 Capital Management Company ("1717 Capital") and Nationwide
Provident ("Nationwide"); hereinafter collectively referred to as ("Respondents");
Christopher C. Coss, Esq., Coss & Momjian, LLP, Bala Cynwyd, PA.

CASE INFORMATION: Statement of Claim filed on or about: August 18, 2004.

Claimant signed the Uniform Submission Agreement: August 16, 2004.

Statement of Answer and Counterclaim filed by Respondent 1717 and Nationwide on
or about: November 2, 2004.

Respondents did not sign a Uniform Submission Agreement.

CASE SUMMARY: Claimant asserted the following causes of action: defamation,
tortious interference with prospective economic advantage, injurious falsehood,
libel for earned commissions and renewal commissions, failure to pay earned
commission compensation and violation of the New York Labor Law.

Unless specifically admitted in their Answer, Respondents 1717 Capital and
Nationwide denied the allegations made in the Statement of Claim and asserted
various affirmative defenses. In their Counterclaim, Respondents asserted the
following cause of action: failure to repay monies owed.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Aug-15-08  11:34am  From-litchfield cavo llp                +2124340105        T-853  P.008/019  F-855

2005 WL 3029051 (N.A.S.D.)                                                        Page 2

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))


   RELIEF REQUESTED: Claimant requested that the Panel award him damages in an
amount to be determined at hearing, interest at the statutory rate of 9% per annum
on all claims from the date said amounts were due; attorneys' fees; costs; and
such other and further relief as the Panel deems appropriate.

   In their Statement of Answer, Respondents requested that the Statement of Claim
be dismissed in its entirety, that Respondents be awarded their attorneys' fees
and costs in defending this proceeding and also be awarded relief on the
Counterclaim.

   In their Counterclaim, Respondents requested damages in the amount of
$1,395.84, together with their cost, attorneys' fees and any additional relief
this panel deems proper. In his response to the Counterclaim, Claimant requested
that the Panel dismiss the Counterclaim in its entirety.

   OTHER ISSUES CONSIDERED AND DECIDED: Respondents 1717 Capital did not file with
NASD Dispute Resolution a properly executed Uniform Submission Agreement but is
required to submit to arbitration pursuant to the Code and, having answered the
claim, and appeared and testified at the hearing, is bound by the determination of
the Panel on all issues submitted.

   *2 Respondent Nationwide is not a member of NASD and does not have an agreement
to arbitrate. However, Nationwide answered the Statement of Claim, appeared and
testified at the hearing and is, therefore, bound by the determination of the
Panel on all issues submitted.

   The parties have agreed that the Award in this matter may be executed in
counterpart copies or that a handwritten, signed Award may be entered.

   AWARD: After considering the pleadings, the testimony and evidence presented at
the hearing, the Panel has decided in full and final resolution of the issues
submitted for determination as follows:

   1. Claimant's claims are denied in their entirety.

   2. The Panel recommends the expungement of all reference to the above captioned
arbitration from Moshe Marc Cohen registration records maintained by the Central
Registration Depository ("CRD"), with the understanding that pursuant to NASD
Notices to Members 99-09 and 99-54, Cohen must obtain confirmation from a court of
competent jurisdiction before CRD will execute the expungement directive.

   3. The Panel further recommends that the following record should be expunged:

   a) The termination comment that currently appears in item 3 on the Form U-5
filed with CRD by Respondent 1717 Capital Management Company (CRD 4082) on behalf
of Claimant Moshe M. Cohen should be expunged (i.e., "Firm concluded that
representative violated firm policies and procedures.") The following language
shall replace the original termination comment: "Association between firm and

                    © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3029051 (N.A.S.D.)                                                              Page 3

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))


registered representative ended following a good faith disagreement regarding the
application of a company policy concerning the use of money orders." The reason
for termination shall remain as "discharge".

  b) The description of the nature of the internal review located in item 3 of
Part 1 of the "Internal Review DRP which now reads "Asset Management Company
brought activity in two customer accounts to attention of firm. Investigation led
firm to conclude that representative violated various firm policies and
procedures. Conclusion of investigation was termination of representative's
registration" should also be expunged. The replacement language to item 3 of Part
1 of the Internal Review DRP is as follows: "Association between firm and
registered representative ended following a good faith disagreement regarding the
application of a company policy concerning the use of money orders." "The
affirmative response to Form U-5 question 7B should be expunged and replaced with
"no". In addition, the accompanying Form U-5 Internal Review DRP should also be
expunged in its entirety as the Internal Review was concluded with Claimant's
termination and therefore Claimant was not subject to Internal Review at the time
of termination or when the Form U-5 was filed with CRD."

  c) In addition, all Form U-4 references to and disclosure of Claimant's
termination from 1717 Capital Management Company should be expunged (e.g., "yes"
answer to Form U-4 question 14J(1) and accompanying U-4 Termination DRP).

  *3 d) The expungement recommendations are made with the understanding that,
pursuant to NASD Notices to Members 99-09 and 99-54, Claimant Moshe M. Cohen must
obtain confirmation of the expungement recommendations contained in the Award from
a court of competent jurisdiction before CRD will execute the expungement
directives.

  4. Any and all relief not specifically addressed herein is denied.

  FEES: Pursuant to the Code, the following fees are assessed:

  Filing Fees: NASD Dispute Resolution will retain or collect the non-refundable
filing fees for each claim:

Initial claim filing fee =  $ 250.00
Counter claim filing fee =  $ 300.00


  Member Fees: Member fees are assessed to each member firm that is a party in
these proceedings or to the member firm that employed the associated person at the
time of the events giving rise to the dispute. Accordingly, the Respondent 1717
Capital Management Company is a party.

Member surcharge =            $ 1,500.00

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3029051 (N.A.S.D.)                                                    Page 4

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))


Pre-hearing process fee =   $   750.00
Hearing process fee =       $ 2,200.00
-------------------------------------------
Total Member fees =         $ 4,450.00


  Adjournment Fees: Adjournment granted during these proceedings for which fees
were assessed:


October 10 and 12, 2005, adjournment by Claimant =                    $ 500.00
October 10 and 12, 2005, adjournment by Respondents joint and several $ 500.00
  =


  Forum Fees and Assessments: The Panel has assessed forum fees for each session
conducted. A session is any meeting between the parties and the arbitrator(s),
including a pre-hearing conference with the arbitrators, that lasts four (4) hours
or less. Fees associated with these proceedings are:


One (1) Pre-hearing conference session with                     = $ 1,000.00
  Panel @ $1,000.00 per session
Pre-hearing conference:                     January    1 session
                                            18,
                                            2005

One (1) Hearing session with the Panel @                        = $ 1,000.00
  $1,000.00 per session
Hearing Date:                               October    1 session
                                            11,
                                            2005

------------------------------------------------------------------------------
Total Forum Fees                                                = $ 2,000.00


  1. The Panel has assessed $1,000.00 of the forum fees to Claimant.

  2. The Panel has assessed $1,000.00 of the forum fees jointly and severally to
Respondents.

  Fee Summary: 1. Claimant is solely liable for:


Initial Filing Fee =            $   250.00
Adjournment Fee =               $   500.00
Forum Fees =                    $ 1,000.00

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3029051 (N.A.S.D.)                                         Page 5

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))


----------------------------------------------------
Total Fees =                           $ 1,750.00
Less payments =                        $ 1,500.00
----------------------------------------------------
Balance Due NASD Dispute Resolution =  $   250.00


   2. Respondent 1717 Capital is solely liable for:


Member Fees =                          $ 4,450.00
----------------------------------------------------
Total Fees =                           $ 4,450.00
Less payments =                        $ 4,450.00
----------------------------------------------------
Balance Due NASD Dispute Resolution =  $    00.00


   3. Respondents are jointly and severally liable for:


Counterclaim filing fee =$   300.00
Forum Fee =                            $ 1,000.00
Adjournment fee =                      $   500.00
----------------------------------------------------
Total Fees =                           $ 1,800.00
Less payment =                         $    00.00
----------------------------------------------------
Balance Due NASD Dispute Resolution =  $ 1,800.00


   *4 All balances are payable to NASD Dispute Resolution and are due upon receipt
pursuant to Rule 10330(g) of the Code.

   ARBITRATION PANEL: Ernest Fanwick, Esq.- Public-Arbitrator, Presiding Chairperson

   William E.S. Browning, Esq.-Non-Public Arbitrator

   Bennett A. Hall-Public Arbitrator

   Concurring Arbitrators' Signature(s): I, the undersigned arbitrator, do hereby
affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am
the individual described herein and who executed this instrument, which is my
award.

Ernest Fanwick, Esq.

Public Arbitrator, Presiding Chairperson

              © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3029051 (N.A.S.D.)                                                    Page 6

2005 WL 3029051 (N.A.S.D.)

(Cite as: 2005 WL 3029051 (N.A.S.D.))


William E.S. Browning, Esq.

Non-Public Arbitrator

Bennett A. Hall

Public Arbitrator

  2005 WL 3029051 (N.A.S.D.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Aug-15-06    11:35am    From-litchfield cavo llp                         +2124340105         T-853  P.014/018  F-956



WRITER'S ADDRESS:
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 434-0102
(212) 434-0105 fax
email: hughes@litchfieldcavo.com

December 15, 2005

**BY HAND**

Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007-0112

      Re:    Vaughn v. Leeds, Morelli & Brown, P.C. et al.
             04 Civ. 8391 (DLC)

Dear Judge Cote:

      As you know, this firm represents the defendant, Leeds, Morelli & Brown, LLP and individual lawyers associated with that firm (collectively "the Leeds defendants") in connection with this matter. We write to the Court in follow-up to our letter of yesterday in which we responded to the letter of Blaine Bortnick dated December 7, 2005 to your Honor.

      We have just received copies of the documents plaintiff's counsel purportedly filed with the NYSE in October. A copy of the material received from plaintiff's counsel is enclosed for the Court's reference.

      In this regard, Liddle & Robinson, L.L.P., disingenuously advised this court that the plaintiff had submitted the claim originally presented to this Court to the NYSE and the NYSE rejected its claim on jurisdictional grounds. In reality however, Vaughn's submission did not seek substantive resolution of his claim but requested that the NYSE reject his claim on the ground that class actions are unavailable under the NYSE rules. That is, Mr. Liddle affirmatively solicited a rejection of the claim by the NYSE on grounds already raised and rejected by this Court. Moreover, he did so under circumstances in which he mischaracterized the nature of this Court's decision to that body.

      In this regard, Mr. Liddle suggested to the NYSE that your Honor's decision left for the arbitrators to decide whether or not this claim, stylized as a class action was, in fact, arbitrable as he stated:

---

Aug-15-06    11:36am    From-litchfield cavo llp                        +2124340105        T-853  P.015/019  F-858

# LITCHFIELD
Attorneys at Law  CAVO LLP

Page 2

> ...The Court concluded that the question of whether the arbitration
> provision applies to an action brought as a class action is a matter for the
> arbitrators to decide...

In fact, this Court's decision clearly reached the question of arbitrability and compelled arbitration leaving only the question regarding whether a class wide arbitration was available, open to the arbitrator's decision.

This, your Honor expressly rejected Vaughn's argument that the purported unavailability of class action treatment in arbitration foreclosed arbitrability of Vaughn's claim, ruling that:

> ...This interpretation, however, contradicts the clear statement that the
> arbitration clause applies to "any" claim or controversy related to the
> Agreement. **Even assuming that Vaughn is right and the applicable
> arbitration rules do, indeed, forbid class action arbitrations under all
> circumstances, it would be plausible to interpret the arbitration clause
> to require all claims to be arbitrable and to disallow class actions with
> no further qualifications or caveats.** (Emphasis added) [Page 8,
> Opinion and Order, dated August 12, 2005]

Despite the foregoing, Mr. Liddle attempted to collaterally attack your Honor's decision by affirmatively asking the NYSE to overrule this Court's conclusion and issue a decision that Vaughn may pursue his class action claims in court. While the NYSE apparently was unwilling to overrule this Court, plaintiff's counsel secured the rejection of the claim that they sought, albeit on different grounds.

In light of the questionable circumstances under which the NYSE's rejection was procured, coupled with the availability of the NASD as an alternate arbitrable forum, Vaughn's request for court intervention should be summarily rejected.

Very truly yours,

Daniel T. Hughes

DTH:jdc
Enclosure
cc:    Blaine H. Bortnick, Esq. (via facsimile)
       Gerard Harper, Esq. (via facsimile)

Aug-15-06    11:37am    From-litchfield cavo llp                          +2124360105          T-853    P.016/016    F-956

# LITCHFIELD
### Attorneys at Law  CAVO LLP

WRITER'S ADDRESS:
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 434-0102
(212) 434-0106 fax
email: hughes@litchfieldcavo.com

December 20, 2005

Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007-0112

      Re:    Vaughn v. Leeds, Morelli & Brown, P.C. et al.
             04 Civ. 8391 (DLC)

Dear Judge Cote:

As you know, this firm represents the defendants Leeds, Morelli & Brown, P.C. and certain attorneys and members of that firm (collectively referred to herein as "the Leeds defendants") in the above-referenced matter currently on this Court's suspense docket. We apologize for further burdening this Court with yet an additional letter, but the December 16, 2005 letter sent by Mr. Bortnick warrants this brief reply.

As a threshold matter, plaintiff distorts the essence of this Court's decision which compelled arbitration of this dispute both as against Prudential Securities, Inc. ("PSI") and the Leeds defendants. Contrary to Plaintiff's characterization, this Court's order did not cede resolution of the question of whether Plaintiff's claims should be arbitrated to either the NYSE or the NASD. Rather, this Court affirmatively concluded that the dispute was subject to a binding arbitration clause and merely left open for the arbitrators to decide the discrete procedural question of the type of arbitration Plaintiff would be entitled to obtain (class-wide or individual).

Whether or not the NYSE rejected Plaintiff's class action, as requested, was immaterial as this Court expressly contemplated that possibility in its decision and recognized it would not impair arbitrability of Plaintiff's individual claim. This conclusion was soundly based in federal precedent.[1]

---

[1]  See, e.g., Gilmer v Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) (holding that even assuming NYSE rules preclude class action arbitration of the ADEA claims alleged the arbitration agreement was still enforceable); see also Johnson v West Suburban Bank, 225 F. 3d 366 (3d Cir. 2000), (compelling arbitration of a putative class action of T.I.L.A. claims despite the assumption that the arbitral body selected precluded class treatment, noting that the right to proceed as a class was procedural under Rule 23 and was waivable by entry into an arbitration agreement).

**LITCHFIELD**

Attorneys at Law **CAVO** LLP

Page 2

Thus, Plaintiff's recent letter simply rehashes arguments relative to arbitrability of class actions before the NASD or the NYSE which were already raised by him and rejected by this Court in its decision on the motion to compel arbitration. This disguised effort at reconsideration is in abject violation of the local rules of this Court.[2]

By his counsel's silence, Plaintiff also concedes that not only would the NASD entertain Plaintiff's claims against both the Leeds defendants and PSI, but that Plaintiff has never interposed the claim with the NASD despite the very clear language in the arbitration clause at issue, which designated either the NYSE or the NASD as the proper forums to resolve this dispute.

Plaintiff seeks to excuse his responsibility to seek arbitration before the NASD by the after-the-fact contention that the arbitration clause in issue gives him the right to select either the NYSE or the NASD to the exclusion of the other forum, even though there is no such exclusionary language in the arbitration clause in issue. This stands in stark contrast to the unpublished non- controlling decision in Yates v. Gunnallen Financial, No. CO5-1510BZ (U.S.D.C. ND CA, July 8, 2005) relied upon by plaintiff. Yates has no application or precedential value to this case.

Nevertheless, solely on the basis of this decision, Plaintiff contends that NYSE's rejection of his claim relieves him of any obligation to arbitrate before the NASD. Plaintiff's rationalization in this regard is flawed. First, as noted above the arbitration clause here does not permit plaintiff to elect one forum to the exclusion of the other. Second, contrary to plaintiffs' claim, the clause in issue is not ambiguous but clearly provides that both forums are equally available without restriction or limitation.

In the final analysis, this Court need not take any further action relative hereto. The NASD was, and still is, an agreed upon arbitrable forum which will entertain the dispute between plaintiff, and both defendants. Plaintiff's obligation to arbitrate his claims remains unchanged regardless of whether either or both forums decline to entertain a class-wide proceeding.

Respectfully submitted,

Daniel T. Hughes

DTH:jdc
cc:    Gerald H. Harper, Esq.
       Blaine H. Bortnick

---

[2]  See Local Rules 6.3 requiring motions for reconsideration to be made within ten (10) days.

12/16/2005 14:00 FAX  212 687 1505  · LIDDLE & ROBINSON, LLP    ☒002/009

# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE
NEW YORK, N.Y. 10022

(212) 687-8500
FACSIMILE: (212) 687-1505
www.liddlerobinson.com

E-mail: bbortnick@liddlerobinson.com

SAMUEL FINKELSTEIN (1908-1988)
MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

ROBERT S. CLEMENTE
OF COUNSEL

DAVID MAREK
LEILA I. NOOR
JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ALYSON C. BRUNS
LISA O. SIDMAN

December 16, 2005

**BY HAND**
The Hon. Denise Cote
United States District Court
Southern District of New York
500 Pearl Street
Room 1040
New York, NY 10007

      Re:    Vaughn v. Leeds, Morelli & Brown, et al.;
              04 Civ. 8391(DLC)

Dear Judge Cote:

      We represent the plaintiff, Jeffrey Vaughn, in the above-referenced action. We write in response to Prudential counsel's letters of December 13 & 15, 2005, Leeds, Morelli counsel's letters of December 14 & 15, 2005 and in furtherance of plaintiff's request for a conference with the Court.

      Both defendants' counsels misconstrue the actions of plaintiff to the Court by presenting assumptions and innuendo and suggesting a direction of the Court different from that stated in the Court's Order of August 12, 2005. Simply stated, as it appears on page 8 of the Court's Order, the Court granted Prudential's motion to compel arbitration on the basis that the issue and objection to arbitration raised by plaintiff, namely the ineligibility of class actions in arbitration under the rules of the NYSE and NASD, "concerns contract interpretation and arbitration procedure and therefore is for the arbitrator, not the courts, to decide." (internal quotes and citation omitted).



LIDDLE & ROBINSON, L.L.P.

The Hon. Denise Cote                    2                    December 16, 2005

       As stated in our letter of December 7, 2005, plaintiff submitted a Statement of Claim, Uniform Submission Agreement, and filing fee and hearing deposit to the NYSE Director of Arbitration on October 28, 2005, in accordance with the Court's Order of August 12, 2005 and NYSE Rule 612. The Statement of Claim, which included a copy of the Court's Order and the Amended Complaint, sought "an expedited hearing before an arbitration panel for an order and decision granting Mr. Vaughn leave to return to court to pursue his class action claims, notwithstanding the arbitration provision providing for arbitration under the rules of the New York Stock Exchange." Plaintiff was not, as portrayed by defendants, "requesting the NYSE to exercise unprecedented appellate powers over this Court, in an attempt to override this Court's determination that plaintiff's claims are arbitrable."

       In following the Court's direction, Plaintiff submitted his dispute to the NYSE and requested that a panel of arbitrators expeditiously decide the issue of whether Plaintiff could proceed with a class action. Pursuant to NYSE Rule 604 the arbitrators are empowered ". . . . either upon their own initiative or at the request of a party [to] dismiss the proceeding and refer the parties to their judicial remedies or to any other dispute resolution forum agreed to by the parties without prejudice to any claims or defenses available to any party." It was not through misconduct or scheme of plaintiff that the NYSE elected to reject the arbitration submission due to the inclusion of the Leeds Morelli defendants upon the grounds that they are not NYSE members. Plaintiff merely sought to expeditiously resolve the class action issue before the arbitrators. We never raised (or considered) the possibility that the NYSE would reject the arbitration statement of claim at the administrative level.

       Furthermore, in accordance with the rules and procedures of the NYSE, plaintiff was not required to serve a copy of the Statement of Claim, or any form of notice, upon the defendants when he filed his claim with the NYSE. In accordance with NYSE Rule 612(a) "The Director of Arbitration shall endeavor to serve promptly on the Respondent(s) one (1) copy of the Submission Agreement and one (1) copy of the Statement of Claim." Accordingly, plaintiff bore no obligation to alert the defendants of his filing at the NYSE. We respectfully suggest that counsel's allusion that we were somehow nefarious or engaged in "sharp practices" is the result of their unfamiliarity with the NYSE procedures.

       Defendants' counsel misconstrues the NYSE Arbitration Department's procedure and calls into question the fact that Plaintiff's submission was rejected by the NYSE, as evidenced by the letter of November 3, 2005 from Mr. Harry Albirt of the NYSE (attached to our December 7 letter). It is standard procedure for the NYSE Arbitration Department to review submissions filed with the NYSE arbitration department before serving the respondent(s).[1] The NYSE may reject an arbitration submission on the grounds that, as plaintiff interprets the NYSE rules, that the claim is encompassed in a putative or certified class action. The NYSE may also decline to arbitrate any dispute pursuant to NYSE Const. Act XI § 3. See In re Solomon Inc. Shareholders' Derivative Litigation, 68 F.3d 544 (2d Cir. 1995).

---

[1] Robert S. Clemente, Esq., an attorney with this firm, was the Director of Arbitration at the NYSE from 1991 through December 2003.

LIDDLE & ROBINSON, L.L.P.

The Hon. Denise Cote                    3                    December 16, 2005

     Curiously, neither defendant has alerted the Court to the fact that pursuant to NASD Rule 10301 " . . . the Director of Arbitration, upon approval of the Executive Committee of the National Arbitration and Mediation Committee, or the National Arbitration and Mediation Committee, shall have the right to decline the use of its arbitration facilities in any dispute, claim, or controversy, where, having due regard for the purposes of the Association and the intent of this Code, such dispute, claim, or controversy is not a proper subject matter for arbitration." And that NASD rule 10301 has a similar provision as the NYSE, which provides that; "A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association."

     The agreement of the parties herein provided for arbitration "under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers", both securities industry self regulatory organizations ("SRO"). Plaintiff elected to file at the NYSE, as was his right. The NYSE has declined to accept plaintiff's claims; plaintiff should not now be forced to submit his dispute to the NASD.

     In Yates v. Gunnallen Financial, No. CO5-1510 BZ (USDC ND CA July 8, 2005) (copy attached), the court, relying in part on the Second Circuit's decision in In re Salomon, held that upon the NYSE rejecting plaintiff's claim for arbitration be should not be compelled to file at the NASD. In Yates, the plaintiff, who had a choice between the NYSE and the NASD, submitted his dispute to the NYSE. The NYSE refused Yates' submission because Gunnallen Financial was not a member of the NYSE.

     The only difference between the agreement relied upon in Yates and the agreement between the parties herein is that the agreement in Yates specifically gave plaintiff the right to elect between the NYSE and NASD for arbitration. The agreement here is silent. In light of the fact that defendants drafted the agreement in question, which plaintiff contends was obtained in furtherance of the defendants' collusion, plaintiff should not bear any burden resulting from any deficiency or vagueness in the agreement. The agreement provided for arbitration under the rules of the NYSE or NASD. Plaintiff elected the NYSE, which rejected the submission. Defendants should not now be heard to complain that the plaintiff did not then file at the NASD. As set forth above, the NASD could very well also reject plaintiff's submission of a class action complaint.

     In addition, Prudential's suggestion that plaintiff could proceed to arbitrate at the NYSE by resubmitting his claim against only Prudential is not worthy of consideration. As the defendants well know, plaintiff's claims are against both defendants for their alleged collusive actions. The claims against Prudential and the Leeds, Morelli defendants are so intertwined and interrelated that they must proceed together in the same forum.

     Finally, defendants' suggestion that plaintiff's sole remedy is arbitration and therefore the Court may, in the absence of the NYSE or NASD as applicable fora, compel arbitration before an alternative forum, such as the American Arbitration Association ("AAA") is without merit. The cases cited by Prudential are inapplicable to the facts presented here. Two of the cases cited by Prudential, (Erving v. The Virginia Squires Basketball Club and Morris v. New York Football Giants, Inc. et al.) both relate to disputes between professional athletes and their

LIDDLE & ROBINSON, L.L.P.

The Hon. Denise Cote                           4                    December 16, 2005

respective teams. In both cases the parties' agreement to arbitrate disputes specifically named the individual to serve as arbitrator, and that individual was unable to carry out their arbitral duties. In those cases the Court was permitted by the FAA to appoint a replacement arbitrator. The third case (Lubowiecki v. Ernst & Young), is an unusual situation where the court substitutes one provider for another, due to an apparent conflict between one of the parties and the provider named in the agreement. However, it is not stated in Lubowiecki, as here, that the parties agreed to arbitrate pursuant to the rules of the providers named in the agreement. That is not the case here and the Lubowiecki case is not dispositive of the issues presented here. As stated above, according to the agreement between plaintiff and Prudential:

> Any claim or controversy arising out of or related to this agreement or interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc.

The parties' agreement at issue here specifically provided for arbitration before a particular forum (an SRO) and under the rules of that forum. It is the rules of the designated fora that the parties have agreed to proceed under. Thus the instant case presents a totally different situation from Lubowiecki.

This issue is not new to this Circuit. (see: PaineWebber, Inc. v. Rutherford, 903 F.2d 107 (2d Cir. 1990); see also: In re Salomon, 68 F3d 354 (2d Cir. 1995)). In those cases the arbitration agreement provided for arbitration under the rules of a self regulatory organization ("SRO") such as the NYSE. In In re Salomon, when the arbitration provision failed, the NYSE declining to accept the case for arbitration, the Court did not rewrite the agreement of the parties to provide for arbitration before any forum, such as the AAA, but rather allowed the matters to proceed in court.

We continue to believe that the most efficient manner in which to proceed is for the Court to hold a conference in order to permit the Court and the parties an opportunity to discuss how this matter may proceed.

Respectfully submitted,

Blaine H. Bortnick (BB 3686)

cc:    Gerald E. Harper, Esq. (via facsimile / 212-373-2225)
       Daniel T. Hughes, Esq. (via facsimile / 212-434-0105)

12/08/2005 16:50 FAX 516 747 5024        LEED&MORELLI        ☒008
   12/07/2005 13:37 FAX  212 587 150☒        LIDDLE & ROBINSON, LLP        ☒002/018



# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE
NEW YORK, N.Y. 10022

(212) 687-8500
FACSIMILE: (212) 687-1805
www.liddlerobinson.com

SAMUEL FINKELSTEIN (1908-1988)
KIRIAN M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BREEHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUDDARD
JEFFREY L. LIDDLE
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

E-mail: bbortnick@liddlerobinson.com

ROBERT S. CLEMENTE
OF COUNSEL

DAVID MAREK
LEILA L. NOOR
JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ALYSON C. BRUNS
LISA O. SIOKAN

December 7 2005

The Hon. Denise Cote
United States District Court
Southern District of New York
500 Pearl Street
Room 1040
New York, NY 10007

Re:    Vaughn v. Leeds, Morelli & Brown, e al.;
       04 Civ. 8391(DLC)

Dear Judge Cote:

We represent the Plaintiff, Jeffrey Vaughn, in the above-referenced action. We write with respect to the stay in favor of arbitration which this Court ordered on August 12, 2005.

Your Honor may recall that this case is a putative class action on behalf of certain former employees of Prudential Securities, Inc. who entered into settlement agreements with their employer concerning alleged violations of racial discrimination laws. The action alleges, at heart, that the settlement agreements were the product of secret collusion between Prudential Securities and Mr. Vaughn's attorneys.

On August 12, 2005, the Court, in response to motions to dismiss filed by the defendants, stayed this matter in favor of arbitration over plaintiff's objection that this matter was ineligible for arbitration. A copy of this Court's Order is annexed hereto as Exhibit A. We subsequently filed an arbitration claim against all defendants with the New York Stock Exchange, Inc. ("NYSE"). On November 3, 2005, the NYSE rejected the arbitration claim, stating that under the NYSE rules the claim is not eligible for arbitration, regardless of whether the entities or individuals submit to its jurisdiction. A copy of the NYSE letter rejecting the arbitration is annexed

12/08/2005 16:51 FAX 516 747 5024          LEED&MORELLI                    ☑007
   12/07/2005 13:56 FAX  212 887 150●        LIDDLE & ROBINSON, LLP          ☑003/018

LIDDLE & ROBINSON, L.L.P.

The Hon. Denise Cote                          2                        December 7, 2005

hereto as Exhibit B.  Accordingly, we respectfully submit that the stay previously issued by this Court should be lifted and that the court action continue.

We respectfully suggest that it would be appropriate for the Court to hold a conference to further discuss this issue.

Respectfully submitted,

By: _____
Elaine H. Bornick (BB 3686)

BHB:cs
Enclosures

cc:    Gerald E. Harper, Esq. (via facsimile / 212-373-2225)
       Daniel T. Hughes, Esq. (via facsimile / 212-434-0105)



☑008
☑018/018

New York Stock Exchange, Inc.
20 Broad Street
New York, NY 10005



# NYSE

November 3, 2005

Blaine Bortnick, Esq.
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York 10022

Dear Mr. Bortnick:

This will confirm our conversation on October 31, 2005 wherein I advised you that the NYSE, Inc. does not have jurisdiction over Leeds, Morelli & Brown, P.C., Morelli & Brown, L.L.P., Leeds & Morelli, Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, Robert John Valli, Jr., Discrimination on Wall Street, Inc., Discrimination on Wall Street Manhattan, Inc.

Pursuant to NYSE Rule 600(a), only claims between a customer or non-member and member, allied member, member organization and/or associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc., regardless of whether the entities or individuals have submitted to jurisdiction.

Accordingly, I am returning your submission and $30.00 check. You may re-submit your claim if only Prudential Securities, Inc. is named as a party.

Sincerely,

Harry Albirt

HA/jmh
Enclosure

12/08/2005 16:51 FAX 516 747 50..     LEED&MORELLI        ☒ 009
12/07/2005 13:38 FAX 212 687 150☒    LIDDLE & ROBINSON, LLP     ☒ 005/018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X

JEFFREY S. VAUGHN, individually and on
behalf of those class members similarly
situated,

                Plaintiff,             04 Civ. 8391 (DLC)

       -v-                    OPINION AND ORDER

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, L.L.P., LEEDS &
MORELLI, LEEDS, MORELLI & BROWN,
PRUDENTIAL SECURITIES, INC., PRUDENTIAL
FINANCIAL, INC., LENARD LEEDS, STEVEN
A. MORELLI, JEFFREY K. BROWN, and JOHN
DOES, JAMES VAGNINI, FREDERIC DAVID
OSTROVE, ROBERT JOHN VALLI, JR.,
DISCRIMINATION ON WALL STREET, INC. and
DISCRIMINATION ON WALL STREET
MANHATTAN, INC., and JOHN DOES, ESQS.
1-10 and JANE DOES, ESQS., 1-10 a
fictitious designation for presently
and unknown licensed attorneys,
professionals and/or unknown persons or
entities,

              Defendants.

-----------------------------------------X

Appearances:

For the Plaintiff:

Blaine H. Bortnick
Jeffrey Liddle
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York 10022

For Defendants Leeds, Morelli & Brown,
P.C., Leeds, Morelli & Brown, L.L.P.,
Leeds & Morelli, Leeds, Morelli &
Brown, Lenard Leeds, Steven A. Morelli,
Jeffrey K. Brown, James Vagnini,
Frederic David Ostrove, and Robert John
Valli, Jr.:

12/08/2006 16:52 FAX 516 747 50..        LEED&MORELLI                    ☑010
    12/07/2006 13:39 FAX  212 887 1☐      LIDDLE & ROBBINS, LLP          ☐006/015

Daniel T. Hughes
Kevin L. Spagnoli
Litchfield Cavo LLP
420 Lexington Avenue, Suite 1750
New York, New York  10170

For Defendant Prudential Securities,
Inc. and Prudential Financial, Inc.:

Gerard E. Harper
Theodore V. Wells, Jr.
Beth S. Frank
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
1285 Avenue of the Americas
New York, New York  10019


DENISE COTE, District Judge:

     The plaintiff, Jeffrey S. Vaughn ("Vaughn"), has brought
this putative class action against his employer and the lawyers
he retained to represent him in an employment discrimination
dispute against his employer, alleging that the settlement
agreement that resolved the dispute (the "Agreement") was a
product of secret collusion between his employer and his lawyers.
The defendants have moved to dismiss this action and to compel
arbitration, relying on an arbitration provision in the
Agreement.  Vaughn contends that the arbitration provision does
not control, because the arbitration rules provided for in the
Agreement do not permit class actions, and his lawyers are not
parties to the Agreement.  For the following reasons, the motion
to compel arbitration is granted and the case is stayed until the
resolution of the arbitration proceedings.

12/08/2005 16:52 FAX 516 747 5...    LEED&MORELLI    ☑011
12/07/2005 13:39 FAX  212 887 15⬛    LIDDLE & ROBINSON, LLP    ⬛     ☑007/018

## BACKGROUND

The following facts are taken from Vaughn's amended
complaint unless otherwise noted. In 1998, Vaughn retained
lawyers from Leeds, Morelli & Brown, P.C. (collectively "Leeds
Defendants"), to assert employment discrimination claims against
his employer, Prudential Securities Incorporated, for which
Prudential Financial Inc. is a successor in interest
(collectively "Prudential Defendants"). Vaughn pursued these
claims through alternative dispute resolution procedures
including mediation. The dispute between Vaughn and the
Prudential Defendants produced the Agreement dated October 27,
1998. The Agreement, which is incorporated by reference in the
Complaint and on which Vaughn has relied in part in bringing this
action, granted the Prudential Defendants a general release of
claims in exchange for $200,000.00. The Agreement also contains
the following arbitration provision:

> Any claim or controversy arising out of or related to
> this Agreement or the interpretation thereof will be
> settled by arbitration under the then prevailing
> constitution and rules of the New York Stock Exchange,
> Inc., or the National Association of Securities
> Dealers, Inc. Judgment based upon the decision of the
> arbitrators may be entered in any court having
> jurisdiction thereof. The governing law of his
> Agreement shall be the substantive and procedural law
> of the State of New York.

(Emphasis supplied.)

Vaughn alleges that the Leeds Defendants and Prudential
Defendants had a "secret agreement" dated February 13, 1998 that
was part of an employment discrimination dispute resolution
system that the Leeds Defendants had established, and that would

3

12/08/2005 16:53 FAX 516 747 5024        LEED&MORELLI                   ☑013
12/07/2005 13:40 FAX 212 687 13▇         LIDDLE & ROBINSON, LLP       ☑009/018

things, that the arbitration clause equitably estops Vaughn from
pursuing his claims in federal court notwithstanding the fact
that the Leeds Defendants are not parties to the Agreement.
Vaughn argues among other things that because the arbitration
rules provided for in the Agreement do not permit class actions,
and he has styled his claim as a class action, this matter should
not be referred to arbitration.

## DISCUSSION

### 1. The Prudential Defendants

The FAA was designed to "ensure judicial enforcement of
privately made agreements to arbitrate." _Dean Witter Reynolds
Inc. v. Byrd_, 470 U.S. 213, 219 (1985). The FAA represents "a
strong federal policy favoring arbitration as an alternative
means of dispute resolution." _JLM Indus., Inc. v. Stolt-Nielsen
SA_, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted).
Therefore, "under the FAA, any doubts concerning the scope of
arbitrable issues should be resolved in favor of arbitration,
whether the problem at hand is the construction of the contract
language itself or an allegation of waiver, delay, or a like
defense to arbitrability.'" _Id._ (quoting _Moses H. Cone Mem'l
Hosp. v. Mercury Constr. Corp._, 460 U.S. 1, 24-25 (1983)). The
FAA requires that a contract provision to arbitrate disputes
arising out of the contract "shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or in equity
for the revocation of any contract." 9 U.S.C. § 2.

Under the FAA, unless parties have unambiguously provided

5

12/08/2005 16:53 FAX 518 747 50..    LEED&MORELLI          Ø014
12/07/2005 13:40 FAX 212 887 15      LIDDLE & ROBINSON, LLP     Ø010/018

for an arbitrator to decide questions of arbitrability, it is for
courts to decide whether the parties agreed to arbitrate. <u>Contec
Corp. v. Remote Solution Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005).
A court deciding a motion to compel arbitration must resolve four
issues: (1) whether the parties agreed to arbitrate; (2) the
scope of the agreement to arbitrate; (3) if federal statutory
claims are asserted, whether Congress intended those claims to be
nonarbitrable; and (4) if some, but not all, of the claims are
arbitrable, whether to stay the balance of the proceedings
pending arbitration. <u>JLM Indus.</u>, 387 F.3d at 16. In this case,
the Prudential Defendants and Vaughn agree that all of Vaughn's
claims are arbitrable and that Vaughn agreed to the arbitration
provision. They merely dispute whether the scope of the
arbitration provision includes claims styled as class actions.

In the absence of "clear and unmistakable evidence to the
contrary" in an arbitration clause, only in limited circumstances
will a court "assume that the parties intended courts, not
arbitrators, to decide a particular arbitration-related matter."
<u>Green Tree Fin. Corp. v. Bazzle</u>, 539 U.S. 444, 452 (2003)
(citation omitted). "These limited instances typically involve
matters of a kind that contracting parties would likely have
expected a court to decide." <u>Id.</u> (citation omitted). "They
include certain gateway matters, such as whether the parties have
a valid arbitration agreement at all or whether a concededly
binding arbitration clause applies to a certain type of
controversy." <u>Id.</u> The question of whether arbitration clauses
"forbid class arbitration . . . does not fall into this narrow

6

12/08/2005 16:54 FAX 516 747 5024          LEED&MORELLI                    ☒015
12/07/2005 13:41 FAX  212 687 15█    LIDDLE & ROBINSON, LLP    █    ☒011/016



exception" because it involves "neither the validity of the
arbitration clause nor its applicability to the underlying
dispute between the parties." <u>Id.</u> Thus in a case where an
arbitration clause provided that the parties "agreed to submit to
the arbitrator '[all] disputes, claims, or controversies arising
from or relating to this contract,'" the Supreme Court held that
a dispute about whether the arbitration clause "forbids the use
of class arbitration procedures . . . is a dispute 'relating to
this contract.'" <u>Id.</u> at 451 (emphasis in original).[1] In such a
case, it was apparent that the parties "agreed that an
arbitrator, not a judge, would answer the relevant question."
<u>Id.</u> at 452.

The arbitration clause in the Agreement contains "sweeping
language concerning the scope of the questions committed to
arbitration," <u>id.</u> at 453, as it commits to arbitration "[a]ny
claim or controversy arising out of or <u>related to this Agreement
or the interpretation thereof.</u>"  (Emphasis supplied.)  Vaughn
claims that because the arbitration clause states that the
contemplated arbitration will use the "rules of the New York
Stock Exchange, Inc., or the National Association of Securities
Dealers, Inc.," and those rules do not permit class action
arbitrations, the parties could not have intended that the class
action he now brings would be arbitrated.  This interpretation,

---

[1]  In <u>Bazzle</u>, an issue was whether arbitration clause
language providing that disputes "shall be resolved . . . by one
arbitrator selected by <u>us</u> [Green Tree] with consent of <u>you</u> [Green
Tree's customer]" forbade class action arbitrations because the
"consent of you" language was arguably inconsistent with multiple
claimants.  <u>Bazzle</u>, 539 U.S. at 450.

7

12/08/2005 18:54 FAX 516 747 5024     LEED&MORELLI        ☒016
12/07/2005 13:41 FAX  212 557 150●     LIDDLE & ROBINSON, LLP        ☒012/018



however, contradicts the clear statement that the arbitration clause applies to "any" claim or controversy related to the Agreement. Even assuming that Vaughn is right, and the applicable arbitration rules do, indeed, forbid class action arbitrations under all circumstances, it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats. Here, as in Bazzle, the question is "not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter," but rather "what kind of arbitration proceeding the parties agreed to." Bazzle, 539 U.S. at 452 (emphasis in original). This question "concerns contract interpretation and arbitration procedures," and is therefore "for the arbitrator, not the courts, to decide." Id. at 453. The Prudential Defendants' motion to compel arbitration is accordingly granted.[2]

### 2.   The Leeds Defendants

The common law doctrine of estoppel may bind a nonsignatory to an arbitration agreement. JLM Indus., 387 F.3d at 177. See also Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,

---

[2]  The defendants argue that the Complaint fails to state a claim for a RICO violation, and therefore, there is no basis for federal subject matter jurisdiction. Because the Complaint has a RICO claim that on its face is "neither clearly immaterial and made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous," Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 701 (2d Cir. 2000), there is subject matter jurisdiction over this action as of now.

12/08/2005 16:54 FAX 516 747 5024      LEED&MORELLI          ☑017
12/07/2005 13:42 FAX  212 687 15●       LIDDLE & ROBINSON, LLP           ☑013/018

271 F.3d 403, 404, 406 (2d Cir. 2001); Thomson-CSF S.A. v. Am.

Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995); Camferdam v.

Ernst & Young Int'l, Inc., No. 02 Civ. 10100 (BSJ), 2004 WL

307292, at *6 (S.D.N.Y. Feb. 13, 2004).

> [U]nder principles of estoppel, a non-signatory to an
> arbitration agreement may compel a signatory to that
> agreement to arbitrate a dispute where a careful review
> of the relationship among the parties, the contracts
> they signed, and the issues that had arisen among them
> discloses that the issues the nonsignatory is seeking
> to resolve in arbitration are intertwined with the
> agreement that the estopped party has signed.

JLM Indus., 387 F.3d at 177 (citation omitted) (emphasis

supplied). See also Denney v. BDO Seidman, L.L.P., 412 F.3d 58,

70 (2d Cir. 2005); Contec, 398 F.3d at 209; Choctaw, 271 F.3d at

406.

The Leeds Defendants argue that under this standard, they

may compel Vaughn to arbitrate his claims against them, because

he alleges a close relationship, in the form of a conspiracy,

between both sets of defendants, and because the claims Vaughn

raises against the Leeds Defendants are intertwined with the

Agreement.  Vaughn concedes that his claims against the Leeds

Defendants are related to the Agreement, but argues that the

relationship between the Leeds Defendants and the Prudential

Defendants was not close enough to warrant estoppel in this case,

because they did not have a relationship with each other

independent of Vaughn's alleged conspiracy

Vaughn's argument misconstrues the governing legal standard.

The Second Circuit has held that a claim against an alleged co-

conspirator may not "always be intertwined to a degree sufficient

12/08/2005 16:55 FAX 516 747 5024    LEEDS&MORELLI    ☻    ☑018
    12/07/2005 13:42 FAX  212 687 1505    LIDDLE & ROBINSON, LLP        @014/010



to work an estoppel," and that "[t]he inquiry remains a fact-specific one." JLM Indus., 387 F.3d at 178 n.7 (emphasis supplied). Nonetheless, "[a]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Denney, 412 F.3d at 70 (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). In a putative class action where the plaintiff taxpayers accused an accounting firm and a bank, among others, of conspiring to lure them into participating in unlawful tax shelter schemes, and the plaintiffs had an arbitration agreement with the accounting firm but not the bank, the Second Circuit held:

> Having alleged in this RICO action that the [nonsignatory bank] and [signatory accounting firm] defendants acted in concert to defraud plaintiffs, and that defendants' fraud arose in connection with [the accounting firm's] tax-strategy advice, plaintiffs cannot now escape the consequences of those allegations by arguing that the [bank] and [accounting firm] defendants lack the requisite close relationship, or that plaintiffs' claims against the [bank] defendants are not connected to [the bank's] relationship with the accounting firm].

Denney, 412 F.3d at 70 (citation omitted). Vaughn's basic premise that Second Circuit precedent requires that the defendants have a close relationship independent of the alleged conspiracy is consequently incorrect.[3]

---

[3] To the extent that Vaughn cites district court opinions that predate Denney for the proposition that a close relationship independent of the alleged conspiracy is required for a "close relationship," this Court respectfully declines to follow them.

12/08/2005 16:55 FAX 516 747 50..          LEED&MORELLI                           @010
   12/07/2005 13:43 FAX  212 687 150        LIDDLE & ROBINSON, LLP                 @015/038

Vaughn contends that the Leeds Defendants had a complex
scheme to settle employment discrimination claims en masse, and
that this scheme involved capping liability for employers such as
the Prudential Defendants in exchange for direct payment of
attorney's fees by the employers.  He alleges that his employment
discrimination claim was swept up by this scheme because the
Leeds Defendants had a comprehensive, secret agreement with the
Prudential Defendants to process his claim, among others, and
that this agreement adversely affected the settlement of his
claim.  These allegations of civil RICO conspiracy involve close
cooperation and collusion between Vaughn's employer and his
lawyers.  This theory of liability has been described elsewhere
as one that "can only succeed" if the plaintiff proves his
"allegation that all Defendants conspired and acted together."
Camferdam, 2004 WL 307292, at *7.[4]  Vaughn therefore alleges
precisely the type of "substantially interdependent and concerted
misconduct" that estops him from avoiding arbitration of his
claims with the Leeds Defendants.  Denney, 412 F.3d at 70

---

See In re Currency Conversion Fee Antitrust Litig., 361 F. Supp.
2d 237, 264 (S.D.N.Y. 2005); Orange Chicken, LLC v. Nambe Mills,
Inc., No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *5 (S.D.N.Y.
Dec. 19, 2000).

[4] In Camferdam, where the district court required taxpayers
who had arbitration agreements with an accounting firm, and who
were suing the accounting firm and a nonsignatory law firm for
conspiring to create unlawful tax shelters on the taxpayers'
behalf, to arbitrate claims against the law firm, the court also
noted that the complaint alleged a "close relationship" between
the entities involved, because "[a] civil conspiracy is a kind of
partnership, in which each member becomes the agent of the
other."  Camferdam, 2004 WL 307292, at *5 (citation omitted).

12/08/2005 16:56 FAX 516 747 502
12/07/2005 13:43 FAX 212 687 1505

LEED&MORELLI
LIDDLE & ROBINSON, LLP

@020
@016/018

(citation omitted). The Leeds Defendants' motion to compel arbitration is therefore granted.

### CONCLUSION

The defendants' motions to compel arbitration are granted. The case is stayed until the resolution of the arbitration proceedings and is transferred to the Court's suspense docket.

SO ORDERED:

Dated:    New York, New York
          August 12, 2005

                                    _____
                                    DENISE COTE
                                    United States District Judge

12

**Exhibit B**





12/08/2005 16:58 FAX 516 747    4     LEED&MORELLI                            ☒022
12/08/2005 15:30 FAX 516 747 5024     LEED&MORELLI                            ☒001

```
*********************************
***    ACTIVITY REPORT    ***
*********************************
```

| ST. TIME | CONNECTION TEL/ID | SENDER NAME | NO. | MODE | | PGS. | RESULT | |
|---|---|---|---|---|---|---|---|---|
| 12/07 16:23 | 212 977 4005 | | 8155 | AUTO RX | ECM | 2 | OK | 00'26 |
| 12/07 16:28 | 3573333 | | 3043 | TRANSMIT | G3 | 6 | OK | 02'42 |
| 12/07 18:31 | 2969155 | | 3044 | TRANSMIT | ECM | 2 | OK | 00'19 |
| 12/07 16:43 | | | 8156 | AUTO RX | ECM | 6 | OK | 01'34 |
| 12/07 17:08 | 908 771 8739 | | 8157 | AUTO RX | ECM | 1 | OK | 00'40 |
| 12/07 17:19 | | | 8158 | AUTO RX | ECM | 5 | OK | 01'21 |
| 12/07 17:28 | | | 8159 | AUTO RX | ECM | 2 | OK | 00'30 |
| 12/07 17:45 | 1 718 617 1091 | | 8160 | AUTO RX | ECM | 6 | OK | 01'33 |
| 12/07 17:56 | 7393887 | | 3045 | TRANSMIT | ECM | 3 | OK | 00'26 |
| 12/07 17:59 | 12127663252 | | 3046 | TRANSMIT | ECM | 3 | OK | 00'33 |
| 12/07 18:17 | 16312261188 | | 3047 | TRANSMIT | ECM | 1 | OK | 00'26 |
| 12/07 18:03 | 15166253884 | | 3048 | TRANSMIT | ECM | 13 | OK | 01'27 |
| 12/07 18:27 | 00000000000 | | 8161 | AUTO RX | ECM | 2 | OK | 00'53 |
| 12/07 18:41 | 1 718 617 1091 | | 8162 | AUTO RX | ECM | 2 | OK | 00'43 |
| 12/07 19:51 | | | 8163 | AUTO RX | ECM | 6 | OK | 01'33 |
| 12/07 19:55 | | | 8164 | AUTO RX | ECM | 3 | NG | 01'00 |
| | | | | | | 3 | ##0196 | |
| 12/07 19:56 | | | 8165 | AUTO RX | ECM | 5 | OK | 01'18 |
| 12/07 20:35 | 17183619610 | | 3049 | TRANSMIT | ECM | 2 | OK | 00'37 |
| 12/07 20:36 | 2967111 | | 3050 | TRANSMIT | G3 | 2 | OK | 00'45 |
| 12/07 20:37 | 2967111 | | 3051 | TRANSMIT | G3 | 4 | OK | 01'22 |
| 12/07 21:28 | | | 8166 | AUTO RX | ECM | 6 | OK | 01'33 |
| 12/07 22:58 | | | 8167 | AUTO RX | G3 | 1 | OK | 00'49 |
| 12/08 00:39 | 3 | | 8168 | AUTO RX | ECM | 1 | OK | 00'44 |
| 12/08 08:49 | | | 8169 | AUTO RX | G3 | 1 | OK | 01'08 |
| 12/08 08:40 | | | 8170 | AUTO RX | ECM | 1 | OK | 00'52 |
| 12/08 09:49 | | | 8171 | AUTO RX | ECM | 1 | OK | 01'13 |
| 12/08 09:57 | 2123363833 | | 8172 | AUTO RX | ECM | 2 | OK | 00'33 |
| 12/08 10:14 | 516 739 3587 | | 8173 | AUTO RX | ECM | 6 | OK | 03'13 |
| 12/08 10:41 | 734 495 3007 | | 8174 | AUTO RX | ECM | 10 | OK | 03'27 |
| 12/08 11:51 | 617 585 3198 | | 8175 | AUTO RX | ECM | 2 | OK | 00'36 |
| 12/08 12:00 | | | 8176 | AUTO RX | ECM | 3 | OK | 00'43 |
| 12/08 12:22 | +3034589520 | | 8177 | AUTO RX | ECM | 14 | OK | 02'21 |
| 12/08 12:52 | 4014356323 | | 8178 | AUTO RX | ECM | 3 | OK | 00'32 |
| 12/08 13:00 | | | 8179 | AUTO RX | G3 | 1 | OK | 01'18 |
| 12/08 13:25 | 1914 965 5462 | | 8180 | AUTO RX | ECM | 1 | OK | 00'19 |
| 12/08 13:33 | 1914 965 5462 | | 8181 | AUTO RX | ECM | 3 | OK | 00'33 |
| 12/08 13:57 | 212 309 7075 | | 8182 | AUTO RX | ECM | 3 | OK | 00'40 |
| 12/08 15:03 | 15169381178 | | 3052 | TRANSMIT | ECM | 3 | OK | 01'13 |
| 12/08 15:15 | | | 8183 | AUTO RX | ECM | 18 | OK | 06'47 |
| 12/08 15:25 | | | 8184 | AUTO RX | ECM | 18 | OK | 04'04 |

12/08/2005 16:57 FAX 516 747 5024      LEEDS&MORELLI                          ☑023



# LITCHFIELD
Attorneys at Law **CAVO** LLP

**WRITER'S ADDRESS:**
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 434-0102
(212) 434-0105 fax
email: hughes@litchfieldcavo.com

# Facsimile Transmittal

| | | | |
|---|---|---|---|
| **To:** | Jeffrey Brown, Esq. | **Fax No.:** | (516) 747-5024 |
| **From:** | Daniel T. Hughes, Esq. | **Date:** | December 8, 2005 |
| | Litchfield Cavo | | |
| | 212-434-0102 | | |
| **Re:** | Vaughn vs. Leeds, Morelli & Brown, P.C. etal. | | |
| **CC:** | | **Pages:** | 20 |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

**Notes:** See attached

Chicago • Hartford • Boston • New York • New Jersey • Tampa • Milwaukee

www.litchfieldcavo.com

# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE

NEW YORK, N.Y. 10022

(212) 687-8600

FACSIMILE: (212) 687-1505

www.liddlerobinson.com

EMAIL: rsaenger@liddlerobinson.com

MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID L. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
DAVID M. MAREK
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ANDREA M. PAPARELLA
REBECCA A. SAENGER
LISA D. SIOMAN
DINA N. WEINBERG
DAVID H. FELDSTEIN

August 15, 2006

**BY MAIL & FACSIMILE/ (301) 527-4873**
Northeast Processing Center
NASD Dispute Resolution, Inc.
One Liberty Plaza
165 Broadway, 27th Floor
New York, New York 10006

Re:   Jeffrey S. Vaughn, individually and on behalf of those class members
       similarly situated v. Leeds, Morelli & Brown, P.C., Leeds, Morelli &
       Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown, Prudential
       Securities, Inc., Prudential Financial, Inc., Lenard Leeds, Steven A.
       Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove,
       Robert John Valli, Jr., DISCRIMINATION ON WALL STREET, INC.,
       DISCRIMINATION ON WALL STREET MANHATTAN, INC., and
       JOHN DOES, 1-10 and JANE DOES, 1-10 a fictitious designation for
       presently and unknown licensed attorneys, professionals and/or unknown
       persons or entities;
       NASD Dispute Resolution Arbitration No. 06-00534

To Whom It May Concern:

       We represent the Claimant, Jeffrey S. Vaughn, in the above-referenced
arbitration and write in response to the NASD's letter of July 27, 2006.

       The skills/knowledge options listed in the materials regarding the
arbitrator selection process do not match the issues before the NASD in this case. Mr.

Aug-17-06   02:51pm   From-litchfield savo llp                    +2124340105          T-670  P.005/007  F-932

LIDDLE & ROBINSON, L.L.P.
Northeast Processing Center                    2                          August 15, 2006


Vaughn's Statement of Claim presents the very narrow issue of whether he waived his
right to a class action by signing the Settlement Agreement with Prudential Securities,
Inc. Therefore, we request arbitrators possessing knowledge of the law of arbitration.


Respectfully submitted,

By: *Rebecca A. Saenger*
        Rebecca A. Saenger


cc:    Daniel T. Hughes (via mail and facsimile)

       Gerald E. Harper (via mail and facsimile)

Aug-17-06   02:50pm   From-litchfield cavo llp              +2124340105          T-870  P.002/007  F-900

# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE

NEW YORK, N.Y. 10022

(212) 867-8800

FACSIMILE: (212) 687-1505

www.liddlerobinson.com

MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
DAVID M. MAREK
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

EMAIL: rsaenger@liddlerobinson.com

JEFFREY ZIMMERMAN
STEPHEN J. STEINLIGHT
JOHN A. KAROL
ANDREA M. PAPARELLA
REBECCA A. SAENGER
LISA D. SIGMAN
DINA N. WEINBERG
DAVID H. FELDSTEIN

August 15, 2006

**BY MAIL & FACSIMILE/ (212) 509-9041**
George Friedman
Director of Arbitration
NASD Dispute Resolution, Inc.
One Liberty Plaza
165 Broadway, 27th Floor
New York, New York 10006

Re:    Jeffrey S. Vaughn, individually and on behalf of those class members
       similarly situated v. Leeds, Morelli & Brown, P.C., Leeds, Morelli &
       Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown, Prudential
       Securities, Inc., Prudential Financial, Inc., Lenard Leeds, Steven A.
       Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove,
       Robert John Valli, Jr., DISCRIMINATION ON WALL STREET, INC.,
       DISCRIMINATION ON WALL STREET MANHATTAN, INC., and
       JOHN DOES, 1-10 and JANE DOES, 1-10 a fictitious designation for
       presently and unknown licensed attorneys, professionals and/or unknown
       persons or entities;
       NASD Dispute Resolution Arbitration No. 06-00534

Dear Mr. Friedman:

       We represent the Claimant, Jeffrey S. Vaughn, in the above-referenced
arbitration. We have provided you with a copy of our letter of August 15, 2006, written
in response to the NASD's letter of July 27, 2006.

Aug-17-06    02:51pm    From-litchliai, avo llp                        +2124340105        T-870    P.006/007    F-999

LIDDLE & ROBINSON, L.L.P.
Mr. George Friedman                    2                    August 15, 2006

> Given the somewhat unusual issue that our claim presents, we appreciate your giving our request regarding arbitrator selection some personal attention, as it may be overlooked by the Northeast Processing Center.

Respectfully submitted,

By: *Rebecca A. Saenger*
Rebecca A. Saenger

cc:    Daniel T. Hughes (via mail and facsimile)

Gerald E. Harper (via mail and facsimile)

**NASD Dispute Resolution**
www.nasd.com
Northeast Region
One Liberty Plaza • 165 Broadway • 27th Floor
New York NY • 10006-1400 • 212-858-4200 • Fax 301-527-4873



July 27, 2006

James Vagnini
Leeds Morelli & Brown, P.C.
One Old Country Road
Carle Place, NY 11514

Subject:    NASD Dispute Resolution Case Number 06-00534
            Jeffrey S. Vaughn v. Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P.,
            Prudential Securities, Inc., et al.

Dear Mr. Vagnini:

NASD Dispute Resolution provides a forum for the resolution of disputes involving public investors and broker-dealers, and members of the American Stock Exchange ("AMEX"), International Stock Exchange ("ISE"), Nasdaq Liffe Markets ("NqLX"), and Philadelphia Stock Exchange ("PHLX"), and Municipal Securities Rulemaking Board ("MSRB") registrants and/or their associated persons. This office administers that forum according to the procedures set forth in the NASD Code of Arbitration Procedure ("Code"). The most up to date version of the Code can be accessed or downloaded from our Web site at http://www.nasd.com. On the NASD Dispute Resolution Web site, you will also find important instructions concerning filing your answer or other claims (The NASD Dispute Resolution Party's Reference Guide). If you do not have access to the Internet, you may call our office to request a copy of these documents.

#### Filing a Statement of Answer

Since you have been named as a party in this arbitration, enclosed is a copy of the Statement of Claim. You are required by the rules of NASD Dispute Resolution to arbitrate this dispute.

Your Statement of Answer must specify all relevant facts and available defenses to the Statement of Claims (See Rule 10314(b) of the Code). In addition, your Answer may include any related claim(s) that you may have against the Claimant or any other party subject to arbitration under the Code. If you assert any of these claims please refer to the Schedule of Fees in Rule 10332 of the Code for the related filing fee. If you assert a claim, it should be submitted with the fee in the attached envelope.

Pursuant to Rule 10314(b) of the Code, you are required on or before September 15, 2006, to send to the Claimant and all other parties, a signed Uniform Submission Agreement (form enclosed) and your Answer. Claimant or Claimant's counsel's address is provided at the end of this service letter.

The Code also requires that you send to the Director of Arbitration: (a) the original and three copies of the Uniform Submission Agreement, properly signed and dated by you; (b) the original and three copies of your Answer; and (c) four copies of any document(s) referred to in your Answer. When sending copies of your Answer to the Director of Arbitration, please indicate that you have properly served your Answer on all parties. If you need an extension of time to file your Statement of Answer, you must contact the

Claimant directly and request one. If Claimant agrees to extend your time to file your Answer, please notify NASD in writing of the new deadline for filing your Answer. You should also send a copy of that notice to the Claimant and all other parties.

If your Answer is not served upon all parties, a motion to preclude your Answer may be made pursuant to Rule 10314(b)(2) of the Code. In addition, failure to provide NASD Dispute Resolution with copies of your Answer as described above will preclude it from inclusion in the package of pleadings provided to the arbitrator(s).

## Hearing Location

If an arbitration involves a public customer, NASD Dispute Resolution will generally select a hearing location closest to the customer's residence at the time the dispute arose.

In disputes between AMEX, ISE, NASD, NqLX, or PHLX member firms, or MSRB Registrants and associated persons, NASD Dispute Resolution will select the hearing location that is closest to the location where the associated person was employed at the time the dispute arose.

In industry disputes involving only member firms and/or MSRB Registrants unless the firms are in the same locale or the parties agree to a specific hearing location, NASD Dispute Resolution will consider the following factors when deciding the hearing location:

  1)    Which party initiated the transactional issue;
  2)    The location of witnesses and documents; and
  3)    The relative hardship for travel of a party to a specific location.

The **ANTICIPATED** hearing location of this case is: New York City, New York. This preliminary decision was made, pursuant to Rule 10315 of the Code, by me, acting on behalf of the Director of Arbitration, in accordance with Rule 10103 of the Code. A final decision regarding the initial hearing location will be rendered before the Panel is being appointed. In addition, Rule 10315 of the Code authorizes the presiding Panel to determine the time and place of all subsequent hearing(s).

If the anticipated initial hearing location listed above is **UNKNOWN**, NASD Dispute Resolution is requesting recommendations from all parties for the hearing location based on the above applicable guidelines.

## Other Information

If, after reading the Code and the "NASD Dispute Resolution Party's Reference Guide" booklet, you still have questions regarding NASD Dispute Resolution arbitration, please contact us. When contacting us, please refer to the number assigned to this case, which is 06-00534. NASD Dispute Resolution encourages the parties to communicate among themselves to resolve issues that do not require NASD Dispute Resolution intervention.

Pursuant to Article V, Section 2(c) of the NASD By-Laws, if you are a registered representative with the NASD, you are required to keep your registration application current. You are therefore, advised to review the Form U-4 to determine if disclosure of this matter is required. If so, your failure to update your registration application may result in the filing of a formal complaint based on any omission. Any questions regarding this disclosure requirement should be directed to the NASD Member Services Phone Center (301) 590-6500.

## Motions

If a party files a motion before the initial pre-hearing conference that requires a panel's consideration, NASD Dispute Resolution will not solicit a response to the motion. However, the opposing party may expedite the process by filing a response to the motion. If the opposing party files a response at least ten days before the initial pre-hearing conference, the staff will have sufficient time to transmit the motion to the panel before the conference. If NASD Dispute Resolution does not receive a response to the motion at least ten days before the conference, we may not be able to transmit the motion to the panel before the conference. In this case, the moving party may raise the issue with the panel at the conference and ask the panel to establish a schedule for responding to the motion, as appropriate. We will advise the parties of the date of the conference in a later communication.


Northeast Processing Center
neprocessingcenter@nasd.com
(212)858-4200   Fax:(301)527-4873


NPC:CLO:LC39E
rc:02/05
Enclosure
CC:
     Rebecca Saenger, Esq., Jeffrey S. Vaughn
     Liddle & Robinson, L.L.P., 800 Third Avenue, New York, NY  10022

RECIPIENTS:
     Theodore V. Wells, Jr., Esq., Prudential Equity Group, LLC
     Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY  10019-6064

     Daniel T. Hughes, Leed Morelli & Brown, P.C.,
     Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

     Daniel T. Hughes, Leeds Morelli & Brown, L.L.P
     Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

     Daniel T. Hughes, Leeds & Morelli
     Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

     Daniel T. Hughes, Leeds Morelli & Brown
     Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

     Daniel T. Hughes, Lenard Leed
     Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

     Daniel T. Hughes, Steven A. Morelli
     Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

     Daniel T. Hughes, Jeffrey K. Brown
     Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

Theordore V. Wells, Jr., Esq., Prudential Financial Inc.
Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019-6064

James Vagnini
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Frederic David Ostrove
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

John Robert Valli, Jr.
Leed Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Company Office, Discrimination On Wall Street Inc.
Discrimination on Wall Street Inc., One Old Country Road, Carle Place, NY 11514

Company Officer, Discrimination on Wall St. Manhattan,
Discrimination on Wall St. Manhattan Inc, One Old Country Road, Carle Place, NY 11514

UNIFORM SUBMISSION AGREEMENT

**NASD Dispute Resolution**

In the Matter of the Arbitration Between

Name of Claimant(s)

Jeffrey S. Vaughn

06-00534

Name of Respondent(s)

Prudential Equity Group, LLC
Leed Morelli & Brown, P.C.,
Leeds Morelli & Brown, L.L.P
Leeds & Morelli
Leeds Morelli & Brown
Lenard Leed
Steven A. Morelli
Jeffrey K. Brown
Prudential Financial Inc.
et al

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations and/or NASD Code of Arbitration Procedure of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission Agreement.

Party(ies) Signature

_____

James Vagnini

Date: _____

LC43A: SUBMISSION AGREEMENT
rc:06/02
CC:

    Rebecca Saenger, Esq., Jeffrey S. Vaughn
    Liddle & Robinson, L.L.P., 800 Third Avenue, New York, NY 10022

RECIPIENTS:

    Theordore V. Wells, Jr., Esq., Prudential Equity Group, LLC
    Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019-6064

    Daniel T. Hughes, Leed Morelli & Brown, P.C.,
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

    Daniel T. Hughes, Leeds Morelli & Brown, L.L.P
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

    Daniel T. Hughes, Leeds & Morelli
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

    Daniel T. Hughes, Leeds Morelli & Brown
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

    Daniel T. Hughes, Lenard Leed
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

    Daniel T. Hughes, Steven A. Morelli
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Daniel T. Hughes, Jeffrey K. Brown
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Theordore V. Wells, Jr., Esq., Prudential Financial Inc.
Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019-6064

James Vagnini
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Frederic David Ostrove
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

John Robert Valli, Jr.
Leed Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Company Office, Discrimination On Wall Street Inc.
Discrimination on Wall Street Inc., One Old Country Road, Carle Place, NY 11514

Company Officer, Discrimination on Wall St. Manhattan,
Discrimination on Wall St. Manhattan Inc, One Old Country Road, Carle Place, NY 11514

**NASD Dispute Resolution**
www.nasd.com
Northeast Region
One Liberty Plaza • 165 Broadway • 27th Floor
New York NY • 10006-1400 • 212-858-4200• Fax 301-527-4873



July 27, 2006

James Vagnini
Leeds Morelli & Brown, P.C.
One Old Country Road
Carle Place, NY  11514

Subject:    NASD Dispute Resolution Arbitration Number 06-00534
            Jeffrey S. Vaughn v. Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P.,
            Prudential Securities, Inc., et al.

Dear Mr. Vagnini:

Under Rule 10308 of the *NASD Code of Arbitration Procedure (the Code)*, the parties participate in appointing arbitrators through the Neutral List Selection System (NLSS). All parties will receive a list of arbitrators' names and their disclosures. Each party may strike any names from the list, and then, in order of their preference, rank the remaining arbitrators on the list. NASD Dispute Resolution consolidates the rankings and contacts the arbitrators for service in the order of the consolidated ranking.

Pursuant to Rule 10308(b)(4)(B), any party may request that the list include arbitrators with certain subject matter knowledge. If we receive such a request (it is not a requirement,) NLSS will attempt to fill a majority of the list with arbitrators possessing the special background requested. <u>**However, there is no guarantee that the listed arbitrators will have any or all of the codes you select.**</u>

Each side can select up to four controversy or security types combined. We are enclosing a list of issues, identifying the controversy and security types available in NLSS. In order of preference (1 = most desired; 4 = least desired), please number the codes to indicate any special skills or knowledge you desire of the arbitrators appointed to this case. Use caution in making your selection. If you select more than four controversy or security types, we will only use the first four you selected.

NLSS can accommodate only four controversy and securities types for **all parties combined**. If the parties collectively request more than four different types, the staff will enter all common choices, followed by the highest ranked additional choices from the parties (alternate choices, starting with the claimant's top choice) until four are entered.

Kindly submit your selections by September 15, 2006 which is the date the last answer is due. You should notify all opposing parties of your selections. If a party fails to notify all opposing parties and provide

NASD Dispute Resolution with proof of service, NASD Dispute Resolution will not honor the request. The parties will receive additional information about NLSS, as well as the list of arbitrators, approximately thirty days after the last answer is due. If you have any questions about NLSS, please consult Rule 10308 of the Code or contact our office.

Northeast Processing Center
neprocessingcenter@nasd.com
(212)858-4200   Fax:(301)527-4873

NPC:CLO:LC08A
rc:07/04

Enclosure

# LIST OF ISSUES

**Case Number:**_____        **Case Name:**

**Circle One:** Claimant or Respondent        **Party Name:**

In order of preference (1 = most desired; 4 = least desired), please number the codes below to indicate what skills / knowledge you desire of the arbitrators appointed to this case. There is no guarantee that the appointed arbitrators will have any or all of the codes you select. **Additionally, NASD Dispute Resolution has not investigated the information provided by the arbitrators to verify its accuracy**.

**NLSS limits the parties collectively to a total of four (4) codes.**

| | Account Related | | |
|---|---|---|---|
| | Dividends | | Fannie Mae |
| | Margin Calls | | Freddie Macs |
| | Transfer | | Futures (other than commodities) |
| | **Executions** | | Ginnie Maes |
| | Amex Floor Trading | | Government Securities |
| | Amex Specializing | | Limited Partnerships |
| | Execution Price | | Mutual Funds |
| | Limit/Stop/Market Order | | Municipal Bonds |
| | **Trading Dispute** | | Municipal Bond Funds |
| | Buy In | | Options |
| | Mark-ups | | Preferred Stock |
| | Sell Outs | | Recruitment Disputes |
| | Stock Loan | | Repurchase Agreements |
| | Other Floor Trading | | Real Estate Investment Trusts |
| | **Other** | | Stock Index Futures |
| | Annuities | | Warrant/Rights |
| | Clearing Disputes | | Underwriting |
| | Common Stock | | Unknown Type of Securities |
| | Commodities | | |
| | Corporate Bonds | | |

**ADDITIONAL CODES** (Complete only for Employment cases)

| | Controversy | | Controversy |
|---|---|---|---|
| | Age Discrimination | | Libel or Slander |
| | Breach of Contract | | National Origin Discrimination |
| | Commissions | | Partnerships |
| | Compensation | | Promissory Notes |
| | Disability Discrimination | | Race Discrimination |
| | Employment Discrimination | | Religious Discrimination |

| | Employment Retaliation | | Sexual Harassment |
|---|---|---|---|
| | Gender Discrimination | | Sexual Orientation Discrimination |
| | Libel or Slander on Form U-5 | | Training Contracts |
| | | | Wrongful Termination |

CC:
    Rebecca Saenger, Esq., Jeffrey S. Vaughn
    Liddle & Robinson, L.L.P., 800 Third Avenue, New York, NY  10022

RECIPIENTS:
    Theordore V. Wells, Jr., Esq., Prudential Equity Group, LLC
    Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York,
    NY  10019-6064

    Daniel T. Hughes, Leed Morelli & Brown, P.C.,
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

    Daniel T. Hughes, Leeds Morelli & Brown, L.L.P
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

    Daniel T. Hughes, Leeds & Morelli
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

    Daniel T. Hughes, Leeds Morelli & Brown
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

    Daniel T. Hughes, Lenard Leed
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

    Daniel T. Hughes, Steven A. Morelli
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

    Daniel T. Hughes, Jeffrey K. Brown
    Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY  10170

    Theordore V. Wells, Jr., Esq., Prudential Financial Inc.
    Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York,
    NY  10019-6064

    James Vagnini
    Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY  11514

    Frederic David Ostrove
    Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY  11514

John Robert Valli, Jr.
Leed Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Company Office, Discrimination On Wall Street Inc.
Discrimination on Wall Street Inc., One Old Country Road, Carle Place, NY 11514

Company Officer, Discrimination on Wall St. Manhattan,
Discrimination on Wall St. Manhattan Inc, One Old Country Road, Carle Place,
NY 11514

## Notice to Parties - NASD's Discovery Rules and Procedures

All parties to NASD arbitrations must cooperate in the exchange of documents and comply with NASD's discovery rules and procedures. Failure to do so may result in sanctions. Possible sanctions include:

- •Assessing monetary penalties payable to one or more parties;
- •Precluding a party from presenting evidence;
- •Making an adverse inference against a party;
- •Assessing postponement and/or forum fees;
- •Assessing attorneys' fees, costs and expenses; and
- •Dismissal of a claim, defense or proceeding.

In addition, members and associated persons may be referred to NASD Regulatory Policy and Oversight for possible disciplinary action, which can include suspension or termination of NASD membership or registration.

Introduction

The timely exchange of relevant documents and information between parties to NASD arbitrations is vital to the efficient, cost-effective resolution of disputes. Recently, complaints from parties regarding possible abuses of the discovery process in NASD arbitrations have been on the rise. This trend suggests that some parties believe that noncompliance with the discovery process is a routine and acceptable part of arbitration strategy. It is not.

The purpose of this Notice is to remind all parties, claimants and respondents that failure to comply with the NASD discovery rules and procedures can result in sanctions, including dismissal of a claim, defense or proceeding. In addition, members and associated persons who fail to comply with a discovery order of the panel may be referred to NASD Regulatory Policy and Oversight for possible disciplinary action, which can include suspension or termination of NASD membership or registration. You may contact the NASD Investor Complaint Center for more information.

Automatic Exchange of Documents

Rule 10321 of the NASD Code of Arbitration Procedure (Code) requires parties to NASD arbitrations to cooperate in the exchange of documents and information, and to respond to discovery requests from other parties within a certain time. Rule 10321 also requires parties to try to resolve any dispute regarding the production of documents or information before objecting to the production of requested documents or information. The NASD Discovery Guide and Document Production Lists specifically identify which documents parties should exchange before the hearing. Document Production Lists 1 and 2 apply to all customer disputes, while Lists 3 through 14 apply to specific types of claims. (For example, Lists 4 and 5 apply to cases involving churning allegations.)

Time Frames for Turning Over Documents

Parties receive the Discovery Guide and Document Production Lists at the time the statement of claim is served. Unless the parties agree otherwise, they must give each other copies of all documents in their possession or control that are on Document Production Lists 1 or 2, and any other lists applicable to the dispute, within 30 days of the date that the answer to the claim is due or filed, whichever is earlier. This exchange should happen automatically, without arbitrator or staff intervention.

Objections

If any party objects to the production of any document listed in the relevant Document Production Lists, the party must file a written objection on or before the date that the exchange of documents is due to occur. Objections should set forth the reasons the party objects to producing the documents. An objection to the production of a document or a category of documents is not an acceptable reason to delay the production of any document not covered by the objection. Parties may respond to an objection within 10 days from service of the written objections. The arbitrators will decide whether disputed documents must be exchanged, and resolve any other issues, including requests for confidential treatment of documents.

Additional Discovery Requests

Parties may also request documents or information not on the Document Production Lists under Rule 10321. Parties must either produce requested documents or information within 30 days of the time the request was received, or file a written objection in the manner described above.

Sanctions for Noncompliance

As noted above, failure to comply with NASD's discovery rules and procedures, or orders of the arbitrators, can, and does, result in sanctions. The following is a partial list of cases in which arbitrators issued sanctions for discovery abuse in 2003:

•A member was ordered to pay $10,000 a day for each day that the firm continued to withhold documents that the panel ordered the firm to produce;
•A claimant was ordered to reimburse the respondent costs in the amount of $1,500 for failing to respond in a timely manner to ordered discovery requests;
•A member was assessed over $10,000 in sanctions and $2,500 in attorney's fees when a panel found that the member intentionally concealed documents and delayed the discovery process;
•A panel awarded a claimant over $7,000 due to a member firm's failure to cooperate in the discovery process;
•A claimant was ordered to pay to a respondent $1,475 as a sanction for failing to comply with discovery procedures;
•A panel awarded a claimant $2,750 in attorney's fees as a sanction for the member's failure to provide discoverable material.

•A panel awarded a claimant $3,000 in sanctions for a respondent's failure to provide discoverable material as ordered by the panel;
•Claimants were ordered to pay a respondent $1,000 as a sanction for failing to provide copies of expert witness exhibits; and
•A panel sanctioned a member $10,000 for failure to produce documents required by the chairperson of the panel.

In addition, during the past year, arbitrators dismissed several claims with prejudice when claimants failed to comply with discovery orders after previous sanctions proved ineffective. Arbitrators in several other cases referred members or associated persons for disciplinary review for discovery abuse.

To avoid discovery sanctions, parties should familiarize themselves with NASD's discovery rules and procedures, and make every attempt to cooperate in the exchange of documents and information within the designated time frames. Parties should assume that documents on Document Production Lists 1 and 2, and any other applicable lists, are discoverable, and, absent a written objection, should exchange such documents without waiting for an arbitrator order to do so. Any objections should be made in writing, in a timely manner, and should explain what efforts the party has made to resolve the dispute.

Other Arbitrator and Staff Actions to Deal with Discovery Abuse

In addition to reminding parties of their obligation to comply with NASD discovery rules and procedures, NASD will be reminding arbitrators about what they can do to manage the discovery process effectively, including what sanctions are available when parties violate either NASD rules or arbitrator orders. Among other things, NASD is creating a new discovery "mini-course" that will be offered to all arbitrators online in the first quarter of 2004. NASD Dispute Resolution staff has also initiated a practice of bringing all alleged discovery abuses to the attention of the Director of Arbitration and the President of NASD Dispute Resolution. These cases will be carefully reviewed and, when appropriate, NASD Dispute Resolution will refer such cases to NASD Regulatory Policy and Oversight for disciplinary review.

Conclusion

NASD hopes that these measures will lead to a significant reduction in the instances of discovery abuse in the forum, and alleviate the need for future rule changes or other additional steps to deter such abuse.

lc74A
rc:07/05

CC:
    Rebecca Saenger, Esq., Jeffrey S. Vaughn
    Liddle & Robinson, L.L.P., 800 Third Avenue, New York, NY 10022

RECIPIENTS:

Theordore V. Wells, Jr., Esq., Prudential Equity Group, LLC
Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York,
NY 10019-6064

Daniel T. Hughes, Leed Morelli & Brown, P.C.,
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Daniel T. Hughes, Leeds Morelli & Brown, L.L.P
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Daniel T. Hughes, Leeds & Morelli
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Daniel T. Hughes, Leeds Morelli & Brown
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Daniel T. Hughes, Lenard Leed
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Daniel T. Hughes, Steven A. Morelli
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Daniel T. Hughes, Jeffrey K. Brown
Litchfield Cavo, LLP, 420 Lexington Avenue, Suite 1750, New York, NY 10170

Theordore V. Wells, Jr., Esq., Prudential Financial Inc.
Paul, Weiss, rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York,
NY 10019-6064

James Vagnini
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Frederic David Ostrove
Leeds Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

John Robert Valli, Jr.
Leed Morelli & Brown, P.C., One Old Country Road, Carle Place, NY 11514

Company Office, Discrimination On Wall Street Inc.
Discrimination on Wall Street Inc., One Old Country Road, Carle Place, NY 11514

Company Officer, Discrimination on Wall St. Manhattan,
Discrimination on Wall St. Manhattan Inc, One Old Country Road, Carle Place,
NY 11514