UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY S. VAUGHN, individually and on
behalf of those Class Members similarly
situated,

                Plaintiff,

             v.

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, L.L.P., LEEDS &
MORELLI, LEEDS, MORELLI & BROWN,
PRUDENTIAL SECURITIES, INC.,
PRUDENTIAL FINANCIAL, INC., LENARD
LEEDS, STEVEN A. MORELLI, JEFFREY K.
BROWN, and JOHN DOES, JAMES VAGNINI,
FREDERIC DAVID OSTROVE, ROBERT
JOHN VALLI, JR., DISCRIMINATION ON
WALL STREET, INC. DISCRIMINATION ON
WALL STREET MANHATTAN, INC., JOHN
DOES, 1–10 AND JANE DOES, 1–10 a
fictitious designation for presently unknown
licensed attorneys, professionals and/or unknown
persons or entities,

                Defendants.

04 Civ. 08391 (DLC)

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
TO VACATE THE ARBITRATION AWARD AND IN SUPPORT OF
PRUDENTIAL'S CROSS-MOTION TO CONFIRM**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ................................................................................................. 12

I.   PLAINTIFF'S MOTION TO VACATE THE ARBITRATION AWARD
     SHOULD BE DENIED .............................................................................. 12

   A.   Judicial Review of an Arbitration Award Is Extremely Limited............ 12

   B.   None of the Limited Bases for Vacatur Under the Federal Arbitration Act
        Are Raised Here ................................................................................. 14

II.  PRUDENTIAL'S CROSS-MOTION TO CONFIRM THE
     ARBITRATION AWARD SHOULD BE GRANTED ...................................... 16

   A.   The Panel's Award Is Justified by the Plain Language of the Settlement
        Agreement ......................................................................................... 17

   B.   The Panel's Award Is Also Supported by Vaughn's Testimony ............ 18

CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ..........................12, 13, 14, 16

*Fromm* v. *ING Funds Distrib.*, *LLC*, 486 F. Supp. 2d 348 (S.D.N.Y. 2007) ...................13

*Hamilton* v. *Sirius Satellite Radio, Inc.*, 375 F. Supp. 2d 269 (S.D.N.Y. 2005) .........13, 14

*Porzig* v. *Dresdner, Kleinwort, Benson, North America LLC*, No. 06-1212-cv,
2007 WL 2241592 (2d Cir. Aug. 7, 2007) ..................................................2, 15, 16

*Primex Int'l Corp.* v. *Wal-Mart Stores, Inc.*, 679 N.E.2d 624 (N.Y. 1997) .....................18

*Sperry Int'l Trade, Inc.* v. *Government of Israel*, 689 F.2d 301 (2d Cir. 1982)................13

*Wallace* v. *Buttar*, 378 F.3d 182 (2d Cir. 2004) ..............................................12, 13, 14, 16

*Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.*,
103 F.3d 9 (2d Cir. 1997) ..................................................................................13

## STATUTES

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ....................................................................14

Defendants Prudential Securities, Inc. ("PSI") and Prudential Financial, Inc. (together "Prudential") submit this memorandum of law in opposition to Plaintiff Jeffrey S. Vaughn's ("Vaughn") motion to vacate the award issued in National Association of Securities Dealers ("NASD") Arbitration No. 06-00534, and in support of Prudential's cross-motion to confirm the award.

## PRELIMINARY STATEMENT

In October 1998, Vaughn, a former PSI employee, executed a settlement agreement and general release of his claims against PSI in exchange for $200,000 (the "Settlement Agreement"). That Settlement Agreement includes a clear and unambiguous provision requiring the parties to arbitrate "any claim or controversy" arising thereunder before the NASD or NYSE.

Nearly six years later, Vaughn filed a complaint in this Court alleging, *inter alia*, that the Settlement Agreement was the product of a conspiracy between PSI and his attorneys. Vaughn brought his claims as a putative class action, arguing that, because the rules of the NYSE and NASD forbid the arbitration of class actions, he should not be bound by his agreement to arbitrate. By Order dated August 12, 2005, this Court granted Prudential's motion to compel Vaughn to arbitrate based on the Settlement Agreement.

Rather than submit his claims to the arbitrators, however, Vaughn instead sought a ruling from the NYSE, and then the NASD, that the parties intended to exclude class claims from their agreement to arbitrate "any claim or controversy." An NASD panel of three arbitrators convened a hearing on these issues after extensive briefing and after receiving a substantial amount of evidence. The arbitrators considered the parties' arguments, the documentary evidence presented – including the arbitration agreement,

1

and Vaughn's testimony. After the hearing, the panel issued a unanimous award ruling that the Settlement Agreement precludes Vaughn from bringing a class action in court.

Vaughn now moves this Court for an order vacating the NASD panel's award, arguing that the award lacks "fundamental rationality." The stated basis for Vaughn's motion, however, has been expressly rejected by the Second Circuit. In *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, the Second Circuit held that a lack of rationality is <u>not</u> a valid basis on which to vacate an arbitration award and made clear that an arbitral award may be vacated only for the four grounds expressly set forth in the Federal Arbitration Act (the "FAA") or, in extremely rare cases, for "manifest disregard of the law." No. 06-1212-cv, 2007 WL 2241592, at *4 (2d Cir. Aug. 7, 2007). Vaughn does not even suggest that any of the FAA's statutory grounds for vacatur apply here, or that the Panel acted in "manifest disregard of the law." Accordingly, Vaughn's motion to vacate must be denied.

Indeed, the law is clear that an arbitration award must be confirmed if a court can infer any basis from the record for the arbitrator's decision. Contrary to Vaughn's allegations, the NASD panel was presented with substantial evidence supporting its award. The basis for the NASD panel's conclusion – that the parties intended to arbitrate all disputes arising under the Settlement Agreement, with no exception for class claims – is evident from the plain language of the parties' arbitration agreement, in which Vaughn agreed to arbitrate "[a]ny claim or controversy arising out of or related to th[e] Agreement." This Court has already ruled that this agreement is "valid and enforceable" and that Vaughn clearly agreed to arbitrate his claims against Prudential. In addition, the law is well-settled that where, as here, there is an integrated

2

contract, evidence outside the four corners of the document to contradict or vary the terms of the contract is inadmissible. Thus, as a matter of law, nothing other than the Settlement Agreement is appropriately considered as evidence of the parties' intent with respect to the scope of the arbitration clause. Moreover, even if the testimony of Vaughn were relevant, it supports the conclusion that he did not intend to carve out class claims from those he was agreeing to arbitrate.

Finally, the panel's ruling – that the parties intended to disallow class actions – is one of the three options that were recognized by this Court at the September 5, 2006 hearing as available to the arbitrators and was expressly acknowledged in this Court's August 12, 2005 Order compelling arbitration to be a "plausible" interpretation of the Settlement Agreement. Accordingly, Prudential's cross-motion to confirm the award should be granted.

## STATEMENT OF FACTS

Claimant Jeffrey Vaughn is a former PSI employee who, along with other former PSI employees, retained the law firm of Leeds, Morelli & Brown ("the Leeds Firm") in or around 1998 to assert employment discrimination claims against PSI. In an effort to resolve these claims expeditiously and fairly, PSI, the Leeds Firm and those employees, including Vaughn, agreed to enter into an alternate dispute resolution process. Pursuant to that process, on or about October 27, 1998, expressly upon advice of his counsel of choice, and in consideration of (among other things) a payment from PSI of $200,000.00, Vaughn executed an agreement settling and completely releasing his claims against PSI (the "Settlement Agreement"). Paragraph 4 of the Settlement Agreement provides in pertinent part (emphasis added):

In consideration for PSI's commitment to the various arrangements described in the preceding paragraphs, and in lieu of any other benefits, as a full and final settlement, *Vaughn hereby releases and discharges PSI, its parent, divisions, subsidiaries and affiliates and their current and former directors, officers, shareholders, agents and employees, and each of their predecessors, successors, and assigns (hereinafter "the Company"), from any and all claims and causes of action* ... arising out of or related to Vaughn's employment or separation from employment ... that Vaughn, his heirs ... now have, ever had or may hereafter have, whether known or unknown, suspected or unsuspected, up to and including the date of this Agreement.

(*See* Settlement Agreement, dated October 27, 1998, attached to the Affidavit of Liza M. Velazquez, sworn to September 14, 2007 ("Velazquez Aff."), as Exhibit ("Ex.") A.)

Nearly six years later, notwithstanding this Settlement Agreement and general release, on October 25, 2004, Vaughn filed a putative class action complaint (amended on March 15, 2005) in this Court. The complaint alleges that PSI secretly agreed in February 1998 to pay attorney's fees to the Leeds Firm, in exchange for the Leeds Firm's agreement to cap any damages awarded to Vaughn and other former PSI employees in connection with the dispute resolution process to which those former PSI employees (including Vaughn) expressly agreed to submit their employment discrimination claims.[1]

---

[1]  Specifically, Vaughn's complaint asserts claims against PSI for:  (1) aiding and abetting fraud by the Leeds Firm; (2) civil RICO; (3) civil RICO conspiracy; (4) tortious interference with the contract between the Leeds Firm and its clients; and (5) civil fraud conspiracy.  In his complaint, Vaughn seeks disgorgement of any attorneys' fees paid to the Leeds Firm in connection with their representation of Vaughn and the putative class members, in addition to punitive and treble damages.

4

*The Court Grants PSI's Motion to Compel Arbitration*

On April 22, 2005, PSI moved the Court to compel arbitration of, and dismiss, Vaughn's claims against PSI because those claims are encompassed by the parties' broad arbitration agreement. Specifically, paragraph 14 of the Settlement Agreement provides:

> ***Any*** claim or controversy ***arising out of or related to*** this Agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

(*See* Velazquez Aff., Ex. A, ¶ 14 (emphasis added).)

Vaughn opposed PSI's Motion to Compel, arguing that because the rules of the NASD and NYSE (which the Settlement Agreement expressly contemplated would govern the conduct of the parties' arbitration proceedings) do not permit class actions, he was not bound by the arbitration agreement and should be allowed to breach that agreement simply by casting his arbitrable claims as class claims.

The Court rejected Vaughn's arguments. On August 12, 2005, the Court issued an Opinion and Order granting PSI's motion to compel arbitration and staying any future litigation until the resolution of the arbitration proceedings. (*See* August 12, 2005 Opinion and Order, attached to the Velazquez Aff. as Ex. B, at 6.) Noting that the arbitration clause in the Settlement Agreement "contains 'sweeping language concerning the scope of the questions committed to arbitration,'" the Court expressly rejected Vaughn's arguments that the parties could not have intended the arbitration of his class

claim because the NYSE and NASD "rules do not permit class action arbitrations." (*Id.* at 7 (internal citation omitted).)    The Court pointed out that Vaughn's argument "contradicts the clear statement that the arbitration clause applies to 'any' claim or controversy related to the Agreement." (*Id.* at 8.)  The Court further noted that, "[e]ven assuming that Vaughn is right, and the applicable arbitration rules do, indeed, forbid class action arbitrations under all circumstances, it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats." (*Id.* at 8.)  The Court's ruling thus made clear that Vaughn must arbitrate his individual claims against PSI, but that whether the parties intended to allow class claims and, if so, in what forum those claims should be brought were questions "for the arbitrator, not the courts, to decide." (*Id.* at 8 (internal quotation marks omitted).)  The Court also granted the Leeds Firm and related defendants' (the "Leeds Defendants") motion to compel arbitration. (*Id.* at 8–12.)

*The Court Issues a Second Order Compelling Vaughn to Arbitrate*

Instead of complying with this Court's Order that he submit his claims to arbitration, on October 28, 2005, plaintiff sent a letter to the NYSE requesting "an order and decision declaring that Vaughn may pursue his class action claims against respondents in court." (*See* October 28, 2005 Letter from Jeffrey L. Liddle to Karen Kupersmith, NYSE Director of Arbitration, attached to the Velazquez Aff. as Ex. C, at 4.)  On November 3, 2005, the NYSE denied his application on the grounds that the NYSE cannot exercise jurisdiction over the Leeds Defendants, who are not members of the NYSE. (*See* November 3, 2005 Letter from Harry Albirt, NYSE, to Blaine Bortnick, attached to the Velazquez Aff. as Ex. D.)

On December 7, 2005, Vaughn advised this Court and Prudential for the first time that he had filed an "arbitration claim" with the NYSE, which the NYSE had "rejected," and asked the Court to revisit its prior ruling and lift the litigation stay as against all defendants. (*See* December 7, 2005 Letter from Blaine Bortnick to the Hon. Denise Cote, attached to the Velazquez Aff. as Ex. E.)  In response, Prudential urged the Court to reject Vaughn's efforts to re-litigate the issues decided by the Court in its August 12, 2005 Opinion and Order, pointing out that the NASD was available to hear Vaughn's claims against all defendants. (*See* December 13, 2005 Letter from Gerard E. Harper to the Hon. Denise Cote, attached to the Velazquez Aff. as Ex. F.)  On the same day, counsel for the Leeds Defendants independently confirmed that the NASD would be willing to arbitrate Vaughn's claims against Prudential and the Leeds Defendants in a single proceeding. (*See* December 14, 2005 Letter from Daniel T. Hughes to the Hon. Denise Cote and accompanying Declaration of Shari Claire Lewis, dated December 13, 2005, attached to the Velazquez Aff. as Ex. G.)

On December 27, 2005, this Court issued an Order rejecting Vaughn's request to re-litigate these issues, affirming its August 12 Order and stating, "the case remains stayed and on the Court's suspense docket." (*See* December 27, 2005 Order, attached to the Velazquez Aff. as Ex. H.)

*Vaughn Asks the NASD to Overturn this Court's Order Compelling Him to Arbitrate*

In his Statement of Claim to the NASD, Vaughn did not assert the claims in his Amended Complaint.  Instead, the Statement of Claim recounted the errors that he perceived in this Court's August 12, 2005 Opinion and Order and states that he is "submit[ting] this matter to the NASD in order to decide . . . whether Vaughn is entitled

7

to pursue his class action claims in court, or whether . . . Vaughn may be compelled to pursue his claims individually in arbitration." (*See* Statement of Claim filed in *Vaughn* v. *Leeds, Morelli & Brown, P.C., et al.*, NASD Arbitration No. 06-00534, dated May 25, 2006, attached to the Velazquez Aff. as Ex. I, at 6.) Specifically, Vaughn asked the NASD panel to "issue an order and decision declaring that Vaughn may pursue his class action claims against defendants in court and directing defendants to withdraw their objections and stipulate that the agreement to arbitrate does not preclude Claimants' right to proceed with a class action in court and, therefore, is not enforceable." (*Id.* at 12.) Vaughn also sought costs and that PSI be referred for disciplinary action for seeking to enforce its rights under the parties' arbitration agreement. (*Id.*)

*PSI Asks the Court to Enforce its Prior Orders Compelling Vaughn to Arbitrate*

On August 30, 2006, PSI moved this Court for an Order enforcing its prior Orders compelling Vaughn to arbitrate his claims against PSI. At the September 5, 2006 conference on PSI's Motion to Enforce, the Court stated in no uncertain terms that: (i) Vaughn had "clearly agreed to the arbitration of his claims"; and (ii) "the arbitration agreement was valid and enforceable." (*See* September 5, 2006 Transcript of Proceedings, attached to the Velazquez Aff. as Ex. J, at 3:19–21.) Indeed, the Court emphasized that these fundamental issues are "legally . . . not in dispute." (*Id.* at 3:19–21.)

The Court noted that it "referred this matter to arbitration so that the arbitrator can decide what the intention of the parties was in entering into that arbitration agreement, including deciding what kind of arbitration proceeding the parties had agreed to." (*Id.* at 3:22–25.) The Court then stated its view as to the range of options available

to the arbitrator in ascertaining the parties' intention in entering into the arbitration agreement with respect to the issue of class claims:

> [T]he arbitrator, as I see it, could decide at least three different things and there may be more but, for instance, **the arbitrator could decide that the parties had intended to disallow class actions.** The arbitrator could decide that the parties had agreed to arbitrate individual claims but had reserved unto themselves the right to litigate class claims. The arbitrator could decide that the party had agreed to arbitrate all claims, individual or class claims.

(*Id.* at 4:1–8 (emphases added).)

*The NASD Arbitrators Interpret the Settlement Agreement to Disallow Class Actions*

On November 9, 2006, the NASD appointed a distinguished three-member panel—consisting of Prof. Lewis S. Kurlantzick, Doris Lindbergh, and Nathan M. Lubow—to determine, as charged by this Court, what the parties intended in entering into the arbitration agreement with respect to class claims. (*See* November 9, 2006 Letter from NASD Dispute Resolution to Gerard E. Harper, attached to the Velazquez Aff. as Ex. K.) Prof. Kurlantzick, who has nearly 40 years of experience on the faculty of the University of Connecticut School of Law, is expert in the areas of contract law and arbitration, and has taught courses in both subjects. (*Id.*) Doris Lindbergh is an attorney with employment law experience, a trained mediator, as well as an arbitrator for the NYSE, NASD and National Futures Association. (*Id.*) Nathan Lubow is a CPA with degrees from the University of Chicago and the University of Pennsylvania's Wharton School of Business. (*Id.*) By unanimous consent, the parties selected Prof. Kurlantzick as chairperson for the panel. (November 20, 2006 Letter from Blaine H. Bortnick to NASD Dispute Resolution, Inc., attached to the Velazquez Aff. as Ex. L.)

9

On January 30, 2007, Vaughn made a pre-hearing motion to the panel, seeking dismissal of his own Statement of Claim and referral back to this Court, rehashing his argument that because the rules of the NASD and NYSE do not permit class actions, he is not bound by the arbitration agreement and should be allowed to breach that agreement by casting his arbitrable claims as class claims. (*See* January 30, 2007 Letter from Blaine H. Bortnick to Lewis S. Kurlantzick, *et al.*, attached to the Velazquez Aff. as Ex. M.) Vaughn argued that despite agreeing to arbitrate "any claim or controversy" arising out of the Settlement Agreement with PSI, he somehow "never agreed to waive his right to pursue a class action" in court. (*Id.*)

Prudential also moved the panel for judgment on the pleadings, on the grounds that the clear and unambiguous language of the Settlement Agreement demonstrates that the parties intended to arbitrate all claims between them (thereby disallowing class claims), and that extrinsic evidence should not be permitted to vary or contradict the terms of that agreement. (*See* Memorandum of Points and Authorities in Support of Prudential Respondents' Motion for Judgment on the Pleadings, dated January 30, 2007, and Affidavit of Liza M. Velazquez In Support, sworn to January 30, 2007, with exhibits, attached to the Velazquez Aff. as Ex. N, at 23–25.) In addition, Prudential argued that the waiver arguments asserted by Vaughn do not apply because a party agreeing to arbitrate does not waive any substantive statutory rights. (*Id.* at 17.)

In support of the parties' cross-motions, hundreds of pages of briefing, cases and other documents were submitted to the panel. (*See, e.g.,* Vaughn's Opposition and Reply Letter Briefs, attached to the Velazquez Aff. as Exs. O & P; Prudential's

Opposition and Reply Briefs and Affidavit of Liza M. Velazquez In Further Support, sworn to March 6, 2007, attached as Exs. Q & R.)

On March 27, 2007, the panel issued an Order denying all of the parties' pre-hearing motions. (*See* March 27, 2007 Order, *Vaughn* v. *Leeds, Morelli & Brown, P.C., et al.*, NASD Arbitration No. 06-00534, attached to the Velazquez Aff. as Ex. S.)

On April 23, 2007, a hearing was held before the panel. At the outset of the hearing, the panel received into evidence all of the papers and documents submitted by the parties in support of their pre-hearing motions, including a copy of the Settlement Agreement containing the parties' agreement to arbitrate. (*See* April 23, 2007 Transcript of Proceedings, *Vaughn* v. *Leeds, Morelli & Brown, P.C., et al.*, NASD Arbitration No. 06-00534, attached to the Velazquez Aff. as Ex. T, at 10:2–8 & 37:23–39:3.)

The panel heard oral argument from the parties and the testimony of Mr. Vaughn. But, contrary to Vaughn's characterization in his Motion to Vacate, this testimony in fact provides substantial support for the panel's finding that, in entering into the Settlement Agreement, the parties intended to arbitrate any and all disputes that arose under the Settlement Agreement, without exception for class claims:

Q:      You understood that you had to arbitrate any claim or controversy under the agreement?

A:      Yes.

                    *        *        *

Q:      In paragraph 14 of the settlement agreement where it says: "Any claim or controversy arising out of or related to the agreement [or] the interpretation thereof," it doesn't say except class actions, right?

A:      No it doesn't.

11

Q:      You knew what a class action was in October of 1998, correct?

A:      Yeah.

\*          \*          \*

Q:      Did you understand that there was any exception to the phrase, "any claim or controversy" that would be brought under the arbitration [agreement]?

A:      No.

(*Id.* at 122:2–5, 108:8–17, 114:20–24.)

On May 10, 2007, The NASD panel issued a unanimous award, "[a]fter considering the pleadings, the testimony and evidence presented at the hearing," dismissing Vaughn's claims in their entirety, and holding that "the Settlement Agreement, dated October 27, 1998, precludes Claimant from bringing a Class Action in court." (*See* Award, dated May 10, 2007, *Vaughn* v. *Leeds, Morelli & Brown, P.C., et al.*, NASD Arbitration No. 06-00534, attached to the Velazquez Aff. as Ex. U, at 3.)

## ARGUMENT

## I.

## PLAINTIFF'S MOTION TO VACATE THE ARBITRATION AWARD SHOULD BE DENIED

### A.    Judicial Review of an Arbitration Award Is Extremely Limited

It is well established that the scope of a court's review of an arbitration award is extremely narrow. *See, e.g., D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . . (quotation marks omitted)); *Wallace* v. *Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) ("It is

well established that courts must grant an arbitration panel's decision great deference." (quotation marks omitted)); *Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("[T]he court's function in confirming or vacating an arbitration award is severely limited." (quotation marks omitted)); *Sperry Int'l Trade, Inc.* v. *Government of Israel*, 689 F.2d 301, 304 (2d Cir. 1982) ("It is beyond cavil that the scope of the district court's review of an arbitration award is limited."); *Hamilton* v. *Sirius Satellite Radio, Inc.*, 375 F. Supp. 2d 269, 273 (S.D.N.Y. 2005) ("[L]imited review of arbitration decisions is necessary both to effectuate the parties' agreement to submit their disputes to arbitration and to avoid costly and protracted litigation about issues the arbitrators have already decided.").

Indeed, a court's review of an arbitrator's award is so deferential that, "[o]nly a *barely colorable justification* for the outcome reached by the arbitrators is necessary to confirm the award." *Gottdiener*, 462 F.3d at 110 (emphasis added and internal quotation marks omitted); *Willemijn*, 103 F.3d at 12. Courts must also defer to the evidentiary findings of the arbitrators and "should not conduct an independent review of the factual record," even if it is "persuaded that an arbitrator has reached an incorrect legal result." *Wallace*, 378 F.3d at 189. An arbitrator need not even explain the rationale underlying the award, as "the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *Gottdiener*, 462 F.3d at 110 (quotation marks omitted); *see also Fromm* v. *ING Funds Distrib., LLC*, 486 F. Supp. 2d 348 (S.D.N.Y. 2007) (confirming award that did not state its rationale); *Wallace*, 378 F.3d 182 (same); *Sperry*, 689 F.2d 301 (same).

As a result, "[a] party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Wallace*, 378 F.3d at 189 (quotation marks omitted); *accord Gottdiener*, 462 F.3d at 110 ("A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."); *Hamilton*, 375 F. Supp. 2d at 273 ("The task for a party seeking to vacate an arbitration award is a formidable one. The party challenging an arbitration award generally bears a heavy burden of proof . . . ."). As discussed below, Vaughn does not even come close to meeting this burden.

**B.    None of the Limited Bases for Vacatur Under the Federal Arbitration Act Are Raised Here**

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"),[2] an arbitration award may be vacated only under the following limited circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Vaughn, however, cannot and does not rely on any of these bases in urging vacatur of the panel's award, and thus concedes that none of these circumstances apply here.

---

[2]    The parties agree that the FAA applies to the instant case.

Instead, Vaughn argues that "the record is completely devoid of evidence from which the Panel could have rationally concluded that the intent of the parties when signing the Settlement Agreement was to waive a class action," and therefore that "the Panel acted with a lack of fundamental rationality in determining that Mr. Vaughn is barred from bringing a class action in court." (Pl's Br. at 6.) Vaughn concedes that the FAA does not permit an arbitration award to be vacated on such grounds, but argues that "[c]ourts in the Southern District have held that an arbitration award lacking in rational foundation or factual support must be vacated, despite the fact that this ground is not listed in Section 10 of the Federal Arbitration Act (FAA)." (*Id.* at 5 (internal quotation marks omitted).) Vaughn further suggests that this principle is a matter of "federal common law," although the cases he cites for this proposition contain no such reference.

In any event, the U.S. Court of Appeals for the Second Circuit recently made clear that, as a matter of law, irrationality is not a basis for vacatur:

> Other Circuits have recognized additional, nonstatutory bases upon which a reviewing court may vacate an arbitrator's award, including where the awards are "completely irrational," "arbitrary and capricious," and contrary to an explicit public policy. To the extent our sister courts may have broadened somewhat the path to vacatur of an arbitration award, we decline to wander from the narrow one embodied in our own jurisprudence. Thus, we will vacate an award only upon finding a violation of one of the four statutory bases, or, more rarely, if we find a panel has acted in manifest disregard of the law.

*Porzig* v. *Dresdner, Kleinwort, Benson, North America LLC*, No. 06-1212-cv, 2007 WL 2241592, at \*4 (2d Cir. Aug. 7, 2007) (internal citations omitted) (holding that arbitrators were without jurisdiction to order party's attorney to refund contingency fee and that modified award of attorneys' fees made without any explanation, where original award had already been found to be in manifest disregard of the law, should be vacated); *see*

*also Wallace*, 378 F.3d at 189–93 (recognizing "manifest disregard of the law" as the only ground "for vacating an arbitral award other than outright perfidy on the part of the arbitrators."). After *Porzig*, there can be no doubt in this Circuit that neither "federal common law" nor any other legal doctrine allows for vacatur of an arbitration award outside of the strictures of the FAA for *any* reason short of an arbitrator's "manifest disregard of the law."

Vaughn does not assert "manifest disregard of the law" or any of the four statutory bases for vacatur. Nor could he. The record is devoid of any hint of arbitrator bias or misconduct that would warrant vacatur. Instead, the sole basis asserted by Vaughn as to why this Court should vacate the arbitration award has been expressly and unequivocally rejected in this Circuit. Vaughn's motion to vacate must therefore be denied. Regardless, even if "lack of fundamental rationality" was a valid basis on which to seek vacatur, Vaughn's assertion that the panel's decision lacks support is, as the record indicates and as Prudential demonstrates below, utterly incorrect as a matter of law and fact.

## II.

## PRUDENTIAL'S CROSS-MOTION TO CONFIRM THE ARBITRATION AWARD SHOULD BE GRANTED

As discussed above, an arbitration award must be confirmed if there is even "a barely colorable justification for the outcome reached by the arbitrators." *Gottdiener*, 462 F.3d at 110. Indeed, "the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *Id.* (quotation marks omitted). Here, far beyond "barely colorable," the NASD panel's award is clearly supported by the record and the justification for its conclusion—that the parties intended

16

to arbitrate any and all disputes arising under the Settlement Agreement, with no exception for class claims—is evident from the plain language of the parties' agreement to arbitrate.

A.     **The Panel's Award Is Justified by the Plain Language of the Settlement Agreement**

The panel's May 10, 2007 award indicates that it is based on "the pleadings, the testimony and evidence presented at the hearing." (*See* Velazquez Aff., Ex. U, at 3.) The panel's unanimous decision that "the Settlement Agreement, dated October 27, 1998, precludes Claimant from bringing a Class Action in court," *id.*, is amply supported by the language of the Settlement Agreement, which provides that "[a]*ny claim or controversy arising out of or related to this Agreement* or the interpretation thereof will be settled by arbitration." (Velazquez Aff., Ex. A, ¶ 14 (emphasis added).)

Vaughn's class action claims—alleging, *inter alia*, that the execution of the Settlement Agreement was part of a conspiracy to defraud—are plainly "related to" the Settlement Agreement, and thus fall within the broad language of its arbitration clause, which this Court found to contain "sweeping language concerning the scope of the questions committed to arbitration." (Velazquez Aff., Ex. B, at 7.) Indeed, at the September 5, 2006 hearing, this Court made clear that Vaughn has "clearly agreed to the arbitration of his claims" and that "the arbitration agreement was valid and enforceable." (Velazquez Aff., Ex. J, at 3:19–21.)

With respect to the issue of whether the parties intended to disallow class claims, this Court has already found that: "it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with

no further qualifications or caveats." (Velazquez Aff., Ex. B at 8.)  The Court also found that Vaughn's argument his class action should be allowed in court "contradicts the clear statement that the arbitration clause applies to 'any' claim or controversy related to this Agreement." (*Id.* at 8.)  Thus, there can be no question that the panel's decision is amply supported by the terms of the Settlement Agreement.  Moreover, given that parole evidence is inadmissible to contradict or vary the terms of an integrated contract, as a matter of law, nothing other than the Settlement Agreement is appropriately considered (or required) as evidence of the parties' intent with respect to the scope of the arbitration clause. *See Primex Int'l Corp.* v. *Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. 1997).

**B.    The Panel's Award Is Also Supported by Vaughn's Testimony**

Although Prudential Defendants maintain that Vaughn's testimony is inadmissible to contradict or vary the terms of the Settlement Agreement, in fact, Vaughn's testimony supports the panel's decision.  As set forth in the Statement of Facts, Vaughn testified that, at the time he signed the Settlement Agreement, he understood that agreement to require the arbitration of any and all claims arising thereunder, without any exception for class or other claims.  (*See* Velazquez Aff., Ex. T at 122:2–5, 108:8–17, 114:20–24.)

\*        \*        \*

In sum, the Award is amply supported by the plain language of the Settlement Agreement, in which the parties agreed to arbitrate "[a]ny claim or controversy arising out of related to this Agreement" – an integrated contract which the law provides should be the sole evidence of the parties' intent.  Moreover, the panel's ruling that Vaughn has waived his right to bring a class action in court is an interpretation

that this Court has already (twice) recognized as a reasonable decision for the arbitrators to make.  Accordingly, the Award should be confirmed.

# CONCLUSION

For the foregoing reasons, this Court should deny Vaughn's motion to vacate the NASD arbitration award and grant Prudential's cross-motion to confirm the award.

Dated: September 14, 2007

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

By: _____
    Gerard E. Harper
    Theodore V. Wells, Jr.
    Liza M. Velazquez

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

-and-

LOWENSTEIN SANDLER, P.C.
1330 Avenue of the Americas
New York, New York 10019

Of Counsel:
Gregory B. Reilly
Julie L. Werner

Attorneys for Respondents
Prudential Securities, Inc. and Prudential Financial, Inc.