# Exhibit J

Page 1

SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

JEFFREY S. VAUGHN,

        Plaintiff,

    v.                              04 Civ. 8391 (DLC)

LEEDS, MORELLI & BROWN, P.C.,
et al.,

        Defendants.

-------------------------------x

                                    September 5, 2006
                                    4:00 p.m.
Before:

            HON. DENISE L. COTE,

                        District Judge

              APPEARANCES

LIDDLE & ROBINSON, L.L.P.
     Attorneys for Plaintiffs
BY:  BLAINE H. BORTNICK

LITCHFIELD CAVO
     Attorneys for Leeds, Morelli & Brown
BY:  DANIEL HUGHES
     KEVIN SPAGNOLI

PAUL WEISS RIFKIND WHARTON & GARRISON, L.L.P.
     Attorneys  for Defendant Prudential Securities &
Prudential Financial
BY:  LIZA VELAZQUEZ
     SAM SHELDEN

          SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Counsel, for the plaintiff, are you
 3    ready to proceed?
 4              MR. BORTNICK:  We are.
 5              THE DEPUTY CLERK:  Please state your name for the
 6    record.
 7              MR. BORTNICK:  Blaine Bortnick of Liddle & Robinson.
 8              THE DEPUTY CLERK:  Who do you have with you at counsel
 9    table?
10              MR. BORTNICK:  I'm sorry.  Rebecca Saenger.  Your
11    Honor, Ms. Saenger is not admitted to this court.  She is an
12    associate at our firm.
13              THE DEPUTY CLERK:  For the defendant, please state
14    your name for the record and the party you represent.
15              MR. HUGHES:  Daniel Hughes of the law firm Litchfield
16    Cavo, representing the Leeds Morelli & Brown defendants and
17    with me is Kevin Spagnoli, an associate with my law firm.
18              THE COURT:  Thank you.
19              MS. VELAZQUEZ:  Liza Velazquez of Paul, Weiss,
20    Rifkind, Wharton & Garrison for the Prudential defendants.  And
21    with me is my colleague Sam Shelden.
22              THE COURT:  Great.  Welcome to everyone.
23              I was presented with an order to show cause and it
24    isn't my practice to sign them ex parte unless there is good
25    reason.  Plaintiff's counsel were unavailable last week and so
```

1   we put the matter over until today to give everybody an
2   opportunity to be heard.
3           This is a matter that was referred to arbitration
4   sometime ago now, and I thought it might be helpful for me to
5   give the parties a sense of where we stand.  And after you hear
6   from me, if counsel want to be heard orally today on the
7   matter, fine.  If you want to set a briefing schedule and put
8   this matter over for oral argument at a later date, fine.
9           But, I thought it might be helpful, as I said, to
10  begin with an overview statement from me.
11          In connection with this order to show cause I have
12  been given a set of documents.  They include some of the
13  plaintiff's submissions to the New York Stock Exchange and the
14  NASD, including an October 28th 2005 letter to the New York
15  Stock Exchange, a February 2nd, 2006 statement of claim to the
16  NASD, and an August 15th, 2006 letter to the NASD.  I think the
17  presentation of the legal issue in those letters is inaccurate
18  and misleading.
19          The plaintiff clearly agreed to the arbitration of his
20  claims and I ruled that the arbitration agreement was valid and
21  enforceable and that legally was not in dispute.
22          I referred this matter to arbitration so that the
23  arbitrator can decide what the intention of the parties was in
24  entering into that arbitration agreement, including deciding
25  what kind of arbitration proceeding the parties had agreed to.

1    Now, the arbitrator, as I see it, could decide at
2    least three different things and there may be more but, for
3    instance, the arbitrator could decide that the parties had
4    intended to disallow class actions. The arbitrator could
5    decide that the parties had agreed to arbitrate individual
6    claims but had reserved unto themselves the right to litigate
7    class claims. The arbitrator could decide that the party had
8    agreed to arbitrate all claims, individual or class claims.
9         So, the parties disputed what the intention -- what
10   their intention was in entering into this arbitration agreement
11   and I want to refer to the Paul Weiss reply brief on the
12   underlying motions in which Paul Weiss argued, at page 3, that,
13   "It was for the arbitrator, not the Court, to interpret the
14   parties' intentions."
15        And of course Paul Weiss argued, and I expect it will
16   argue to the arbitrator, that, "When one reads the agreement
17   and when the arbitrator reads the agreement, the arbitrator
18   should conclude that the parties never intended to allow class
19   actions at all."
20        I didn't rule on that. I ruled that it is for the
21   arbitrator to interpret the agreement and decide what the
22   parties' intentions were.
23        Let's deal with a hypothetical. Let us say the
24   arbitrator decides that the arbitration clause and the parties'
25   intention in entering into the arbitration agreement disallows

                                                                  Page 5

1   the plaintiff from bringing any class action lawsuit.  That, of
2   course, would allow the plaintiff to continue through the
3   arbitration process with an individual claim.  And, depending
4   on what arbitration decision came out of that process -- again,
5   I'm just talking about hypothetical -- somebody would move to
6   vacate or confirm the arbitration award.
7         In that context, in Federal Court here the parties
8   would have the ability, either before me or eventually on
9   appeal, and of course to the extent that the law permitted, to
10  raise issues concerning whether I had erred in sending the
11  matter to arbitration, whether the arbitrator had erred in
12  ruling that no class action litigation or arbitration was
13  permitted, and challenging the merits of the results of the
14  arbitration.  Again, to the extent permitted by governing law.
15        Now, should Mr. Vaughn decide that he doesn't want to
16  submit an individual claim to the arbitration proceeding I
17  expect -- but I'm not going to rule on this -- that he can't
18  get a second bite at the apple -- and I see plaintiff's counsel
19  nodding in agreement -- that either forfeiture or waiver rules
20  or res judicata would apply.  And that's it.
21        He had an opportunity to arbitrate the claim -- again,
22  we are playing with our hypothetical -- he didn't arbitrate it,
23  end of story.
24        That is, of course, if he were successful on appeal in
25  overturning my decision to send the dispute to arbitration or

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

Page 6

1  the arbitrator's ruling, he would be foreclosed.

2        But this, it seems to me, his decision to make. I
3  can't force him, and shouldn't, to make a particular claim to
4  the arbitrator but there may be consequences from that.

5        Now, I think, if I understand what's happening here,
6  Mr. Vaughn is not submitting his individual claim to the
7  arbitrator. I may not understand this correctly but if that's
8  what's happening, sobeit.

9        But, I think I would be derelict not to make sure that
10 I mention the potential ethical issue here for plaintiff's
11 counsel. There may be a serious conflict of interest dividing
12 the plaintiff's interest from those of his counsel on this
13 particular point because if that's the strategy being pursued,
14 Mr. Vaughn may risk losing his right to have his claim ever
15 addressed and lose the right for all recovery.

16        So, I have this order to show cause. I'm happy to
17 hear the parties this afternoon. I'm happy to set a briefing
18 schedule. Or, I'm happy to say that you have my views, do
19 before the arbitrator what you will, and depending on what
20 happens, all in good time I may have some legal issues to
21 confront again.

22        Okay. Mr. Bortnick?

23        MR. BORTNICK: Yes, your Honor. I have to say I
24 largely agree with everything that your Honor said here.

25        The way that the claim was presented initially to the

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

Page 7

1   New York Stock Exchange before it rejected jurisdiction and
2   then subsequently to the NASD, was brought, only essentially it
3   was as a class in the sense that if there was -- if the
4   arbitration panel were to decide at some point in the future
5   that the arbitration clause means that class actions have been
6   waived, then there wouldn't be a one-on-one individual
7   arbitration. Mr. Vaughn was not intending to bring a
8   one-on-one individual arbitration.
9           The reason here is not a particular secret. I think
10  it was even presented to your Honor in papers on the motions
11  below or at a conference below. Mr. Vaughn, when he settled
12  his original case with Prudential with Leeds, Morelli
13  representing him, presented a piece of paper that said I think
14  these are my damages in a certain amount. And Prudential
15  agreed to pay that certain amount to Mr. Vaughn less, of
16  course, the contingency fee portion that went to Leeds, Morelli
17  and Brown.
18          The theory behind the class action of which Mr. Vaughn
19  was bringing was fully understanding but something different.
20          When you have a large group of people that are
21  settling and the allegation is that each of the settling
22  plaintiffs, the class members had a contingency fee taken from
23  their settlement and the allegation is unbeknownst to them,
24  Prudential was paying Leeds, Morelli and Brown quite a
25  substantial amount of legal fees unbeknownst to them, that that

1  amounted essentially to a bribe and, under New York Law, the
2  class can recover the amount of that payment from, by
3  Prudential to Leeds, Morelli and Brown, because that is an
4  amount under New York Law that a party would have been willing
5  to pay to the plaintiffs in this case.
6          That was the theory of the class action.
7          Mr. Vaughn has always understood all along that in his
8  particular case on the one-on-one arbitration he recovered,
9  minus attorney's fees, what he was asking for.  And that's not
10 the theory --
11         So, the theory of the class action was that there was
12 a secret payment made by Prudential to Leeds, Morelli and Brown
13 unbeknownst to Mr. Vaughn and the other potential class
14 plaintiffs and that is the amount of damages that were being
15 sought.
16         Now, it could be that the -- and if the arbitrators,
17 the arbitration panel, I think it would be a panel of three,
18 decide on the other hand that the arbitration clause which
19 says, Arbitrated pursuant to the rules of the New York Stock
20 Exchange or the NASD, which in this case have, for all intents
21 and purposes, I think it is the exact identical rule, no class
22 actions allowed, we don't hear class actions, you didn't waive
23 your class action claims, then we're automatically back in
24 court with the class action.
25         Now, I am certainly --

1       THE COURT:  But if I decide that you did waive your
2  class action claims --
3       MR. BORTNICK:  Mr. Vaughn did not have any intention
4  to bring a one-on-one arbitration because he has a damages
5  issue here.  And he understands that.
6       However, that being said, I think it is probably,
7  since your Honor has raised the concern -- to go and talk to
8  him one more time and say Mr. Vaughn -- because it is very easy
9  to amend the arbitration claim and just go back and say, well,
10 in the alternative, if the Court -- if the arbitration panel
11 decides class actions have been waived, therefore we bring an
12 individual one-on-one arbitration based on a fraud,
13 essentially, based on that secret agreement.
14      And so, I think it is probably appropriate to give
15 him, based on your Honor's concerns, that we should probably
16 ask him one more time if that's how he would want to proceed in
17 the alternative, recognizing that is the issue that he has had
18 and the decision he made before.
19      It is a very simple change to make in the arbitration
20 statement of claim.  And we will go back and do that, but I do
21 think it is fair to point out, your Honor, that since last
22 December the defendants in this case, Prudential and Leeds,
23 Morelli and Brown, have known that the claim, as it is now
24 positioned in front of the NASD, is the claim we have been
25 bringing all along.  And it is only last week where they're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  suddenly raising an objection to the way we've presented the
2  claim to now the NASD. But, they've known about this since
3  December when they obtained a copy of the New York Stock
4  Exchange statement of claim. They obtained a copy of the NASD
5  statement of claim, not what they were served -- they were
6  served on July 27 and I understand they got it on or about
7  August 1, but we certainly gave them a courtesy copy of it not
8  because we were required to, but because they felt we were --
9  they wanted us to and we agreed.
10            My records don't show whether we did it back in
11 February but we certainly did it in May.
12            So, we've known about this for a long time, so this
13 came as a surprise to us now that they're complaining about the
14 way we presented it.
15            And sort of today is the first day I could even
16 actually address it. I am more than happy to go back and talk
17 to Mr. Vaughn and iterate to him one more time: The Judge has
18 also raised this concern now and I think it is probably
19 appropriate that we do it.
20            And you understand, because I do agree with your
21 Honor, that if it is presented in the way it is presented and
22 there is no one-on-one arbitration claim, if Mr. Vaughn doesn't
23 amend the statement of claim -- and he could do it at a later
24 time, he doesn't have to do it now, he could do it within the
25 context of what has been presented to the NASD -- but, if he

Page 11

1   chooses not to proceed one on one, then I agree with your
2   Honor, he would not be able to come back and make some kind of
3   claim at a future date. He would lose it forever. I think
4   that is absolutely correct.
5           THE COURT: I don't think the formulation in the
6   papers that you have submitted to the New York Stock Exchange
7   or the NASD has been, in each instance, consistent with the
8   description of what I put on the record today. But, that is
9   for you and the defendants to litigate before the arbitrator.
10          MR. BORTNICK: The arbitrators have a copy of the
11  order, I believe. They should. No arbitration panel has been
12  appointed yet. The last letter you saw from us to the NASD,
13  there is a form letter that goes out from the NASD from the
14  processing center and it says here is a list of arbitrator
15  skills, customer complaints, this or that, and you can rank 1
16  through 4 and we will try to accommodate you.
17          And then we wrote back saying we don't think these fit
18  what we want. And we wrote George Friedman as the director of
19  arbitration because we didn't want a data inputter to look at
20  the letter and just toss it but we wanted to have some kind of
21  personal attention. We copied them on it because that's how we
22  see this claim.
23          The arbitration panel will have that order and they
24  can make a decision as to whether it should be allowed to be a
25  class action. And, in that case, they'll say take it back to

                                                                Page 12
1    Court.
2               But, I guess then because of what your Honor says, you
3    probably -- I guess I should probably request to let me go
4    ahead and have one more conversation with our client and tell
5    him what your Honor said.  I think it is the right thing to do.
6               THE COURT:  Do the defendants wish to be heard?
7               MR. HUGHES:  Just briefly, your Honor.  Daniel Hughes
8    on behalf of the Leeds defendants.
9               I received the papers from plaintiff's counsel and
10   their filings on August 1st of '06, the last date that
11   Mr. Bortnick stated.
12              The reason we are here is because the submission to
13   the NASD which is presently pending states:  Accordingly,
14   Vaughn respectfully requests that the arbitrators issue an
15   order and decision declaring that the Vaughn may pursue his
16   class action claims against defendants in court and directing
17   defendants to withdraw their objections.
18              So, this, to us, did not seem to be an objective
19   presentation of your Honor's decision for the arbitrators to
20   decide what is the intent of the parties to arbitrate.
21              We are faced now with an August 15th deadline and I
22   was wondering if we could figure out a way to extend that
23   deadline for Mr. Bortnick to file additional papers and for us
24   to have an additional extension to respond to those papers.
25              THE COURT:  I am not going to deal with arbitration
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1  scheduling issues.
2          Is there anything else?
3          MS. VELAZQUEZ:  Your Honor, Liza Velazquez from Paul
4  Weiss for the Prudential defendants.
5          Your Honor, we have been here before you on these
6  issues three times now.  I believe your Honor's August 12th,
7  2005 order was crystal clear:  Vaughn must arbitrate his claims
8  against Prudential and submit to the arbitrators the question
9  of the format of how that arbitration should proceed.
10         He went to the NASD late last year.  We weren't
11 provided with a copy of those papers at the time they were
12 presented to the NASD but we subsequently learned that --
13 excuse me.  He went to the NYSE.  We subsequently learned that
14 he asked the NYSE to overrule this Court's order that
15 notwithstanding the August 12th, 2005 order he can go ahead and
16 come back to court and basically do what the F.A.A. doesn't
17 permit him to do, which is to get an interlocutory appeal but
18 from an arbitral forum.
19         Then, your Honor, we were served with his NASD papers
20 on or about August 1st.
21         Respectfully, I would say to Mr. Bortnick that there
22 was no proceeding until we were served with those papers, so we
23 could not approach the Court about what had transpired until we
24 were served with the papers on August 1st.
25         Again, in our view, he is asking the NASD to overrule

1  this Court and to send him back to court with his claims even
2  though the Court has already decided those claims are
3  arbitrable.
4         I submit that the three options that your Honor set
5  forth earlier today are, they're far afield from what
6  Mr. Bortnick and plaintiff are requesting from the NASD.  He is
7  not submitting his claims against Prudential or any of these
8  parties to arbitration at all.  Instead, he is rehashing what
9  has already been litigated before this Court and we
10 respectfully submit to your Honor that it would be unfair and
11 prejudicial to Prudential to have to relitigate those issues
12 again before the NASD.
13        THE COURT:  Well, I don't think that the plaintiff's
14 papers, Mr. Vaughn's papers have correctly framed the issue for
15 the arbitrators, but I don't think defense counsel are either.
16        The issue that was in dispute and that I submitted to
17 arbitration was for an interpretation of the arbitration
18 agreement, and that was for the arbitrator to decide the
19 parties' intentions.  I did not rule that everything had to be
20 subject to arbitration.  I contemplated, therefore, that the
21 arbitrator, in deciding the parties' intentions, might decide
22 that the agreement to arbitrate does not foreclose the
23 plaintiff from coming to court and litigating a class action.
24        But the plaintiff is not, in its submissions to the
25 arbitrators to date, has not clearly stated the issue for the

Page 15

1  arbitrators to decide about the parties' intent and the scope
2  of that intent.
3          But, I think it would be wrong for the defendants to
4  characterize it the way you are today in court to suggest that
5  the arbitrators' hands are bound in some way such that they
6  couldn't rule in interpreting the parties' intent that the
7  plaintiff has the right to come to court and proceed on a class
8  action.  And I refer you, again, to your reply brief on the
9  underlying motion practice.
10         So, I don't think there is a need for further argument
11 or briefing of this issue.
12         It seems to me that what I'm going to do -- we have a
13 court reporter here because this is complicated -- is that I'm
14 going to endorse the order to show cause to reflect that after
15 having heard from all parties, I decline to issue the order to
16 show cause without prejudice to any parties' rights to argue at
17 a later point in time that their rights have been infringed in
18 some way.  And then we will just see how the arbitration
19 process plays itself out.
20         If a party misrepresents or misleads the arbitrator,
21 or doesn't ask for the appropriate relief, I don't know how
22 that will play out in court before me later but everybody's
23 rights are preserved.  You can challenge whatever happens
24 through the arbitration process when it is ripe for such a
25 challenge.

SOUTHERN DISTRICT REPORTERS, P.C.

1     Not hearing any objection, I will so endorse the order
2  to show cause. If you want to wait afterwards, we can get you
3  a copy of that endorsement.
4     Since you are all here, I thought I would just address
5  the 54(B) motion that's pending before me too.
6     This motion is governed by the rule and Second Circuit
7  authority interpreting the rule. And I have looked most
8  recently at O'Bert, 331 F.3d at 40 to 41, a Second Circuit
9  2003, decision. It indicates, among other things, that where
10 the decision to direct the entry of a partial judgment in
11 advance of the final adjudication of all the claims must be
12 considered in light of the goal of judicial economy as served
13 by the historic federal policy against piecemeal appeals.
14    And, with this policy in mind, the power to enter a
15 partial judgment should be exercised sparingly, bearing in mind
16 that not all dismissals of individual claims should be
17 immediately appealed even if they are, in some sense, separable
18 from the remaining unresolved claims.
19    The power should generally be reserved for the
20 infrequent harsh case and certification should be granted only
21 if there exists some danger of hardship or injustice through
22 delay which would be alleviated by immediate appeal.
23    I'm going to deny the 54(B) motion.
24    First of all, there is no showing of error to suggest
25 to me that it, because of that, needs immediate review. The

Page 17

1  plaintiff is arbitrating the claims against the five dismissed
2  individual defendants.  And the issues with respect to those
3  five dismissed individual defendants will be reviewed in the
4  ordinary course through the confirmation or vacating
5  proceedings that will follow the arbitration decision.
6          I haven't seen any showing of hardship or injustice
7  and I do not find, principally for the reasons pointed out by
8  defense counsel and their opposition, that judicial economy
9  would be served by a 54(B) finding at this point.
10         Thanks so much and good luck to all of you.
11                              oOo

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300