holds true with respect to the law of the case doctrine. *See Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc.*, 1993 WL 42786, at *9-10 (S.D.N.Y. Feb. 17, 1993) (applying law of the case doctrine in arbitration context).

Furthermore, because the District Court has already ruled that the Arbitration Agreement is "valid and enforceable," this Panel has no jurisdiction to rule otherwise. "An arbitration panel derives its jurisdiction from an agreement of the parties, or from an order of a court compelling arbitration." *Smiga* v. *Dean Witter Reynolds, Inc.*, 766 F.2d 698, 704 (2d Cir. 1985) (citations omitted), *cert. denied and reh'g denied*, 475 U.S. 1067 & 1151 (1986); *see also Continental Group, Inc.* v. *NPS Communications, Inc.*, 873 F.2d 613, 619-20 (2d Cir. 1989) ("Arbitrators...cannot inflate their authority beyond the boundaries of the...court's order of reference....[because they] derive[]...their powers from the...court's order."); *Coady* v. *Ashcraft & Gerel*, 223 F.3d 1, 9 (1st Cir. 2000) ("[T]he district court's initial order of reference determined that the employment agreement authorized arbitration only of questions of ambiguity or interpretation of the contract and that questions of breach of contract were not within the scope of the clause. The arbitrators were without power to enlarge upon that ruling." (internal citation omitted)); 9 U.S.C.A. § 10(a)(4) (2006) (providing that a district court may vacate an award where "the arbitrators exceeded their powers").

The District Court explained that its Order of reference gives the Panel at least three options in ascertaining the parties' intent: (1) to decide that the parties had agreed to disallow class actions; (2) to decide that the parties had agreed to arbitrate individual claims but litigate class claims; or (3) to decide that the parties had agreed to arbitrate all claims, individual

or class. (*See* Velazquez Aff., Ex. F at 4:1-8.)  Absent from these possibilities is any discretion to decide that Vaughn is not bound to arbitrate his individual claims.[3]

Thus, even if the Panel were to decide that the parties had agreed to arbitrate individual claims but had reserved unto themselves the right to litigate class claims, because the District Court has already ruled that Vaughn cannot litigate his individual claims against Prudential in court, the relief he is seeking is impermissible.  The Panel has no jurisdiction to issue a ruling outside the bounds of (much less directly contrary to) the District Court's Order of reference.  Moreover, because he must arbitrate his individual claims, Vaughn cannot properly serve as a representative plaintiff in any class action.  5 *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed.) ("a corollary of the requirement that a definite class exists is the requirement that the class representative have proper standing by being a member of the class").  Indeed, all of the other PSI employees that settled their employment-related claims against PSI did so in the same manner as Vaughn and signed the exact form of settlement agreement and general release as that signed by Vaughn, all other potential claimants have agreed to arbitrate their individual claims as well.  Therefore, all putative class members similarly situated to Vaughn would have their individual claims compelled to arbitration and could not serve as class representatives in any class action litigation in court.

Judgment for the Prudential Respondents therefore is required by the very terms of the District Court's Order.

---

[3]  Indeed, the District Court went to great lengths to make clear to Vaughn that if he does not arbitrate his underlying claims against PSI in this proceeding, he is at grave risk of being deemed to have waived those claims.  (*Id.* at 5:15-23.)  Vaughn's counsel has conceded as much.  (*Id.* at 10:20-11:4.)

**B.      Vaughn May Not Avoid His Agreement To Arbitrate By Asserting A Class Claim**

Section 4 of the FAA requires courts to enforce arbitration agreements "in accordance with the terms of the agreement." 9 U.S.C. § 4.  Thus, courts considering the issue have overwhelmingly concluded that, where an arbitration agreement does not explicitly provide for a collective or representative procedure, a plaintiff may not press forward with anything more than his or her individualized claims in arbitration.  *See, e.g., Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 274-77 (7th Cir. 1995) (refusing to certify an arbitral class when the arbitration agreement itself was silent on the issue, since FAA Section 4 only authorizes courts to enforce arbitration agreements according to their terms, with neither variation nor addition); *Bischoff* v. *DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1108-09 & 1114-15 (C.D.Cal. 2002) (ordering named plaintiff to arbitrate his claims individually pursuant to the parties' customer agreement and staying class claims, stating "that a district court cannot order arbitration to proceed on a class-wide basis unless the arbitration clause contains a provision for class-wide resolution of claims"); *Gammaro* v. *Thorp Consumer Discount Co.*, 828 F. Supp. 673, 674 (D. Minn. 1993) (declining to allow class-wide arbitration in a dispute where the arbitration agreement did not expressly provide for class-wide relief, ordering named plaintiff to arbitrate his claim individually pursuant to the arbitration clause in the parties' loan agreement and dismissing putative class claims).

The legal principles that require strict enforcement of an arbitration agreement by prohibiting class arbitration where the agreement is silent on the subject apply with equal – if not greater – force where a party seeks to avoid that arbitration agreement altogether by packaging clearly arbitrable claims as class claims.  Under analogous facts, in *Howard* v. *Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 665 n.7 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999), the court ruled that a party "who has agreed to arbitrate all claims" "may not avoid

14

arbitration by pursuing class claims." In *Howard*, plaintiff entered into an employment agreement with Peat Marwick which contained an arbitration clause pursuant to which the parties agreed that: "Any claim or controversy between the parties arising out of or relating to this Agreement or the breach thereof . . . shall be settled by arbitration." *Id.* at 657. When plaintiff's employment with Peat Marwick was terminated, she filed a complaint in court against Peat Marwick and her immediate supervisor alleging discrimination and fraud. The defendants successfully moved to stay the court action pending arbitration based on the parties' arbitration agreement. *Id.* at 658. In a blatant attempt to evade the arbitration agreement, plaintiff filed a second court action – this time against two Peat Marwick partners (as part of a putative class of defendants) and a Netherlands-based association – asserting claims virtually identical to those alleged in her first action. *See id.* at 658. In ruling that plaintiff's second action should be dismissed, the *Howard* court noted that a plaintiff "who has agreed to arbitrate all claims arising out of her employment may not avoid arbitration by pursuing class claims. Such claims must be pursued in non-class arbitration." *Id.* at 658.[4]

Likewise, in *Bischoff*, the court granted defendant's motion to compel individualized arbitration of the claims brought by one of two named plaintiffs who had agreed to arbitrate his claims pursuant to his customer agreement with DirecTV but who had nevertheless attempted to file a putative class action. Even though the parties' arbitration agreement was silent on the arbitrability of class actions and there was a possibility that each

---

[4]   In *Howard*, the district court further found that "plaintiff's counsel had no reasonable basis for filing the instant action given Howard's clear obligation to arbitrate her claims against the defendants" and ruled that sanctions were warranted. *Id.* at 666. "Even a cursory review of the law reveals that Howard's claims based on her employment with Peat Marwick are subject to arbitration as per the Agreement, regardless of whether she targets new

putative class member would have to pursue individual arbitrations, the court enforced DirecTV's bargained-for right to arbitrate against the named plaintiff and stayed the claims of the putative class pending the outcome of that arbitration. *See Bischoff*, 180 F. Supp. 2d at 1107-09 & 1114-15. *See also Gammaro*, 828 F. Supp. at 674 (directing borrower who had filed a putative class action against lenders seeking personal and class relief under federal Truth In Lending Act as well as under state statutes to proceed with individualized arbitration pursuant to his loan agreement with defendants and dismissing putative class claims); *Hayes v. County Bank*, 26 A.D.3d 465, 467 (N.Y.A.D. 2 Dept., 2006) (under New York law, affirming trial court's decision to grant motion to compel arbitration of putative class representative's individual claims against lender and to stay putative class claims).

So too here. Vaughn has agreed to arbitrate "any claim or controversy" "arising out of or related to" his settlement agreement with Prudential. (*See Velazquez Aff., Ex. A, at ¶ 14.*) There is no dispute that this broad arbitration clause encompasses Vaughn's underlying claims and, indeed, the District Court has already so ruled in its Order of reference to this Panel. Moreover, the governing arbitration agreement does not expressly provide for class proceedings. Accordingly, the law is clear that because Vaughn's claims are subject to arbitration, he must arbitrate those claims individually. *See Howard*; *Bischoff*; *Gammaro*; *Hayes*. The Federal Arbitration Act "plainly requires that a district court stay litigation where *issues* presented in the litigation are the subject of an arbitration agreement" and a party may not eschew its duty to arbitrate those issues by "introducing the identical controversy" against nonsignatories to the agreement. *Doctor's Associates, Inc.* v. *Stuart*, 85 F.3d 975, 984 (2d Cir. 1996) (emphasis in

---

defendants." *Id.* Vaughn's attempt to join putative class members as additional plaintiffs in order to circumvent his agreement to arbitrate is just as egregious.

original). This outcome is compelled "even if the result is piecemeal litigation." *Dean Witter Reynolds, Inc.* v. *Byrd*, 450 U.S. 213, 221 (1985).

       Moreover, there can be no valid argument that Vaughn could not have waived his "right" to bring a class action by entering into an arbitration agreement which provided for arbitration pursuant to NASD (or NYSE) rules. "As the Supreme Court has recognized, a party agreeing to arbitration does not waive any substantive statutory rights; rather, the party simply agrees to submit those rights to an arbitral forum." *Caley* v. *Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371 (11th Cir. 2005) (holding that arbitration agreement's prohibition on class claims was not unconscionable and enforcing class action waiver against FLSA, ADEA and ERISA plaintiffs), *cert. denied*, 126 S.Ct. 2020 (2006). Indeed, in *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991), the Supreme Court expressly rejected the argument that the inability to proceed collectively impairs substantive rights. *Id.* ("even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [underlying statute] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred"); *see also Veliz* v. *Cintas Corp.*, 2005 WL 1048699, at *2 (N.D. Cal. May 4, 2005) ("Precedent establishes that even an inability to proceed on a class or collective basis in arbitration has no impact on a plaintiff's ability to vindicate his or her substantive statutory rights."); *Ranieri* v. *Bell Atlantic Mobile*, 304 A.D.2d 353, 354 (N.Y.A.D. 1st Dept. 2003) ("[G]iven the strong public policy favoring arbitration, and the absence of a commensurate policy favoring class actions, we are in accord with authorities holding that a contractual proscription against class actions, such as contained in the Agreements, is neither unconscionable nor violative of public policy." (internal citations omitted)); *Levitan* v. *Fanfare Media Works, Inc.*, 2003 WL 21028339, at *11 n.7 (Cal. App. 2d

Dist. 2003) (rejecting plaintiff's argument that arbitration agreement was unconscionable because it selected American Arbitration Association rules that did not contemplate class action arbitration, and reversing the trial court's order denying defendant's motion to compel arbitration against two of the three putative class representatives who had signed arbitration agreements).[5]

"When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial." *Champ*, 55 F.3d at 276 (internal citation and quotation omitted). "One of those 'procedural niceties' is the possibility of pursuing a class action under Rule 23." *Id.* Certainly nothing in NASD Rule 10301(d) calls for a different result. *See D.E. Frey & Co., Inc.* v. *Wherry*, 27 F. Supp. 2d 950, 951 (S.D. Tex. 1998) (NASD Rule 10301(d) "is procedural and not a substantive jurisdictional rule"). Accordingly, as the District Court stated in its Order of reference to this Panel, it would be a proper interpretation of the governing arbitration clause (and, Prudential Respondents submit, the *correct* interpretation) to require all claims to be arbitrated and to disallow class actions. (Velazquez Aff., Ex. F, at 4:1-8.)

---

[5]   In the case of federal age discrimination and wage and hour claims under the Federal Labor Standards Act (FLSA), for example, courts have repeatedly ruled that employees may freely waive the ability to pursue FLSA remedies through a representative proceeding by agreeing to arbitrate all employment disputes. *See, e.g., Carter* v. *Countrywide Credit Industries Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins* v. *Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002). And, courts have enforced arbitration agreement provisions expressly waiving any class or collective claims. *See, e.g., Gipson* v. *Cross Country Bank*, 354 F. Supp. 2d 1278 (M.D. Ala. 2005) (upholding validity of arbitration agreement's class action waiver in consumer case); *Forness* v. *Cross Country Bank Inc.*, 2006 WL 7236233 (S.D. Ill. Mar. 20, 2006) (same); *Livingston* v. *Associates Finance, Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) ("The Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing 'class action arbitration,' so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis" (internal citation omitted).)

**C.    The Clear And Unambiguous Language of the Arbitration Agreement Demonstrates That The Parties Intended to Arbitrate All Claims Between Them**

The language of the parties' "valid and enforceable" arbitration agreement is clear and unambiguous. The agreement expressly provides: (1) that "any" disputes "arising out of or related to" the Settlement Agreement must be arbitrated; and (2) that all such arbitrations must be conducted "under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc." Moreover, the agreement is silent on the issue of class claims. (*See* Ex. A, at ¶14.)

The "sweeping" scope of the arbitration clause clearly covers Vaughn's underlying claims that the Settlement Agreement he entered into with PSI was fraudulently obtained. In ruling on the scope of an arbitration clause almost identical to that in the Settlement Agreement here, the U.S. Supreme Court held that the clause was "easily broad enough to encompass [the claim that execution] of the agreement itself [was] procured by fraud." *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (interpreting agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof"). Where, as here, there is no claim that defendants fraudulently induced the arbitration clause itself – and as Judge Cote has already ruled – Vaughn's claims must be arbitrated. *Prima Paint*, 388 U.S. at 403-404 (holding that when a pleading alleges fraudulent inducement of a contract containing an arbitration clause, a court may not "consider claims of fraud in the inducement of the contract generally"). *See Buckeye Check Cashing, Inc.* v. *Cardegna*, 126 S.Ct. 1204, 1209 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Coleman* v. *Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) ("Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be

determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the arbitration agreement."); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Haydu*, 637 F.2d 391, 398 & n.11 (5th Cir. 1981) (same).

Moreover, as Prudential Respondents have demonstrated, the law is well-settled that a court must strictly enforce the parties' arbitration agreement as written and cannot, for example, expand that agreement to allow class arbitration unless it is expressly provided for in the agreement. *See, e.g., Champ; Howard; Bischoff;* and *Gammaro; see also Herrington* v. *Union Planters Bank, N.A.*, 113 F. Supp. 2d 1026, 1034 (S.D. Miss. 2000) ("After reviewing the arbitration provision and determining that it does not expressly provide for consolidated arbitration, the Court finds that the plaintiffs are not entitled to arbitrate as a class."), *aff'd*, 265 F.3d 1059 (5th Cir. 2001). The logic of these decisions finds additional support in the well-established line of cases setting forth the rule against consolidation of arbitrations absent express contractual provision. *See Gov't of United Kingdom* v. *Boeing Co.*, 998 F.2d 68, 74 (2d Cir. 1993) (holding that "[a] district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation"); *American Centennial Ins. Co.* v. *Nat'l Casualty Co.*, 951 F.2d 107, 108 (6th Cir. 1991) (a "District Court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, where the agreement is silent regarding consolidation."); *Baesler* v. *Continental Grain Co.*, 900 F.2d 1193, 1195 (8th Cir. 1990) (holding that "absent a provision in an arbitration agreement authorizing consolidation, a district court is without power to consolidate arbitration proceedings"); *Protective Life Ins. Corp.* v. *Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir. 1989) (per curiam) (holding that "the sole question for the district court is whether there is a written agreement among the parties providing

for consolidated arbitration"). If a court must enforce an arbitration agreement as it is written and is without power to expand that agreement to allow class or consolidated arbitration absent express contractual language providing for such, it would defy law and logic for this Panel to rule that an arbitration agreement which is silent on the issue of class arbitration could be eviscerated entirely by the assertion of a class claim.

The parties' express agreement to arbitrate all claims between them under NASD (or NYSE) rules only confirms their intent to arbitrate and to disallow class claims between them. From the time of the October 27, 1998 Settlement Agreement to the present, the NASD Rules have provided that "[a] claim submitted as a class action shall not be eligible for arbitration under [the NASD Code of Arbitration Procedure]." *See* NASD Rule 10301(d)(1) (2006); NASD Code of Arbitration Procedure § 12(d)(1) (1992). The NYSE rules are no different. Because then – as now – both NYSE and NASD rules prohibited the arbitration of class claims, there can be no question that, by agreeing to arbitrate "any" claims between them "arising out of or related to" the Settlement Agreement and by agreeing to have their disputes conducted "under" NASD or NYSE rules, the parties intended to preclude class claims. It is well-settled that the rules and regulations of third parties, whether governmental or self-

regulatory organizations cannot overcome a contractual agreement to arbitrate.[6]  Moreover, if

Vaughn had the power to evade his promise to arbitrate merely by asserting a class claim, the

parties' agreement would be illusory. "[It] is too indefinite for legal enforcement ... where the

promisor retains an unlimited right to decide later the nature or extent of his performance. This

unlimited choice in effect destroys the promise and makes it illusory." 1 Williston on Contracts,

§ 4:24 (4th ed. 2006). *See Chiapparelli* v. *Baker, Kellogg & Co.*, 169 N.E. 274, 277 (N.Y. 1929)

(same); *Davis* v. *General Foods Corp.*, 21 F. Supp. 445, 446 (S.D.N.Y. 1937) (same).

Furthermore, it is a "cardinal principle of contract construction . . . that a

document should be read to give effect to all its provisions and to render them consistent with

each other." *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995); *see also*

*Sayers* v. *Rochester Telephone Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d

Cir. 1993) ("[b]y examining the entire contract, we safeguard against adopting an interpretation

that would render any individual provision superfluous"); *Rentways, Inc.* v. *O'Neill Milk &*

*Cream Co.*, 126 N.E.2d 271, 273 (N.Y. 1955) ("the entire contract must be considered and, as

between possible interpretations of an ambiguous term, that will be chosen which best accords

---

[6]  In the "AMEX Window" cases, various Circuit Courts of Appeal repeatedly held that plaintiffs were bound to arbitrate before the NASD, NYSE or the American Stock Exchange (AMEX), as provided in their contracts, even though the Constitution of the AMEX, to which the brokers belonged, also provided for mandatory arbitration before the American Arbitration Association. *See, e.g., Luckie* v. *Smith Barney, Harris Upham & Co., Inc.*, 999 F.2d 509 (11th Cir. 1993); *PaineWebber, Inc.* v. *Rutherford*, 903 F.2d 106 (2d Cir. 1990); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Georgiadis*, 903 F.2d 109 (2d Cir. 1990). Similarly, courts have upheld arbitration clauses in securities customer contracts and required arbitration of securities fraud cases even though, at that time, Rule 15c2-2 under the Securities Exchange Act of 1934 purported to prohibit brokers from enforcing pre-dispute arbitration agreements relating to securities law claims. *See, e.g., Steinberg* v. *Illinois Co., Inc.*, 635 F. Supp. 615, 617 (N.D. Ill. 1986), *stay denied*, 1986 WL 15140 (N.D. Ill. 1986); *Fisher* v. *Prudential-Bache Securities, Inc.*, 635 F. Supp. 234, 236 (D. Md. 1986), *aff'd in part, rev'd in part*, 831 F.2d 290 (4th Cir. 1987).

with the sense of the remainder of the contract"). There is a presumption against finding that contract language specifically adopted by the parties is without meaning: "A contractual provision should be read so as to avoid rendering any part of the contract superfluous or without effect." *Omni Berkshire Corp.* v. *Wells Fargo Bank, N.A.*, 307 F. Supp. 2d 534, 540 (S.D.N.Y. 2004). In addition, "words should be given the meanings ordinarily ascribed to them and absurd results should be avoided." *Newmont Mines, Ltd.* v. *Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986).

Here, the parties agreed to arbitrate "any" claims between them "arising out of or related to" the Settlement Agreement and to do so "under" NASD or NYSE rules. Any reading of the parties' arbitration agreement which would give Vaughn the ability to avoid the arbitration agreement merely by casting his claims as class claims would squarely contradict the agreement's clear and unambiguous provision that the parties must arbitrate "any" claims "arising out of or related to" the Settlement Agreement and render that provision meaningless. Similarly, any reading of the parties' arbitration agreement which would allow Vaughn to submit a dispute clearly covered by the broad arbitration clause to a judicial forum for resolution would fly in the face of the agreement's provision that the parties must submit their disputes for resolution "under" the procedural rules of the NASD or the NYSE. The law does not allow either result.

**D.    Extrinsic Evidence Should Not Be Permitted to Vary or Contradict the Terms of the Arbitration Agreement**

Nothing more is needed for this Panel to hold Vaughn to his agreement to individually arbitrate his claims against PSI. Indeed, any "evidence" that Vaughn may seek to introduce which is outside the four corners of the parties' arbitration agreement would not only be unnecessary – it would be inadmissible as a matter of law.

23

Where – as here – there is an integrated contract, the parol evidence rule bars the introduction of any extrinsic evidence to vary or contradict the terms of the contract and the contract must be enforced according to its terms.[7] *See Primex Intern. Corp.* v. *Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. 1997) (Purpose of general merger provision, specifying that contract "represents the entire understanding between the parties," is to require full application of parol evidence rule in order to bar introduction of extrinsic evidence to vary or contradict terms of contract.); *W.W.W. Assocs., Inc.* v. *Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."); *Adler & Shaykin* v. *Wachner*, 721 F. Supp. 472, 476 (S.D.N.Y. 1988) ("Where the parties have reduced their agreement to an integrated writing, the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations or agreements offered to contradict or modify the terms of their writing."); *Happy Dack Trading Co., Ltd.* v. *Agro-Industries, Inc.*, 602 F. Supp. 986, 991 (S.D.N.Y. 1984) ("Under the parol evidence rule, the clear and unambiguous terms of valid, integrated written instrument cannot be contradicted or varied by prior or contemporaneous extrinsic oral or written evidence"). Although the parole evidence rule permits extrinsic evidence in the limited circumstance where a party can show that an entire agreement should be deemed a nullity due to fraud, the District Court has already ruled

---

[7]  "Under New York law, a contract which appears complete on its face is an integrated agreement as a matter of law." *Wayland Inv. Fund, LLC* v. *Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000) (internal citation omitted).  Here, the parties' agreement also contains an express integration clause. (*See* Velazquez Aff., Ex. A, at ¶ 13.)

that the arbitration agreement is valid and enforceable, and this Panel has no jurisdiction to rule otherwise.[8]

Furthermore, it is well-settled that affixing a signature to a contract creates a conclusive presumption that the signer read, understood and assented to its terms. *Republic Nat. Bank* v. *Hales*, 75 F. Supp. 2d 300, 313-14 (S.D.N.Y. 1999) ("whether or not a party to an agreement has actually read and understood all portions of an agreement, the law generally assumes that he has"), *aff'd sub nom.*, *HSBC Bank USA* v. *Hales*, 4 Fed. Appx. 15 (2d Cir. 2001); *Arakawa* v. *Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) ("a person

---

[8] In any event, parol evidence is not permitted to alter the terms of a single provision in an integrated agreement. *Acquaire* v. *Canada Drybottling*, 906 F. Supp. 819, 826 (E.D.N.Y. 1995) (internal citation omitted). *See also Wayland Inv. Fund*, 111 F. Supp. 2d at 456 ("it is hornbook law that parties cannot alter or contradict the express terms of one specific provision of an integrated contract in writing by pointing to parol evidence of fraud or mutual mistake") (internal citation omitted); *Meinrath* v. *The Singer Co.*, 482 F. Supp. 457, 460-61 (S.D.N.Y. 1979), *aff'd*, 697 F.2d 293 (2d Cir. 1982) (proof of fraud may not be offered to demonstrate that only certain provisions of an agreement should not be enforced). Thus, Vaughn may not introduce parol evidence to contradict the express terms of the parties' agreement to arbitrate "any claim or controversy arising out of or related to" the Settlement Agreement or to otherwise argue that the arbitration provision in the Settlement Agreement should not be enforced.

who signs a contract is presumed to know its contents and to assent to them"); *Berger* v. *Cantor Fitzgerald Securities*, 967 F. Supp. 91, 93 (S.D.N.Y. 1997) (same).[9]

**E.    Public Policy Favors Enforcement Of The Parties' Arbitration Agreement**

The strong public policy favoring arbitration also requires that the parties' agreement to arbitrate all claims between them be enforced. The Federal Arbitration Act reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd* v. *Elmira Savings Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). Accordingly, this Panel must "construe arbitration clauses as broadly as possible." *Id.* Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). *See Mastrobuono*, 514 U.S. at 62 ("when a court interprets ... provisions in an agreement covered by [the Federal Arbitration Act], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration" (internal quotation omitted)). The relief Vaughn is seeking from this Panel flies in the face of this strong public policy. If Vaughn's arguments are credited, any party who agrees to arbitrate

---

[9]    Indeed, where, as here, a party to a contract continues to act as if the contract is valid and to reap the benefits of the contract even after learning of facts supposedly indicating that the contract is the product of fraud, as a matter of law, that party has waived any claim of wrongful inducement. *National Westminster Bank, U.S.A.* v. *Ross*, 130 B.R. 656, 675 (S.D.N.Y. 1991) ("where a party to an agreement has actual knowledge of another party's breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of the breach"), *aff'd sub nom.*, *Yaeger* v. *National Westminster*, 962 F.2d 1 (2d Cir. 1992); *Emigrant Industrial Sav. Bank* v. *Willow Builders*, 48 N.E.2d 293, 299 (N.Y. 1943) ("Where a contract is broken in the course of performance, the injured party has a choice presented to him of continuing the contract or of refusing to go on. If the injured party chooses to go on, he loses his right to terminate the contract because of the default." (internal citation omitted)); *Lumber Indus., Inc.* v. *Woodlawn Furniture Corp.*, 274 N.Y.S.2d 813, 814-15 (N.Y.A.D. 1st Dep't 1966) (same). Vaughn has come forward with no evidence that he has returned the $200,000.00 which he

under NASD or NYSE rules could avoid arbitration simply by bringing their claims as class claims. This Panel cannot and should not allow for this result.

Moreover, for Vaughn to prevail on his claims, he must bear "a heavy burden of proof" in demonstrating that PSI has waived its right to arbitrate disputes clearly covered by the parties' arbitration agreement whenever those disputes involve a class claim simply by selecting the NASD as one possible arbitral forum. *Bischoff*, 180 F. Supp. 2d at 1112 (citing cases).[10] This he cannot do. "Waiver of a contractual right to arbitrate is not favored and any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Id.* (internal citation omitted). "Additionally, 'any doubts concerning whether there has been a waiver are resolved in favor of arbitration,' regardless of whether the issue at hand is the construction of the contractual language itself or an allegation of waiver, delay or another similar defense to arbitrability." *Id.* (internal citation omitted); *see also PPG Industries, Inc.* v. *Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997).

## II.

### CLAIMANT'S RULE 10301(d)(3) "CLAIM" MUST BE DISMISSED

Vaughn asserts that PSI, in moving to compel Vaughn to arbitrate his claims pursuant to the parties' arbitration agreement, has violated NASD Rule 10301(d)(3) and,

---

received over eight years ago in consideration for his agreement to arbitrate and release his claims against Prudential Respondents.

[10] Specifically, to establish waiver, Vaughn must prove: (1) PSI's knowledge of the right to compel arbitration; (2) acts inconsistent with that right; and (3) resulting prejudice to the party opposing the arbitration. *See Chappel* v. *Laboratory Corp. of America*, 232 F.3d 719. 724 (9th Cir. 2000).

therefore, should be subject to "disciplinary action." (*See* Velazquez Aff., Ex. E, at pp. 9-12.) This "claim" is meritless.

### A.    Rule 10301(d)(3) Does Not Provide A Cause of Action

Rule 10301(d)(3) certainly does not permit the relief Vaughn seeks. As an initial matter, Rule 10301(d)(3) is limited to putative class actions initiated by a "*customer, other member or person associated with a member*," and, thus, on its face, has no applicability to Vaughn's claims. *See* Rule 10301(d)(3) (emphasis added). According to the NASD Glossary of Arbitration Terms, Vaughn falls within none of the definitions of: (i)"customer" ("A person or entity (not acting in the capacity of an associated person or member) that transacts business with any member firm and/or associated person"); (ii) "member" ("any partnership, corporation or other legal entity admitted to membership in the NASD"); or (iii) "person associated with a member" ("An associated person is any person engaged in the investment banking or securities business who is directly or indirectly controlled by an NASD member, whether or not they are registered or exempt from registration with NASD. An associated person includes, but is not limited to, every sole proprietor, partner, officer, director, or branch manager of any NASD member.").[11]

Moreover, it is well-settled that no private right of action exists based on alleged violations of self-regulatory organizations' rules. *See, e.g., Indemnified Capital Investments, SA. v. R.J. O'Brien & Assocs.*, 12 F.3d 1406, 1412 (7th Cir. 1993) (National Futures Association

---

[11]    Indeed, the NASD's use of the term "former" in other rule provisions – for example, to modify the definition of "associated person of a member" in Rule 10216(f) (which concerns motions to compel arbitration) – only confirms that Rule 10301(d)(3) does not apply here. Even if Vaughn could have been considered an "associated person" at the time he was employed by PSI, when he filed his putative class action complaint on October 25, 2004, he certainly was no longer "associated" with PSI.

Compliance rule); *Spicer* v. *Chicago Bd. of Options Exchange, Inc.*, 977 F.2d 255, 266 (7th Cir. 1992) (CBOE rules); *Carrott* v. *Shearson Hayden Stone, Inc.*, 724 F.2d 821, 823 (9th Cir. 1984) (NYSE rules); *Thompson* v. *Smith Barney, Harris Upham & Co., Inc.*, 709 F.2d 1413, 1419 (11th Cir. 1983) (NASD and NYSE rules); *Lantz* v. *Private Satellite Television, Inc.*, 813 F. Supp. 554, 556 (E.D. Mich. 1993) (NASD and NYSE rules); *Bloch* v. *Prudential-Bache Securities*, 707 F. Supp. 189, 195-96 (W.D. Pa. 1989) (NASD and NYSE rules). Not surprisingly, Vaughn does not cite a single case where the NASD has granted an arbitral party's request to levy sanctions against a member for moving successfully to compel arbitration of claims pursuant to an arbitration agreement that a federal district court has found to be "valid and enforceable."

**B.    PSI Acted Appropriately In Enforcing Its Rights Under the Arbitration Agreement**

Furthermore, PSI's motion to compel was expressly authorized by NASD Arbitration Rules and federal law. NASD Rule 10216(f), providing for "Motion[s] to Compel Arbitration," provides:

> If a member or a current or former associated person of a member files in court a claim against a member or a current or former associated person of a member that includes matters that are subject to mandatory arbitration, either by the rules of the Association or by private agreement, the defending party may move to compel arbitration of the claims that are subject to mandatory arbitration.

*See* NASD Rule 10216(f). Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, provides:

> A party aggrieved by the alleged [] refusal of another to arbitrate under a written agreement for arbitration may petition [] for an order directing that such arbitration proceed in the manner provided for in such agreement. ... [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the

parties to proceed to arbitration in accordance with the terms of the agreement.

Thus, PSI properly moved to compel arbitration pursuant to the express authority granted by NASD Rule 10216(f) and Section 4 of the FAA, based on the arbitration provision in the Settlement Agreement. In granting PSI's Motion to Compel, the District Court found that the parties' arbitration agreement contained "sweeping language concerning the scope of the questions committed to arbitration." (*See* Velazquez Aff., Ex. C, at p. 7 (internal quotation omitted).) The District Court ruled that the arbitration agreement was enforceable, that the parties had "agree[d] that all of Vaughn's claims are arbitrable and that Vaughn agreed to the arbitration provision." (*Id.* at 6.) Furthermore, in referring the question of whether the parties' arbitration agreement permits the assertion of class claims to this Panel, the District Court was expressly following the holding of the U.S. Supreme Court in *Green Tree Financial Corp.* v. *Bazzle*, 539 U.S. 444 (2005).

By asserting that Prudential Respondents should be sanctioned for moving to compel arbitration, Vaughn is arguing that the procedure set forth in the FAA should not have been followed in this case, that the District Court improperly granted Prudential Respondents' motion to compel arbitration and that the District Court should have ruled contrary to the U.S. Supreme Court's decision in *Green Tree*. The groundless nature of Vaughn's arguments is obvious. Vaughn's Rule 10301(d)(3) claim must be denied.

## Conclusion

Accordingly, for all of the reasons set forth above, the Statement of Claim should

be dismissed and an award should be entered in favor of the Prudential Respondents.

Dated: January 30, 2007

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____

Gerard E. Harper
Theodore V. Wells, Jr.
Liza M. Velazquez

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

-and-

LOWENSTEIN SANDLER, P.C.
1330 Avenue of the Americas
New York, New York 10019

Of Counsel:
Gregory B. Reilly
Julie L. Werner

Attorneys for Respondents Prudential Securities, Inc. and
Prudential Financial, Inc.

NATIONAL ASSOCIATION OF SECURITIES
DEALERS, INC.

----------------------------------------------------------- X

In the Matter of Arbitration between JEFFREY S.     :
VAUGHN, individually and on behalf of those Class
Members similarly situated,     :

               Claimants,     :

        - against -     :     NASD-DR Case No. 06-00534

LEEDS, MORELLI & BROWN, P.C., LEEDS,     **AFFIDAVIT OF LIZA M.**
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,     : **VELAZQUEZ IN SUPPORT OF**
LEEDS, MORELLI & BROWN, PRUDENTIAL     **PRUDENTIAL RESPONDENTS'**
SECURITIES, INC., PRUDENTIAL FINANCIAL,     : **MOTION FOR JUDGMENT ON**
INC., LENARD LEEDS, STEVEN A. MORELLI,     **THE PLEADINGS**
JEFFREY K. BROWN, JAMES VAGNINI, FREDERIC     :
DAVID OSTROVE, ROBERT JOHN VALLI, JR.,
DISCRIMINATION ON WALL STREET, INC.     :
DISCRIMINATION ON WALL STREET
MANHATTAN, INC., JOHN DOES, 1-10 AND JANE     :
DOES, 1-10, a fictitious designation for presently
unknown licensed attorneys, professionals and/or     :
unknown persons or entities,

               Respondents.     :

----------------------------------------------------------- X

       Liza M. Velazquez, being duly sworn, deposes and says:

       1.     I am a member of the law firm of Paul, Weiss, Rifkind, Wharton &

Garrison, LLP, attorneys for Respondents Prudential Securities, Inc. ("PSI") and Prudential

Financial, Inc. (collectively, "Prudential Respondents") in the above captioned matter.  I submit

this affidavit in support of Prudential Respondents' Motion for Judgment on the Pleadings.

       2.     Claimant Jeffrey Vaughn is a former PSI employee who, along with other

former PSI employees, retained the law firm of Leeds, Morelli & Brown (the "Leeds Firm") in or

around 1998 to assert employment discrimination claims against PSI.  In an effort to resolve

these claims expeditiously and fairly, PSI, the Leeds Firm and those employees (including

Vaughn) agreed to enter into an alternate dispute resolution ("ADR") process.

      3.    Pursuant to that process, on or about October 27, 1998, expressly upon

advice of his counsel of choice, and in consideration of (among other things) a payment from PSI

of $200,000, Vaughn executed an agreement settling and completely releasing his claims against

PSI (the "Settlement Agreement"). Attached as Exhibit A to this affidavit is a true and correct

copy of the Settlement Agreement, dated October 27, 1998.

      4.    Paragraph 4 of the Settlement Agreement provides in pertinent part:

> In consideration for PSI's commitment to the various arrangements
> described in the preceding paragraphs, and in lieu of any other
> benefits, as a full and final settlement, *Vaughn hereby releases
> and discharges PSI, its parent, divisions, subsidiaries and
> affiliates and their current and former directors, officers,
> shareholders, agents and employees, and each of their
> predecessors, successors, and assigns (hereinafter "the
> Company"), from any and all claims and causes of action* ...
> arising out of or related to Vaughn's employment or separation
> from employment ... that Vaughn, his heirs ... now have, ever had
> or may hereafter have, whether known or unknown, suspected or
> unsuspected, up to and including the date of this Agreement.

(*See* Ex. A, at ¶ 4 (emphasis added).)

      5.    Nearly six years later, notwithstanding this Settlement Agreement and

release, on October 25, 2004, Vaughn filed a putative class action complaint (amended on March

15, 2005) in the U.S. District Court for the Southern District of New York. The complaint

alleges that PSI secretly agreed in February 1998 to pay attorney's fees to the Leeds Firm, in

exchange for the Leeds Firm's agreement to cap any damages awarded to Vaughn and other

former PSI employees in connection with the dispute resolution process to which those former

PSI employees (including Vaughn) expressly agreed to submit their employment discrimination claims.[1]

6.    On April 22, 2005, PSI moved the District Court to compel arbitration of, and dismiss, Vaughn's claims against PSI because those claims are encompassed by the parties' broad arbitration agreement.  Specifically, the Settlement Agreement provides in paragraph 14:

> *Any* claim or controversy *arising out of or related to* this Agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.  Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof.  The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

(*See* Ex. A, at ¶ 14 (emphasis added).)  The agreement is silent on the issue of class claims.  (*See* Ex. A, at ¶ 14.)

7.    Although Vaughn conceded that his claims against PSI were arbitrable pursuant to the Settlement Agreement, Vaughn opposed PSI's Motion to Compel.  In so doing, Vaughn made precisely the same arguments before the District Court that he is now rehashing before this Panel – namely, that, because the rules of the NASD and NYSE (which the Settlement Agreement expressly contemplated would govern the conduct of the parties' arbitration proceedings) do not permit class actions, Vaughn is not bound by the arbitration agreement and should be allowed to breach that agreement simply by casting his arbitrable

---

[1]    Specifically, Vaughn's complaint asserts claims against PSI for: (1) aiding and abetting fraud by the Leeds Firm; (2) civil RICO; (3) civil RICO conspiracy; (4) tortious interference with the contract between the Leeds Firm and its clients; and (5) civil fraud conspiracy.  In his complaint, Vaughn seeks disgorgement of any attorneys' fees paid to the Leeds Firm in connection with their representation of Vaughn and the putative class members, in addition to punitive and treble damages.

claims as class claims. Attached as Exhibit B to this Affidavit is a true and correct copy of Vaughn's Memorandum of Law in Opposition to Prudential Defendants' Motion to Dismiss, dated May 24, 2005.

8.     The District Court rejected Vaughn's arguments. On August 12, 2005, the District Court issued an Opinion and Order granting PSI's motion to compel arbitration and staying any future litigation until the resolution of the arbitration proceedings. Attached as Exhibit C to this affidavit is a true and correct copy of the Opinion and Order in *Vaughn v. Leeds, Morelli & Brown, P.C., et al.*, S.D.N.Y. Case No. 04 Civ. 08391 (DLC), dated August 12, 2005.

9.     Citing the Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), the Court ruled that, "[i]n the absence of 'clear and unmistakable evidence to the contrary' in an arbitration clause, only in limited circumstances will a court 'assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter.'" (*See* Ex. C, at 6 (internal citation omitted).) The Court also held that "[t]he question of whether arbitration clauses 'forbid class arbitration . . . does not fall into this narrow exception' because it involves 'neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties.'" (*Id.* at 6-7 (internal citation omitted).)

10.     Noting that the arbitration clause in the Settlement Agreement "contains 'sweeping language concerning the scope of the questions committed to arbitration,'" the Court expressly rejected Vaughn's arguments that the parties could not have intended the arbitration of his class claim because the NYSE and NASD "rules do not permit class action arbitrations." (*Id.* at 7 (internal citation omitted).) The Court pointed out that Vaughn's argument "contradicts the clear statement that the arbitration clause applies to 'any' claim or controversy related to the

- 4 -

Agreement." (*Id.* at 8.) The Court further noted that, "[e]ven assuming that Vaughn is right, and the applicable arbitration rules do, indeed, forbid class action arbitrations under all circumstances, it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats." (*Id.* at 8.) The Court's ruling thus made clear that Vaughn must arbitrate his individual claims against PSI, but that whether the parties intended to allow class claims and, if so, in what forum those claims should be brought were questions "for the arbitrator, not the courts, to decide." (*Id.* at 8 (internal quotation omitted.) The Court also granted the Leeds Firm and related defendants' (the "Leeds Defendants") motion to compel arbitration. (*Id.* at 8-12.)

11.    On December 27, 2005, following Vaughn's unsuccessful attempt to seek the same relief he now requests from this Panel from the NYSE, the District Court issued an Order affirming its August 12, 2005 Order and stating, "the case remains stayed and on the Court's suspense docket." Attached as Exhibit D to this affidavit is a true and correct copy of the Order in *Vaughn v. Leeds, Morelli & Brown, P.C., et al.*, S.D.N.Y. Case No. 04 Civ. 08391 (DLC), dated December 27, 2005.

12.    Attached as Exhibit E to this affidavit is a true and correct copy of the Statement of Claim, dated May 25, 2006. In his Statement of Claim, Vaughn does not assert the claims he submitted to the District Court. Instead, Vaughn recounts the errors that he perceives in the District Court's August 12, 2005 Opinion and Order and states that he is "submit[ting] this matter to the NASD in order to decide . . . whether Vaughn is entitled to pursue his class action claims in court, or whether . . . Vaughn may be compelled to pursue his claims individually in arbitration." (*See* Ex. E, at 6.) Specifically, in his Statement of Claim, Vaughn asks the NASD panel to "issue an order and decision declaring that Vaughn may pursue his class action claims

against defendants in court and directing defendants to withdraw their objections and stipulate that the agreement to arbitrate does not preclude Claimants' right to proceed with a class action in court and, therefore, is not enforceable." (*Id.* at 12.) Vaughn also seeks costs and that PSI be referred for disciplinary action for seeking to enforce its rights under the parties' arbitration agreement. (*Id.*)

13.    On August 30, 2006, PSI moved the District Court for an Order enforcing its prior Orders compelling Vaughn to arbitrate his claims against PSI.

14.    The Court convened a conference to address PSI's Motion to Enforce on September 5, 2006. Attached as Exhibit F to this affidavit is a true and correct copy of the Transcript of Proceedings in *Vaughn* v. *Leeds, Morelli & Brown, P.C., et al.*, S.D.N.Y. Case No. 04 Civ. 08391 (DLC), dated September 5, 2006.

15.    At the September 5, 2006 conference on PSI's Motion to Enforce, the District Court stated that it found – upon review of Vaughn's prior submissions to the NYSE, the Statement of Claim submitted in this proceeding and Vaughn's August 15, 2006 letter to the NASD – Vaughn's "presentation of the legal issue" to be "inaccurate and misleading." (*See* Ex. F, at 3:11-18.)

16.    The District Court stated in no uncertain terms that: (i) Vaughn had "clearly agreed to the arbitration of his claims"; and (ii) "the arbitration agreement was valid and enforceable." (*Id.* at 3:19-21.) Indeed, the District Court emphasized that these fundamental issues are "legally . . . not in dispute." (*Id.*)

17.    The District Court noted that, in keeping with the Supreme Court decision in *Green Tree*, it "referred this matter to arbitration so that the arbitrator can decide what the intention of the parties was in entering into that arbitration agreement, including deciding what

kind of arbitration proceeding the parties had agreed to." (*Id.* at 3:22-25.)  The District Court

then stated its view as to the range of options available to the Panel in ascertaining the parties'

intention in entering into the arbitration agreement with respect to the issue of class claims:

> [T]he arbitrator, as I see it, could decide at least three different
> things and there may be more but, for instance, the arbitrator could
> decide that the parties had intended to disallow class actions.  The
> arbitrator could decide that the parties had agreed to arbitrate
> individual claims but had reserved unto themselves the right to
> litigate class claims.  The arbitrator could decide that the party had
> agreed to arbitrate all claims, individual or class claims.

(*Id.* at 4:1-8.)  Notably absent from the possibilities presented by the District Court is any

decision by the Panel that Vaughn is not bound to arbitrate his claims.

18.    The District Court warned Vaughn that, even if he is ultimately successful

in overturning the District Court's decision to compel arbitration upon judicial review of this

Panel's award, if he does not submit his individual claims to this Panel for adjudication, it is

likely that "he can't get a second bite at the apple" and "either forfeiture or waiver rules or res

judicata would apply.  And that's it." (*Id.* at 5:18-20.)  Vaughn's counsel conceded this point.

(*Id.* at 10:20-11:4.)


_____
Liza M. Velázquez


Sworn to before me this
30th day of January, 2007

_____
Notary Public

NORMA SOTO
Notary Public, State of New York
No. 41-4893337
Qualified in New York County
Commission Expires June 22, 200_

**Exhibit A**

11/18/2004  17:43  19736024900                    EMPLOYMENT AND LABOR                    PAGE 08/11

OCT 26 1998 14:43 FR PSI LAW DEPT.          212 214 1019 TO 9151674752024          P.03/17

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Made and entered into this ____ day of October 1998, by and between Jeffrey Vaughn and Prudential Securities Incorporated ("PSI").

WHEREAS, Vaughn has alleged certain claims arising out of Vaughn's employment with PSI and separation therefrom; and

WHEREAS, PSI denies all such claims; and

WHEREAS, PSI and Vaughn have agreed to amicably resolve any and all such claims;

NOW, THEREFORE, in full and complete settlement of such claims and in consideration of the mutual promises and covenants set forth herein, Vaughn and PSI agree as follows:

1. _Separation From Employment._ Vaughn's last day of employment at PSI shall be October 23, 1998.

2. _Payment by PSI._ Upon the expiration of seven (7) days following Vaughn's execution of this Settlement Agreement and General Release (the "Agreement"), PSI shall pay to Vaughn, in a single lump-sum payment, the total agreed-upon amount of Two Hundred Thousand Dollars and No Cents ($200,000.00), as payment in full for all alleged personal injury or other non-wage claims, including , but not limited to, any claims for emotional distress and general, special and consequential damages.  The parties acknowledge and agree that PSI shall file a form 1099-misc reflecting the above payment.

3. _Medical Benefits._ PSI agrees to continue Vaughn's health plan coverage through October 31, 1998.  Thereafter, Vaughn will be eligible to continue the plan coverage pursuant to the terms of the Consolidated Omnibus Budget Reconciliation Act ("COBRA").  If Vaughn elects to continue health plan coverage pursuant to COBRA, PSI will pay Vaughn's COBRA premiums through and including April 30, 1999, or until Vaughn obtains other employment or is eligible for other group health plan coverage, whichever comes first.  Thereafter, Vaughn will be responsible for the payment of any COBRA premiums through the remainder of Vaughn's eligibility.

4. _Release by Vaughn._ In consideration for PSI's commitment to the various arrangements described in the preceding paragraphs, and in lieu of any other benefits, as a full and final settlement, Vaughn hereby releases and discharges PSI, its parent, divisions, subsidiaries and affiliates and their current and former directors, officers, shareholders, agents and employees, and each of their predecessors, successors, and assigns (hereinafter "the Company"), from any and all claims and causes of action (except for the benefits specifically set forth in this Agreement) arising out of or related to Vaughn's employment or separation from employment, including, but not limited to, any claims for salary, bonuses, severance pay, vacation pay or any benefits under the Employee Retirement Income Security Act (except for vested benefits which are not affected by this Agreement), sexual harassment, or discrimination based on race, color, national origin, ancestry, religion, marital status, sex, sexual orientation, citizenship status, pregnancy, medical condition or disability (as defined by the Americans with Disabilities Act, or any other state or local law), age, or any other unlawful discrimination (under the Age Discrimination in Employment Act, as amended by the Older Workers Benefit Protection Act of 1990, Title VII of the Civil Rights Act, as amended, or any other federal, state, or local laws), breach of implied or express contract, breach of promise, misrepresentation, negligence, fraud, estoppel, defamation, infliction of emotional distress, retaliation, whistleblower rights, violation of public policy or wrongful or constructive discharge, and for attorneys' fees, that Vaughn, his heirs, executors, administrators, successors, and assigns now have, ever had or may hereafter have, whether known or unknown, suspected



Vaughn Settlement Agreement
October 1990
Page 2

or unsuspected, up to and including the date of this Agreement. Vaughn further agrees, promises and covenants that, to the maximum extent permitted by law, neither he, nor any person, organization, or other entity acting on his behalf has or will file, charge, claim, sue or cause or permit to be filed, charged or claimed, any action for damages or other relief (including injunctive, declaratory, monetary relief or other) against the Company involving any matter occurring in the past up to the date of this Agreement, or involving or based upon any claims, demands, causes of action, obligations, damages or liabilities which are the subject of this Agreement (other than an action to enforce the terms herein).

5.    No Admission of Liability.  Neither this Agreement, nor anything contained herein shall be construed as an admission by the Company that it has in any respect violated or abridged any Federal, State, or local law or any right or obligation that it may owe or may have owed to Vaughn.  No final findings or final judgments have been made and Vaughn does not purport and will not claim to be a prevailing party, to any degree or extent, nor will this Agreement or its terms be admissible in any proceeding other than in a proceeding for breach of the terms contained herein.

6.    Cooperation by Vaughn.  Vaughn agrees to cooperate with and make himself readily available to PSI or its General Counsel, as PSI may reasonably request, to assist it in any matter, including giving truthful testimony in any litigation or potential litigation, over which Vaughn may have knowledge, information or expertise.

7.    Confidential and Proprietary Information of PSI.  Vaughn understands and agrees that all books, records, documents and information, whether written or not, pertaining to PSI's business activities, are the confidential and proprietary property of PSI (hereinafter referred to as "trade secrets and confidential and proprietary information").  Vaughn warrants, covenants, and agrees that he will not disclose any of PSI's trade secrets and confidential and proprietary information to any person or entity not employed, owned by, or otherwise affiliated with PSI.  Vaughn further agrees that he shall not be entitled to copies, in any form, of such trade secrets and confidential and proprietary information and that he shall immediately return to PSI any copies of such information currently in his possession.

8.    Reemployment or Reinstatement.  Vaughn agrees not to apply for employment or reemployment with PSI, and that PSI has no obligation, contractual or otherwise, to rehire, reemploy or recall him in the future.

9.    Nondisparagement.  Vaughn represents that he has not and agrees that he will not in any way disparage PSI, its current and former officers, directors and employees, or the Company, or make or solicit any comments, statements, or the like to the media or to others that may be considered to be derogatory or detrimental to the good name or business reputation of any of the aforementioned parties or entities.

10.    Testimony Required by Law or Regulatory Authority.  Vaughn further agrees that he will not at any time discuss any matter concerning PSI with anyone adverse or potentially adverse to PSI on any matter including employment claims or customer claims, without the prior written consent of Counsel for PSI.  Nothing contained herein, however, shall preclude Vaughn from discussing any matter concerning PSI with any governmental regulatory or self-regulatory agency.  Further, if required by a governmental regulatory agency or self-regulatory agency to provide testimony or information regarding the PSI, Vaughn will cooperate with said regulatory agency.  If compelled to testify by a validly served subpoena in any legal proceeding or by regulatory authority, Vaughn will testify truthfully as to all matters concerning his employment at PSI.

11.    Confidentiality of Agreement.  Vaughn agrees not to disclose or cause to be disclosed, either directly or indirectly, to any person or organization, except to his legal and

Vaughn Settlement Agreement
October 1998
Page 3

financial advisorial, or as required by law, or governmental regulatory or self-regulatory authority, any information regarding the amount of, terms of, or facts or circumstances underlying this Agreement.

12.    Indemnification.  Vaughn expressly warrants and represents to PSI that he will indemnify PSI against, and hold PSI harmless from, the tax consequences, if any, of PSI's not withholding taxes from, or reporting to the Internal Revenue Service as income, the aforementioned payment, including, but in no way limited to, any and all taxes, interest, and/or penalties incurred in connection therewith.

13.    Entire Agreement and Severability.  The parties hereto agree that this Agreement may not be modified, altered or changed except by a written agreement signed by the parties hereto.  The parties acknowledge that this constitutes the entire agreement between them superseding all prior written and oral agreements.  If any provision of this Agreement is held to be invalid, the remaining provisions shall remain in full force and effect.

14.    Arbitration.  Any claim or controversy arising out of or related to this Agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.  Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof.  The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

15.    Breach of Agreement.  Should Vaughn violate any provision of this Agreement, the Company may apply for appropriate relief.  In any proceeding to enforce the terms of this Agreement, the Agreement may be introduced under seal in order to maintain its confidentiality.  Vaughn understands and agrees that the damage to the Company due to any such breach will be extremely difficult to determine.  Because of this difficulty, Vaughn agrees that in the event of a finding of such breach, he will forfeit to PSI all amounts received pursuant to this Agreement, and he shall indemnify PSI for any and all costs incurred in connection with any such recovery, including reasonable attorneys' fees.  Notwithstanding any such relief, all of the other terms of this Agreement, including, without limitation, Vaughn's release of claims, shall remain in full force and effect.  The remedies provided for in this provision shall not be construed to be exclusive and do not bar any other claims for relief.

16.    Voluntary Execution.  Vaughn acknowledges that he has carefully read this Agreement and understands all of its terms including the full and final release of claims set forth above.  Vaughn further acknowledges that he has voluntarily entered into this Agreement; that he has not relied upon any representation or statement, written or oral, not set forth in this Agreement; that the only consideration received for signing this Agreement is as set forth herein; that the consideration received for executing this Agreement is greater than that to which he may otherwise be entitled; and that this document gives him the opportunity and encourages him to have this Agreement reviewed by his attorney and tax advisor.  Vaughn also acknowledges that he has been afforded at least twenty-one days to consider the release provision contained herein and that he has seven days after signing this Agreement to revoke it in writing.  Accordingly, no payments required under this Agreement shall be made until the expiration of seven days following Vaughn's execution of the Agreement.

11/10/2004  17:43    19738024988                    EMPLOYMENT AND LABOR                        PAGE  11/11
                OCT 26 1998 14:45 FR PSI L/W DEPT.            212 214 1818 TO 915167475824        P.05

Vaughn Settlement Agreement
October 1998
Page 4


        IN WITNESS WHEREOF, the parties hereto evidence their agreement by their
signatures.


                PRUDENTIAL SECURITIES INCORPORATED

Date:                        BY:


Date:        10/27/98        [signature]
                                JEFFREY VAUGHN

NOV 10 2004 17:49                                19738024988        PAGE.11