**Exhibit D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
                                                :
JEFFREY S. VAUGHN, individually and on          :
behalf of those class members similarly         :
situated,                                       :
                                                :
                    Plaintiff,                  :        04 Civ. 8391 (DLC)
                                                :
         -v-                                    :        ORDER
                                                :
LEEDS, MORELLI & BROWN, P.C., LEEDS,            :
MORELLI & BROWN, L.L.P., LEEDS &               :
MORELLI, LEEDS, MORELLI & BROWN,               :
PRUDENTIAL SECURITIES, INC., PRUDENTIAL        :
FINANCIAL, INC., LENARD LEEDS, STEVEN          :
A. MORELLI, JEFFREY K. BROWN, and JOHN         :
DOES, JAMES VAGNINI, FREDERIC DAVID            :
OSTROVE, ROBERT JOHN VALLI, JR.,               :
DISCRIMINATION ON WALL STREET, INC. and        :
DISCRIMINATION ON WALL STREET                  :
MANHATTAN, INC., and JOHN DOES, ESQS.          :
1-10 and JANE DOES, ESQS., 1-10 a              :
fictitious designation for presently           :
and unknown licensed attorneys,                :
professionals and/or unknown persons or        :
entities,                                       :
                                                :
                    Defendants.                 :
                                                :
------------------------------------------------X

DENISE COTE, District Judge:

     Having reviewed letters from plaintiff, dated December 7 and

16, 2005 and from defendants, dated December 13, 14, 20, and two

dated December 15, 2005, it is hereby

     ORDERED that the case remains stayed and on the Court's

suspense docket pursuant to the Opinion and Order dated August

12, 2005.

SO ORDERED:

Dated:    New York, New York
          December 27, 2005


                              _____
                                    DENISE COTE
                              United States District Judge

**Exhibit E**

NASD DISPUTE RESOLUTION, INC.

------------------------------------------------------------ x

In the Matter of Arbitration between
JEFFREY S. VAUGHN, individually and on behalf of
those Class Members similarly situated,

                Claimants,

      -against-

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,
LEEDS, MORELLI & BROWN, PRUDENTIAL
SECURITIES, INC., PRUDENTIAL FINANCIAL,
INC., LENARD LEEDS, STEVEN A. MORELLI,
JEFFREY K. BROWN, JAMES VAGNINI,
FREDERIC DAVID OSTROVE, ROBERT JOHN
VALLI, JR., DISCRIMINATION ON WALL
STREET, INC. DISCRIMINATION ON WALL
STREET, MANHATTAN, INC., JOHN DOES, 1-10
AND JANE DOES, 1-10 a fictitious designation for
presently unknown licensed attorneys, professionals
and/or unknown persons or entities,

                Defendants.

------------------------------------------------------------ x

### STATEMENT OF CLAIM

Claimant, Jeffrey S. Vaughn, ("Vaughn") individually and on behalf of those Class Members similarly situated, submit this matter pursuant to the Opinion and Orders of the Hon. Denise Cote, U.S. District Judge (S.D.N.Y.) dated August 12, 2005 and December 27, 2005 (Exhibit A).

Vaughn commenced a putative class action in the United States District Court for the Southern District of New York, individually and on behalf of all Class Members, against his employer and the lawyers he retained to represent him in an employment discrimination dispute

against his employer. In his amended complaint, filed on or about March 15, 2005, Vaughn alleges that the settlement agreement ("Settlement Agreement") that resolved his dispute was a product of secret collusion between his employer and his lawyers. (Exhibit B – Amended Complaint)

The defendants, Leeds, Morelli & Brown, P.C., Leeds, Morelli & Brown, L.L.P., Leeds & Morelli, Leeds, Morelli & Brown Leonard Leeds, Steven A. Morelli, Jeffrey K. Brown, James Vagnini, Frederic David Ostrove, Robert John Valli, Jr., Discrimination on Wall Street, Inc., Discrimination on Wall Street Manhattan, Inc. (the "Leeds Defendants") and Prudential Securities Incorporated and Prudential Financial, Inc. ("Prudential") moved to dismiss or compel arbitration pursuant to the provisions of the Settlement Agreement. Vaughn opposed the motion, contending that the arbitration provision is not enforceable because the arbitration rules provided for in the Settlement Agreement (*i.e.:* NYSE and NASD) do not permit class actions, or the enforcement of an arbitration agreement against Vaughn's claims submitted as part of a putative class action. In addition, Vaughn objected to arbitration by reason of the fact that his lawyers (the Leeds Defendants) are not parties to the Agreement.

In her decision, Judge Cote reasoned that, under Green Tree Fin. Corp. v. Bazzle, 53 9 U.S. 444 (2003), the Court was limited to determining "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy" (internal quotations and citation omitted). The court went on to state that "in a case where an arbitration clause provided that the parties agreed to submit to the arbitrator [a]ll disputes, claims or controversies arising from or

2

relating to this contract, the Supreme Court held that a dispute about whether the arbitration clause forbids the use of class action procedures ... is a dispute relating to this contract. In such a case, it was apparent that the parties agreed that an arbitrator, not a judge, would answer the relevant question" (internal quotes and citation omitted). The Court concluded that the question of whether the arbitration provision applies to an action brought as a class action is a matter for the arbitrators to decide.

Vaughn respectfully submits that, although the District Court's interpretation of Bazzle is correct, on the facts of that case, however, the court in Bazzle was not interpreting an arbitration agreement subject to and controlled by the rules of the self-regulatory organizations ("SROs"), such as the NASD or NYSE.

Vaughn asserts that NASD Rule 10301(d)(3) precludes defendants from enforcing the arbitration agreement against him, as they have done, by compelling Vaughn's claims, encompassed in a class action filed in court, to arbitration.

In addition the Court held that, under the principles of estoppel, the Leeds defendants, as non-signatories to the Settlement Agreement, could compel arbitration of Vaughn's claims. The Court based its decision on the fact that the issues sought to be resolved are intertwined with the Settlement Agreement. However, since the Leeds defendants' right to compel arbitration stems solely from defendant, Prudential's being a signatory to the arbitration agreement, there is no independent basis upon which the Leeds defendants could compel arbitration that Prudential itself is barred from enforcing under NASD Rules.

Nevertheless, despite granting defendants' motion to compel arbitration, the court did not determine whether the arbitration agreement at issue precluded Vaughn from bringing a class action. The Court's decision left to the arbitrators to interpret the meaning of NASD Rule 10301(d) or NYSE Rule 600(d).

In reference to Vaughn's contention that the NASD and NYSE rules preclude class actions in arbitration, Judge Cote stated, "it would be plausible to interpret the arbitration clause to require all claims to be arbitrated and to disallow class actions with no further qualifications or caveats." Vaughn respectfully submits that NASD Rule 10301(d)(3) clearly warrants a different conclusion, one in favor of Vaughn's right to proceed with his putative class action in court. Vaughn further asserts that defendants knowingly misrepresented the application of the NASD (and/or NYSE) arbitration rules with respect to class actions.

By letter dated October 28, 2005, Claimant, pursuant to the District Court's Order, submitted the dispute to New York Stock Exchange Arbitration and requested an order and decision granting Vaughn leave to return to court to pursue his class action claims, pursuant to NYSE Rule 600(d). By letter dated November 3, 2005, the NYSE declined to accept Vaughn's submission due to the inclusion of the Leeds Defendants, non-members of the NYSE (Exhibit C – letter of Harry Albirt – NYSE). The NYSE did not address the issue of whether a class action is eligible for arbitration or whether the arbitration agreement was enforceable against claimants' claims submitted as part of a putative class action filed in court, or, as stated by the Court, if claimant was required to submit his claim individually to arbitration.

By letter dated December 7, 2005, Vaughn informed the Court that the NYSE had rejected Vaughn's submission due to the inclusion of the Leeds defendants, notwithstanding their voluntary submission to jurisdiction. Vaughn sought a conference with the Court to discuss lifting the stay and permitting the case to proceed in court.

Before the Court could coordinate the scheduling of a conference the defendants submitted several letters to the Court opposing Vaughn's request. Prudential argued that Vaughn should be required to submit his claim to the NASD, as it was also named as one of the SRO forums named in the agreement. Alternatively, Prudential suggested, "the court must nevertheless enforce the arbitration clause while remedying the flawed procedure (presumably the unavailability of the NYSE). Here, if (contrary to fact) the contractually-stipulated forum is unavailable, then the remedy is to send plaintiff to a reputable arbitral alternative, such as the American Arbitration Association, not to allow him to break his promise to arbitrate". (citation omitted) (Exhibit D, December 13, 2005 letter of Gerard E. Harper, Esq.)

In a letter to the Court dated December 14, 2005, counsel for the Leeds defendants represented that they had spoken with John Nachmann, Esq. of the NASD and was advised that "any decision to deny use of the facility would only occur after the issue had been briefed by both sides and a hearing conducted", and further that "NASD can hear the entire controversy, including the non-member claim" (Hughes letter of December 14, 2005 w/Declaration of Shari Lewis - Exhibit E). It is obvious from Ms. Lewis' Declaration that counsel for the Leeds Defendants failed to advise Mr. Nachmann of all relevant facts regarding the issue of the application and interpretation of NASD Rule 10301 (d).

Subsequently, the District Court issued the Order dated December 27, 2005, wherein the Court "Ordered that the case remains stayed and on the Court's suspense docket pursuant to the Opinion and Order dated August 12, 2005."

Accordingly, Vaughn submits this matter to the NASD in order to decide, taking into account the purpose and intent of Rule 10301(d), whether Vaughn is entitled to pursue his class action claims in court, or whether, notwithstanding NASD Rule 10301(d)(3), Vaughn may be compelled to pursue his claims individually in arbitration.

As stated above, Vaughn maintains that the arbitration provision of the Settlement Agreement, by virtue of the fact that it provided for arbitration only under the rules of the NYSE or NASD, demonstrates the intent of the parties that the arbitration provision not apply to claims "encompassed by a putative or certified class action." It does not, as defendants argued before the Judge Cote, preclude Vaughn from bringing a class action in court.

The arbitration rules of the SROs, and the U.S. Securities and Exchange Commission's ("SEC") approval of those rules, make clear the intent that class action not be subject to SRO arbitration and that arbitration agreements shall not be enforced against a party seeking to bring a class action in court.

NASD Rule 10301(d), "Class Actions." Provides:

(1)    A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association.

(2)    Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court, or is ordered by a court to an arbitral forum not sponsored by a self-regulatory organization for a class wide arbitration. However, such claims shall be eligible for arbitration in accordance with paragraph (a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Rule 10302 or Rule 10308, as applicable. Either party may elect instead to petition the court with jurisdiction over the putative or certified class action or resolve such disputes. Any such petition to the court must be filed within ten business days of receipt of notice that the

Director of Arbitration is referring to the dispute to a panel of arbitrators.

NASD Rule 10301(d)(1) and (2) (emphasis added).

Moreover, NASD Rule 10301(d)(3) provides:

(3) No member or associated person shall seek to enforce any agreement to arbitrate against a customer, other member or person associated with a member who has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action unless and until: (A) the class certification is denied; (B) the class is decertified; (C) the customer, other member is excluded from the class by the court; or (D) the customer, other member or person associated with a member elects not to participate in the putative or certified class action, or if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

NASD Rule 10301(d)(3) (emphasis added).

Clearly, by filing its motion to compel arbitration, defendant Prudential violated the specific prohibition contained in Rule 10301(d)(3). Moreover, defendant Prudential continues to attempt enforcement of the arbitration agreement by misrepresenting to the Court that it is entitled to arbitrate this matter. In its letter of December 20, 2005 to Judge Cote, Prudential took the position, contrary to the NASD rules, that the only question for the arbitrators was "the discrete procedural question of the type of arbitration Plaintiff would be entitled to obtain (class-wide or individual)." (Exhibit F).

The NASD made clear its intent in its 1993 filing with the SEC for approval of Rule 10301(d)(3), wherein it stated:

> Section 12(d)(3) (prior iteration of section 10301(d)(3)) of the Code currently bars members or associated persons from seeking to enforce an agreement to arbitrate against a customer where the customer has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action. The section, however, omits specific reference to claims filed by associated persons against members and claims filed by members against other members. As a result, some respondents have argued that class actions encompassing such claimants can be submitted to arbitration under the Code. <u>The NASD determined that</u>

9

the original intent of the section was to exclude class action claims by associated persons, including employment-related claims, and other industry class actions from arbitration, as well as customer-related class actions. Accordingly, the NASD proposed to amend section 12(d)(3) of the Code to clarify that the prohibition in the provision is total and encompasses class actions in which a member or an associated person may be the subject of a class action.

The amendment to section 12(d)(3) of the Code adds references to "other member and person associated with a member" to clarify that the prohibition against seeking to enforce an agreement to arbitrate applied not only to class actions in which a claimants is a customer, but to class actions in which an associated person or a member is a party.[1] (Emphasis added.)

It is evident that the NASD wanted to preserve the right for parties, including members, associated persons and investors, to pursue class action claims in court. Moreover, in approving the adoption of NASD Rule 10301(d), the SEC stated:

---

[1] SEC Release No. 34-33939, File No. SR-NASD-93-65 (April 20, 1994) 59 F.F. (April 28, 1994) (Attached as Exhibit E.)

10

Over the years, the courts have developed procedures and expertise for managing class action litigation and duplicating the often complex procedural safeguards necessary for these lawsuits is unnecessary. In addition, access to the courts for class action litigation should be preserved for claims filed by members, allied members, member organizations, and associated persons against other members, allied members, member organization, and associated persons, as well as for claims involving investors. Hence, this rule change should provide a sound procedure for the management of class action disputes, should promote the efficient resolution of these types of class action disputes and should prevent wasteful litigation over the possible applicability of agreements to arbitrate between members, allied members, member organization, and associated persons, notwithstanding the exclusion of class actions from NASD arbitration.[2] (Emphasis added.)

It is clearly the intent and purpose of the NASD, in adopting Rule 10301(d), to preserve a party's right to proceed in court with class action claims and that such claims were not waived by virtue of a provision to arbitrate "any claim or controversy." It was not the intent of the NASD or the SEC that a party be precluded from bringing a class action claim in court by virtue of the parties having entered into an arbitration agreement. On the contrary, the rule was intended to prevent a party, such as defendants attempt here, from using the agreement to arbitrate as a vehicle to preclude class actions.

---

[2] Id.

-11-

It is equally clear that, in direct violation of NASD Rules, Respondents have sought to enforce the arbitration agreement contained in Vaughn's Settlement Agreement. In this regard, Vaughn requests NASD Dispute Resolution refer this matter to the Enforcement Division for the purpose of considering disciplinary action against Prudential for its violation of NASD Rule 10301(d)(3).

Accordingly, Vaughn respectfully requests that the arbitrators issue an order and decision declaring that Vaughn may pursue his class action claims against defendants in court and directing defendants to withdraw their objections and stipulate that the agreement to arbitrate does not preclude Claimants' right to proceed with a class action in court and, therefore, is not enforceable. Vaughn further seeks reimbursement of his filing fee, hearing deposit as well as costs and attorneys' fees incurred in bringing this action, especially given defendant Prudential's repeated violations of NASD rules in attempting to compel arbitration. Additionally, Vaughn requests that defendant Prudential's flagrant violation of NASD rules be referred for disciplinary action.

Dated: New York, New York
     May 25, 2006

Respectfully submitted,

LIDDLE & ROBINSON, L.L.P.

By: *Blaine H. Bortnick /RS*
     Blaine H. Bortnick
Attorneys for Claimants
800 Third Avenue
New York, New York 10022
(212) 687-8500

12

**Exhibit F**

6955VAUC                    order to show cause
1    UNITED STATES DISTRICT COURT

Page 1

SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JEFFREY S. VAUGHN,

                Plaintiff,

        v.                          04 Civ. 8391 (DLC)

LEEDS, MORELLI & BROWN, P.C.,
et al.,

                Defendants.

------------------------------x

                                September 5, 2006
                                4:00 p.m.
Before:

                    HON. DENISE L. COTE,

                                    District Judge

                    APPEARANCES

LIDDLE & ROBINSON, L.L.P.
        Attorneys for Plaintiffs
BY:  BLAINE H. BORTNICK

LITCHFIELD CAVO
        Attorneys for Leeds, Morelli & Brown
BY:  DANIEL HUGHES
     KEVIN SPAGNOLI

PAUL WEISS RIFKIND WHARTON & GARRISON, L.L.P.
        Attorneys  for Defendant Prudential Securities &
Prudential Financial
BY:  LIZA VELAZQUEZ
     SAM SHELDEN

                SOUTHERN DISTRICT REPORTERS, P.C.

                    (212) 805-0300

6955VAUC

order to show cause

Page 2

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, for the plaintiff, are you

3   ready to proceed?

4          MR. BORTNICK:  We are.

5          THE DEPUTY CLERK:  Please state your name for the

6   record.

7          MR. BORTNICK:  Blaine Bortnick of Liddle & Robinson.

8          THE DEPUTY CLERK:  Who do you have with you at counsel

9   table?

10         MR. BORTNICK:  I'm sorry.  Rebecca Saenger.  Your

11  Honor, Ms. Saenger is not admitted to this court.  She is an

12  associate at our firm.

13         THE DEPUTY CLERK:  For the defendant, please state

14  your name for the record and the party you represent.

15         MR. HUGHES:  Daniel Hughes of the law firm Litchfield

16  Cavo, representing the Leeds Morelli & Brown defendants and

17  with me is Kevin Spagnoli, an associate with my law firm.

18         THE COURT:  Thank you.

19         MS. VELAZQUEZ:  Liza Velazquez of Paul, Weiss,

20  Rifkind, Wharton & Garrison for the Prudential defendants.  And

21  with me is my colleague Sam Shelden.

22         THE COURT:  Great.  Welcome to everyone.

23         I was presented with an order to show cause and it

24  isn't my practice to sign them ex parte unless there is good

25  reason.  Plaintiff's counsel were unavailable last week and so

6955VAUC                          order to show cause

Page 3

1  we put the matter over until today to give everybody an

2  opportunity to be heard.

3          This is a matter that was referred to arbitration

4  sometime ago now, and I thought it might be helpful for me to

5  give the parties a sense of where we stand.  And after you hear

6  from me, if counsel want to be heard orally today on the

7  matter, fine.  If you want to set a briefing schedule and put

8  this matter over for oral argument at a later date, fine.

9          But, I thought it might be helpful, as I said, to

10 begin with an overview statement from me.

11         In connection with this order to show cause I have

12 been given a set of documents.  They include some of the

13 plaintiff's submissions to the New York Stock Exchange and the

14 NASD, including an October 28th 2005 letter to the New York

15 Stock Exchange, a February 2nd, 2006 statement of claim to the

16 NASD, and an August 15th, 2006 letter to the NASD.  I think the

17 presentation of the legal issue in those letters is inaccurate

18 and misleading.

19         The plaintiff clearly agreed to the arbitration of his

20 claims and I ruled that the arbitration agreement was valid and

21 enforceable and that legally was not in dispute.

22         I referred this matter to arbitration so that the

23 arbitrator can decide what the intention of the parties was in

24 entering into that arbitration agreement, including deciding

25 what kind of arbitration proceeding the parties had agreed to.

SOUTHERN DISTRICT REPORTERS, P.C.

Page 4

1          Now, the arbitrator, as I see it, could decide at

2     least three different things and there may be more but, for

3     instance, the arbitrator could decide that the parties had

4     intended to disallow class actions.  The arbitrator could

5     decide that the parties had agreed to arbitrate individual

6     claims but had reserved unto themselves the right to litigate

7     class claims.  The arbitrator could decide that the party had

8     agreed to arbitrate all claims, individual or class claims.

9          So, the parties disputed what the intention -- what

10    their intention was in entering into this arbitration agreement

11    and I want to refer to the Paul Weiss reply brief on the

12    underlying motions in which Paul Weiss argued, at page 3, that,

13    "It was for the arbitrator, not the Court, to interpret the

14    parties' intentions."

15         And of course Paul Weiss argued, and I expect it will

16    argue to the arbitrator, that, "When one reads the agreement

17    and when the arbitrator reads the agreement, the arbitrator

18    should conclude that the parties never intended to allow class

19    actions at all."

20         I didn't rule on that.  I ruled that it is for the

21    arbitrator to interpret the agreement and decide what the

22    parties' intentions were.

23         Let's deal with a hypothetical.  Let us say the

24    arbitrator decides that the arbitration clause and the parties'

25    intention in entering into the arbitration agreement disallows
                    SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

6955VAUC                                    order to show cause

Page 5

1  the plaintiff from bringing any class action lawsuit.  That, of

2  course, would allow the plaintiff to continue through the

3  arbitration process with an individual claim.  And, depending

4  on what arbitration decision came out of that process -- again,

5  I'm just talking about hypothetical -- somebody would move to

6  vacate or confirm the arbitration award.

7          In that context, in Federal Court here the parties

8  would have the ability, either before me or eventually on

9  appeal, and of course to the extent that the law permitted, to

10 raise issues concerning whether I had erred in sending the

11 matter to arbitration, whether the arbitrator had erred in

12 ruling that no class action litigation or arbitration was

13 permitted, and challenging the merits of the results of the

14 arbitration.  Again, to the extent permitted by governing law.

15         Now, should Mr. Vaughn decide that he doesn't want to

16 submit an individual claim to the arbitration proceeding I

17 expect -- but I'm not going to rule on this -- that he can't

18 get a second bite at the apple -- and I see plaintiff's counsel

19 nodding in agreement -- that either forfeiture or waiver rules

20 or res judicata would apply.  And that's it.

21         He had an opportunity to arbitrate the claim -- again,

22 we are playing with our hypothetical -- he didn't arbitrate it,

23 end of story.

24         That is, of course, if he were successful on appeal in

25 overturning my decision to send the dispute to arbitration or

6955VAUC                                    order to show cause

Page 6

1    the arbitrator's ruling, he would be foreclosed.

2            But this, it seems to me, his decision to make.  I

3    can't force him, and shouldn't, to make a particular claim to

4    the arbitrator but there may be consequences from that.

5            Now, I think, if I understand what's happening here,

6    Mr. Vaughn is not submitting his individual claim to the

7    arbitrator.  I may not understand this correctly but if that's

8    what's happening, sobeit.

9            But, I think I would be derelict not to make sure that

10   I mention the potential ethical issue here for plaintiff's

11   counsel.  There may be a serious conflict of interest dividing

12   the plaintiff's interest from those of his counsel on this

13   particular point because if that's the strategy being pursued,

14   Mr. Vaughn may risk losing his right to have his claim ever

15   addressed and lose the right for all recovery.

16           So, I have this order to show cause.  I'm happy to

17   hear the parties this afternoon.  I'm happy to set a briefing

18   schedule.  Or, I'm happy to say that you have my views, do

19   before the arbitrator what you will, and depending on what

20   happens, all in good time I may have some legal issues to

21   confront again.

22           Okay.  Mr. Bortnick?

23           MR. BORTNICK:  Yes, your Honor.  I have to say I

24   largely agree with everything that your Honor said here.

25           The way that the claim was presented initially to the
                    SOUTHERN DISTRICT REPORTERS, P.C.

                    (212) 805-0300

6955VAUC                                    order to show cause

Page 7

1   New York Stock Exchange before it rejected jurisdiction and

2   then subsequently to the NASD, was brought, only essentially it

3   was as a class in the sense that if there was -- if the

4   arbitration panel were to decide at some point in the future

5   that the arbitration clause means that class actions have been

6   waived, then there wouldn't be a one-on-one individual

7   arbitration.  Mr. Vaughn was not intending to bring a

8   one-on-one individual arbitration.

9          The reason here is not a particular secret.  I think

10  it was even presented to your Honor in papers on the motions

11  below or at a conference below.  Mr. Vaughn, when he settled

12  his original case with Prudential with Leeds, Morelli

13  representing him, presented a piece of paper that said I think

14  these are my damages in a certain amount.  And Prudential

15  agreed to pay that certain amount to Mr. Vaughn less, of

16  course, the contingency fee portion that went to Leeds, Morelli

17  and Brown.

18         The theory behind the class action of which Mr. Vaughn

19  was bringing was fully understanding but something different.

20         When you have a large group of people that are

21  settling and the allegation is that each of the settling

22  plaintiffs, the class members had a contingency fee taken from

23  their settlement and the allegation is unbeknownst to them,

24  Prudential was paying Leeds, Morelli and Brown quite a

25  substantial amount of legal fees unbeknownst to them, that that

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

6955VAUC                                order to show cause

Page 8

1   amounted essentially to a bribe and, under New York Law, the

2   class can recover the amount of that payment from, by

3   Prudential to Leeds, Morelli and Brown, because that is an

4   amount under New York Law that a party would have been willing

5   to pay to the plaintiffs in this case.

6           That was the theory of the class action.

7           Mr. Vaughn has always understood all along that in his

8   particular case on the one-on-one arbitration he recovered,

9   minus attorney's fees, what he was asking for.  And that's not

10  the theory --

11          So, the theory of the class action was that there was

12  a secret payment made by Prudential to Leeds, Morelli and Brown

13  unbeknownst to Mr. Vaughn and the other potential class

14  plaintiffs and that is the amount of damages that were being

15  sought.

16          Now, it could be that the -- and if the arbitrators,

17  the arbitration panel, I think it would be a panel of three,

18  decide on the other hand that the arbitration clause which

19  says, Arbitrated pursuant to the rules of the New York Stock

20  Exchange or the NASD, which in this case have, for all intents

21  and purposes, I think it is the exact identical rule, no class

22  actions allowed, we don't hear class actions, you didn't waive

23  your class action claims, then we're automatically back in

24  court with the class action.

25          Now, I am certainly --
                  SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

6955VAUC                                    order to show cause

Page 9

1          THE COURT:  But if I decide that you did waive your

2     class action claims --

3          MR. BORTNICK:  Mr. Vaughn did not have any intention

4     to bring a one-on-one arbitration because he has a damages

5     issue here.  And he understands that.

6               However, that being said, I think it is probably,

7     since your Honor has raised the concern -- to go and talk to

8     him one more time and say Mr. Vaughn -- because it is very easy

9     to amend the arbitration claim and just go back and say, well,

10    in the alternative, if the Court -- if the arbitration panel

11    decides class actions have been waived, therefore we bring an

12    individual one-on-one arbitration based on a fraud,

13    essentially, based on that secret agreement.

14               And so, I think it is probably appropriate to give

15    him, based on your Honor's concerns, that we should probably

16    ask him one more time if that's how he would want to proceed in

17    the alternative, recognizing that is the issue that he has had

18    and the decision he made before.

19               It is a very simple change to make in the arbitration

20    statement of claim.  And we will go back and do that, but I do

21    think it is fair to point out, your Honor, that since last

22    December the defendants in this case, Prudential and Leeds,

23    Morelli and Brown, have known that the claim, as it is now

24    positioned in front of the NASD, is the claim we have been

25    bringing all along.  And it is only last week where they're

                    SOUTHERN DISTRICT REPORTERS, P.C.

                         (212) 805-0300

6955VAUC                                order to show cause

Page 10

1   suddenly raising an objection to the way we've presented the

2   claim to now the NASD.  But, they've known about this since

3   December when they obtained a copy of the New York Stock

4   Exchange statement of claim.  They obtained a copy of the NASD

5   statement of claim, not what they were served -- they were

6   served on July 27 and I understand they got it on or about

7   August 1, but we certainly gave them a courtesy copy of it not

8   because we were required to, but because they felt we were --

9   they wanted us to and we agreed.

10          My records don't show whether we did it back in

11  February but we certainly did it in May.

12          So, we've known about this for a long time, so this

13  came as a surprise to us now that they're complaining about the

14  way we presented it.

15          And sort of today is the first day I could even

16  actually address it.  I am more than happy to go back and talk

17  to Mr. Vaughn and iterate to him one more time:  The Judge has

18  also raised this concern now and I think it is probably

19  appropriate that we do it.

20          And you understand, because I do agree with your

21  Honor, that if it is presented in the way it is presented and

22  there is no one-on-one arbitration claim, if Mr. Vaughn doesn't

23  amend the statement of claim -- and he could do it at a later

24  time, he doesn't have to do it now, he could do it within the

25  context of what has been presented to the NASD -- but, if he

6955VAUC                              order to show cause

Page 11

1   chooses not to proceed one on one, then I agree with your

2   Honor, he would not be able to come back and make some kind of

3   claim at a future date.  He would lose it forever.  I think

4   that is absolutely correct.

5       THE COURT:  I don't think the formulation in the

6   papers that you have submitted to the New York Stock Exchange

7   or the NASD has been, in each instance, consistent with the

8   description of what I put on the record today.  But, that is

9   for you and the defendants to litigate before the arbitrator.

10      MR. BORTNICK:  The arbitrators have a copy of the

11  order, I believe.  They should.  No arbitration panel has been

12  appointed yet.  The last letter you saw from us to the NASD,

13  there is a form letter that goes out from the NASD from the

14  processing center and it says here is a list of arbitrator

15  skills, customer complaints, this or that, and you can rank 1

16  through 4 and we will try to accommodate you.

17      And then we wrote back saying we don't think these fit

18  what we want.  And we wrote George Friedman as the director of

19  arbitration because we didn't want a data inputter to look at

20  the letter and just toss it but we wanted to have some kind of

21  personal attention.  We copied them on it because that's how we

22  see this claim.

23      The arbitration panel will have that order and they

24  can make a decision as to whether it should be allowed to be a

25  class action.  And, in that case, they'll say take it back to

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

6955VAUC                              order to show cause

Page 12

1    Court.

2          But, I guess then because of what your Honor says, you

3    probably -- I guess I should probably request to let me go

4    ahead and have one more conversation with our client and tell

5    him what your Honor said.  I think it is the right thing to do.

6          THE COURT:  Do the defendants wish to be heard?

7          MR. HUGHES:  Just briefly, your Honor.  Daniel Hughes

8    on behalf of the Leeds defendants.

9          I received the papers from plaintiff's counsel and

10   their filings on August 1st of '06, the last date that

11   Mr. Bortnick stated.

12         The reason we are here is because the submission to

13   the NASD which is presently pending states:  Accordingly,

14   Vaughn respectfully requests that the arbitrators issue an

15   order and decision declaring that the Vaughn may pursue his

16   class action claims against defendants in court and directing

17   defendants to withdraw their objections.

18         So, this, to us, did not seem to be an objective

19   presentation of your Honor's decision for the arbitrators to

20   decide what is the intent of the parties to arbitrate.

21         We are faced now with an August 15th deadline and I

22   was wondering if we could figure out a way to extend that

23   deadline for Mr. Bortnick to file additional papers and for us

24   to have an additional extension to respond to those papers.

25         THE COURT:  I am not going to deal with arbitration

6955VAUC

order to show cause

Page 13

1   scheduling issues.

2           Is there anything else?

3           MS. VELAZQUEZ:  Your Honor, Liza Velazquez from Paul

4   Weiss for the Prudential defendants.

5           Your Honor, we have been here before you on these

6   issues three times now.  I believe your Honor's August 12th,

7   2005 order was crystal clear:  Vaughn must arbitrate his claims

8   against Prudential and submit to the arbitrators the question

9   of the format of how that arbitration should proceed.

10          He went to the NASD late last year.  We weren't

11  provided with a copy of those papers at the time they were

12  presented to the NASD but we subsequently learned that --

13  excuse me.  He went to the NYSE.  We subsequently learned that

14  he asked the NYSE to overrule this Court's order that

15  notwithstanding the August 12th, 2005 order he can go ahead and

16  come back to court and basically do what the F.A.A. doesn't

17  permit him to do, which is to get an interlocutory appeal but

18  from an arbitral forum.

19          Then, your Honor, we were served with his NASD papers

20  on or about August 1st.

21          Respectfully, I would say to Mr. Bortnick that there

22  was no proceeding until we were served with those papers, so we

23  could not approach the Court about what had transpired until we

24  were served with the papers on August 1st.

25          Again, in our view, he is asking the NASD to overrule

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

6955VAUC                                    order to show cause

Page 14

1    this Court and to send him back to court with his claims even

2    though the Court has already decided those claims are

3    arbitrable.

4          I submit that the three options that your Honor set

5    forth earlier today are, they're far afield from what

6    Mr. Bortnick and plaintiff are requesting from the NASD.  He is

7    not submitting his claims against Prudential or any of these

8    parties to arbitration at all.  Instead, he is rehashing what

9    has already been litigated before this Court and we

10   respectfully submit to your Honor that it would be unfair and

11   prejudicial to Prudential to have to relitigate those issues

12   again before the NASD.

13         THE COURT:  Well, I don't think that the plaintiff's

14   papers, Mr. Vaughn's papers have correctly framed the issue for

15   the arbitrators, but I don't think defense counsel are either.

16         The issue that was in dispute and that I submitted to

17   arbitration was for an interpretation of the arbitration

18   agreement, and that was for the arbitrator to decide the

19   parties' intentions.  I did not rule that everything had to be

20   subject to arbitration.  I contemplated, therefore, that the

21   arbitrator, in deciding the parties' intentions, might decide

22   that the agreement to arbitrate does not foreclose the

23   plaintiff from coming to court and litigating a class action.

24         But the plaintiff is not, in its submissions to the

25   arbitrators to date, has not clearly stated the issue for the

6955VAUC                              order to show cause

Page 15

1   arbitrators to decide about the parties' intent and the scope

2   of that intent.

3        But, I think it would be wrong for the defendants to

4   characterize it the way you are today in court to suggest that

5   the arbitrators' hands are bound in some way such that they

6   couldn't rule in interpreting the parties' intent that the

7   plaintiff has the right to come to court and proceed on a class

8   action.  And I refer you, again, to your reply brief on the

9   underlying motion practice.

10       So, I don't think there is a need for further argument

11  or briefing of this issue.

12       It seems to me that what I'm going to do -- we have a

13  court reporter here because this is complicated -- is that I'm

14  going to endorse the order to show cause to reflect that after

15  having heard from all parties, I decline to issue the order to

16  show cause without prejudice to any parties' rights to argue at

17  a later point in time that their rights have been infringed in

18  some way.  And then we will just see how the arbitration

19  process plays itself out.

20       If a party misrepresents or misleads the arbitrator,

21  or doesn't ask for the appropriate relief, I don't know how

22  that will play out in court before me later but everybody's

23  rights are preserved.  You can challenge whatever happens

24  through the arbitration process when it is ripe for such a

25  challenge.

                 SOUTHERN DISTRICT REPORTERS, P.C.

                      (212) 805-0300

1        Not hearing any objection, I will so endorse the order

2   to show cause.  If you want to wait afterwards, we can get you

3   a copy of that endorsement.

4        Since you are all here, I thought I would just address

5   the 54(B) motion that's pending before me too.

6        This motion is governed by the rule and Second Circuit

7   authority interpreting the rule.  And I have looked most

8   recently at O'Bert, 331 F.3d at 40 to 41, a Second Circuit

9   2003, decision.  It indicates, among other things, that where

10  the decision to direct the entry of a partial judgment in

11  advance of the final adjudication of all the claims must be

12  considered in light of the goal of judicial economy as served

13  by the historic federal policy against piecemeal appeals.

14       And, with this policy in mind, the power to enter a

15  partial judgment should be exercised sparingly, bearing in mind

16  that not all dismissals of individual claims should be

17  immediately appealed even if they are, in some sense, separable

18  from the remaining unresolved claims.

19       The power should generally be reserved for the

20  infrequent harsh case and certification should be granted only

21  if there exists some danger of hardship or injustice through

22  delay which would be alleviated by immediate appeal.

23       I'm going to deny the 54(B) motion.

24       First of all, there is no showing of error to suggest

25  to me that it, because of that, needs immediate review.  The
                    SOUTHERN DISTRICT REPORTERS, P.C.

6955VAUC                          order to show cause

Page 17

1    plaintiff is arbitrating the claims against the five dismissed

2    individual defendants.  And the issues with respect to those

3    five dismissed individual defendants will be reviewed in the

4    ordinary course through the confirmation or vacating

5    proceedings that will follow the arbitration decision.

6          I haven't seen any showing of hardship or injustice

7    and I do not find, principally for the reasons pointed out by

8    defense counsel and their opposition, that judicial economy

9    would be served by a 54(B) finding at this point.

10         Thanks so much and good luck to all of you.

11                             oOo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

              SOUTHERN DISTRICT REPORTERS, P.C.

                      (212) 805-0300