# Exhibit Q

NATIONAL ASSOCIATION OF SECURITIES
DEALERS, INC.

------------------------------------------------------------x
In the Matter of Arbitration between JEFFREY S.       :
VAUGHN, individually and on behalf of those Class
Members similarly situated,                           :

                Claimants,         :

        - against -                 :                    NASD-DR Case No. 06-00534

LEEDS, MORELLI & BROWN, P.C., LEEDS,                  :
MORELLI & BROWN, L.L.P., LEEDS & MORELLI,
LEEDS, MORELLI & BROWN, PRUDENTIAL                    :
SECURITIES, INC., PRUDENTIAL FINANCIAL,
INC., LENARD LEEDS, STEVEN A. MORELLI,                :
JEFFREY K. BROWN, JAMES VAGNINI, FREDERIC
DAVID OSTROVE, ROBERT JOHN VALLI, JR.,                :
DISCRIMINATION ON WALL STREET, INC.
DISCRIMINATION ON WALL STREET                         :
MANHATTAN, INC., JOHN DOES, 1-10 AND JANE
DOES, 1-10, a fictitious designation for presently    :
unknown licensed attorneys, professionals and/or
unknown persons or entities,                          :

              Respondents.       :

------------------------------------------------------------x



PWRW & G LLP

FEB 2 0 2007
☐ DOCKETED
☑ IMAGED

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO CLAIMANT'S MOTION TO DISMISS

### Preliminary Statement

Claimant Jeffrey S. Vaughn ("Vaughn") entered into a settlement agreement approximately eight years ago (the "Settlement Agreement") in which he agreed to arbitrate "any" claim that he has with Prudential Securities Incorporated ("PSI") related to that Settlement Agreement. The arbitration clause of the Settlement Agreement is valid and enforceable, and it requires Vaughn to arbitrate his claims against PSI. This is what the District Court decided in referring this matter to arbitration, and it is the law that the parties and the Panel must follow.

- 1 -

Vaughn has only the weakest of responses to these undeniable facts:

*First*, Vaughn argues that, if the Panel decides he cannot arbitrate his class claims, then he must be allowed to go back to court to pursue them. Not so. Judge Cote deferred to this Panel to rule on whether the parties' agreement or NASD rules permit class claims but also made clear that there is no question that Vaughn's own claims are subject to arbitration. The statement in the parties' arbitration agreement that Vaughn must arbitrate "any" claim is unequivocal and means that Vaughn cannot pursue his claims (as part of a class or otherwise) in court and that he must arbitrate his claims individually. The overwhelming case law and public policy weigh in favor of enforcing the parties' arbitration agreement, not permitting Vaughn to end run around that agreement with a class claim.

*Second*, Vaughn argues that he should nevertheless be permitted to avoid his agreement to arbitrate because his waiver of the ability to assert a class claim was not "knowing and voluntary." Vaughn misstates both the facts and the law. Vaughn expressly agreed to arbitrate "any" claims "arising out of or related to" the Settlement Agreement. Moreover, even if NASD rules do not permit class arbitration, as Prudential Respondents demonstrated in their moving brief, the arbitration agreement should still be enforced because no substantive rights are implicated when a party waives the ability to arbitrate a class claim. Thus, as numerous courts and the FAA make clear, the "knowing and voluntary" standard has no application here whatsoever; rather, general contract principles govern the enforceability of an arbitration agreement. In the present circumstances, the District Court has already ruled that the parties' arbitration agreement is "valid and enforceable." Accordingly, the "evidence" that Vaughn proposes to submit in an effort to strike down that arbitration agreement is irrelevant and, because that agreement is clear, unambiguous and integrated, this evidence is also inadmissible.

2

Vaughn fails to present any credible explanation to this Panel why it should allow him to breach a "valid and enforceable" arbitration agreement. The circular nature of Vaughn's arguments – that this Panel should send him back to the District Court to litigate the very same claims that the District Court has already compelled to arbitration – only confirms their lack of merit. Accordingly, the Panel should reject Vaughn's arguments and render an award in favor of Prudential Respondents.

## Discussion

### I.

### THE PANEL SHOULD NOT PERMIT VAUGHN TO BREACH THE ARBITRATION AGREEMENT

The Settlement Agreement and the District Court decision are clear – Vaughn must submit his claims to arbitration. (*See* Velazquez Aff., Exs. A & C.) None of Vaughn's arguments can change the terms of the Settlement Agreement or the substance of the District Court's ruling. Accordingly the Panel cannot, as a matter of law, send Vaughn back to Court to litigate his claims – as part of a class action or otherwise.[1]

While making clear that the question of whether the parties agreed to arbitrate is "legally . . . not in dispute" (*see* Velazquez Aff., Ex. C, at 8; Ex. F, at 3:19-21), the District Court, in accordance with the Supreme Court's holding in *Green Tree Financial Corp.* v. *Bazzle*, 539 U.S. 444 (2003), referred the matter to this Panel to determine "what kind of arbitration

---

[1]    Vaughn's invocation of NASD Rule 10305 to suggest that Prudential Respondents cannot move for an award in their favor is misplaced. Rule 10305(a) specifically gives this Panel the authority to, even upon its "own initiative," "dismiss the proceeding and refer the parties . . . to any dispute resolution forum agreed to by the parties." That is precisely the relief that Prudential Respondents are seeking in their motion: for this Panel to find that Vaughn must pursue his claims before the "dispute resolution forum agreed to by the parties" – here, the NASD.

proceeding" the parties had agreed to – for example, whether the parties intended to allow arbitration of class claims. (*See* Velazquez Aff., Ex. F, at 3:22-25.) Thus, the Court deferred to this Panel to decide whether the parties' agreement or NASD rules would permit the arbitration of class claims. Vaughn now tries to seize on this part of the District Court's decision to argue that the question presented in this arbitration is – once again – the very arbitrability of his claims. This argument is misleading, at best. The District Court has already decided that Vaughn must arbitrate his claims. The arbitration agreement clearly states that Vaughn must arbitrate "any" of his claims. Therefore, it is clear that the parties did not intend to arbitrate class claims. Moreover, because the parties' agreement is silent on the issue of class wide arbitration, and NASD Rule 10301(d)(1) prohibits class arbitration, it is clear that Vaughn must arbitrate those claims individually. (*See* Moving Br., at 14-16.)

Although the Court did not reach the issue of whether Vaughn could be an appropriate class representative in a court initiated action, law and logic dictate that he could not properly represent any such class. Not only are Vaughn's own claims subject to arbitration but, as Vaughn's counsel admitted to the District Court at the September 5, 2006 hearing, Vaughn does not even have a cognizable claim for individual damages based on his underlying employment claims. (*See* Velazquez Aff., Ex. F, at 7:9-17.) Thus, Vaughn lacks the requisite standing to serve as a representative plaintiff. In any event, all of the members of the would-be putative class are other former PSI employees who are subject to the same arbitration clause that the District Court has already found to be "valid and enforceable."

The Federal Arbitration Act ("FAA") and case law require enforcement of the parties' arbitration agreement, not facilitating Vaughn to breach that agreement. As Prudential Respondents have demonstrated (*see* Moving Br., at 14-16), numerous courts have held that,

4

where an arbitration agreement does not explicitly provide for a collective or representative procedure, a plaintiff may not breach that agreement by avoiding arbitration and proceeding with a class action in court. *See, e.g., Howard* v. *Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 665 n.7 (S.D.N.Y. 1997) (holding that a party "who has agreed to arbitrate all claims" "may not avoid arbitration by pursuing class claims."), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *Bischoff* v. *DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1107-09 & 1114-15 (C.D. Cal. 2002) (enforcing defendant's bargained-for right to arbitrate against the named plaintiff and staying the claims of the putative class pending the outcome of that arbitration); *Gammaro* v. *Thorp Consumer Discount Co.*, 828 F. Supp. 673, 674 (D. Minn. 1993) (directing borrower who had filed a putative class action against lenders to proceed with individualized arbitration pursuant to his loan agreement with defendants and dismissing putative class claims); *Hayes* v. *County Bank*, 26 A.D.3d 465, 467 (N.Y. App. Div. 2d Dep't, 2006) (under New York law, affirming trial court's decision to grant motion to compel arbitration of putative class representative's individual claims against lender and to stay putative class claims); *Vernon* v. *Drexel Burnham & Co.*, 52 Cal.App.3d 706, 716 (Cal. App. 2d Dist. 1975) (vacating lower court order denying petition to order arbitration, holding that "the substantive law of contractual agreement takes precedence over the class action" and that "[a] class action cannot be used to subvert an otherwise enforceable agreement to arbitrate contained in a valid contract").

The public policy favoring arbitration also dictates that the parties' agreement to arbitrate "any claim or controversy" "arising out of or related to" their settlement agreement be enforced. (*See* Velazquez Aff., Ex. A, at ¶ 14.) The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd* v. *Elmira Savings Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). Accordingly, this Panel must "construe arbitration

clauses as broadly as possible." *Id.* And, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Moreover, the fact that Vaughn's claims arise in the employment, rather than the consumer, context also weighs in favor of enforcing the parties' agreement to arbitrate, notwithstanding Vaughn's attempt to use a class claim to avoid arbitration. NASD Rule 10301(d) was promulgated by the Securities Industry Conference on Arbitration specifically to ensure that "<u>investors</u> [] have access to the courts to resolve class actions efficiently." *See* SEC Release No. 34-31371, 57 Fed. Reg. 52659, 52661 (October 28, 1992) (emphasis added). As the Order approving Rule 10301 explains, "[t]he Commission believes that <u>investor</u> access to the courts should be preserved for class actions and that the rule change approved herein provides a sound procedure for the management of class actions arising out of <u>securities industry</u> disputes between NASD members and their <u>customers</u>." *See id.* (emphases added). Clearly, Vaughn's purported class claims are not even the type of claims for which NASD Rule 10301(d) was intended.[2]

---

[2]   *MLDX Investments, LLC* v. *Parse*, 2006 WL 1579597 (D. Utah June 1, 2006), on which Vaughn relies is inapposite. The case involved a securities class action (not an employment dispute) and the Account Agreement at issue contained an express statement that the parties agreed <u>not</u> to bring class arbitration or to compel a party who was a class member to arbitrate unless certain conditions were met. *Id.* at *2. By contrast, the clear and unambiguous language of PSI's and Vaughn's "valid and enforceable" arbitration agreement contains no such exception to arbitrability.

## II.

## THE EXTRINSIC "EVIDENCE" VAUGHN SEEKS TO PRESENT IS IRRELEVANT AND CANNOT, AS A MATTER OF LAW, BE USED TO STRIKE DOWN THE ARBITRATION CLAUSE IN THE PARTIES' AGREEMENT

To avoid his agreement to arbitrate, Vaughn argues that his waiver of the ability to bring a class claim was not "knowing and voluntary." Vaughn is wrong on the facts and the law.

To begin with, Vaughn's sudden assertion that he did not knowingly and willingly agree to arbitrate, without exception, his claims against PSI contradicts the express acknowledgements he made in the Settlement Agreement. In fact, not only did Vaughn agree to arbitrate "any claim or controversy arising out of or related to" the Settlement Agreement but, in paragraph 16 of that Agreement, Vaughn expressly acknowledged that: (1) "he has carefully read this Agreement and understands all of its terms"; (2) "he has voluntarily entered into this Agreement"; (3) the Agreement "gives him the opportunity and encourages him to have this Agreement reviewed by his attorney"; and (4) he had been "afforded at least twenty-one days to consider" the Agreement and "seven days after signing this Agreement to revoke it in writing." (*See* Velazquez Aff., Ex. A, at ¶ 16.)[3]

More importantly, the "knowing and voluntary" standard Vaughn invokes has no consequence here. As Prudential Respondents demonstrated in their moving brief (*see* Moving Br., at 17-18), the law is well-settled that "a party agreeing to arbitration does not waive any substantive statutory rights; rather, the party simply agrees to submit those rights to an arbitral

---

[3]    Notably, Vaughn never proffered any such "evidence" to the District Court in opposition to Prudential Respondents' motion to compel arbitration, (*see* Velazquez Aff., Ex. B), and even now does not suggest what such "evidence" might be other than his own self-serving testimony.

7

forum." *Caley* v. *Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371 (11th Cir. 2005), *cert.* *denied*, 126 S. Ct. 2020 (2006).    Courts (including the Supreme Court in *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991)) have specifically rejected the argument that the inability to arbitrate collective claims impairs substantive rights. *See, e.g., Champ* v. *Siegel Trading Co., Inc.*, 55 F.3d 269, 276 (7th Cir. 1995) (one of the "'procedural niceties' that arbitrating parties relinquish is the possibility of pursuing a class action under Rule 23" (internal citation and quotation omitted)); *Veliz* v. *Cintas Corp.*, 2005 WL 1048699, at *2 (N.D. Cal. May 4, 2005) ("Precedent establishes that even an inability to proceed on a class or collective basis in arbitration has no impact on a plaintiff's ability to vindicate his or her substantive statutory rights."); *see also* Moving Br., at 17-18.

This is not a controversial issue.    The overwhelming majority of courts have found that the "knowing and voluntary" standard does <u>not</u> apply in evaluating the enforceability of an arbitration agreement, notwithstanding the "waiver" of procedural rights that arbitration necessarily entails.    *See, e.g., Caley*, 428 F.3d at 1371-72 (concluding that "no heightened 'knowing and voluntary' standard applies, even where the covered claims include federal statutory claims generally involving a jury trial right"); *Am. Heritage Life Ins. Co.* v. *Orr*, 294 F.3d 702, 711 (5th Cir. 2002) ("there is no requirement that an arbitration provision must clearly and unmistakably express the waiver of an individual's rights"); *see also Seus* v. *John Nuveen & Co.*, 146 F.3d 175, 183-84 (3d Cir. 1998) (holding that applying a heightened knowing-and-voluntary standard to arbitration agreements would be inconsistent with the FAA and *Gilmer* and rejecting plaintiff's argument that "an inquiry into such matters as the specificity of the language of the agreement, the plaintiff's education and experience, plaintiff's opportunity for deliberation and negotiation, and whether plaintiff was encouraged to consult counsel" was required),

*abrogated on other grounds, Blair v. Scott Specialty Gases,* 283 F.3d 595 (3d Cir. 2002); *Hart v. Canadian Imperial Bank of Commerce,* 43 F. Supp. 2d 395, 400 (S.D.N.Y. 1999) ("[W]e now join with other circuit courts and district courts within the Second Circuit in rejecting this heightened [knowing and voluntary] standard."); *Rice v. Brown Bros. Harriman & Co.,* 1997 WL 129396, at *4 (S.D.N.Y. Mar. 21, 1997) (refusing to apply heightened "knowing and voluntary" standard to arbitration agreement and holding that "plaintiff's subjective knowledge of the scope of the arbitration clause is irrelevant[;] he is presumed to have agreed to all the terms of the contract"). Rather, as the FAA provides, general contract principles govern the enforceability of arbitration agreements. 9 U.S.C. § 2; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 627 (1985). Here, the District Court has already ruled that the parties' arbitration agreement is "valid and enforceable."

Finally, as Prudential Respondents have shown (*see* Moving Br., at 24-25), because the Settlement Agreement is an integrated contract, the law precludes the consideration of extrinsic, parol evidence to contradict that agreement's terms and certainly does not allow the use of such evidence to strike down one provision – such as the arbitration clause – in that agreement.

In sum, the "evidence" Vaughn seeks to present is irrelevant, inadmissible and provides no grounds for the Panel to permit Vaughn to breach the parties' arbitration agreement.

## Conclusion

Accordingly, for all of the reasons set forth above and in Prudential Respondents'

moving brief, Vaughn's motion and claims for relief should be denied and an award should be

entered in favor of the Prudential Respondents.

Dated: February 20, 2007

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____

Gerard E. Harper
Theodore V. Wells, Jr.
Liza M. Velazquez

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

-and-

LOWENSTEIN SANDLER, P.C.
1330 Avenue of the Americas
New York, New York 10019

Of Counsel:
Gregory B. Reilly
Julie L. Werner

Attorneys for Respondents Prudential Securities, Inc. and
Prudential Financial, Inc

**New Cases Cited**

### Case Index for Prudential Respondents' Memorandum of Points and Authories in Opposition to Claimant's Motion to Dismiss

Case                                                                                              Tab

*American Heritage Life Ins. Co.* v. *Orr*, 294 F.3d 702 (5th Cir. 2002)...................……....1

*Blair* v. *Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002)……………………………....2

*Hart* v. *Canadian Imperial Bank of Commerce*, 43 F. Supp. 2d 395 (S.D.N.Y. 1999).......3

*Vernon* v. *Drexel Burnham & Co.*, 52 Cal. App. 3d 706 (Cal. App. 2d Dist. 1975)….…..4

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)………..5

*MLDX Investments, LLC* v. *Parse*, 2006 WL 1579597 (D. Utah June 1, 2006)…………..6

*Rice* v. *Brown Bros. Harriman & Co.*, 1997 WL 129396 (S.D.N.Y. Mar. 21, 1997)….…7

*Seus* v. *John Nuveen & Co.*, 146 F.3d 175 (3d Cir. 1998)………………………………..8

1

294 F.3d 702
(Cite as: 294 F.3d 702)

Page  5

United States Court of Appeals,
Fifth Circuit.

AMERICAN HERITAGE LIFE INSURANCE
COMPANY; First Colonial Insurance Company
of
Florida; Fidelity National Insurance
Corporation, doing business as Republic
Finance, Inc., Plaintiffs-Appellees,
v.
John D. ORR, Betty E. Sanford, Frankie L.
Moore, Jimmie Martin and Nathaniel
Henley, Defendants-Appellants.

Nos. 01-60678, 01-60679, 01-60680, 01-60681 and
01-60682.

June 14, 2002.

Borrowers who obtained consumer loans which
included the purchase of credit life and credit
disability insurance brought action in state court
against lender and insurers, alleging, inter alia,
fraudulent misrepresentation and conspiracy to sell
unnecessary insurance at an exorbitant premium.
Lender and insurers brought separate action in
federal court seeking to compel arbitration under the
Federal Arbitration Act (FAA) and stay the state
court proceedings. The United States District Court
for the Northern District of Mississippi, Glen H.
Davidson, Chief Judge, entered order compelling
arbitration and staying state court proceedings, and
ordered the case closed. Appeal was taken. The
Court of Appeals, Little, Chief District Judge,
sitting by designation, held that: (1) District Court's
order closing the case was a final, immediately
appealable decision under the FAA; (2) McCarran-
Ferguson Act did not reverse-preempt the
application of the FAA to the arbitration agreements
at issue; (3) borrowers were not entitled to jury trial
under FAA or the Seventh Amendment; and (4)
alleged high cost of arbitration did not render
arbitration agreements unenforceable.

Affirmed.

Dennis, Circuit Judge, filed separate concurring
opinion.

West Headnotes

[1] Alternative Dispute Resolution    213(3)

25Tk213(3)
(Formerly 33k23.20 Arbitration)
Federal district court order, which compelled
arbitration of borrowers' fraudulent
misrepresentation claims against lender, ordered stay
of state court proceedings raising such claims, and
"closed" the case was an immediately appealable,
"final decision" under the Federal Arbitration Act
(FAA); closing the case was the functional
equivalent of dismissing it, as the court's order
ended the entire litigation on the merits in that
court, leaving nothing more for the court to do but
execute the judgment. 9 U.S.C.A. §§ 4, 16(a)(3).

[2] Alternative Dispute Resolution    213(5)
25Tk213(5)
(Formerly 33k23.25 Arbitration)
Court of Appeals reviews a district court's grant of a
motion to compel arbitration de novo, applying the
same standard as the district court.

[3] Insurance    1107
217k1107
McCarran-Ferguson Act did not reverse-preempt the
application of the Federal Arbitration Act (FAA) to
arbitration agreements executed in connection with
consumer loans that included the purchase of credit
life and credit disability insurance; no Mississippi
statute addressed arbitration of credit insurance-
related claims or disputes. McCarran-Ferguson Act,
§ 2(b), 15 U.S.C.A. § 1012(b).

[4] Insurance    1107
217k1107

[4] States    18.41
360k18.41
McCarran-Ferguson Act bars application of the
Federal Arbitration Act (FAA) to insurance
contracts only in the context of a state statute
evincing the same, not mere policy statements of
state officials or administrative rule interpretations
of governmental entities. 9 U.S.C.A. § 1 et seq.;
McCarran-Ferguson Act, § 2(b), 15 U.S.C.A. §
1012(b).

[5] Insurance    1107
217k1107

[5] States    18.41
360k18.41
The party seeking to avail itself of the McCarran-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702)

Ferguson Act in order to avoid application of the Federal Arbitration Act (FAA) must demonstrate that application of the FAA would invalidate, impair, or supersede a particular state law that regulates the business of insurance. 9 U.S.C.A. § 1 et seq.; McCarran-Ferguson Act, § 2(b), 15 U.S.C.A. § 1012(b).

**[6] Insurance    1100**
217k1100

**[6] States    18.41**
360k18.41
The test for preemption under the McCarran-Ferguson Act is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superseded by the application of federal law. McCarran-Ferguson Act, § 2(b), 15 U.S.C.A. § 1012(b).

**[7] Courts    89**
106k89
Opinions of the Mississippi Attorney General do not have the force of law.

**[8] Jury    19(1)**
230k19(1)
Borrowers who alleged, in self-serving affidavits, that arbitration agreements executed in connection with consumer loans were unconscionable and the products of unequal bargaining power were not entitled to a trial by jury on the issue of validity of the agreements under the Federal Arbitration Act (FAA); issues raised by borrowers related to enforceability of the agreements, but did not impact the making of the agreements themselves. 9 U.S.C.A. §§ 2, 4.

**[9] Jury    19(1)**
230k19(1)
A party contesting the "making" of an arbitration agreement, as required to obtain a jury trial on the issue of the agreement's validity under the Federal Arbitration Act (FAA), must make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true, and produce some evidence to substantiate his factual allegations. 9 U.S.C.A. §§ 2, 4.

**[10] Jury    28(7)**

230k28(7)
Borrowers who alleged fraudulent misrepresentation by lenders in connection with consumer loans were not deprived of their Seventh Amendment rights to a jury trial by order compelling arbitration pursuant to agreement executed with loans; such rights were validly waived by the arbitration agreement in clear, capitalized and boldfaced words.    U.S.C.A. Const.Amend. 7.

**[11] Alternative Dispute Resolution    134(1)**
25Tk134(1)
(Formerly 33k6.2 Arbitration)
Alleged high cost of arbitrating borrowers' claims against lender alleging fraudulent misrepresentation did not render parties' arbitration agreement unenforceable, though agreement provided that non-prevailing party would pay costs and expenses of arbitration; question of who would prevail was speculative, and rules of the American Arbitration Association (AAA) provided sufficient avenues to request fee-paying relief.

**[12] Alternative Dispute Resolution    210**
25Tk210
(Formerly 33k23.10 Arbitration)
Party resisting arbitration on financial hardship grounds has the burden of showing the likelihood that arbitration would be prohibitively expensive.

**[13] Alternative Dispute Resolution    134(1)**
25Tk134(1)
(Formerly 33k6.2 Arbitration)
When a party seeking to invalidate arbitration agreement on financial hardship grounds fails to specify excessive arbitration costs, and instead speculates that a "risk" exists that the party will be saddled with prohibitive costs of the arbitration proceeding, a court is not required to invalidate the arbitration agreement.

**\*704** Rik Stanford Tozzi (argued), Brian Alan Dodd, W. Michael Atchison, Starnes & Atchison, Birmingham, AL, William Hollis Leech, Beth L. Orlansky, McGlinchey Stafford, Jackson, MS, for American Heritage Life Ins. Co. and First Colonial Ins. Co. of Florida.

James Rodney Chastain, Jr. (argued), Shannan Sweeney Rieger, Kean, Miller, Hawthorne, D'Armond, McGowan & Jarman, Baton Rouge, LA, Robert T. Gordon, Jr., Heidelberg & Woodliff,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *704)

Jackson, MS, for Fidelity Nat. Corp.

Bennie Lee Jones, Jr. (argued), Law Offices of
Bennie L. Jones, Jr. & Associates, West Point, MS,
David Shelby VanEvery, Sr., VanEvery Law Firm,
Columbus, MS, for Defendants-Appellants.

Appeals from the United States District Court for
the Northern District of Mississippi.

Before WIENER and DENNIS, Circuit Judges,
and LITTLE, District Judge. [FN*]

 FN* Chief District Judge of the Western District of
 Louisiana, sitting by designation.

*705 LITTLE, District Judge:

Today we consider a consolidated appeal by
Defendants-Appellants from the district court's
order in favor of Plaintiffs-Appellees, compelling
arbitration.   Defendants-Appellants include the
following parties: John D. Orr, Betty F. Sanford,
Frankie L. Moore, Jimmie Martin, and Nathaniel
Henley (collectively referred to as the
"Appellants").   Plaintiffs-Appellees are: Fidelity
National Corporation d/b/a Republic Finance, Inc.
("Republic Finance" or the "Lender"), and
American Heritage Life Insurance Company
("American Heritage") and First Colonial Insurance
Company of Florida ("Colonial Insurance")
(collectively, the "Insurers"). [FN1]   The district
court granted Plaintiffs-Appellees' petition to
compel arbitration under § 4 of the Federal
Arbitration Act (the "FAA"), stayed the pending
state court proceedings, and ordered the case closed.
9 U.S.C. § 4.

 FN1. Republic Finance, American Heritage, and
 Colonial Insurance will be referred to collectively as
 "Appellees."

Although the Appellees are the beneficiaries of the
district court's ruling that compelled arbitration,
they are appellants as to one issue: Whether this
court has jurisdiction to entertain Appellants'
appeal.   This issue will be disposed of first, and
consideration of the portions of the district court's
order that the Appellants find wanting will follow.

We ultimately hold that, as a matter of law, the
district court order compelling arbitration, which

also stays the underlying state court proceedings and
closes the case in federal court, is an immediately
appealable, final decision under the ambit of 9
U.S.C. § 16(a)(3) of the FAA.   As such, this court
has jurisdiction to entertain the instant appeal.   We
also conclude that the district court's order should
be affirmed.

I. FACTS AND PROCEEDINGS

Over the past several years, Appellants obtained
consumer loans from Republic Finance, which
included the purchase of credit life and credit
disability insurance.   Specifically, when Appellants
entered into loan transactions with Republic
Finance, Republic Finance sold Appellants disability
life insurance to insure the credit against the risks of
sickness and death.   The Insurers wrote and issued
the insurance policies that Republic Finance sold to
Appellants.

At the loan closings, the borrowing Appellant and
Republic Finance signed a document entitled
"Arbitration Agreement" (the "Agreement") to
which the Insurers were not signatories.   Appellants
do not contend that Republic Finance failed to
prepare the Agreement in clear language and legible
print, or that Republic Finance neglected to place
the Agreement on a separate page, that is, apart
from the loan transaction documents.   Each
Agreement contains the following language:
 [A]ny claim, dispute or controversy between
 undersigned ... and lender (or the employees,
 agents or assigns of lender) arising from or
 relating to the loan or any prior extension of credit
 by lender to any of the undersigned, insurance
 written in connection herewith, ... and whether in
 tort, contract, breach of duty (including but not
 limited to) any alleged fiduciary, good faith, and
 fair dealing duties, including but not limited to the
 applicability of this arbitration agreement, and the
 validity of the entire agreement shall be resolved
 by binding arbitration before one arbitrator in
 accordance with the Federal Arbitration Act, the
 expedited procedures of the commercial
 arbitration rules of the *706 American Arbitration
 Association, and this agreement.
 ....
The parties agree that Lender is engaged in
interstate commerce, and the transaction is
governed by the Federal Arbitration Act, 9
U.S.C. Section 1-16.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *706)

....

In the event either party files a suit of any kind in any court against the other, or if a counter or cross-claim is filed therein, the defendant or counter-defendant can have the suit stayed and the other party required to arbitrate under this agreement.

Directly above the date and signature lines, in bold, capital, readily legible letters, is the following language.

THE PARTIES UNDERSTAND THAT BY SIGNING THIS ARBITRATION AGREEMENT, THEY ARE LIMITING ANY RIGHT TO PUNITIVE DAMAGES AND GIVING UP THE RIGHT TO A TRIAL IN COURT, BOTH WITH AND WITHOUT A JURY.

Despite the clear language of the Agreements' provisions mandating arbitration under the FAA and the commercial rules of the American Arbitration Association ("AAA"), Appellants commenced a civil action against Appellees in the Circuit Court of Clay County, Mississippi. Appellants sought monetary damages for, among other alleged transgressions, fraudulent misrepresentation in connection with the loan transaction, conspiracy to "sell credit life, credit disability, property and/or collateral protection insurance ... that was unnecessary and at an exorbitant premium far in excess of the market rate," breach of implied covenants of good faith and fair dealing, breach of fiduciary duties, and allegations that the Insurers conspired with agents of Republic Finance to sell unnecessary insurance at inflated rates.

Appellees initiated independent actions in the United States District Court, Northern District of Mississippi, only seeking orders of the court to compel arbitration under the FAA, 9 U.S.C. § 1 et seq. and to stay the state court proceedings. After an appropriate analysis of the Appellants' demands and the Appellees' oppositions to them, the district court issued an order compelling arbitration in accordance with the Agreements, staying all related, state court proceedings, and closing the case. The district court determined that Appellants' claims implicated substantially interdependent and concerted misconduct by both the non-signatory Insurers and the signatory Lender. The district court also concluded that: (1) the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C. §§ 1011-1015 (1999) (the "McCarran-Ferguson Act")

did not reverse-preempt the FAA because Appellants failed to identify a Mississippi state law or statute that the FAA had invalidated, impaired, or superseded;   (2) Appellees' petition to compel arbitration in the district court did not amount to a compulsory counterclaim under rule 13(a) of the Federal Rules of Civil Procedure (the "FRCP"), which would have required Appellees to file the motion to compel arbitration in state court, and that § 4 of the FAA plainly authorized a party against whom litigation has been initiated to commence a separate, original action in federal district court to enforce an arbitration agreement;   and (3) Appellants did not proffer sufficient evidence to support a jury trial demand for resolution of the factual issues surrounding the adoption of the Agreements.   Of particular importance in the instant dispute is the fact that, in addition to compelling arbitration and staying the pending state court proceedings, the district court ordered the case closed but did not dismiss the action.   The final, substantive paragraph of the district court's order provides as follows:   *707 "[T]his case is CLOSED."   Appellants timely filed notices of appeal.

## II. JURISDICTION
A District Court Order That Compels Arbitration, Stays the Underlying State
Court Proceedings, and Closes the Case is an Immediately Appealable, Final
Decision Within the Contemplation of § 16(a)(3) of the FAA.

[1] Section 16(a)(3) of the FAA provides as follows:  "An appeal may be taken from a final decision with respect to an arbitration that is subject to this title."  9 U.S.C. § 16(a)(3).   That section preserves immediate appeal of any " 'final decision' with respect to arbitration," regardless of whether the decision is favorable or hostile to arbitration. Id.   The FAA does not, however, expressly define the term "final decision."   Appellees argue that this court lacks appellate jurisdiction because the district court did not issue an immediately appealable "final decision."   Specifically, Appellees maintain that because the district court's order compelled arbitration and "closed" the case instead of compelling arbitration and "dismissing" the case, this court lacks jurisdiction to hear the appeal of the ruling of the district court.   Appellees cite Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *707)

121 S.Ct. 513, 148 L.Ed.2d 373 (2000) for the proposition that "closing" a case neither ends the litigation on the merits nor terminates the district court's involvement in the matter, thereby precluding this court's appellate jurisdiction over the dispute.   531 U.S. at 85, 121 S.Ct. at 519. Conversely, Appellants also rely on Green Tree, but for the proposition that, in the instant dispute, "closing" a case is the functional equivalent of "dismissing" it.       Appellants argue that by compelling arbitration and "closing" the case, the district court issued an immediately appealable, final decision under § 16(a)(3) because the court's order ended the entire litigation on the merits in that court, leaving nothing more for that court to do but execute the judgment. Id.

In Green Tree, the Supreme Court held that an order dismissing an action is a "final decision" within the traditional understanding of the term, even when the dismissal is in favor of arbitration and the parties could later return to court to enter judgment on an arbitration award. Id. at 85-88, 121 S.Ct. at 519-21.    In reaching this result, the Supreme Court applied the well-established meaning of "final decision" as one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Id. at 85;  121 S.Ct. at 519 (citing Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994)), and Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (both quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).   The Green Tree Court concluded that the reference in 9 U.S.C. § 16(a)(3) to "a final decision with respect to an arbitration that is subject to this title" authorizes appeals from final orders that grant or deny arbitration. Green Tree, 531 U.S. at 89, 121 S.Ct. at 521.  No longer is it necessary to conduct an analysis of whether a lawsuit is an "independent" action, brought solely to enforce arbitration rights, or an action in which the request to arbitrate is "embedded" in a case that also raises substantive legal claims. Id. at 88, 121 S.Ct. at 520.   By distinguishing the terms "dismiss" and "close" as they apply to disposition of a case, Appellees attempt to thwart the Court's instruction in Green Tree to apply the well-established meaning of "final decision."   Appellees contend that the standards for appeal from a dismissal are different from the standards for appeal from orders closing

the case.

*708  There is no practical distinction between "dismiss" and "close" for purposes of this appeal. The application of each word results in a termination on the merits, leaving the judgment-rendering court with nothing more to do but execute the judgment. We hold that where a district court with nothing before it but whether to compel arbitration and stay state court proceedings issues an order compelling arbitration, staying the underlying state court proceedings, and closing the case, thereby effectively ending the entire matter on its merits and leaving nothing more for the district court to do but execute the judgment, appellate jurisdiction lies, as the decision is "final" within the contemplation of § 16(a)(3) of the FAA.   Thus, we hold that this court has jurisdiction to entertain the instant appeal.

### III. SUBSTANTIVE ISSUES

Appellants assert that the district court erred by: (1) finding that the McCarran-Ferguson Act did not reverse-preempt the application of the FAA to the instant case;  (2) denying Appellants a trial by jury to decide the factual issues surrounding the validity of the Agreements;  and (3) failing to declare the Agreements unenforceable because of the putative high cost of arbitration.   For the reasons hereafter set forth, we find no merit in any issue raised by Appellants.

#### A. Standard of Review

[2] We review a district court's grant of a motion to compel arbitration de novo, applying the same standard as the district court.  OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir.2001) (citing Local 1351 Int'l Longshoremen's Ass'n v. Sea-Land Serv., Inc., 214 F.3d 566, 569 (5th Cir.2000), cert. denied, 531 U.S. 1076, 121 S.Ct. 771, 148 L.Ed.2d 670 (2001));  PaineWebber, Inc. v. Chase Manhattan Private Bank, 260 F.3d 453, 459 (5th Cir.2001);  Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd., 139 F.3d 1061, 1065 (5th Cir.1998).

#### B. The McCarran-Ferguson Act Did Not Reverse-Preempt the Application of the FAA to the Agreements.

[3][4][5][6] Appellants' first argument is that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *708)

FAA is inapplicable to the instant Agreements, because the FAA is precluded or preempted by the McCarran-Ferguson Act, 15 U.S.C. § 102 (the "Act"). The Act provides the following:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ...

15 U.S.C.A. § 1012(b). The Act bars application of the FAA to insurance contracts only in the context of a state statute evincing the same, not mere policy statements of state officials or administrative rule interpretations of governmental entities. See Miller v. Nat'l Fidelity Life Ins. Co., 588 F.2d 185, 186-87 (5 th Cir.1979). The party seeking to avail itself of the Act must demonstrate that application of the FAA would invalidate, impair, or supersede a particular state law that regulates the business of insurance. Id. at 187. "The test under McCarran-Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superseded by the application of federal law." Id. Appellants fail to identify any statute that would be impaired, invalidated, or superseded by the application of the FAA. Instead, Appellants try to perpetrate a judicial end-run by asserting that an attorney general's opinion or insurance department's regulatory, administrative policy is the functional equivalent of a state law relating to insurance, thereby triggering the provisions of *709 the Act. Appellants' arguments are without merit.

[7] First, "[o]pinions of the Mississippi Attorney General do not have the force of law...," .Frazier v. Lowndes County, Mississippi Bd. of Educ., 710 F.2d 1097, 1100 (5th Cir.1983) (citing Local Union No. 845, United Rubber, Cork, Linoleum and Plastic Workers of Am., Home Assoc. v. Lee County Bd. of Supervisors, 369 So.2d 497, 498 (Miss.1979)). Second, because no Mississippi statute addresses, much less prohibits or restricts, arbitration of credit insurance-related claims, disputes, or controversies, the Commissioner of Insurance for the State of Mississippi (the "Commissioner") is without regulatory authority to prohibit arbitration clauses relating to insurance. Appellants espouse a variety of administrative rulings by the Commissioner that disallowed arbitration of all insurance-related claims as proof that insurance claims are never subject to arbitration in the State of Mississippi. In their brief,

Appellants state the following: "There is no evidence herein that the Commissioner has ever approved an insurance policy, certificate, or endorsement or any form containing provisions for mandatory and binding arbitration. Consequently, the use of a mandatory, binding arbitration agreement, even though contained in a third-party contract ... is unlawful in Mississippi." Appellees, however, have submitted into the record a press release issued by the Commissioner on 2 October 2001, which states, in pertinent part, the following:

> [Commissioner] announces first policy filing allowing arbitration.

> [The] Commissioner ... approve[d] a filing by Primerica Life Insurance Company containing an arbitration provision. This provision would require certain disputes to be resolved through the process of arbitration rather than in the court system. In the event of a dispute, instead of a lawsuit being filed, an independent and neutral arbitrator licensed to practice law in Mississippi would render a decision after hearing the position of the parties.... The arbitrator's decision would be final and binding on both the policyholder and Primerica Life Insurance Company. [FN2]

FN2. See Mississippi Insurance Department website: www.doi.state.ms.us, 2 October 2001. As the record indicates, Appellants' contention that the Commissioner never permits insurance disputes to be subject to arbitration is incorrect. The record indicates that the Commissioner can permit or disallow insurance disputes to be subject to arbitration as the Commissioner deems fit.

Based upon the clear meaning of 15 U.S.C.A. § 1012(b), we hold that the district court properly concluded that the Act does not apply, and that under the FAA, the Agreements are valid, enforceable, and irrevocable. See Hart v. Orion Ins. Co., 453 F.2d 1358, 1360 (10th Cir.1971); Hamilton Life Ins. Co. of N.Y. v. Republic Life Ins. Co., 408 F.2d 606, 611 (2nd Cir.1969).

C. Appellants Are Not Entitled to a Jury Trial Regarding the Validity of the Agreements.

[8] Second, Appellants maintain that under §§ 2 & 4 of the FAA, they are entitled to a trial by jury on the issue of arbitrability. Section 2 of the FAA states, in pertinent part, that an arbitration clause involving interstate commerce is "valid, irrevocable,

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *709)

Page  11

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.    The FAA also provides that "[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

*710 1. Right to a Jury Trial Under § 4 of the FAA.

Appellants contend that they deserve a jury trial on the question of the validity of the Agreements. Specifically, by alleging that the Agreements are unconscionable, the products of unequal bargaining power between the parties, lacking mutuality of obligation between the parties, and failing to result in a meeting of the minds, Appellants argue that they have put the "making" of the Agreements in issue, thereby complying with § 4 of the FAA. The district court held, however, that the issues raised by Appellants relate to enforceability of the Agreements, but do not impact the "making" of the arbitration" agreement.    We agree with the district court's holding and rationale.

[9] Although the FAA permits parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration agreement, or the failure, neglect, or refusal to perform the agreement, it is well-established that "[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one." Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir.1992). Further, under the Dillard analysis, a party contesting the "making" of the arbitration agreement must "make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true ... [and] produce some evidence to substantiate his factual allegations." Id. at 1154.

In the instant case, Appellants submitted evidence in the form of affidavits that claim, inter alia, that Appellees did not explain the Agreements to Appellants or that Appellants did not realize that they were waiving a trial by jury.    The affidavits proffered by Appellants, however, amount to nothing more than hollow, bald assertions that do not approach fraud in the "making" of the Agreements.    See Bhatia v. Johnston, 818 F.2d 418, 421-22 (5th Cir.1987) (stating that self-serving affidavits do not amount to the type of evidence

required to call the "making of the arbitration" agreement into question).    Furthermore, Appellants' affidavits fail to identify any misrepresentation by Appellees peculiar to the Agreements, which forecloses Appellants' ability to state a claim of fraud in the inducement.    See Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483, 491 (6th Cir.2001).    Other than their self-serving affidavits, Appellants have not submitted a whisper of evidence to support the conclusion that a jury trial is warranted under § 4 of the FAA.    Raising issues of the Agreements' procedural or substantive unconscionability, as Appellants have in the instant case, is not the equivalent of questioning the "making" of an arbitration agreement.    See Burden, 267 F.3d at 492.    Under § 4 of the FAA and Dillard, therefore, Appellants have not met their burden to show their entitlement to a jury trial.

2. The Seventh Amendment Right to a Trial by Jury.

[10] Next, Appellants claim that by forcing them to submit their claims to an arbitrator, the district court deprived them of their Seventh Amendment right to a trial by jury.    Appellants suggest that the waiver of a constitutional right should be closely scrutinized, and that a waiver of jury trial rights must be clearly and unmistakably expressed.

Appellants' argument is without foundation.    First, we point out that Appellants agreed to submit to arbitration because they assented to the terms of the Agreements, which contained the following clause, located just above the signature lines:
THE PARTIES UNDERSTAND THAT BY SIGNING    THIS    ARBITRATION    *711 AGREEMENT, THEY ARE LIMITING ANY RIGHT TO PUNITIVE DAMAGES AND GIVING UP THE RIGHT TO A TRIAL IN COURT, BOTH WITH AND WITHOUT A JURY.
Therefore, by agreeing to arbitration, Appellants have necessarily waived the following:  (1) their right to a judicial forum;    and (2) their corresponding right to a jury trial.

Nevertheless, Appellants cite Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), for the proposition that an arbitration provision that waives jury trial rights must be clearly and unmistakably expressed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Reliance on Wright, however, is unavailing. Appellants acknowledge that the Supreme Court limited its holding in Wright to the context of a collective bargaining agreement, not to an individual's waiver of his own rights--a situation in which the "clear and unmistakable" standard is not applicable. Id. at 80-81, 119 S.Ct. at 396-97. Thus, outside the area of collective bargaining, in which a third party (the union) seeks to waive contractually the rights of an individual member (the employee), there is no requirement that an arbitration provision must clearly and unmistakably express the waiver of an individual's rights. Williams v. Imhoff, 203 F.3d 758, 763 (10th Cir.2000).

Appellants further cite the talisman of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) in support of their contention that a waiver of a constitutional right must be voluntarily, knowingly, and intelligently made. Miranda, however, is totally inapposite to the instant case, because Miranda is limited to the protection of the Fifth Amendment rights of criminal defendants after arrest and does not trigger the application of the Seventh Amendment right to a jury trial in a civil case.

The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum.  We concur with the following reasoning:
The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court.  If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.
Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 957 F.Supp. 1460, 1471 (N.D.Ill.1997). Here, Appellants agreed to resolve their disputes with Appellees through arbitration, and they did so in clear and unmistakable, capitalized and boldfaced words which expressly waived their right to a jury trial as well.  Thus, Appellants validly waived their rights to a judicial forum, including the corollary right to a trial by jury.

D. The Agreements Are Not Unenforceable Because of the Alleged High Cost of Arbitration.

[11][12] Third, Appellants contend that the filing and case service fees for arbitration are oppressive, present a hardship, and are unconscionable, thereby rendering the Agreements unenforceable.  As to the potentially burdensome costs of arbitration, the party resisting arbitration has the burden of showing the likelihood that "arbitration would be prohibitively expensive."  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).  Appellants assert that they would not be able to afford the fees associated with arbitration under the fee schedule and rules of the AAA.

[13] First, this testimony alone is not sufficient to render the Agreements unconscionable.  See Williams v. Cigna Fin. Advisors, 197 F.3d *712 752, 764-65 (5th Cir.1999), cert. denied, 529 U.S. 1099, 120 S.Ct. 1833, 146 L.Ed.2d 777 (2000).  In Williams, this court held that, without more, the mere possibility that a party may have to share in the payment of the arbitrator's fees is not a sufficient reason to invalidate an arbitration agreement.  See id. at 764.  Furthermore, when a party fails to specify excessive arbitration costs and instead speculates that a "risk" exists that the party will be saddled with prohibitive costs of the arbitration proceeding, a court is not required to invalidate the arbitration agreement.  Green Tree, 531 U.S. at 90-91, 121 S.Ct. at 522.  Interestingly, to date, Appellees, not Appellants, have assumed the cost of initiating the arbitration.

Second, the Agreements provide the following: "the party requesting arbitration shall at that time pay the arbitrator $125.00.  Lender shall pay arbitrator all other arbitration fees and expense costs for up to one day (eight hours) of proceedings.  Any other such costs shall be paid by the non-prevailing party...."  According to the record, to date, only Appellees have paid the appropriate fees;  however, if Appellees prevail, then Appellants must pay all costs and expenses of arbitration.  Presently, the question of which party to the arbitration will ultimately prevail at arbitration is subject to speculation only and, therefore, is not a basis to hold the Agreements unenforceable.  Appellants' reliance on Shankle v. B.G. Maint. Mgmt., Inc., 163 F.3d 1230, 1234-35 (10th Cir.1999) and Cole v. Burns Int'l Sec. Services Co., 105 F.3d 1465, 1483-89 (D.C.Cir.1997) is misplaced.  In each case, the court addressed an arbitration agreement that did not expressly specify which party would pay the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *712)

arbitrator's fees or whether an arbitrator's fees could be waived or reduced in cases of hardship.   See Cole, 105 F.3d at 1483-89.  This case, however, is distinguishable from Cole, because the Agreements expressly state who shall pay the arbitration fees. Moreover, the rules of the AAA provide Appellants sufficient avenues to request fee-paying relief, if necessary.   See Rule R-51, Commercial Arbitration Rules.

The mere fact that Appellants face the possibility of being charged arbitration fees, including paying the arbitrator's fee if directed to do so by the arbitrator, does not render the Agreements unenforceable. Accordingly, Appellants have failed to demonstrate that the Agreements' provision relating to fees is unconscionable simply because Appellants may eventually have to pay a portion of the arbitrator's fees.

### IV. CONCLUSION

For the foregoing reasons, the district court's order compelling arbitration, staying the state court proceedings, and closing the case is AFFIRMED.

DENNIS, Circuit Judge, concurring:

I concur fully in Chief Judge Little's excellent opinion and write separately only to elaborate on the reasons why we have appellate jurisdiction over this matter.

The Federal Arbitration Act ("FAA") permits appeal of any "final decision with respect to an arbitration" that is subject to the Act. 9 U.S.C. § 16(a)(3).  On the other hand, "[e]xcept as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order ... (1) granting a stay of any action under section 3 of this title;  [or] (2) directing arbitration to proceed under section 4 of this title...."  9 U.S.C. § 16(b)(1)-(2). [FN1]  *713 Thus, an order compelling arbitration is appealable only if it is a final order.  In other words, the finality of the district court's order determines this court's jurisdiction over the present appeal.

FN1.  Appellate review is permitted under the 28 U.S.C. § 1292(b) exception if the district court certifies an order for immediate appeal.

Prior to the Supreme Court's opinion in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), this circuit established that "[t]he appropriate test of finality is whether the order involved an independent or embedded proceeding.  An order involving an embedded proceeding is always an interlocutory order;  an order involving an independent claim is always final."  Altman Nursing, Inc. v. Clay Capital Corp., 84 F.3d 769, 771 (5th Cir.1996).   The Altman Nursing court explained the independent/ embedded distinction as follows:  " 'Generally, if the only issue before the court is the dispute's arbitrability, the action is considered independent and a court's decision on that issue constitutes a final decision.  If, however, the case includes other claims for relief, an arbitrability ruling does not end the litigation on the merits, but is considered interlocutory only.' "  Id. (quoting McDermott Int'l, Inc. v. Underwriters at Lloyds, 981 F.2d 744, 747 (5th Cir.1993)).

In Green Tree, the Court established a different analytical framework for determining whether an arbitration order is an appealable "final decision" or an unappealable "interlocutory order."  "The Court held that an order dismissing an entire action with prejudice and ordering arbitration is an appealable final decision under § 16(a)(3), regardless of whether the action would be deemed 'independent' or 'embedded' by courts, like ours, that embraced that distinction."  Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 92 (2d Cir.2002). [FN2] Rather, the Court applied the "well-developed and longstanding" definition of "final decision":  "It is a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."  Green Tree, 531 U.S. at 86, 121 S.Ct. 513 (internal quotation and citations omitted). The Court further noted, however, that, "[h]ad the District Court entered a stay instead of a dismissal in this case, that order would not be appealable."  Id. at 87 n. 2, 121 S.Ct. 513.

FN2.  The Green Tree case would have qualified as an "embedded" proceeding under our definition of that term in Altman Nursing.

Here, the district court entered an order in each action that (1) compelled arbitration under section 4 of the FAA, (2) stayed the state-court proceedings, and (3) closed the case.  Each component of those

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *713)

orders merits brief discussion.

First, in Green Tree, the Supreme Court returned our jurisdictional analysis to the "plain language of the statutory text" of the FAA.  See id. at 88, 121 S.Ct. 513.  Section 4 of the FAA permits a party seeking to compel arbitration to file suit solely for that purpose.  See 9 U.S.C. § 4;  see also Edith H. Jones, Appeals of Arbitration Orders--Coming Out of the Serbonian Bog, 31 S. TEX. L.REV. 361, 373-76 (1990).  When a decision on arbitrability is the sole object of a civil action, the district court's determination of that issue amounts to an immediately appealable "final decision" because it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  In this case, the Appellees filed independent actions in the district court.  By compelling arbitration, the court resolved the only issue before it in each action.  The orders are therefore final decisions, and we have jurisdiction to hear this appeal under section 16(a)(3) of the FAA.

*714 Second, the stay of the state-court proceedings does not impact our jurisdictional analysis.  Although section 3 of the FAA allows courts to stay litigation brought before them, the statute does not authorize federal courts to enjoin ongoing state proceedings. [FN3]  Consequently, the district court did not grant "a stay of any action under section 3 of this title...."  9 U.S.C. § 16(b)(1) (emphasis added).  More importantly, because the district court reached final decisions with respect to arbitration, the stay component of its orders did not transform them into unappealable "interlocutory order[s]" under section 16(b).  See Sphere Drake Ins. PLC v. Marine Towing, Inc., 16 F.3d 666, 667-68 (5th Cir.1994).  "There is nothing interlocutory about an order compelling arbitration that does all that the court has to do." Clarendon Nat'l Ins. Co. v. Kings Reinsurance Co., 241 F.3d 131, 135 (2d Cir.2001).  Accordingly, the stay does not prevent us from exercising appellate jurisdiction. [FN4]

FN3. See Jean R. Sternlight, Forum Shopping for Arbitration Decisions: Federal Courts' Use of Antisuit Injunctions Against State Courts, 147 U. PA. L.REV. 91, 114 (1998) ("Nothing in either the language or the legislative history of the FAA shows that Congress intended to allow federal courts to enjoin state actions to support the enforcement of arbitration agreements.").  The district court's authority to issue arbitral antisuit injunctions directed at state-court proceedings derives, instead, from the All Writs Act, 28 U.S.C. § 1651(a).  Id. at 146.  Congress, however, has limited the injunction power conferred by the All Writs Act.  The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The district court based its stay on the third exception contained in the Anti-Injunction Act, stating that "a stay is required to protect or effectuate this court's judgment and order that the controversy between the parties be submitted to arbitration."  Because an order compelling arbitration entered in an independent proceeding is a final decision, it also qualifies as a "judgment" under the Anti-Injunction Act.  See Sternlight, supra, at 170-77.  But cf. id. at 177 (stating that the third exception "would not seem to apply where an entire case on the merits was filed in federal court").  Thus, the stay entered by the district court was valid as a matter of law.  But this finding does not mean that the stay was "necessary as a matter of practicality." Id.  "Once the federal court has issued an order compelling arbitration, parties would risk sanctions such as contempt of court by refusing to follow the order." Id.  In short, federal courts should examine closely both the legality and the necessity of a stay pending arbitration prior to interfering with a state-court suit.

FN4. Even if one of the parties to the arbitration agreement had successfully moved to stay the federal-court proceedings pending arbitration, our jurisprudence indicates that the district court's orders would still constitute immediately appealable final decisions.  See Sphere Drake, 16 F.3d at 668 (holding, in an independent proceeding, that an order compelling arbitration that also stayed all federal and state litigation pending between the parties was final).

Third, in my opinion, the closure component of the orders reveals the district court's intention to both retain jurisdiction and administratively close the case.  It is not uncommon for district courts to compel arbitration but also retain jurisdiction pending the arbitration for the purpose of addressing

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



294 F.3d 702
(Cite as: 294 F.3d 702, *714)

any subsequent motions to confirm, modify, or vacate the award. [FN5] But *715 the retention of jurisdiction pending arbitration creates an administrative problem for the district court because the action is likely to remain dormant for an appreciable period of time, and chief judges (at both the appellate and district-court levels) have a sixth sense for cases that appear to be languishing. The administrative closure solves this problem by providing a vehicle for the district court to remove the case from its active files without making any final adjudication. Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 392 (1st Cir.1999). Thus, the administrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance. [FN6]

FN5. The federal courts of appeals have consistently found that district courts intend to retain jurisdiction when they stay proceedings pending arbitration. See, e.g., Corion Corp. v. Chen, 964 F.2d 55, 56-57 (1st Cir.1992); see also Jolley v. Paine Webber Jackson & Curtis, Inc., 864 F.2d 402, 405 (5th Cir.1989) ("While an order granting a stay postpones active litigation in the district court, it contemplates that the district court will retain jurisdiction to confirm, modify, or, in some cases, to renew the litigation despite the arbitration award."). Yet, in an independent proceeding, a stay would not affect the finality or appealability of an order compelling arbitration. See supra note 4.

FN6. See Lehman, 166 F.3d at 392 ("Properly understood, an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository. In no event does such an order bar a party from restoring the action to the Court's active calendar upon an appropriate application.") (internal quotation and citation omitted). I acknowledge that the district court here did not specifically direct that the cases be "administratively closed." But a court's use of an imprecise or misleading label cannot alter the character of its action. See id. at 391 n. 2 (treating a "procedural order of dismissal" as an administrative closure of the case).

In an effort to cast their case in the same mold as Green Tree, the Appellants argue that an order closing a case issued in an independent proceeding is the functional equivalent of a dismissal. [FN7] If we were to accept their argument, however, we would be attributing jurisdictional significance to a designation not sanctioned by the Federal Rules that is typically made for administrative or statistical convenience. This we cannot do. Although the Appellants prevail under the plain meaning of FAA section 16(a)(3), their "functional equivalent" argument lacks merit.

FN7. In proceedings where the litigants place more than the issue of arbitrability before the district court, an order compelling arbitration and closing the case is not equivalent to a final judgment of dismissal. See Filanto, S.p.A. v. Chilewich Int'l Corp., 984 F.2d 58, 61 (2d Cir.1993); see also ATAC Corp. v. Arthur Treacher's, Inc., 280 F.3d 1091 (6th Cir.2002) (rejecting an argument that a perpetual stay coupled with a closing order does not differ from a final judgment of dismissal); Corion Corp., 964 F.2d at 56-60 (holding that an order compelling arbitration, staying proceedings, and administratively closing the case is not final).

The Appellees, on the other hand, raise their own functional equivalent argument: they suggest that we treat the closure order as a stay order, which would, in turn, deprive us of appellate jurisdiction under footnote two of the Green Tree decision. [FN8] This argument likewise fails, for it loses sight of the final judgment rule. In an independent proceeding, an order that is otherwise final--such as those entered in the present case--does not lose its finality because the district court retains jurisdiction to supervise compliance with the order or to enforce an arbitration award. Amgen, Inc. v. Kidney Ctr. of Delaware County, Ltd., 95 F.3d 562, 566 (7th Cir.1996) ("[A]n order in an independent proceeding can still be final even if the district court retains jurisdiction over the case to supervise compliance with the order."); North River Ins. Co. v. Philadelphia Reinsurance Corp., 63 F.3d 160, 164 (2d Cir.1995); University Life Ins. Co. of Am. v. Unimarc Ltd., 699 F.2d 846, 848-50 (7th Cir.1983). Moreover, even if the district court had stayed these independent proceedings pending arbitration, the order *716 compelling arbitration would still resolve the only issue before the court in each action, and therefore an immediate appeal from the order would still be permitted. See supra note 4. In short, even though the district court probably intended to retain jurisdiction over these actions,

Westlaw.

294 F.3d 702
(Cite as: 294 F.3d 702, *716)

neither the retention of jurisdiction nor the closure of the cases affects appealability. [FN9]

> FN8. See Green Tree, 531 U.S. at 87 n. 2, 121 S.Ct. 513. ("Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable.").

> FN9. The Appellees bravely complain that this appeal is impeding arbitration. Any delay, however, is of their own making. They decided to file independent actions in federal court instead of moving to compel arbitration in the earlier-filed state-court proceedings. This appeal is one of the consequences of that strategic decision.

Although immediate appeal from an order compelling arbitration may frustrate the oft-cited federal policy favoring arbitration, policy concerns must yield to the plain language of the statutory text of the FAA. See Green Tree, 531 U.S. at 85-89, 121 S.Ct. 513. See also Corion Corp., 964 F.2d at 59 ("[I]mmediate appealability of an arbitration order in a lawsuit which seeks no more than an order directing arbitration is the price or consequence of the final judgment rule, for once the order to arbitrate enters, the court has disposed of the entire controversy then before it."). In this case, then, we have appellate jurisdiction under section 16(a)(3) of the FAA because the district court entered "final decision[s]" by compelling arbitration in actions brought solely for that purpose.

AMERICAN HERITAGE LIFE; First Colonial Insurance Company; and Fidelity National Corporation d1b1a Republic Finance, Inc., Plaintiffs - Appellees, v. John D. ORR, Defendant - Appellant. (Appeal No. 01-60678) American Heritage Life; First Colonial Insurance Company; and Fidelity National Corporation d1b1a Republic Finance, Inc., Plaintiffs - Appellees, v. Bettey E. Sanford, Defendant - Appellant. (Appeal No. 01-60679) American Heritage Life; First Colonial, 2001 WL 34095748 (Appellate Brief) (C.A.5 December 20, 2001), Principal Brief of Appellees American Heritage Life Insurance Company and First Colonial Insurance Company

AMERICAN HERITAGE LIFE INSURANCE COMPANY; First Colonial Insurance Company of Florida; Fidelity National Corporation, doing business as Republic Finance, Inc., Plaintiffs - Appellees, v. John D. ORR, Defendant - Appellant. (Case No. 01-60678) American Heritage Life Insurance Company; First Colonial Insurance Company of Florida; Fidelity National Corporation, doing business as Republic Finance Inc., Plaintiffs - Appellees, v. Betty E. Sanford, Defendant, 2001 WL 34095749 (Appellate Brief) (C.A.5 December 20, 2001), Brief for Plaintiff-Appellee, Fidelity National Corporation d/b/a Republic Finance

AMERICAN HERITAGE LIFE INSURANCE COMPANY; First Colonial Insurance Company of Florida; Fidelity National Corporation, doing business as Republic Finance, Inc., Plaintiffs - Appellees, v. John D. ORR, Defendant - Appellant. (Appeal No. 01-60678) American Heritage Life Insurance Company; First Colonial Insurance Company of Florida; Fidelity National Corporation, doing business as Republic Finance, Inc., Plaintiffs - Appellees, v. Betty E. Sanford, Defendant, 2002 WL 32104356 (Appellate Brief) (C.A.5 January 3, 2002), Reply Brief for Appellants

294 F.3d 702

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



2

283 F.3d 595
88 Fair Empl.Prac.Cas. (BNA) 464, 82 Empl. Prac. Dec. P 41,005
(Cite as: 283 F.3d 595)

Page 18

United States Court of Appeals,
Third Circuit.

Diane BLAIR, Appellant,
v.
SCOTT SPECIALTY GASES; Thomas Barford;
Jerry Stump.

No. 01-1096.

Argued Nov. 1, 2001.
Filed March 13, 2002.

Former employee brought suit against employer, asserting sexual harassment and discrimination claims under federal and state law. After granting summary judgment to employer, and initially dismissing case with prejudice, 2000 WL 1728503, the United States District Court for the Eastern District of Pennsylvania, Clarence C. Newcomer, J., on reconsideration, modified order to dismiss case without prejudice, and ordered parties to arbitrate claims. Employee appealed. The Court of Appeals, Sloviter, Circuit Judge, held that: (1) district court's order was a final, appealable order; (2) mandatory arbitration provision contained in employee handbook was supported by adequate consideration under Pennsylvania law, and thus was enforceable; but (3) matter would be remanded to provide employee with opportunity to show that, given her financial capacity, and provision of agreement requiring parties to each pay one-half of arbitrator's compensation, resort to arbitration would deny her a forum to vindicate her statutory rights.

Reversed and remanded.

West Headnotes

[1] Federal Courts    578
170Bk578
Under Federal Arbitration Act (FAA), a stay pending outcome of arbitration is considered an interlocutory order that may not be appealed. 9 U.S.C.A. § 16(b)(1).

[2] Federal Courts    589
170Bk589
District court order which dismissed without prejudice action in which plaintiff asserted sexual harassment and discrimination claims, and ordered parties to arbitrate their claims as directed by arbitration agreement, was a final, appealable order, rather than an interlocutory order which is not appealable under Federal Arbitration Act (FAA); while dismissal was without prejudice, district court did not retain jurisdiction over any claims, because every claim was held to be arbitrable, and there was nothing more for district court to do but execute the judgment. 9 U.S.C.A. § 16(b)(1).

[3] Federal Courts    776
170Bk776
Court of Appeals reviews a grant of summary judgment de novo, and must apply the same test as the district court. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

[4] Federal Civil Procedure    2543
170Ak2543
In considering motion for summary judgment, nonmovant's allegations are to be taken as true, and when they conflict with those of the movant, the former must receive the benefit of the doubt. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

[5] Federal Courts    403
170Bk403
(Formerly 33k2.2 Arbitration)
A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the Federal Arbitration Act (FAA). 9 U.S.C.A. § 1 et seq.

[6] Contracts    9(1)
95k9(1)

[6] Contracts    14
95k14

[6] Contracts    47
95k47
Before concluding that there is a valid contract under Pennsylvania law, court must look to (1) whether both parties manifested an intention to be bound by the agreement, (2) whether the terms of the agreement are sufficiently definite to be enforced, and (3) whether there was consideration.

[7] Contracts    50

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



283 F.3d 595
(Cite as: 283 F.3d 595)

95k50
Under Pennsylvania, consideration sufficient to support an enforceable contract confers a benefit upon the promisor or causes a detriment to the promisee, and must be an act, forbearance, or return promise bargained for and given in exchange for the original promise.

**[8] Contracts    85**
95k85
Without consideration, a contract is unenforceable under Pennsylvania law.

**[9] Alternative Dispute Resolution    134(2)**
25Tk134(2)
(Formerly 33k6.2 Arbitration)
Mandatory arbitration provision which had been placed by employer in updated employee handbook, and receipt and reading of which had been acknowledged by employee, was supported by adequate consideration and thus was a binding contract under Pennsylvania law, so that employee could be compelled under Federal Arbitration Act (FAA) to submit her sexual harassment and discrimination complains against employer to arbitration; language of agreement made clear that both parties were bound by it, and while employer had unilateral ability to modify handbook, alteration of material aspects of agreement required written notice to employees. 9 U.S.C.A. § 1 et seq.

**[10] Alternative Dispute Resolution    134(2)**
25Tk134(2)
(Formerly 33k6.2 Arbitration)
When both parties have agreed to be bound by arbitration, adequate consideration exists, and the arbitration agreement should be enforced.

**[11] Contracts    10(1)**
95k10(1)
Under Pennsylvania law, a contract need not have mutuality of obligation as long as the contract is supported by consideration.

**[12] Federal Courts    939**
170Bk939
Matter in which district court had dismissed without prejudice employee's sexual harassment and discrimination claims, and ordered parties to arbitrate claims in accordance with arbitration agreement contained in employee handbook, would be remanded to provide employee with opportunity

to demonstrate that, given her financial capacity, and provision of arbitration agreement requiring parties to each pay one-half of arbitrator's compensation, resort to arbitration would deny her a forum to vindicate her statutory rights, so that mandatory arbitration would be violative of public policy.

**[13] Alternative Dispute Resolution    121**
25Tk121
(Formerly 33k3.3 Arbitration)
While there is a liberal federal policy under Federal Arbitration Act (FAA) favoring arbitration agreements, arbitration is only appropriate so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum allowing the statute to serve its purposes. 9 U.S.C.A. § 1 et seq.

**[14] Courts    90(2)**
106k90(2)
A panel of Court of Appeals may not overrule or disregard a prior panel decision unless that decision has been overruled by the Supreme Court or by the Court of Appeals sitting en banc.

*597 Martha Sperling, Silver & Sperling, Doylestown, PA, Ralph E. Lamar, IV (Argued), Doylestown, PA, for Appellant.

Thomas J. Barton (Argued), James G. Fannon, Drinker, Biddle & Reath, Philadelphia, PA, for Appellees.

Elisabeth S. Shuster, Pennsylvania Human Relations Commission, Harrisburg, PA, for Amicus-Appellant Pennsylvania Human Relations Commission.

Robert J. Gregory (Argued), Senior Attorney, Gwendolyn Young Reams, Associate General Counsel, Philip B. Sklover, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, Equal Employment Opportunity Commission, Washington, D.C., for Amicus-Appellant Equal Employment Opportunity Commission.

Before: SLOVITER, NYGAARD and CUDAHY, [FN*] Circuit Judges.

FN* Hon. Richard D. Cudahy, United States Senior

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



283 F.3d 595
(Cite as: 283 F.3d 595, *597)

Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Diane Blair brought suit in the United States District Court for the Eastern District of Pennsylvania against Scott Specialty Gases ("Scott"), her former employer, alleging sexual harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2001), the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons.Stat. § 951 et seq. (2001), the Equal Rights provision of the Pennsylvania Constitution, Pa. Const. art. I, § 28, and other state claims. The District Court order on appeal dismissed Blair's complaint without prejudice pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4 (2001), and directed the parties to arbitrate the claims pursuant to the terms of their arbitration agreement. Blair argues on appeal that the arbitration agreement is invalid and unenforceable, and that the agreement violates public policy by requiring the employee to pay one-half of the arbitrator's fees.

I.

FACTS AND PROCEDURAL BACKGROUND

Blair was employed by Scott, a producer and supplier of specialty gas products, from January 1995 through March 1999. In April 1997, she became the Plant Manager at the Plumstead Medical Products Division. Blair alleges that during the course of her employment she was subjected to discrimination and harassment based on her gender.

Blair alleges that during her initial interview with one of the Vice-Presidents of Scott, Tom Barford, he told her he would "rather employ a male plant manager, with a couple of kids who lived nearby and wouldn't leave him high and dry in a few months to marry a lawyer or doctor." App. at 66. Blair further alleges that Barford told her that he could not attend the sensitivity training on sexual discrimination and harassment "because he was a 'sexist pig' and that if people knew all the things he had done, he would be fired." App. at 67-68. In fact, Blair alleges that after she was hired, Barford

demeaned her suggestions during meetings, as well as those of other female staff members, and *598 routinely made sexist references to her, such as "putting tits on a bull" and "putting people in bed together." App. at 67. He allegedly commented on her appearance and choice of clothing, and suggested, for example, that she wear skirts more often to show her legs.

Blair resigned from her position on March 24, 1999, claiming that she could no longer tolerate the harassing work environment. Blair alleges that sometime after she resigned and reported the sexual harassment to Scott management, Barford and another Scott supervisor began to take retaliatory action by spreading rumors around the plant that Blair had engaged in an affair with a female co-worker.

On September 20, 1999, Blair filed an administrative "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC) that was cross-filed with the Pennsylvania Human Relations Commission (PHRC). Both the EEOC and PHRC eventually dismissed her complaint.

On July 31, 2000, Blair filed a complaint in the United States District Court for the Eastern District of Pennsylvania alleging sexual harassment, sex discrimination, and constructive discharge under Title VII, the PHRA, the Pennsylvania Constitution, and state common law claims of intentional infliction of emotional distress, defamation, negligent employment, breach of contract, and breach of the covenant of good faith and fair dealing. Scott filed a motion to dismiss, or in the alternative for summary judgment, on the ground that Blair had agreed to submit all claims relating to her employment to binding arbitration. A mandatory arbitration provision had been placed by Scott in an updated employee handbook that was distributed to all employees in February 1998. Blair, who was given the assignment of making sure that all of the Medical Products' employees signed an "Acknowledgment of Receipt and Reading" of the revised handbook, signed such an acknowledgment on February 27, 1998. That acknowledgment stated that she had read the arbitration provision and agreed to submit any disputes arising out of her employment to a final and binding arbitration.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



283 F.3d 595
(Cite as: 283 F.3d 595, *598)

In response to Scott's motion to dismiss based on the arbitration agreement, Blair argued that the arbitration agreement was not a validly formed contract and thus was not binding and, in the alternative, that the agreement should not be enforced on public policy grounds because it required her to pay one-half of the arbitrator's fees.

The District Court granted summary judgment to Scott, and initially dismissed Blair's complaint with prejudice. On Blair's motion for reconsideration, the District Court modified the order to dismiss the case without prejudice pursuant to 9 U.S.C. § 4, and ordered the parties to arbitrate their claims as directed by the arbitration agreement. Blair filed a timely notice of appeal. On November 30, 2000, she also filed for arbitration before the American Arbitration Association (AAA) as directed by the arbitration agreement but requested that the AAA hold her case in abeyance pending the outcome of these proceedings.

## II.
## JURISDICTION

[1][2] Scott argues, as a threshold matter, that this court does not have jurisdiction on the ground that the District Court's modified order was not final or appealable because it dismissed Blair's claims without prejudice and ordered the parties to arbitrate. Scott argues that the court's order effectively acted as a stay of the proceedings pending the outcome of the arbitration. Under the FAA, a stay is *599 considered an interlocutory order that may not be appealed. 9 U.S.C. § 16(b)(1).

Scott relies on Smith v. The Equitable, 209 F.3d 268 (3d Cir.2000), where we held, on facts similar to the present case, that the dismissal of an employment discrimination case without prejudice with an order to compel arbitration was not a final appealable order. Smith, an African American, brought suit in federal court alleging that the defendant company's decision not to hire him was based on his race in violation of Title VII and the PHRA. Because he had signed a pre-employment contract that included an agreement to arbitrate any employment-related disputes, the district court dismissed Smith's action without prejudice and compelled arbitration. Id. at 270.

On appeal, we noted that under section 16(b) of the FAA, federal courts are expressly barred from taking an appeal of a district court's interlocutory order compelling arbitration. Id. at 271. Section 16 provides:

(a) An appeal may be taken from--
(1) an order--
(A) refusing a stay of any action under section 3 of this title,
(B) denying a petition under section 4 of this title to order arbitration to proceed,
(C) denying an application under section 206 of this title to compel arbitration,
(D) confirming or denying confirmation of an award or partial award, or
(E) modifying, correcting, or vacating an award;
(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
(3) a final decision with respect to an arbitration that is subject to this title.
(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
(1) granting a stay of any action under section 3 of this title;
(2) directing arbitration to proceed under section 4 of this title;
(3) compelling arbitration under section 206 of this title; or
(4) refusing to enjoin an arbitration that is subject to this title.
9 U.S.C. § 16.

We dismissed Smith's appeal on the ground that it was an interlocutory order directing arbitration to proceed under section 4, and therefore not appealable under 9 U.S.C. § 16(b). We stated that a district court's order in an independent proceeding, one brought by the plaintiff in order to compel arbitration, is considered final and immediately appealable because it addresses the exact relief sought. Smith, 209 F.3d at 271. We contrasted such an order from an order in an "embedded" proceeding, one where the defendant, rather than the plaintiff, moves to compel enforcement of the arbitration agreement as a defense to claims brought before the court. We noted that the latter traditionally had been considered interlocutory and not immediately appealable. Id.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

283 F.3d 595
(Cite as: 283 F.3d 595, *599)

Page 22

In *Smith*, we recognized the apparent anomaly of treating these types of proceedings differently but pointed to the rationale we had previously applied " 'that an order directing arbitration is interlocutory and, therefore, not appealable if it is made in a lawsuit, such as a suit for damages, in which in the normal course of judicial procedure there will be a later final order or judgment from which an appeal can be taken by a person aggrieved by the prior order to arbitrate.' " *Id.* at 271 (quoting *Zosky v. Boyer*, 856 F.2d 554, 558 (3d Cir.1988) (quoting *Rogers v. Schering* *600 Corp.*, 262 F.2d 180, 182 (3d Cir.1959))). We stated that the district court's decision to dismiss the proceedings rather than stay the proceedings under 9 U.S.C. § 3, was appropriate "for reasons of judicial efficiency" when " 'all the claims involved in an action are arbitrable.' " *Smith*, 209 F.3d at 272 (quoting *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir.1998)). We also noted that the dismissal "was the functional equivalent of a stay" since the plaintiff could test the validity of the arbitration agreement before the arbitrator and then, if necessary, challenge the arbitration award in the district court. *Id.*

The continued viability of the holding and rationale in *Smith* and earlier cases must be examined in light of the Supreme Court's recent decision in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), which Blair contends is inconsistent with *Smith* and establishes our jurisdiction over this appeal. In *Green Tree*, the plaintiff sued the companies that had financed her purchase of her mobile home alleging that they violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f. *Green Tree*, 531 U.S. at 82-83, 121 S.Ct. 513. The district court granted the defendants' motion to compel arbitration and dismissed the plaintiff's claims with prejudice. The court of appeals rejected the defendants' challenge to its jurisdiction on the ground that the order was not appealable. *Randolph v. Green Tree Fin. Corp.-Alabama*, 178 F.3d 1149, 1156-57 (11th Cir.1999).

The Supreme Court pointed to the well-established definition of a "final decision" as a decision that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree*, 531 U.S. at 86, 121 S.Ct. 513

(quotations omitted). The Court then held that the district court's order directing the parties to arbitrate and dismissing the plaintiff's claims with prejudice "plainly disposed of the entire case on the merits and left no part of it pending before the court." *Id.* The ability of a party to an arbitration to bring a later proceeding in a district court to enter judgment on an arbitration award or vacate or modify that award "does not vitiate the finality of the District Court's resolution of the claims in the instant proceeding." *Id.* On this basis, the Court held that the district court's order was final and appealable.

Of particular significance to the issue before us, the Supreme Court rejected the distinction between "embedded" and "independent" proceedings that we and many other courts of appeals had adopted. The Court noted that the embedded/independent distinction was not firmly established at the time of the enactment of FAAS 16(a)(3) with respect to cases "where the District Court both ordered arbitration and dismissed the remaining claims." *Id.* at 88, 121 S.Ct. 513. By contrast, the Court continued, the definition of "final decision" was firmly established at the time. *Id.* at 88, 121 S.Ct. 513. On this basis, the Court concluded that "where ... the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Id.* at 89, 121 S.Ct. 513.

The question presented in this case is whether the jurisdictional holding in *Green Tree*, where the action had been dismissed with prejudice, applies equally to a case such as this one that was dismissed without prejudice. Scott argues that a dismissal without prejudice is the "functional equivalent of a stay," as the *Smith* court noted, and as such does not dispose of the claims on the merits. Scott directs our attention to a footnote in *Green Tree* which stated that "[h]ad the District Court entered *601 a stay instead of a dismissal in this case, that order would not be appealable." *Green Tree*, 531 U.S. at 87, 121 S.Ct. 513 (citing 9 U.S.C. § 16(b)(1)).

The Supreme Court did not comment on whether a dismissal without prejudice should be treated as a stay or as a final order, nor did it address whether the district court should have entered a stay instead of a dismissal. The Court's opinion speaks generally of "dismissals" and does not indicate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



whether it hinges on the fact that the dismissal was with prejudice.    Nor does the statute provide guidance, as it does not differentiate between appeals of district court orders dismissing cases with or without prejudice.

. Blair argues that there is no valid distinction between a dismissal with prejudice and one without prejudice with regard to these proceedings. In both instances, there is nothing left for her to do but submit to arbitration, and nothing left for the District Court to do other than execute, modify, or vacate the ultimate arbitration award.    No justiciable claims remain for the District Court to address outside of the arbitrable claims.    Blair also argues that the case relied upon in Smith to find that a dismissal without prejudice is functionally equivalent to a stay, Communication Workers v. AT & T Co., 932 F.2d 199 (3d Cir.1991), is inapplicable.    In Communication Workers, the district court dismissed one set of claims with leave to amend due to pleading irregularities and dismissed another set of claims because they were arbitrable. Id. at 204.    We stated in that case that the district court's order dismissing the action because it was arbitrable was "functionally analogous to the grant of a stay in an ongoing proceeding pending the outcome of arbitration.... [t]hus, our result advances the laudable policy favoring arbitration over litigation."  Id. at 207 (citing Zosky, 856 F.2d at 561-62).    Because there were additional claims in that case not subject to arbitration that the district court gave leave to amend, that decision is distinguishable from the instant case where the District Court dismissed all of Blair's claims in favor of arbitration.

After the decision in Green Tree, at least three courts of appeals have had the opportunity to address whether a dismissal without prejudice is a final, appealable order, or should be treated as a non-appealable stay.    In Interactive Flight Technologies, Inc. v. Swissair Swiss Air Transport Co., 249 F.3d 1177 (9th Cir.2001), the district court had dismissed the complaint without prejudice and directed the parties to arbitrate in accordance with their agreement, and the court of appeals had previously dismissed the appeal for lack of jurisdiction.    The Supreme Court remanded and directed the Ninth Circuit to reconsider the issue in light of Green Tree. On remand, the Ninth Circuit held that the district court's decision to dismiss the

action without prejudice and order the parties to arbitrate was a final, appealable decision in accordance with Green Tree. The court noted that Green Tree overruled the Ninth Circuit's earlier decisions that had based their holdings on the distinction between embedded and independent proceedings and it instead used the traditional definition of a final order. Id. at 1179.    The court then proceeded to address precisely the issue presented here and rejected the distinction between dismissals with or without prejudice.

[A]ppellees ... suggest that the district court's dismissal in this case was not final simply because it was made without prejudice.    We reject this argument because the district court's order and judgment sufficiently show that the court intended to close this case without precluding the parties from bringing a new action after completing arbitration.    It is only in this sense that the dismissal was "without prejudice," and that is not enough to show that the dismissal was *602 interlocutory rather than an appealable final decision.

Id. (citing Green Tree, 121 S.Ct. at 520).

In a recent decision, the Court of Appeals for the Second Circuit reached the same conclusion, holding that a "dismissal without prejudice in favor of arbitration is an appealable 'final decision' under 9 U.S.C. § 16(a)(3) and that Green Tree has overruled our precedents that distinguish between 'independent' and 'embedded' actions for purposes of appealability." Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 91 (2d Cir.2002).    The court noted that Green Tree involved a dismissal with prejudice, unlike the dismissal without prejudice before it, but stated that "dismissals with and without prejudice are equally appealable as final orders.... There is thus no reason to think that a dismissal without prejudice is any less a 'final decision' under Green Tree than is a dismissal with prejudice." Id. at 93

The Eleventh Circuit held similarly.    In Employers Insurance of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316 (11th Cir.2001), the district court had dismissed each of the underlying actions in a construction contract case and granted the defendant's motion to compel arbitration.    The Eleventh Circuit characterized Green Tree as holding that a "district court order compelling arbitration and dismissing all other

Westlaw.

claims is 'final' within the meaning of § 16(a)(3), and therefore appealable, even when that order occurs in an 'embedded' proceeding involving both a request for arbitration and other claims for relief." Id. at 1321-22 (citing Green Tree, 121 S.Ct. at 520-21).    The court noted that the dismissal and direction to arbitrate left the district court with nothing to do but execute the judgment.    The court observed that although the "district court did not specify whether the dismissal was with or without prejudice," the "arbitration order clearly disposed of the entire case on the merits and left no part of it pending before the court.    Moreover, the district court could have, but did not, stay the case pending arbitration." Id. at 1322 n. 6. (citing Green Tree, 121 S.Ct. at 520 n. 2).

We agree with the reasoning in these cases.    The Green Tree decision draws a distinction between dismissals and stays, but does not draw any distinctions within the universe of dismissals.    The focus in Green Tree is on the traditional definition of a "final order."    Here, the District Court did not retain jurisdiction over any of Blair's claims as every claim was held to be arbitrable.    Because there is "nothing more for the court to do but execute the judgment," the District Court's order falls within the Supreme Court's definition of an appealable final order.    Although there remains the possible anomaly of different jurisdictional results depending on whether a district court dismisses or stays a case, the line between the two types of dispositions follows from the Supreme Court's language. [FN1]

    FN1. We have no reason to assume that a district
    court will enter a stay rather than a dismissal when
    all of the claims are arbitrable. Therefore, the issue
    may not arise.

We conclude that even though the District Court's order dismissed this case without prejudice and directed the parties to proceed with arbitration, the order was final and appealable. [FN2] We turn to Blair's challenge to the validity of the arbitration agreement.

    FN2. In light of our conclusion, we need not
    address Blair's alternative argument that this order
    is an appealable order under the collateral order
    doctrine.

## III.
## ARBITRATION AGREEMENT
### A. Standard of Review

[3][4] We review a grant of summary judgment de novo and must apply the *603 same test as the district court. Omnipoint Communications Enters. v. Newtown Township., 219 F.3d 240, 242 (3d Cir.2000).    A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).    The non-movant's allegations are to be taken as true, and when they "conflict with those of the movant, the former must receive the benefit of the doubt." Valhal Corp. v. Sullivan Assocs., 44 F.3d 195, 200 (3d Cir.1995) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976)).

The Supreme Court has held that in response to a motion for summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

### B. Validity of Arbitration Agreement

[5][6][7][8] Blair first argues that the arbitration agreement is not supported by adequate consideration and thus is not a binding, enforceable contract.    A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA. See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).    Before concluding that there is a valid contract under Pennsylvania law, the court must "look to:    (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." ATACS Corp. v. Trans World Communications, Inc., 155 F.3d 659, 666 (3d Cir.1998); see also Aircraft Guar. Corp. v. Strato-Lift, Inc., 103

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



283 F.3d 595
(Cite as: 283 F.3d 595, *603)

F.Supp.2d 830, 836 (E.D.Pa.2000) ("[C]ontracts are enforceable when parties reach a mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient definiteness to be specifically enforced."). "Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.' " Channel Home Centers v. Grossman, 795 F.2d 291, 299 (3d Cir.1986) (quoting Curry v. Estate of Thompson, 332 Pa.Super. 364, 481 A.2d 658, 661 (1984)). Without consideration, a contract is unenforceable. Id. at 298-99.

[9][10][11] Blair contends that the agreement was unenforceable for lack of mutuality of consideration because Scott did not agree to be bound by the arbitration agreement. However, the arbitration agreement specifically states that "if any dispute arises from your employment with Scott, you and Scott agree that final resolution of the dispute will occur exclusively in a final and binding arbitration proceeding." App. at 49. The language of the agreement is clear that both parties agreed to be bound to the arbitration agreement and Blair admitted to having read that language when she signed the acknowledgment shortly after receipt of the revised handbook containing the arbitration clause. When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced. See, e.g., Michalski v. Circuit City Stores, Inc., 177 F.3d 634, 637 (7th Cir.1999); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, *604 378 (4th Cir.1998). Moreover, a contract need not have mutuality of obligation as long as the contract is supported by consideration. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 180 (3d Cir.1999) (finding contract enforceable where one party had option to litigate arbitral issues in court, while the other party was required to invoke arbitration, because mutuality is not required where the requirement of consideration is met).

Blair contends that Scott's unilateral ability to alter the agreement renders the agreement illusory. Blair's acknowledgment of the agreement reads in relevant part,

I understand that nothing in this Handbook can be modified or deleted, nor can anything be added in any way by oral statements or practice. Only the

Executive Committee of Scott Specialty Gases can change this Handbook, and the change must be in writing. If Scott Specialty Gases makes any material changes, it will give me a copy of them, and by remaining employed by Scott Specialty Gases thereafter I will be deemed to have accepted these changes.

App. at 23.

In support of her argument, Blair points to the decision of the Court of Appeals for the Sixth Circuit in Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306 (6th Cir.2000). In that case, the court concluded that the arbitration agreement was illusory and unenforceable because the agreement gave the provider of the arbitration services the unlimited right to modify the arbitration rules without giving notice to the employee or gaining the employee's consent. The court held that " '[w]here a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement.' " Id. at 316 (quoting 1 Samuel Williston, Contracts § 43, at 140 (3d ed.1957)).

The District Court here distinguished Floss on the ground that Scott's Executive Committee retained the right to alter the material aspects of the agreement only after putting the change in writing, providing a copy to the employees, and allowing the employees to accept the change by continuing employment. Scott's right is much more confined than the unfettered discretion of the arbitration provider in Floss who could make changes to the agreement without notice to or consent of the employees. Although Blair argues that Scott has the right of "unilateral modification" to its handbook, Br. of Appellant at 13 n. 1, in fact that is limited to non-material changes to the handbook. It is unlikely that the unfettered discretion to modify the agreement as to arbitration would be categorized as non-material and we need not hypothesize about that possibility. See, e.g., The American Heritage College Dictionary 837 (3d ed.1993) (defining "material" as "[b]eing both relevant and consequential"). [FN3]

FN3. Because we conclude that Scott's promise to submit to arbitration serves as consideration, we need not consider Blair's argument that her continued employment was not adequate consideration for her agreement to arbitrate but we

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



283 F.3d 595
(Cite as: 283 F.3d 595, *604)

note that such an argument is questionable in light of decisions that have found that continued employment may serve as consideration. See, e.g., Hightower v. GMRI, Inc., 272 F.3d 239, 243 (4th Cir.2001); Venuto v. Ins. Co. of N. Am., No. 98-96, 1998 WL 414723, at *5, 1998 U.S. Dist. LEXIS 11050, at *14-*15 (E.D.Pa. July 22, 1998) (holding that an at-will employee's continued employment provides adequate consideration for an arbitration provision).

We thus conclude that the arbitration agreement satisfies these basic contract principles and is not unenforceable on those grounds.

### C. Arbitrator's Fees

[12] The most far-reaching issue in this case, and the one that prompted filing *605 of amicus briefs by the EEOC and the PHRC, is the effect of the provision in the agreement to arbitrate that requires Blair to pay one-half of the arbitrator's fees. Blair v. Scott Specialty Gases, No. 00-3865, 2000 WL 1728503, at *7, 2000 U.S. Dist. LEXIS 16809 at *20-*21 (E.D.Pa. Nov. 22, 2000). The arbitration agreement provides that "[i]n order to make the arbitration procedure readily available to its employees, Scott will pay one hundred percent (100%) of any administrative fee required by the AAA [American Arbitration Association] to initiate the arbitration process. Other expenses will be paid by the parties as set forth in the applicable AAA rules." App. at 49. The AAA rules provide that the "arbitrator's compensation shall be borne equally by the parties unless they agree otherwise, or unless the law provides otherwise." App. at 112. The parties have not agreed to another arrangement, and it is therefore uncontested that Blair is required to pay one-half of the arbitrator's compensation. The AAA rules also provide, though the parties do not address, that other expenses of the arbitration will be borne equally by the parties including the travel expenses of the arbitrator, AAA representatives, and witnesses produced at the direction of the arbitrator.

[13] The District Court rejected Blair's argument that the agreement is unenforceable as a result of the fee-sharing provision. While this court must be mindful of the "liberal federal policy favoring arbitration agreements," Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme

Court has also made clear that arbitration is only appropriate "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum" allowing the statute to serve its purposes. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (alteration in original) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Arbitration costs are directly related to a litigant's ability to pursue the claim. In Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Supreme Court acknowledged that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." Id. at 90, 121 S.Ct. 513.

In Green Tree, the plaintiff alleged that the financial institutions that had financed her mobile home violated the Truth in Lending Act and the Equal Opportunity Credit Act. The district court compelled arbitration. Plaintiff appealed, arguing that the arbitration agreement's silence on the subject of fees created a risk that she would be required to bear a prohibitive proportion of the arbitration costs, which would force her to forego arbitration and relinquish her rights. Id. The Eleventh Circuit agreed and reversed. When the matter reached the Supreme Court, it held that the articulated risk to the plaintiff was too "speculative" to justify invalidating the arbitration agreement. Id. at 91, 121 S.Ct. 513.

Prior to the decision in Green Tree, the decisions of several courts of appeals had expressed concern about fee-splitting arrangements in employment arbitration agreements. For example, in Cole v. Burns International Security Services., 105 F.3d 1465 (D.C.Cir.1997), the court wrote,

[W]e are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case. Under Gilmer, arbitration is supposed to *606 be a reasonable substitute for a judicial forum. Therefore, it would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



283 F.3d 595
(Cite as: 283 F.3d 595, *606)

required to pay for a judge in court.
Id. at 1484.

The Cole court held that where arbitration has been imposed by the employer, the employer may not require the employee to pay all or part of the arbitrator's fees in order to pursue statutory claims under Title VII. Id. at 1484-85. The parties in Cole had stipulated that arbitrator's fees vary between $500 to $1000 or more per day. Id. at 1480 & n. 8 (citing several articles regarding the cost of arbitration). In Cole, as in Green Tree, the arbitration agreement was silent on the allocation of the arbitrator's fees between the parties, and the court concluded that the employer alone must pay. Id. at 1481. The opinion does not indicate whether the court had specific proof of the claimant's financial position but does note that the job from which Cole was fired was that of a security guard, id. at 1469, and that "[t]hese fees would be prohibitively expensive for an employee like Cole, especially after being fired from his job." Id. at 1484.

The Tenth Circuit reached a similar result in Shankle v. B-G Maintenance Management of Colorado, Inc., 163 F.3d 1230, 1234-35 (10th Cir.1999). In Shankle, as in Cole, the arbitration agreement covered the employment relationship, but here the arbitration agreement was specific about the costs and required the employee to pay one-half of the arbitrator's fees. The court held that requiring payment from someone who cannot afford to pay "undermines the remedial and deterrent functions of the federal anti-discrimination laws." Id. at 1235. "[A]n arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." Id. at 1234. The court noted that arbitration generally provides such an alternative but that the presence of a fee-splitting provision calls the accessibility of that alternative into question. Id. at 1234 n. 3. In Shankle, the parties had submitted their claims to arbitration and received a letter from the arbitration provider specifying the costs of arbitration. Id. at 1232. At that point, the employee decided arbitration would be too expensive, canceled the arbitration, and filed suit in federal court. Id. The court of appeals concluded that Shankle, a former janitor, could not afford such a fee and that "it [was] unlikely other similarly situated employees could either." Id. at

1234-35.

The District Court in the instant case refused to apply the decision in Shankle, finding Blair's case less compelling than Shankle's because Blair had not submitted any evidence to demonstrate the amount of the arbitrator's fees, while Shankle had received a letter from the arbitrators indicating their rates (but not the time they expected to spend on the case). Blair, 2000 WL 1728503, at *7, 2000 U.S. Dist. LEXIS 16809, at *20.

Scott cites Williams v. Cigna Financial Advisors Inc., 197 F.3d 752 (5th Cir.1999), in support of its position that the fee-sharing provision does not invalidate the agreement. Williams is not entirely analogous to the case before us. In Williams, the claimant went to arbitration, an award was issued, and then the claimant challenged his obligation to pay forum fees. Although the court noted the requirement that arbitration provide an adequate substitute for a judicial forum, it held that Williams did not demonstrate that the arbitrator's order to pay one-half of the fees *607 prevented him from having a "full opportunity to vindicate his claims effectively or prevented the arbitration proceedings from affording him an adequate substitute for a federal judicial forum," since he did in fact seek a resolution through arbitration. Id. at 764. The court noted that there was no evidence that the costs were "prohibitively expensive" as Williams had testified in his arbitration hearing that his income was in excess of six figures. Id. at 764-65.

Similarly, in Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir.1999), the court rejected a claimant's argument that the possibility that the arbitrator may require her to bear expensive forum fees should invalidate the agreement. Id. at 15-16. The court reasoned that the levying of fees is often waived by the arbitrator and can always be reviewed in a judicial forum. Id. In that case, the applicable arbitration rules did not require the claimant to pay the arbitrator's fees, but only presented the possibility that fees would be assessed against her. Id. (noting also that "arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court"); see also Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 366 (7th Cir.1999) (following reasoning in Rosenberg).

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

283 F.3d 595
(Cite as: 283 F.3d 595, *607)

Although the Supreme Court's decision in Green Tree was decided in a context different from that of an employment dispute, it offers the closest guidance on the issue of arbitration fees.    The Supreme Court in Green Tree placed the initial burden of proof on the party resisting arbitration to demonstrate that arbitration would be prohibitively expensive by showing "the likelihood of incurring such costs." Id. at 92, 121 S.Ct. 513.   The Court found that the plaintiff had not met her burden of proving the costs of the arbitration or her inability to pay.    However, the Court suggested an eventual burden shift when it stated that "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss[ ] for ... neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point." Id.

Scott argues that no burden shift is required under Green Tree, but as the language quoted above demonstrates, a shift is contemplated.    The Court simply never reached the level of proof required to shift the burden because the plaintiff in that case failed to present evidence to show she would "be saddled with prohibitive costs." Id. at 91, 121 S.Ct. 513.    The arbitration agreement was silent on the allocation of fees and the parties had not designated a particular arbitration association or arbitrator to resolve the dispute. 531 U.S. at 90 n. 6, 121 S.Ct. 513. The Green Tree Court concluded that the AAA informational material plaintiff provided (which did not discuss fees), an article citing average fees for arbitrators, and her citations to fees referenced in other court decisions, were insufficient proof of likely costs in the case before it.  Id. at 91 n. 6, 121 S.Ct. 513.

The Green Tree decision thus informs us that claimants have the burden to come forward with some evidence to show the projected fees that would apply to their specific arbitrations.   We draw support for that inference from the Court's rejection of the position of the four dissenting justices that the burden should be on the defendant who has superior information about the cost of pursuing arbitration to show that the arbitral forum will not be financially inaccessible. 531 U.S. at 96, 121 S.Ct. 513 (Ginsburg, J., dissent).

In this case, the District Court, in a decision that

predated Green Tree, held *608 that Blair had not met her burden since she failed to offer proper evidence of her inability to pay or of the amount of the arbitrator's fees.  The court also noted that Blair did not produce any evidence that she attempted to reach an agreement with Scott providing that Scott would pay her share of the fees.  Blair, 2000 WL 1728503, at *8, 2000 U.S. Dist. LEXIS 16809, at * 21.

Blair argues that the affidavit she submitted setting forth her financial status comprised sufficiently competent evidence that she could not afford to pay the arbitrator's fees.  Her affidavit states that she "can't afford to pay the costs of taking [her] case to arbitration" and sets forth the amounts of her assets (her car and house), monthly income, debt, and monthly bills.    App. at 120.   The affidavit indicates that her monthly bills exceed her monthly income by $182 per month and that her debt exceeds her assets by $57,000. App. at 120.   However, Blair did not attach any documents to support these figures, such as copies of bank statements and bills.

In rejecting Blair's submission as inadequate, the District Court cited cases holding that conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.  Blair, 2000 WL 1728503, at *7-*8, 2000 U.S. Dist. LEXIS 16809, at *20-*21 (citing Wells v. Shalala, 228 F.3d 1137, 1144 (10th Cir.2000); Taylor v. Monsanto Co., 150 F.3d 806, 809 (7th Cir.1998); Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1109 (8th Cir.1998);    Lindemann   v.   Empress   Casino Hammond Corp., No. 97-C-8938, 1999 WL 59839, at *4 (N.D.Ill. Jan.27, 1999)).   In order to satisfy the standard for summary judgment "the affiant must ordinarily set forth facts, rather than opinions or conclusions.     An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden." Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir.1985) (quotation omitted).

Also missing from Blair's submission is any information about the estimated cost of arbitration, such as the fees charged by AAA arbitrators in her area.  Blair plausibly argues that the fact that her affidavit shows that her net income is negative indicates that she could not afford to pay any costs of arbitration, no matter how much or how little they prove to be, but Green Tree tells us we need

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

283 F.3d 595
(Cite as: 283 F.3d 595, *608)

greater proof in order to find Blair's burden satisfied.

The EEOC, appearing as an amicus, suggests that in light of Green Tree we must remand to the District Court for further factual inquiry on the issue of arbitrator's fees. The EEOC emphasizes the importance of addressing this issue pre-arbitration since a decision to foreclose access to a judicial forum exposes claimants to potentially large arbitration costs that might deter them from pursuing arbitration at all. It reiterates the Supreme Court's statements in Gilmer that individuals may be required to arbitrate statutory claims of discrimination but that the arbitration agreement must not force a party to "forgo the substantive rights afforded by the statute." Gilmer, 500 U.S. at 26, 111 S.Ct. 1647 (quoting Mitsubishi, 473 U.S. at 628, 105 S.Ct. 3346). If Blair is ordered to arbitration without a full inquiry, she may be forced to relinquish her rights under the discrimination statute due to her inability to afford the cost of defending those rights.

Because the District Court did not have the advantage of the Green Tree opinion, its decision, which accurately anticipated much of the Supreme Court's later decision, nonetheless did not fully explore the cost issue. As the EEOC notes, Green Tree established the right of a claimant to invoke discovery procedures in the pre-arbitration proceeding in order to assist *609 the claimant in meeting her burden of showing the likelihood of bearing prohibitive costs. Although discovery is ordinarily not undertaken at such an early stage of a proceeding that is governed by an arbitration agreement, there is language in the Supreme Court's opinion faulting the claimant for not presenting evidence "during discovery." Green Tree, 531 U.S. at 92, 121 S.Ct. 513. Additionally, the EEOC cites an interchange during oral arguments before the Supreme Court that indicates that the Supreme Court assumed that discovery was available. Br. of EEOC at 12. [FN4] Without some discovery, albeit limited to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay, it is not clear how a claimant could present information on the costs of arbitration as required by Green Tree and how the defendant could meet its burden to rebut the claimant's allegation that she cannot afford to share the cost. See, e.g., Livingston v. Associates Fin., Inc., 2001 WL 709465, at *2

(N.D.Ill. June 25, 2001) (holding that the only way a claimant can uncover the reasonably specific facts required by Green Tree is through limited discovery since "it seems axiomatic that, if the Supreme Court places a burden of proof on a party, then that party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove").

FN4. The EEOC quotes excerpts from the oral argument before the Supreme Court in Green Tree, in which the Court asked the claimant why she did not " 'make any showing' in the district court on the issue of arbitration costs ... criticized the claimant for not seeking 'discovery going to the costs of arbitration' ... opined that 'proof could be offered in the district court, before the arbitration' on the fees issue ... [and] asked whether the claimant could have sought 'discovery' concerning 'the costs of arbitration.' " Br. of EEOC at 12 (quoting Transcript of Oral Argument in Green Tree Financial Corp. v. Randolph, 2000 WL 1513141, at *35-*39, *54 (2000)).

Several cases since Green Tree have tried to articulate what a claimant needs to show in order to meet her burden on this issue. In Bradford v. Rockwell Semiconductor Systems Inc., 238 F.3d 549 (4th Cir.2001), the court held that the determination of whether fee-splitting renders an agreement unenforceable must be examined on a case-by-case basis rather than through the application of a broad per se rule against all fee-splitting. Id. at 556. The court stated,

[T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims. Id.

The court cautioned that these objections should be raised in court prior to arbitration. Id. at 558 n. 7. Its encouragement of a pre-arbitration, case-by-case evaluation of the claimant's expected costs and ability to pay necessarily implies that some factual inquiry will be authorized. Id. at 556 n. 5. The court found that Bradford had not demonstrated that he was unable to pay or that he was deterred from

283 F.3d 595
(Cite as: 283 F.3d 595, *609)

arbitration since Bradford, unlike Blair, had initiated arbitration before litigation and proceeded through a full arbitration hearing on the merits of his claim, demonstrating conclusively that he was not deterred from entering into arbitration. Id. at 558. Evidence in his case also showed that he earned a salary of $115,000 in addition to yearly bonuses prior to his discharge. Id. at 558 n. 6.

*610 A number of district courts have looked at these issues, including courts in this circuit. See, e.g., Giordano v. Pep Boys--Manny, Moe & Jack, Inc., No. Civ. A. 99-1281, 2001 WL 484360, at *6 (E.D.Pa. Mar.29, 2001) (finding Green Tree does not "mandate a searching inquiry into an employee's bills and expenses," that the focus should be on the costs of arbitration, and when the agreement required the claimant who earned only $400 a week to pay half the costs of arbitration, the agreement was unenforceable and the employer must bear all of the costs); Goodman v. ESPE America, Inc., No. 00-CV-862, 2001 WL 64749, at *4-*5, 2001 U.S. Dist. LEXIS 433, at *13-*14 (E.D.Pa. Jan.19, 2001) (rejecting a per se rule that fee-splitting is unenforceable and finding that claimant who earned a base salary of $80,000 was able to afford the costs of arbitration).

The EEOC suggests that the existence of the fee-allocation provision requiring Blair to pay one-half of the arbitrator's fees satisfies her threshold burden of presenting evidence of the "likelihood" of incurring "prohibitive" costs, and that the burden has now shifted to Scott to show contrary evidence. In the alternative, it argues that the existence of this provision is sufficient to trigger Blair's right to discovery on this issue. The EEOC argues that remand is appropriate in this case, where it was not in Green Tree, because in Green Tree the arbitration agreement was silent on the subject of fees, rendering the risk that the claimant "will be saddled with prohibitive costs" too speculative, whereas here the claimant is clearly required to pay one-half of the arbitrator's fees.

Blair would have us hold that the mere existence of a fee-splitting provision in an agreement would satisfy the claimant's burden to prove the likelihood of incurring prohibitive costs under Green Tree, 531 U.S. at 92, 121 S.Ct. 513. We decline to do so. It would be inconsistent with Green Tree and would run counter to the strong federal preference for

arbitration and the liberal policy regarding arbitration. Accord Bradford, 238 F.3d at 557.

However, we agree with the EEOC that a remand is appropriate in light of Blair's affidavit of her limited financial capacity, the evidence that the AAA would preside over the arbitration, and the AAA rules requiring the parties to bear equally the costs of the arbitrator's fees. Limited discovery into the rates charged by the AAA and the approximate length of similar arbitration proceedings should adequately establish the costs of arbitration, and give Blair the opportunity to prove, as required under Green Tree, that resort to arbitration would deny her a forum to vindicate her statutory rights. Scott should also be given the opportunity to meet its burden to prove that arbitration will not be prohibitively expensive, or as has been suggested in other cases, offer to pay all of the arbitrator's fees.

D. Great Western

[14] The District Court relied upon this court's decision in Great Western Mortgage Corp. v. Peacock, 110 F.3d 222 (3d Cir.1997), to find Blair's claims regarding the statute of limitations and waiver of a jury trial right to be issues for the arbitrator and not the court. In Great Western, this court, finding no contrary state policy, rejected the plaintiff's argument that her arbitration agreement was void as a matter of public policy. It left to the arbitrator the decision of whether the plaintiff waived any rights under state laws. Id. at 231. Blair argues Great Western was in error and should be reversed. The Great Western decision has not been overruled and may only be reversed by this court en banc. See 3d Cir. Internal Operating P. 9.1. It is this "court's tradition that a panel may not overrule or disregard a prior panel decision unless that decision has been overruled *611 by the Supreme Court or by our own court sitting en banc." Patriot Party v. Allegheny County Dep't of Elections, Nos. 96-3677, 96-3359, 1998 WL 313262, 1998 U.S.App. LEXIS 12688, at *6 (3d Cir. June 15, 1998) (citing Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44, 46 (3d Cir.1991)).

Blair contends in her reply brief that Great Western was implicitly overruled by Green Tree. She argues that the decision in Great Western