UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                             :

JEFFREY S. VAUGHN, individually and on  :
behalf of those Class Members similarly situated,  :    Case No. 04 Civ. 8391 (DLC)

                                             :

                      Plaintiff,        :

                                           :

                 -against-          :

                                           :

LEEDS, MORELLI & BROWN, P.C., LEEDS,  :
MORELLI & BROWN, L.L.P., LEEDS &  :
MORELLI, LEEDS, MORELLI & BROWN,  :
PRUDENTIAL SECURITIES, INC.,  :
PRUDENTIAL FINANCIAL, INC., WACHOVIA  :
CORPORATION, WACHOVIA SECURITIES,  :
LLC, LENARD LEEDS, STEVEN A. MORELLI,  :
JEFFREY K. BROWN, JAMES VAGNINI,  :
FREDERIC DAVID OSTROVE, ROBERT JOHN  :
VALLI, JR., DISCRIMINATION ON WALL  :
STREET, INC. DISCRIMINATION ON WALL  :
STREET, MANHATTAN, INC., JOHN DOES, 1-  :
10 AND JANE DOES, 1-10 a fictitious  :
designation for presently unknown licensed  :
attorneys, professionals and/or unknown persons  :
or entities,  :

                                           :

                      Defendants.     :

                                         :

-------------------------------------------------------------- x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT THE STAY, TO VACATE THE ARIBTRATION AWARD, AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO CONFIRM

## PRELIMINARY STATEMENT

Plaintiff, Jeffrey S. Vaughn respectfully submits this Reply Memorandum of Law in response collectively to the opposition submitted by Leeds, Morelli, and Brown, P.C. (together with its individual attorneys, the "Leeds Respondents") and Prudential Securities, Inc. (together with Prudential Financial, Inc., "PSI"), and in further support of his motion to lift the stay, to vacate an arbitration award issued by the National Association of Securities Dealers, Inc. (the "Award"), and in opposition to Defendants' cross-motion to confirm that same award. Mr. Vaughn respectfully seeks that the stay in this case be lifted, vacatur of the Award granting relief on the claims against him, and that Defendants' motion to confirm the Award be denied.

## ARGUMENT

### I.
### THE DEFENDANTS DO NOT DISPUTE THAT THE STAY PENDING THE RESOLUTION OF ARBITRATION SHOULD BE LIFTED

The Leeds Defendants agree that the Court's stay of action should be lifted. (Leeds Memorandum at 12). The PSI Defendants fail to address Plaintiff's Motion to Lift the Stay in their Memorandum. Accordingly, the stay should be lifted.

### II.
### MR. VAUGHN DOES NOT ARGUE THAT THE AWARD LACKED SUPPORT OR THAT IT DEMONSTRATED MANIFEST DISREGARD OF THE EVIDENCE

In their respective Memoranda, both Defendant parties misconstrue and misrepresent Plaintiff's argument. Mr. Vaughn does not contend that the award lacked support, or that the Panel acted in "manifest disregard of the evidence;" rather, Mr. Vaughn contends that a review of the record demonstrates that he is the only party who testified as to his intent, and thus the

Panel was irrational in concluding that he intended to waive his right to a class action – in clear contravention to his testimony.

In their Memorandum, the PSI Defendants misstate Mr. Vaughn's argument in his Motion to Vacate, contending that Mr. Vaughn argued that the award should be vacated because "the panel's decision lacks support." (PSI Memorandum at 16). The PSI Defendants respond that arbitrators need provide only a colorable justification for the outcome, and that the arbitrators "need not even explain the rationale underlying the award." (PSI Memorandum at 13). However, this is a misrepresentation of Mr. Vaughn's initial argument. Mr. Vaughn does not seek vacatur because the Award failed to fully and clearly delineate the basis for the decision, but rather because the Panel's conclusion was reached based on evidence which could only support the opposite conclusion: namely, that the parties did not agree to waive class actions.

The Leeds Defendants likewise mischaracterize Mr. Vaughn's argument as based on a "manifest disregard of the evidence." (Leeds Memorandum at 7). Mr. Vaughn makes no such argument.

## III.
## THE AWARD WAS IRRATIONAL AND UNSUPPORTED BY THE RECORD

Given the one-sided nature of the record regarding intent, it was irrational for the Panel to find against Mr. Vaughn – the sole party to testify as to his intent. "In light of the strong national policy favoring arbitration, however, courts are extremely reluctant to overturn arbitration decisions...Only an 'irrational' award may be vacated." Prudential-Bache Sec., Inc. v. Caporale, 664 F.Supp. 72, 74 (S.D.N.Y.1987).

In Prudential-Bache, the court stated that, for example, "an arbitration award finding that an employee was terminated both wrongfully and for cause would be sufficiently irrational

as to require a reviewing court to vacate the award." Mr. Vaughn's situation is similar to that delineated by the court: while it is unquestionably irrational to find both wrongful termination and for cause termination, it is, by analogy, comparably irrational to find that both parties intended to waive their right to a class action upon the evidence of one party that he did not intend to do so.

The PSI Defendants cite Porzig v. Dresdner, Kleinwort, Benson, North America LLC, No. 06-1212-cv, 2007 WL 2241592 (2d Cir. Aug. 7, 2007) for the premise that irrationality is not a basis for vacatur. (PSI Memorandum at 15). However, the court in Porzig actually concluded that the arbitration award at issue should be vacated. Furthermore, the quotation cited and relied upon by the PSI Defendants is merely dicta. The Second Circuit has held that, "not every observation contained in an opinion of this Court deserves to be regarded as the law of this Circuit. Opinion authors frequently express thoughts peripheral to the holding of a case, and these thoughts do not bind the Circuit, nor even the concurring judges on the panel." U.S. v. Oshatz, 912 F.2d 534, 540 (2d Cir. 1990). If every phrase in an opinion were strictly binding, "it would be inconsistent with the time-honored tradition of crafting opinions that seek not only to pronounce results but also to explain reasoning, to stimulate informed commentary, and, on occasion, to *provoke future consideration of emerging issues*." Id. (emphasis added) Accordingly, the dicta in Porzig is not binding on this Court.

The Leeds Defendants wrongly argue that Mr. Vaughn's testimony supports their erroneous position that there is adequate evidence in the record. First, in their Memorandum, the Leeds Defendants state that "Vaughn acknowledged that he was fully aware of what a class action was at the time of his settlement." (Leeds Memorandum at 11). In fact, Mr. Vaughn stated simply that he had asserted an individual claim, and then recited, at Mr. Harper's prompting, a definition of a class action, explaining that this was "probably" what he thought a

class action was back in 1998, but nowhere claims to have been "fully aware of what a class action was at the time of his settlement," as Defendants' expressly state. Mr. Vaughn's explanation in his testimony is far from constituting any semblance of "complete awareness" as to its definition and/or legal implication.

> Q.    And you were asserting an individual claim, a claim unique to you, correct?
>
> A.    Correct.
>
> Q.    Not on behalf of a class, if you will, right?
>
> A.    That's correct
>
> Q.    What is a class action?
>
> A.    A class action is a group of people coming together for one specific issue for a common cause that would be a class action in my view.
> Q.    Did you know what a class action was back in 1998?
>
> A.    Again, that's probably I would have thought the same thing.
> (Exhibit B, p. 77:14-25, 78:1-5).

Second, while Mr. Vaughn signed the Settlement Agreement and attested to its "voluntary execution," it is clear from his testimony that he did not "knowingly" enter the contract to the extent that he did not understand all of its terms, and as demonstrated below, was not given the opportunity to understand all of its terms. Mr. Brown presented the Settlement Agreement to Mr. Vaughn in the men's room at Tavern on the Green. Mr. Brown did not explain the Agreement to Mr. Vaughn or review any of the provisions with him.

> A.    Again, I understand what or understood what the contract represented. I did not understand all of the terms of the contract.
>
> Q.    What did this contract, this contract, the written contract, what did it represent?
>
> A.    What it represented to me was that Prudential – I have agreed to settle with Prudential on X amount of dollars, and that was it, that's what it means to me.

(Exhibit B, p. 98:6-17)

\*\*\*

Q.     So I just want to be clear, you saw [the Settlement Agreement] for the first time that was the day you signed it?

A.     The first time I saw my agreement was in the bathroom of Tavern on the Green that's where I signed it.
(Exhibit B, p. 50:10-15)

\*\*\*

Q.     How long did you review it in the men's room?

A.     Briefly, maybe three or four minutes or five minutes tops.

Q.     Was Mr. Brown there with you?

A.     Yes.

Q.     Did he say anything to you?

A.     Pretty much, he just went over it to some point and just made it clear to me that this is somewhat of a gag order for the most part. Just, you can't say anything, and you can't come back to Prudential and go public which I guess at the time we were trying, we wanted to make this public. And they said that if you sign this you can't go public. That was the gist of the conversation.
(Exhibit B, p. 51:18-25, 52:2-10).

Consequently, it is clear that Mr. Vaughn at no point in the record admitted that he "knowingly entered the Settlement Agreement." (Leeds Memorandum at 11). Moreover, as the record reflects, Mr. Vaughn never acknowledged that he was "fully aware of what a class action was at the time of his settlement." (Id.).

Finally, the Leeds Defendants argue that there was a "great deal" of "substantive evidence" before the Panel, in the form of the Settlement Agreement which incorporated the NASD rules. The Leeds Defendants argue:

"The single most significant evidence before the Panel was the legally enforceable Settlement Agreement, which contained the sweeping arbitration

> provision incorporating the NASD rules.  Indisputably, the NASD Rules
> included a proscription against maintaining class action arbitration…"
> (Leeds Memorandum at 10)

The NASD Rules, however, also permit the Panel to dismiss the matter and refer the parties to

their judicial remedies without prejudice.  Furthermore, the Leeds Defendants completely

disregard the Court's ruling that the singular role of the Panel was to "interpret the agreement

and decide what the parties' intentions were."  (September 5, 2006 Transcript of Proceedings

in *Vaughn v. Leeds, Morelli & Brown, P.C., et al.,* S.D.N.Y. Case No. 04 Civ. 08391 (DLC), p.

4:20-22)(Bortnick Aff. Ex. B).  Thus, any determination by the Panel beyond determining the

parties' intentions is in contravention of the Court's mandate as to its authority.

**IV.**
### THE ARBITRATION AWARD MUST BE VACATED PURSUANT TO 9 U.S.C. §10(d) BECAUSE THE ARBITRATORS EXCEEDED THEIR POWERS UNDER THE FAA BY ACTING IRRATIONALLY

The Second Circuit has found that arbitrators may be said to have exceeded their

powers under 9 U.S.C. 10(d) if they reach an irrational result.  See Marcy Lee Mfg. Co. v.

Cortley Fabrics Co., 354 F.2d 42, 43 (2d Cir. 1965) (finding that under federal law, 9 U.S.C.

§10(d), "as long as arbitrators remain within their jurisdiction and do not reach an irrational

result, they may 'fashion the law to fit the facts before them' and their award will not be set

aside because they erred in the determination or application of the law'"(quoting Matter of

Exercycle Corp., 9 N.Y.2d 329, 336-37 (1961)). The Marcy court concluded that federal law is

the same as New York law on the subject of vacating an arbitration award: the court in Marcy

followed In re Exercycle Corp. which in turn relied on In re Nat'l Cash Register Co., wherein

the Court of Appeals concluded that arbitrators may be said to have 'exceeded their powers'

under §1462(4) of the New York Civil Practice Act (CPLR) "only if they gave a completely

irrational construction to the provisions in dispute…"  See In Re Nat'l Cash Register Co., 8

N.Y.2d 377, 383 (1960) (CPLR §1462(4) states that an individual may object to the confirmation of an arbitration award because of an "act of arbitrators in exceeding their powers or imperfectly executing them"); see also In re I/S Stavborg v. Nat'l Metal Converters, Inc., 500 F.2d 424, 430 n.12 (2d Cir. 1974) ("The language of 9 U.S.C. §10(d) tracks the language of 1462(4) exactly").

Moreover, in Refino v. Feuer Transportation, Inc., the Southern District stated in dicta the possibility that an award could be vacated for lacking rationality under Section 10(d) of the FAA, though stating that this was not at issue since the Arbitrators in that case had acted rationally. See Refino v. Feuer Transportation, Inc., 480 F.Supp. 562, 565 n.3 (S.D.N.Y. 1979) ("Arguably...this Court could apply an 'irrationality' test and vacate this arbitration award under 9 U.S.C. §10(d)).

Consequently, where as here, Mr. Vaughn presented ample evidence to the Panel concerning his intent at the time of entering the Agreement, and Defendant failed to put forth any evidence whatsoever, other than two exhibits which did not address the issue decided, the decision reached by the arbitrators in this proceeding was irrational, and thus may be vacated, in the alternative, under 9 U.S.C. §10(d).

## V.
## DEFENDANTS' CROSS-MOTION TO CONFIRM THE ARBITRATION AWARD MUST BE DENIED

As previously stated, according to the August 12, 2005 Order, the singular role of the Panel was to "interpret the agreement and decide what the parties' intentions were." (September 5, 2006 Transcript of Proceedings in *Vaughn v. Leeds, Morelli & Brown, P.C., et al.*, S.D.N.Y. Case No. 04 Civ. 08391 (DLC), p. 4:20-22)(Bortnick Aff. Ex. B) Although, the Panel's May 10, 2007 Award states that it is based on 'the pleadings, the testimony and

evidence presented at the hearing,' (PSI Memorandum at 17), this is illogical in light of the fact that the *only* evidence presented with respect to intent was Mr. Vaughn's testimony. Thus, while Defendant is correct in asserting that "an arbitration award must be confirmed if there is even 'a barely colorable justification for the outcome reached by the arbitrators'" (PSI Memorandum at 16, citing D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006)), here, the Panel's award completely lacks even a "colorable justification," as it is improbable for the Panel to find in favor of the Defendants, when no evidence as to the Defendants' intent was set forth at the hearing.

Additionally, the PSI Defendants maintain that Mr. Vaughn's testimony "supports the panel's decision." (PSI Memorandum at 18). This is simply not true: as previously recited, Mr. Vaughn presented the following testimony regarding his intent at the time of signing the Agreement:

> Q.    Did you have the intent to waive a class action when you read [the Settlement Agreement]?
>
> A.    No.
> (Bortnick Aff., Exhibit B, p. 53:12-14)
>
> Q.    At the time you signed this agreement, did you believe that you were waiving your rights to bring a class action based upon this agreement?
>
> A.    No, and I didn't give it any thought either.
> (Bortnick Aff., Exhibit B, p. 53:18-23).

The Leeds Defendants cite Wallace v. Buttar, 378 F.3d 182 (2d Cir. 2004) for the applicable legal standard for vacatur of arbitration awards. (Leeds Memorandum at 8). This case provides that an arbitrator's decision must be able to be inferred from the facts of the case in order for it to be confirmed. Id., at 193. (internal citations omitted) Here, the Panel's

decision cannot be inferred from the facts presented. Therefore, the Panel's award cannot be confirmed.

Moreover, contrary to what the Leeds Defendants assert, a court is not required to confirm the Panel's Award. The Leeds Defendants rely upon Appel Corp. v. Katz, 217 Fed. Appx. 3 (2d Cir. 2007), which stands instead for the premise that *a colorable justification is required for confirmation*, and does not require courts to confirm arbitration awards under any circumstances.

In sum, there is not a "barely colorable justification" for the Panel's ruling that Mr. Vaughn waived his right to bring a class action in court. Accordingly, Defendants' request that the award be confirmed must be denied.

## CONCLUSION

For all the foregoing reasons, Mr. Vaughn respectfully requests that the stay pending arbitration be lifted, that the Court vacate the arbitration award, and that the Court deny Defendants' cross-motion to confirm the arbitration award. Further, Mr. Vaughn respectfully requests that the Court grant him such other and further relief as the Court deems just and proper.

Dated: New York, New York
       October 10, 2007

                                        Respectfully submitted,

                                        LIDDLE & ROBINSON, L.L.P.

                                        By: _____
                                            Blaine H. Bortnick (BB 3686)
                                        Attorneys for Plaintiff
                                        800 Third Avenue
                                        New York, New York 10022
                                        (212) 687-8500